IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS INC. and<br>NCR CORPORATION,<br><br>      Plaintiffs,<br><br>      v.<br><br>GEORGE A. WHITING PAPER COMPANY,<br>P. H. GLATFELTER COMPANY,<br><br>      Defendants. | No. 2:08-CV-00016-WCG |

## AMENDED COMPLAINT

Plaintiffs Appleton Papers Inc. ("API") and NCR Corporation ("NCR"), by and through their undersigned counsel, allege as follows:

## INTRODUCTION

1.  This civil action is brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 et seq. ("CERCLA"), also known as Superfund. It concerns the allocation of costs and damages arising out of polychlorinated biphenyl ("PCB") contamination of the Lower Fox River and Green Bay in Wisconsin ("Lower Fox River Contamination").

2.  API and NCR have been the leaders among the responsible parties in working with the U.S. Environmental Protection Agency ("USEPA") and the Wisconsin Department of Natural Resources ("WDNR") (together, the "Agencies") to address and

remediate the Lower Fox River Contamination. As set forth below in more detail, API and NCR have provided the Agencies with critical funding to complete their investigations of the Lower Fox River Contamination and their evaluations of cleanup options. Also, NCR has worked with another responsible party to conduct the design of the remedy selected by the Agencies, and has worked with yet another responsible party to undertake the first phase of the remedial work in the Lower Fox River, and API has contributed both money and support to these efforts. In addition, API and NCR have made substantial payments to the trustees for natural resource damages to allow them to implement various restoration projects even before the design of the remedy is complete. The amounts API and NCR have spent on these activities are well in excess of their responsibility for this work.

3. The purpose of this lawsuit is to allocate the equitable shares of the cleanup costs and natural resource damages associated with the Lower Fox River Contamination, and to require Defendants and the other responsible parties to pay for the upcoming remedial work and natural resource damages activities in accordance with their allocated shares. Altogether, there are in excess of two dozen parties responsible for the Lower Fox River Contamination. Most of these parties have entered into tolling and standstill agreements with regard to claims relating to Lower Fox River Contamination. Some of the parties have been engaged in a mediation process in an effort to allocate among themselves the shares for cleanup costs and natural resource damages. The mediation is ongoing, with the next session scheduled for early 2008. If the mediation effort is not successful, and as the various tolling and standstill agreements expire, then it will be necessary to add other parties to this action.

4. Defendant George A. Whiting Paper Company declined to enter into a tolling and standstill agreement. Defendant P.H. Glatfelter Company has taken actions

indicating it will not participate further in the mediation, including moving to reopen the consent decree proceeding for the cleanup of the upper part of the Lower Fox River (known as operable unit 1, or OU 1), 2:03-cv-00949-LA, in order to litigate with the United States and the State of Wisconsin, and no one else, its responsibility for cleanup costs and natural resource damages over the entire Lower Fox River Site.

5. The responsible parties disagree about the size of the other parties' shares of the Lower Fox River cleanup costs and damages. Also, the vast majority of the cleanup costs for the Lower Fox River have yet to be incurred. Accordingly, in this Complaint API and NCR seek a declaratory judgment allocating the API/NCR share of future cleanup costs and damages, as well as the shares of Defendants and all other parties that are added to this action. API and NCR also seek judgment against Defendants and all other parties that are added to this action for the cleanup costs and damages API and NCR have incurred to date, allocated in accordance with such shares.

## JURISDICTION

6. This Court has jurisdiction over the subject matter of this action, and the parties hereto, pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1331 (federal question).

7. Venue is proper in this District pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the events giving rise to the claims stated in this Complaint, including the alleged releases of hazardous substances, occurred in this District, and the Lower Fox River is located entirely within this District. Additionally, Defendants conducted business or operations within this District at times relevant to the events described in this Complaint.

## PARTIES

8. Plaintiff API is a Delaware corporation with its principal place of business in Appleton, Wisconsin.

9. Plaintiff NCR is a Maryland corporation with its principal place of business in Dayton, Ohio.

10. Defendant George A. Whiting Paper Company ("Whiting Paper Co.") is a Wisconsin corporation with its principal place of business in Menasha, Wisconsin.

11. Defendant P.H. Glatfelter Company ("Glatfelter") is a Pennsylvania corporation with its principal place of business in York, Pennsylvania. P.H. Glatfelter Company is a successor to Bergstrom Paper Company. P.H. Glatfelter Company and Bergstrom Paper Company shall be referred to collectively hereafter as "Glatfelter."

## GENERAL ALLEGATIONS

### The Lower Fox River Site

12. This case concerns PCB contamination of the Lower Fox River and Green Bay ("Lower Fox River Site"). The Lower Fox River Site runs 39 miles northeast from Lake Winnebago until it discharges into Green Bay. WDNR has estimated that the sediments in the Lower Fox River Site contain approximately 210,000 pounds of PCBs.

### Defendants' Releases

13. At all relevant times, Defendant Whiting Paper Co. owned and operated a paper mill in Menasha, Wisconsin (the "Whiting Paper Co. Mill"). During that time, PCBs were released from the Whiting Paper Co. Mill, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site.

4

14. At all relevant times, Defendant Glatfelter owned and operated a paper mill in Neenah, Wisconsin (the "Glatfelter Mill"). During that time, PCBs were released from the Glatfelter Mill into the Lower Fox River Site, both directly and through a paper mill sludge landfill used by Glatfelter.

**Cleanup Work and Natural Resource Damages at the Lower Fox River Site**

15. On November 13, 2007, USEPA issued a unilateral administrative order (the "Order"), pursuant to 42 U.S.C. § 9606(a), which requires API, NCR, Glatfelter and other respondents to conduct certain remedial actions in the downriver part of the Lower Fox River Site. Only eight companies were identified as respondents by USEPA in the Order.

16. The Order comes after various parties have been working for years to address the Lower Fox River Contamination. In the mid-1990s, API, NCR and several other entities joined together to form the Fox River Group. The Fox River Group, among other activities, identified and evaluated methods to address environmental issues at the Lower Fox River Site. Defendant Glatfelter was a member of the Fox River Group. Defendant Whiting Paper Co. has not been involved in the Fox River Group.

17. In January 1997, API, NCR and the other members of the Fox River Group signed an agreement with the State of Wisconsin ("State Agreement") to, among other things, spend a total of $10,000,000 assessing and responding to the Lower Fox River Contamination and implementing certain natural resource damages restoration projects. Pursuant to the State Agreement, API, NCR and the other members of the Fox River Group paid for and supervised projects that removed over 2,000 pounds of PCBs from the Lower Fox River Site.

18. The members of the Fox River Group performed this work between 1997 and 2001 and paid in excess of $20,000,000 in costs and damages, a substantial portion of which were borne by API and NCR. At this time, the obligations imposed by the State Agreement have been completed. The State of Wisconsin formally terminated the State Agreement in July 2001.

19. On December 10, 2001, a Consent Decree involving API, NCR, the United States and the State of Wisconsin was approved and entered by this Court ("2001 Consent Decree"). Under the terms of the 2001 Consent Decree, API and NCR agreed to provide $41,500,000 over four years to fund, among other things, response action and natural resource damages restoration projects at the Lower Fox River Site that were consistent with the National Contingency Plan and CERCLA, and to reimburse natural resource damages trustees for past assessment costs. In December 2005, API and NCR agreed to extend the 2001 Consent Decree for an additional year to allow funding of certain additional natural resource damage restoration projects and assessment costs ("2005 Consent Decree Extension"). API and NCR have paid, pursuant to the 2001 Consent Decree and the 2005 Consent Decree Extension, in excess of $42 million for response action projects and natural resource damages at the Lower Fox River Site.

20. In January 2003, after many years of study, WDNR and USEPA released a Record of Decision outlining in broad terms the remedial action to be conducted in the upriver portion of the Lower Fox River Site ("Upriver ROD"). The remedy selected in the Upriver ROD consisted of a combination of dredging sediments with PCB concentrations exceeding 1 part per million and monitoring sediments with lower levels of PCBs.

21. In July of 2003, WDNR and USEPA released a Record of Decision outlining in broad terms the remedial action to be conducted in the downriver portion of the

6

Lower Fox River Site ("Downriver ROD").  The remedy selected in the Downriver ROD consisted primarily of dredging sediments with PCB concentrations exceeding 1 part per million and monitoring sediments with lower levels of PCBs at the mouth of the river at Green Bay.

22.     In March 2004, NCR and Fort James Operating Company ("Fort James") entered into an Administrative Settlement Agreement and Order on Consent with the State of Wisconsin and the United States, pursuant to which NCR and Fort James agreed to perform the work necessary to design the remedy outlined in the Downriver ROD, and API has contributed both money and support to the design effort.  As of the filing of this Complaint, API and NCR have paid, pursuant to this Administrative Settlement Agreement and Order on Consent alone, in excess of $2.8 million for response actions to design the Downriver ROD.

23.     In April 2006, NCR and U.S. Paper Mills Corp. ("U.S. Paper") entered into a Consent Decree with the United States and the State of Wisconsin to implement Phase 1 of the downriver remedy ("2006 Phase 1 Consent Decree"), and API has contributed both money and support to this effort.  To date, API and NCR have paid in excess of $7.8 million pursuant to the 2006 Phase 1 Consent Decree, and API and NCR further estimate that over the next year they will pay $1.8 million or more to fulfill the obligations under the 2006 Phase 1 Consent Decree.

24.     In June 2007, the United States and the State of Wisconsin issued an amendment to the 2003 Downriver ROD ("2007 Amended ROD").  Very little if any of the work required under the 2007 Amended ROD has been performed to date, and accordingly few of the costs of the 2007 Amended ROD have been incurred yet.  The Order recently issued by USEPA requires the eight named respondents to complete the design of and then implement the remedy set forth in the 2007 Amended ROD.  API/NCR expect that they will be required to pay considerably more than they have paid to date in order to comply with the Order.

25. USEPA has determined that remedial action was and is necessary at the Lower Fox River Site.

26. USEPA has determined that the actions that have been taken and are being taken by API and NCR at the Lower Fox River Site were and are consistent with the National Contingency Plan.

27. In addition to those costs and damages paid or to be paid pursuant to the State Agreement, the 2001 Consent Decree, the 2005 Consent Decree Extension, the Administrative Settlement Agreement and Order on Consent and the 2006 Phase 1 Consent Decree, API and NCR have paid additional costs, including the costs of identifying other responsible parties, conducting risk assessments, funding natural resource damages projects, and otherwise investigating and responding to the Lower Fox River Contamination.

## COUNT I -- CLAIM UNDER CERCLA § 107

28. API and NCR reallege and incorporate by reference paragraphs 1 through 27 as if fully set forth herein.

29. Pursuant to Section 107(a)(4)(B) and 107(a)(4)(C) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(B) and 9607(a)(4)(C), any person who is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), shall be liable for necessary response costs incurred by any other person consistent with the National Contingency Plan and for natural resource damages.

30. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), makes liable, among others: (i) the current owner and operator of a facility; (ii) the owner or operator, at the time of disposal of hazardous substances, of a facility at which such hazardous substances were disposed of; and (iii) any person who, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances at any facility containing such hazardous substances.

8

31. The Lower Fox River Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

32. The Whiting Paper Co. Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

33. The Glatfelter Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

34. Defendant Whiting Paper Co. is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

35. Defendant Glatfelter is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

36. API is a "person" within the meaning of Sections 101(21) and 107(a)(4)(B) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a)(4)(B).

37. NCR is a "person" within the meaning of Sections 101(21) and 107(a)(4)(B) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a)(4)(B).

38. PCBs are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

39. Papermaking activities conducted by Whiting Paper Co. at the Whiting Paper Co. Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site. As a result, Whiting Paper Co. arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

40. Whiting Paper Co. was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Whiting Paper Co. Mill, at which such

9

hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

41. Whiting Paper Co. is the current owner and operator of a facility, the Whiting Paper Co. Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

42. Papermaking activities conducted by Glatfelter at the Glatfelter Mill resulted in the release of PCBs into the Lower Fox River Site, both directly and through a paper mill sludge landfill used by Glatfelter. As a result, Glatfelter arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

43. Glatfelter was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Glatfelter Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

44. Glatfelter is the current owner of a facility, the Glatfelter Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

45. PCBs have been released at and from the facilities identified above, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

46. In connection with these releases of PCBs from the facilities identified above, API and NCR have paid and will continue to pay costs for necessary response actions at the Lower Fox River Site consistent with the National Contingency Plan, within the meaning of Section 101(31) of CERCLA, 42 U.S.C. § 9601(31) ("Lower Fox River Costs"), and natural resource damages.

10

47. Defendants Whiting Paper Co. and Glatfelter are liable for the Lower Fox River Costs and damages paid to date by API and NCR, and consequently API and NCR are entitled to recover these costs and damages from Defendants.

48. Alternatively, API and NCR have paid more than API/NCR's allocable share of the Lower Fox River Costs and damages paid to date. API and NCR request that the Court determine the parties' proper allocable shares with respect to Lower Fox River Costs and damages and determine that Defendants Whiting Paper Co. and Glatfelter are liable to API and NCR for those Lower Fox River Costs and damages paid by API and NCR that are in excess of API/NCR's allocable share and that are properly attributable to Defendants.

49. Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(l), API and NCR have provided a copy of this Complaint to the Attorney General of the United States and the Administrator of USEPA.

50. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), API and NCR are entitled to recover interest on the Lower Fox River Costs and damages they have paid or may pay in the future.

### COUNT II – CLAIM UNDER CERCLA § 113

51. API and NCR reallege and incorporate by reference paragraphs 1 through 50 as if fully set forth herein.

52. Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), authorizes any person to seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42. U.S.C. § 9607(a).

53. API and NCR have reimbursed the United States and the State of Wisconsin for amounts greater than API/NCR's allocable share of the Lower Fox River Costs

and damages paid to date. API and NCR also have made other payments relating to Lower Fox River Costs and damages that are greater than API/NCR's allocable share of Lower Fox River Costs and damages. Defendants Whiting Paper Co. and Glatfelter are liable for those Lower Fox River Costs and damages paid by API and NCR that are in excess of API/NCR's allocable share and that are properly attributable to Defendants.

54. Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(l), API and NCR have provided a copy of this Complaint to the Attorney General of the United States and the Administrator of USEPA.

55. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), API and NCR are entitled to recover interest on the Lower Fox River Costs and damages they have paid and will pay in the future in excess of API/NCR's allocable share.

## COUNT III – CLAIM FOR DECLARATORY RELIEF

56. API and NCR reallege and incorporate by reference paragraphs 1 through 55 as if fully set forth herein.

57. Through various letters and most recently the Order to implement the remedy set forth in the 2007 Amended ROD, the United States, the State of Wisconsin and the natural resource damages trustees have demanded that API, NCR and other potentially responsible parties fund the response work and natural resource damages projects to be undertaken at the Lower Fox River Site.

58. Defendant Whiting Paper Co. has refused to acknowledge that it is liable to API and NCR for response costs and damages arising out of the Lower Fox River Contamination.

12

59. Defendant Glatfelter has moved to re-open its consent decree proceeding involving cleanup of a portion of the Lower Fox River Site in order to litigate with the United States and the State of Wisconsin, and no one else, its responsibility for cleanup costs and natural resource damages over the entire Lower Fox River Site.

60. Thus, an actual, substantial, and legal controversy has arisen and now exists between API and NCR, on the one hand, and Defendants, on the other, with regard to responsibility for the Lower Fox River Costs and damages and how these should be allocated among API and NCR, on the one hand, and Defendants, on the other. The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

61. Absent a judicial declaration setting forth the parties' rights and obligations, including the appropriate allocable shares under CERCLA, a multiplicity of actions may result, and API and NCR may be obligated in the future to pay costs and damages that, under CERCLA, are in fact the responsibility of Defendants.

62. For these reasons, API and NCR seek a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and Section 2201 of the Judicial Code, 28 U.S.C. § 2201, allocating Lower Fox River Costs and damages among API/NCR, on the one hand, and Defendants, on the other, and holding Defendants liable for that share of Lower Fox River Costs and damages allocated to them.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Appleton Papers Inc. and NCR Corporation respectfully request that the Court enter judgment in favor of API and NCR and against Defendants:

13

(1) Awarding API and NCR a declaratory judgment determining API/NCR's allocable share, on the one hand, and Defendants' shares, on the other, for Lower Fox River Costs and damages, determining that Defendants are liable for those costs and damages that are allocable to Defendants, and holding that these determinations will be binding on any subsequent action or actions to recover further response costs or damages;

(2) Awarding API and NCR recovery against Defendants for the Lower Fox River Costs and damages paid by API and NCR, with interest;

(3) Awarding API and NCR contribution against Defendants for Lower Fox River Costs and damages paid by API and NCR that are allocable to Defendants, with interest; and

(4) Granting API and NCR such other legal and equitable relief as the Court deems just, proper, or necessary.

Respectfully Submitted,

APPLETON PAPERS INC.

/s/ Linda Doyle_____
By: One of Its Attorneys

NCR CORPORATION

/s/ J. Andrew Schlickman_____
By: One of Its Attorneys

Counsel for Appleton Papers Inc.
Linda Doyle (Illinois Bar No. 6269231)
Admitted in the E.D. of Wisconsin
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois 60606
(312) 984-6905
Fax: (312) 984-7700

14

Counsel for NCR Corporation
J. Andrew Schlickman (Illinois Bar No. 3122104)
Evan Westerfield (Illinois Bar No. 6217037)
Admitted in the E.D. of Wisconsin
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
Fax: (312) 853-7036

J. Ric Gass (Wisconsin Bar No. 1011998)
Gass Weber Mullins LLC
309 North Water Street
Milwaukee, Wisconsin 53202
(414) 224-7697
Fax: (414) 224-6116

Dated: February 8, 2008