**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

APPLETON PAPERS INC. and       :
NCR CORPORATION,       :
      :
        Plaintiffs,       :
      :
        v.       :       No. 2:08-cv-00016-WCG
      :
GEORGE A. WHITING PAPER COMPANY,       :
P.H. GLATFELTER COMPANY, and       :
MENASHA CORPORATION,       :
      :
        Defendants.       :


## <u>ORDER</u>

Upon consideration of Defendant P.H. Glatfelter Company's Motion to Dismiss in Part Plaintiffs' Second Amended Complaint, supporting memorandum of law, and any response thereto, the Motion is hereby **GRANTED. IT IS HEREBY ORDERED** that:

1.      all portions of Counts I and II of the Second Amended Complaint seeking to recover from the P.H. Glatfelter Company "OU1 Response Activities and Costs" as defined in the consent decree entered in *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949-LA, are dismissed with prejudice;

2.      all portions of Count I of the Second Amended Complaint seeking to recover natural resource damages are dismissed with prejudice; and

3.      Count III of the Second Amended Complaint is dismissed with prejudice.

**SO ORDERED** at Green Bay, Wisconsin, this _____ day of _____,

2008.

_____
The Honorable William C. Griesbach
United States District Court Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | | |
|---|---|---|
| APPLETON PAPERS INC. and | : | |
| NCR CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 2:08-cv-00016-WCG |
| | : | |
| GEORGE A. WHITING PAPER COMPANY, | : | |
| P.H. GLATFELTER COMPANY, and | : | |
| MENASHA CORPORATION, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT P.H. GLATFELTER COMPANY'S MOTION TO DISMISS IN PART
PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant P.H. Glatfelter Company ("Glatfelter"), by its undersigned counsel,

hereby moves this Court for an Order dismissing in part Plaintiffs Appleton Papers Inc. and NCR

Corporation's Second Amended Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure. Glatfelter sets forth the basis for its motion in a separate

memorandum in support.

Respectfully submitted,

<table>
<tr><td>OF COUNSEL:</td><td>s/ David G. Mandelbaum</td></tr>
<tr><td></td><td>David G. Mandelbaum</td></tr>
<tr><td>Ballard Spahr Andrews & Ingersoll, LLP</td><td>Pennsylvania Bar No. 38380</td></tr>
<tr><td>1735 Market Street, 51st Floor</td><td>(215) 864-8102 (Voice)</td></tr>
<tr><td>Philadelphia, PA 19103</td><td>(215) 864-9761 (Facsimile)</td></tr>
<tr><td></td><td>mandelbaum@ballardspahr.com</td></tr>
</table>

Marc E. Davies
Pennsylvania Bar No. 81789
(215) 864-8248 (Voice)
(215) 864-9108 (Facsimile)
daviesm@ballardspahr.com

Sabrina Mizrachi
Florida Bar No. 596991
(215) 864-8344 (Voice)
(215) 864-9203 (Facsimile)
mizrachis@ballardspahr.com

Ronald M. Varnum
Pennsylvania Bar No. 200203
(215) 864-8416 (Voice)
(215) 864-9508 (Facsimile)
varnumr@ballardspahr.com

Jennifer E. Simon
Pennsylvania Bar No. 201523
(215) 864-8337 (Voice)
(215) 864-9914 (Facsimile)
simonj@ballardspahr.com

Dated: March 24, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | | |
|---|---|---|
| APPLETON PAPERS INC. and | : | |
| NCR CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 2:08-cv-00016-WCG |
| | : | |
| GEORGE A. WHITING PAPER COMPANY, | : | |
| P.H. GLATFELTER COMPANY, and | : | |
| MENASHA CORPORATION, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT P.H. GLATFELTER COMPANY'S
MOTION TO DISMISS IN PART PLAINTIFFS' SECOND AMENDED COMPLAINT**

NCR Corporation ("NCR") and Appleton Papers Inc. ("API") brought this lawsuit to reallocate (a) costs of cleaning up sediments in the Fox River and (b) natural resource damages caused by contamination in those sediments. That would make for a fairly conventional Superfund contribution case, had NCR or API incurred or committed to incur the costs and paid or committed to pay the damages about which they were suing. But they have not. As pleaded, this is a case by two parties who have not stepped up to address their mess against a party, Defendant P.H. Glatfelter Company ("Glatfelter"), that has not only addressed its past behavior, but some of NCR's and API's as well. *See* Consent Decree, *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949 (E.D. Wis. entered April 12, 2004).

By this motion, Glatfelter seeks to dismiss those claims that simply do not belong in this litigation. Plaintiffs have no standing to recover natural resource damages. They may not

sue for a declaration reallocating costs to be incurred in the future that plaintiffs have not committed to incur. Plaintiffs also may not seek reallocation of "OU1 Response Actions and Costs" -- the costs of cleaning up Little Lake Butte des Morts ("LLBdM" or "OU1") -- because Judge Adelman so ordered when he approved the consent decree in *United States v. P.H. Glatfelter Co.*

Glatfelter does not now move to dismiss the claim that Glatfelter bears some liability for costs incurred by plaintiffs in doing certain isolated cleanup tasks in the 33 miles of the Fox River downstream of the dam at Appleton ("OU2-5"). Plaintiffs cannot prove that Glatfelter has not paid its share of those costs already. Indeed, plaintiffs cannot prove that Glatfelter bears any share at all of those costs. The sooner the issue of these defendants' liability for OU2-5 can be brought to trial, the sooner this case will be resolved.

### Factual Background

This suit, then, is part of what Judge Adelman has characterized as "ongoing litigation concerning contamination in the Fox River and Green Bay." *United States v. NCR Corp.,* No. 2:06-cv-484 (E.D. Wis. Nov. 3, 2006), *slip op. at* 1; *United States v. P.H. Glatfelter Co.,* No. 2:03-cv-949 (E.D. Wis. Apr. 12, 2004), *slip op. at* 1; *see also United States v. Fort James Operating Co.,* 313 F. Supp. 2d 902, 906 (E.D. Wis. 2004); but *see United States v. P.H. Glatfelter Co.,* No. 2:03-cv-949 (E.D. Wis. Feb. 13, 2008). The underlying disputes in this litigation have engaged the parties for a long time. The Second Amended Complaint avers that "[i]n the mid-1990s, API, NCR, Glatfelter, WTM I Company, U.S. Paper Mills Corporation, Fort Howard Company and Riverside Paper Corporation joined together to form the Fox River Group." Second Amended Complaint [Dkt. No. 41] ¶ 17. It goes on to plead a 1997 agreement. *Id.* ¶ 18. In fact, the Fox River Group had formed some years earlier *without* API and NCR, and

the first agreement addressing this problem was entered into between Glatfelter and the State of Wisconsin in October 1992 for the purpose of facilitating recovery of costs from NCR, which was promptly notified.

The case arises because NCR caused contamination at multiple locations along the Fox River and Green Bay as the result of manufacturing and recycling NCR® brand carbonless copy paper ("NCR® Paper"), a paper whose coating contained polychlorinated biphenyls ("PCBs"). PCBs "were discharged in connection with the production and reprocessing of PCB-containing carbonless copy paper at multiple facilities in the Fox River Valley." Consent Decree, *United States v. NCR Corp.,* No. 2:06-cv-484-LA (E.D. Wis. entered Nov. 3, 2006) [No. 2:06-cv-484 Dkt No. 2] ¶ C, App. B ¶ 11.a.[1]  Some of the PCBs contaminated sediments in the bed of the Fox River and portions of the Green Bay. Second Amended Complaint ¶ 12.

Glatfelter owned and operated a recycling pulp and paper mill in Neenah, Wisconsin, at the far upstream (southern) end of the Lower Fox River. Second Amended Complaint ¶ 14. Glatfelter recycled paper, evidently including NCR® Paper, and discharged wastewater which, even after treatment, contained solids to which PCBs were adsorbed (that is, stuck). Glatfelter did not know of the presence of PCBs in NCR® Paper until after 1971, when

---

[1]     Appendix B to the consent decree in *United States v. NCR Corp.* is a consent order for remedial design to which plaintiff NCR is a party. Paragraph 11.a states as a finding of fact:

> At certain times in the past, primarily the 1950's and 1960's, certain paper companies located along the Fox River engaged in the manufacture or recycling of carbonless copy paper. Polychlorinated biphenyls (PCBs), which are hazardous substances, were used in the production of carbonless copy paper and were contained in wastepaper that entered the paper recycling operations.

DMEAST #9983095 v4

they were removed from the product. Since 1991, Glatfelter has *alone* expended about the same amount as NCR and API allege they have spent combined. *See, e.g.*, *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949 (E.D. Wis. consent decree entered April 12, 2004); Agreed Supplement ¶ 5.b (E.D. Wis. filed September 13, 2007). NCR alleges *no* involvement with this sediment cleanup prior to 1996. Nevertheless, it now claims to have paid more than its share of the costs incurred so far. Plaintiffs' claims here are not well-taken, and several of them fail even to state a claim upon which relief may be granted.

1.      **Standard for Granting a Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted.**

To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is afforded "fair notice" of the claim and the grounds upon which it is based. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). It is not sufficient for the complaint to provide simply "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp.*, 127 S. Ct. at 1965. Rather, the claim must set forth factual allegations that "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). That is, "it is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief." *Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. at 1965, 1968-69) (emphasis in original).

## 2. Plaintiffs May Not Assert a Claim for Natural Resource Damages.

NCR and API's Count I seeks to state a claim under section 107 of CERCLA, 42 U.S.C. § 9607. They plead a right to recover both "costs" and "damages." Second Amended Complaint ¶¶ 51-53. Private parties may not recover "damages" under CERCLA. Consequently, plaintiffs' claim for "damages" should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

Section 107 of CERCLA makes responsible parties liable for "costs of response" and "damages for injury to, destruction of, or loss of natural resources . . . ." 42 U.S.C. § 9607(a)(1-4)(A), (B), (C).[2] The statute defines "damages" to mean natural resource damages under section 107(a)(1-4)(C) and section 111(b). 42 U.S.C. § 9601(6). Costs of response are the costs of cleaning up a release or threatened release of a hazardous substance. Natural resource damages are a measure of the lost or diminished value of *public* natural resources during the time between the release and the completion of the cleanup and, if a diminution remains, into the future. *See* 42 U.S.C. § 9651(c)(criteria for promulgation of natural resource damage assessment regulations).

Private plaintiffs, like NCR and API, may not assert claims to recover natural resource damages under section 107(a)(1-4)(C). Section 107(f)(1) provides:

> In the case of an injury to, destruction of, or loss of natural resources under subparagraph (C) of subsection (a) of this section **liability shall be to the United States Government and to any State** for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State **and to any Indian tribe** for natural resources belonging to, managed by,

---

[2]    The section contains a printer's error. A carriage return should have been inserted before "from which there is a release," making that language and paragraphs (A)-(D) applicable to each of paragraphs 107(a)(1) to (4). *See New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 n.16 (2d Cir. 1985).

> controlled by, or appertaining to such tribe, or held in trust for the
> benefit of such tribe, or belonging to a member of such tribe if
> such resources are subject to a trust restriction on alienation . . . .

42 U.S.C. § 9607(f)(1)(emphasis added). Neither NCR nor API is the United States, a state, or an Indian tribe. "It is significant that the Act grants the right to assert claims for damages to natural resources only to governmental entities, not private persons." *Artesian Water Co. v. Government of New Castle County*, 851 F.2d 643, 649 (3d Cir. 1988); *see also New Mexico v. General Electric Co.*, 467 F.3d 1223 (10th Cir. 2006)(discussing preemption of state natural resource damages claims by CERCLA). Accordingly, neither may recover for natural resource damages under section 107.

Because neither API nor NCR has standing to assert a claim for natural resource damages under section 107 of CERCLA, this Court lacks jurisdiction to consider the liability of defendants for natural resource damages. That claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Alternatively, because neither API nor NCR may recover under section 107(a)(1-4)(C), that portion of Count I does not state a claim upon which this Court may grant relief, and it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

3.     **Count III Does Not State a Claim Upon Which Declaratory Relief May be Granted.**

Count III of the Second Amended Complaint purports to state a claim for a declaratory judgment "allocating Lower Fox River Costs and damages among API/NCR, on the one hand, and Defendants, on the other, and holding Defendants liable for that share of Lower Fox River Costs and damages allocated to them." Second Amended Complaint ¶ 65. This is not a claim about costs already incurred or damages already paid by any party. Instead, API and NCR seek to allocate costs and damages yet to be incurred or to be paid by parties to this case.

6

Count III does not state a claim upon which relief may be granted. Plaintiffs cite section 113(g)(2) of CERCLA and the general federal declaratory judgment statute as the bases for this requested judgment. *See* Second Amended Complaint ¶ 65; 28 U.S.C. § 2201(a); 42 U.S.C. § 9613(g)(2). Neither statute provides a basis in this case for issuance of a declaration as to *allocation*.

### a. Subsection 113(g)(2) does not authorize issuance of a declaration in this case.

Subsection 113(g)(2) of CERCLA provides, in pertinent part: "[i]n any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). Thus, CERCLA only allows for a declaratory judgment (i) "in any such action" and (ii) "on liability."

Subsection 113(g)(2) forms a part of CERCLA's internal statute of limitations and sets out the limitations periods for "[a]n initial action for recovery of the costs referred to in section [107] . . . ." 42 U.S.C. § 9613(g)(2). Thus, a declaration may only be issued in "the initial action for recovery of the costs referred to in section [107]."

At least four other cases have already been filed before Judge Adelman seeking to recover costs of response for this site under section 107 of CERCLA:

- *United States v. Appleton Papers Inc.*, No. 2:01-cv-816 (E.D. Wis. filed August 14, 2001), sought recovery of governmental costs of response for the entire site from the two plaintiffs in this case and supported entry on December 10, 2001, of a consent decree [No. 2:01-cv-816 Dkt No. 13] providing for an interim settlement of certain claims for a period of four years, extended on January 24, 2006 [No. 2:01-cv-816 Dkt No. 17];

- *United States v. Fort James Operating Co.*, No. 2:02-cv-602 (E.D. Wis. filed June 20, 2002), sought recovery from Fort James Operating Co. (now an affiliate of Georgia-Pacific Company) of costs associated with Sediment Management Unit 56/57 in Green Bay and was settled by consent decree entered on March 19, 2004;

7

see *United States v. Fort James Operating Co.*, 313 F. Supp.2d 902, 906 (E.D. Wis. 2004)(entering consent decree over objections);

- *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949 (E.D. Wis. filed Oct. 1, 2003), sought recovery of costs from Glatfelter and WTM I in connection with releases "at and from" OU1, and supported entry of a consent decree on April 12, 2004; *see* Decision and Order (E.D. Wis. Feb. 13, 2008)[No. 2:03-cv-949 Dkt No. 33]; and

- *United States v. NCR Corporation*, No. 2:06-cv-484 (E.D. Wis. filed April 12, 2006), sought recovery of costs from NCR and Sonoco-U.S. Mills, Inc., associated with a particular location on the west side of the Fox River in De Pere immediately outside the Sonoco-U.S. Mills mill, and supported entry of a consent decree for implementation of the remedy at that location.

The Second Amended Complaint pleads the existence of *United States v. Appleton Papers Inc.,* Second Amended Complaint ¶ 20, and *United States v. NCR Corp.*, Second Amended Complaint ¶ 24. The former is the "initial action" to involve the plaintiffs in this case. The Court may take judicial notice of the other two actions on a motion to dismiss. *Mann v. Thompson*, 2006 U.S. Dist. LEXIS 43084 at *10 (E.D. Wis. June 15, 2006) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)); *Kyles v. Clarke*, 2007 U.S. Dist. LEXIS 25911 at *4 (E.D. Wis. Apr. 5, 2007) (noting that courts may "take judicial notice of matters of public record without converting a motion to dismiss for failure to state a claim into a motion for summary judgment") (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)).

*United States v. P.H. Glatfelter Co.* is the "initial action" to involve Glatfelter. Indeed, the complaint in *United States v. P.H. Glatfelter Co.* sought relief from Glatfelter and WTM I under section 113(g)(2): "the United States and the State seek a declaratory judgment, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), declaring that the Defendants are liable for any future response costs that the United States or the State may incur in

connection with response actions that may be performed for OU1."  Complaint, No. 2:03-cv-949 ¶ 1; *see also id.* Prayer for Relief ¶ 4.

The consent decree in *United States v. P.H. Glatfelter Co.* settles that section 113(g)(2) claim.  Paragraph F provides:

> The defendants that have entered into this Consent Decree ("Settling Defendants," as defined below) [that is, Glatfelter and WTM I,] do not admit any liability to the Plaintiffs [that is, the United States and the State of Wisconsin], to the [Natural Resource] Trustees, or to any other party arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

The consent decree in *United States v. P.H. Glatfelter Co.* defines the "Site" to mean all five operable units of the Lower Fox River and Green Bay Site.  Consent Decree ¶¶ B, 4.  However, paragraph 20(c) and (d) of the consent decree in *United States v. P.H. Glatfelter Co.* set forth certain specific propositions that the plaintiffs in that case -- the United States and the State -- need not prove in any subsequent action "with respect to OU1."  This was a negotiated compromise of the section 113(g)(2) claim and does *not* provide for a declaration of *allocation* among parties responsible for OU1 or any other part of the Site.

Section 113(g)(2) does not provide for *multiple* declarations.  It allows for a single declaration in the "initial action" under section 107.  The initial action involving plaintiffs was *United States v. Appleton Papers Inc.*, filed in 2001.  The initial action involving Glatfelter was *United States v. P.H. Glatfelter Co.*, filed in 2003.  This case is emphatically *not* the initial action, and therefore, this Court may *not* issue a declaration of liability for future costs.  This case should allocate the costs actually incurred as of the time of trial, and not declare allocation of future costs under section 113(g)(2).  Accordingly, Count III of the Second Amended

9

Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

> b.    **Subsection 113(g)(2) does not authorize a declaration as to** *allocation*.

Even if the Court were to conclude, as it should not, that plaintiffs could bring a claim under subsection 113(g)(2) of CERCLA, that subsection does not authorize the Court to issue a declaratory judgment as to *allocation* of future costs. The plain language of the statute authorizes only a declaration of *liability*. Allocation depends upon a multitude of factors that may vary depending upon the circumstances under which some party incurs specific costs.

This is a large site, if it even is a single "site." The location of the work that causes any party to incur costs might be said to affect the equitable allocation of those costs. So, for example, the Court may take notice that *United States v. Fort James Operating Co.* resolves liabilities associated with Sediment Management Unit 56/57 located in the river immediately adjacent to the wastewater outfall from the Fort Howard Green Bay West mill, for which FJOC was alleged to be responsible, and FJOC is the sole settling defendant. *United States v. NCR Corp.* resolves certain liabilities associated with a particularly contaminated location immediately adjacent to the former U.S. Paper Mills facility in De Pere for which NCR and Sonoco are alleged to be responsible. *United States v. P.H. Glatfelter Co.* resolves liabilities associated with implementation of the remedy in Little Lake Butte des Morts (OU1), into which wastewater from the former Bergstrom Mill (for which Glatfelter is alleged to be responsible) and the former Wisconsin Tissue Mills Mill (for which WTM I is alleged to be responsible) discharged. The settling defendants in that case are Glatfelter and WTM I. Arguably, allocation of responsibility depends on location, and so the Court cannot allocate uniformly across the entire 39-mile site.

Moreover, parties' behavior arguably makes a difference to allocation. Multiple parties may bear a share of the responsibility for each wastewater discharge. *See, e.g., United States v. Fort James Operating Co.*, 313 F. Supp.2d 902, 909 (E.D. Wis. 2004)(possibility that providers of waste paper recycled at Fort Howard bear some share of responsibility for discharges from the Fort Howard mill). Glatfelter will contend that NCR, for example, not only provided its production scrap -- waste paper containing PCBs -- to the recycling mills, but did so after NCR had been repeatedly put on notice by Monsanto Corporation, the manufacturer of PCBs, that discharges of PCBs into streams and lakes presented problems of toxicity and bioaccumulation in fish. If those facts were proven, but the terms of relationships with different recycling mills were different, then the allocation to NCR at different points in the river might be different. So, for example, if NCR were specifically selling waste paper to Fort Howard to feed Fort Howard's "N.C.R." recycling line or to U.S. Paper Mills in concentrations that accounted for the area that is the subject of *United States v. NCR Corp.,* then NCR's share of responsibility for those parts of the river might be different than they would be for some other part of the site.

A trial to allocate the costs already expended would not involve all of the facts that a court would want to consider in allocating *different, future* costs under section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1). Congress recognized that fact, and only provided for a declaration of *liability* under section 113(g)(2). Accordingly, plaintiffs cannot obtain the allocation relief they request in Count III, and Count III should be dismissed for failure to state a claim upon which relief may be granted.

c. **If subsection 113(g)(2) of CERCLA does not authorize a declaratory judgment, neither does the Declaratory Judgments Act.**

Plaintiffs rely on 28 U.S.C. § 2201(a) to support their claim for declaratory relief. Here, a general statute -- the Declaratory Judgments Act -- and a specific provision of CERCLA

11

both apply. The specific enactment -- 42 U.S.C. § 9613(g)(2) -- should govern. *See Edmond v. United States*, 520 U.S. 651, 657 (1997) ("[o]rdinarily, where a specific provision conflicts with a general one, the specific governs"); *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 738-39 (1989) (Scalia, J., concurring); *In re Gulevsky*, 362 F.3d 961, 963 (7th Cir. 2004) ("when both a specific and a general provision govern a situation, the specific one controls").

In any event, no "actual controversy" exists among the parties at this time concerning costs yet to be incurred by any of them. Section 2201(a) limits declaratory judgments to "actual controversies." 28 U.S.C. § 2201(a). If no party has incurred a cost, then no party has any right to seek contribution or other allocation of that cost. The cost is not recoverable or allocable under any provision of CERCLA until someone incurs it. *See* 42 U.S.C. §§ 9607(a)(1-4)(B), 9613(f)(1). Only in the case of a settlement can the settling party seek an allocation of future costs. *See* 42 U.S.C. § 9613(f)(3)(B). Plaintiffs do not allege that they have settled their obligations with the United States. To the contrary, they allege that they have been issued an order directing them (and others) to perform. Second Amended Complaint ¶ 16. They cannot seek prospective allocation now. They have to perform, or not perform, and to seek allocation of those costs that they do incur when they incur them.

4. **The *United States v. P.H. Glatfelter Co.* Consent Decree Bars Claims against Glatfelter for "OU1 Response Activities and Costs."**

NCR and API state their claims against Glatfelter under all three counts of the Second Amended Complaint for costs incurred in connection with the "Site." They define the "Site" to include not only the area downstream of the Appleton Dam (OU2-5), but also OU1. Second Amended Complaint ¶¶ 12, 32, 51-53, 58, 65. Glatfelter has resolved its liability to the United States and the State of Wisconsin for response costs and actions in OU1, and therefore Glatfelter is entitled to protection from plaintiffs' claims concerning those costs. The claims of

12

NCR and API against Glatfelter for a recovery of NCR's or API's costs of cleaning up Little Lake Butte des Morts (that is, OU1) do not state a claim upon which relief may be granted.

If Glatfelter bears any responsibility for the Lower Fox River and Green Bay Site — which it does only secondarily, if at all — it bears responsibility for Little Lake Butte des Morts, the six-mile-long impoundment at the upstream (southern) end of the Site into which Glatfelter's former Neenah mill discharged. *See* Second Amended Complaint ¶ 14. The parties do not dispute that PCBs discharged from that mill as the result of recycling NCR® Paper were to be found in Little Lake Butte des Morts until they were cleaned up.

Glatfelter and WTM I Corporation have been cleaning up Little Lake Butte des Morts (that is, OU1) under the consent decree entered by Judge Adelman in *United States v. P.H. Glatfelter Co. See* Amended Complaint [Dkt. No. 35] ¶ 4. The Court may take judicial notice on a motion to dismiss pursuant to Rule 12(b)(6) of a decree entered by another judge in this court. *Mann v. Thompson*, 2006 U.S. Dist. LEXIS 43084 at *10 (E.D. Wis. June 15, 2006) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).

Section 113(f)(2) of CERCLA provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). This "contribution protection" extends not only to claims specifically under section 113(f) for "contribution," but also to other parallel claims that seek to allocate among responsible parties costs of responding to releases of hazardous substances. *See, e.g., United States v. Union Gas Co.*, 743 F. Supp. 1144, 1152 (E.D. Pa. 1990)(contribution protection bars claims by Commonwealth against party that has resolved its liability, even claims under state statutory law).

DMEAST #9983095 v4

Thus, paragraph 101 of the OU1 CD provides:

>Statutory Contribution Protection. The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree. . . . For the purpose of this Paragraph 101, and except as provided by Subparagraph 98.e.(8), the "matters addressed" by this Consent Decree are the OU1 Response Activities and Costs.

Glatfelter is a "Settling Defendant" for purposes of this paragraph. Consent Decree, *United States v. P.H. Glatfelter Co.*, [Dkt No. 4] ¶ 4 at p. 10. Paragraph 98.e.(8) applies to a termination, and that has not occurred. Accordingly, Judge Adelman has entered a decree barring plaintiffs from asserting a contribution action or a claim for "OU1 Response Activities and Costs."

>Paragraph 83.b of the consent decree elaborates further:

>For the purpose of this Consent Decree, the term "OU1 Response Activities and Costs" is defined as all response activities for Operable Unit 1 performed or to be performed after July 1, 2003, as well as all costs for response activities for Operable Unit 1 incurred after July 1, 2003. The "OU1 Response Activities and Costs" shall therefore include, but shall not be limited to, all Response Work performed or to be performed after July 1, 2003 and all Specified Future Response Costs.

>The Second Amended Complaint does not allege, nor could it, that either API or NCR incurred any costs for response activities in OU1 before July 1, 2003. API and NCR are entitled to credit for some funds spent in OU1, Consent Decree, *United States v. P.H. Glatfelter Co.* ¶¶ 10, 102.b. However, NCR and API may not pursue a contribution action or a claim against Glatfelter for any portion of those funds. Glatfelter may pursue NCR and API for recovery of Glatfelter's costs, but NCR and API may not pursue Glatfelter because they did not

come to the table and settle with the United States and Wisconsin in the consent decree for the cleanup in OU1.

For these reasons, all of plaintiffs' claims against Glatfelter concerning OU1 are barred by Judge Adelman's decree, and should be dismissed for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### a. Contribution protection bars recovery of OU1 Response Activities and Costs under section 113(f)(1).

Count II of the Second Amended Complaint asserts a contribution claim under section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1). Second Amended Complaint ¶¶ 56-60. For the reasons stated above, plaintiffs cannot pursue Glatfelter in contribution for any OU1 Response Activities and Costs. Accordingly, Count II should be dismissed insofar as it does so.

### b. Contribution protection *also* bars recovery of OU1 Response Activities and Costs under section 107(a).

Count I of the Second Amended Complaint purports to state a claim under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in the nature of contribution. A contribution claim may only be brought under section 113(f), 42 U.S.C. § 9613(f). Second Amended Complaint ¶¶ 52, 53. Accordingly, with respect to costs related to OU1, plaintiffs' section 107(a) claim is barred by section 113(f)(2) and the OU1 CD.

Plaintiffs state that "[t]he purpose of this lawsuit is to allocate the equitable shares of the cleanup costs and natural resource damages associated with the Lower Fox River Contamination, and to require Defendants and the other responsible parties to pay for the upcoming remedial work and natural resource damages activities in accordance with their allocated shares." Second Amended Complaint ¶ 3. Further, plaintiffs "seek judgment against Defendants and all other parties that are added to this action for the cleanup costs and damages

that each of API and NCR have incurred to date, allocated in accordance with such shares."  *Id.* ¶ 4; *see also id.* ¶ 65.  Plaintiffs admit that they are "responsible parties" under CERCLA section 107(a) who bear liability for cleanup costs and natural resource damages.  *Id.* ¶ 2 ("API and NCR have been the leaders among the responsible parties. . . ); ¶ 4 ("[t]he responsible parties disagree about the size of the other parties' shares of the Lower Fox River cleanup costs and damages").

That is, plaintiffs are responsible parties who have been compelled to pay costs and damages pursuant to an administrative order and a consent decree resolving a complaint under CERCLA sections 106 and 107(a), and now claim that they have paid more than their fair share.  Such a claim is the essence of a contribution claim; it is not a section 107(a) "cost recovery" claim.  *See United States v. Atlantic Research Corp.*, 127 S. Ct. 2331, 2338 (2007) ("[b]y contrast, § 107(a) [of CERCLA] permits recovery of cleanup costs but does not create a right to contribution"); Black's Law Dictionary (8th ed. 2004) (defining contribution as "[a] tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault"). "CERCLA provide[s] for a right to cost recovery in certain circumstances, § 107(a), and separate rights to contribution in other circumstances, §§ 113(f)(1), 113 (f)(3)(B)."  *Cooper Industries, Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 163 (2004).  The remedies available under sections 107(a) and 113(f) "complement each other by providing causes of action 'to persons in different procedural circumstances.'"  *Atlantic Research*, 127 S. Ct. at 2338 (citing *Consolidated Edison Co. of N.Y. v. UGI Utilities, Inc.*, 423 F.3d 90, 99 (2d Cir. 2005)).

Whenever one responsible party reimburses response costs incurred by another party in satisfaction of a judgment, a settlement, or otherwise, that responsible party may not recover those costs under section 107(a) because that responsible party has not in fact incurred

16

its own costs of response. *Atlantic Research*, 127 S. Ct. at 2338. In certain circumstances, reimbursement of the amount in excess of the responsible party's allocable share may be recoverable under the contribution rights of section 113(f). *See id.* But the remedies of section 107(a) and section 113(f) remain "clearly distinct." *See id.* at 2337; *Cooper Industries*, 543 U.S. at 163 n.3 (clarifying that the cost recovery remedy of section 107(a) and the contribution remedy of section 113(f)(1) are clearly distinct).

Plaintiffs attempt to muddle their contribution claim by averring in Count I first that Glatfelter is liable for "the Lower Fox River Costs and damages paid to date" by plaintiffs, Second Amended Complaint ¶ 52, and then by averring "[a]lternatively" that plaintiffs "have paid more than [their] allocable share[s] of the Lower Fox River Costs and damages paid to date" and that Glatfelter is liable for plaintiffs' excess portions properly attributable to Glatfelter, *id.* ¶ 53. Plaintiffs' claim is "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make." *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994). This is a "quintessential claim for contribution." *Id.* They may not pursue such a claim by styling it as a section 107(a) "cost recovery" claim. *See Atlantic Research*, 127 S. Ct. at 2338-39.

For one thing, a potentially responsible party ("PRP") may not choose whatever remedy it prefers; "a PRP could not avoid § 113(f)'s equitable distribution of reimbursement costs among PRPs by instead choosing to impose joint and several liability on another PRP in an action under § 107(a)." *Atlantic Research*, 127 S. Ct. at 2338-39. If a party has a contribution action under section 113(f)(1) for certain expenses, it must seek to recover those expenses under that section. Otherwise, a PRP readily could circumvent the three-year statute of limitations for section 113(f) contribution claims by styling them as section 107(a) claims, for which CERCLA

provides a six-year statute of limitations.[3] 42 U.S.C. § 9613(g); *Atlantic Research*, 127 S. Ct. at 2338.

More importantly for present purposes, the "contribution protection" of section 113(f)(2) to which Glatfelter is entitled would hardly be "protection" if Glatfelter could now be sued under section 107(a). *See United Technologies Corp. v. Browning-Ferris Indus., Inc.*, 33 F.3d 96, 102-03 (1st Cir. 1994). At the time Glatfelter, WTMI, the United States, and the State negotiated the consent decree in *United States v. P.H. Glatfelter Co.*, and at the time Judge Adelman entered it, a PRP could not have made a claim against Glatfelter other than one in contribution. *See Cooper Industries*, 543 U.S. at 169 (citing *Bedford Affiliates v. Sills*, 156 F.3d 416, 423-24 (2d Cir. 1998); *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 349-56 (6th Cir. 1998); *Pneumo Abex Corp. v. High Point, T. & D.R. Co.*, 142 F.3d 769, 776 (4th Cir. 1998); *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301-06 (9th Cir. 1997); *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1120-24 (3d Cir. 1997); *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 and n.7 (11th Cir. 1996); *United States v. Colorado & E.R. Co.*, 50 F.3d 1530, 1534-36 (10th Cir. 1995); *United*

---

[3]     In footnote 6 of its opinion in *Atlantic Research*, the Supreme Court expressed its unwillingness to foreclose the possibility that there might be some overlap in sections 107(a)(4)(B) and 113(f). The Court did not have to answer that question definitively because deciding the case before the Court did not require resolving the issue. *See, e.g., Cooper Industries*, 543 U.S. at 169-70. The Court did not intend to undermine its position that sections 107(a) and 113(f) provide different remedies to parties in different procedural circumstances, and that parties who had reimbursed response costs paid by other parties cannot seek to recover those expenses under section 107(a)(4)(B). Rather, the Supreme Court merely recognized that it did not have to foreclose the possibility that there may exist a set of costs that could be incurred involuntarily *and* would have been incurred for a reason other than reimbursing another. Still, whenever a PRP has been subject to a civil action pursuant to sections 106 or 107, or has entered into an administratively or judicially approved settlement, its proper recourse for those costs is a suit in contribution under section 113(f). *See ITT Indus., Inc. v. Borgwarner, Inc.*, 506 F.3d 452, 458 (6th Cir. 2007).

18

DMEAST #9983095 v4

*Technologies Corp. v. Browning-Ferris Indus.*, 33 F.3d 96, 98-103 (1st Cir. 1994)). A contribution claim simply could not have been repackaged as something else in this circuit. *Akzo Coatings*, 30 F.3d at 764.[4]

Even if Count I were not a "contribution action" barred by paragraph 101 of the OU1 CD, it is surely a "claim" that is barred. It is a claim to reallocate OU1 Response Activities and Costs to a party that has borne at least its share and resolved its liability to the United States. The consent decree bars that claim.

Therefore, any claim to allocate costs would be barred by the contribution protection provided by section 113(f)(2) and the OU1 CD. To allow contribution actions to proceed because the plaintiff labeled them as claims under section 107(a) would emasculate section 113(f)(2)'s "contribution protection" and would undermine Congress' goal of promoting settlements and addressing environmental contamination quickly. *United Technologies*, 33 F.3d at 102-03, *United States v. NCR Corp.*, No. 2:06-cv-484 (E.D. Wis. Nov. 3, 2006), *slip op.* at 4-5; *United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 911 (E.D. Wis. 2004); *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949 (E.D. Wis. Apr. 12, 2004), *slip op.* at 4-5. Plaintiffs have attempted to do just this. Their section 107(a) claim is barred with respect to all "matters addressed" by the OU1 CD. Accordingly, plaintiffs do not have a valid claim to recover costs related to OU1 under section 107(a).

---

[4]    The court of appeals for this circuit explicitly left in place its holding in *Akzo Coatings* after the Supreme Court decided *Cooper Industries*. *Metro. Water Reclamation Dist. of Greater Chicago v. North Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 836 (7th Cir. 2007).

DMEAST #9983095 v4

5. **Conclusion.**

Plaintiffs have properly stated a claim for contribution under section 113(f)(1) of CERCLA for costs of response that plaintiffs allege that they have incurred in the downstream portions of the Fox River -- OU2-5. The problem they face, of course, is proving that Glatfelter had anything to do with contamination downstream of Little Lake Butte des Morts, and that the amounts Glatfelter has already contributed to response actions do not satisfy Glatfelter's obligation to pay its fair share. These issues cannot be resolved on a motion to dismiss. All of the other extraneous claims asserted by plaintiffs should be dismissed for failure to state a claim upon which relief may be granted. Plaintiffs cannot sue for natural resource damages; they are not natural resource trustees. Plaintiffs cannot sue for a declaratory judgment allocating responsibility for costs no one has yet incurred; this is not the "initial action" for recovery under section 107 of CERCLA and no declaration as to *allocation* is appropriate in any event. Finally, plaintiffs cannot sue Glatfelter -- a party that has stepped forward and committed to clean up Little Lake Butte des Morts -- for costs incurred cleaning up Little Lake Butte des Morts.

For all these reasons, defendant P.H. Glatfelter Company respectfully submits that plaintiffs' claims in (a) Count I for recovery of natural resource damages, (b) Count III, and (c) all portions of Counts I and II pertaining to costs incurred in connection with response actions in Little Lake Butte des Morts be dismissed for failure to state a claim upon which relief may be granted or for lack of standing.

Respectfully submitted,

OF COUNSEL:

Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

s/ David G. Mandelbaum
David G. Mandelbaum
Pennsylvania Bar No. 38380
(215) 864-8102 (Voice)
(215) 864-9761 (Facsimile)
mandelbaum@ballardspahr.coom

Marc E. Davies
Pennsylvania Bar No. 81789
(215) 864-8248 (Voice)
(215) 864-9108 (Facsimile)
daviesm@ballardspahr.com

Sabrina Mizrachi
Florida Bar No. 596991
(215) 864-8344 (Voice)
(215) 864-9203 (Facsimile)
mizrachis@ballardspahr.com

Ronald M. Varnum
Pennsylvania Bar No. 200203
(215) 864-8416 (Voice)
(215) 864-9508 (Facsimile)
varnumr@ballardspahr.com

Jennifer E. Simon
Pennsylvania Bar No. 201523
(215) 864-8337 (Voice)
(215) 864-9914 (Facsimile)
simonj@ballardspahr.com

Dated: March 24, 2008

21

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on this 24th day of March, 2008, a true and correct copy of the foregoing Defendant P.H. Glatfelter Company's Motion to Dismiss in Part Plaintiffs' Second Amended Complaint and accompanying memorandum in support was filed electronically via the Electronic Court Filing system and is available for viewing and downloading.  In addition, a true and correct copy was served via first-class mail, postage prepaid, upon the following:

| | |
|---|---|
| Linda M. Doyle, Esquire<br>McDermott Will & Emery LLP<br>227 W. Monroe Street, Suite 4400<br>Chicago, IL  60606-5096 | J. Andrew Schlickman, Esquire<br>Evan B. Westerfield, Esquire<br>Joan Radovich, Esquire<br>Kathleen L. Roach, Esquire<br>Sidley Austin LLP<br>1 S. Dearborn Street<br>Chicago, IL  60603 |
| Philip A. Munroe, Esquire<br>DiRenzo & Bomier, LLC<br>Two Neenah Center, Suite 701<br>P.O. Box 788<br>Neenah, WI  54957-0788 | Scott B. Fleming, Esquire<br>Weiss Berzowski Brady LLP<br>700 North Water Street, Suite 1400<br>Milwaukee, WI 53202 |
| J. Ric Gass, Esquire<br>Gass Weber Mullins LLC<br>309 N Water St - Ste 700<br>Milwaukee, WI 53202 | Michael L. Hermes, Esquire<br>Metzler Timm Treleven & Hermes SC<br>222 Cherry St<br>Green Bay, WI 54301-4223 |

s/ David G. Mandelbaum
David G. Mandelbaum
Marc E. Davies
Sabrina Mizrachi
Ronald M. Varnum
Jennifer E. Simon
BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
A Pennsylvania Limited Liability Partnership
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel. 215-665-8500

Attorneys for Defendant,
P.H. Glatfelter Company

DMEAST #9983095 v4