# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

APPLETON PAPERS INC. and
NCR CORPORATION,

      Plaintiffs,

  v.

GEORGE A. WHITING PAPER
COMPANY, P.H. GLATFELTER
COMPANY, and MENASHA
CORPORATION,

      Defendants.

No. 2:08-cv-00016-WCG

**MEMORANDUM OF DEFENDANT MENASHA CORPORATION IN SUPPORT OF ITS MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendant Menasha Corporation ("Menasha") respectfully moves this Court to dismiss Counts I and III of Plaintiffs' Second Amended Complaint ("Complaint").

## INTRODUCTION

Plaintiffs' Complaint asserts three counts for relief against Menasha, two of which - Counts I and III - are facially deficient and must be dismissed as a matter of law.

Plaintiffs' First Count must be dismissed because the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") does not permit Plaintiffs such as NCR and API to assert a claim under both Section 107 and Section 113 (42 U.S.C. § 9607 and 42 U.S.C. § 9613, respectively). Here, Plaintiffs are entitled to relief, if at all, only under Section 113 of CERCLA because their own allegations and matters of public record referred to in their Complaint demonstrate they incurred costs involuntarily, only after state and federal agencies stepped in to address pollution in the Lower Fox River. The Court should therefore dismiss their

Section 107 claim. In addition, Plaintiffs lack standing to seek natural resource damages ("NRD") under Section 107(a)(4)(C) because only the government may recover such damages.

The Court should also dismiss Plaintiffs' Third Count for two reasons: the express language of CERCLA does not authorize declaratory judgments in Section 113 actions, and this Court cannot fully and accurately allocate shares for the entire future cleanup of the Fox River at this time.

**ARGUMENT**

**I.     Standard of Review**

A motion to dismiss should be granted where a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, matters of which judicial notice may be taken, and documents appended to the complaint or incorporated in the complaint by reference. See Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997) (allowing courts to take judicial notice of matters of public record without converting a 12(b)(6) motion to one for summary judgment); Adobe Lumber, Inc. v. Hellman, 415 F. Supp. 2d 1070, 1074 (E.D. Cal. 2006) ("[R]eliance on matters of public record 'does not covert a Rule 12(b)(6) motion to one for summary judgment.'"(citation omitted)). Such documents may include consent decrees, administrative orders, and other similar documents which the party bringing the complaint was not only aware of, but relied upon in bringing the action. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995))); see, e.g.,

CadleRock Props. Joint Venture, L.P. v. Schilberg, No. 3:01cv896 (MRK), 2005 U.S. Dist. LEXIS 14701, at *8 (D. Conn. July 18, 2005) (considering a state administrative order on a motion to dismiss, noting that not only was the plaintiff fully aware of the order, but it was one of the underlying reasons that the plaintiff brought the action for contribution).

## II. Plaintiffs Have Failed to State a Claim for Relief Under CERCLA Section 107

In Count I of the Complaint, Plaintiffs allege that Menasha and the other Defendants are liable under Section 107 of CERCLA for amounts Plaintiffs allegedly have paid pursuant to certain consent decrees Plaintiffs entered into with the government. (Dkt. No. 41 ¶¶ 52-53.) The Seventh Circuit has made it clear that a plaintiff cannot bring a claim under both Sections 107 and 113, and Plaintiffs' Section 113 contribution claim therefore forecloses any Section 107 claim. In addition, NRD can only be recovered by the government and Plaintiffs therefore lack standing to assert such a claim. Therefore, Count I fails to state a claim upon which relief can be granted and must be dismissed.

### A. Plaintiffs Cannot Recover Under Section 107 of CERCLA

Plaintiffs' Complaint improperly seeks to recover the same costs and damages under both Sections 107 and 113 of CERCLA. (Dkt. No. 41 ¶¶ 52-53, 58.) Because the Seventh Circuit has held that a party may *only* bring a claim under Section 107 where it does not have a claim under Section 113, and Plaintiffs seek the same costs and damages under both Sections, Plaintiffs' First Count must be dismissed.

Sections 107 and 113 "provide two 'clearly distinct' remedies" for the recovery of response costs under CERCLA. United States v. Atl. Res. Corp., 127 S. Ct. 2331, 2337 (2007) (citation omitted). Section 113 allows a PRP who was subject to a Section 106 or Section 107 enforcement action or who entered into a judicially or administratively approved settlement to seek contribution from others under Section 113(f). See 42 U.S.C. § 9613(f)(1), (3)(B); Atl.

Res., 127 S. Ct. at 2338 & n.5. In contrast, Section 107 "permits recovery of cleanup costs but does not create a right to contribution." Atl. Res., 127 S. Ct. at 2338. Therefore, PRPs, like Plaintiffs here, may recover costs under Section 107 *only* if they have incurred those costs voluntarily. See id.; Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc., 423 F.3d 90, 100, 102 (2d Cir. 2005).

In United States v. Atlantic Research Corp., the Supreme Court considered the distinction between Sections 107 and 113. The Court explained that Sections 107 and 113 are available to "'persons in different procedural circumstances.'" 127 S. Ct. at 2338 (quoting Consol. Edison, 423 F.3d at 99). It noted that Section 113 "authorizes a contribution action to PRPs with *common liability*," id. at 2335 (emphasis added), and cited language from the Eighth Circuit Court of Appeals explaining that "PRPs that have been subject to §§ 106 or 107 enforcement actions *are still required to use § 113*, thereby ensuring its continued vitality." Id. at 2335 (emphasis added). The Supreme Court therefore made it clear that a PRP can not "avoid § 113(f)'s equitable distribution of reimbursement costs among PRPs by instead choosing to impose joint and several liability on another PRP in an action under § 107(a)." Id. at 2338-39. At bottom, the Supreme Court stated clearly: "[C]osts of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)." Id. at 2338 n.6.

A number of federal courts of appeals, including the Seventh Circuit, have similarly held that a liable party may *only* bring a claim under Section 107 if they do not have a claim for contribution under Section 113(f).[1] See ITT Indus., Inc. v. BorgWarner, Inc., 506 F.3d 452, 458

---

[1] In Atlantic, the Supreme Court expressly chose not to decide whether costs compelled under a consent decree were recoverable under Section 113(f), Section 107(a), or both. Id. at 2338 n.6. The Supreme Court therefore did not overrule circuit decisions, such as Metro. Water Reclamation Dist. v. N. Am. Galvanizing & Coatings, Inc., 473 F.3d 824 (7th Cir. 2007), which previously found that a plaintiff in this circumstance may bring only a Section 113 claim.

{4
Case 2:08-cv-00016-WCG    Filed 03/24/08    Page 4 of 17    Document 64

(6th Cir. 2007) ("To maintain the vitality of § 113(f), however, PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f)"); Metro. Water Reclamation Dist. v. N. Am. Galvanizing & Coatings, Inc., 473 F.3d 824, 835-36 (7th Cir. 2007) (holding a plaintiff can plead a Section 107(a) claim where the party "neither has settled any liability with a government entity nor has been the subject of a CERCLA suit for damages" and reaffirming its earlier jurisprudence that "a claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make' must be brought under § 113(f)(1)." (citation omitted)); Atlantic Res. Corp. v. United States, 459 F.3d 827, 836-37 (8th Cir. 2006) ("[L]iable parties which have been subject to §§ 106 or 107 enforcement actions are still required to use § 113, thereby ensuring its continued vitality."), aff'd, 127 S. Ct. 1144 (2007); Consol. Edison, 423 F.3d at 102 (affirming its holding in Bedford Affiliates v. Sills, 156 F.3d 416 (2d Cir. 1998), which the court read "to hold that a party that has incurred or is incurring expenditures under a consent order with a government agency and has been found partially liable under section 113(f)(1) may not seek to recoup those expenditures under section 107(a)"); Glidden Co. v. FV Steel and Wire Co., 350 B.R. 96, 102 (E.D. Wis. 2006) (noting that Seventh Circuit precedent barred parties that have access to Section 113(f)(1) claims from pursuing claims under Section 107(a)).

  The clear language of Section 113 supports this reasoning. Section 113(f) provides two separate mechanisms by which a PRP may seek contribution: Section 113(f)(1) and Section 113(f)(3)(B). Cooper Indus. v. Aviall Servs., 543 U.S. 157, 163 (2004). Section 113(f)(1) sets forth: "Any person may seek contribution from any other person who is liable or potentially

liable under section 107(a), *during or following any civil action* under section 106 or under section 107(a)." (emphasis added). Section 113(f)(3)(B) provides:

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).[2]

Therefore, Section 113 permits a party to sue for contribution under Section 113 when the party was subject to enforcement action by the government.

Plaintiffs' Complaint seeks to recover costs and damages related to a 2001 Consent Decree (Civ. Action No. 06-CV-00484), a 2006 Consent Decree (Civ. Action No. 01-C-0816), and a 2004 Administrative Settlement. (Dkt. No. 41 ¶¶ 20, 23, 24, 52-53, 58). The terms of these consent decrees and settlements make clear that Plaintiffs incurred all these costs and damages involuntarily. For example, under the terms of the 2004 Administrative Settlement Agreement and Order, Plaintiff resolved their liability and incurred involuntary costs. (See Dkt. No. 41 ¶ 23.) Similar to the Consent Decrees, the Administrative Settlement contains a covenant by the Environmental Protection Agency ("EPA") and the Wisconsin Department of Natural Resources ("WDNR") not to sue or take administrative action pursuant to CERCLA and provides CERCLA contribution protection. The Administrative Settlement also expressly states that its contribution protection is authorized under Section 113(f)(2) and Section 122(h)(4), which entitle a party to contribution protection only if the party has "resolved its liability to the

---

[2] Section 113(f)(2) states:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

United States or a State in an administrative or judicially approved settlement" under Section 113(f)(3)(B) or "resolved its liability to the United States" for a Section 107 claim. See 42 U.S.C. § 9613(f)(2), (3)(B); 42 U.S.C. § 9622(h)(1), (4). The Administrative Settlement was approved by the EPA and the WDNR in March 2004. Given the involuntary nature of these payments, Plaintiffs cannot recover these costs and damages under Section 107.

### B. Plaintiffs Lack Standing To Assert A Claim for Natural Resource Damages Under CERCLA

The Court should also dismiss the NRD claims in Count I because Plaintiffs lack standing to assert such claims. "In every federal case, the party bringing the suit must establish standing to prosecute the action." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). Standing is a jurisdictional question. Vt. Agency of Nat. Res. v. United States ex rel. Steven, 529 U.S. 765, 771 (2000). With respect to standing here, federal courts have consistently held that *only* the government can assert a claim for NRD pursuant to Section 107(a)(4)(C) of CERCLA. As a result, Plaintiffs lack standing to assert a claim for NRD and that claim must be dismissed.

Section 107(a)(4)(C) provides liability for "damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release." Section 107(f) expressly states that: "In the case of an injury to, destruction of, or loss of natural resources under subparagraph (C) of subsection (a) of this section liability *shall be to the United States Government and to any State* for natural resources within the State . . . ." (emphasis added).

Relying on this language, federal courts have consistently held that *only* the United States, a state, or other natural resource trustee (e.g., a tribal government) may seek recovery for damages to natural resources and, as a corollary, have held that Section 107(a)(4)(C) does not

7

provide a cause of action for private parties. See, e.g., Alaska Sport Fishing Ass'n v. Exxon Corp., 34 F.3d 769, 770, 774 n.6 (9th Cir. 1994) (per curiam) (affirming dismissal of plaintiffs' claims for "damages for loss of use and enjoyment of natural resources" because plaintiffs "failed to alleged private, individual injuries" and noting, "The proposition that individuals cannot recover damages for harm not distinct from the harm suffered by the public at large is consistent with the legislative history behind CERCLA."); Artesian Water Co. v. Gov't of New Castle County, 851 F.2d 643, 649 (3d Cir. 1988) ("It is significant that the Act grants the right to assert claims for damages to natural resources only to governmental entities, not private persons.").[3]

This statutory construction is also supported by Congress's use of the term "costs" in Section 107(a)(4)(B) instead of the term "damages" as used in 107(a)(4)(C). See 42 U.S.C. § 9607(a)(4)(B) (creating liability for "any other necessary *costs* of response incurred by any other person consistent with the national contingency plan" (emphasis added)). "The terms 'costs' and 'damages' are . . . assigned mutually exclusive definitions under CERCLA. . . . the term 'damages' is consistently used in the context of natural resources or reference to the exclusive standing of federal or state government to recover for natural resource damages." United States

---

[3] See also Coeur D'Alene Tribe v. Asarco Inc., 280 F. Supp. 2d 1094, 1115 (D. Idaho 2003) ("It is true that CERCLA does not permit private parties to seek recovery for damages to natural resources held in trust by the federal, state or tribal governments . . . ."); City of Portland v. Boeing Co., 179 F. Supp. 2d 1190, 1202 (D. Or. 2001) ("In 42 U.S.C. § 9607(f), Congress specifically limited the plaintiffs in natural resource actions to natural resource trustees acting on behalf of the federal government, the state and certain Indian tribes."); Borough of Sayreville v. Union Carbide Corp., 923 F. Supp. 671, 680 (D.N.J. 1996) ("Only the Federal government or an authorized representative of a state has standing to bring an action for natural resource damages recovery under section 107(a)(4)(C)."); Borough of Rockaway v. Klockner & Klockner, 811 F. Supp. 1039, 1049 (D.N.J. 1993) ("[O]nly a 'state official,' specifically appointed by the governor of the state, may be an 'authorized representative' for purposes of bringing an action to recover for natural resource damages."); cf. Ohio v. U.S. Dep't of the Interior, 880 F.2d 432, 451 (D.C. Cir. 1989) (noting Congress deleted from the final version of CERCLA a provision which would have allowed private parties to recover damages for lost use of any natural resources).

v. Mottolo, 605 F. Supp. 898, 904 (D.N.H. 1985) (citing 42 U.S.C. § 9607(a)(4)(C) and (f)). Thus, "natural resource damage claims and actions are the exclusive privilege of federal and state governments (§ 9607[f])." Id. at 905.

Plaintiffs fail to allege, and cannot allege, that they are trustees of natural resources along the Lower Fox River or any other natural resources. They are merely private parties seeking to usurp the "exclusive standing of federal or state government to recover for natural resource damages." Id. at 904. Plaintiffs' purported NRD claims against Menasha do not belong to Plaintiffs; any claims belong to the natural resource trustees. Plaintiffs thus lack the necessary standing to proceed with their Section 107 NRD claims against Menasha or any other defendant. See Am. Fed'n of Gov't Employees, Local 2119 v. Cohen, 171 F.3d 460, 465 (7th Cir. 1999) ("[I]f a plaintiff cannot establish standing to sue, relief from this court is not possible, and dismissal under 12(b)(1) is the appropriate disposition."); see, e.g., Hook v. Lockheed Martin Corp. (In re Burbank Envtl. Litig.), 42 F. Supp. 2d 976, 980-81 (D. Cal. 1998) ("Plaintiffs are private parties bringing this suit, and they do not bring the suit on behalf of the government or Indian tribes. Thus, plaintiffs' claim under CERCLA for natural resource damages is dismissed.").

Viewed another way, the fact that Plaintiffs are not authorized NRD trustees under Section 107(a)(4)(C) means that Plaintiffs' claim under that section fails to state a claim upon which relief can be granted. See, e.g., City of Toledo v. Beazer Materials & Servs., 833 F. Supp. 646, 650-52, 662 (N.D. Ohio 1993) (granting defendants' motion to dismiss plaintiff's Section 107(a)(4)(C) claim after finding recovery for such harm limited to the United States or the State in which the resources lie); Town of Bedford v. Raytheon Co., 755 F. Supp. 469, 470, 475 (D. Mass. 1991) (granting defendants' motion to dismiss plaintiff's Section 107(a)(4)(C) claim after

finding such claims limited to "the United States Government and any State"); Lutz v. Chromatex, Inc., 718 F. Supp. 413, 419 (M.D. Pa. 1989) (granting defendants' motion to dismiss plaintiffs' claim of response costs for damage to natural resources and holding, "Under CERCLA . . . actions for injury, destruction, or loss of a natural resource may be brought only by the federal government or a state." (citing 42 U.S.C. § 9607(f))).

In sum, under either approach to the analysis, Menasha is entitled to dismissal of Plaintiffs' Section 107(a)(4)(C) claims as a matter of law.

### III. A Declaratory Judgment Is Unauthorized, Premature, and Contrary to the Purposes of CERCLA.

Count III of the Complaint seeks a declaratory judgment allocating both past and future costs and damages associated with the Lower Fox River cleanup, and holding Defendants liable for that share of costs and damages allocated to them. (Dkt. No. 41 ¶¶ 64-65, Prayer for Relief.) Count III also fails to state a claim for relief because (1) Plaintiffs cannot assert a claim for relief under Section 107 of CERCLA, and (2) Section 113 does not allow a declaratory judgment for the recovery of costs or NRD. Moreover, entering a declaratory judgment with the limited parties and issues Plaintiffs' Complaint presents to the Court would be premature, speculative and contrary to the purposes of CERCLA.

#### A. Plaintiffs Have No Claim For Declaratory Relief Under Section 107

As explained above, Plaintiffs have failed to state a claim for relief under Section 107 of CERCLA. Because Plaintiffs fail to state a claim under Section 107, it necessarily follows that they cannot seek a declaratory judgment for the recovery of costs or natural resource damages under Section 107. See, e.g., CadleRock Props., 2005 U.S. Dist. LEXIS at **32-34 (finding that where the plaintiff had no underlying legal claim, the court did not have subject matter jurisdiction to grant a declaratory judgment); Mercury Mall Assocs., Inc. v. Nick's Mkt., Inc.,

}10

368 F. Supp. 2d 513, 520 (E.D. Va. 2005) (finding that where a cost recovery action was not "viable," an action for declaratory relief was unavailable); Union Station Assocs. LLC v. Puget Sound Energy, Inc., 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002) (stating that plaintiffs' claims for declaratory relief under CERCLA and the Declaratory Judgment Act could not stand in the absence of a substantive cause of action); Estes v. Scotsman Group, 16 F. Supp. 2d 983, 992 (C.D. Ill. 1998) (dismissing plaintiffs' claims under Sections 107 and 113 and holding that plaintiffs' request for declaratory judgment with respect to responsibility of future costs under these section was therefore moot); see also GNB Battery Techs., Inc. v. Gould, Inc., 65 F.3d 615, 619 (7th Cir. 1995) ("[B]ecause the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction, the district court must possess an independent basis for jurisdiction" (citation omitted)).

### B. The Express Language of CERCLA Section 113 Does Not Allow Declarations of Future Liability or Future Allocation of Costs

The express language of CERCLA Section 113 does not allow for declaratory judgments regarding either liability for or allocation of future costs. Section 113(g)(2), the portion of CERCLA authorizing declaratory judgments, states: *"In any such action* described in this subsection, the court shall enter a declaratory judgment *on liability* for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2) (emphasis added). Courts applying this provision have interpreted the phrase "any such action" as meaning "cost recovery actions" under Section 107. See, e.g., Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1191 n. 48 (9th Cir. 2000); Raytheon Co. v. McGraw-Edison Co., 979 F. Supp. 858, 865 n.8 (E.D. Wis. 1997). The plain language of Section 113(g)(2) therefore only authorizes declaratory judgments in Section 107 actions. See Raytheon, 979 F. Supp. at 865 n.8 ("Declaratory judgment is only available in a direct cost

}11

recovery action."); Reichold Chems., Inc. v. Textron, Inc., 888 F. Supp. 1116, 1124 (N.D. Fla. 1995); Nick's Mkt., Inc., 368 F. Supp. 2d at 520 ("Declaratory relief under § 9613(g)(2) is only available in connection with an active cost recovery action."). The plain language of Section 113(f)(2) likewise only authorizes declaratory judgment as to *liability*, not allocation. 42 U.S.C. § 113(g)(2). Because Plaintiffs seek an order allocating the shares of cleanup costs between the Defendants and "other responsible parties" the relief it seeks is not available under the clear language of Section 113(g)(2). (Dkt. No. 41 ¶ 3.)

### C. The Declaratory Judgment Act Does Not Support the Entry of a Declaratory Judgment

Plaintiffs apparently seek to avoid the effect of CERCLA's declaratory judgment provision by citing to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), in support of their request for a declaratory judgment. (Dkt. No. 41 ¶ 65.) Plaintiffs' Complaint requests that the Court enter a declaratory judgment allocating <u>all</u> costs and damages associated with the Lower Fox River cleanup, both those Plaintiffs have already incurred and those that they allege they will incur in the future. (Id.) The Court should not enter a declaratory judgment prematurely and speculatively allocating future costs and damages associated with the cleanup, for several reasons. See In re VMS Sec. Litig., 103 F.3d 1317, 1327 (7th Cir. 1996) (noting that the Declaratory Judgment Act grants a district court "wide discretion to decide whether or not to use its discretion to issue declaratory judgments").

First, Plaintiffs' request for declaratory judgment as to allocation of future costs is inappropriate because not all of the PRPs are before this Court. See Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co., 416 F.2d 707, 710 (7th Cir. 1969) ("To avoid a partial disposition of a controversy, all persons who have an interest in the determination of the questions raised in a declaratory judgment suit should be before the court."); Levin Metals Corp. v. Parr-Richmond

}12

Terminal Co., 799 F.2d 1312, 1317 n.6 (9th Cir. 1986) ("[A]ll persons who have an interest in determination of the questions raised in the declaratory judgment suit should be before the court."). In fact, Plaintiffs' Complaint admits that the purpose of the present lawsuit is to require Defendants and *other responsible parties* to pay for upcoming remedial work and damages in accordance with their fair shares. (Dkt. No. 41 ¶ 3 (emphasis added).) As the Court will recall, Plaintiffs also sought and received leave to name a number of PRPs as defendants in this case, but to date have failed to do so. (See Dkt. No. 30.) In fact, Plaintiffs admit that the cleanup of the river implicates at least two dozen other non-parties to this case, many of whom have tolling agreements with Plaintiffs. (Dkt. No. 41 ¶ 3.)

Without all of these entities before the Court, an accurate, fair, and complete allocation of responsibility for the costs of the cleanup is impossible. As the Complaint notes, a number of parties have been working since the mid-1990's to address the Lower Fox River contamination. (Dkt. No. 41 ¶ 17.) As a result, these parties have gained vast knowledge and evidence which not only relates directly to the scientific issues in this case, but also to the relative fault of the parties involved. Allocating future liability as to the current Defendants without having the other PRPs in this case would therefore create a high risk of factual and legal error and would leave Menasha with a substantial risk of inconsistent rulings.[4]

Moreover, for an allocation regarding future Lower Fox River costs and damages to be complete, the issues Plaintiffs, Defendants, and the Court litigate in this case must also be litigated with respect to the remaining PRPs in subsequent cost recovery or contribution actions. The "costs and time involved in relitigating issues as complex as these" will be "massive and

---

[4] In contrast, it is proper for the Court to determine Plaintiffs' *present* right to contribution under Section 113, since a contribution action focuses on whether Plaintiffs have paid more than their fair share *to date*. Plaintiffs' potential recovery in contribution from Defendants can only be for that alleged overpayment.

wasteful" and will not be eliminated by a declaratory judgment in this action. Boeing Co., 207 F.3d at 1191. To avoid this result, this Court may have to incorporate a "contingency clause" into its declaratory judgment, allowing the parties to relitigate allocation if new evidence bearing on the allocation decision comes to light as the response action proceeds. See Beazer East, Inc. v. Mead Corp., 412 F.3d 429, 449 (3d Cir. 2005) (holding that any declaratory judgment entered on remand should contain a provision allowing the parties to relitigate the allocation of costs for good cause shown in response to *new events* or *new evidence* that would reasonably bear upon the equity of the allocation, explaining that "[s]uch contingency provisions are generally favored in CERCLA contribution actions"); United States v. Davis, 261 F.3d 1, 45 n.41 (1st Cir. 2001) ("The district court 'retained jurisdiction for the purpose of revising this allocation if and when additional facts are discovered that were not reasonably available to the parties at the time of trial . . . .'" (citation omitted)). But allocating liability in this manner, such that parties cannot rely on the accuracy and finality of a declaratory judgment, is contrary to the very purposes of entering a declaratory judgment, and of CERCLA itself. See Boeing Co., 207 F.3d at 1191 (stating that the purpose of CERCLA is to "encourage quick response and to place the costs on those responsible" and explaining that "Declaratory relief serves these purposes because . . . . [t]he more liability can be limited and quantified, the more practical it is for a party to budget and borrow to finance it. Environmental litigation is tremendously complex, lengthy, and expensive. The costs and time involved in relitigating issues as complex as these where new costs are incurred would be massive and wasteful.").

    Finally, a declaratory judgment in this case would necessarily be speculative because no one knows at this juncture the full extent of the cleanup. The Lower Fox River is over 35 miles long and includes a number of different sites. As the Complaint correctly implies, the majority

of the remedial action in the Lower Fox River has yet to be done. (Dkt. No. 41 ¶ 4 (noting that Plaintiffs "expect that they will be required to pay considerably more than they have paid to date in order to comply with the November UAO").) It will potentially take decades to complete. Many of the factors the Court may wish to consider when allocating the future costs of response in the Lower Fox River have not been and cannot yet be determined. Over the course of this remaining remediation, the parties will undoubtedly discover facts and evidence which will directly impact the allocation of future liability. Any attempt to predict liability or allocation of future cost based on evidence regarding past costs will therefore be inaccurate, at best. Numerous courts have declined to hear declaratory judgment actions as to future costs under CERCLA where they deemed them to be speculative or premature, and this Court should do so as well. See, e.g., Basic Mgmt., Inc. v. United States, 2:02-cv-0884-RCJ-RJJ, 2008 U.S. Dist. LEXIS 16138, at *50 (D. Nev. Feb. 25, 2008); Advanced Tech. v. Eliskim, Inc., 87 F. Supp. 2d 780, 787-88 (N.D. Ohio 2000); Principal Mut. Life Ins. Co. v. W. Res., 963 F. Supp. 1071, 1075 (D. Kan. 1997), VME Americas, Inc. v. Hein-Werner Corp., 946 F. Supp. 683, 694 (E.D. Wis. 1996); D' Imperio v. United States, 575 F. Supp. 248, 253 (D.N.J. 1983).

## CONCLUSION

The Court should dismiss Count I of Plaintiffs' Complaint because, as evidenced by Plaintiffs' own allegations and matters of public record, Plaintiffs incurred costs involuntarily and lack standing to seek NRD under Section 107(a)(4)(C). The Court should also dismiss Count III because the express language of Section 113 does not authorize declaratory judgments in Section 113 actions and because, at least at present, a full and final allocation of future costs and damages is impossible. Menasha therefore respectfully requests that the Court dismiss Counts I and III of Plaintiffs' Complaint.

Dated: March 24, 2008

        s/ Mark R. Feldmann

        Mark R. Feldmann
        Wisconsin Bar No. 1017847
        Joseph J. Beisenstein
        Wisconsin Bar No. 1013866
        Menn Law Firm, Ltd.
        2501 E. Enterprise Avenue
        P.O. Box 785
        Appleton, WI 54912-0785
        Telephone: 920-731-6631
        Facsimile: 920-734-0981
        mark-feldmann@mennlaw.com
        joseph-beisenstein@mennlaw.com

        Delmar R. Ehrich[*]
        Minnesota Bar No. 148660
        Faegre & Benson LLP
        2200 Wells Fargo Center
        90 S. Seventh Street
        Minneapolis, MN 55402
        Telephone: 612-766-7000
        Facsimile: 612-766-1600

        Colin C. Deihl[*]
        Colorado Bar No. 19737
        Jacy T. Rock[*]
        Colorado Bar No. 36717
        Faegre & Benson LLP
        1700 Lincoln Street, Suite 3200
        Denver, CO 80203
        Telephone: 303-607-3500
        Facsimile: 303-607-3600

        Attorneys for Defendant Menasha Corporation

---

[*] Request for Admission in the Eastern District of Wisconsin pending.

}