**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | |
|---|---|
| APPLETON PAPERS INC. and<br>NCR CORPORATION,<br><br>      Plaintiffs,<br><br>      v.<br><br>GEORGE A. WHITING PAPER COMPANY,<br>P. H. GLATFELTER COMPANY,<br>MENASHA CORPORATION,<br>GREEN BAY PACKAGING INC.,<br>INTERNATIONAL PAPER COMPANY,<br>LEICHT TRANSFER & STORAGE COMPANY,<br>NEENAH FOUNDRY COMPANY,<br>NEWPAGE WISCONSIN SYSTEM INC.,<br>THE PROCTER & GAMBLE PAPER<br>PRODUCTS COMPANY, and<br>WISCONSIN PUBLIC SERVICE CORP.,<br><br>      Defendants. | No. 08-CV-00016-WCG |

<u>**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS P.H. GLATFELTER
COMPANY'S AND MENASHA CORPORATION'S MOTIONS TO DISMISS**</u>

      Plaintiffs Appleton Papers Inc. and NCR Corporation, by and through their

undersigned counsel, hereby file their consolidated Response to the Motions to Dismiss filed by

Defendants P.H. Glatfelter Company and Menasha Corporation.  For the reasons set forth herein,

both Motions should be denied.

**INTRODUCTION**

      The purpose of this lawsuit is to allocate the equitable shares of the cleanup and

other costs associated with PCB contamination at the Lower Fox River.  *See* Plaintiffs' Second

Amended Complaint ("Second Amended Complaint"), Dkt. No. 41, ¶ 3.  As Plaintiffs have

explained to the Court from the outset, this lawsuit is intended "to bring before this Court every

[potentially responsible party ("PRP")] that has not voluntarily resolved its responsibility," in order to reach "a global resolution of the share allocation issues in a single action specifically designed for this purpose." Plaintiffs' Brief in Support of Motion for Leave to File an Amended Complaint, Dkt. No. 9, p. 4. Such a comprehensive resolution will promote the most expedient and effective cleanup of the Lower Fox River Site.

In furtherance of these objectives, Plaintiffs filed a Second Amended Complaint against Defendants George A. Whiting Paper Company, P.H. Glatfelter Company, and Menasha Corporation (collectively, "Defendants").[1] The Second Amended Complaint asserts three counts against Defendants. Count I seeks recovery under Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 *et seq.*, for those costs Plaintiffs have incurred in excess of their responsibility at the Lower Fox River Site. Count II seeks contribution under Section 113(f)(1) for costs of reimbursement Plaintiffs have had to pay in connection with the cleanup activities at the Lower Fox River Site. Finally, Count III seeks a declaratory judgment under Section 113(g)(2) and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), setting the allocable shares for each Defendant at the Lower Fox River Site.

Defendants P.H. Glatfelter Company and Menasha Corporation (individually, "Glatfelter" and "Menasha"; collectively, "Movants") each move to dismiss Counts I and III of the Second Amended Complaint. In addition, Glatfelter moves to dismiss the "portion" of Count II that relates to the Little Lake Butte de Mortes segment of the Lower Fox River.

These motions are without merit. This Court is clearly authorized under CERCLA and the DJA to issue declaratory relief setting allocable shares going forward, as

_____
[1] Since Movants filed their Motions to Dismiss, Plaintiffs filed a Third Amended Complaint. The Third Amended Complaint adds seven additional defendants, but the allegations against the Movants have not changed. Accordingly, the filing of the Third Amended Complaint should not affect the Court's resolution of the Motions to Dismiss.

sought in Count III.  Movants' arguments to the contrary fly in the face of overwhelming prior

case law as well as good, practical sense.  In addition, Plaintiffs have clearly stated a claim in

Count I for Defendants' portion of  response costs and damages under Section 107 of CERCLA,

according to the U.S. Supreme Court's recent decision in *United States v. Atlantic Research*, 127

S. Ct. 2331 (2007).  In making their arguments, Movants have ignored or misunderstood central

allegations in Count I.

        The current situation is as follows: the United States Environmental Protection

Agency ("USEPA") has ordered cleanup work to begin on the most contaminated areas of the

river.  *See* Second Amended Complaint, Dkt. No. 41, ¶ 16; Plaintiffs' March 21, 2008 Letter to

the Court, Dkt. No. 54, pp. 1-2.  However, those parties that discharged PCBs into these areas –

which include Movants Glatfelter and Menasha – have been unable to agree amongst themselves

on how to share those costs.  The fair and practical solution is to join these parties in one

proceeding where they can collectively investigate, at one time, their respective claims and

defenses and have their shares determined once and for all.  Movants, however, seek to parse this

proceeding.  They would have this Court make fine distinctions, at the outset, between certain

types of monies paid.  And they would fragment this single, inclusive proceeding into a series of

rolling and repetitive mini-trials, with liability and share determinations made anew in each.

Such an approach, whatever its motivation, would not facilitate the goals of CERCLA or lead to

a prompt and appropriate response to the PCB contamination at the Lower Fox River Site.

## STANDARD OF REVIEW

        The plain language of Federal Rule of Civil Procedure 8(a)(2) requires only that a

plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to

relief."  In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

court is to "accept all well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). The federal rules generally require "only that the complaint state a claim, not that it plead the facts that if true would establish . . . that the claim was valid." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). "All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Westerfield v. Quizno's Franchise Co., LLC*, 527 F.Supp. 2d 840, 845 (E.D. Wis. 2007) (*citing Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002)). Lastly, the gratuitous factual assertions in Movants' briefs should be disregarded. What is relevant for these motions are the factual allegations set forth in Plaintiffs' Second Amended Complaint.

## ARGUMENT

**I.    Plaintiffs Have Stated a Claim For Declaratory Relief Allocating Future Response Costs Pursuant to Their Claim Under Section 113(f).**

In Count III, Plaintiffs seek a declaratory judgment allocating future response costs pursuant to their claim under Section 113(f) in Count II. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), clearly authorizes this Court to grant such relief.

A.    Courts have repeatedly held that Section 113(g)(2) applies to contribution claims brought under Section 113(f).

Virtually every court that has interpreted the scope of Section 113(g)(2), including two Courts of Appeal and numerous district courts, has held that Section 113(g)(2) authorizes the issuance of declaratory relief for claims brought under Section 113(f). In fact, the seminal case on this issue is the first case cited by Menasha itself, *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177 (9th Cir. 2000).

In *Boeing*, the district court issued a declaratory judgment on the plaintiff's Section 113(f) contribution claim, ordering "that the remaining cleanup expenses should [] be

split 70:30." *Id*. at 1191.  On appeal, the defendants argued – as Movants here argue – that the district court was not empowered to issue declaratory relief under Section 113(g)(2) for a Section 113(f) contribution claim.  The Ninth Circuit expressly rejected this argument, finding that "[although] [t]he statute is silent on whether declaratory judgments are authorized in contribution actions . . . *[i]t does not prohibit them.  It is hard to see why it would." Id*. (emphasis added). Further, the court rejected the argument– also made by Movants here – that the "plain language" of Section 113(g)(2) forecloses declaratory relief in a contribution action:

> Nor do we see much force to [the defendant's] argument based on syntax. If [Section 113(g)(2)] said that the court "may" grant declaratory judgments, there might be an implication that it may not in another section without the "may grant" language. But saying, as the statute does, that the court "shall" grant declaratory judgments in cost recovery cases does not imply that it may not in cases where it is silent. Saying that a court "shall" do A, may as reasonably imply that it "may" do B, about which it is silent.

*Id*.

Like the Ninth Circuit, the First Circuit has also held that Section 113(g)(2) permits declaratory relief in a Section 113(f) contribution claim.  *See United States v. Davis*, 261 F.3d 1 (1st Cir. 2001).  In *Davis*, as in *Boeing*, the court expressly held that "§ 9613(g)(2), the declaratory judgment provision of CERCLA, applies to § 9613(f) contribution actions for both past and future response costs." *Id*. at 46.  The court adopted the reasoning of *Boeing* and other courts, noting that "[d]eclaratory relief allocating future costs [in Section 113(f)(1) contribution actions] is . . . consistent with the broader purposes of CERCLA." *Id*. at 47 (citations omitted).

The Seventh Circuit has not yet directly addressed this issue, but the one district court in the Seventh Circuit to address the question has concluded that declaratory relief is available for contribution claims under Section 113(f).  *See Norfolk South. Railway Co. v. Gee Co., et al.*, No. 98-C-1619, 2002 U.S. Dist. LEXIS 18980, * 111 (N.D. Ill. September 30, 2002).

Citing *Boeing*, the *Norfolk* court held that "[i]n actions under CERCLA § 113, the court has discretion to enter a declaratory judgment" under Section 113(g)(2)). *Id.*

This is also the prevailing view among district courts around the country. *See e.g., F.P. Woll & Co. v. Fifth and Mitchell St. Corp.*, No. 96-CV-5973, 2006 U.S. Dist. LEXIS 57405 (E.D. Pa. August 16, 2006) (granting prospective declaratory relief for contribution claims brought under Section 113(f), noting that the Third Circuit "implicitly approved of the use of declaratory judgments in CERCLA contribution actions") (*citing Beazer East Inc. v. Mead Corp.*, 412 F.3d 429 (3d Cir. 2005); *Durham Mfg. Co. v. Merriam Mfg. Co.*, 294 F.Supp. 2d 251, 268 (D. Conn. 2003) ("CERCLA . . . permits a declaratory judgment allocating future response costs between PRPs"); *RSR Corp. v. Commercial Metals, Inc.*, 494 F.Supp. 2d 690, 700 (S.D. Oh. 2006) (following *Boeing* and affirmatively rejecting "the Defendant's premise that Plaintiff's claim for a declaratory judgment must be dismissed, because such relief is unavailable in a contribution action").

Movants inexplicably disregard this substantial authority. While Menasha does refer to *Boeing* and *Davis*, at no point does it address their central holdings authorizing declaratory relief in Section 113(f) contribution actions.[2] Glatfelter does not even cite these cases. Instead, Movants rely on three district court cases to support their argument that declaratory relief under Section 113(g)(2) is limited to "cost recovery actions under Section 107." Memorandum of Defendant Menasha Corporation in Support of Its Motion to Dismiss ("Menasha Mem."), p. 11. None of these cases offers a compelling justification for disregarding the prevailing view among the Courts of Appeal and district courts.

---

[2] For example, Menasha cites to a footnote in *Boeing* that merely quotes the language of Section 113(g)(2), yet utterly ignores the court's holding that the Section 113(g)(2) *is* applicable to contribution claims brought under Section 113(f)(1). *See* Menasha Mem. p. 11.

First, Menasha relies on a single statement in *Raytheon Co. v. McGraw-Edison Co.*, 979 F.Supp. 858 (E.D. Wis. 1997), which reads, "[d]eclaratory judgment is only available in a direct cost recovery action." *Raytheon*, 979 F.Supp. at 865 n8. This statement, contained in a footnote, was not the result of any substantive discussion of the issue by the court. Moreover, it is mere dicta because the court had already concluded that the plaintiff had valid claims under both Section 113(f) and Section 107.

Second, Menasha cites to *Reichhold Chems, Inc. v. Textron, Inc.*, 888 F.Supp. 1116, 1124 (N.D. Fla. 1995), in which the court stated that, "by its explicit language [Section 113(g)(2)] applies only to cost recovery actions under Section 107." However, Menasha fails to note that subsequent courts that have addressed this issue, including another district court in the Eleventh Circuit, have declined to follow *Reichhold*, and have instead held that Section 113(g)(2) *does* permit declaratory judgments in contribution claims. *See Davis*, 261 F.3d at 46 (declining to follow *Reichhold* and following *Boeing*); *Canadyne-Georgia Corp. v. Bank of America*, 174 F.Supp. 2d 1337, 1359 (M.D. Ga. 2005) (same).

Third, Menasha cites to *Mercury Mall Assocs., Inc. v. Nick's Mkt., Inc.*, 368 F.Supp. 2d 513, 520 (E.D. Va. 2005), in which the court noted that "[d]eclaratory relief under § 9613(g)(2) is only available in connection with an active cost recovery action." In making this statement, however, the *Mercury Mall* court did not say that declaratory relief cannot be granted for Section 113(f) actions, as Menasha implies. It did not because it could not: there was no Section 113(f) claim in the *Mercury Mall* case.[3] Instead, the court was simply making the straightforward observation that once the plaintiff's Section 107 claim had been dismissed, there was no underlying claim upon which declaratory relief could be granted.

---

[3] Pursuant to the Supreme Court's decision in *Cooper Industries v. Aviall*, 543 U.S. 157 (2004), the plaintiffs in *Mercury Mall* voluntarily dismissed their claim under Section 113(f)(1) because a civil action under Sections 106 or 107 had not commenced.

B. Section 113(g)(2) does not proscribe or limit this Court's authority to issue declaratory relief under Section 113(g)(2).

Movants also argue that the "plain language" of Section 113(g)(2) does not authorize this Court to issue declaratory relief regarding the allocation of future costs. This argument mischaracterizes the actual language of the statute.[4]  Contrary to Movants' argument, there is simply nothing in the "plain language" of Section 113(g)(2) that limits a court's authority to enter declaratory judgments to only the *amount* of liability, or to certain *categories* of response costs or damages.  Section 113(g)(2) plainly states: "In any such action described in this subsection, the court shall enter a declaratory judgment *on liability for response costs or damages . . . .*"  42 U.S.C. § 9613(g)(2) (emphasis added).  A declaratory judgment on the allocation of future costs clearly relates to "liability for response costs or damages," and is well within the scope of this Court's authority under Section 113(g)(2).

Movants' interpretation of Section 113(g)(2) is at odds not only with the actual language of the statute, but also with the substantial case law on this issue.  Courts have consistently granted declaratory judgments on the allocation of future costs in contribution actions.  As the Ninth Circuit explained in *Boeing*, it makes practical sense to do so:

> CERCLA was intended to encourage quick response and to place the costs on those responsible.  Declaratory relief serves these purposes because all parties, like those in this case, will know their share of costs before they are incurred. The more liability can be limited and quantified, the more practical it is for a party to budget and borrow to finance it. Environmental litigation is tremendously complex, lengthy, and expensive. The costs and time involved in relitigating issues as complex as these where new costs are

---

[4]  In making their argument, Movants also misquote the "plain language" on which they rely.  *See, e.g.*, Memorandum in Support of P.H. Glatfelter's Motion to Dismiss ("Glatfelter Mem."), p. 10 ("[t]he plain language of the statute authorizes only a declaration *of liability*") (emphasis added); Menasha Mem., p. 12 ("The plain language of Section 113(f)(2) likewise only authorizes declaratory judgment *as to liability*, not allocation.") (emphasis added).  The language of Section 113(g)(2) does not use the phrase "of" or "as to" liability, as Movants claim.  Rather, the subsection authorizes declaratory judgments "*on* liability for response costs and damages."  The distinction is not insignificant: "on" liability clearly encompasses matters that *regard or concern* liability, such as allocation.  See, e.g., WEBSTER'S NEW WORLD DICTIONARY (4th Ed. 1999) (defining "on" as "with regard to; concerning").

> incurred would be massive and wasteful. Declaratory relief allocating future costs is therefore consistent with the broader purposes of CERCLA.

*Boeing*, 207 F.3d at 1191. The First Circuit offered a similar rationale in affirming a district court's declaratory judgment assigning allocable shares in a contribution action: "[A]llocation helps to alleviate the hardship that would be visited upon the [PRP] seeking contribution if that PRP was, in effect, required to finance the entire cleanup operation before getting a determination regarding the shares attributable to the other PRPs." *Davis*, 261 F.3d at 46. And the Tenth Circuit as well endorsed prospective declaratory relief in contribution actions, holding that "where, as here, a responsible party chooses to go to trial and future response costs are likely to be incurred, but the exact amount remains unknown, a judgment on proportional liability is an appropriate remedy." *Tosco Corp. v. Koch Indus.*, 216 F.3d 886, 897 (10th Cir. 2000) (affirming district court's declaratory judgment assigning fifteen percent allocation to defendant in contribution claim brought under Section 113(f)). Put simply, declaratory judgments on allocation make practical sense: establishing the responsible parties' shares going forward, rather than forcing them to relitigate the issue multiple times, promotes settlement, conserves judicial resources, and generally furthers CERCLA's objectives.

In sum, the plain language of Section 113(g)(2), the case law interpreting Section 113(g)(2), and the policy considerations underlying Section 113(g)(2) all support Plaintiffs' position that they may seek declaratory relief pursuant to their claim under Section 113(f). Movants' motions to dismiss this claim should therefore be denied.

## II. Plaintiffs Have Stated a Claim for Declaratory Relief Allocating Future Response Costs Pursuant to Their Claim Under Section 107.

In addition to their claim under Section 113(f), Plaintiffs also seek a declaratory judgment pursuant to their claim under Section 107. This too is clearly authorized by Section

113(g)(2).  It provides that "[i]n any such action *described in this subsection*, the court *shall* enter declaratory judgment on liability . . . ."  42 U.S.C. § 9613(g)(2) (emphasis added).  Section 113(g)(2) specifically refers to "actions under Section 107."  Therefore, it follows that courts are authorized – if not required – to issue declaratory relief pursuant to claims, like Plaintiffs', under Section 107.  *See, e.g., Boeing*, 207 F.3d at 1191 (noting that, under Section 113(g)(2), "the court 'shall' grant declaratory judgments in cost recovery cases").  Menasha itself acknowledges as much in its brief: "The plain language of Section 113(g)(2) therefore … authorizes declaratory judgments in Section 107 actions."  Menasha Mem., p. 11.

Nonetheless, Glatfelter insists that Plaintiffs may not seek declaratory relief pursuant to their claim under Section 107.  According to Glatfelter, Section 113(g)(2) allows for declaratory relief only in the "initial action" under Section 107, and because there have been prior actions to approve consent decrees relating to the Lower Fox River Site filed under Section 107, this lawsuit is not the "initial action." Glatfelter Mem., pp. 7-10.  This pedantic argument fails for four reasons.

First, the issue of allocating future response costs amongst all of the Fox River PRPs could not have been addressed in any of the prior "initial actions" Glatfelter points to.  In none of those actions were all of the Fox River PRPs (or even the parties in this case) before one court.  Nor did any those actions seek a declaratory judgment on the allocation of future costs.  Instead, each action was filed for the limited purpose of seeking approval of consent decrees with governmental parties.  It is for this reason that Plaintiffs have brought the present lawsuit – so that all the PRPs that have not otherwise settled their liability are joined in one proceeding and the Court can facilitate the cleanup of the Fox River by entering a declaratory judgment on the allocation of future response costs.

Second, Glatfelter's argument is premised on a misreading of Section 113(g)(2). Section 113(g)(2) states, in relevant part: "[i]n any such action *described in this subsection*, the court *shall* enter declaratory judgment on liability . . . ." 42 U.S.C. § 9613(g)(2) (emphasis added). Contrary to Glatfelter's reading of the statute, however, there are *two* actions "described" in Section 113(g)(2). In the first sentence, Section 113(g)(2) refers to an "initial action" to recover costs, and sets out the relevant statutes of limitations for that "initial action." *See id*. Then, in the third sentence, Section 113(g)(2) refers to "subsequent . . . actions under section 9607," and similarly sets out the statute of limitations for such actions. *Id*. While Glatfelter would like this Court to believe that the phrase "in any such action" refers *only* to the phrase "initial action," the fact is that Section 113(g)(2) clearly "describe[s]" or identifies both initial *and* subsequent actions under Section 107. Thus, according to the plain language of Section 113(g)(2), the Court is expressly authorized to issue declaratory relief in both.

Third, Glatfelter's argument ignores the line of cases in which courts have entered declaratory judgments under Section 113(g)(2) in actions other than an "initial action" under Section 107. For example, in *United States v. Davis*, the First Circuit upheld the district court's entry of a declaratory judgment on allocation under Section 113(g)(2) even though the district court had previously approved multiple consent decrees regarding the payment of cleanup costs. *Davis*, 261 F.3d at 14-15. The fact that the plaintiff's action was not the "first" action did not deter the First Circuit in any way from affirming the grant of declaratory relief. *Id*. at 49; *see also RSR Corp. v. Commercial Metals, Inc.*, 494 F.Supp. 2d at 698 (declaratory relief under Section 113(g)(2) was available even though there had been cost-recovery actions by both the government and private parties "many years before the initiation of this lawsuit"). This case law clearly shows that Section 113(g)(2) does not limit declaratory relief only to "initial actions" under Section 107.

Finally, Glatfelter's argument attempts to create restrictions on this Court's authority that simply do not exist in Section 113(g)(2). Even if Glatfelter is correct that the phrase "in any such action" refers only to the "initial action" brought under Section 107, it does not follow that Section 113(g)(2) precludes courts from issuing declaratory judgments in subsequent Section 107 actions. The fact that a court "shall" enter a declaratory judgment in an initial action does not necessarily mean that the court "shall not" enter a declaratory judgment in any other or subsequent action. As the Ninth Circuit noted in *Boeing*, "[s]aying that a court 'shall' do A, may as reasonably imply that it 'may' do B, about which it is silent." *Boeing*, 107 F.3d at 1191. Thus, just as the *Boeing* court held that a court "may" issue declaratory judgments under Section 113(g)(2) for contribution claims, this Court "may" issue declaratory judgments in subsequent actions brought under Section 107.

Despite Glatfelter's attempts to argue otherwise, both the language of Section 113(g)(2) and cases interpreting Section 113(g)(2) show that Plaintiffs may seek declaratory relief pursuant to their claim under Section 107(a). Accordingly, Glatfelter's motion to dismiss this claim should be denied.

## III. Plaintiffs Have Stated a Claim For Declaratory Relief Under The Declaratory Judgment Act.

In addition to seeking declaratory relief under CERCLA, Plaintiffs also seek declaratory relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a). This claim is clearly proper. The DJA states that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Plaintiffs have plainly and adequately alleged the existence of just such an "actual controversy" here:

> Defendants Glatfelter and Menasha have refused to acknowledge
> their fair and reasonable share for response costs and damages
> arising out of the Lower Fox River Contamination. Thus, an
> actual, substantial, and legal controversy has arisen and now exists
> between API and NCR, on the one hand, and Defendants, on the
> other, with regard to responsibility for the Lower Fox River Costs
> and damages and how these should be allocated among the parties.
> The controversy is of sufficient immediacy and reality to warrant
> the issuance of a declaratory judgment.

Second Amended Complaint, Dkt. No. 41, ¶ 63. Accordingly, Plaintiffs have stated a claim for

declaratory relief under the DJA.

In their motions, Movants offer a collection of reasons why the DJA cannot

support Plaintiffs' claim for declaratory relief, but none have any merit. Glatfelter asserts that

because Section 113(g)(2) does not authorize declaratory relief here, there is a conflict between

Section 113 and the DJA, and therefore the more general DJA cannot apply here. *See* Glatfelter

Mem., pp. 11-12. However, as discussed above, Section 113(g)(2) clearly *does* authorize this

Court to issue declaratory relief as to allocable shares (pursuant to both Plaintiffs' claims under

Section 113(f) and 107). As a result, there is no conflict between the two provisions, as

Glatfelter insists, and therefore declaratory relief under the DJA is entirely appropriate.

Glatfelter also argues that, "[i]n any event, no 'actual controversy' exists among

the parties at this time concerning costs yet to be incurred by any of them." Glatfelter Mem., p.

12. It is perplexing that Glatfelter argues that no actual controversy exists concerning future

costs, given that Glatfelter and Plaintiffs recently engaged in an unsuccessful mediation process

over the very issue of how future costs should be shared. *See, e.g.,* Plaintiffs' Brief in Support of

Motion for Leave to File an Amended Complaint, Dkt. No. 9, pp. 1-3; Plaintiffs' Expedited

Motion for Leave to File Second Amended Complaint, Dkt. No. 30, ¶ 3. It is equally perplexing

that Glatfelter could make this statement without any mention of the *specific allegations* of an

"actual controversy" in paragraph 63 of Plaintiffs' Second Amended Complaint, set forth above.

Plaintiffs have clearly alleged the factual basis of an actual controversy between the parties, and having done so, there is no basis to dismiss the claim for declaratory relief.[5]

For its part, Menasha makes three arguments why the DJA does not apply here. The first is that declaratory relief "is inappropriate because not all of the PRPs are before this Court." Menasha Mem., pp. 12-13. However, there is nothing in the DJA suggesting that a claim for declaratory relief, or this Court's power to issue declaratory relief, exists only if all potentially responsible parties are before the Court. To be sure, Plaintiffs agree with Menasha that it is clearly desirable to have all PRPs who have not otherwise resolved their liability at the Lower Fox River Site before this Court in a single proceeding. Plaintiffs filed the present lawsuit for this very purpose. *See* Plaintiffs' Brief in Support of Motion for Leave to File an Amended Complaint, Dkt. No. 9, p. 4 ("Plaintiffs will seek, through this lawsuit, to bring before this Court every PRP that has not voluntarily resolved its responsibility. This will allow for a global resolution of the share allocation issues in a single action specifically designed for this purpose."). However, the fact that it may be *desirable* to have all the PRPs together in this single proceeding does not mean that it is *required* in order to state a claim for declaratory relief under the DJA at the outset.

Menasha's second argument against declaratory relief under the DJA is that the issues litigated in this case will also have to be litigated "with respect to the remaining PRPs in subsequent cost recovery or contribution actions." Menasha Mem., p. 13. However, it is exactly because "[t]he 'costs and time involved in relitigating issues as complex as these' will be 'massive and wasteful,'" as Menasha notes, that the Court can and should issue declaratory relief in this action, either under Section 113 or the DJA. *See Boeing*, 207 F.3d at 1191 (because of

---

[5] Glatfelter also suggests that there is no "actual controversy" because Plaintiffs have not incurred any costs associated with the USEPA's Section 106 order, and therefore "cannot seek prospective allocation now." This is simply a repackaging of the argument that this Court is not authorized under Section 113 to issue prospective declaratory relief which, as shown in Section I-B, above, has no basis in CERCLA case law or policy.

concerns about efficiency, "[d]eclaratory relief allocating future costs is therefore consistent with the broader purposes of CERCLA").

Menasha's third argument is that "a declaratory judgment in this case would necessarily be speculative because no one knows at this juncture the full extent of the cleanup." Menasha Mem., p. 14-15.[6] Whether or not the future costs are speculative, declaratory relief can still be sought. Courts have uniformly held that "where . . . future response costs are likely to be incurred, but the exact amount remains unknown, a [declaratory] judgment on proportional liability is an appropriate remedy." *Tosco*, 216 F.3d at 897 (*citing Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844-45 (6th Cir. 1994) (a declaration of liability is appropriate even if future costs are somewhat speculative)); *see also Davis*, 261 F.3d at 46; *Boeing,* 207 F.3d at 1191-92 (rejecting the defendant's argument that the "facts of this case do not render it appropriate for declaratory relief because the costs of remediation are not sufficiently stable to permit declaratory relief"); *Sherwin-Williams Co. v. ARTRA Group, Inc.*, 125 F. Supp. 2d 739, 754 (D. Md. 2001) ("the speculative nature of future costs does not bar a present declaration of liability") (citation omitted).

In sum, Plaintiffs have alleged the existence of an actual controversy sufficient to state a claim for declaratory relief under the DJA, and none of Movants' arguments to the contrary compel a different conclusion. The motions to dismiss this claim, then, should be denied.

---

[6] Menasha cites five cases which it claims "have declined to hear declaratory judgment actions as to future costs under CERCLA where they deemed them to be speculative or premature . . . ." Menasha Mem., p. 15. However, none of these cases declined to grant declaratory relief because the *amount* of future costs was speculative, as Menasha claims is the case here; it was instead because the very *existence* of future costs was speculative. *See, e.g., Advanced Tech. v. Eliskim, Inc.*, 87 F.Supp. 2d 780, 788 (N.D. Oh. 2000) (declaratory judgment on future costs not appropriate because "this Court will not speculate as to *whether* additional response costs will be required in the future") (emphasis added); *Principal Mut. Life Ins. Co. v. W. Res.*, 963 F.Supp. 1071, 1075 (D. Kan. 1997) (declaratory judgment on future costs not appropriate where "no enforcement action has been initiated in the instant action nor has the government determined what action, if any, should occur with regard to the property"). In this matter, there is no doubt about the *existence* of future costs, and therefore the cases cited by Menasha are simply irrelevant.

**IV. Plaintiffs Have Stated a Claim for Cost Recovery under CERCLA Section 107(a).**

In Count I, Plaintiffs seek to recover certain of their costs pursuant to Section 107(a) of CERCLA. This is entirely consistent with Supreme Court precedent. In *United States v. Atlantic Research*, 127 S. Ct. 2331 (2007), the Court held that "*costs incurred voluntarily* are recoverable only by way of § 107(a)(4)(B)," and in this way a PRP could "recoup CERCLA-related costs from other PRPs." *Atlantic Research*, 127 S. Ct. at 2333, 2338 n6 (emphasis added). The Court further explained, "*costs of reimbursement* [paid] to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)." *Id.* at 2338 n6 (emphasis added). Thus, if a party has paid costs "voluntarily," and those costs are not in the nature of reimbursement, a claim under Section 107 is the proper mechanism available to that party to recover those costs.

It is that very type of cost that Plaintiffs allege in Count I that they incurred. In paragraph 28 of the Second Amended Complaint, Plaintiffs unambiguously allege:

> *In addition to those costs and damages* paid or to be paid pursuant to the State Agreement, the 2001 Consent Decree, the 2005 Consent Decree Extension, the Administrative Settlement Agreement and Order on Consent and the 2006 Phase 1 Consent Decree, *API and NCR have paid additional costs*, including the costs of identifying other responsible parties, conducting risk assessments, funding natural resource damages projects, and otherwise investigating and responding to the Lower Fox River Contamination.

Second Amended Complaint, Dkt. No. 41, ¶ 28 (emphasis added). This paragraph clearly alleges the "voluntary" (i.e., not compelled by government order) payment of costs that were not in the nature of reimbursement – just the type of costs that *Atlantic Research* states are

recoverable "*only* by way of § 107(a)." *Atlantic Research*, 127 S. Ct. at 2338 n6. Accordingly, Plaintiffs have plainly stated a claim to recover costs under Section 107(a).[7]

Movants raise three arguments in support of their contention that Plaintiffs have not stated a claim under Section 107. First, both Movants try to characterize all of Plaintiffs' costs as "involuntary" costs, and then from that argue that such "involuntary" costs cannot be sought under Section 107. *See* Menasha Mem., pp. 6-7; Glatfelter Mem., pp. 16-17. This argument ignores the allegations of Paragraph 28 set forth above. Plaintiffs have clearly alleged the incurrence of "voluntary" costs – the very type of costs that the Supreme Court has held are recoverable under Section 107.

Second, both Movants argue that a party may *only* bring a claim under Section 107 if they do not have a claim for contribution under § 113(f). *See* Menasha Mem., pp. 3-5; Glatfelter Mem., pp. 15-16. In principal support of this point, Menasha cites *Metropolitan Water Reclamation District v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824 (7th Cir. 2007), which it claims "held that a party may *only* bring a claim under Section 107 where it does not have a claim under Section 113 . . . ." Menasha Mem., p. 3 (emphasis in original). However, the holding in *Metropolitan Water* was strictly that a Section 113(f) claim can only be brought following a Section 106 or Section 107 action. It did not hold, as Menasha claims, that a Section 113(f) claim *is the only* claim that can be brought following a Section 106 or Section 107 action. In fact, such a holding would conflict with *Atlantic Research*. Under Menasha's interpretation, a

_____

[7] Plaintiffs also allege the incurrence of costs in other paragraphs of the Second Amended Complaint. Certain of these costs are costs of reimbursement and so, according to *Atlantic Research*, are only recoverable under Section 113. Certain other costs are not in the nature of reimbursement, but also may not be strictly "voluntary" either. In *Atlantic Research*, the Supreme Court acknowledged that a responsible party may incur just that type of cost. *Atlantic Research*, 127 S. Ct. at 2338 n6. The Court stated that those costs are recoverable under CERCLA, but left open the question as to whether they are recoverable under Section 113, Section 107, "or both." *Id.* Given that Plaintiffs have brought claims under both Section 113 and Section 107, and given that Plaintiffs have alleged the incurrence of "voluntary" costs to support their Section 107 claim, it is not necessary for this Court, in deciding the motions to dismiss, to resolve the question left open by the Supreme Court and to determine whether these other types of costs are recoverable under Count I.

party that incurred costs voluntarily, but which had been subject to a Section 106 or Section 107 action previously, would have to sue under Section 113(f). This flies in the face of the Supreme Court's clear statement that "costs incurred voluntarily are recoverable *only* by way of § 107(a)(4)(B)." *Atlantic Research*, 127 S. Ct. at 2338 n6 (emphasis added).[8]

Third, Glatfelter contends that the contribution bar provision of Section 113(f)(2) bars Plaintiffs' claims under Section 107(a) with respect to any liability at the Little Lake Butte de Mortes portion ("OU1") of the Lower Fox River Site. *See* Glatfelter Mem., pp. 12-15. Glatfelter claims that it has "resolved its liability to the United States and the State of Wisconsin for response costs and actions in OU1, and therefore [] is entitled to protection from plaintiffs' claims concerning those costs" pursuant to Section 113(f)(2) of CERCLA. Glatfelter Mem., p. 13. In *Atlantic Research*, the Court stated that Section 113(f)(2) "does *not by its terms* protect against cost-recovery liability under § 107(a)." *Atlantic Research*, 127 S. Ct. at 2338 (emphasis added). The Court recognized that CERCLA provides adequate recourse in such situations: "[A] defendant PRP may trigger equitable apportionment by filing a § 113(f) counterclaim. A district court applying traditional rules of equity would undoubtedly consider any prior settlement as part of the liability calculus." *Id.* Thus, Glatfelter's remedy here is to file a counterclaim – and not for this Court to dismiss Plaintiffs' Section 107 claim.

As the discussion above shows, Plaintiffs have clearly and adequately alleged that they have incurred the type of costs that, under Supreme Court precedent, are recoverable under Section 107(a). Because Movants' arguments to the contrary do not have any merit, the motions to dismiss this claim must be denied.

---

[8] The other cases Menasha cites – *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 458 (6th Cir. 2007); *Atlantic Res. Corp. v. United States*, 459 F.3d 827, 836-37 (8th Cir. 2006); *Consol. Edison Co. of N.Y., Inc. v. UGI Utils. Inc.*, 423 F.3d 90, 100, 102 (2d Cir. 2005); and *Glidden Co. v. FV Steel and Wire Co.*, 350 B.R. 96 (E.D. Wis. 2006) – are equally inapposite. None of these cases actually holds, as Menasha claims, that the remedies under Section 107 and Section 113 are mutually exclusive, and that a party with a viable Section 113(f) claim is proscribed from bringing a Section 107(a) claim.

## V. Plaintiffs Have Stated a Claim to Recover, Pursuant Section 107(a), Payments Made to the Natural Resource Damages Trustees.

A portion of Plaintiffs' Count I seeks to recover from Movants their allocable share of payments made to the natural resource damages trustees for the Lower Fox River Site. *See* Second Amended Complaint, Dkt. No. 41, ¶ 2 ("API and NCR have made substantial payments to the trustees for natural resource damages to allow them to implement various restoration projects even before the design of the remedy is complete. The amounts API and NCR have spent on these activities are well in excess of their responsibility for this work"). To the extent these payments were "voluntary," they are clearly recoverable pursuant to a claim under Section 107(a), as already discussed in Section IV above. *See Atlantic Research*, 127 S. Ct. at 2338 n6 ("costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B)").

Movants argue that this portion of Count I should be dismissed because Plaintiffs are seeking to recover natural resource damages for themselves, which they are not permitted to do. [9] *See* Menasha Mem., pp. 7-10; Glatfelter Mem., pp. 5-6. Movants' argument fails because it misunderstands Plaintiffs' claim. Plaintiffs are not seeking to recover natural resource damages in the first instance; there is no dispute that that can only be done by "natural resource damage trustees," as that term is defined in CERCLA. Instead, Plaintiffs are seeking to recover from Movants their allocable share of monies Plaintiffs paid to other parties so that those other parties could investigate and address alleged impacts to natural resources. It is Movants' allocable share of these payments that Plaintiffs seek to recover, not damages for injuries to natural resources themselves. Movants have misread Plaintiffs' allegations, and as a result, their argument provides no basis for dismissing any portion of Count I.

---

[9] Movants do not seek to dismiss any claims under Section 113(f) in Count II to recover for payments made to the natural resource damages trustees.

## VI. Plaintiffs Have Stated a Claim in Count II for Contribution Under Section 113 of CERCLA.

In Count II, Plaintiffs seek contribution from Defendants for their allocable share of the costs Plaintiffs have incurred at the Lower Fox River Site. *See* Second Amended Complaint, Dkt. No. 41, ¶ 58. Such costs are clearly recoverable under Section 113(f)(1), which authorizes "[a]ny person to seek contribution from any other person who is liable or potentially liable" under Section 107(a). 42 U.S.C. § 9613(f)(1); *see also Atlantic Research*, 127 S. Ct. at 2338.

Glatfelter argues that the Court should dismiss that portion of Count II which seeks contribution from Glatfelter for costs incurred at the OU1 portion of the Lower Fox River Site because such a claim is barred by the contribution protection provision of the consent decree in *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949 (E.D. Wis. filed Oct. 1, 2003). *See* Order Granting Plaintiffs' Motion to Enter Consent Decree, *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949 (E.D. Wis. April 12, 2004), Dkt. No. 22 ("OU1 Consent Decree"). This argument fails because the contribution protection granted by the OU1 Consent Decree is actually more limited in scope than the allegations in the Second Amended Complaint. The OU1 Consent Decree grants Glatfelter contribution protection "as provided by CERCLA Section 113(f)(2) for matters addressed in this Consent Decree." OU1 Consent Decree, ¶ 101. It goes on to state that "matters addressed in this consent decree are the OU1 Response Activities and Costs." *Id.* OU1 Response Activities and Costs are "all response activities for Operable Unit 1 performed after July 1, 2003, as well as all costs for response activities for Operable Unit 1 incurred after July 1, 2003." *Id.* at ¶ 84(c). Thus, to the extent the OU1 Consent Decree provides contribution protection, it is confined to those response costs incurred and response activities performed after July 1, 2003.

The costs and activities for which Plaintiffs seek contribution are not similarly limited in time. As alleged in the Second Amended Complaint, Plaintiffs incurred costs at the Lower Fox River Site at least as early as 1997. *See* Second Amended Complaint, Dkt. No. 41, ¶¶ 18-19. Plaintiffs also allege the incurrence of costs at the Lower Fox River Site pursuant to a 2001 Consent Decree involving Plaintiffs, the United States and the State of Wisconsin. *Id.*, ¶ 20. And Plaintiffs allege the incurrence of additional costs relating to the Lower Fox River Site, such as the costs of identifying other potentially responsible parties. *Id.*, ¶ 28. Glatfelter argues that none of these costs were in fact incurred in connection with OU1 prior to July 1, 2003, but that is an argument directed at the truth of the allegations and as such is premature and cannot be the basis for a motion to dismiss. *See, e.g., Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999) (holding that when assessing a motion to dismiss, the facts alleged in the complaint are accepted as true, and all reasonable inferences are to be drawn in favor of the plaintiff). The cost allegations in the Second Amended Complaint are not, on their face, limited to the time period after July 1, 2003. As a result, the contribution claim in Count II is not unequivocally barred by the OU1 Consent Decree, and should not be dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs Appleton Papers Inc. and NCR Corporation hereby request that the Court deny in their entirety Defendants P.H. Glatfelter Company's and Menasha Corporation's Motions to Dismiss Plaintiffs' Second Amended Complaint.

APPLETON PAPERS INC.


s/ Michael L. Hermes
By: One of Its Attorneys


NCR CORPORATION


s/ J. Andrew Schlickman
By: One of its Attorneys


Counsel for Appleton Papers Inc.:
Michael L. Hermes (Wisconsin Bar No. 1019623)
Metzler, Timm, Treleven & Hermes, S.C.
222 Cherry Street
Green Bay, Wisconsin  54301
(920) 435-9393
Fax:  (920) 435-8866

Counsel for NCR Corporation:
J. Andrew Schlickman (Illinois Bar No. 3122104)
Evan Westerfield (Illinois Bar No. 6217037)
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
Fax: (312) 853-7036

J. Ric Gass (Wisconsin Bar No. 1011998)
Gass Weber Mullins LLC
309 North Water Street
Milwaukee, Wisconsin 53202
(414) 224-7697
Fax: (414) 224-6116


Dated: April 17, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

APPLETON PAPERS INC. and )
NCR CORPORATION, )
                               )
             Plaintiffs, )
                               )
             v. )          No. 08-CV-00016-WCG
                               )
GEORGE A. WHITING PAPER COMPANY, )
P. H. GLATFELTER COMPANY, )
MENASHA CORPORATION, )
GREEN BAY PACKAGING INC., )
INTERNATIONAL PAPER COMPANY, )
LEICHT TRANSFER & STORAGE COMPANY, )
NEENAH FOUNDRY COMPANY, )
NEWPAGE WISCONSIN SYSTEM INC., )
THE PROCTER & GAMBLE PAPER )
PRODUCTS COMPANY, and )
WISCONSIN PUBLIC SERVICE CORP. )
                               )
             Defendants. )

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2008, I electronically filed Plaintiffs' Consolidated

Response to Defendants P.H. Glatfelter Company's and Menasha Corporation's Motions to

Dismiss using the ECF system, which will send notification of such filing to Philip Munroe at

DiRenzo & Bomier LLC, pmunroe@direnzollc.com; Scott Fleming at Weiss Berzowski Brady

LLP, sbf@wbb-law.com; David Mandelbaum at Ballard Spahr Andrews & Ingersoll, LLP,

mandelbaum@ballardspahr.com; Marc Davies at Ballard Spahr Andrews & Ingersoll, LLP,

davies@ballardspahr.com; Ronald Varnum at Ballard Spahr Andrews & Ingersoll, LLP,

varnumr@ballardspahr.com; Jennifer Simon at Ballard Spahr Andrews & Ingersoll, LLP,

simonj@ballardspahr.com; Sabrina Mizrachi at Ballard Spahr Andrews & Ingersoll, LLP,

mizrachis@ballardspahr.com; Mark Feldmann at Menn Law Firm, Ltd.,

mark-feldmann@mennlaw.com; Joseph Beisenstein at Menn Law Firm, Ltd.,

joseph-beisenstein@mennlaw.com; Jacy T. Rock at Faegre & Benson LLP, jrock@faegre.com;

Colin C. Deihl at Faegre & Benson LLP, cdeihl@faegre.com; Delmar R. Ehrich at Faegre &

Benson LLP, dehrich@faegre.com; Linda Doyle at McDermott Will & Emery LLP,

ldoyle@mwe.com; Michael L. Hermes at Metzler, Timm, Treleven & Hermes, S.C.,

mhermes@mtthlaw.com; J. Ric Gass at Gass Weber Mullins LLC, gass@gasswebermullins.com;

Joan Radovich at Sidley Austin LLP, jradovich@sidley.com; Kathleen L. Roach at Sidley Austin

LLP, kroach@sidley.com; Evan B. Westerfield at Sidley Austin LLP,

evanwesterfield@sidley.com; and J. Andrew Schlickman at Sidley Austin LLP,

jschlickman@sidley.com.


NCR CORPORATION


  s/ J. Andrew Schlickman
By: One of its Attorneys


J. Andrew Schlickman (Illinois Bar No. 3122104)
Evan Westerfield (Illinois Bar No. 6217037)
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
Fax: (312) 853-7036