IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS INC. and NCR CORPORATION, | : : : |
| Plaintiffs, | : : |
| v. | : No. 2:08-cv-00016-WCG : |
| GEORGE A. WHITING PAPER COMPANY, P.H. GLATFELTER COMPANY, MENASHA CORPORATION, GREEN BAY PACKAGING INC., INTERNATIONAL PAPER COMPANY, LEICHT TRANSFER & STORAGE COMPANY, NEENAH FOUNDRY COMPANY, NEWPAGE WISCONSIN SYSTEM INC., THE PROCTER & GAMBLE PAPER PRODUCTS, and WISCONSIN PUBLIC SERVICE CORP. | : : : : : : : : : : |
| Defendants. | : |

**REPLY MEMORANDUM OF DEFENDANT P.H. GLATFELTER COMPANY
IN SUPPORT OF ITS MOTION TO DISMISS IN PART
<u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

Plaintiffs NCR Corporation ("NCR") and Appleton Papers Inc. ("API") make grand claims about what they intend this lawsuit to accomplish. However, what they say and what they have done are inconsistent. They have not brought "' . . . before this Court every [potentially responsible party ('PRP')] that has not voluntarily resolved its responsibility,' in order to reach 'a global resolution of the share allocation issues in a single action specifically designed for this purpose.'" Plaintiffs' Consolidated Response to Defendants P.H. Glatfelter Company's and Menasha Corporation's Motions to Dismiss ("Plaintiffs' Response") [Dkt. No. 92] at 1-2. Indeed, no party has voluntarily resolved all of its responsibility for this site,

allocation probably should not be by "shares" of the entire river (as opposed to specific reaches and projects), and the claims that plaintiffs have made so far work against either (i) a voluntary or (ii) a global resolution of anything.

In its motion to dismiss plaintiffs' second amended complaint,[1] defendant P.H. Glatfelter Company ("Glatfelter") has sought to bring this case into line with what the Court can do now. Specifically, with no party having agreed to undertake future work under the Administrative Order for Remedial Action for Operable Units 2-5 ("OU2-5 UAO"), with no party (other than Fort James Operating Company) having resolved its liability for natural resources damages, and with no lawsuit pending by the governments or the natural resource trustees for much of the future work to be done at this site, this can hardly be an action to reallocate all costs and damages associated with this site. Moreover, with most of the respondents on the OU2-5 UAO and most of the parties mentioned in plaintiffs' motion for leave to file a second amended complaint not joined as parties to this lawsuit, this cannot be a "global" action to do anything.

This *can* be an action to reallocate certain costs that have been incurred and whose reallocation is not barred by a consent decree. Section 113(f) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f), provides the vehicle to do that, and plaintiffs have pleaded a claim under section 113(f)(1) in Count II of their complaint. Their claims under section 107(a) should be dismissed to the extent they are an effort to end run limitations on section 113(f)(1) claims. Their claims for a

---

[1] The parties are in agreement that the intervening filing of a *third* amended complaint does not change the claims against the moving parties, and therefore the pending motions to dismiss the second amended complaint may be treated as motions to dismiss the third amended complaint.

declaration should be dismissed because *in this case* a declaration is inappropriate. Surely some issues will be decided here. Issue and claim preclusion should assist with future allocation. But this Court cannot hope to achieve a global allocation of all future costs (even though we have no idea what they will be or who will incur them and under what circumstances) among all responsible persons (even though most of them are not parties to this case).

### 1. Contribution protection bars plaintiffs' claims to reallocate "OU1 Response Activities and Costs."

Plaintiffs seek to reallocate the costs of cleaning up Little Lake Butte des Morts ("LLBdM" or "OU1"). That cleanup is being undertaken by Glatfelter and WTM I Company under a consent decree entered by Judge Adelman in *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949 (E.D. Wis. entered Apr. 12, 2004)("OU1 Consent Decree"). The contribution protection provision of that consent decree bars contribution actions or claims to reallocate "OU1 Response Activities and Costs" brought against either of the two settling defendants, Glatfelter and WTM I.

Plaintiffs concede that the contribution protection provision bars Count II of their complaint insofar as they seek to recover "OU1 Response Activities and Costs" under section 113(f) of CERCLA. Accordingly, Glatfelter's motion should be granted to that extent.

However, notwithstanding their concession that the OU1 Consent Decree bars an action under section 113(f)(1) of CERCLA to reallocate "OU1 Response Activities and Costs," NCR and API contend that they should be permitted to sue under section 107(a)(1-4)(B) of CERCLA -- the claim asserted in Count I of their complaint -- to achieve the same result. In order for plaintiffs to be correct in their reading of the OU1 Consent Decree, Glatfelter, WTM I, the United States, *and* Judge Adelman would all have had to have decided that the OU1 Consent

Decree should include a contribution protection provision that protects Glatfelter and WTM I against section 113(f) claims to reallocate "OU1 Response Activities and Costs," but not completely parallel claims under section 107(a). All three parties and Judge Adelman would have had to have agreed to ineffective nonsense. Plaintiffs cannot be reading the OU1 Consent Decree correctly.

Plaintiffs rely on Justice Thomas' dictum in *United States v. Atlantic Research Corp.*, 127 S. Ct. 2331, 2339 (2007), to the effect that the contribution bar of section 113(f)(2) of CERCLA "does not by its terms protect against cost-recovery liability under § 107(a)." However, Glatfelter is not relying only on the statute to bar plaintiffs' claim to recover "OU1 Response Activities and Costs" under Count I. Glatfelter relies primarily on the OU1 Consent Decree.

The OU1 Consent Decree includes a provision that confers contribution protection. Its purpose is to limit the exposure of Glatfelter and WTM I to the amounts that each of them individually contributes to the OU1 cleanup. They cannot sue each other, and no third person can sue them, for any costs that amount to "OU1 Response Activities and Costs." Glatfelter and WTM I have *each* contributed $31 million (plus some accumulated interest) to date, and expect to have to contribute an additional $9.5 million *each* shortly. Menasha has contributed $7 million. The governments took $10 million from NCR and API and applied it to this work. NCR and API read the OU1 Consent Decree to protect Glatfelter from a claim under section 113(f)(1) of CERCLA by any of NCR, API, Menasha, or WTM I seeking recovery from Glatfelter. However, NCR and API read the same language to exclude from its protection a claim by any of the same parties to recover the same contributions from Glatfelter under section

107(a)(1-4)(B) of CERCLA. NCR and API fail to provide any explanation of why the parties and the court would have bothered to do that.

To be sure, as Glatfelter noted previously, in April 2004, when Judge Adelman entered the OU1 Consent Decree, potentially responsible parties *could not* recover costs under section 107(a). *See* Glatfelter's Memorandum in Support of its Motion to Dismiss in Part ("Glatfelter's Memo in Support") [Dkt. No. 58] at 18-19. *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), and *United States v. Atlantic Research Corp.*, 127 S. Ct. 2331 (2007), both decided after entry of the OU1 Consent Decree, upset the conventional understanding at the time the parties negotiated the OU1 Consent Decree.[2] But those decisions did not overturn the intention of the parties or the court as manifested in the OU1 Consent Decree.

Glatfelter and WTM I bargained for and obtained a consent decree that capped their liabilities to the amounts they contributed. No one could sue them for more. NCR and API -- parties that did *not* step up to complete the remedy in OU1 -- now want to recover something more from Glatfelter. Judge Adelman ordered that Glatfelter be protected from that claim. That consent decree provision should be enforced. Plaintiffs' suggestion that Glatfelter merely counterclaim has no merit. Even if Glatfelter counterclaims, the ability of any person to sue Glatfelter (or WTM I) for "OU1 Response Activities and Costs" means that Glatfelter has to defend a claim that Glatfelter ought to pay more to clean up OU1 than the $31 million Glatfelter has already committed plus the $9.5 million Glatfelter expects to commit shortly. Glatfelter did

---

[2] Specifically, the Supreme Court decided that PRPs who incurred response costs voluntarily could not recover those costs under section 113(f), *Cooper Industries*, 543 U.S. at 160-61, but PRPs may have a valid claim for those costs under section 107(a)(1-4)(B), *Atlantic Research*, 127 S. Ct. at 2333-34.

not sign on for that.[3] WTM I did not sign on for that. Glatfelter's motion to dismiss Count I to the extent it claims "OU1 Response Activities and Costs" should be granted.

### 2. Plaintiffs' claim for a declaratory judgment should be dismissed.

Plaintiffs complain of pedantry, but their claim for a declaratory judgment departs pretty far from the concrete or the practical. Plaintiffs' request for a declaratory judgment seeks to allocate future costs and damages not yet incurred or paid by any party. Among other things, plaintiffs contend that they "expect that they will be required to pay considerably more than they have paid to date" to comply with the OU2-5 UAO issued to plaintiffs, Glatfelter, Menasha, and others on November 13, 2007. Second Amended Complaint ¶¶ 16, 25; Third Amended Complaint ¶¶ 30, 39. Thus, plaintiffs make purely speculative allegations about what they might do, or might have to do, in the future. Their claim for a declaratory judgment allocating these future unknown costs is premature. *VME Americas, Inc. v. Hein-Werner Corp.*, 946 F. Supp.

---

[3] Having to carry the exposure on its books adds insult to injury for Glatfelter. As the Court will learn when the facts of this case can be tried, this site was caused by NCR. NCR's share of liability at every location on this river, including OU1, approaches 100%. NCR has not contributed voluntarily to the OU1 cleanup, a project that is among the largest sediment cleanups ever attempted. Glatfelter has committed $31 million to that cleanup and has expressed an intention to pay half of whatever additional it takes to finish the job. Glatfelter should not have to face a lawsuit it does not choose to bring concerning OU1. It bargained to be free of that. Glatfelter should not have to face a trial on OU1 unless it chooses to have that trial.

To be sure, Glatfelter may be required to file a compulsory counterclaim to recover what NCR owes of Glatfelter's OU1 costs. However, as the Court will learn, the most efficient way to manage this litigation is to separately prepare and try the issue whether Glatfelter and other OU1 dischargers have any liability at all for costs incurred downstream of Little Lake Butte des Morts. They do not. Once that is decided and the OU1 cleanup is secured, Glatfelter should have the option to walk away from this river if Glatfelter so chooses. That is what Glatfelter bargained for. That is what Judge Adelman ordered.

683, 694 (E.D. Wis. 1996); *Advanced Tech. Corp. v. Eliskim, Inc.*, 87 F. Supp. 2d 780, 787-88 (N.D. Ohio 2000).

Plaintiffs do not allege that they have committed to undertake or to fund any specific future cleanup of the Fox River Site. They have not settled their *own* responsibility for response actions at this Site. They do not allege that they have incurred costs in excess of their fair shares of all response costs that any party will ever incur in cleaning up this river. They do not allege that they have promised to do so. They do not allege that a judgment of any court directs them to do so. They do not even allege that the governments or anyone else has sued them to obtain such a judgment. They merely allege that an administrative agency has issued an administrative order to them and to others including Glatfelter and Menasha to implement a remedy. Second Amended Complaint ¶ 16; Third Amended Complaint ¶ 30. They do not allege that Glatfelter has violated that order or that the order obligates either plaintiff to incur costs in excess of its fair share.

The OU2-5 UAO imposes joint and several obligations on plaintiffs, Glatfelter, Menasha, and others. Plaintiffs repeatedly state that they do not like Glatfelter's offer of what it will contribute toward that joint obligation. Conversely, Glatfelter does not like plaintiffs' offer. That is not an actual controversy. It is a negotiation. Only when one party actually incurs or, perhaps, unequivocally promises to incur, or faces a lawsuit to require it to incur, costs in excess of its fair share of liability may that party sue for contribution under section 113(f) or for cost recovery under section 107(a)(1-4)(B).

Neither NCR nor API can plead that it has incurred, has unequivocally promised to incur, or faces a lawsuit to require it to incur costs in excess of its fair share of liability, and thus no controversy can exist and a declaratory judgment action is premature and must be

dismissed. *See In re Dant & Russell, Inc.*, 951 F.2d 246, 250 (9th Cir. 1991) (providing that CERCLA "requir[es] a plaintiff to take some positive action before coming to court [so that] the dispute will be ripe for judicial review" and that "[s]ince CERCLA places no strings on the award of response costs, allowing recovery for future costs absent any binding commitment to incur these costs would leave no incentive to complete the cleanup").

Moreover, to the extent plaintiffs contend that they have incurred costs in connection with response activities already undertaken and they anticipate incurring additional costs to perform those response activities they have already committed to perform, plaintiffs still are barred from obtaining a declaratory judgment regarding those costs. As detailed in Glatfelter's Memo in Support, plaintiffs do not have a declaratory judgment claim under section 113(g) for those costs because this is not the "initial action." Each of plaintiffs' responses to the "initial action" point fails.

First, plaintiffs complain that all of the Fox River PRPs were not before the court in any of the prior actions. Plaintiffs' Response at 10. But even plaintiffs later acknowledge that whether all PRPs are joined is irrelevant. *Id.* at 14. All of the PRPs are not before this Court now. What matters is whether Glatfelter was the defendant in an "initial action" for response costs. *See United States v. Navistar Int'l Transp. Corp.*, 152 F.3d 702, 710 (7th Cir. 1998).[4] As a defendant in *United States v. P.H. Glatfelter Company*, No. 2:03-cv-0949 (E.D. Wis. filed Oct. 1, 2003), Glatfelter not only satisfies this requirement, but Glatfelter faced a claim for a declaration of its future liability and settled it in the OU1 Consent Decree. This case is not even the initial case for a declaration.

---

[4] Moreover, it is not necessary for a declaratory judgment actually to have been issued in the "initial action." *Navistar*, 152 F.3d at 709-10.

Second, plaintiffs contend that Glatfelter has misread section 113(g)(2). To the contrary, plaintiffs have ignored a critical word in that section: "such." The relevant portion of section 113(g)(2) reads:

> An *initial action* for recovery of the costs referred to in section 9607 of this title must be commenced--
>
> > (A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and
>
> > (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.
>
> In any *such* action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action.

42 U.S.C. § 9613(g)(2) (emphasis added). The phrase "[i]n any *such* action" in the second sentence refers back to the immediately preceding (and first) sentence, which sets out the statutes of limitations for the two types of "initial action[s]" under section 107(a). Indeed, the phrase "[i]n any *such* action" in which a declaratory judgment may be entered stands in contrast to the "subsequent action or actions" (referred to in the same sentence) in which the judgment would be binding. To interpret otherwise is to read the word "such" out of this section, contrary to the principle that every word in a statute should have some operative effect. *See Cooper Industries*, 543 U.S. at 167. Accordingly, plaintiffs misread this statutory provision when they contend that

section 113(g)(2) allows declaratory judgments in both "initial actions" under section 107(a) and "subsequent actions" under that section.

Third, plaintiffs contend that Glatfelter's interpretation of section 113(g)(2) is contrary to case law. They rely on *United States v. Davis*, 261 F.3d 1 (1st Cir. 2001). But *Davis* does not stand as an example of a declaratory judgment in a "subsequent action," because the consent decrees entered in that lawsuit appear to have been all part of the same action, not subsequent actions. *See United States v. Davis*, 11 F. Supp. 2d 183, 186-87 (D.R.I. 1998). In any event, the issue of what was the "initial action" never arose, and thus the case offers no help in determining the present issue. *See Davis*, 261 F.3d at 45-49.

Fourth, plaintiffs contend that even if Glatfelter is correct -- that section 113(g)(2) authorizes a declaratory judgment in an "initial action" and that this lawsuit is not the "initial action" -- section 113(g)(2) does not preclude declaratory judgments in other actions. Simply put, plaintiffs have not averred circumstances that would allow this Court to invoke its equitable powers and to issue a declaratory judgment in this action. Again, plaintiffs have not committed to undertake or to fund cleanup of the Lower Fox River and have not settled their cleanup responsibility. They have not alleged that they are required to take action pursuant to a judgment or lawsuit. No one knows who will incur what costs, when, or for what purpose. Conditions affecting different segments of the Site differ, making a declaration for liability *for the whole Site* inappropriate. Plaintiffs merely disagree with Glatfelter as to their respective obligations under the OU2-5 UAO. This disagreement does not justify a declaration allocating future unknown liability where plaintiffs have not committed to do or to spend anything.

Thus, because plaintiffs seek a declaratory judgment allocating costs of response that they have not committed to incur, their claim is inappropriate and should be dismissed.

### 3. Plaintiffs cannot recover natural resource damages under section 107.

NCR and API have spent money paying for natural resource restoration projects and other items that count as "damages" under CERCLA. "CERCLA does not permit private parties to seek recovery for damages to natural resources held in trust by the federal, state or tribal governments . . . ." *National Ass'n of Manufacturers v. United States Dep't of the Interior*, 134 F.3d 1095, 1113 (D.C. Cir. 1998) (citing *Exxon Corp. v. Hunt*, 475 U.S. 355, 375 (1986) (compensation to "third parties for damage resulting from hazardous substance discharges . . . [is] clearly beyond the scope of CERCLA")). Those payments may have cost plaintiffs something but they are not "necessary costs of response incurred . . . consistent with the national contingency plan." 42 U.S.C. § 9607(a)(1-4)(B). Section 107(a)(1-4)(B) provides the only private right of action under section 107(a). Because expenditures made to restore natural resources or to reimburse trustees or to promote world peace are not "costs of response," plaintiffs cannot recover them under section 107(a).

Plaintiffs contend that some of their payments for natural resource damages were "voluntary" and thus recoverable under section 107(a) after *Atlantic Research*. They conflate "damages" and "costs," two separate and distinct categories of monies. *See* Glatfelter's Memo in Support at 5. *Atlantic Research* is wholly inapposite to plaintiffs' claim for "damages."

Further, plaintiffs admit that only "natural resource damage trustees" can recover natural resource damages "in the first instance." Plaintiffs' Response at 19. But they attempt to circumvent that express, statutory standing requirement by obtaining reimbursement for damages for which they were liable and made payments, or for which they may be obligated to make future payments. CERCLA does not authorize plaintiffs' attempted sidestep. *See* 42 U.S.C. § 9607(f)(1).

Accordingly, plaintiffs' claim to recover natural resource damages under section 107(a) must be dismissed.

Respectfully submitted,

s/ David G. Mandelbaum
David G. Mandelbaum
Marc E. Davies
Sabrina Mizrachi
Jennifer E. Simon
Ronald M. Varnum
BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel. 215-665-8500

Attorneys for Defendant,
P.H. Glatfelter Company

Dated: May 5, 2008

Of Counsel:

BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8102 (Mr. Mandelbaum direct)
(215) 864-9761 (facsimile)
mandelbaum@ballardspahr.com
davies@ballardspahr.com
mizrachis@ballardspahr.com
simonj@ballardspahr.com
varnumr@ballardspahr.com

# CERTIFICATE OF SERVICE

I hereby certify that, on this 5th day of May, 2008, a true and correct copy of the foregoing Reply Memorandum of Defendant P.H. Glatfelter Company in Support of Its Motion to Dismiss in Part the Second Amended Complaint was filed electronically via the Electronic Court Filing system and is available for viewing and downloading by the following:

| | |
|---|---|
| Michael L. Hermes, Esquire<br>Metzler Timm Treleven & Hermes SC<br>222 Cherry St<br>Green Bay, WI 54301-4223 | J. Andrew Schlickman, Esquire<br>Evan B. Westerfield, Esquire<br>Joan Radovich, Esquire<br>Kathleen L. Roach, Esquire<br>Sidley Austin LLP<br>1 S. Dearborn Street<br>Chicago, IL 60603 |
| J. Ric Gass, Esquire<br>Gass Weber Mullins LLC<br>309 N Water St - Ste 700<br>Milwaukee, WI 53202 | Scott B. Fleming, Esquire<br>Weiss Berzowski Brady LLP<br>700 North Water Street, Suite 1400<br>Milwaukee, WI 53202 |
| Philip A. Munroe, Esquire<br>DiRenzo & Bomier, LLC<br>Two Neenah Center, Suite 701<br>P.O. Box 788<br>Neenah, WI 54957-0788 | Mark R. Feldmann, Esquire<br>Joseph J. Beisenstein<br>Menn Law Firm, Ltd.<br>2501 E. Enterprise Avenue<br>P.O. Box 785<br>Appleton, WI 54912-0785 |
| Colin C. Deihl, Esquire<br>Jacy T. Rock, Esquire<br>Faegre & Benson LLP<br>1700 Lincoln Street, Suite 3200<br>Denver, CO 80203 | Delmar R. Ehrich, Esquire<br>Faegre & Benson LLP<br>2200 Wells Fargo Center<br>90 S. Seventh Street<br>Minneapolis, MN 55402 |

| | |
|---|---|
| Christopher P. Riordan<br>David J. Edquist<br>Patrick L. Wells<br>von Briesen & Roper SC<br>411 E Wisconsin Ave - Ste 700<br>PO Box 3262<br>Milwaukee, WI 53201-3262 | Russell W. Wilson<br>Ruder Ware LLSC<br>500 1st St - Ste 8000<br>PO Box 8050<br>Wausau, WI 54402-8050 |
| Arthur F. Radke<br>Dykema Gossett PLLC<br>10 S Wacker Dr - Ste 2300<br>Chicago, IL 60606 | Linda E. Benfield<br>Sarah A. Slack<br>Foley & Lardner LLP<br>777 E Wisconsin Ave<br>Milwaukee, WI 53202-5300 |
| Daniel C. Murray<br>Johnson & Bell Ltd<br>33 W Monroe St - Ste 2700<br>Chicago, IL 60603-5404 | Randall M Stone<br>United States Department of Justice (DC)<br>Environment & Natural Resources Division<br>PO Box 7611<br>Washington, DC 20044 |

In addition, a copy will be sent by U.S. Mail to the following:

| | |
|---|---|
| International Paper Company<br>8040 Excelsior Drive<br>Madison, WI 53717 | Neenah Foundry Company<br>411 E. Wisconsin Ave.<br>Milwaukee, WI 53202 |

s/ David G. Mandelbaum_____<br>David G. Mandelbaum