UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

APPLETON PAPERS INC. and
NCR CORPORATION,

    Plaintiffs,

    v.                        No. 2:08-cv-00016-WCG

GEORGE A. WHITING PAPER
COMPANY, P.H. GLATFELTER
COMPANY, MENASHA
CORPORATION, GREEN BAY
PACKAGING INC., INTERNATIONAL
PAPER COMPANY, LEICHT TRANSFER
& STORAGE COMPANY, NEENAH
FOUNDRY COMPANY, NEWPAGE
WISCONSIN SYSTEM INC., THE
PROCTER & GAMBLE PAPER
PRODUCTS COMPANY, and
WISCONSIN PUBLIC SERVICE CORP.,

    Defendants.

DEFENDANT MENASHA
CORPORATION'S REPLY IN
SUPPORT OF ITS MOTION TO
DISMISS

Defendant Menasha Corporation ("Menasha") hereby submits its Reply in Support of its Motion to Dismiss and respectfully moves this Court to dismiss Counts I and III of Plaintiffs' Second and Third Amended Complaint ("Complaint").[1]

## INTRODUCTION

Plaintiffs' Response underscores the fundamental flaw with their case. How can this Court allocate all of the past and present costs of cleaning up PCB contamination from a number of separate, discrete areas along a thirty-nine mile long reach of the Fox River when no one

---

[1] The parties agree that the filing of the Third Amended Complaint does not change the claims against Menasha and that briefs in support of the Motion to Dismiss the Second Amended Complaint apply as well to the Third Amended Complaint. (Dkt. No. 92 at 2 n.1; Dkt. No. 95 at 1.)

knows what those costs will eventually be and when plaintiffs have failed to join many of the parties whom the government claims are responsible for the contamination? The answer is that it can't. The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") does not envision a Court allocating speculative future costs associated with an administrative order that has not yet been fully complied with. And CERCLA does not allow a party to recover natural resource damages that by statute are only recoverable by a governmental natural resources trustee.

What CERCLA does allow is for the Court to determine whether the Plaintiffs have paid more than their fair share of clean-up costs and whether they are entitled to recover any of those costs from Menasha. Therefore, Plaintiffs' only viable cause of action is their Section 113 contribution claim to recover costs they claim to have actually incurred.[2] The fact that Plaintiffs are trying to bring two additional claims, Counts I and III of their Complaint, highlights their true purpose – to use this lawsuit as a tool to impose their theories of allocation on selected parties. Plaintiffs are trying to raise the specter of unlimited liability years into the future to force other parties to pay more than they otherwise should in complying with the November 2007 administrative order issued by the EPA.

Plaintiffs' true purpose is revealed by their behavior in this case. Back in February, Plaintiffs sought and received leave to name a number of potentially responsible parties (PRPs) by March 4, 2008. (See Dkt. No. 30; Dkt. No. 38.) But they only sued Menasha and Glatfelter. On the eve of having to file a case management order and after both Menasha and Glatfelter filed

---

[2] Menasha believes that the evidence will show that Plaintiffs are themselves responsible for the contamination of the Fox River. After all, Plaintiffs manufactured the carbonless copy paper that is the source of most of the contamination in the Fox River. Therefore, Menasha believes it is very unlikely that Plaintiffs have paid anywhere near their fair share of the clean-up costs of the River to date. But for purposes of a Motion to Dismiss, Menasha accepts as true the allegations in the Complaint that Plaintiffs have paid more than their fair share.

2

their Motions to Dismiss, Plaintiffs told Defendants and the Court that they planned to finally name other missing PRPs. (See Dkt. No. 78.) But instead they named only eight additional defendants – none of whom were identified by the Plaintiffs in February or currently considered by the government to be a major contributor to the Lower Fox River contamination. (See Dkt. No. 80.) Plaintiffs have repeatedly told this Court that this lawsuit is "intended to bring before the Court every PRP that has not voluntarily resolved its responsibility in order to reach a global resolution of the share of allocation issues in a single action." (Dkt. No. 92 at 1-2; Dkt. No. 9 at 4.) But Plaintiffs have repeatedly failed to follow through on that alleged purpose. The only reasonable inference is that Plaintiffs are using this case as a threat in their ongoing negotiations over the November 2007 administrative order.

Even if Plaintiffs had lived up to their goal and named all of the PRPs on the Fox River, this Court would not be able to allocate all future response costs among them. That is because the Fox River is not really a single site. Along the thirty-nine miles of the Fox River were a number of separate paper mills. Menasha's John Strange Mill was at the upper reaches of the River and discharged into what is known as operable unit ("OU") 1. While the Fox River may be considered one site for determining Plaintiffs' liability since Plaintiffs provided all of the carbonless copy paper on the River, it will not necessarily be considered one site with respect to other PRPs, each of whom is located on a distinct reach of the Fox River. To lump the entire Fox River into one large contribution case does not make sense either factually or legally.

It is with this background in mind that the Court should examine Counts I and III of the Third Amended Complaint. As pointed out in Menasha's Motion to Dismiss, both of those claims should be dismissed because they fail to state a claim as a matter of law.

Count I must be dismissed because, both before and after the Supreme Court's decision in Atlantic Research, the law of the Seventh Circuit is that a party may only bring a claim under Section 107 of CERCLA where it does not have a claim for relief under Section 113. Plaintiffs' one-sentence, conclusory allegation in their Complaint is insufficient to show that Plaintiffs incurred voluntary response costs. Therefore, Plaintiffs must bring their claims against Menasha under Section 113. In addition, Plaintiffs lack standing to seek natural resource damages under Section 107(a)(4)(C). Plaintiffs' Response does not sufficiently refute this argument, and even admits that Plaintiffs do not seek "damages" as that term is used in CERCLA.

Count III must be dismissed because the language of Section 113(g)(2) does not authorize declaratory judgments in Section 113 actions and, as Plaintiffs admit, the Seventh Circuit has not yet addressed whether declaratory relief is available in Section 113(f) actions. Moreover, a declaratory judgment in this case is not consistent with the purposes of CERCLA. The speculative nature of the costs, facts, and evidence at this point in the Lower Fox River remediation action nearly ensures that the parties will not be able to rely on the accuracy and finality of a declaratory judgment.

**ARGUMENT**

**I. The Court Must Dismiss Plaintiffs' Claims For Cost Recovery Under Section 107(a).**

In response to Menasha's Motion to Dismiss, Plaintiffs argue, in effect, that United States v. Atlantic Research, Corp., 127 S. Ct. 2331 (2007), breathes new life into a long-dead proposition -- namely, that PRPs can choose between Sections 107 and 113 without regard to their circumstances. But that is not what Atlantic Research stands for. Atlantic Research can be winnowed down to two holdings: (1) PRPs, not just innocent parties, may recover costs under Section 107 in circumstances when they are truly volunteer remediators and cannot assert a claim

4

under Section 113; and (2) the federal government cannot preclude suit against itself by failing to initiate an enforcement action at a site for which it has some cleanup responsibility.

Beyond these two conclusions, Atlantic Research did not change the CERCLA landscape.  Before Atlantic Research, the law in the Seventh Circuit was that "a claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make' must be brought under § 113(f)(1)."  Metro. Water Reclamation Dist. of Greater Chi. v. N. Am. Galvanizing & Coatings, Inc., 473 F.3d 824, 836 (7th Cir. 2007) (quoting Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994)).[3]  Nothing in Atlantic Research changed this Seventh Circuit law.

Here, Plaintiffs have been compelled to make payments by the government and are asking this Court to allocate those payments among the other parties to this case.  Thus, Plaintiffs' claim is a contribution claim under Section 113 and not a Section 107 claim.  See Atl. Res. Corp. v. United States, 459 F.3d 827, 835 (8th Cir. 2006) (stating the "right" to "bring a cost recovery action under § 107" is "available to parties who have incurred necessary costs of response, but have neither been sued nor settled their liability under §§ 106 or 107"), aff'd, 127 S. Ct. at 2335 ("[T]he Court of Appeals reasoned that PRPs that 'have been subject to §§ 106 or 107 enforcement actions are still required to use § 113' . . . . We . . . affirm.").  In fact, Plaintiffs' Complaint actually *concedes* that they have been the subjects of a CERCLA liability action and have entered into administrative settlements and other agreements following EPA and State of Wisconsin intervention.  (See Dkt. No. 41 ¶¶ 16-24.)  Thus, unlike the plaintiffs in Atlantic Research or Metropolitan Water, Plaintiffs are not barred from bringing a suit under Section

---

[3] Contrary to Plaintiffs' implication, nothing in the Metropolitan Water court's holding was altered by the Supreme Court's Atlantic Research decision.  In truth, the facts and holding of Metropolitan Water, discussed herein, are very similar to the Eighth Circuit decision affirmed by the Supreme Court's Atlantic Research decision.

113(f) because Plaintiffs have "been the subject of an action for damages or compliance under CERCLA." Metro. Water, 473 F.3d at 830; see 42 U.S.C. § 9613(f)(1) ("Any person may seek contribution . . . *during or following* any civil action under section 106 (42 U.S.C. § 9606] or under section 107(a) [42 U.S.C. § 9607]." (emphasis added)).

In their Response Brief, Plaintiffs concede that to recover costs under Section 107(a)(4)(B), they must stand in the shoes of a voluntary remediator, and claim that they fit these shoes well. (Dkt. No. 92 at 16-18.) But the volunteer remediator persona Plaintiffs portray in their response brief bears no resemblance to the volunteer remediator at issue in the only case they cite in support of their position, Atlantic Research, and little resemblance to the cleanup actor found in Plaintiffs' Second Amended Complaint.

Unlike Plaintiffs, the plaintiff in Atlantic Research had no choice but to sue the defendant PRP—the United States—under Section 107(a) because the United States had not brought an enforcement action, and Supreme Court precedent barred any Section 113 suit prior to an enforcement action under Section 106 or Section 107. Atl. Res., 127 S. Ct. at 2334. Thus, there was no doubt that Plaintiffs had cleaned the site without government compulsion. See Atl. Res., 459 F.3d at 837 ("Atlantic, recognizing the deleterious environmental consequences, remediated the environment without compulsion."), aff'd, 127 S. Ct. at 2335.[4]

Similarly, the Metropolitan Water Reclamation District of Greater Chicago v. North American Galvanizing & Coatings, Inc. court aligned itself with the Eighth Circuit's Atlantic decision and found that a volunteer remediator could access Section 107, under circumstances

---

[4] Comparable facts were present in Cooper Indus. v. Aviall Servs., Inc., where the Supreme Court first recognized that Sections 107 and 113 provided "distinct" remedies. 543 U.S. 157, 161 n.3 (2004) (holding the remedies "distinct"; plaintiff PRP sued another PRP under § 107 where plaintiff cleaned site in the absence of *any* CERCLA enforcement action by the EPA or the state).

6

similar to those affirmed by the Atlantic Research Court. 473 F.3d at 825 (affirming the denial of a motion to dismiss plaintiff's § 107 claim). The Metropolitan Water court found that Metropolitan Water's "complaint ma[d]e clear that neither the EPA nor any other government entity ha[d] involved itself in the cleanup undertaken by Metropolitan Water." 473 F.3d at 837. The court stated, "[a]s far as the complaint indicates, Metropolitan Water's undertaking was completely voluntary and financed by Metropolitan Water alone. . . . the EPA simply is not in the picture . . . ." Id. According to the court, the complaint indicated that "Metropolitan Water ha[d] not come under any governmental scrutiny whatsoever." Id. at 830. Plaintiffs were found to have "adequately plead[ed] a cause of action under § 107(a)" because "the allegations in the complaint ma[d]e clear that Metropolitan Water neither ha[d] settled any liability with a government entity nor ha[d] been the subject of a CERCLA suit for damages." Id. at 835. Equivalent facts were also present in Consolidated Edison Co. v. UGI Utilities, Inc., where the Second Circuit determined it had subject matter jurisdiction over Section 107 claims because the plaintiff had incurred cleanup costs and sued under Section 107 *in the absence of any* consent orders. 423 F.3d 90, 102 (2d Cir. 2005).

     The alleged facts of this case stand in sharp contrast to those in Atlantic Research, Metropolitan Water, and Consolidated Edison. Plaintiffs spend twelve paragraphs in their Complaint describing costs they paid after being compelled to do so by the EPA and the State of Wisconsin. (Dkt. No. 41 ¶¶ 17-28.) Plaintiffs' contention that they are a voluntary remediator seems absurd in light of their own allegations. It is clear from Plaintiffs' allegations that they were the target of intense governmental scrutiny. Plaintiffs point the Court to one sentence of their Complaint which indicates they incurred costs "[i]n addition to" the specifically enumerated costs elsewhere in their Complaint, "including the costs of identifying other responsible parties,

7

conducting risk assessments, funding natural resource damages projects, and otherwise investigating and responding to the Lower Fox River Contamination." (Dkt. No. 92 at 16.) This allegation does not change the fact that by the Plaintiffs' own admission, they were subject to governmental enforcement proceedings.

Despite Plaintiffs' contention, there is nothing about the "[i]n addition to" allegation that "*clearly* alleges the 'voluntary' . . . payment of costs." Id. (emphasis added). Having spent the preceding twelve paragraphs describing costs they allege they incurred after the intervention of the EPA and State of Wisconsin, it is not reasonable to infer that the additional costs Plaintiffs claim in the last sentence of their factual allegations were of a wholly different (i.e., voluntary) character.

While it is true that the court must "accept as true all *well-pleaded* allegations in [plaintiffs'] complaint," Metro. Water, 473 F.3d at 825 (emphasis added), "it is equally clear that a complaint that satisfies [Federal Rule of Civil Procedure] 8(a)'s pleading requirements might still warrant dismissal under Rule 12(b)(6) if the facts pled cannot result in any plausible relief." Segal v. Geisha NYC LLC, 517 F.3d 501, 505 (7th Cir. 2008). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). Here, Plaintiffs' allegation of some "addition[al]" costs without regard to when or how those costs were incurred requires the court to engage in speculation as to the nature of those costs (i.e., whether incurred voluntarily or by compulsion). As a result, Section 107 relief based on these allegations is not plausible and dismissal of the claim is required. See id.

Second, the substantive character of Plaintiffs' costs are secondary to the "procedural circumstances" in which they now stand. Atl. Res., 127 S. Ct. at 2338 ("[T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.'" (quoting Consol. Edison Co., 423 F.3d at 99, cited favorably in Metro. Water, 473 F.3d at 833). The Supreme Court acknowledged in Atlantic Research it had "previously recognized that §§ 107(a) and 113(f) provide two 'clearly distinct' remedies." Id. at 2337 (quoting Aviall, 543 U.S. at 161 n.3). "CERCLA provide[s] for a right to cost recovery in certain circumstances, § 107(a), and separate rights to contribution in other circumstances, §§ 113(f)(1), 113(f)(3)(B)." Id. (quoting Aviall, 543 U.S. at 163). As pleaded in their Complaint, Plaintiffs' procedural circumstances include having "reimbursed the United States and the State of Wisconsin for amounts greater than [Plaintiffs'] allocable share of the Lower Fox River Costs and damages," (Dkt. No. 41 ¶ 58), pursuant to various consent decrees and other compulsory circumstances, (id. ¶¶ 18-20, 23-24). Such costs "are recoverable only under § 113(f)." Atl. Res., 127 S. Ct. at 2338 n.6; see ITT Indus. v. BorgWarner, Inc., 506 F.3d 452, 458 (6th Cir. 2007) ("PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f).").

Moreover, because the costs Plaintiffs seek are not those of a voluntary remediator, the policy aims of allowing certain PRPs to access Section 107(a) are not harmed by denying such access to Plaintiffs. As identified in Menasha's opening brief, documents Plaintiffs reference in the Complaint in support of their claims demonstrate that Plaintiffs did not step forward until after the EPA and State entered the scene and declared them the likely culprits of the PCB

9

contamination in the Lower Fox River.[5] Unlike the plaintiffs in Atlantic Research, Metropolitan Water, Aviall, and Consolidated Edison, Plaintiffs are not the sorts of actors whom the courts allow to sue under Section 107 in the spirit of fostering speedy and truly voluntary cleanups. Metro. Water, 473 F.3d at 836 (explicating "CERCLA's twin aims of encouraging expeditious, voluntary environmental cleanups while holding responsible parties accountable for the response costs that their past activities induced").

In light of the above arguments and those set forth in Menasha's opening brief, Plaintiffs cannot recover their alleged costs under Section 107. Menasha is entitled to dismissal of Plaintiffs' claims under Section 107.

**II.     Plaintiffs Cannot Assert A Claim for Natural Resources Damages.**

Menasha moved in its opening brief to dismiss Plaintiffs' Section 107(a)(4)(C) claims for natural resource damages ("NRD") because Plaintiffs lack standing to assert such claims. Menasha enumerated a long list of cases which declare that *only* the government can assert a claim for NRD pursuant to Section 107(a)(4)(C) of CERCLA. Section V of Plaintiffs' responsive brief contains two paragraphs in reaction to Menasha's arguments. (Dkt. No. 92 at 19.) In the first paragraph, Plaintiffs restate the NRD allegations from their pleading and contend they are entitled to "voluntary" NRD costs under Section 107(a)(4)(B). Neither the simple reiteration of their allegations nor the reference to Section 107(a)(4)(B) do anything to counter Menasha's contention that Plaintiffs lack standing to bring a Section 107(a)(4)(C) claim.

In the second paragraph, Plaintiffs concede they are not entitled to NRD "for themselves." (Dkt. No. 92 at 19.) Plaintiffs argue they instead seek "monies Plaintiffs paid to

---

[5] As noted in Menasha's opening brief, the Court may take judicial notice of these matters and may consider the documents incorporated into the complaint by reference. See Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997).

other parties so those parties could investigate and address alleged impacts to natural resources."
(Id.) In other words, Plaintiffs admit they do not seek "damages" as that term is used in
CERCLA. See 42 U.S.C. § 9601(6) ("The term 'damages' means damages for injury or loss of
natural resources as set forth in section 9607(a) or 9611(b) of this title."); United States v.
Mottolo, 605 F. Supp. 898, 904 (D.N.H. 1985) ("The terms 'costs' and 'damages' are . . .
assigned mutually exclusive definitions under CERCLA. . . . the term 'damages' is consistently
used in the context of natural resources or reference to the exclusive standing of federal or state
government to recover for natural resource damages.").

In its opening brief, Menasha cites eleven cases which support its contention that
Plaintiffs either lack standing to bring a Section 107(a)(4)(C) claim or have failed to state a claim
upon which relief can be granted. Plaintiffs do not contest these cases. Plaintiffs do not cite
even one case in support of their position that their Section 107(a)(4)(C) claims should survive.
Neither the statute nor case law provide Plaintiffs with a cause of action under Section
107(a)(4)(C). Thus, Menasha is entitled to dismissal of Plaintiffs' Section 107(a)(4)(C) claims
as a matter of law.

### III.  Plaintiffs Are Not Entitled to A Declaratory Judgment.

Despite their arguments to the contrary, Plaintiffs are not entitled to a declaratory
judgment under either Section 113(g)(2) of CERCLA or the Declaratory Judgment Act, 28
U.S.C. § 2201(a) *et seq*. The language of Section 113(g)(2) states: "In any such action
described in this subsection, the court shall enter a declaratory judgment *on liability* for response
costs or damages that will be binding on any subsequent action or actions to recover further
response costs or damages" (emphasis added). It does not state that the court shall enter a
declaratory judgment on contribution or allocable shares. It simply states "on liability."
Plaintiffs' attempt to expand this language from "on liability" to "matters that regard or concern"

11

liability stretches too far.  See Chatham Steel Corp. v. Brown, 858 F. Supp 1130, 1156 (N.D. Fla. 1994) (noting that "[i]n entering a declaratory judgment on liability, the Court is not making any determination regarding the amount or allocation of damages in this case.").

As Plaintiffs admit, the Seventh Circuit has not yet addressed whether declaratory relief is available in Section 113(f) actions.[6]  (Dkt. No. 92 at 5).  The only court to comment on the issue in the Eastern District of Wisconsin specifically stated: "Declaratory judgment is only available in a direct cost recovery action."  Raytheon Co. v. McGraw-Edison Co., 979 F. Supp. 858, 865 n.8 (E.D. Wis. 1997).  In support of this statement, the Raytheon court cited to 42 U.S.C. § 9613(g)(2) and to Reichhold Chems, Inc. v. Textron, Inc., 888 F. Supp. 1116, 1124 (N.D. Fla. 1995), which likewise found that "[b]y its explicit language [Section 113(g)(2)] applies only to cost recovery actions under Section 107."  Raytheon, 979 F. Supp. at 865 n.8.

Citing Norfolk Southern Railway Co v. Gee, Plaintiffs claim that the one district court in the Seventh Circuit to address this issue concluded that declaratory relief is available for

---

[6] As Menasha noted in its Motion to Dismiss, Plaintiffs also fail to state a claim for declaratory judgment under Section 107 because they have no claim for relief under Section 107. (Dkt. No. 64 at 10-11.) Plaintiffs' Response only addresses Glatfelter's argument that Plaintiffs cannot bring a claim under Section 107 because Section 113(g)(2) allows for declaratory relief only in the initial action under Section 107. Menasha merely reiterates here that if the Court dismisses Plaintiffs' Section 107 claims, Plaintiffs can no longer request declaratory relief under that section. CadleRock Props. Joint Venture, L.P. v. Schilberg, No. 3:01cv896 (MRK), 2005 U.S. Dist. LEXIS 14701, at **32-34 (D. Conn. July 18, 2005) (finding that where the plaintiff had no underlying legal claim, the court did not have subject matter jurisdiction to grant a declaratory judgment); Mercury Mall Assocs., Inc. v. Nick's Mkt., Inc., 368 F. Supp. 2d 513, 520 (E.D. Va. 2005) (finding that where a cost recovery action was not "viable," an action for declaratory relief was unavailable); Union Station Assocs. LLC v. Puget Sound Energy, Inc., 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002) (stating that plaintiffs' claims for declaratory relief under CERCLA and the Declaratory Judgment Act could not stand in the absence of a substantive cause of action); Estes v. Scotsman Group, 16 F. Supp. 2d 983, 992 (C.D. Ill. 1998) (dismissing plaintiffs' claims under Sections 107 and 113 and holding that plaintiffs' request for declaratory judgment with respect to responsibility of future costs under these section was therefore moot); see also GNB Battery Techs., Inc. v. Gould, Inc., 65 F.3d 615, 619 (7th Cir. 1995) ("[B]ecause the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction, the district court must possess an independent basis for jurisdiction" (citation omitted)).

contribution claims under Section 113(f). (Dkt. No. 92 at 5-6.) Yet the Norfolk Court did not address this issue in any greater detail than the Eastern District of Wisconsin did in Raytheon. Compare Norfolk S. Ry. Co. v. Gee, No. 98 C 1619, 2002 U.S. Dist. LEXIS 18980, at *111 (N.D. Ill. Sept. 30, 2002) with Raytheon, 979 F. Supp. at 865 n.8. The court in Norfolk simply stated that the court has *discretion* to enter a declaratory judgment. Id. The court's two-paragraph conclusion regarding the availability of a declaratory judgment against the defendants in that case did not analyze whether the express language of Section 113(f) authorizes a declaratory judgment. Id. Nor did it explain where the court's discretion to do so comes from. Id. Even more importantly, the Norfolk court *declined* to enter a declaratory judgment in that case. Id. Norfolk is therefore no more persuasive than Raytheon.

The Court in this case should similarly decline to enter a declaratory judgment. On April 30, 2008, Plaintiffs represented to the Court that they expected that they would join all PRPs who have not settled within approximately sixty days. (Dkt. No. 87 at 3). Yet the only Defendants in this case (out of at least two dozen possible parties (see Dkt. No. 41 ¶ 3) are still Menasha, Glatfelter, Whiting, and a number of parties which neither appear to be significant participants in the Lower Fox River cleanup nor the parties whom Plaintiffs originally contemplated adding to the case. (See Dkt. No. 8; Dkt. No. 30.)

Plaintiffs state that a declaratory judgment meets the purposes of CERCLA. But this is only true where the Court can fairly and finally determine each PRP's share in a defined cleanup; that is, where the factors that may directly impact the Court's allocation of responsibility are relatively stable. This requires the participation of all appropriate parties and sufficient knowledge of the scope of the cleanup, in terms of both future costs and relevant scientific evidence.

The majority of the remedial action in the Lower Fox River has yet to be done. (See Dkt. No. 41 ¶ 4 (Plaintiffs "expect that they will be required to pay considerably more than they have paid to date in order to comply with the November UAO).) As the remedial action progresses, possibly over decades, the parties will undoubtedly encounter unexpected costs, facts, and evidence which will impact the Court's allocation of future liability. The parties therefore will not be able to rely on the accuracy and finality of a declaratory judgment, and such declaratory judgment will not meet the purposes of CERCLA. See Boeing Co. v. Cascade Co., 207 F.3d 1177, 1191 (9th Cir. 2003).

## CONCLUSION

Plaintiffs First Count must be dismissed because the Seventh Circuit has clearly held that a party who has incurred involuntary response costs, such as Plaintiffs, can only bring a claim under Section 113, and because plaintiffs lack standing to seek natural resource damages under Section 107(a)(4)(C). Plaintiffs Third Count must also be dismissed because Section 113(g)(2) does not authorize declaratory judgments in Section 113 actions and a declaratory judgment in this case is not consistent with the purposes of CERCLA. Menasha therefore respectfully requests that the Court dismiss Counts I and III of Plaintiffs' Complaint.

Dated:  May 5, 2008

                                   s/ Colin C. Deihl

Mark R. Feldmann
Wisconsin Bar No. 1017847
Joseph J. Beisenstein
Wisconsin Bar No. 1013866
Menn Law Firm, Ltd.
2501 E. Enterprise Avenue
P.O. Box 785
Appleton, WI 54912-0785
Telephone:  920-731-6631
Facsimile:  920-734-0981
mark-feldmann@mennlaw.com
joseph-beisenstein@mennlaw.com

Delmar R. Ehrich
Minnesota Bar No. 148660
Faegre & Benson LLP
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN  55402
Telephone:  612-766-7000
Facsimile:  612-766-1600
dehrich@faegre.com

Colin C. Deihl
Colorado Bar No. 19737
Jacy T. Rock
Colorado Bar No. 36717
Faegre & Benson LLP
1700 Lincoln Street, Suite 3200
Denver, CO  80203
Telephone:  303-607-3500
Facsimile:  303-607-3600
cdeihl@faegre.com
jrock@faegre.com

Attorneys for Defendant Menasha Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2008, **DEFENDANT MENASHA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** was electronically filed with the Clerk of the Court using the ECF system.

The ECF system will send notification of the filing to:

J. Andrew Schlickman
Evan B. Westerfield
Joan Radovich
Kathleen L. Roach
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
jaschlickman@sidley.com
*Counsel for NCR Corporation*

J. Ric Gass
Gass Weber Mullins LLC
309 N. Water Street, #700
Milwaukee, WI 53202-5769
gass@gasswebermullins.com
*Counsel for NCR Corporation*

Scott B. Fleming
Weiss Berzowski Brady LLP
700 N. Water Street, Suite 1400
Milwaukee, WI 53202-4206
sbf@wbb-law.com
*Counsel for George A. Whiting Paper Company*

Philip A. Monroe
Di Renzo & Bomier, LLC
Two Neenah Center, Suite 701
PO Box 788
Neenah, WI 54957-0788
pmunroe@direnzollc.com
*Counsel for George A. Whiting Paper Company*

Michael L. Hermes
Metzler Timm Treleven & Hermes SC
222 Cherry St.
Green Bay, WI 54301-4223
mhermes@mtthlaw.com
*Counsel for Appleton Papers Inc.*

David G. Mandelbaum
Marc E. Davies
Jennifer E. Simon
Ronald M. Varnum
Sabrina Mizrachi
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
mandelbaum@ballardspahr.com
daviesm@@ballardspahr.com
simonj@ballardspahr.com
varnumr@ballardspahr.com
mizrachis@ballardspahr.com
*Counsel for P.H. Glatfelter Company*

David J. Edquist
Christopher P. Riordan
Patrick L. Wells
von Briesen & Roper, s.c.
411 E. Wisconsin Ave., Suite 700
Milwaukee, WI 53201-3262
dedquist@vonbriesen.com
criordan@vonbriesen.com
pwells@vonbriesen.com
*Counsel for Green Bay Packaging, Inc.*

Randall M. Stone
U.S. Department of Justice
Environment and Natural Resources Div.
Environmental Enforcement Section
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044-7611
randall.stone@usdoj.gov
*Counsel for The United States of America*

Russell W. Wilson
Ruder Ware
500 First Street, Suite 8000
P.O. Box 8050
Wausau, WI  54402-8050
rwilson@ruderware.com
*Counsel for Leicht Transfer & Storage Co.*

Linda E. Benfield
Sarah A. Slack
Foley & Lardner LLP
777 E. Wisconsin Ave.
Milwaukee, WI  53202-5306
lbenfield@foley.com
sslack@foley.com
*Counsel for Wisconsin Public Service Corporation*

Arthur F. Radke
Dykema Gossett PLLC
10 S. Wacker Dr., Suite 2300
Chicago, IL  60606
aradke@dykema.com
*Counsel for Proctor & Gamble Paper Products Company*

Daniel C. Murray Esq.
Johnson & Bell, Ltd.
33 West Monroe Street, Suite 2700
Chicago, IL  60603-5404
Phone: (312) 984-0226
Fax: (312) 372-9818
murrayd@jbltd.com
*Counsel for NewPage Wisconsin System Inc.*

And a copy will be sent by U.S. Mail to the following:

International Paper Company
8040 Excelsior Drive, Suite 200
Madison, WI  53717

Neenah Foundry Company
411 E. Wisconsin Ave, Suite 2040
Milwaukee, WI  53202

                          s/ Gregory S. Apt
                          Gregory S. Apt

fb.us.2828590.03