**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
Green Bay Division**

---

APPLETON PAPERS INC. and
NCR CORPORATION,

                           Plaintiffs,

              v.

GEORGE A. WHITING PAPER CO., et al.,

                       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

No. 08-CV-00016-WCG

---

**UNITED STATES' BRIEF AS AMICUS CURIAE
ADDRESSING ISSUES RAISED BY MOTIONS TO DISMISS CERTAIN CLAIMS
IN PLAINTIFFS' THIRD AMENDED COMPLAINT**

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

LESLIE ALLEN
RANDALL M. STONE
Environmental Enforcement Section
Environment and Natural Resources Division

STEVEN M. BISKUPIC
United States Attorney

MATTHEW V. RICHMOND
Assistant United States Attorney
Eastern District of Wisconsin

# TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATUTORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.   The Major Potentially Responsible Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     B.   Initial Governmental Responses to the Contamination . . . . . . . . . . . . . . . . . . . 8

     C.   Governmental Efforts to Address the Site Under CERCLA . . . . . . . . . . . . . . . 9

     D.   This Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     A.   Private Parties Cannot Assert Claims for Damages Under CERCLA
          § 107(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     B.   Parties in Plaintiffs' Position Cannot Assert Claims for Recovery
          of Response Costs Under CERCLA § 107(a), But Rather Are Limited
          to Claims Pursuant to § 113(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          1.   Atlantic Research Held that a Party Who Expended Response
               Costs in the Absence of Suit Under §§ 106 or 107 or the
               Compulsion of Settlement And Thus Had No Claim Under
               § 113(f), May Bring Suit Under § 107(a)(4)(B). . . . . . . . . . . . . . . . . . 21

          2.   Other Courts Have Held That § 107(a)(4)(B) Provides a Claim
               to Parties That Do Not Have One Under § 113(f); Atlantic
               Research Does Not Otherwise Overrule Settled Law That PRPs
               That Meet the Terms of § 113(f) Must Use § 113(f). . . . . . . . . . . . . . . 26

          3.   Because Plaintiffs Have Been Sued Pursuant to §§ 106
               and 107 of CERCLA, They Have a Claim Under § 113(f),
               But Not Under § 107(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

          4.   Plaintiffs May Not Seek Costs from Glatfelter for Matters
               Addressed in Their OU 1 Settlement Because Such Claims
               Are Barred by Contribution Protection. . . . . . . . . . . . . . . . . . . . . . . . . 34

     C.   Declaratory Relief Under CERCLA § 113(g) is Available in Any
          Action Under CERCLA § 107(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

-i-

# I. **INTRODUCTION**

The Lower Fox River and Green Bay Site (the "Fox River Site" or the "Site") encompasses a nearly 40 mile stretch of the Fox River and more than 1000 square miles of Green Bay that have been impacted by polychlorinated biphenyls ("PCBs") released from paper production facilities and paper coating facilities. The PCBs were used in the production of a particular type of "carbonless" copy paper from at least the 1950s to the early 1970s. PCBs were released to the River both in the production of carbonless paper at certain Fox River Valley facilities, and in the reprocessing of PCB-containing waste paper at other facilities in the Valley. The PCB contamination that remains at the Site – primarily in sediments – has caused adverse health effects and reproductive effects in fish and birds, and fish and waterfowl in the area are subject to human health-based Consumption Advisories.

The United States, primarily through the U.S. Environmental Protection Agency ("EPA"), administers the program for the cleanup of environmentally-contaminated sites around the country under the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9601-75. Other agencies of the United States, such as the U.S. Department of the Interior ("DOI"), are charged with responsibility for assessing and pursuing recovery of damages under CERCLA for injuries to natural resources caused by releases of hazardous substances at such sites, and for using any damages recovery to restore, replace, or acquire the equivalent of the injured resource. The United States therefore has a substantial interest in assuring that CERCLA is interpreted, as intended by Congress, in a manner that promotes the protection of public health and the environment through the efficient and effective cleanup and restoration of contaminated sites. As noted in the parties' briefing on the pending motions, and as further described below, the United States has already filed several

1

CERCLA enforcement actions regarding the Site against some of the parties to this action, and has entered into settlements with a number of the parties.

Sections II and III of this brief provide background information on CERCLA and the Fox River Site. The brief then presents the views of the United States on three significant issues raised by the parties' arguments on the motions to dismiss certain claims in the Plaintiffs' Third Amended Complaint.[1] First, the brief shows that the Plaintiffs' claim for natural resource damages under CERCLA § 107(a) (as set forth in Count I of their Complaint) should be dismissed because there is no private cause of action for damages under that portion of the statute. Second, it shows that the Court should dismiss the Plaintiffs' claim for response costs under CERCLA § 107(a) (also as set forth in Count I of their Complaint), because Plaintiffs are limited to pursuing claims for contribution (as pled in Count II of their Complaint) under CERCLA § 113(f). Finally, the United States demonstrates that the Court should reject an argument advanced by one Defendant – P.H. Glatfelter Co. ("Glatfelter") – that a declaratory judgment under CERCLA is available only in an "initial" action for recovery of response costs under CERCLA § 107(a). If the Court enters an order adopting the positions advocated by the United States, the parties would be left litigating the CERCLA contribution claims alleged in Count II of the Plaintiffs' Complaint.

---

[1]    The Third Amendment Complaint is generally referred to herein as the "Complaint," although specific paragraphs are cited as "Third Am. Complaint at ¶ __." The Movants' principal memoranda in support of their motions are cited as "Glatfelter Mem. at __" and "Menasha Mem. at __," and their reply memoranda are cited as "Glatfelter Reply at __" and "Menasha Reply at __." Plaintiffs' consolidated response memorandum is cited as "Pl. Mem. at __."

## II.  STATUTORY BACKGROUND

Congress enacted CERCLA in response to widespread concern over the severe environmental and public health effects resulting from improper disposal of hazardous industrial wastes and other hazardous substances.  The statute grants broad authority to the United States and States in connection with the cleanup of contaminated sites.[2]  CERCLA provides EPA several options when EPA determines that a "response action" is needed to clean up or contain contamination at a particular site.  For example, EPA may undertake the response action on its own, utilizing funds from the Superfund, and then seek reimbursement of the Superfund from the responsible parties.  42 U.S.C. §§ 9604, 9607.  EPA may also issue and seek enforcement of administrative orders under CERCLA § 106 directing responsible parties to implement response actions.  Id. at § 9606.  State agencies, such as the Wisconsin Department of Natural Resources ("WDNR"), also can undertake a response action and then sue the responsible parties for reimbursement.  Id. at §§ 9604(d), 9607.  "CERCLA's principle aims are to effectuate the cleanup of hazardous waste sites and impose cleanup costs on responsible parties."  New Mexico v. General Electric Co., 467 F.3d 1223, 1244 (10th Cir. 2006) (citation omitted).

"Less well know but increasingly important is CERCLA's comprehensive damage scheme which addresses damage assessment for natural resource injury, damage recovery for such injury, and use of such recovery."  Id.  CERCLA authorizes the United States, States, and Native American Tribes to recover damages for injury to, destruction of, or loss of natural

---

[2]      See generally In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 974 F.2d 775, 779 (7th Cir. 1992); In re CMC Heartland Partners, 966 F.2d 1143, 1146-47 (7th Cir. 1992); Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1324 (7th Cir. 1990); Schalk v. Reilly, 900 F.2d 1091 (7th Cir. 1990); Dedham Water Co. v. Cumberland Farms Dairy, Inc., 889 F.2d 1146, 1150 (1st Cir. 1989); United States v. R.W. Meyer, Inc., 889 F.2d 1497, 1500-02 (6th Cir. 1989); United States v. Akzo Coatings of Amer., Inc., 949 F.2d 1409, 1416-18 (6th Cir. 1991).

3

resources caused by releases of hazardous substances at contaminated sites. 42 U.S.C.

§ 9607(a)(4)(C), 9607(f). As DOI explained when it promulgated Natural Resource Damage

Assessment regulations required by CERCLA, 42 U.S.C. § 9651(c), "natural resource damages

are for injuries residual to those injuries that may be ameliorated in the response action" and

"for the loss of use from the time of the discharge or release until such injuries are ameliorated."

51 Fed. Reg. 27,681 (Aug. 1, 1986). See generally Ohio v. DOI, 880 F.2d 432 (D.C. Cir. 1989);

Kennecott Utah Copper Corp. v. DOI, 88 F.3d 1191 (D.C. Cir. 1996). Agencies such as DOI

and WDNR have been formally designated as natural resource trustees under CERCLA. 42

U.S.C. § 9607(f)(2) (specifying procedures for designation of federal and state trustees); 40

C.F.R. § 300.600 (designation of federal trustees). The statute expressly provides that natural

resource damages liability "shall be to the United States Government and to any State for natural

resources within the State or belonging to, managed by, controlled by, or appertaining to such

State and to any Indian tribe for natural resources belonging to, managed by, controlled by, or

appertaining to such tribe." Id. at § 9607(f)(1). By law, any natural resource damage recovery

must be used "only to restore, replace, or acquire the equivalent of" the injured natural resources.

42 U.S.C. § 9607(f).

The classes of responsible parties under CERCLA include the owners and operators of

facilities from which hazardous substances were released, as well as those who arranged for the

disposal or treatment of or transported the hazardous substances. Id. at § 9607(a). Liability

under CERCLA is strict, and each responsible party is jointly and severally liable to the

government unless the responsible party demonstrates that the harm is divisible among

4

responsible parties.[3]

As discussed in detail in Section IV below, CERCLA § 107(a)(4)(B) permits private parties in certain procedural circumstances to bring claims against responsible parties for recovery of cleanup costs. 42 U.S.C. § 9607(a)(4)(B); United States v. Atlantic Research Corp., 127 S. Ct. 2331, 2332 (2007). CERCLA also permits responsible parties in other procedural postures to seek contribution from other responsible parties to the extent that they have paid more than their equitable share of the response costs or damages. Id. at § 9613(f)(1), 9613(f)(3)(B).[4] As originally enacted, CERCLA did not include express provisions concerning contribution, although most courts ultimately ruled that CERCLA conferred an implied right of action for contribution. United Technologies Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 101 (1st Cir. 1994). The Superfund Amendments and Reauthorization Act of 1986 ("SARA") added provisions on contribution to § 113 of the statute in order to "clarif[y] and confirm[ ] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances." H.R. Rep. No. 99-253, pt. 1, at 79 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2861; S. Rep. No. 99-11, at 44 (1985), reprinted in 2 Legislative History of the Superfund Amendments and Reauthorization

---

[3]      See, e.g., Chicago, Milwaukee, 974 F.2d at 779; Rumpke of Ind., Inc. v. Cummins Engine Co., 107 F.3d 1235, 1240 (7th Cir. 1997) ("liability under [CERCLA] § 107(a) is joint and several"); New Mexico v. General Electric Co., 467 F.3d at 1234 ("CERCLA makes PRPs jointly and severally liable not only for costs of removal and/or remedial action, but also for 'damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss . . . .'").

[4]      See Amcast Indus. Corp. v. Detrex Corp., 2 F.3d 746, 748 (7th Cir. 1993); Envtl. Transp. Sys., Inc. v. ENSCO, Inc., 969 F.2d 503, 506 (7th Cir. 1992); United States v. R.W. Meyer, Inc., 932 F.2d 568, 570 (6th Cir. 1991).

5

Act of 1986, 636, Sp. Print 101-120 (101st Cong., 2d Sess.) (1990). For example, § 113(f)(1)

provides that "[a]ny person may seek contribution from any other person who is liable or

potentially liable under [CERCLA § 107(a)] during or following any civil action under

[CERCLA §§ 106 or 107(a)]." 42 U.S.C. § 9613(f)(1). Section 113(f)(3)(B) also authorizes

parties to pursue contribution claims if they have resolved some or all of their liability by entry

into a settlement with the United States or a State. Id. at § 9613(f)(3)(B).

Having created the liability system and enforcement tools to allow the United States,

States, and Tribes to pursue responsible parties for cleanup and natural resource damages under

CERCLA – as well as a mechanism for allocating response costs and damages among liable

parties – Congress expressed a strong preference that the authorized governmental agencies

settle with responsible parties in order to avoid the undue expenditure of resources on litigation

rather than on cleanup.[5] CERCLA encourages settlements in part by providing statutory

protection from contribution claims for matters addressed to parties who settle with the United

States or a State pursuant to CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2). Rumpke, 107 F.3d at

1236. That provision is intended to provide settling parties with a measure of finality in return

---

[5]    See, e.g., New Mexico v. General Electric, 467 F.3d at 1248 n.37 (CERCLA incorporates an "obvious preference for claims settlement"); Bedford Affiliates v. Sills, 156 F.3d 416, 427 (2d Cir. 1998) (CERCLA's statutory settlement scheme "was put in place to aid the expeditious resolution of environmental claims" and it includes special "incentives for potentially responsible parties to settle and strong disincentives for non-settling potentially responsible parties."); Akzo Coatings, 949 F.2d at 1436 (recognizing CERCLA's "presumption in favor of voluntary settlement"); United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990) ("it is the policy of the law to encourage settlements," especially in CERCLA cases where "a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement.") (citing Donovan v. Robbins, 752 F.2d 1170, 1177 (7th Cir. 1985)); H.R. Rep. No. 99-253. pt. 1, at 80 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2862.

for their willingness to settle.[6]  If a settlement yields less than complete relief for a site, an action may be brought against any other persons who have not resolved their liability, or a subsequent action may be brought to obtain additional relief from an earlier settler if the settler's liability was not fully satisfied in the original action.  42 U.S.C. § 9613(f)(3), (g)(2).

### III.  STATEMENT OF FACTS [7]

#### A.    The Major Potentially Responsible Parties

NCR Corporation ("NCR") and Appleton Papers Inc. ("API") are two of eight entities that have been formally notified by governmental entities that they are potentially responsible parties ("PRPs") for environmental claims under CERCLA and other statutes arising out of the presence of PCBs in sediments in the Lower Fox River and in the Bay of Green Bay.  NCR was identified as a PRP because of alleged PCB discharges from two carbonless copy paper manufacturing facilities it previously owned, which are located along the Fox River in Appleton and Combined Locks.  Carbonless paper containing PCBs was manufactured at the Appleton plant from 1954 until 1971.  NCR sold its paper manufacturing facilities in 1978 to API, which has also been identified as a PRP.[8]

---

[6]      See United Technologies, 33 F.3d at 102-103; Cannons Eng'g, 899 F.2d at 92; O'Neil v. Picillo, 883 F.2d 176, 178-79 (1st Cir. 1989); H.R. Rep. No. 99-253, pt. 1, at 80 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2862.

[7]      All factual background information in this section is taken from public records such as the Plaintiffs' official filings with the Securities and Exchange Commission and official governmental publications such as the Federal Register. The Seventh Circuit has held that district courts may take judicial notice of such matters of public record in considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See Anderson v. Simon, 217 F.2d 472, 474-75 (7th Cir. 2000); Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994).

[8]      See NCR Corp. Form 10-K for the fiscal year ended December 31, 2007 at 75 (hereinafter the "2007 NCR 10-K"); Appleton Papers Inc. Form 10-K for the fiscal year ended December 28, 2002 at 12 (hereinafter the "2002 API 10-K").  All Securities and Exchange Commission filings cited herein can be accessed at <http://www.sec.gov/edgar.shtml>.

Some parties contend that NCR and API are also responsible for PCB discharges from paper mills owned by other companies because carbonless paper manufactured by NCR was purchased by those mills as a raw material for their paper making processes. The other Fox River PRPs that have received governmental notices of CERCLA liability for the Site are P.H. Glatfelter Company, Georgia-Pacific Consumer Products LP (successor to Fort James Operating Company), WTM I Co. (formerly Wisconsin Tissue Mills, now owned by Chesapeake Corporation), Riverside Paper Corporation, U.S. Paper Mills Corp. (owned by Sonoco Products Company), and Menasha Corporation.[9]

## B.    Initial Governmental Responses to the Contamination

In 1976, WDNR issued its first formal Fish Consumption Advisory based on the presence of PCBs in fish caught in the Lower Fox River, Green Bay, and Lake Michigan.[10] The Lower Fox River and Green Bay were formally designated as an "Area Of Concern" under a

_____

Pursuant to CERCLA, both API and NCR are viewed by the United States as PRPs. Accordingly, API and NCR asserted indemnity claims against each other pursuant to the terms of their 1978 agreement. See 2002 API 10-K at 13. Under a later agreement and an arbitration award, NCR and API have determined that they will apportion their joint costs for the site among the two companies as follows: (1) for costs up to $75 million, NCR will bear 45% and API will bear 55%; and (2) for costs in excess of $75 million, NCR will bear 40% and API will bear 60%. See 2007 NCR 10-K at 75.

[9]      See 2007 NCR 10-K at 75.

[10]      See U.S. Fish and Wildlife Service, Fish Consumption Advisories in the Lower Fox River/Green Bay Assessment Area at 2-1 - 2-5 (Nov. 24, 1998) <http://www.fws.gov/midwest /FoxRiverNRDA/documents/fca.pdf>. Years before the State adopted its Fish Consumption Advisory, the U.S. Food and Drug Administration ("FDA") had found PCBs in certain foods (especially in fish) and food-packaging materials (such as cereal boxes) and FDA determined that PCB-containing carbonless copy paper was a primary source of PCB contamination in food-packaging materials. See 37 Fed. Reg. 5,705 (March 18, 1972); 38 Fed. Reg. 18,096, 18,101-02 (July 6, 1973). FDA therefore adopted regulations that set tolerance levels for PCBs in foods and food-packaging materials and limited the use of PCB-containing "waste from the manufacture of paper and paperboard products" for the manufacture of food-packaging materials. 38 Fed. Reg. at 18,101.

8

1987 Amendment to the Great Lakes Water Quality Agreement between the United States and Canada. As required by that treaty, WDNR prepared and issued a 1988 Remedial Action Plan and a 1993 Remedial Action Plan update addressing environmental problems affecting water quality in the River and the Bay, including the need for remediation of PCB-contaminated sediments in the River.[11/]

### C. Governmental Efforts to Address the Site Under CERCLA

In May 1994, a component of DOI, the U.S. Fish and Wildlife Service ("FWS") completed a Preassessment Screen and Determination for the Lower Fox River and Green Bay Site under DOI's Natural Resource Damage Assessment regulations, 43 C.F.R. Part 11, and concluded that there was sufficient information to proceed with a formal damage assessment under CERCLA and the Federal Water Pollution Control Act (otherwise known as the Clean Water Act).[12/] In February 1996, FWS sent NCR notice that FWS considered NCR a PRP under CERCLA with respect to natural resource restoration and damages to the Fox River and related Green Bay environment. FWS also notified a number of other manufacturing companies of their status as PRPs for natural resource restoration and damages. In addition, NCR had been

---

[11/]     See Protocol Amending the 1978 Agreement Between the United States of America and Canada On Great Lakes Water Quality, Nov. 18, 1987, T.I.A.S. No. 11551. See also Lower Green Bay Remedial Action Plan for the Lower Fox River and Lower Green Bay Area of Concern (Feb. 1988) <http://www.dnr.state.wi.us /org/gmu/lowerfox/ Lower%20Green%20Bay%201988%20RAP%20Complete.pdf>; Lower Green Bay Remedial Action Plan, September 1993 Update at 115-125 (Sept. 1993) <http://www.dnr.state.wi.us/ org/gmu/lowerfox/1993%20RAP%20Complete.pdf>.

[12/]     See FWS Preassessment Screen and Determination (May 1994) <http://www.fws.gov/midwest/FoxRiverNRDA/prescreen.html>.

identified, along with a number of other companies, by WDNR with respect to alleged liability arising out of alleged past discharges that had contaminated sediments in the Fox River system.[13]

In August 1996, FWS, The Menominee Indian Tribe of Wisconsin, and the Oneida Tribe of Indians of Wisconsin (the "Federal and Tribal Trustees") published formal notice of the availability of their Assessment Plan for completion of a formal Natural Resource Damage Assessment under CERCLA and DOI's Natural Resource Damage Assessment regulations.[14] In December 1996, the Federal and Tribal Trustees invited NCR, certain other PRPs, and WDNR to enter into settlement negotiations over environmental claims relating to the Site. In January 1997, NCR and the other PRP companies reached agreement on an interim settlement with WDNR. The Federal and Tribal Trustees were not parties to that agreement.[15]

In January 1997, the Federal and Tribal Trustees notified NCR and the other PRPs of the Federal and Tribal Trustees' intent to commence a natural resource damages lawsuit under CERCLA within 60 days of the notice, unless a negotiated resolution of their claims could be reached. In July 1997, the Federal and Tribal Trustees, WDNR, and EPA entered into a Memorandum of Agreement that provided a framework for coordinating remedial and restoration studies and actions regarding the Site, including the assertion of claims against the PRPs.[16]

_____

[13]    See NCR Corp. Form 10-Q for the quarter ended on September 30, 1997 at 7 (hereinafter the "September 1997 NCR 10-Q").

[14]    See 61 Fed. Reg. 43,558 (Aug. 23, 1996).

[15]    See September 1997 NCR 10-Q at 7.

[16]    See id.

10

In June 1997, EPA announced its intention to propose the Fox River Site for inclusion on the National Priorities List of CERCLA sites. In July 1997, EPA sent the PRPs a Special Notice Letter calling for formal negotiations on the preparation of a remedial investigation and feasibility study ("RI/FS") on the Site. The PRPs agreed to enter into such negotiations in July 1997. NCR and the other identified PRPs entered into a series of tolling and standstill agreements with EPA, the Federal and Tribal Trustees, and the WDNR, effectively stopping any judicial or administrative actions until at least December 1997.[17]

In December 1997, EPA declined the PRPs' proposal to perform the RI/FS, and WDNR thereafter commenced work on the RI/FS in conjunction with EPA. In July 1998, EPA formally proposed the Fox River Site for inclusion on the National Priorities List.[18]

In 1998 and 1999, the Federal and Tribal Trustees completed and issued a series of studies concerning injuries to natural resources caused by the PCBs at the Site, and FWS released a proposed Restoration and Compensation Determination Plan in October 2000 that presented the Federal and Tribal Trustees' planned approach for restoring natural resources injured by PCBs and calculated the potential natural resource damages.[19]

In August 2001, the United States and the State of Wisconsin filed suit against API and NCR under §§ 106 and 107 of CERCLA, 42 U.S.C. §§ 9606, 9607, and simultaneously lodged a Consent Decree containing the terms of a proposed partial settlement with the two companies.

---

[17]    See id.

[18]    See NCR Corp. Form 10-K for the fiscal year ended December 31, 1998 at 30 (hereinafter the "1998 NCR 10-K"). See also 63 Fed. Reg. 40,247, 40,252 (July 28, 1998) (proposing to add what was then called the "Fox River NRDA/PCB Releases Site" to the National Priorities List).

[19]    See 2002 API 10-K at 13. See also 65 Fed. Reg. 64,982 (Oct. 31, 2000) (Notice of availability of RCDP).

Judge Adelman approved and entered that Consent Decree on December 10, 2001.[20] Under that Decree, API and NCR agreed to provide up to $41.5 million over a period of four years for remediation and natural resource restoration efforts directed by the government parties. In exchange for those payments, the government parties agreed not to sue or take administrative action against API and NCR during the four-year period.[21]

In October 2001, EPA and WDNR released their RI/FS for the Site, as well as a Proposed Remedial Action Plan that proposed a combination of monitored natural recovery and dredging and off-site disposal of sediment contaminated with PCBs.[22]

In 2002, the United States, the State, and two Tribal Trustees entered into a Site-wide natural resource damages settlement with Fort James Operating Company ("Fort James"). That settlement resolved Fort James' liability for natural resource damages in exchange for the company's commitment to fund and perform significant natural resource restoration work. The settlement also resolved Fort James' liability for response costs and response actions in a discrete area of the Site, known as Sediment Management Unit 56/57. Judge Adelman issued a published opinion approving that Consent Decree in March 2004.[23]

---

[20]    See United States and the State of Wisconsin v. Appleton Papers Inc. and NCR Corp., Case No. 01-c-0816 (E.D. Wis.) (Docket Nos. 1 (Complaint), 2 (Proposed Consent Decree), and 13 (Consent Decree, as entered by the Court on December 10, 2001)).

[21]    See 2002 API 10-K at 14. At the parties' request, Judge Adelman later approved a Consent Decree Modification and Partial Extension that extended the natural resource damages portion of that settlement for one additional year. See United States and the State of Wisconsin v. Appleton Papers Inc. and NCR Corp., Case No. 01-c-0816 (E.D. Wis.) (Docket No. 17 (Consent Decree Modification and Partial Extension, as entered by the Court on January 24, 2006)).

[22]    See 2002 API 10-K at 12.

[23]    See United States and the State of Wisconsin v. Fort James Operating Co., Case No. 02-c-0602 (E.D. Wis.) (Docket Nos. 1 (Complaint), 5 (Proposed Consent Decree), 54 (Decision

12

In January 2003 and July 2003, EPA and WDNR issued two clean-up plans (known as Records of Decision, or "RODs") for the Site. The January 2003 ROD addressed the upper portions of the Fox River, known as Operable Units 1 and 2 ("OUs 1-2"), and the July 2003 ROD addressed the lower part of the Fox River and Green Bay, known as Operable Units 3, 4, and 5 ("OUs 3-5"). The RODs selected large-scale dredging as the clean-up approach in OUs 1, 3, and 4, but they also identified "capping" the river bed with appropriate materials as a "contingent remedy" to be evaluated during the remedial design process. For one segment of the River (OU 2) and Green Bay (OU 5), the RODs required monitored natural attenuation.[24] EPA and WDNR made some modifications to the cleanup remedy in OUs 2-5 in a ROD Amendment issued in 2007.[25]

By a letter dated September 30, 2003, EPA and WDNR notified NCR, API, and six other PRPs of their potential liability for remediation of the lower portions of the Fox River and requested that one or more of the PRPs enter into an agreement with the governments to perform the engineering design work for the clean-up of OUs 2-5. In response, in 2004, NCR and Fort James entered into an Administrative Order on Consent with the governments to perform that design work.[26]

---

and Order Approving Consent Decree)). See also United States v. Fort James Operating Co., 313 F. Supp. 2d 902 (E.D. Wis. 2004) (published version of opinion approving Consent Decree).

[24]     See 2007 NCR 10-K at 76. See also Record of Decision for Operable Units 1 and 2 <http://www.epa.gov/Region5/sites/foxriver/pdf/rod_12202002.pdf>; Record of Decision for Operable Units 3-5 <http://www.epa.gov/Region5/sites/foxriver/pdf/rod_06302003.pdf>.

[25]     See 2007 NCR 10-K at 77. See also Record of Decision Amendment for the Lower Fox River and Green Bay Superfund Site <http://www.epa.gov/Region5/sites/foxriver/pdf/rodfinal20070628.pdf>.

[26]     See id.

In October 2003, the United States and the State filed a CERCLA action against two PRPs – Glatfelter and WTM I Co. – and lodged a Consent Decree with them for performance of the remedial design and the remedial action in OU 1. Judge Adelman approved and entered that Consent Decree on April 12, 2004.[27] Among other things, that Consent Decree afforded the two Settling Defendants statutory protection under CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2), against contribution claims for the "OU1 Response Activities and Costs," as that term was defined in the Decree.[28]

In April 2006, the United States and the State filed another CERCLA action, against NCR and U.S. Paper Mills, and those two PRPs entered into a Consent Decree with the governments to undertake sediment removal work in an area of elevated PCBs below the De Pere Dam (called the "Phase 1" work). That consent decree was approved by Judge Adelman in November 2006, and most of the work was performed during 2007.[29]

On November 13, 2007, EPA issued a unilateral administrative order ("UAO") under § 106 of CERCLA to eight PRPs.[30] The UAO required the PRPs to implement the remedial

---

[27] See United States and the State of Wisconsin v. P.H. Glatfelter Co. and WTM I Co., 03-0949 (E.D. Wis.) (Docket Nos. 1 (Complaint), 4 (Proposed Consent Decree), 22 (Order Granting Plaintiffs' Motion to Enter Proposed Consent Decree).

[28] See Paragraphs 83 and 101 of Consent Decree in United States and the State of Wisconsin v. P.H. Glatfelter Co. and WTM I Co., 03-0949 (E.D. Wis.) (Docket No. 4).

[29] See United States and the State of Wisconsin v. NCR Corp. and Sonoco-U.S. Mills, Inc., 06-0484 (E.D. Wis.) (Docket Nos. 1 (Complaint), 2 (Proposed Consent Decree), 8 (Decision and Order Approving Consent Decree)). See also 2007 NCR 10-K at 76.

[30] See 2007 NCR 10-K at 76. The UAO recipients were API, NCR, Glatfelter, Menasha, CBC Coating, Inc. (formerly known as Riverside Paper Corporation), Georgia-Pacific Consumer Products, LP (formerly known as Fort James Operating Company), U.S. Paper Mills Corp., and WTM I Company (formerly known as Wisconsin Tissue Mills, Inc.). See Administrative Order for Remedial Action, U.S. EPA Docket No. V-W-'08-C-885 <http://www.epa.gov/Region5/sites/foxriver/pdf/fox-river-uao-20071113.pdf>.

14

work in OUs 2-5 in accordance with the requirements of the 2007 ROD Amendment.  NCR, API and the other PRPs are working to implement certain provisions of the UAO.[31]

### D.    This Litigation

The Plaintiffs filed this action in January 2008, asserting claims for response costs and damages under CERCLA § 107(a) (Count I), for contribution under § 113(f) (Count II), and for a declaratory judgment (Count III).  Two Defendants – Glatfelter and Menasha Corp. ("Menasha") – moved to dismiss Plaintiffs' § 107(a) claims and their declaratory judgment claims.  A third Defendant, Leicht Transfer & Storage Co., filed a motion to dismiss that adopted Menasha's arguments.  The Defendants have not moved to dismiss Plaintiffs' claim for contribution (except that Glatfelter seeks a determination that any claim for "OU1 Response Activities and Costs" is barred by the contribution protection afforded by its 2004 Consent Decree with the United States and the State).

## IV. <u>ARGUMENT</u>

### A.    Private Parties Cannot Assert Claims for Damages Under CERCLA § 107(a)

The Court should dismiss the natural resource damages claims that Plaintiffs have asserted under CERCLA § 107(a).  There is no such thing as a private party claim for "damages" under CERCLA § 107(a), as asserted in Count I of Plaintiffs' Complaint.  As demonstrated below, the plain language of the statute and a consistent line of cases both confirm that duly-designated Federal, State, and Tribal natural resource trustees are the only parties that can assert damages claims concerning injury to natural resources under CERCLA § 107(a).

In a governmental enforcement action, "CERCLA makes PRPs jointly and severally liable not only for costs of removal and/or remedial action, but also for 'damages for injury to,

---

[31]    <u>See</u> 2007 NCR 10-K at 76.

destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss . . . .'" New Mexico v. General Electric, 467 F.3d at 1234 (quoting CERCLA § 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C)). The statute defines "natural resources" as "land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States . . . any State or local government, any foreign government, any Indian tribe, or if such resources are subject to a trust restriction on alienation, any member of an Indian tribe." 42 U.S.C. § 9601(16). In essence, "resources must be under the stewardship of a [Federal, State, or Tribal] trustee before damages can be assessed for their injury, loss or destruction." Nat'l Ass'n of Mfrs. v. DOI, 134 F.3d 1095, 1114 (D.C. Cir. 1998). For that reason, CERCLA § 107(f)(1) specifies that Federal, State, and Tribal trustees are the **only** parties that can pursue claims regarding injury to such natural resources under § 107(a)(4)(C):

> In the case of an injury to, destruction of, or loss of natural resources under [§ 107(a)(4)(C)] liability shall be **to the United States Government** and **to any State** for natural resources within the State or belonging to, managed by, or appertaining to such State **and to any Indian Tribe** for natural resources belonging to, managed by, controlled by, or appertaining to such Tribe, or held in trust for the benefit of such tribe, or belonging to a member of such tribe if such resources are subject to a trust restriction on alienation . . . ."

42 U.S.C. § 9607(f)(1) (emphasis added). Finally, any damages recovery by a governmental trustee may be used "only to restore, replace, or acquire the equivalent of such natural resources," 42 U.S.C. § 9607(f)(1), and to reimburse the government's natural resource damage assessment costs, as envisioned by § 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C). See 43 C.F.R. §§ 11.91-11.93; New Mexico v. General Electric, 467 F.3d at 1244-48; Ohio v. DOI, 880 F.2d at 481 ("all sums recovered" for natural resource damages "must be devoted to restoration of damaged resources or acquisition of equivalents").

16

A wealth of case law confirms that public natural resource trustees are the only parties that can assert damages claims under CERCLA § 107(a)(4)(C).  See, e.g., Nat'l Ass'n of Mfrs. v. DOI, 134 F.3d at 1113 ("CERCLA does not permit private parties to seek recovery for damages to natural resources held in trust by the federal, state or tribal governments"); Artesian Water Co. v. New Castle County, 851 F.2d 643, 645 (3d Cir. 1988) (CERCLA's cause of action for natural resource damages "is not available to private organizations"); City of Portland v. Boeing Co., 179 F. Supp. 2d 1190, 1202 (D. Or. 2001) ("In 42 U.S.C. § 9607(f), Congress specifically limited the plaintiffs in natural resource actions to natural resource trustees acting on behalf of the federal government, the state, and certain Indian tribes"); Borough of Sayreville v. Union Carbide Corp., 923 F. Supp. 671, 680 (D.N.J. 1996) ("Only the Federal government or an authorized representative of a state has standing to bring an action for natural resource damages recovery under section 107(a)(4)(C)"); Borough of Rockaway v. Klockner & Klockner, 811 F. Supp. 1039, 1051 (D.N.J. 1993) (a party other than a duly-designated natural resource trustee "lacks standing to bring an action under Section 107(a)(4)(C)"); City of Toledo v. Beazer Materials and Services, Inc., 833 F. Supp. 646, 650-52 (N.D. Ohio 1993) (dismissing a municipality's CERCLA claim for harm to natural resources); Town of Bedford v. Raytheon Co., 755 F. Supp. 469 (D. Mass. 1991) (same); Lutz v. Chromatex, Inc., 718 F. Supp. 413, 419 (M.D. Pa. 1989) (CERCLA claims "for injury, destruction, or loss of natural resources may be brought only by the federal government or a state").

The Plaintiffs concede that they cannot "recover natural resource damages in the first instance" because "there is no dispute that that can only be done by 'natural resource trustees,' as that term is defined under CERCLA."  Pl. Mem. at 19.  Thus, they say that they seek to "recover from Movants their allocable share of payments made to the natural resource damages

trustees for the Lower Fox River Site." Pl. Mem. at 19. That explanation accords with

allegations in the "Introduction" section of Plaintiffs' Complaint:

> 2. . . . API and NCR have made substantial payments to the trustees for natural resource damages to allow them to implement various restoration projects even before the design of the remedy is complete. The amounts API and NCR have spent on these activities are well in excess of their responsibility for this work.

> 3. The purpose of this lawsuit is to allocate the equitable shares of the cleanup costs and natural resource damages associated with the Lower Fox River Contamination, and to require Defendants and the other responsible parties to pay for the upcoming remedial work and natural resource damages activities in accordance with their allocated shares.

Third Am. Complaint ¶¶ 2, 3. But Count I of the Complaint seeks to recoup part of those

payments to the natural resource trustees though a cause of action that is not available to

Plaintiffs or other private parties – i.e., by a claim for natural resource damages under

§ 107(a)(4)(C). Count I cites "Section . . . 107(a)(4)(C) of CERCLA" as the justification for

holding the Defendants liable "for natural resource damages" and as the sole statutory basis for

recovery of "damages paid to date by API and NCR." Third Am. Complaint ¶¶ 44, 98.

Section 107(a)(4)(C) does not authorize private parties to sue others for "voluntary"

natural resource damages payments, as implied by Plaintiffs' citation to Atlantic Research as the

only authoritative support for their § 107(a) claim for damages. Pl. Mem. at 19. As discussed in

detail below, Atlantic Research considered the interplay between the private cause of action for

**response costs** under CERCLA § 107(a)(4)(B) and the right to seek contribution under § 113(f).

The Court examined both CERCLA § 107(a)(4)(A) (which provides for recovery of response

costs "incurred by the United States Government or State or an Indian Tribe") and

§ 107(a)(4)(B) (which concerns recovery of "other necessary costs of response incurred by any

other person") and held that § 107(a)(4)(B) permits private parties in certain procedural

18

circumstances to bring claims for recovery of cleanup costs. <u>Atlantic Research</u>, 127 S. Ct. at

2335-36, 2338. It did not address liability for "damages for injury to . . . natural resources"

under § 107(a)(4)(C) at all. <u>See id.</u> at 2335 ("The parties' dispute centers on what 'other

person[s]' may sue under § 107(a)(4)(B)").

Although <u>Atlantic Research</u> did not even consider questions regarding natural resource

damages under CERCLA, the Court's approach to statutory construction confirms that Plaintiffs

have no private cause of action for damages under § 107(a). Just as § 107(a)(4)(A) permits suits

for recovery of cleanup costs "only by the United States, a State, or an Indian tribe," <u>id.</u> at 2336,

the law allows only the United States, a State, or an Indian tribe to bring an action for recovery

of damages under § 107(a)(4)(C). 42 U.S.C. § 9607(f)(1). In contrast, § 107(a)(4)(B) expressly

addresses liability for response costs incurred by any person "other" than the United States, a

State, or an Indian tribe, 42 U.S.C. § 9607(a)(4)(B), but there is no corresponding provision

establishing a private right of action for damages under § 107(a)(4)(C).[32] That noteworthy

omission negates any possible suggestion that private parties can pursue claims for "damages"

---

[32] As originally reported to the Senate floor, CERCLA's legislative forerunner actually
included additional provisions that would have followed § 107(a)(4)(C) and created private party
claims under § 107(a) for harm to natural resources. Those provisions were later dropped from
the bill, leaving only the language of § 107(a)(4)(C), which governs recovery by public trustees.
<u>See</u> <u>Ohio v. DOI</u>, 880 F.2d at 451 (citing and discussing S. 1480, 96th Cong., 2d Sess. § 4(a)(2),
<u>reprinted in</u> 1 Senate Comm. on Environment and Public Works, 97th Cong., 2d Sess.,
<u>A Legislative History of the Comprehensive Environmental Response, Compensation and
Liability Act of 1980</u> at 487-88 (Comm. Print 1983)). "Thus – as between the United States
Government and any State on one hand, and any other person on the other – CERCLA provides
differential access to remedies and differential burdens in establishing access to those remedies."
<u>Town of Bedford</u>, 755 F. Supp. at 470. <u>Accord</u> <u>Borough of Rockaway</u>, 811 F. Supp. at 1049.

19

under CERCLA § 107(a).[33]  The Court should dismiss Plaintiffs' claim for "damages" under

CERCLA § 107(a), as asserted in Count I of their Complaint.

### B. Parties in Plaintiffs' Position Cannot Assert Claims for Recovery of Response Costs Under CERCLA § 107(a), But Rather Are Limited to Claims Pursuant to § 113(f).

Count I also asserts a claim for recovery of response costs pursuant to § 107(a)(4)(B) of

CERCLA.  As discussed below, prior to the recent Supreme Court decision in <u>Atlantic Research</u>,

private PRPs who sought to recover from other PRPs the costs they had spent on cleanup or

reimbursing governmental response costs were limited to bringing a claim for contribution

pursuant to § 113(f) of CERCLA.  In <u>Atlantic Research</u>, the Supreme Court held that a PRP that

had undertaken a voluntary cleanup and thus did not have a claim under § 113(f) could bring a

claim to recover costs pursuant to § 107(a)(4)(B).  127 S. Ct. at 2338.  Here, Plaintiffs have, or

had,[34] a § 113(f) claim to recover costs they have spent beyond their equitable share; they are

limited to this claim, and their claim under § 107(a)(4)(B) should be dismissed.

---

[33]  In any event, other reasoning offered by <u>Atlantic Research</u> makes Plaintiffs' effort "to recover from Movants their allocable share of payments made to the natural resource damages trustees" (Pl. Br. at 19) sound much like a claim for ***contribution*** based on an alleged "right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share."  127 S. Ct. at 2338 (quoting the definition of "contribution" from Black's Law Dictionary 353 (8th ed. 1999)).  As noted in Plaintiffs' brief, Count II of their Complaint actually seeks recovery of a share of the natural resource damages paid by API and NCR through a claim for contribution under CERCLA § 113(f), and the Movants have not sought dismissal of that Count.  Pl. Br. at 19 n.9; Third Am. Complaint ¶¶ 102-106.

[34]  The United States takes no position on whether the applicable statute of limitations has run on any of Plaintiffs' claims.  The analysis set forth in this brief, however, applies regardless of whether the § 113(f) claims at issue are time barred.

1. **Atlantic Research Held That a Party Who Expended Response Costs in the Absence of Suit Under §§ 106 or 107 or the Compulsion of Settlement And Thus Had No Claim Under § 113(f), May Bring Suit Under § 107(a)(4)(B).**

In Atlantic Research, the Supreme Court addressed the question of whether § 107(a)(4)(B) of CERCLA authorizes suits by liable parties. The Atlantic Research district court had held, following Eighth Circuit precedent and most courts of appeal prior to Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157 (2004) ("Aviall"), that the only available CERCLA claim by one PRP against another is a claim for contribution under § 113(f). The district court further held that, after Aviall, because Atlantic Research Corp. ("ARC") had not been sued by the government under §§ 106 or 107 as required by § 113(f)(1) and had not reached a settlement that conferred contribution rights under § 113(f)(3)(B), it had no right to assert a contribution claim under § 113(f) to recover any portion of its cleanup costs from other liable parties. See Atlantic Research Corp. v. United States, 459 F.3d 827, 829-30 (8th Cir. 2006) ("Atlantic Research I"). The Eighth Circuit reversed, finding that barring ARC from asserting a claim under § 107(a) would be "contrary to CERCLA's purpose . . . [and yield an] unjust outcome." Id. at 837. The Court of Appeals held:

> [A] liable party may, under appropriate procedural circumstances, bring a cost recovery action under § 107. This right is available to parties who have incurred necessary costs of response, ***but have neither been sued nor settled their liability under §§ 106 or 107***.

Id. at 835 (emphasis added). The Eighth Circuit stressed, however, that allowing ARC a § 107(a) claim would not render § 113 "meaningless":

> [L]iable parties which have been subject to §§ 106 or 107 enforcement actions are still required to use § 113, thereby ensuring its continued vitality. But parties such as Atlantic, which have not faced a CERCLA action, and are thereby barred from § 113, retain their access to § 107. This resolution gives life to each of CERCLA's sections, and is consistent

21

with CERCLA's goal of encouraging prompt and voluntary cleanup of
contaminated sites.

Id. at 836-37 (citations omitted).

The Supreme Court affirmed the Eighth Circuit but focused on the language of
§ 107(a)(4)(B), finding that the "any other person" language in § 107(a)(4)(B) was broad enough
to encompass PRPs. 127 S. Ct. at 2335-36. The Court did not hold that *all* PRPs that have spent
money to clean up a site have a cause of action under § 107(a)(4)(B), however. The Court
merely held that a person in ARC's situation did. Id. at 2339. Thus, the Court held that a
§ 107(a)(4)(B) remedy is available to a party, like ARC, that does not have a cause of action for
"contribution" under §§ 113(f)(1) or (f)(3)(B) for its cleanup costs because it had performed the
work "voluntarily" without an enforcement action under §§ 106 or 107 or a judicial or
administrative settlement for the work. Atlantic Research, 127 S. Ct. 2339. Other parties, such
as Plaintiffs here, who have been sued under §§ 106 or 107 or have settled their liability, and
who thus have a cause of action under §§ 113(f)(1) or (f)(3)(B), must bring a claim for
contribution under those subsections.

In articulating why ARC had a cause of action under § 107(a)(4)(B), the Court took pains
to describe the difference between a claim under § 107(a) and a claim under § 113(f), rejecting
the assumptions of most circuit courts prior to Atlantic Research and Aviall [35/] that "the word
'contribution' [is] . . . synonymous with any apportionment of expenses among PRPs[,]" and
that, thus, any action in which a PRP seeks to allocate costs among other PRPs is necessarily a
claim for contribution and therefore must be brought pursuant to § 113(f). Id. at 2337.
"Contribution," the Court continued, "is defined as the 'tortfeasor's right to collect from others

---

[35/]     See, e.g., cases cited in Aviall, 543 U.S. at 169.

responsible for the same tort after the tortfeasor has paid more than his or her proportionate share . . . ."  Id. at 2337-38 (citation omitted).

The Court has stressed that §§ 107(a) and 113(f)  provide two "clearly distinct" remedies.  Aviall, 543 U.S. at 163 n.3.  "'CERCLA provide[s] for a *right to cost recovery* in certain circumstances, §107(a), and *separate rights to contribution* in other circumstances, §§ 113(f)(1), 113(f)(3)(B).'"  Atlantic Research, 127 S. Ct. at 2337 (emphasis in original) (citing Aviall, 543 U.S. at 163 n.3).  Thus, the Court continued,

> the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action to persons in different procedural circumstances.  Section 113(f)(1) authorizes a *contribution action* to PRPs with common liability stemming from an *action instituted under § 106 or § 107(a)*.

Atlantic Research, 127 S. Ct. at 2338 (emphasis added; internal quotations and citations omitted).  Similarly, § 113(f)(3)(B) authorizes a contribution action by PRPs who have resolved a common liability in a judicial or administrative settlement.  Id. at 2338 n.5.[36]  The Court contrasted these contribution claims with the claim that is available under § 107(a)(4)(B) to a PRP that has "itself incurred cleanup costs" without the compulsion of an enforcement action or settlement.  Id. at 2338.

To illustrate the distinction between the two claims, the Atlantic Research Court used the example of a party who reimburses money to EPA pursuant to a court judgment or settlement.  This party "has not incurred its *own* costs," id. (emphasis added), but rather is paying money to satisfy a common liability and would have a cause of action under § 113(f)(1) for contribution.  Id.  On the other hand, a PRP such as ARC that cleans up in the absence of an enforcement

---

[36]     Although the Court focused much of its discussion on the example of the contribution remedy provided by § 113(f)(1), the Court also recognized that § 113(f)(3)(B) similarly provides a "separate right to contribution."  Atlantic Research, 127 S. Ct. at 2338 n.5.

action or settlement has "*itself* incurred cleanup costs," and is entitled to an action under

§ 107(a)(4)(B).  Id. at 2338 and n.6 (emphasis added).  Although the Court's opinion compared

only the situation of the plaintiff who cleans up in the absence of suit or settlement and thus has

*no* § 113(f) claim, with a person who has paid money to the government to reimburse

government cleanup costs pursuant to a settlement or judgment and therefore *has* a § 113(f)

claim, the Court made clear that the critical distinction between the ARC party and the

reimbursement party was not the fact that the ARC party was sustaining the costs of doing the

work (as opposed to reimbursing EPA), but that it was acting "voluntarily," that is, in the

absence of a governmental cleanup action, and was thus sustaining these costs *on its own* and

not as part of a common liability established "during or following" a §§ 106 or 107 suit or by

settlement.  Id. at 2337-38.

     Elsewhere in its opinion, the Supreme Court stressed the distinct nature of the two

remedies, and that parties could not choose between the two.  The Supreme Court explained the

Eighth Circuit's reasoning that allowing certain PRPs to have a § 107(a)(4)(B) claim would not

render § 113(f) "meaningless," Atlantic Research I, 459 F.3d at 836, as follows:

> The court reasoned that § 107(a)(4)(B) authorized suit by any person other
> than the persons permitted to sue under § 107(a)(4)(A).  Accordingly, it
> held that § 107(a)(4)(B) provides a cause of action to Atlantic Research.
> To prevent a *perceived conflict* between § 107(a)(4)(B) and § 113(f)(1),
> the Court of Appeals reasoned that *PRPs that 'have been subject to
> §§ 106 or 107 enforcement actions are still required to use § 113*,
> thereby ensuring its continued vitality.'  We granted certiorari, *and now
> affirm.*

Atlantic Research, 127 S. Ct. at 2335 (emphasis added, citations omitted).  The Supreme Court's

selection of this passage to quote immediately before its statement of affirmance strongly

indicates that the Court would require PRPs that have a cause of action for contribution under

§ 113(f) to use it.  The Court's opinion further indicates that it would not endorse a scheme that

would allow a PRP to choose between a contribution and a cost recovery action to evade the statutory limitations of § 113, see id. at 2338, and that a party who has a contribution claim under § 113(f) could not choose instead to use § 107(a)(4)(B). Id. at 2338.[37]

In summary, Atlantic Research stands for the proposition that certain PRPs have a cause of action under § 107(a)(4)(B) and certain PRPs have a cause of action under § 113(f). PRPs, like ARC, who have performed work in the absence of suit or settlement, do not meet the criteria of § 113(f), do not have a claim for "contribution," and may bring an action under § 107(a)(4)(B). PRPs who meet the criteria of § 113(f), because they have been sued or settled as required by the statute, have a claim for contribution under § 113(f) because their efforts have gone to satisfy a common liability.

---

[37] Despite the Court's stressing the distinct and separate natures of the two remedies provided by § 107(a)(4)(B) and § 113(f), in footnote 6 the Court did state that it was not necessarily concluding that there was "no overlap" between the two provisions. 127 S. Ct. at 2338 n.6. Thus, the Court stated that it was not specifically deciding whether a party that did work (as opposed to reimbursing government costs) under a consent decree after suit had a § 107(a)(4)(B) claim, a § 113(f) claim, or both. It is the United States' view that the Court did not reach this issue merely because it was not the case presented to it, but that, if presented with the question, the Court would find that such a party has a claim for contribution under § 113(f). The § 113(f) remedy is derived from common law concepts of contribution stemming from a common liability to the United States or a State pursuant to a § 106 or § 107 action or a settlement of such claims in accordance with § 113(f)(3)(B), which common liability is shared with the other PRPs for the site. By contrast, the Atlantic Research Court found that a § 107(a)(4)(B) remedy is provided to a person in ARC's situation who has not been the subject of government enforcement efforts and thus has no vehicle to establish that common liability, and has no cause of action under § 113(f). Thus, the two remedies are distinct and depend upon the procedural posture of the party – not the nature of the costs. Even if there is overlap, however, and a party has both a § 107(a) claim and § 113(f) claim for the same costs, the various passages in the opinion cited above, however, indicate that the Supreme Court would require that party to use § 113(f).

2. **Other Courts Have Held That § 107(a)(4)(B) Provides a Claim to Parties That Do Not Have One Under § 113(f); <u>Atlantic Research</u> Does Not Otherwise Overrule Settled Law That PRPs That Meet the Terms of § 113(f) Must Use § 113(f).**

Courts after <u>Atlantic Research</u> have similarly analyzed the case as providing a § 107(a)(4)(B) cause of action to PRPs who have cleaned up sites in the absence of government enforcement efforts, but requiring parties that expend costs as a result of suit under §§ 106 or 107 to use § 113(f). For example, in <u>Kotrous v. Goss-Jewett Co. of N. Cal.</u>, No. 06-15162 and 06-16019, 2008 WL 1745338, at *7 (9th Cir. Apr. 17, 2008), the Ninth Circuit recently reviewed its prior precedents, and determined that <u>Atlantic Research</u> had overruled prior precedents that held that "an action between PRPs is necessarily for contribution." <u>Id</u>. at *7 (footnote omitted). The court continued:

> Under <u>Atlantic Research</u>, a PRP such as Kotrous or Adobe that incurs costs voluntarily, without having been subject to an action under § 106 or § 107, may bring suit for recovery of its costs under § 107(a) . . . . Any of the defendants sued by such a PRP may seek contribution under § 113(f) because they now will have been subject to an action under § 107.

<u>Id</u>. <u>See also</u> <u>E.I. DuPont de Nemours and Co. v. U.S.</u>, 508 F.3d 126, 134 (3rd Cir. 2007) (overruling prior precedent that § 113(f) provided sole cause of action for PRPs; PRPs who "voluntarily" incurred cleanup costs but had not been sued or settled may assert cause of action for cost recovery under § 107(a)).[38]

---

[38]     <u>See also</u> <u>OSI, Inc. v. U.S.</u>, No. 07-10941, 2008 WL 1932117, at *2 n.1 (11th Cir. May 5, 2008) (§ 107(a) permits recovery of removal and remediation costs "voluntarily incurred"); <u>ITT Indus., Inc. v. Borg-Warner, Inc.</u>, 506 F.3d 452, 458 (6th Cir. 2007) ("PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f)"; but remanding claim under § 107(a)(4)(B) to district court for "further consideration" in light of <u>Atlantic Research</u>).

Case 2:08-cv-00016-WCG     Filed 05/22/08     Page 28 of 43     Document 132

In contrast, in a case that is procedurally similar to this one, another district court recently held that a PRP could not assert a § 107(a)(4)(B) claim for response costs that it alleged it had incurred and may incur in the future as the result of a State enforcement action. New York v. Next Millennium Realty, LLC, No. 03-5985, 2008 WL 1958002, *6 (E.D.N.Y. May 2, 2008). The State of New York sued defendant seeking, inter alia, "recovery costs under § 107 of CERCLA for the completion of the remediation of off-site groundwater plumes." Id. at *3.[39/] After reviewing Atlantic Research, and other cases, the court held that the defendants could not bring their action under § 107(a)(4)(B):

> In the case at hand, there is no evidence that the [defendants] are seeking to recover necessary response costs that they themselves have voluntarily incurred. To the contrary, the [defendants'] claim pursuant to § 107 of CERCLA is based on remediation costs that the [defendants] and others have incurred and may incur in the future as the result of the lawsuit instituted under § 107(a) by the [State] to recover the State's costs for cleaning up the NICA Site.

Id. at *6 (citations omitted).

Several Courts of Appeals that addressed the issue after Aviall, but before Atlantic Research, similarly distinguished between PRPs that cleaned up their sites without having been sued by or settled with the government, and thus, after Aviall, had no cause of action under § 113(f), and those who cleaned up their sites after the compulsion of a suit or settlement. These Courts of Appeals, including the Seventh Circuit, would allow the former group of PRPs, who

---

[39/]     The State's complaint also asserted a claim under State law for injunctive relief to abate the contamination and for reimbursement of the State's costs and other claims. See New York v. Next Millennium Realty, LLC, No. 03-5985, 2007 WL 2362144, at *4 (E.D.N.Y. Aug. 14, 2007).

27

have no cause of action under § 113(f), to bring suit under § 107(a)(4)(B), but, consistent with their prior precedents, would deny this right to PRPs that otherwise have a § 113(f) claim.[40]

Importantly, as Koutros and the other cases discussed above have recognized, except for parties in ARC's situation, Atlantic Research does not stand for the proposition that courts should put aside their longstanding view that PRPs that have (or had) claims for contribution under § 113(f) can only use § 113(f). After SARA added the explicit right to contribution and other provisions of § 113(f), because the language "any person" in § 107(a)(4)(B) is broad enough to encompass PRPs seeking contribution, PRPs began to try to assert their claims for contribution under § 107(a)(4)(B), in an effort to evade § 113's congressionally-mandated constraints such as contribution protection and a shorter statute of limitations. As the Eighth Circuit in Atlantic Research I explained, "[t]o prevent § 107 from swallowing § 113, courts began directing traffic[,] . . . steer[ing] liable parties away from § 107 and requir[ing] them to use § 113." Atlantic Research I, 459 F.3d at 832. Thus, prior to Aviall, the circuit courts, including the Seventh Circuit, uniformly concluded that a PRP cannot use § 107(a)(4)(B) against another PRP; rather, a party that is subject to CERCLA liability is limited to seeking contribution from other jointly liable parties in accordance with § 113(f). See, e.g., Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994); Aviall, 543 U.S. at 169 (collecting cases).

---

[40]  See, e.g., Metro. Water Reclamation Dist. v. N. Am. Galvanizing & Coatings, Inc., 473 F.3d 824, 836 (7th Cir. 2007) ("voluntary" PRP that had neither settled with nor been sued by the government has cause of action under § 107(a)(4)(B), but where PRP has been compelled to perform cleanup, claim for recovery is claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make" and must be brought under § 113(f)(1)); Atlantic Research I, 459 F.3d at 834-35 (PRP has cause of action for "cost recovery" under § 107(a) if it cannot meet the requirements of § 113(f)); Consol. Edison Co. v. UGI Util., Inc., 423 F.3d 90, 100 (2d Cir. 2005) ("PRP" that has not previously been sued or made to participate in an "administrative proceeding" may recover necessary response costs incurred voluntarily, not under a court or administrative order or judgment).

28

As discussed above, in Atlantic Research the Court clarified that not all claims between PRPs are for contribution, and specifically, that a PRP in ARC's circumstance has a cause of action under § 107(a)(4)(B), not a claim for contribution under § 113(f). Thus, Atlantic Research overrules the various circuit decisions that held that there was **no** § 107(a)(4)(B) cause of action in circumstances where the plaintiff, while potentially liable, had not yet been compelled to act by a government enforcement action or settlement under §§ 106 or 107 and thus had not yet extinguished a common liability.[41] However, Atlantic Research does not overrule circuit court decisions that claims for costs expended in performing a cleanup pursuant to a judicial or administrative settlement or after being sued under §§ 106 or 107 **are** claims for contribution and are governed by § 113(f).[42] Parties, like the Plaintiffs here, that have claims for contribution and are merely trying to shop for a better deal than Congress gave them, are "still required to use § 113, thereby ensuring its continued vitality. . . . This resolution gives life to each of CERCLA's sections, and is consistent with CERCLA's goal of encouraging prompt and voluntary cleanup of contaminated sites." Atlantic Research I, 459 F.3d at 836-37.

---

[41] See, e.g., Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1301 (9th Cir. 1997).

[42] See, e.g., Bedford Affiliates, 156 F.3d at 423-25. To be sure, the precise rationales in some of these cases are affected by Atlantic Research. For example, the First Circuit in United Technologies based its holding that parties to an administrative settlement are limited to a contribution action under § 113(f) in part on their view that only governments and "innocent parties" can use § 107(a). 33 F.3d at 99. However, Atlantic Research does nothing to call into question the reasoning of these courts that claims that **are** for **contribution** must be brought under § 113. Echoing the Eighth Circuit's concerns, the First Circuit explained, to find otherwise would "produce[] judicial nullification" of § 113(g)'s statute of limitations provisions and "emasculate[] the contribution protection component of CERCLA's settlement framework." Id. at 101-02.

29

3. **Because Plaintiffs Have Been Sued Pursuant to §§ 106 and 107 of CERCLA, They Have a Claim Under § 113(f), But Not Under § 107(a)(4)(B).**

Plaintiffs' Complaint appears to seek all of the costs they have incurred under the alternative claims provided by § 107(a)(4)(B) or § 113(f). See generally Complaint Counts I and II. In their response brief, however, they now clarify that they are seeking to recover only "certain of their costs pursuant to Section 107(a) of CERCLA." Pl. Mem. at 16. Thus, they appear to acknowledge that Atlantic Research does not provide them a blanket § 107(a)(4)(B) claim for all of their costs. Instead, they appear to be seeking under § 107(a)(4)(B) only those costs that they allege to have incurred "voluntarily." Id. They attempt to parse the costs alleged in Paragraph 28 of their Complaint to distinguish between costs they have paid or will pay pursuant to five listed consent decrees or other agreements, and "additional costs" of investigating and responding to the Lower Fox River Contamination that are not incurred pursuant to the specified agreements. Plaintiffs assert that these "additional costs" are a "'voluntary' (i.e., not compelled by government order) payment of costs that were not in the nature of reimbursement – just the type of costs that Atlantic Research states are recoverable 'only' by way of § 107(a)." Pl. Mem. at 16-17 (citations and emphasis omitted).

As the plain language of § 113(f)(1) and the reasoning in Atlantic Research make clear, however, Plaintiffs have, or had, a § 113(f) claim for all the costs they seek (except for OU 1 costs from Glatfelter, as discussed in Paragraph 4, below) and must use that vehicle to seek an equitable allocation of costs. Plaintiffs do not have a separate § 107(a)(4)(B) claim for any of their costs, and this claim should be dismissed.[43]

---

[43] If this Court does not dismiss Plaintiffs' § 107(a)(4)(B) claim, the United States may seek leave to file an additional brief(s) concerning the nature of that claim. For example, in Paragraph 99 of their Complaint, Plaintiffs seek to recover, under § 107(a)(4)(B), Lower Fox River Costs

First, § 113(f)(1) authorizes Plaintiffs to seek contribution in the circumstances presented here. In August 2001, the United States sued API and NCR pursuant to §§ 106 and 107 of CERCLA, concurrently with the lodging of a consent decree. Section 113(f)(1) provides, in relevant part:

> Any person may seek **contribution** from any other person who is liable or potentially liable under section 9607(a) [107(a)] of this title, ***during or following any civil action under section 9606*** of this title ***or under section 9607(a)*** of this title.

42 U.S.C. § 9613(f)(1) (emphasis added); see Atlantic Research, 127 S. Ct. at 2338 ("The statute authorizes a PRP to seek contribution 'during or following' a suit under § 106 or 107(a).") (citations omitted). Section 113(f)(3)(B) further provides that "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution . . . ." 42 U.S.C. § 9613(f)(3)(B); Atlantic Research, 127 S. Ct. at 2338 n.5.

Under the explicit terms of § 113(f)(1), the United States' suit provides Plaintiffs with a contribution claim against other PRPs at the Site without regard to whether Plaintiffs' costs were

---

they have paid that are alleged to be in excess of their allocable share and that are properly attributable to the defendants. In Paragraph 98 of the Complaint, by contrast, they appear to seek to recover under § 107(a)(4)(B) *all* of the costs they have paid from the defendants, as opposed to an allocable share. The Supreme Court did not decide whether a cause of action under § 107(a)(4)(B) is for joint and several liability. Atlantic Research, 127 S. Ct. at 2333-39 and n.7. It is the United States' view that a PRP suing under § 107(a)(4)(B) cannot invoke the presumption of joint and several liability, but is limited to recovering a fair share of costs, as determined by the significant body of case law on equitable allocation that has developed under § 113(f). As the Supreme Court noted, though, even if Plaintiffs were allowed to assert joint and several liability, Movants could file counterclaims under § 113(f) to "blunt any inequitable distribution," and return the parties to such principles of equitable allocation. Id. If this Court does not dismiss Plaintiffs' § 107(a)(4)(B) claim and Plaintiffs pursue joint and several liability, the United States might seek leave to file an *amicus* brief on this issue.

incurred "voluntarily" or not.[44]  Further, to the extent Plaintiffs are arguing that they have a

§ 107(a)(4)(B) claim if they have performed work, as opposed to paid costs "that are in the

nature of reimbursement," Pl. Mem. at 16, the language of subsections 113(f)(1) and (f)(3)(B)

does not make this distinction.  In fact, § 113(f)(1) explicitly references an action under § 106,

which is the section of CERCLA that authorizes governmental suits for injunctive relief, i.e.,

requiring a PRP to perform response action, and § 113(f)(3)(B) explicitly provides a contribution

claim for the resolution of liability for "response action" as well as costs.

Second, Atlantic Research addressed the situation where a party did *not* have a § 113(f)

cause of action because the person had not been sued or settled.  To the extent "voluntariness" is

a relevant consideration for an action under § 107(a)(4)(B),[45] Plaintiffs' posture at the Fox River

Site is very different from ARC's.  As Menasha points out, Plaintiffs "spend twelve paragraphs

in their complaint describing costs they paid after being compelled to do so by the EPA and the

State of Wisconsin."  Menasha Reply at 7.  As set forth above in the Statement of Facts, the

United States and the State have a long history of involvement and enforcement action in

addressing the source and effects of PCB contamination at the Fox River Site, beginning with the

efforts to limit the use of PCB-containing paper in the 1970s and continuing to the present day.

---

[44]     Plaintiffs' judicial and administrative settlements that "resolve liability" to the United States or the State "for some or all of a response action or for some or all of the costs of such action" provide an additional basis for their contribution claim for response costs.  42 U.S.C. § 9613(f)(3)(B); Atlantic Research, 127 S. Ct. at 2338 n.5.

[45]     The Court used the term "voluntarily" in footnote 6 to compare and contrast a party who is "compelled" to sustain expenses pursuant to a consent decree following a § 106 or § 107 action from a person who "incurs costs" without the compulsion of a § 106 or § 107 action or settlement.  127 S. Ct. at 2338 n.6.  The Court expressly did not decide whether a § 107(a)(4)(B) cause of action is available only to "volunteers," and the United States does not address that issue here.  Plaintiffs are not volunteers, have a cause of action under § 113(f), and therefore do not have one under § 107(a)(4)(B).

Under these circumstances, it is clear that any necessary response actions Plaintiffs (and Movants and the other PRPs) have taken at the Site have been accomplished at the behest of the United States and the State of Wisconsin through the exercise of their various enforcement, response, and natural resource damage authorities, and are not "voluntary" action as addressed in Atlantic Research. But for the governments' actions, Plaintiffs would not have taken the response actions and incurred the cleanup costs they have sustained to date.

Further, unlike ARC, Plaintiffs do not "incur [their] own costs," 127 S. Ct. at 2338, when they perform response actions at the Site. Rather, they have sustained these expenses to extinguish a common liability, shared by the Fox River PRPs, for the Site cleanup. If EPA had cleaned up the entire Site itself and sued Plaintiffs under § 107(a)(4)(A) to recover its costs, Plaintiffs' reimbursement of costs to EPA to extinguish this liability, as discussed, would have provided Plaintiffs with the quintessential contribution claim described by the Supreme Court. Plaintiffs' performance of work in response to the government's §§ 106 and 107 enforcement authorities reduces the amount that EPA would have to spend on cleanup and ultimately seek to recover from Plaintiffs and should provide Plaintiffs the same remedy as Plaintiffs' reimbursement of costs that EPA would have incurred in performing that same work.

Finally, at least at this Site, where the United States and State are exercising their authorities to achieve cleanup, "all costs of removal or remedial action" incurred (or to be incurred) by EPA or the State (not inconsistent with the NCP), 42 U.S.C. § 9607(a)(4)(A), and any additional response actions that are appropriate for the cleanup are part of the "common liability" for the Site cleanup, which is shared jointly and severally by the Site's PRPs. Any costs Plaintiffs (or the other Fox River PRPs) reimburse to EPA or the State and any work they perform for the cleanup go toward extinguishing this common liability. Thus, any claim by

33

Plaintiffs for recoverable cleanup costs they have expended (whether in reimbursement or in performing work) is in fact a "contribution" claim and must be brought pursuant to § 113(f).

> ### 4. Plaintiffs May Not Seek Costs from Glatfelter for Matters Addressed in Their OU 1 Settlement Because Such Claims Are Barred by Contribution Protection.

Count III of Plaintiffs's Complaint seeks contribution under § 113(f). As discussed above, this is the correct vehicle for Plaintiffs to seek to recover response costs that they have incurred at the Site beyond their allocable share. However, Plaintiffs' § 113(f) claim is subject to the restrictions that apply to such claims, including contribution protection provided under § 113(f)(2) to parties that have settled with the United States or a State. Section 113(f)(2) provides, in pertinent part:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement.

42 U.S.C. § 9613(f)(2).

In 2004, the United States and State entered into a Consent Decree with Glatfelter (and another PRP) for response actions and response costs relating to OU 1 of the Site. Pursuant to § 113(f)(2), the settlement provides Glatfelter with contribution protection for the "matters addressed" in the settlement. The Decree specifies that the "matters addressed" are the "OU1 Response Activities and Costs" (Decree ¶ 101), which are defined as "all response activities for Operable Unit 1 performed or to be performed after July 1, 2003, as well as all costs for response activities for Operable Unit 1 incurred after July 1, 2003" (Decree ¶ 83). Before that Decree was entered by the Court, the United States published notice of the proposed settlement in the Federal Register and solicited public comment. 68 Fed. Reg. 59,821 (Oct. 17, 2003). The United States

34

received 16 sets of comments, but no objections to the settlement were raised by API or NCR.[46]

While Plaintiffs may properly plead a § 113(f) contribution claim against Glatfelter for costs

incurred in connection with other areas of the Site, they may not recover costs from Glatfelter

relating to the "OU1 Response Actions and Costs."[47]

Plaintiffs' attempts to avoid the contribution protection afforded Glatfelter by the OU 1

settlement by trying to seek costs under § 107(a)(4)(B) highlights the importance of maintaining

the distinction between the two causes of actions. As shown above, to "'ensur[e] [the] continued

vitality'" of § 113(f), including finality that Congress intended to provide for matters addressed

in settlement through contribution protection, PRPs, like Plaintiffs here, that "'have been subject

to §§ 106 or 107 enforcement actions are still required to use § 113 . . . .'" Atlantic Research at

2335 (quoting Atlantic Research I, 459 F.3d at 836-37).

### C. Declaratory Relief Under CERCLA § 113(g) is Available in Any Action Under CERCLA § 107(a).

In addition to disagreeing over whether Plaintiffs have viable claims under § 107(a), the

Plaintiffs and Glatfelter disagree over whether **any** § 107(a) plaintiff can ever obtain a

declaratory judgment in a case other than an "initial" action for recovery of response costs.

---

[46]       The court docket for the case contains the United States' response to the comments, as well as copies of all comments that were submitted. See United States and the State of Wisconsin v. P.H. Glatfelter Co. and WTM I Co., 03-0949 (E.D. Wis.) (Docket Nos. 14 (United States' Brief in Support of Motion to Enter Consent Decree), 15-20 (Appendix of Public Comments on Proposed Consent Decree)).

[47]       As noted by Glatfelter, the OU 1 Consent Decree includes a provision that allows for termination under specified conditions, but that Decree has not been terminated and it remains in effect. Glatfelter Mem. at 14. The Decree has remained in force in accordance with two Agreed Supplements that have been filed with the court, and Glatfelter has confirmed that it will commit additional funds to ensure the completion of the OU 1 work without a Decree termination. See United States and the State of Wisconsin v. P.H. Glatfelter Co. and WTM I Co., 03-0949 (E.D. Wis.) (Docket Nos. 25 (Agreed Supplement), and 26 (Second Agreed Supplement)); see also Glatfelter Reply at 5.

Glatfelter's argument on that point would even seem to limit the United States' ability to obtain declaratory relief in future lawsuits relating to the Fox River Site.[48]

CERCLA § 113(g)'s mandate that a court shall enter a declaratory judgment in "any such action described in this subsection" applies to *any* action for natural resource damages or recovery of response costs under § 107(a), not just an "initial" action. 42 U.S.C. § 9613(g). That reading is consistent with the language of the statute itself, because § 113(g) addresses and describes *all* types of actions under § 107(a): initial "[a]ctions for natural resource damages" (42 U.S.C. § 9613(g)(1)); initial "[a]ctions for recovery of costs" under § 107(a) (id. at § 9613(g)(2)); and "any subsequent action or actions to recover further response costs or damages" (id.). Declaratory relief is therefore available in any action under § 107(a).

Relying on a strained and narrow reading of the reference to "any *such* action" in § 113(g)(2), Glatfelter contends that a declaratory judgment can only be granted in an "initial" action for recovery of costs of a removal action or a remedial action under § 113(g)(2)(A) or (B), 42 U.S.C. § 9613(g)(2)(A) or (B). See Glatfelter Mem. at 9 ("Section 113(g)(2) . . . allows for a single declaration in the 'initial action' under section 107"). That construction cannot be squared with the language of the statute or its purposes.

First, Glatfelter's argument fails for the reasons explained above – CERCLA § 113(g) provides for entry of a declaratory judgment in "any such action described in this subsection" and subsection 113(g) describes both "initial" actions and "subsequent" actions. 42 U.S.C. § 9613(g).

Second, Glatfelter's tortured interpretation effectively writes the language on declaratory judgments for natural resource damages out of the statute. If Glatfelter were right that a

_____

[48]      Menasha avoids making that argument. See Menasha Mem. at 11-12.

declaratory judgment is available only in an "initial action" for recovery of **response costs** as described in § 113(g)(2)(A) or (B), then a Federal, State, or Tribal natural resource trustee could **never** obtain a declaratory judgment in an action for natural resource damages (unless the governmental plaintiff had and could assert a claim for response costs as part of that action). But § 113(g) expressly provides for entry of "a declaratory judgment on liability for response costs **or damages** that will be binding on any subsequent action or actions to recovery further response costs **or damages**." 42 U.S.C. § 9613(g)(2) (emphasis added). Glatfelter's faulty construction would "violate the settled rule that [a court] must, if possible, construe a statute to give every word some operative effect." Aviall, 543 U.S. at 167.

Third, Glatfelter's reading of the statute would discourage settlement of any "initial" action under § 107(a), because settlement of that action for some costs would extinguish any ability to seek a declaratory judgment later on for any further response costs. That cannot be reconciled with CERCLA's strong pro-settlement bias. As explained above, and as recognized by a well-established body of case law, CERCLA itself establishes special procedures and incentives that are designed to promote settlement and avoid wasteful litigation. See, e.g., United States v. Fort James Operating Co., 313 F. Supp. 2d 902, 907 (E.D. Wis. 2004) (approving a Consent Decree relating to the Fox River Site and noting that CERCLA reflects a "strong policy favoring voluntary settlement of litigation") (Adelman, J.).[49] Thus, the United States commonly negotiates partial settlements with PRPs at large, complicated, multi-party Superfund sites like this one. Such partial settlements often take the form of judicially-approved consent decrees that resolve certain matters on specified terms and conditions, without an

---

[49]     See also cases cited supra at note 5.

admission or adjudication of any Settling Defendant's liability.[50]  In agreeing to settle without a

liability determination, the United States invariably requires that the consent decree reserve

certain rights to pursue unresolved claims against settlers in any subsequent action.  The Consent

Decree with Glatfelter for OU 1 of the Site followed that established pattern, as noted in a recent

decision by Judge Adelman:

> In March 2004, plaintiff [the United States] moved for entry of a consent
> decree, signed by all of the parties to the litigation, that would govern
> remedial efforts in OU1.  The decree, labeled a final judgment, reserved
> plaintiffs' right to take further action against defendants regarding
> 'operable units . . . other than OU1.'  On April 12, 2004, I approved the
> decree and it remains in effect.

United States v. P.H. Glatfelter Co., No. 03-C-949, 2008 WL 419901, at *1 (E.D. Wis. Feb. 13,

2008).  Such settlements do not waive – once and for all – any right to seek a declaratory

judgment in a "subsequent" action under § 107(a).  Congress clearly did not mean to require

wasteful re-litigation of issues if a settlement of an "initial" action was followed by several

"subsequent" actions.  Cf. United States v. Navistar Int'l Transp. Corp., 152 F.3d 702, 709

(7th Cir. 1998) ("The structure of [§ 113(g)(2)] indicates that the intent of Congress in including

the sentence was to avoid the necessity of relitigating liability questions.  It provides for the

declaratory judgment as a way to manage the litigation in an efficient manner.").

Finally, even if the Court read § 113(g)(2) narrowly, and as applying only to an "initial"

action for recovery of response costs, the language does not preclude or discourage entry of a

---

[50]      CERCLA expressly allows the United States to "fashion a consent decree so that the
entering of such decree . . . shall not be considered an admission of liability for any purpose."
42 U.S.C. § 9622(d)(1)(C).  EPA has therefore prepared and publicized a series of model consent
decrees that are used to accomplish CERCLA settlements on terms that are consistent with that
statutory proviso.  See 60 Fed. Reg. 38,817 (July 28, 1995) (Revised Model CERCLA Remedial
Design/Remedial Action Consent Decree); see also EPA Model Consent Decrees posted at
<http://cfpub.epa.gov/compliance/resources/policies/cleanup/superfund/>.
.

declaratory judgment in a "subsequent" action for recovery of costs or damages under § 107(a). § 113(g)(2) describes particular circumstances where a court "shall" enter a declaratory judgment. It does not prohibit a court from granting declaratory relief in other circumstances, assuming the requirements for obtaining such relief are otherwise met. A plaintiff who asserts claims that the court otherwise has subject matter jurisdiction over in a "subsequent" action under § 107(a) may seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[51/] Although the Plaintiffs in this case have not pled – and cannot establish – a proper cause of action under CERCLA § 107(a), declaratory relief under CERCLA § 113(g) is available in: (1) any governmental action for response costs or natural resource damages under § 107(a)(4)(A) or 107(a)(4)(C); and (2) any private action under § 107(a)(4)(B) that is consistent with the limitations imposed by CERCLA and <u>Atlantic Research</u>.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Plaintiffs' claims in Count I of their Complaint for natural resource damages and response cost under CERCLA § 107(a), which would leave the parties litigating the CERCLA contribution claims alleged in Count II. The Court should clarify that Plaintiffs' cannot seek contribution from Glatfelter for the matters

---

[51/]     By the same logic, although § 113(g)(2) does not seem to provide for entry of a declaratory judgment on allocation in a CERCLA contribution case, a contribution plaintiff may seek declaratory relief under the Declaratory Judgment Act if the court otherwise has subject matter jurisdiction. Other courts have recognized that declaratory relief for allocation of future costs is available in appropriate circumstances. <u>See</u> <u>Boeing Co. v. Cascade Corp.</u>, 207 F.3d 1177, 1191 (9th Cir. 2000) ("Declaratory relief allocating future costs is therefore consistent with the broader purposes of CERCLA."). In essence, "'the question in each case is whether the facts alleged, under all the circumstances, show that there is a controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" <u>Trippe Mfg. Co. v. Am. Power Conversion Corp.</u>, 46 F.3d 624, 627 (7th Cir. 1995) (quoting <u>Maryland Casualty Co. v. Pacific Coal & Oil Co,</u>, 312 U.S. 270, 273 (1941)). The United States expresses no views on whether such relief is appropriate in this case.

39

addressed by Glatfelter's Consent Decree for OU 1. Finally, the Court should reject Glatfelter's argument that a declaratory judgment under CERCLA is available only in an "initial" action for recovery of response costs under CERCLA § 107(a).

Respectfully submitted,

For the United States of America

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Dated:  May 22, 2008

*s/ Randall M. Stone*
RANDALL M. STONE
LESLIE ALLEN
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box  7611
Washington, DC   20044-7611
Telephone:     (202) 514-1308
Facsimile:     (202) 616-6584
E-Mail:        randall.stone@usdoj.gov

STEVEN M. BISKUPIC
United States Attorney

MATTHEW V. RICHMOND
Assistant United States Attorney
Eastern District of Wisconsin
U.S. Courthouse and Federal Building - Room 530
517 E. Wisconsin Avenue
Milwaukee, WI   53202

## CERTIFICATE OF SERVICE

I certify that on May 22, 2008, a copy of the foregoing Brief was sent via the Court's electronic case filing system to the following counsel:

Michael L. Hermes
Metzler Timm Treleven & Hermes
222 Cherry St
Green Bay, WI 54301-4223
Counsel for Appleton Papers Inc.

Evan B. Westerfield
J. Andrew Schlickman
Joan Radovich
Kathleen L Roach
Sidley Austin LLP
1 S Dearborn St
Chicago, IL 60603
Counsel for NCR Corp.

J. Ric Gass
Gass Weber Mullins LLC
309 N Water St - Suite 700
Milwaukee, WI 53202
Counsel for NCR Corp.

Philip A. Munroe
DiRenzo & Bomier LLC
Two Neenah Center - Suite 701
P.O. Box 788
Neenah, WI 54957-0788
Counsel for George A Whiting
Paper Co.

Scott B. Fleming
Weiss Berzowski Brady LLP
700 N Water St - Suite 1400
Milwaukee, WI 53202-4206
Counsel for George A Whiting
Paper Co.

Daniel C. Murray
Johnson & Bell Ltd.
33 W. Monroe St - Ste 2700
Chicago, IL 60603-5404
Counsel for Newpage Wisconsin
System Inc.

Jennifer E. Simon
Marc E. Davies
Ronald M. Varnum
Sabrina Mizrachi
David G. Mandelbaum
Ballard Spahr Andrews & Ingersoll
1735 Market St - 51st Floor
Philadelphia, PA 19103
Counsel for P.H. Glatfelter Co.

Joseph J. Beisenstein
Mark R. Feldmann
Menn Law Firm Ltd
2501 E. Enterprise Ave.
P.O. Box 785
Appleton, WI 54912-0785
Counsel for Menasha Corp.

Colin C. Deihl
Jacy T. Rock
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln St
Denver, CO 80203
Counsel for Menasha Corp.

Delmar R. Ehrich
Faegre & Benson LLP
2200 Wells Fargo Center
90 S. 7th St.
Minneapolis, MN 55402-3901
Counsel for Menasha Corp.

Christopher P. Riordan
David J. Edquist
Patrick L. Wells
von Briesen & Roper SC
411 E Wisconsin Ave - Suite 700
P.O. Box 3262
Milwaukee, WI 53201-3262
Counsel for Green Bay
Packaging Inc.

Russell W. Wilson
Ruder Ware LLSC
500 1st St. - Ste 8000
P.O. Box 8050
Wausau, WI 54402-8050
Counsel for Leicht Transfer &
Storage Co.

Timothy B. Anderson
Remley & Sensenbrenner SC
219 E. Wisconsin Ave.
Neenah, WI 54956
Counsel for Neenah Foundry Co.

William E. Coughlin
Thomas R. O'Donnell
Calfee Halter & Griswold LLP
KeyBank Ctr.
800 Superior Ave - Ste 1400
Cleveland, OH 44114-2688
Counsel for Neenah Foundry Co.

Linda E. Benfield
Sarah A. Slack
Foley & Lardner LLP
777 E. Wisconsin Ave
Milwaukee, WI 53202-5300
Counsel for Wisconsin Public
Service Corporation

Mathew B. Beredo
Baker Hostetler LLP
3200 National City Ctr.
1900 E. 9th St
Cleveland, OH 44114-3485
Counsel for International Paper
Company

Michelle A. Gale
Arthur F. Radke
Dykema Gossett PLLC
10 S. Wacker Dr - Ste 2300
Chicago, IL 60606
Counsel for Procter & Gamble Paper
Products Company

*s/ Randall M. Stone*
RANDALL M. STONE