UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. AND NCR     )
CORPORATION,     )
    )
          Plaintiffs,     )
    )
          vs.     )
    )        Case No. 08-CV-00016-WCG
GEORGE A. WHITING PAPER COMPANY, )
et al.,     )
    )
          Defendants.     )
    )
    )

## WISCONSIN PUBLIC SERVICE CORPORATION'S ANSWER TO THE THIRD AMENDED COMPLAINT AND COUNTERCLAIM

Defendant Wisconsin Public Service Corporation ("WPSC"), by and through its undersigned counsel, answers the Third Amended Complaint ("Complaint") of Plaintiffs Appleton Papers Inc. ("Appleton" or "API") and NCR Corporation ("NCR") (collectively, the "Plaintiffs") as follows[1]:

## INTRODUCTION

1.    This civil action is brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 et seq. ("CERCLA"), also known as Superfund. It concerns the allocation of costs and damages arising out of the polychlorinated biphenyl

_____

[1] WPSC has filed contemporaneously herewith its Motion to Dismiss Counts I and III of Plaintiffs' Third Amended Complaint, and therefore makes no answer to those Counts in this Answer.

("PCB") contamination of the Lower Fox River and Green Bay in Wisconsin ("Lower Fox River Contamination").

**ANSWER:** WPSC admits that the Complaint purports to state claims pursuant to CERCLA and that it concerns the allocation of costs and damages relating to alleged PCB contamination of the Lower Fox River and Green Bay in Wisconsin. Further answering, WPSC denies the remaining allegations contained in Paragraph 1 of the Complaint.

2. API and NCR have been the leaders among the responsible parties in working with the U.S. Environmental Protection Agency ("USEPA") and the Wisconsin Department of Natural Resources ("WDNR") (together, the "Agencies") to address and remediate the Lower Fox River Contamination. As set forth below in more detail, API and NCR have provided the Agencies with critical funding to complete their investigations of the Lower Fox River Contamination and their evaluations of cleanup options. Also, NCR has worked with another responsible party – Fort James Operating Company – to conduct the design of the remedy selected by the Agencies, and has worked with yet another responsible party – U.S. Paper Mills Corporation – to undertake the first phase of the remedial work in the Lower Fox River, and API has contributed both money and support to these efforts. In addition, API and NCR have made substantial payments to the trustees for natural resource damages to allow them to implement various restoration projects even before the design of the remedy is complete. The amounts API and NCR have spent on these activities are well in excess of their responsibility for this work.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint, and therefore denies the allegations in Paragraph 2.

2

3. The purpose of this lawsuit is to allocate the equitable shares of the cleanup costs and natural resource damages associated with the Lower Fox River Contamination, and to require Defendants and other responsible parties to pay for the upcoming remedial work and natural resource damages activities in accordance with their allocated shares. Altogether, there are in excess of two dozen parties responsible for the Lower Fox River Contamination. API and NCR have entered into tolling and standstill agreements with many of the responsible parties. As the various tolling and standstill agreements expire, API and NCR will seek to join other parties to this action.

**ANSWER:** With respect to the first sentence of Paragraph 3, WPSC admits that Plaintiffs' Complaint purports to assert claims relating to alleged contamination of the Lower Fox River and Green Bay, but denies that WPSC is liable for any costs associated with addressing, or resulting from, such alleged contamination. Further answering, WPSC denies the remaining allegations in the first sentence of Paragraph 3. WPSC denies the allegations in the second sentence of Paragraph 3 to the extent those allegations relate to WPSC. Further answering, to the extent that the allegations in the second sentence of Paragraph 3 relate to entities other than WPSC, WPSC lacks knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies them. With respect to the remaining allegations in Paragraph 3, WPSC lacks knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies them.

4. The responsible parties disagree about the size of the other parties' shares of the Lower Fox River cleanup costs and damages. Also, the vast majority of the cleanup costs for the Lower Fox River have yet to be incurred. Accordingly, in this Third Amended Complaint API and NCR seek a declaratory judgment allocating the API/NCR share of future cleanup costs

3

and damages, as well as the shares of Defendants and all other parties that are added to this action. API and NCR also seek judgment against Defendants and all other parties that are added to this action for the cleanup costs and damages that each of API and NCR have incurred to date, allocated in accordance with such shares.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 4 of the Complaint, and therefore denies those allegations. With respect to the allegations in the third and fourth sentences of Paragraph 4, WPSC admits that Plaintiffs' Complaint seeks a judgment relating to alleged cleanup costs and damages, but denies the remaining allegations in the third and fourth sentences of Paragraph 4.

## JURISDICTION

5. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1331 (federal question).

**ANSWER:** WPSC admits the allegations in Paragraph 5 of the Complaint.

6. Venue is proper in this District pursuant to Section 113(b) CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the events giving rise to the claims stated in this Third Amended Complaint, including the alleged releases of hazardous substances, occurred in this District, and the Lower Fox River is located entirely within this District. Additionally, Defendants conducted business or operations within this District at times relevant to the events described in this Third Amended Complaint.

**ANSWER:** WPSC admits that the Complaint alleges releases of hazardous substances into the environment and related wrongful actions in this District, and that venue as to WPSC is appropriate in this District under Section 113(b) CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b). As to the other parties, WPSC lacks knowledge or information sufficient to form a

4

belief as to the truth of the remaining allegations in Paragraph 6, and therefore denies the remaining allegations in Paragraph 6.

## PARTIES

7.     Plaintiff API is a Delaware corporation with its principal place of business in Appleton, Wisconsin.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7, and therefore denies the allegations in Paragraph 7.

8.     Plaintiff NCR is a Maryland corporation with its principal place of business in Dayton, Ohio.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, and therefore denies the allegations in Paragraph 8.

9.     Defendant George A. Whiting Paper Company ("Whiting Paper Co.") is a Wisconsin corporation with its principal place of business in Menasha, Wisconsin.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint, and therefore denies the allegations in Paragraph 9.

10.     Defendant, P.H. Glatfelter Company is a Pennsylvania corporation with its principal place of business in York, Pennsylvania.  P.H. Glatfelter Company is a successor to all relevant liabilities of Bergstrom Paper Company.  P.H. Glatfelter and Bergstrom Paper Company shall be referred to collectively hereafter as "Glatfelter".

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint, and therefore denies the allegations in Paragraph 10.

11. Defendant Menasha Corporation is a Wisconsin corporation with its principal place of business in Neenah, Wisconsin. Menasha Corporation is a successor to all relevant liabilities of John Strange Paper Company. Menasha Corporation and John Strange Paper Company shall be referred to collectively hereafter as "Menasha".

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint, and therefore denies the allegations in Paragraph 11.

12. Defendant Green Bay Packaging Inc. ("Green Bay Packaging") is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint, and therefore denies the allegations in Paragraph 12.

13. Defendant International Paper Company is a New York corporation with its principal place of business in Memphis, Tennessee. International Paper Company is a successor to all relevant liabilities of Nicolet Paper Company and Thilmany Pulp & Paper. International Paper Company, Nicolet Paper Company and Thilmany Pulp & Paper shall be referred to collectively hereafter as "International Paper".

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint, and therefore denies the allegations in Paragraph 13.

14. Defendant Leicht Transfer & Storage Company ("Leicht") is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin.

6

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint, and therefore denies the allegations in Paragraph 14.

15. Defendant Neenah Foundry Company ("Neenah Foundry") is a Wisconsin corporation with its principal place of business in Neenah, Wisconsin.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint, and therefore denies the allegations in Paragraph 15.

16. Defendant Newpage Wisconsin System Inc. is a Wisconsin corporation with its principal place of business in Wisconsin Rapids, Wisconsin. Newpage Wisconsin System Inc. was formerly known as Stora Enso North America Corp. and is a successor to all relevant liabilities of Consolidated Papers, Inc. Newpage Wisconsin System Inc., Stora Enso North America Corp. and Consolidated Papers, Inc. shall be referred to collectively hereafter as "Newpage".

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint, and therefore denies the allegations in Paragraph 16.

17. Defendant The Procter & Gamble Paper Products Company ("Procter & Gamble") is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint, and therefore denies the allegations in Paragraph 17.

7

18. Defendant Wisconsin Public Service Corporation ("WPS") is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin.

**ANSWER:** WPSC admits the allegations contained in Paragraph 18 of the Complaint.

## GENERAL ALLEGATIONS

### The Lower Fox River Site

19. The case concerns PCB contamination of the Lower Fox River and Green Bay (Lower Fox River Site"). The Lower Fox River Site runs 39 miles northeast from Lake Winnebago until it discharges into Green Bay. WDNR has estimated that the sediments in the Lower Fox River Site contain approximately 210,000 pounds of PCBs.

**ANSWER:** WPSC admits that the Complaint purports to assert claims based on the alleged contamination of the Lower Fox River and Green Bay, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19 of the Complaint, and therefore denies the remaining allegations in Paragraph 19.

### Defendants' Releases

20. At all relevant times, Defendant Whiting Paper Co. owned and operated a paper mill in Menasha, Wisconsin (the "Whiting Mill"). During that time, PCBs were released from the Whiting Mill, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint, and therefore denies the allegations in Paragraph 20.

21. At all relevant times, Defendant Glatfelter owned and operated a paper mill in Neenah, Wisconsin (the "Glatfelter Mill"). During that time, PCBs were released from the

8

Glatfelter Mill into the Lower Fox River Site, both directly and through a paper mill sludge landfill used by Glatfelter.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint, and therefore denies the allegations in Paragraph 21.

22. At all relevant times, Defendant Menasha owned and operated a paperboard mill in Menasha, Wisconsin (the "Menasha Mill"). During that time, PCBs were released from the Menasha Mill into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint, and therefore denies the allegations in Paragraph 22.

23. At all relevant times, Green Bay Packaging owned and operated a paperboard mill in Green Bay, Wisconsin (the "Green Bay Mill"). During that time, PCBs were released from the Green Bay Mill into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint, and therefore denies the allegations in Paragraph 23.

24. At all relevant times, International Paper owned and operated paper mills in DePere, Wisconsin (the "Nicolet Mill") and Kaukauna, Wisconsin (the "Thilmany Mill") (collectively, the "International Paper Mills"). During that time, PCBs were released from the

9

International Paper Mills into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint, and therefore denies the allegations in Paragraph 24.

25. At all relevant times, Leicht owned and operated a warehousing and distribution center in Green Bay, Wisconsin, including trucking and transportation services. During that time, a Leicht truck ("Leicht truck") collided with a transformer on property at 500 Day Street in Green Bay, Wisconsin ("Day Street Property"), and PCBs were released directly or indirectly into the Lower Fox River Site.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint, and therefore denies the allegations in Paragraph 25.

26. At all relevant times, Neenah Foundry owned and operated a foundry in Neenah, Wisconsin (the "Neenah Foundry Plant"). During that time, PCBs were released from the Neenah Foundry Plant into the Lower Fox River Site, either directly, indirectly, or through a municipal wastewater treatment plant.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint, and therefore denies the allegations in Paragraph 26.

27. At all relevant times, Newpage owned and operated a pulp and paper mill in Appleton, Wisconsin (the "Interlake Mill"), and a paper mill in Kimberly, Wisconsin (the "Kimberly Mill") (collectively, the "Newpage Mills"). During that time, PCBs were released

from the Newpage Mills into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint, and therefore denies the allegations in Paragraph 27.

28. At all relevant times Procter & Gamble owned and operated a paper mill in Green Bay, Wisconsin (the "Charmin Mill"). During that time, PCBs were released from the Charmin Mill into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint, and therefore denies the allegations in Paragraph 28.

29. At all relevant times, WPS had generation and transmission operations ("WPS Utility Operations") near the Lower Fox River Site, including a fly ash landfill operation and the Pulliam generating station. During that time, PCBs were released from the WPS Utility Operations directly into the Lower Fox River Site.

**ANSWER:** WPSC admits that, at certain times, it has (1) operated an electricity generating facility known as the Pulliam facility near the Lower Fox River, and (2) operated a fly ash landfill near the Lower Fox River, but denies the remaining allegations in Paragraph 29.

**Cleanup Work and Natural Resource Damages at the Lower Fox River Site**

30. On November 13, 2007, USEPA issued a unilateral administrative order (the "Order"), pursuant to 42 U.S.C. § 9606(a), which requires API, NCR, Glatfelter, Menasha and others to conduct certain remedial actions in the downriver part of the Lower Fox River Site. Only eight companies were identified as respondents by USEPA in the Order.

11

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint, and therefore denies the allegations in Paragraph 30.

31.  The Order comes after various parties have been working for years to address the Lower Fox River Contamination.  In the mid-1990s, API, NCR, Glatfelter, WTM I Company, U.S. Paper Mills Corporation, Fort Howard Company and Riverside Paper Corporation joined together to form the Fox River Group.  The Fox River Group, among other activities, identified and evaluated methods to address environmental issues at the Lower Fox River Site.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint, and therefore denies the allegations in Paragraph 31.

32.  In January 1997, the members of the Fox River Group signed an agreement with the State of Wisconsin ("State Agreement") to, among other things, spend a total of $10,000,000 assessing and responding to the Lower Fox River Contamination and implementing certain natural resource damages restoration projects.  Pursuant to the State Agreement, the members of the Fox River Group paid for and supervised projects that removed over 2,000 pounds of PCBs from the Lower Fox River Site.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint, and therefore denies the allegations in Paragraph 32.

33.  The members of the Fox River Group performed this work between 1997 and 2001 and paid in excess of $20,000,000 in costs and damages, a substantial portion of which

12

were borne by API and NCR. At this time, the obligations imposed by the State Agreement have been completed. The State of Wisconsin formally terminated the State Agreement in July 2001.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint, and therefore denies the allegations in Paragraph 33.

34. On December 10, 2001, a Consent Decree involving API, NCR, the United States and the State of Wisconsin was approved and entered by the Court ("2001 Consent Decree"). Under the terms of the 2001 Consent Decree, API and NCR agreed to provide $41,500,000 over four years to fund, among other things, response action and natural resource damages restoration projects at the Lower Fox River Site that were consistent with the National Contingency Plan and CERCLA, and to reimburse natural resource damages trustees for past assessment costs. In December 2005, API and NCR agreed to extend the 2001 Consent Decree for an additional year to allow funding of certain additional natural resource damage restoration projects and assessment costs ("2005 Consent Decree Extension"). API has paid in excess of $23 million and NCR has paid in excess of $19 million pursuant to the 2001 Consent Decree and the 2005 Consent Decree Extension for response action projects and natural resource damages at the Lower Fox River Site.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint, and therefore denies the allegations in Paragraph 34.

35. In January 2003, after many years of study, WDNR and USEPA released a Record of Decision outlining in broad terms the remedial action to be conducted in the upriver portion of the Lower Fox River Site ("Upriver ROD"). The remedy selected in the Upriver ROD

consisted of a combination of dredging sediments with PCB concentrations exceeding 1 part per million and monitoring sediments with lower levels of PCBs.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint, and therefore denies the allegations in Paragraph 35.

36. In July 2003, WDNR and USEPA released a Record of Decision outlining in broad terms the remedial action to be concluded in the downriver portion of the Lower Fox River Site ("Downriver ROD"). The remedy selected in the Downriver ROD consisted primarily of dredging sediments with PCB concentrations exceeding 1 part per million and monitoring sediments with lower levels of PCBs at the mouth of the river at Green Bay.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint, and therefore denies the allegations in Paragraph 36.

37. In March 2004, NCR and Fort James Operating Company entered into an Administrative Settlement Agreement and Order on Consent with the State of Wisconsin and the United States, pursuant to which NCR and Fort James Operating Company agreed to perform the work necessary to design the remedy outlined in the Downriver ROD, and API has contributed both money and support to the design effort. As of the filing of this Third Amended Complaint, API has paid in excess of $1.7 million and NCR has paid approximately $1.4 million pursuant to this Administrative Settlement Agreement and Order on Consent alone for response actions to design the Downriver ROD.

14

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint, and therefore denies the allegations in Paragraph 37.

38. In April 2006, NCR and U.S. Paper Mills Corporation entered into a Consent Decree with the United States and the State of Wisconsin to implement Phase 1 of the downriver remedy ("2006 Phase 1 Consent Decree"), and API has contributed both money and support to this effort. To date, API has incurred in excess of $4.6 million in costs and NCR has incurred in excess of $3.8 million in costs pursuant to the 2006 Phase 1 Consent Decree. API and NCR further estimate that over the next year they will incur an additional $1.5 million and $1.2 million, respectively, to fulfill the obligations under the 2006 Phase 1 Consent Decree.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint, and therefore denies the allegations in Paragraph 38.

39. In June 2007, the United States and the State of Wisconsin issued an amendment to the 2003 Downriver ROD ("2007 Amended ROD"). Very little if any of the work required under the 2007 Amended ROD has been performed to date, and accordingly few of the costs of the 2007 Amended ROD have been incurred yet. The Order recently issued by USEPA requires the eight named respondents to complete the design of and then implement the remedy set fort in the 2007 Amended ROD. API/NCR expect that they will be required to pay considerably more than they have paid to date in order to comply with the Order.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Complaint, and therefore denies the allegations in Paragraph 39.

40. USEPA has taken the position that remedial action was and is necessary at the Lower Fox River Site due to the potential for certain persons, such as recreational anglers and high-intake fish consumers, to experience adverse health effects. Fish consumption advisories have been in effect at the Lower Fox River for thirty years.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 of the Complaint, and therefore denies the allegations in Paragraph 40.

41. USEPA has determined that the actions that have been taken and are being taken by API and NCR at the Lower Fox River Site were and are consistent with the National Contingency Plan.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint, and therefore denies the allegations in Paragraph 41.

42. In addition to those costs and damages paid or to be paid pursuant to the State Agreement, the 2001 Consent Decree, the 2005 Consent Decree Extension, the Administrative Settlement Agreement and Order on Consent and the 2006 Phase 1 Consent Decree, API and NCR have paid additional costs, including the costs of identifying other responsible parties, conducting risk assessments, funding natural resource damages projects, and otherwise investigating and responding to the Lower Fox River Contamination.

**ANSWER:** WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 of the Complaint, and therefore denies the allegations in Paragraph 42.

16

## COUNT I – CLAIM UNDER CERCLA § 107

WPSC has filed contemporaneously herewith its Motion to Dismiss Counts I and III of Plaintiffs' Third Amended Complaint, and therefore makes no answer to Count I.

## COUNT II – CLAIM UNDER CERCLA § 113

102. API and NCR reallege and incorporate by reference paragraphs 1 through 101 as if fully set forth herein.

**ANSWER:** WPSC adopts and realleges its answers to Paragraphs 1 through 101 of the Complaint as and for its answer to Paragraph 102 of the Complaint.

103. Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), authorizes any person to seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

**ANSWER:** Paragraph 103 states a legal conclusion to which no answer is required. To the extent that a response is deemed necessary, WPSC denies the allegations contained in Paragraph 103 of the Complaint.

104. API and NCR have reimbursed the United States and the State of Wisconsin for amounts greater than API/NCR's allocable share of the Lower Fox River Costs and damages paid to date. API and NCR also have made other payments relating to Lower Fox River Costs and damages that are greater than API/NCR's allocable share of Lower Fox River Costs and damages. Defendants are liable for those Lower Fox River Costs and damages paid by each of API and NCR that are in excess of API/NCR's allocable share and that are properly attributable to Defendants.

**ANSWER:** WPSC lacks information and belief as to the truth of the allegations in the first and second sentences of Paragraph 104 of the Complaint, and therefore denies these allegations, and denies the remaining allegations contained in Paragraph 104 of the Complaint. WPSC denies the

17

allegations as to itself in the third sentence of Paragraph 104, and as to other defendants, lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 104, and therefore denies the remaining allegations in Paragraph 105.

105.  Pursuant to Section 113(1) of CERCLA, 42 U.S.C. § 9613(1), API and NCR have provided a copy of this Third Amended Complaint to the Attorney General of the United States and the Administrator of USEPA.

**ANSWER:**  WPSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 105 of the Complaint, and therefore denies the allegations in Paragraph 105.

106.  Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), API and NCR are entitled to recover interest on the Lower Fox River Costs and damages they have paid and will pay in the future in excess of API/NCR's allocable share.

**ANSWER:**  Paragraph 106 states a  legal conclusion to which no answer is required.  To the extent that a response is deemed necessary, WPSC denies the allegations contained in Paragraph 106 of the Complaint.

## COUNT III – CLAIM FOR DECLARATORY RELIEF

WPSC has filed contemporaneously herewith its Motion to Dismiss Counts I and III of Plaintiffs' Third Amended Complaint, and therefore makes no answer to Count III.

## AFFIRMATIVE DEFENSES

WPSC states as its affirmative defenses to the complaint as follows:

## FIRST AFFIRMATIVE DEFENSE

18

Each purported cause of action is barred, in whole or in part, by the doctrine of waiver.

## SECOND AFFIRMATIVE DEFENSE

Each purported cause of action is barred, in whole or in part, by the doctrine of estoppel.

## THIRD AFFIRMATIVE DEFENSE

Each purported cause of action is barred, in whole or in part, by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

Each purported cause of action is barred, in whole or in part, by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

One or more of the Plaintiffs' causes of action is barred in whole or in part by applicable statutes of limitation, or by any applicable limitations periods agreed upon by the parties in writing.

## SIXTH AFFIRMATIVE DEFENSE

On information and belief, Plaintiffs and/or third parties failed to use reasonable care and diligence to mitigate and to avoid and/or minimize the injuries or damages alleged.

## SEVENTH AFFIRMATIVE DEFENSE

The response costs purportedly incurred and/or to be incurred by Plaintiffs and claimed under Plaintiffs Complaint are, and will be, unnecessary and inconsistent with the National Contingency Plan.

## EIGHTH AFFIRMATIVE DEFENSE

The costs purportedly incurred and/or to be incurred by Plaintiffs and claimed under Plaintiffs' Complaint are not, and will not be, "response costs" within the meaning of CERCLA §§ 101(23), (24) and (25), 42 U.S.C. §§ 9601(23), (24), and (25), and applicable federal common law.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has failed to join all parties whose presence is needed for a just adjudication in this matter.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover some or all of the costs alleged in its Complaint because certain of these costs are not necessary costs of response under CERCLA § 107(a), 42 U.S.C. § 9607(a).

## ELEVENTH AFFIRMATIVE DEFENSE

The alleged release or threatened release of contaminants and any resulting injury and/or damage were caused solely by the acts or omissions of entities other than WPSC.

WHEREFORE, Defendant Wisconsin Public Service Corporation denies that Plaintiffs are entitled to recover on any claim stated in their Third Amended Complaint, and requests that this Court (1) enter judgment in its favor and against Plaintiffs on all counts, (2)

award its costs of suit, and (3) enter such other and further relief as the Court deems just and

appropriate.

## COUNTERCLAIM

Wisconsin Public Service Corporation ("WPSC" or "Counterplaintiff"), through its undersigned counsel, asserts the following counterclaims against the Plaintiffs ("Counterdefendants"):

1. Counterplaintiff, WPSC, is a Wisconsin Corporation with offices located at 700 N. Adams St., Green Bay, Wisconsin, 54307.

2. On information and belief, Counterdefendent API, is a Delaware Corporation with its principal place of business in Appleton, Wisconsin. Furthermore, API is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), and its operations resulted in releases of PCBs to the Fox River.

3. On information and belief, Counterdefendant NCR is a Maryland corporation with its principal place of business in Dayton, Ohio, and with operations along the Fox River. Furthermore, NCR is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), and its operations resulted in releases of PCBs to the Fox River.

4. This Court has jurisdiction over the subject matter of this counterclaim pursuant to 28 U.S.C. §1331 and 42 U.S.C. §9613.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §9613(b) because the claim stated herein arose in this judicial district, and the Lower Fox River and Counterdefendants' relevant businesses or operations are/were located within this district.

6. The Third Amended Complaint alleges claims for liability against WPSC which claims WPSC denies.

22

7.    Counterdefendents are liable for response costs or damages incurred, or to be incurred, for PCB contamination of the Lower Fox River Site as those terms are defined in the Third Amended Complaint.

8.    To the extent that the Third Amended Complaint states a claim for liability for response costs or damages at the Lower Fox River Site, and results in a judgment against Counterplaintiff WPSC, WPSC is entitled to statutory and/or common law contribution, cost recovery, and/or indemnity from Counterdefendants.

**PRAYER FOR RELIEF**

WHEREFORE, WPSC respectfully requests that in the event judgment is rendered against WPSC on Plaintiffs' Third Amended Complaint, the Court enter judgment against Counterdefendants for costs and damages properly allocable to them, for such other and further relief as this Court deems just and proper, and for its attorneys' fees, costs, disbursements and expenses of this action.

23

Dated:  June 2, 2008                    Respectfully submitted,

                                        WISCONSIN PUBLIC SERVICE
                                        CORPORATION


                                        By: /s/ Sarah A. Slack
                                                One of Its Attorneys

Linda E. Benfield, Esq. (1004937)
Sarah A. Slack, Esq. (1056510)
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI  53202-5306
414.271.2400
414.297.4900 (Facsimile)
Email:  lbenfield@foley,com; sslack@foley.com

Charles M. Gering
Foley & Lardner LLP
321 North Clark Street
Chicago, IL 60610
312.832.4588
312.832.4700 (Facsimile)
Email: cgering@foley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 2, 2008, I electronically filed the foregoing

**Wisconsin Public Service Corporation's Answer to the Third Amended Complaint and**

**Counterclaim** with the Clerk of the Court using the CM/ECF system, which sent notification of

such filing to the following:

Michael L. Hermes
Evan B. Westerfield
J. Ric Gass
J. Andrew Schlickman
Joan Radovich
Kathleen L. Roach
Philip A. Munroe
Scott B. Fleming
Jennifer E. Simon
Marc E. Davies
Ronald M. Varnum
Sabrina Mizrachi
David G. Mendelbaum
Joseph J. Beisenstein
Colin C. Deihl
Delmar R. Ehrich
Jacy T. Rock
Mark R. Feldmann
Christopher P. Riordan
David J. Edquist
Patrick L. Wells
Mathew B. Beredo
Sonja A. Inglin
Randall M. Stone
Russell W. Wilson
Arthur F. Radke
Joseph C. Basta
Michelle A. Gale
Thomas R. O'Donnell
Timothy B. Anderson
William E. Coughlin
Daniel C. Murray

/s/ Sarah A. Slack