**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | | |
|---|---|---|
| APPLETON PAPERS INC. and | ) | |
| NCR CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-CV-00016-WCG |
| | ) | |
| GEORGE A. WHITING PAPER COMPANY, | ) | |
| P. H. GLATFELTER COMPANY, | ) | |
| MENASHA CORPORATION, | ) | |
| GREEN BAY PACKAGING INC., | ) | |
| INTERNATIONAL PAPER COMPANY, | ) | |
| LEICHT TRANSFER & STORAGE COMPANY, | ) | |
| NEENAH FOUNDRY COMPANY, | ) | |
| NEWPAGE WISCONSIN SYSTEM INC., | ) | |
| THE PROCTER & GAMBLE PAPER | ) | |
| PRODUCTS COMPANY, | ) | |
| WISCONSIN PUBLIC SERVICE CORP., | ) | |
| CITY OF APPLETON, | ) | |
| CITY OF DE PERE, | ) | |
| CITY OF GREEN BAY, | ) | |
| CITY OF KAUKAUNA, | ) | |
| BROWN COUNTY, | ) | |
| GREEN BAY METROPOLITAN | ) | |
| SEWERAGE DISTRICT, | ) | |
| HEART OF THE VALLEY METROPOLITAN | ) | |
| SEWERAGE DISTRICT, | ) | |
| NEENAH-MENASHA SEWERAGE | ) | |
| COMMISSION, | ) | |
| VILLAGE OF KIMBERLY, and | ) | |
| VILLAGE OF WRIGHTSTOWN, | ) | |
| | ) | |
| Defendants. | ) | |

## FOURTH AMENDED COMPLAINT

Plaintiffs Appleton Papers Inc. ("API") and NCR Corporation ("NCR"), by and

through their undersigned counsel, allege as follows:

## INTRODUCTION

1.     This civil action is brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 et seq. ("CERCLA"), also known as Superfund. It concerns the allocation of costs and damages arising out of polychlorinated biphenyl ("PCB") contamination of the Lower Fox River and Green Bay in Wisconsin ("Lower Fox River Contamination").

2.     API and NCR have been the leaders among the responsible parties in working with the U.S. Environmental Protection Agency ("USEPA") and the Wisconsin Department of Natural Resources ("WDNR") (together, the "Agencies") to address and remediate the Lower Fox River Contamination. As set forth below in more detail, API and NCR have provided the Agencies with critical funding to complete their investigations of the Lower Fox River Contamination and their evaluations of cleanup options. Also, NCR has worked with another responsible party – Fort James Operating Company – to conduct the design of the remedy selected by the Agencies, and has worked with yet another responsible party – U.S. Paper Mills Corporation – to undertake the first phase of the remedial work in the Lower Fox River, and API has contributed both money and support to these efforts. In addition, API and NCR have made substantial payments to the trustees for natural resource damages to allow them to implement various restoration projects even before the design of the remedy is complete. The amounts API and NCR have spent on these activities are well in excess of their responsibility for this work.

3.     The purpose of this lawsuit is to allocate the equitable shares of the cleanup costs and natural resource damages associated with the Lower Fox River Contamination, and to require Defendants and the other responsible parties to pay for the upcoming remedial

2

work and natural resource damages activities in accordance with their allocated shares. Altogether, there are in excess of two dozen parties responsible for the Lower Fox River Contamination. API and NCR have entered into tolling and standstill agreements with many of the responsible parties. As the various tolling and standstill agreements expire, API and NCR will seek to join other parties to this action.

4. The responsible parties disagree about the size of the other parties' shares of the Lower Fox River cleanup costs and damages. Also, the vast majority of the cleanup costs for the Lower Fox River have yet to be incurred. Accordingly, in this Fourth Amended Complaint API and NCR seek a declaratory judgment allocating the API/NCR share of future cleanup costs and damages, as well as the shares of Defendants and all other parties that are added to this action. API and NCR also seek judgment against Defendants and all other parties that are added to this action for the cleanup costs and damages that each of API and NCR have incurred to date, allocated in accordance with such shares.

## JURISDICTION

5. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1331 (federal question).

6. Venue is proper in this District pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the events giving rise to the claims stated in this Fourth Amended Complaint, including the alleged releases of hazardous substances, occurred in this District, and the Lower Fox River is located entirely within this District. Additionally, Defendants conducted business or operations within this District at times relevant to the events described in this Fourth Amended Complaint.

## PARTIES

7. Plaintiff API is a Delaware corporation with its principal place of business in Appleton, Wisconsin.

8. Plaintiff NCR is a Maryland corporation with its principal place of business in Dayton, Ohio.

9. Defendant George A. Whiting Paper Company ("Whiting Paper Co.") is a Wisconsin corporation with its principal place of business in Menasha, Wisconsin.

10. Defendant P.H. Glatfelter Company is a Pennsylvania corporation with its principal place of business in York, Pennsylvania. P.H. Glatfelter Company is a successor to all relevant liabilities of Bergstrom Paper Company. P.H. Glatfelter Company and Bergstrom Paper Company shall be referred to collectively hereafter as "Glatfelter."

11. Defendant Menasha Corporation is a Wisconsin corporation with its principal place of business in Neenah, Wisconsin. Menasha Corporation is a successor to all relevant liabilities of John Strange Paper Company. Menasha Corporation and John Strange Paper Company shall be referred to collectively hereafter as "Menasha."

12. Defendant Green Bay Packaging Inc. ("Green Bay Packaging") is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin.

13. Defendant International Paper Company is a New York corporation with its principal place of business in Memphis, Tennessee. International Paper Company is a successor to all relevant liabilities of Nicolet Paper Company and Thilmany Pulp & Paper. International Paper Company, Nicolet Paper Company and Thilmany Pulp & Paper shall be referred to collectively hereafter as "International Paper."

4

14.     Defendant Leicht Transfer & Storage Company ("Leicht") is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin.

15.     Defendant Neenah Foundry Company ("Neenah Foundry") is a Wisconsin corporation with its principal place of business in Neenah, Wisconsin.

16.     Defendant Newpage Wisconsin System Inc. is a Wisconsin corporation with its principal place of business in Wisconsin Rapids, Wisconsin.  Newpage Wisconsin System Inc. was formerly known as Stora Enso North America Corp. and is a successor to all relevant liabilities of Consolidated Papers, Inc.  Newpage Wisconsin System Inc., Stora Enso North America Corp. and Consolidated Papers, Inc. shall be referred to collectively hereafter as "Newpage."

17.     Defendant The Procter & Gamble Paper Products Company ("Procter & Gamble") is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

18.     Defendant Wisconsin Public Service Corporation ("WPS") is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin.

19.     Defendant City of Appleton is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Appleton, Wisconsin.

20.     Defendant City of De Pere is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in De Pere, Wisconsin.

21.     Defendant City of Green Bay is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Green Bay, Wisconsin.

22.     Defendant City of Kaukauna is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Kaukauna, Wisconsin.

23.     Defendant Brown County is a local county organized under the laws of the State of Wisconsin, with its principal place of business located in Brown County, Wisconsin.

24.     Defendant Green Bay Metropolitan Sewerage District ("Green Bay MSD") is a publicly owned treatment works commissioned by the Brown County, Wisconsin, government.

25.     Defendant Heart of the Valley Metropolitan Sewerage District ("Heart of the Valley MSD") is a publicly owned treatment works commissioned by the Outagamie County, Wisconsin, government.

26.     Defendant Neenah-Menasha Sewerage Commission ("Neenah-Menasha SC") is a publicly owned treatment works commissioned by the governments of the Cities of Neenah and Menasha, Wisconsin.

27.     Defendant Village of Kimberly is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Kimberly, Wisconsin.

28.     Defendant Village of Wrightstown is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Wrightstown, Wisconsin.

## GENERAL ALLEGATIONS

### The Lower Fox River Site

29.     This case concerns PCB contamination of the Lower Fox River and Green Bay ("Lower Fox River Site"). The Lower Fox River Site runs 39 miles northeast from Lake Winnebago until it discharges into Green Bay. WDNR has estimated that the sediments in the Lower Fox River Site contain approximately 210,000 pounds of PCBs.

### Defendants' Releases

30.     At all relevant times, Defendant Whiting Paper Co. owned and operated a paper mill in Menasha, Wisconsin (the "Whiting Mill"). During that time, PCBs were released from the Whiting Mill, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site.

31.     At all relevant times, Defendant Glatfelter owned and operated a paper mill in Neenah, Wisconsin (the "Glatfelter Mill"). During that time, PCBs were released from the Glatfelter Mill into the Lower Fox River Site, both directly and through a paper mill sludge landfill used by Glatfelter.

32.     At all relevant times, Defendant Menasha owned and operated a paperboard mill located in Menasha, Wisconsin (the "Menasha Mill"). During that time, PCBs were released from the Menasha Mill into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

33.     At all relevant times, Green Bay Packaging owned and operated a paperboard mill located in Green Bay, Wisconsin (the "Green Bay Mill"). During that time, PCBs were released from the Green Bay Mill into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

34.     At all relevant times, International Paper owned and operated paper mills in De Pere, Wisconsin (the "Nicolet Mill") and Kaukauna, Wisconsin (the "Thilmany Mill") (collectively, the "International Paper Mills").  During that time, PCBs were released from the International Paper Mills into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

35.     At all relevant times, Leicht owned and operated a warehousing and distribution center in Green Bay, Wisconsin, including trucking and transportation services.  During that time, a Leicht truck ("Leicht truck") collided with a transformer on property at 500 Day Street in Green Bay, Wisconsin ("Day Street Property"), and PCBs were released directly or indirectly into the Lower Fox River Site.

36.     At all relevant times, Neenah Foundry owned and operated a foundry in Neenah, Wisconsin (the "Neenah Foundry Plant").  During that time, PCBs were released from the Neenah Foundry Plant into the Lower Fox River Site, either directly, indirectly, or through a municipal wastewater treatment plant.

37.     At all relevant times, Newpage owned and operated a pulp and paper mill in Appleton, Wisconsin (the "Interlake Mill"), and a paper mill in Kimberly, Wisconsin (the "Kimberly Mill")(collectively the "Newpage Mills").  During that time, PCBs were released from the Newpage Mills into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

38.     At all relevant times Procter & Gamble owned and operated a paper mill in Green Bay, Wisconsin (the "Charmin Mill").  During that time, PCBs were released from the Charmin Mill into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

Case 2:08-cv-00016-WCG    Filed 06/11/08    Page 8 of 34    Document 148

39.    At all relevant times, WPS had generation and transmission operations ("WPS Utility Operations") near the Lower Fox River Site, including a fly ash landfill operation and the Pulliam generating station. During that time, PCBs were released from the WPS Utility Operations directly into the Lower Fox River Site.

40.    At all relevant times, City of Appleton owned and operated a municipal wastewater treatment plant in Appleton, Wisconsin (the "Appleton POTW"). During that time, PCBs were released from the Appleton POTW directly into the Lower Fox River Site.

41.    At all relevant times, City of De Pere owned and operated a municipal wastewater treatment plant in De Pere, Wisconsin (the "De Pere POTW"). During that time, PCBs were released from the De Pere POTW directly into the Lower Fox River Site.

42.    At all relevant times, City of Green Bay owned a landfill disposal site in Green Bay, Wisconsin (the "Bay Port Disposal Site"). During that time, PCBs were released from the Bay Port Disposal Site directly into the Lower Fox River Site.

43.    At all relevant times, City of Kaukauna owned and operated a municipal wastewater treatment plant in Kaukauna, Wisconsin (the "Kaukauna POTW"). During that time, PCBs were released from the Kaukauna POTW directly into the Lower Fox River Site.

44.    At all relevant times, Brown County owned a landfill disposal site in the bay of Green Bay, Wisconsin ("Renard Isle"). During that time, PCBs were released from Renard Isle directly into the Lower Fox River Site.

45.    At all relevant times, Green Bay MSD owned and operated a municipal wastewater treatment plant in Green Bay, Wisconsin (the "Green Bay MSD POTW"). During that time, PCBs were released from the Green Bay MSD POTW directly into the Lower Fox River Site.

46.    At all relevant times, Heart of the Valley MSD owned and operated a municipal wastewater treatment plant in Kaukauna, Wisconsin (the "Heart of the Valley POTW").  During that time, PCBs were released from the Heart of the Valley POTW directly into the Lower Fox River Site.

47.    At all relevant times, Neenah-Menasha SC owned and operated a municipal wastewater treatment plant in Menasha, Wisconsin (the "Neenah-Menasha POTW"). During that time, PCBs were released from the Neenah-Menasha POTW directly into the Lower Fox River Site.

48.    At all relevant times, Village of Kimberly owned and operated a municipal wastewater treatment plant in Kimberly, Wisconsin (the "Kimberly POTW").  During that time, PCBs were released from the Kimberly POTW directly into the Lower Fox River Site.

49.    At all relevant times, Village of Wrightstown owned and operated a municipal wastewater treatment plant in Wrightstown, Wisconsin (the "Wrightstown POTW"). During that time, PCBs were released from the Wrightstown POTW directly into the Lower Fox River Site.

**Cleanup Work and Natural Resource Damages at the Lower Fox River Site**

50.    On November 13, 2007, USEPA issued a unilateral administrative order (the "Order"), pursuant to 42 U.S.C. § 9606(a), which requires API, NCR, Glatfelter, Menasha and others to conduct certain remedial actions in the downriver part of the Lower Fox River Site. Only eight companies were identified as respondents by USEPA in the Order.

51.    The Order comes after various parties have been working for years to address the Lower Fox River Contamination.  In the mid-1990s, API, NCR, Glatfelter, WTM I Company, U.S. Paper Mills Corporation, Fort Howard Company and Riverside Paper

Corporation joined together to form the Fox River Group. The Fox River Group, among other activities, identified and evaluated methods to address environmental issues at the Lower Fox River Site.

52.     In January 1997, the members of the Fox River Group signed an agreement with the State of Wisconsin ("State Agreement") to, among other things, spend a total of $10,000,000 assessing and responding to the Lower Fox River Contamination and implementing certain natural resource damages restoration projects. Pursuant to the State Agreement, the members of the Fox River Group paid for and supervised projects that removed over 2,000 pounds of PCBs from the Lower Fox River Site.

53.     The members of the Fox River Group performed this work between 1997 and 2001 and paid in excess of $20,000,000 in costs and damages, a substantial portion of which were borne by API and NCR. At this time, the obligations imposed by the State Agreement have been completed. The State of Wisconsin formally terminated the State Agreement in July 2001.

54.     On December 10, 2001, a Consent Decree involving API, NCR, the United States and the State of Wisconsin was approved and entered by the Court ("2001 Consent Decree"). Under the terms of the 2001 Consent Decree, API and NCR agreed to provide $41,500,000 over four years to fund, among other things, response action and natural resource damages restoration projects at the Lower Fox River Site that were consistent with the National Contingency Plan and CERCLA, and to reimburse natural resource damages trustees for past assessment costs. In December 2005, API and NCR agreed to extend the 2001 Consent Decree for an additional year to allow funding of certain additional natural resource damage restoration projects and assessment costs ("2005 Consent Decree Extension"). API has paid in excess of $23 million and NCR has paid in excess of $19 million pursuant to the 2001 Consent Decree and

11

the 2005 Consent Decree Extension for response action projects and natural resource damages at the Lower Fox River Site.

55.      In January 2003, after many years of study, WDNR and USEPA released a Record of Decision outlining in broad terms the remedial action to be conducted in the upriver portion of the Lower Fox River Site ("Upriver ROD").  The remedy selected in the Upriver ROD consisted of a combination of dredging sediments with PCB concentrations exceeding 1 part per million and monitoring sediments with lower levels of PCBs.

56.      In July 2003, WDNR and USEPA released a Record of Decision outlining in broad terms the remedial action to be conducted in the downriver portion of the Lower Fox River Site ("Downriver ROD").  The remedy selected in the Downriver ROD consisted primarily of dredging sediments with PCB concentrations exceeding 1 part per million and monitoring sediments with lower levels of PCBs at the mouth of the river at Green Bay.

57.      In March 2004, NCR and Fort James Operating Company entered into an Administrative Settlement Agreement and Order on Consent with the State of Wisconsin and the United States, pursuant to which NCR and Fort James Operating Company agreed to perform the work necessary to design the remedy outlined in the Downriver ROD, and API has contributed both money and support to the design effort.  As of March 31, 2008, API had paid in excess of $1.7 million and NCR had paid approximately $1.4 million pursuant to this Administrative Settlement Agreement and Order on Consent alone for response actions to design the Downriver ROD.

58.      In April 2006, NCR and U.S. Paper Mills Corporation entered into a Consent Decree with the United States and the State of Wisconsin to implement Phase 1 of the downriver remedy ("2006 Phase 1 Consent Decree"), and API has contributed both money and

support to this effort. As of March 31, 2008, API had incurred in excess of $4.6 million in costs and NCR had incurred in excess of $3.8 million in costs pursuant to the 2006 Phase 1 Consent Decree. API and NCR further estimate that over the next year they will incur an additional $1.5 million and $1.2 million, respectively, to fulfill the obligations under the 2006 Phase 1 Consent Decree.

59.     In June 2007, the United States and the State of Wisconsin issued an amendment to the 2003 Downriver ROD ("2007 Amended ROD"). The Order recently issued by USEPA requires the eight named respondents to complete the design of and then implement the remedy set forth in the 2007 Amended ROD. API/NCR expect that they will be required to pay considerably more than they have paid to date in order to comply with the Order.

60.     USEPA has taken the position that remedial action was and is necessary at the Lower Fox River Site due to the potential for certain persons, such as recreational anglers and high-intake fish consumers, to experience adverse health effects. Fish consumption advisories have been in effect at the Lower Fox River for thirty years.

61.     USEPA has determined that the actions that have been taken and are being taken by API and NCR at the Lower Fox River Site were and are consistent with the National Contingency Plan.

62.     In addition to those costs and damages paid or to be paid pursuant to the State Agreement, the 2001 Consent Decree, the 2005 Consent Decree Extension, the Administrative Settlement Agreement and Order on Consent and the 2006 Phase 1 Consent Decree, API and NCR have paid additional costs, including the costs of identifying other responsible parties, conducting risk assessments, funding natural resource damages projects, and otherwise investigating and responding to the Lower Fox River Contamination.

## <u>COUNT I -- CLAIM UNDER CERCLA § 107</u>

63.     API and NCR reallege and incorporate by reference paragraphs 1 through 62 as if fully set forth herein.

64.     Pursuant to Section 107(a)(4)(B) and 107(a)(4)(C) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(B) and 9607(a)(4)(C), any person who is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), shall be liable for necessary response costs incurred by any other person consistent with the National Contingency Plan and for natural resource damages.

65.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), makes liable, among others: (i) the current owner and operator of a facility; (ii) the owner or operator, at the time of disposal of hazardous substances, of a facility at which such hazardous substances were disposed of; and (iii) any person who, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances at any facility containing such hazardous substances.

66.     The Lower Fox River Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

67.     The Whiting Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

68.     The Glatfelter Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

69.     The Menasha Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

70.     The Green Bay Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

71.     The International Paper Mills are each a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

72.     The Leicht truck, the Day Street Property and the transformer located thereon are each a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

73.     The Neenah Foundry Plant is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

74.     The Newpage Mills are each a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

75.     The Charmin Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

76.     The WPS Utility Operations are each a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

77.     The Appleton POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

78.     The De Pere POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

79.     The Bay Port Disposal Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

80.     The Kaukauna POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

81.     Renard Isle is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

82. The Green Bay MSD POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

83. The Heart of the Valley POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

84. The Neenah-Menasha POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

85. The Kimberly POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

86. The Wrightstown POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

87. Defendant Whiting Paper Co. is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

88. Defendant Glatfelter is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

89. Defendant Menasha is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

90. Defendant Green Bay Packaging is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

91. Defendant International Paper is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

92. Defendant Leicht is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

93. Defendant Neenah Foundry is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

94. Defendant Newpage is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

95. Defendant Procter & Gamble is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

96. Defendant WPS is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

97. Defendant City of Appleton is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

98. Defendant City of De Pere is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

99. Defendant City of Green Bay is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

100. Defendant City of Kaukauna is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

101. Defendant Brown County is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

102. Defendant Green Bay MSD is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

103. Defendant Heart of the Valley MSD is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

104.     Defendant Neenah-Menasha SC is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

105.     Defendant Village of Kimberly is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

106.     Defendant Village of Wrightstown is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

107.     API is a "person" within the meaning of Sections 101(21) and 107(a)(4)(B) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a)(4)(B).

108.     NCR is a "person" within the meaning of Sections 101(21) and 107(a)(4)(B) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a)(4)(B).

109.     PCBs are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

110.     Papermaking activities conducted by Whiting Paper Co. at the Whiting Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site.  As a result, Whiting Paper Co. arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

111.     Whiting Paper Co. was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Whiting Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

112.     Whiting Paper Co. is the current owner and operator of a facility, the Whiting Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

113.    Papermaking activities conducted by Glatfelter at the Glatfelter Mill resulted in the release of PCBs into the Lower Fox River Site, both directly and through a paper mill sludge landfill used by Glatfelter. As a result, Glatfelter arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

114.    Glatfelter was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Glatfelter Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

115.    Glatfelter is the current owner of a facility, the Glatfelter Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

116.    Papermaking activities conducted by Menasha at the Menasha Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site. As a result, Menasha arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

117.    Menasha was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Menasha Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

118.    Papermaking activities conducted by Green Bay Packaging at the Green Bay Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site. As a result, Green Bay Packaging arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility

containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

119. Green Bay Packaging was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Green Bay Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

120. Green Bay Packaging is the current owner and operator of a facility, the Green Bay Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

121. Papermaking activities conducted by International Paper at the International Paper Mills resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site. As a result, International Paper arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

122. International Paper was a person who at the time of disposal of a hazardous substance owned or operated facilities, the International Paper Mills, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

123. Leicht was a person who at the time of disposal of a hazardous substance owned or operated a facility at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

124. Casting activities conducted by Neenah Foundry at the Neenah Foundry Plant resulted in the release of PCBs, either directly, indirectly, or through a municipal

wastewater treatment plant, into the Lower Fox River Site. As a result, Neenah Foundry arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

125.    Neenah Foundry was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Neenah Foundry Plant, at which hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

126.    Neenah Foundry is the current owner and operator of a facility, the Neenah Foundry Plant, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

127.    Papermaking activities conducted by Newpage at the Newpage Mills resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site. As a result, Newpage arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

128.    Newpage was a person who at the time of disposal of a hazardous substance owned or operated facilities, the Newpage Mills, at which hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

129.    Newpage is the current owner and operator of a facility, the Kimberly Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

130.    Papermaking activities conducted by Procter & Gamble at the Charmin Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment

plant, into the Lower Fox River Site. As a result, Procter & Gamble arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

131. Procter & Gamble was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Charmin Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

132. Procter & Gamble is the current owner and operator of a facility, the Charmin Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

133. Electric utility operations conducted by WPS at the WPS Utility Operations resulted in the release of PCBs into the Lower Fox River Site. As a result, WPS arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

134. WPS was a person who at the time of disposal of a hazardous substance owned or operated a facility, the WPS Utility Operations, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

135. WPS is the current owner and operator of a facility, the WPS Utility Operations, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

136. Municipal wastewater treatment operations at the Appleton POTW resulted in the release of PCBs into the Lower Fox River Site. As a result, City of Appleton arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

137.     City of Appleton was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Appleton POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

138.     City of Appleton is the current owner and operator of a facility, the Appleton POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

139.     Municipal wastewater treatment operations at the De Pere POTW resulted in the release of PCBs into the Lower Fox River Site. As a result, City of De Pere arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

140.     City of De Pere was a person who at the time of disposal of a hazardous substance owned or operated a facility, the De Pere POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

141.     City of De Pere is the current owner and operator of a facility, the De Pere POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

142.     City of Green Bay was a person who at the time of disposal of a hazardous substance owned a facility, the Bay Port Disposal Site, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

143.     City of Green Bay is a current owner of a facility, the Bay Port Disposal Site, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

144.     Municipal wastewater treatment operations at the Kaukauna POTW resulted in the release of PCBs into the Lower Fox River Site. As a result, City of Kaukauna arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a

facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

145.    City of Kaukauna was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Kaukauna POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

146.    Brown County's management of the Bay Port Disposal Site and Renard Isle landfill operations resulted in the release of PCBs into the Lower Fox River Site.  As a result, Brown County arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

147.    Brown County was a person who at the time of disposal of a hazardous substance owned a facility, Renard Isle, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

148.    Brown County is the current owner of a facility, Renard Isle, and a current owner of another facility, the Bay Port Disposal Site, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

149.    Municipal wastewater treatment operations at the Green Bay MSD POTW resulted in the release of PCBs into the Lower Fox River Site.  As a result, Green Bay MSD arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

150.     Green Bay MSD was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Green Bay MSD POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

151.     Green Bay MSD is the current owner and operator of a facility, the Green Bay MSD POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

152.     Municipal wastewater treatment operations at the Heart of the Valley POTW resulted in the release of PCBs into the Lower Fox River Site.  As a result, Heart of the Valley MSD arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

153.     Heart of the Valley MSD was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Heart of the Valley POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. §9607(a)(2).

154.     Heart of the Valley MSD is the current owner and operator of a facility, the Heart of the Valley POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

155.     Municipal wastewater treatment operations at the Neenah-Menasha POTW resulted in the release of PCBs into the Lower Fox River Site.  As a result, Neenah-Menasha SC arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. §9607(a)(3).

156.     Neenah-Menasha SC was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Neenah-Menasha POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. §9607(a)(2).

157.     Neenah-Menasha SC is the current owner and operator of a facility, the Neenah-Menasha POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

158.     Municipal wastewater treatment operations at the Kimberly POTW resulted in the release of PCBs into the Lower Fox River Site.  As a result, Village of Kimberly arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. §9607(a)(3).

159.     Village of Kimberly was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Kimberly POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. §9607(a)(2).

160.     Municipal wastewater treatment operations at the Wrightstown POTW resulted in the release of PCBs into the Lower Fox River Site.  As a result, Village of Wrightstown arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. §9607(a)(3).

161.     Village of Wrightstown was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Wrightstown POTW, at which such

hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. §9607(a)(2).

162. Village of Wrightstown is the current owner and operator of a facility, the Wrightstown POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

163. PCBs have been released at and from the facilities identified above, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

164. In connection with these releases of PCBs from the facilities identified above, API and NCR have paid and will continue to pay costs for necessary response actions at the Lower Fox River Site consistent with the National Contingency Plan, within the meaning of Section 101(31) of CERCLA, 42 U.S.C. § 9601(31) ("Lower Fox River Costs"), and natural resource damages.

165. Defendants are liable for the Lower Fox River Costs and damages paid to date by API and NCR, and consequently API and NCR are entitled to recover these costs and damages from Defendants.

166. Alternatively, API and NCR have paid more than API/NCR's allocable share of the Lower Fox River Costs and damages paid to date. API and NCR request that the Court determine the parties' proper allocable shares with respect to Lower Fox River Costs and damages and determine that Defendants are liable to API and NCR for those Lower Fox River Costs and damages paid by each of API and NCR that are in excess of API/NCR's allocable share and that are properly attributable to Defendants.

167.     Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(l), API and NCR have provided a copy of this Fourth Amended Complaint to the Attorney General of the United States and the Administrator of USEPA.

168.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), API and NCR are entitled to recover interest on the Lower Fox River Costs and damages they have paid or may pay in the future.

## COUNT II – CLAIM UNDER CERCLA § 113

169.     API and NCR reallege and incorporate by reference paragraphs 1 through 168 as if fully set forth herein.

170.     Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), authorizes any person to seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

171.     API and NCR have reimbursed the United States and the State of Wisconsin for amounts greater than API/NCR's allocable share of the Lower Fox River Costs and damages paid to date.  API and NCR also have made other payments relating to Lower Fox River Costs and damages that are greater than API/NCR's allocable share of Lower Fox River Costs and damages.  Defendants are liable for those Lower Fox River Costs and damages paid by each of API and NCR that are in excess of API/NCR's allocable share and that are properly attributable to Defendants.

172.     Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(l), API and NCR have provided a copy of this Fourth Amended Complaint to the Attorney General of the United States and the Administrator of USEPA.

173.    Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), API and NCR are entitled to recover interest on the Lower Fox River Costs and damages they have paid and will pay in the future in excess of API/NCR's allocable share.

## <u>COUNT III – CLAIM FOR DECLARATORY RELIEF</u>

174.    API and NCR reallege and incorporate by reference paragraphs 1 through 173 as if fully set forth herein.

175.    Through various letters and most recently the Order to implement the remedy set forth in the 2007 Amended ROD, the United States, the State of Wisconsin and the natural resource damages trustees have demanded that API, NCR and other potentially responsible parties fund the response work and natural resource damages projects to be undertaken at the Lower Fox River Site.

176.    Defendants Glatfelter and Menasha have refused to acknowledge their fair and reasonable share for response costs and damages arising out of the Lower Fox River Contamination.  Many of the other defendants have refused to acknowledge their liability to API and NCR for response costs and damages arising out of the Lower Fox River Contamination. Thus, an actual, substantial, and legal controversy has arisen and now exists between API and NCR, on the one hand, and Defendants, on the other, with regard to responsibility for the Lower Fox River Costs and damages and how these should be allocated among the parties.  The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

177.    Absent a judicial declaration setting forth the parties' rights and obligations, including the appropriate allocable shares under CERCLA, a multiplicity of actions

may result, and API and NCR may be obligated in the future to pay costs and damages that, under CERCLA, are in fact the responsibility of Defendants.

178.    For these reasons, API and NCR seek a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and Section 2201 of the Judicial Code, 28 U.S.C. § 2201, allocating Lower Fox River Costs and damages among API/NCR, on the one hand, and Defendants, on the other, and holding Defendants liable for that share of Lower Fox River Costs and damages allocated to them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Appleton Papers Inc. and NCR Corporation respectfully request that the Court enter judgment in favor of API and NCR and against Defendants as follows:

(1)    Awarding API and NCR a declaratory judgment determining API/NCR's allocable share, on the one hand, and Defendants' shares, on the other, for Lower Fox River Costs and damages, determining that Defendants are liable for those costs and damages that are allocable to Defendants, and holding that these determinations will be binding on any subsequent action or actions to recover further response costs or damages;

(2)    Awarding API and NCR recovery against Defendants for the Lower Fox River Costs and damages paid each by API and by NCR, with interest;

(3)    Awarding API and NCR contribution against Defendants for Lower Fox River Costs and damages paid each by API and by NCR that are allocable to Defendants, with interest; and

(4)    Granting API and NCR such other legal and equitable relief as the Court deems just, proper, or necessary.

Respectfully Submitted,

APPLETON PAPERS INC.

/s/ Michael L. Hermes
By: One of Its Attorneys


NCR CORPORATION

/s/ Kathleen L. Roach
By: One of Its Attorneys


Counsel for Appleton Papers Inc.:
Michael L. Hermes (Wisconsin Bar No. 1019623)
Metzler, Timm, Treleven & Hermes, S.C.
222 Cherry Street
Green Bay, Wisconsin 54301
(920) 435-9393
Fax: (920) 435-8866

Counsel for NCR Corporation:
J. Andrew Schlickman (Illinois Bar No. 3122104)
Kathleen L. Roach (Illinois Bar No. 6191432)
Evan Westerfield (Illinois Bar No. 6217037)
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
Fax: (312) 853-7036

J. Ric Gass (Wisconsin Bar No. 1011998)
Gass Weber Mullins LLC
309 North Water Street
Milwaukee, Wisconsin 53202
(414) 224-7697
Fax: (414) 224-6116

Dated: June 11, 2008

| | | |
|---|---|---|
| APPLETON PAPERS INC. and | ) | |
| NCR CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-CV-00016-WCG |
| | ) | |
| GEORGE A. WHITING PAPER COMPANY, | ) | |
| P. H. GLATFELTER COMPANY, | ) | |
| MENASHA CORPORATION, | ) | |
| GREEN BAY PACKAGING INC., | ) | |
| INTERNATIONAL PAPER COMPANY, | ) | |
| LEICHT TRANSFER & STORAGE COMPANY, | ) | |
| NEENAH FOUNDRY COMPANY, | ) | |
| NEWPAGE WISCONSIN SYSTEM INC., | ) | |
| THE PROCTER & GAMBLE PAPER | ) | |
| PRODUCTS COMPANY, | ) | |
| WISCONSIN PUBLIC SERVICE CORP., | ) | |
| CITY OF APPLETON, | ) | |
| CITY OF DE PERE, | ) | |
| CITY OF GREEN BAY, | ) | |
| CITY OF KAUKAUNA, | ) | |
| BROWN COUNTY, | ) | |
| GREEN BAY METROPOLITAN | ) | |
| SEWERAGE DISTRICT, | ) | |
| HEART OF THE VALLEY METROPOLITAN | ) | |
| SEWERAGE DISTRICT, | ) | |
| NEENAH-MENASHA SEWERAGE | ) | |
| COMMISSION, | ) | |
| VILLAGE OF KIMBERLY, and | ) | |
| VILLAGE OF WRIGHTSTOWN, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2008, I electronically filed **Plaintiffs' Fourth Amended**

**Complaint** using the ECF system, which will send notification of such filing to: Philip Munroe

at DiRenzo & Bomier LLC, pmunroe@direnzollc.com; Scott Fleming at Weiss Berzowski Brady

LLP, sbf@wbb-law.com; David Mandelbaum at Ballard Spahr Andrews & Ingersoll, LLP,

mandelbaum@ballardspahr.com; Marc Davies at Ballard Spahr Andrews & Ingersoll, LLP,

davies@ballardspahr.com; Ronald Varnum at Ballard Spahr Andrews & Ingersoll, LLP,

varnumr@ballardspahr.com; Jennifer Simon at Ballard Spahr Andrews & Ingersoll, LLP,

simonj@ballardspahr.com; Sabrina Mizrachi at Ballard Spahr Andrews & Ingersoll, LLP,

mizrachis@ballardspahr.com; Mark Feldmann at Menn Law Firm, Ltd.,

mark-feldmann@mennlaw.com; Joseph Beisenstein at Menn Law Firm, Ltd.,

joseph-beisenstein@mennlaw.com; Jacy T. Rock at Faegre & Benson LLP, jrock@faegre.com;

Colin Deihl at Faegre & Benson LLP, cdeihl@faegre.com; Delmar Ehrich at Faegre & Benson

LLP, dehrich@faegre.com; David Edquist at von Briesen & Roper, s.c.,

dedquist@vonbriesen.com; Christopher Riordan at von Briesen & Roper, s.c.,

criordan@vonbriesen.com; Patrick Wells at von Briesen & Roper, s.c., pwells@vonbriesen.com;

Russell Wilson at Ruder Ware, rwilson@ruderware.com; Linda Benfield at Foley & Lardner

LLP, lbenfield@foley.com; Sarah Slack at Foley & Lardner LLP, sslack@foley.com; Charles M.

Gering at Foley & Lardner LLP, cgering@foley.com; Arthur Radke at Dykema Gossett PLLC,

aradke@dykema.com; Michelle Gale at Dykema Gossett PLLC, mgale@dykema.com; Joseph

Basta at Dykema Gossett PLLC, jbasta@dykema.com; Daniel Murray at Johnson & Bell, Ltd.,

murrayd@jbltd.com; John Cermak, Jr. at Baker & Hostetler LLP, jcermak@bakerlaw.com;

Sonja Inglin at Baker & Hostetler LLP, singlin@bakerlaw.com; Timothy Anderson at Remley &

Sensenbrenner, S.C., tanderson@remleylaw.com; Thomas O'Donnell at Calfee Halter &

Griswold LLP, todonnell@calfee.com; William Coughlin at Calfee Halter & Griswold LLP,

wcoughlin@calfee.com; Randall Stone at U.S. Department of Justice, randall.stone@usdoj.gov;

Michael Hermes at Metzler, Timm, Treleven & Hermes, S.C., mhermes@mtthlaw.com; J. Ric

Gass at Gass Weber Mullins LLC, gass@gasswebermullins.com.


NCR CORPORATION


s/ Kathleen L. Roach
By: One of Its Attorneys


J. Andrew Schlickman (Illinois Bar No. 3122104)
Kathleen L. Roach (Illinois Bar No. 6191432)
Evan Westerfield (Illinois Bar No. 6217037)
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
Fax: (312) 853-7036