IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. and
NCR CORPORATION,

                          Plaintiffs,

v.                                              DEFENDANT LEICHT TRANSFER &
                                                STORAGE COMPANY'S
                                                REITERATED MOTION TO DISMISS
GEORGE A. WHITING PAPER COMPANY,                COUNTS I AND III OF PLAINTIFFS'
P.H. GLATFELTER COMPANY,                        THIRD, FOURTH AND FIFTH
MENASHA CORPORATION,                            AMENDED COMPLAINTS AND
GREEN BAY PACKAGING, INC.,                      ANSWERS IN THE ALTERNATIVE TO
INTERNATIONAL PAPER COMPANY,                    PLAINTIFFS' THIRD, FOURTH, AND
LEICHT TRANSFER & STORAGE COMPANY,              FIFTH COMPLAINTS, AFFIRMATIVE
NEENAH FOUNDRY COMPANY,                         DEFENSES AND COUNTERCLAIM
NEWPAGE WISCONSIN SYSTEM INC.,
THE PROCTER & GAMBLE PAPER PRODUCTS             Case No. 08-CV-00016-WCG
COMPANY,
WISCONSIN PUBLIC SERVICE CORP.,
CITY OF APPLETON,
CITY OF DE PERE,
CITY OF GREEN BAY,
CITY OF KAUKAUNA,
BROWN COUNTY,
GREEN BAY METROPOLITAN SEWERAGE
DISTRICT,
HEART OF THE VALLEY METROPOLITAN
SEWERAGE DISTRICT,
NEENAH-MENASHA SEWERAGE
COMMISSION,
VILLAGE OF KIMBERLY,
VILLAGE OF WRIGHTSTOWN,
WTM I COMPANY, and
U.S. PAPER MILLS CORPORATION,

                          Defendants.

        Defendant Leicht Transfer & Storage Company (formally known as Leicht Storage &

Transfer Co.) ("Leicht"), by its attorneys, Ruder Ware, L.L.S.C., reiterates its pending Motion to

Dismiss and, in the alternative, answers Plaintiffs' Third, Fourth, and Fifth Amended Complaints ("Complaint").

## MOTION TO DISMISS COUNTS I AND III

Leicht has previously filed its Motion to Dismiss Counts I and III of Plaintiffs' Third Amended Complaint and its accompanying Memorandum in Support of Motion to Dismiss (Dkt. No. 104). That motion is pending. Leicht reiterates its pending Motion to Dismiss Counts I and III and its Memorandum in Support of Motion to Dismiss Against Counts I and III of Plaintiffs' Third, Fourth and Fifth Amended Complaints.

## ANSWER AND AFFIRMATIVE DEFENSES IN THE ALTERNATIVE

In the alternative to its pending Motion to Dismiss, Leicht makes this answer to the allegations of the Plaintiffs' Third, Fourth and Fifth Amended Complaints.

### Introduction

1/1/1 This civil action is brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 et seq. ("CERCLA"), also known as Superfund. It concerns the allocation of costs and damages arising out of the polychlorinated biphenyl ("PCB") contamination of the Lower Fox River and Green Bay in Wisconsin ("Lower Fox River Contamination").

**1/1/1**[1] Answering paragraph 1, admits the allegations.

2/2/2 Appleton Papers Inc. ("Appleton" or "API") and NCR Corporation ("NCR") (collectively, the "Plaintiffs") have been the leaders among the responsible parties in working with the U.S. Environmental Protection Agency ("USEPA") and the Wisconsin Department of

---

[1] Where answering paragraphs are designated above by three sets of numbers, the first set of numbers refers to the Third Amended Complaint, the second set to the Fourth Amended Complaint, and the third set refers to the Fifth Amended Complaint.

Natural Resources ("WDNR") (together, the "Agencies") to address and remediate the Lower Fox River Contamination. As set forth below in more detail, API and NCR have provided the Agencies with critical funding to complete their investigations of the Lower Fox River Contamination and their evaluations of cleanup options. Also, NCR has worked with another responsible party – Fort James Operating Company – to conduct the design of the remedy selected by the Agencies, and has worked with yet another responsible party – U.S. Paper Mills Corporation – to undertake the first phase of the remedial work in the Lower Fox River, and API has contributed both money and support to these efforts. In addition, API and NCR have made substantial payments to the trustees for natural resource damages to allow them to implement various restoration projects even before the design of the remedy is complete. The amounts API and NCR have spent on these activities are well in excess of their responsibility for this work.

**2/2/2** Answering paragraph 2, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

3/3/3 The purpose of this lawsuit is to allocate the equitable shares of the cleanup costs and natural resource damages associated with the Lower Fox River Contamination, and to require Defendants and other responsible parties to pay for the upcoming remedial work and natural resource damages activities in accordance with their allocated shares. Altogether, there are in excess of two dozen parties responsible for the Lower Fox River Contamination. API and NCR have entered into tolling and standstill agreements with many of the responsible parties. As the various tolling and standstill agreements expire, API and NCR will seek to join other parties to this action.

**3/3/3** Answering paragraph 3, admits the allegation that the purpose of this lawsuit is to allocate the equitable shares of cleanup costs and natural resource damages associated with PCB

contamination in the Lower Fox River, but denies the allegation that Leicht is liable for any costs or damages. Further answering paragraph 3, alleges lack of knowledge or information sufficient to confirm or deny the remaining allegations, and, therefore, denies the same.

4/4/4 The responsible parties disagree about the size of the other parties' shares of the Lower Fox River cleanup costs and damages. Also, the vast majority of the cleanup costs for the Lower Fox River have yet to be incurred. Accordingly, in this Third [Fourth and Fifth] Amended Complaint API and NCR seek a declaratory judgment allocating the API/NCR share of future cleanup costs and damages, as well as the shares of Defendants and all other parties that are added to this action. API and NCR also seek judgment against Defendants and all other parties that are added to this action for the cleanup costs and damages that each of API and NCR have incurred to date, allocated in accordance with such shares.

**4/4/4** Answering paragraph 4, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

## JURISDICTION

5/5/5 This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1331 (federal question).

**5/5/5** Answering paragraph 5, admits the allegations.

6/6/6 Venue is proper in this District pursuant to Section 113(b) CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the events giving rise to the claims stated in the Complaint, including the alleged releases of hazardous substances, occurred in this District, and the Lower Fox River is located entirely within this District. Additionally, Defendants conducted business or operations within this District at times relevant to the events described in the Complaint.

**6/6/6**   Answering paragraph 6, admits the allegations.

**PARTIES**

7/7/7   Plaintiff API is a Delaware corporation with its principal place of business in Appleton, Wisconsin.

**7/7/7**   Answering paragraph 7, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

8/8/8   Plaintiff NCR is a Maryland corporation with its principal place of business in Dayton, Ohio.

**8/8/8**   Answering paragraph 8, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

9/9/9   Defendant George A. Whiting Paper Company ("Whiting Paper Co.") is a Wisconsin corporation with its principal place of business in Menasha, Wisconsin.

**9/9/9**   Answering paragraph 9, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

10/10/10   Defendant P.H. Glatfelter Company is a Pennsylvania corporation with its principal place of business in York, Pennsylvania. P.H. Glatfelter Company is a successor to all relevant liabilities of Bergstrom Paper Company. P.H. Glatfelter and Bergstrom Paper Company shall be referred to collectively hereafter as "Glatfelter".

**10/10/10**   Answering paragraph 10, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

11/11/11   Defendant Menasha Corporation is a Wisconsin corporation with its principal place of business in Neenah, Wisconsin. Menasha Corporation is a successor to all

relevant liabilities of John Strange Paper Company. Menasha Corporation and John Strange Paper Company shall be referred to collectively hereafter as "Menasha".

**11/11/11**     Answering paragraph 11, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

12/12/12     Defendant Green Bay Packaging Inc. ("Green Bay Packaging") is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin.

**12/12/12**     Answering paragraph 12, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

13/13/13     Defendant International Paper Company is a New York corporation with its principal place of business in Memphis, Tennessee. International Paper Company is a successor to all relevant liabilities of Nicolet Paper Company and Thilmany Pulp and Paper. International Paper Company, Nicolet Paper Company and Thilmany Pulp & Paper shall be referred to collectively hereafter as "International Paper".

**13/13/13**     Answering paragraph 13, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

14/14/14     Defendant Leicht Transfer & Storage Company ("Leicht") is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin.

**14/14/14**     Answering paragraph 14, admits the allegations.

15/15/15     Defendant Neenah Foundry Company ("Neenah Foundry") is a Wisconsin corporation with its principal place of business in Neenah, Wisconsin.

**15/15/15**     Answering paragraph 15, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

16/16/16    Defendant Newpage Wisconsin System Inc. is a Wisconsin corporation with its principal place of business in Wisconsin Rapids, Wisconsin. Newpage Wisconsin System Inc. was formerly known as Stora Enso North America Corp. and is a successor to all relevant liabilities of Consolidated Papers, Inc. Newpage Wisconsin System Inc., Stora Enso North America Corp. and Consolidated Papers, Inc. shall be referred to collectively hereafter as "Newpage".

**16/16/16**    Answering paragraph 16, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

17/17/17    Defendant The Procter & Gamble Paper Products Company ("Procter & Gamble") is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

**17/17/17**    Answering paragraph 17, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

18/18/18    Defendant Wisconsin Public Service Corporation ("WPS") is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin.

**18/18/18**    Answering paragraph 18, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/19/19    Defendant City of Appleton is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Appleton, Wisconsin.

**---/19/19**[2]    Answering paragraph 19, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---

[2] Where answering paragraphs are designated by a blank followed by two sets of numbers, there is no such paragraph in the Third Amended Complaint; there are such paragraphs in the Fourth and Fifth Amended Complaints.

---/20/20        Defendant City of De Pere is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in De Pere, Wisconsin.

**---/20/20**        Answering paragraph 20, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/21/21        Defendant City of Green Bay is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Green Bay, Wisconsin.

**---/21/21**        Answering paragraph 21, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/22/22        Defendant City of Kaukauna is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Kaukauna, Wisconsin.

**---/22/22**        Answering paragraph 22, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/23/23        Defendant Brown County is a local county organized under the laws of the State of Wisconsin, with its principal place of business located in Brown County, Wisconsin.

**---/23/23**        Answering paragraph 23, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/24/24        Defendant Green Bay Metropolitan Sewerage District ("Green Bay MSD") is a publicly owned treatment works commissioned by the Brown County, Wisconsin, government.

**---/24/24**    Answering paragraph 24, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/25/25**    Defendant Heart of the Valley Metropolitan Sewerage District ("Heart of the Valley MSD") is a publicly owned treatment works commissioned by the Outagamie County, Wisconsin, government.

**---/25/25**    Answering paragraph 25, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/26/26**    Defendant Neenah-Menasha Sewerage Commission ("Neenah-Menasha SC") is a publicly owned treatment works commissioned by the governments of the Cities of Neenah and Menasha, Wisconsin.

**---/26/26**    Answering paragraph 26, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/27/27**    Defendant Village of Kimberly is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Kimberly, Wisconsin.

**---/27/27**    Answering paragraph 27, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/28/28**    Defendant Village of Wrightstown is a Wisconsin municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Wrightstown, Wisconsin.

**---/28/28**    Answering paragraph 28, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/29[3]     Defendant WTM I Company is a Delaware corporation with its principal

place of business in Las Vegas, Nevada. WTM I Company is a successor to all relevant

liabilities of Wisconsin Tissue Mills Inc. WTM I Company and Wisconsin Tissue Mills Inc.

shall be referred to collectively hereafter as "WTM I".

**---/---/29**     Answering paragraph 29, alleges lack of knowledge or information

sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

30.     Defendant U.S. Paper Mills Corp. is a Wisconsin corporation with its principal

place of business in De Pere, Wisconsin. U.S. Paper Mills Corp. is a successor to all relevant

liabilities of U.S. Paper Mills, Inc., U.S.P.M. Inc. and Sonoco-U.S. Mills, Inc. U.S. Paper Mills

Corp., U.S. Paper Mills, Inc., U.S.P.M. Inc. and Sonoco-U.S. Mills, Inc. shall be referred to

collectively as "U.S. Paper".

**---/---/30**     Answering paragraph 30, alleges lack of knowledge or information

sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

### GENERAL ALLEGATIONS

#### The Lower Fox River Site

19/29/31     The case concerns PCB contamination of the Lower Fox River and Green

Bay ("Lower Fox River Site"). The Lower Fox River Site runs 39 miles northeast from Lake

Winnebago until it discharges into Green Bay. WDNR has estimated that the sediments in the

Lower Fox River Site contain approximately 210,000 pounds of PCBs.

**19/29/31**     Answering paragraph 19/29/31, admits the allegation that the Complaint

purports to assert claims based on the alleged PCB contamination of the Lower Fox River and

---

[3] Where answering paragraphs are designated by two blanks followed by one set of numbers, there are no such
paragraphs in the Third and Fourth Amended Complaints; there are such paragraphs in the Fifth Amended
Complaint.

Green Bay. Further answering said paragraph, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

### Defendants' Releases

20/30/32    At all relevant times, Defendant Whiting Paper Co. owned and operated a paper mill in Menasha, Wisconsin (the "Whiting Mill"). During that time, PCBs were released from the Whiting Mill, either directly or through a municipal wastewater treatment plan, into the Lower Fox River Site.

**20/30/32**    Answering paragraph 20/30/32, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

21/31/33    At all relevant times, Defendant Glatfelter owned and operated a paper mill in Neenah, Wisconsin (the "Glatfelter Mill"). During that time, PCBs were released from the Glatfelter Mill into the Lower Fox River Site, both directly and through a paper mill sludge landfill used by Glatfelter.

**21/31/33**    Answering paragraph 21/31/33, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

22/32/34    At all relevant times, Defendant Menasha owned and operated a paperboard mill in Menasha, Wisconsin (the "Menasha Mill"). During that time, PCBs were released from the Menasha Mill into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**22/32/34**    Answering paragraph 22/32/34, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

23/33/35    At all relevant times, Green Bay Packaging owned and operated a paperboard mill in Green Bay, Wisconsin (the "Green Bay Mill"). During that time, PCBs were

released from the Green Bay Mill into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**23/33/35**    Answering paragraph 23/33/35, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

24/34/36    At all relevant times, International Paper owned and operated paper mills in DePere, Wisconsin (the "Nicolet Mill") and Kaukauna, Wisconsin (the "Thilmany Mill") (collectively, the "International Paper Mills"). During that time, PCBs were released from the International Paper Mills into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**24/34/36**    Answering paragraph 24/34/36, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

25/35/37    At all relevant times, Leicht owned and operated a warehousing and distribution center in Green Bay, Wisconsin, including trucking and transportation services. During that time, a Leicht truck ("Leicht truck") collided with a transformer on property at 500 Day Street in Green Bay, Wisconsin ("Day Street Property"), and PCBs were released directly or indirectly into the Lower Fox River Site.

**25/35/37**    Answering paragraph 25/35/37, admits that Leicht owned and operated a warehouse distribution center in Green Bay, Wisconsin, including trucking and transportation services. Further answering said paragraph, admits that a Leicht truck collided with a transformer at a property located on Day Street in Green Bay. Further answering said paragraph, affirmatively alleges that the property was the American Can plant and the day was November 10, 1973. Further answering said paragraph, alleges lack of knowledge or information as to the

truth of the allegation that PCBs were released directly or indirectly into the Lower Fox River Site, and, therefore, denies that allegation.

26/36/38    At all relevant times, Neenah Foundry owned and operated a foundry in Neenah, Wisconsin (the "Neenah Foundry Plant"). During that time, PCBs were released from the Neenah Foundry Plant into the Lower Fox River Site, either directly, indirectly, or through a municipal wastewater treatment plant.

**26/36/38**    Answering paragraph 26/36/38, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

27/37/39    At all relevant times, Newpage owned and operated a pulp and paper mill in Appleton, Wisconsin (the "Interlake Mill"), and a paper mill in Kimberly, Wisconsin (the "Kimberly Mill") (collectively, the "Newpage Mills"). During that time, PCBs were released from the Newpage Mills into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**27/37/39**    Answering paragraph 27/37/39, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

28/38/40    At all relevant times, Procter & Gamble owned and operated a paper mill in Green Bay, Wisconsin (the "Charmin Mill"). During that time, PCBs were released from the Charmin Mill into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**28/38/40**    Answering paragraph 28/38/40, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

29/39/41    At all relevant times, WPS had generation and transmission operations ("WPS Utility Operations") near the Lower Fox River Site, including a fly ash landfill operation

and the Pulliam generating station.  During that time, PCBs were released from the WPS Utility Operations directly into the Lower Fox River Site.

**29/39/41**    Answering paragraph 29/39/41, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/40/42    At all relevant times, City of Appleton owned and operated a municipal wastewater treatment plant in Appleton, Wisconsin (the "Appleton POTW").  During that time, PCBs were released from the Appleton POTW directly into the Lower Fox River Site.

**---/40/42**    Answering paragraph ---/40/42, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/41/43    At all relevant times, City of De Pere owned and operated a municipal wastewater treatment plant in De Pere, Wisconsin (the "De Pere POTW").  During that time, PCBs were released from the De Pere POTW directly into the Lower Fox River Site.

**---/41/43**    Answering paragraph ---/41/43, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/42/44    At all relevant times, City of Green Bay owned a landfill disposal site in Green Bay, Wisconsin (the "Bay Port Disposal Site").  During that time, PCBs were released from the Bay Port Disposal Site directly into the Lower Fox River Site.

**---/42/44**    Answering paragraph ---/42/44, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/43/45    At all relevant times, City of Kaukauna owned and operated a municipal wastewater treatment plant in Kaukauna, Wisconsin (the "Kaukauna POTW").  During that time, PCBs were released from the Kaukauna POTW directly into the Lower Fox River Site.

**---/43/45**     Answering paragraph ---/43/45, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/44/46**     At all relevant times, Brown County owned a landfill disposal site in the bay of Green Bay, Wisconsin ("Renard Isle"). During that time, PCBs were released from Renard Isle directly into the Lower Fox River Site.

**---/44/46**     Answering paragraph ---/44/46, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/45/47**     At all relevant times, Green Bay MSD owned and operated a municipal wastewater treatment plant in Green Bay, Wisconsin (the "Green Bay MSD POTW"). During that time, PCBs were released from the Green Bay MSD POTW directly into the Lower Fox River Site.

**---/45/47**     Answering paragraph ---/45/47, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/46/48**     At all relevant times, Heart of the Valley MSD owned and operated a municipal wastewater treatment plant in Kaukauna, Wisconsin (the "Heart of the Valley POTW"). During that time, PCBs were released from the Heart of the Valley POTW directly into the Lower Fox River Site.

**---/46/48**     Answering paragraph ---/46/48, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/47/49**     At all relevant times, Neenah-Menasha SC owned and operated a municipal wastewater treatment plant in Menasha, Wisconsin (the "Neenah-Menasha POTW"). During that time, PCBs were released from the Neenah-Menasha POTW directly into the Lower Fox River Site.

**---/47/49**     Answering paragraph ---/47/49, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/48/50**     At all relevant times, Village of Kimberly owned and operated a municipal wastewater treatment plant in Kimberly, Wisconsin (the "Kimberly POTW"). During that time, PCBs were released from the Kimberly POTW directly into the Lower Fox River Site.

**---/48/50**     Answering paragraph ---/48/50, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/49/51     At all relevant times, Village of Wrightstown owned and operated a municipal wastewater treatment plant in Wrightstown, Wisconsin (the "Wrightstown POTW"). During that time, PCBs were released from the Wrightstown POTW directly into the Lower Fox River Site.

**---/49/51**     Answering paragraph ---/49/51, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/52     At all relevant times, Defendant WTM I owned and operated a tissue paper mill in Menasha, Wisconsin (the "WTM Mill"). During that time, PCBs were released from the WTM Mill into the Lower Fox River Site, either directly or through a municipal wastewater treatment plant.

**---/---/52**     Answering paragraph ---/---/52, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/53     At all relevant times, Defendant U.S. Paper owned and operated a paperboard mill located in De Pere, Wisconsin (the "U.S. Paper Mill"). During that time, PCBs were released from the U.S. Paper Mill into the Lower Fox River Site, either directly or through

a municipal wastewater treatment plant. In addition, Defendant U.S. Paper currently owns and operates the Menasha Mill.

‑‑‑/‑‑‑/53        Answering paragraph ‑‑‑/‑‑‑/53, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

### Cleanup Work and Natural Resource Damages at the Lower Fox River Site

30/50/54        On November 13, 2007, USEPA issued a unilateral administrative order (the "Order"), pursuant to 42 U.S.C. § 9606(a), which requires API, NCR, Glatfelter, Menasha and others to conduct certain remedial actions in the downriver part of the Lower Fox River Site. Only eight companies were identified as respondents by USEPA in the Order.

30/50/54        Answering paragraph 30/50/54, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

31/51/55        The Order comes after various parties have been working for years to address the Lower Fox River Contamination. In the mid-1990s, API, NCR, Glatfelter, WTM I Company, U.S. Paper Mills Corporation, Fort Howard Company and Riverside Paper Corporation joined together to form the Fox River Group. The Fox River Group, among other activities, identified and evaluated methods to address environmental issues at the Lower Fox River Site.

31/51/55        Answering paragraph 31/51/55, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

32/52/56        In January 1997, the members of the Fox River Group signed an agreement with the State of Wisconsin ("State Agreement") to, among other things, spend a total of $10,000,000 assessing and responding to the Lower Fox River Contamination and implementing certain natural resource damages restoration projects. Pursuant to the State

Agreement, the members of the Fox River Group paid for and supervised projects that removed over 2,000 pounds of PCBs from the Lower Fox River Site.

**32/52/56**    Answering paragraph 32/52/56, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

33/53/57    The members of the Fox River Group performed this work between 1997 and 2001 and paid in excess of $20,000,000 in costs and damages, a substantial portion of which were borne by API and NCR. At this time, the obligations imposed by the State Agreement have been completed. The State of Wisconsin formally terminated the State Agreement in July 2001.

**33/53/57**    Answering paragraph 33/53/57, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

34/54/58    On December 10, 2001, a Consent Decree involving API, NCR, the United States and the State of Wisconsin was approved and entered by the Court ("2001 Consent Decree"). Under the terms of the 2001 Consent Decree, API and NCR agreed to provide $41,500,000 over four years to fund, among other things, response action and natural resource damages restoration projects at the Lower Fox River Site that were consistent with the National Contingency Plan and CERCLA, and to reimburse natural resource damages trustees for past assessment costs. In December 2005, API and NCR agreed to extend the 2001 Consent Decree for an additional year to allow funding of certain additional natural resource damage restoration projects and assessment costs ("2005 Consent Decree Extension"). API has paid in excess of $23 million and NCR has paid in excess of $19 million pursuant to the 2001 Consent Decree and the 2005 Consent Decree Extension for response action projects and natural resource damages at the Lower Fox River Site.

**34/54/58**         Answering paragraph 34/54/58, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

35/55/59         In January 2003, after many years of study, WDNR and USEPA released a Record of Decision outlining in broad terms the remedial action to be conducted in the upriver portion of the Lower Fox River Site ("Upriver ROD"). The remedy selected in the Upriver ROD consisted of a combination of dredging sediments with PCB concentrations exceeding 1 part per million and monitoring sediments with lower levels of PCBs.

**35/55/59**         Answering paragraph 35/55/59, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

36/56/60         In July 2003, WDNR and USEPA released a Record of Decision outlining in broad terms the remedial action to be conducted in the downriver portion of the Lower Fox River Site ("Downriver ROD"). The remedy selected in the Downriver ROD consisted primarily of dredging sediments with PCB concentrations exceeding 1 part per million and monitoring sediments with lower levels of PCBs at the mouth of the river at Green Bay.

**36/56/60**         Answering paragraph 36/56/60, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

37/57/61         In March 2004, NCR and Fort James Operating Company entered into an Administrative Settlement Agreement and Order on Consent with the State of Wisconsin and the United States, pursuant to which NCR and Fort James Operating Company agreed to perform the work necessary to design the remedy outlined in the Downriver ROD, and API has contributed both money and support to the design effort. As of the filing of this Third Amended Complaint[4], API has paid in excess of $1.7 million and NCR has paid approximately $1.4 million pursuant to

---

[4] The Fourth and Fifth Complaints state "As of March 31, 2008… ."

this Administrative Settlement Agreement and Order on Consent alone for response actions to design the Downriver ROD.

**37/57/61**    Answering paragraph 37/57/61, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

38/58/62    In April 2006, NCR and U.S. Paper Mills Corporation entered into a Consent Decree with the United States and the State of Wisconsin to implement Phase I of the downriver remedy ("2006 Phase 1 Consent Decree"), and API has contributed both money and support to this effort. To date[5], API has incurred in excess of $4.6 million in costs and NCR has incurred in excess of $3.8 million in costs pursuant to the 2006 Phase 1 Consent Decree. API and NCR further estimate that over the next year they will incur an additional $1.5 million and $1.2 million, respectively, to fulfill the obligations under the 2006 Phase 1 Consent Decree.

**38/58/62**    Answering paragraph 38/58/62, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

39/59/63    In June 2007, the United States and the State of Wisconsin issued an amendment to the 2003 Downriver ROD ("2007 Amended ROD"). Very little if any of the work required under the 2007 Amended ROD has been performed to date, and accordingly few of the costs of the 2007 Amended ROD have been incurred yet.[6] The Order recently issued by USEPA requires the eight named respondents to complete the design of and then implement the remedy set forth in the 2007 Amended ROD. API/NCR expect that they will be required to pay considerably more than they have paid to date in order to comply with the Order.

**39/59/63**    Answering paragraph 39/59/63, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---

[5] The Fourth and Fifth Complaint states "As of March 31, 2008, ..."
[6] This sentence appears only in the Third Amended Complaint.

40/60/64     USEPA has taken the position that remedial action was and is necessary at the Lower Fox River Site due to the potential for certain persons, such as recreational anglers and high-intake fish consumers, to experience adverse health effects.  Fish consumption advisories have been in effect at the Lower Fox River for thirty years.

**40/60/64**     Answering paragraph 40/60/64, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

41/61/65     USEPA has determined that the actions that have been taken and are being taken by API and NCR at the Lower Fox River Site were and are consistent with the National Contingency Plan.

**41/61/65**     Answering paragraph 41/61/65, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

42/62/66     In addition to those costs and damages paid or to be paid pursuant to the State Agreement, the 2001 Consent Decree, the 2005 Consent Decree Extension, the Administrative Settlement Agreement and Order on Consent and the 2006 Phase 1 Consent Decree, API and NCR have paid additional costs, including the costs of identifying other responsible parties, conducting risk assessments, funding natural resource damages projects, and otherwise investigating and responding to the Lower Fox River Contamination.

**42/62/66**     Answering paragraph 42/62/66, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

## **COUNT I – CLAIM UNDER CERCLA § 107**

Leicht has filed a Motion to Dismiss Counts I and III of the Complaint.  Leicht answers Count I in the alternative as follows:

43/63/67    API and NCR reallege and incorporate by reference paragraphs 1 through 42/62/66 as if fully set forth herein.

**43/63/67**    Answering paragraph 43/63/67, realleges and incorporates herein by reference admissions and denials pleaded in answer to those paragraphs referenced in paragraph 43/63/67.

44/64/68    Pursuant to Section 107(a)(4)(B) and 107(a)(4)(C) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(B) and 9607(a)(4)(C), any person who is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), shall be liable for necessary response costs incurred by any other person consistent with the National Contingency Plan and for natural resource damages.

**44/64/68**    The allegations of paragraph 44/64/68 set forth a legal conclusion to which an answer is not required. Leicht denies that it is liable under the statute referenced in said paragraph.

45/65/69    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), makes liable, among others: (i) the current owner and operator of a facility; (ii) the owner or operator, at the time of disposal of hazardous substances, of a facility at which such hazardous substances were disposed of; and (iii) any person who, by contract, agreement or otherwise, arranged for disposal or treatment of hazardous substances at any facility containing such hazardous substances.

**45/65/69**    The allegations of paragraph 45/65/69 set forth a legal conclusion to which an answer is not required. Leicht denies that it is liable under the statute referenced in said paragraph.

46/66/70    The Lower Fox River Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**46/66/70**     Answering paragraph 46/66/70, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

47/67/71     The Whiting Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**47/67/71**     Answering paragraph 47/67/71, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

48/68/72     The Glatfelter Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**48/68/72**     Answering paragraph 48/68/72, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

49/69/73     The Menasha Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**49/69/73**     Answering paragraph 49/69/73, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

50/70/74     The Green Bay Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**50/70/74**     Answering paragraph 50/70/74, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

51/71/75     The International Paper Mills are each a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**51/71/75**     Answering paragraph 51/71/75, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

52/72/76 The Leicht truck, the Day Street Property and the transformer located thereon are each a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**52/72/76** Answering paragraph 52/72/76, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

53/73/77 The Neenah Foundry Plant is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**53/73/77** Answering paragraph 53/73/77, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

54/74/78 The Newpage Mills are each a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**54/74/78** Answering paragraph 54/74/78, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

55/75/79 The Charmin Mill is a "facility" within the meaning of Section 101(9) of CERCLA; 42 U.S.C. § 9601(9).

**55/75/79** Answering paragraph 55/75/79, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

56/76/80 The WPS Utility Operations are each a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**56/76/80** Answering paragraph 56/76/80, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/77/81 The Appleton POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/77/81**        Answering paragraph ---/77/81, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/78/82**        The De Pere POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/78/82**        Answering paragraph ---/78/82, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/79/83**        The Bay Port Disposal Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/79/83**        Answering paragraph ---/79/83, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/80/84**        The Kaukauna POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/80/84**        Answering paragraph ---/80/84, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/81/85**        Renard Isle is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/81/85**        Answering paragraph ---/81/85, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/82/86**        The Green Bay MSD POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/82/86**        Answering paragraph ---/82/86, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/83/87  The Heart of the Valley POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/83/87**  Answering paragraph ---/83/87, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/84/88  The Neenah-Menasha POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/84/88**  Answering paragraph ---/84/88, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/85/89  The Kimberly POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/85/89**  Answering paragraph ---/85/89, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/86/90  The Wrightstown POTW is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/86/90**  Answering paragraph ---/86/90, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/91  The WTM Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/---/91**  Answering paragraph ---/---/91, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/92  The U.S. Paper Mill is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

**---/---/92**     Answering paragraph ---/---/92, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

57/87/93     Defendant Whiting Paper Co. is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**57/87/93**     Answering paragraph 57/87/93, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

58/88/94     Defendant Glatfelter is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**58/88/94**     Answering paragraph 58/88/94, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

59/89/95     Defendant Menasha is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**59/89/95**     Answering paragraph 59/89/95, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

60/90/96     Defendant Green Bay Packaging is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**60/90/96**     Answering paragraph 60/90/96, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

61/91/97     Defendant International Paper is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**61/91/97**     Answering paragraph 61/91/97, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

62/92/98    Defendant Leicht is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**62/92/98**    Answering paragraph 62/92/98, admits the allegation.

63/93/99    Defendant Neenah Foundry is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**63/93/99**    Answering paragraph 63/93/99, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

64/94/100    Defendant Newpage is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**64/94/100**    Answering paragraph 64/94/100, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

65/95/101    Defendant Procter & Gamble is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**65/95/101**    Answering paragraph 65/95/101, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

66/96/102    Defendant WPS is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**66/96/102**    Answering paragraph 66/96/102, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/97/103    Defendant City of Appleton is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**---/97/103**    Answering paragraph ---/97/103, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/98/104     Defendant City of De Pere is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**---/98/104**     Answering paragraph ---/98/104, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/99/105     Defendant City of Green Bay is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**---/99/105**     Answering paragraph ---/99/105, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/100/106     Defendant City of Kaukauna is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**---/100/106**     Answering paragraph ---/100/106, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/101/107     Defendant Brown County is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**---/101/107**     Answering paragraph ---/101/107, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/102/108     Defendant Green Bay MSD is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**---/102/108**     Answering paragraph ---/102/108, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/103/109     Defendant Heart of the Valley MSD is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**---/103/109**     Answering paragraph ---/103/109, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/104/110     Defendant Neenah-Menasha SC is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**---/104/110**     Answering paragraph ---/104/110, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/105/111     Defendant Village of Kimberly is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**---/105/111**     Answering paragraph ---/105/111, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/106/112     Defendant Village of Wrightstown is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

**---/106/112**     Answering paragraph ---/106/112, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/113     Defendant WTM I is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

---/---/113    Answering paragraph ---/---/113, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/114    Defendant U.S. Paper is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

---/---/114    Answering paragraph ---/---/114, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

67/107/115    API is a "person" within the meaning of Sections 101(21) and 107(a)(4)(B) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a)(4)(B).

**67/107/115**    Answering paragraph 67/107/115, admits the allegation.

68/108/116    NCR is a "person" within the meaning of Sections 101(21) and 107(a)(4)(B) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a)(4)(B).

**68/108/116**    Answering paragraph 68/108/116, admits the allegation.

69/109/117    PCBs are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

**69/109/117**    Answering paragraph 69/109/117, admits the allegation.

70/110/118    Papermaking activities conducted by Whiting Paper Co. at the Whiting Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site. As a result, Whiting Paper Co. arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**70/110/118**    Answering paragraph 70/110/118, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

71/111/119    Whiting Paper Co. was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Whiting Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**71/111/119**    Answering paragraph 71/111/119, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

72/112/120    Whiting Paper Co. is the current owner and operator of a facility, the Whiting Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**72/112/120**    Answering paragraph 72/112/120, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

73/113/121    Papermaking activities conducted by Glatfelter at the Glatfelter Mill resulted in the release of PCBs into the Lower Fox River Site, both directly and through a paper mill sludge landfill used by Glatfelter.  As a result, Glatfelter arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**73/113/121**    Answering paragraph 73/113/121, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

74/114/122    Glatfelter was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Glatfelter Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**74/114/122**   Answering paragraph 74/114/122, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

75/115/123   Glatfelter is the current owner of a facility, the Glatfelter Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**75/115/123**   Answering paragraph 75/115/123, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

76/116/124   Papermaking activities conducted by Menasha at the Menasha Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site.  As a result, Menasha arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, U.S.C. § 9607(a)(3).

**76/116/124**   Answering paragraph 76/116/124, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

77/117/125   Menasha was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Menasha Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**77/117/125**   Answering paragraph 77/117/125, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

78/118/126    Papermaking activities conducted by Green Bay Packaging at the Green Bay Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site.  As a result, Green Bay Packaging arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**78/118/126**    Answering paragraph 78/118/126, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

79/119/127    Green Bay Packaging was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Green Bay Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**79/119/127**    Answering paragraph 79/119/127, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

80/120/128    Green Bay Packaging is the current owner and operator of a facility, the Green Bay Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**80/120/128**    Answering paragraph 80/120/128, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

81/121/129    Papermaking activities conducted by International Paper at the International Paper Mills resulted in the release of PCBs, either directly or through a municipal

wastewater treatment plant, into the Lower Fox River Site. As a result, International Paper arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**81/121/129**     Answering paragraph 81/121/129, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

82/122/130     International Paper was a person who at the time of disposal of a hazardous substance owned or operated facilities, the International Paper Mills, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**82/122/130**     Answering paragraph 82/122/130, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

83/123/131     Leicht was a person who at the time of disposal of a hazardous substance owned or operated a facility at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**83/123/131**     Answering paragraph 83/123/131, Leicht admits the allegation that it was a person as defined in CERCLA, but Leicht lacks knowledge or information sufficient to confirm or deny whether disposal within the meaning of CERCLA occurred as alleged in this paragraph, and, therefore, denies the same. Specifically, Leicht denies that any PCBs reached the Lower Fox River Site as alleged in this paragraph, and alleges alternatively that if any such PCBs did

reach the Lower Fox River Site, the amount was so small as to qualify for the *de micromis* liability exemption under Section 107(o) of CERCLA, 42 U.S.C. § 9607(o).

84/124/132    Casting activities conducted by Neenah Foundry at the Neenah Foundry Plant resulted in the release of PCBs, either directly, indirectly, or through a municipal wastewater treatment plant, into the Lower Fox River Site. As a result, Neenah Foundry arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**84/124/132**    Answering paragraph 84/124/132, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

85/125/133    Neenah Foundry was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Neenah Foundry Plant, at which hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**85/125/133**    Answering paragraph 85/125/133, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

86/126/134    Neenah Foundry is the current owner and operator of a facility, the Neenah Foundry Plant, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**86/126/134** Answering paragraph 86/126/134, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

87/127/135 Papermaking activities conducted by Newpage at the Newpage Mills resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site. As a result, Newpage arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**87/127/135** Answering paragraph 87/127/135, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

88/128/136 Newpage was a person who at the time of disposal of a hazardous substance owned or operated facilities, the Newpage Mills, at which hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**88/128/136** Answering paragraph 88/128/136, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

89/129/137 Newpage is the current owner and operator of a facility, the Kimberly Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**89/129/137** Answering paragraph 89/129/137, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

90/130/138     Papermaking activities conducted by Procter & Gamble at the Charmin Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site. As a result, Procter & Gamble arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**90/130/138**     Answering paragraph 90/130/138, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

91/131/139     Procter & Gamble was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Charmin Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**91/131/139**     Answering paragraph 91/131/139, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

92/132/140     Procter & Gamble is the current owner and operator of a facility, the Charmin Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**92/132/140**     Answering paragraph 92/132/140, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

93/133/141     Electric utility operations conducted by WPS at the WPS Utility Operations resulted in the release of PCBs into the Lower Fox River Site. As a result, WPS arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a

facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**93/133/141**    Answering paragraph 93/133/141, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

94/134/142    WPS was a person who at the time of disposal of a hazardous substance owned or operated a facility, the WPS Utility Operations, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**94/134/142**    Answering paragraph 94/134/142, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

95/135/143    WPS is the current owner and operator of a facility, the WPS Utility Operations, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**95/135/143**    Answering paragraph 95/135/143, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---136/144    Municipal wastewater treatment operations at the Appleton POTW resulted in the release of PCBs into the Lower Fox River Site.  As a result, City of Appleton arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**---/136/144**     Answering paragraph ---/136/144, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/137/145     City of Appleton was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Appleton POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**---/137/145**     Answering paragraph ---/137/145, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/138/146     City of Appleton is the current owner and operator of a facility, the Appleton POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**---/138/146**     Answering paragraph ---/138/146, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/139/147     Municipal wastewater treatment operations at the De Pere POTW resulted in the release of PCBs into the Lower Fox River Site.  As a result, City of De Pere arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**---/139/147**     Answering paragraph ---/139/147, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/140/148     City of De Pere was a person who at the time of disposal of a hazardous substance owned or operated a facility, the De Pere POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**---/140/148**     Answering paragraph ---/140/148, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/141/149     City of De Pere is the current owner and operator of a facility, the De Pere POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**---/141/149**     Answering paragraph ---/141/149, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/142/150     City of Green Bay was a person who at the time of disposal of a hazardous substance owned a facility, the Bay Port Disposal Site, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**---/142/150**     Answering paragraph ---/142/150, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/143/151     City of Green Bay is a current owner of a facility, the Bay Port Disposal Site, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**---/143/151**     Answering paragraph ---/143/151, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/144/152    Municipal wastewater treatment operations at the Kaukauna POTW resulted in the release of PCBs into the Lower Fox River Site. As a result, the City of Kaukauna arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**---/144/152**    Answering paragraph ---/144/152, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/145/153    City of Kaukauna was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Kaukauna POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**---/145/153**    Answering paragraph ---/145/153, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/146/154    Brown County's management of the Bay Port Disposal Site and Renard Isle landfill operations resulted in the release of PCBs into the Lower Fox River Site. As a result, Brown County arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**---/146/154**    Answering paragraph ---/146/154, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/147/155    Brown County was a person who at the time of disposal of a hazardous substance owned a facility, Renard Isle, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**---/147/155**    Answering paragraph ---/147/155, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/148/---    Brown County is the current owner of a facility, Renard Isle, and a current owner of another facility, the Bay Port Disposal Site, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**---/148/---**    Answering paragraph ---/148/---, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/156    Brown County is the current owner of a facility, Renard Isle, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**---/---/156**    Answering paragraph ---/---/156, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/157    Brown County is a current owner of a facility, the Bay Port Disposal Site, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**---/---/157**    Answering paragraph ---/---/157, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/149/158    Municipal wastewater treatment operations at the Green Bay MSD POTW resulted in the release of PCBs into the Lower Fox River Site. As a result, the Green Bay MSD arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a

facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**---/149/158** Answering paragraph ---/149/158, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/150/159 Green Bay MSD was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Green Bay MSD POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**---/150/159** Answering paragraph ---/150/159, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/151/160 Green Bay MSD is the current owner and operator of a facility, the Green Bay MSD POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**---/151/160** Answering paragraph ---/151/160, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/152/161 Municipal wastewater treatment operations at the Heart of the Valley POTW resulted in the release of PCBs into the Lower Fox River Site. As a result, Heart of the Valley MSD arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**---/152/161**     Answering paragraph ---/152/161, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/153/162     Heart of the Valley MSD was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Heart of the Valley POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**---/153/162**     Answering paragraph ---/153/162, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/154/163     Heart of the Valley MSD is the current owner and operator of a facility, the Heart of the Valley POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**---/154/163**     Answering paragraph ---/154/163, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/155/164     Municipal wastewater treatment operations at the Neenah-Menasha POTW resulted in the release of PCBs into the Lower Fox River Site. As a result, Neenah-Menasha SC arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

---**/155/164**     Answering paragraph ---/155/164, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/156/165     Neenah-Menasha SC was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Neenah-Menasha POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

---**/156/165**     Answering paragraph ---/156/165, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/157/166     Neenah-Menasha SC is the current owner and operator of a facility, the Neenah-Menasha POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

---**/157/166**     Answering paragraph ---/157/166, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/158/167     Municipal wastewater treatment operations at the Kimberly POTW resulted in the release of PCBs into the Lower Fox River Site.  As a result, Village of Kimberly arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**---/158/167**     Answering paragraph ---/158/167, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/159/168     Village of Kimberly was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Kimberly POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**---/159/168**     Answering paragraph ---/159/168, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/160/169     Municipal wastewater treatment operations at the Wrightstown POTW resulted in the release of PCBs into the Lower Fox River Site.  As a result, Village of Wrightstown arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**---/160/169**     Answering paragraph ---/160/169, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/161/170     Village of Wrightstown was a person who at the time of disposal of a hazardous substance owned or operated a facility, the Wrightstown POTW, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**---/161/170**     Answering paragraph ---/161/170, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/162/171**     Village of Wrightstown is the current owner and operator of a facility, the Wrightstown POTW, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

**---/162/171**     Answering paragraph ---/162/171, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/---/172**     Papermaking activities conducted by WTM I at the WTM Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment plant, into the Lower Fox River Site. As a result, WTM I arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

**---/---/172**     Answering paragraph ---/---/172, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/---/173**     WTM I was a person who at the time of disposal of a hazardous substance owned or operated a facility, the WTM Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**---/---/173**     Answering paragraph ---/---/173, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

**---/---/174**     Papermaking activities conducted by U.S. Paper at the U.S. Paper Mill resulted in the release of PCBs, either directly or through a municipal wastewater treatment

plant, into the Lower Fox River Site. As a result, U.S. Paper arranged for the disposal and/or treatment of hazardous substances it owned or possessed at a facility containing such substances within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

---/---/**174**    Answering paragraph ---/---/174, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/175    U.S. Paper was a person who at the time of disposal of a hazardous substance owned or operated a facility, the U.S. Paper Mill, at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

---/---/**175**    Answering paragraph ---/---/175, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/176    U.S. Paper is the current owner and operator of a facility, the U.S. Paper Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

---/---/**176**    Answering paragraph ---/---/176, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/177    U.S. Paper is the current owner and operator of a facility, the Menasha Mill, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

---/---/**177**    Answering paragraph ---/---/177, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

96/163/178    PCBs have been released at and from the facilities identified above, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

**96/163/178**    Answering paragraph 96/163/178, Defendant Leicht denies that it caused a release of hazardous substances so as to reach the Lower Fox River Site, and denies that it has

any liability under CERCLA.  Further, Leicht lacks knowledge or information to either confirm or deny the allegations in said paragraph as to the other defendants, and, therefore, denies them.

97/164/179    In connection with these releases of PCBs from the facilities identified above, API and NCR have paid and will continue to pay costs for necessary response actions at the Lower Fox River Site consistent with the National Contingency Plan, within the meaning of Section 101(31) of CERCLA, 42 U.S.C. § 9601(31) ("Lower Fox River Costs"), and natural resource damages.

**97/164/179**    Answering paragraph 97/164/179, Defendant Leicht denies that it caused a release of hazardous substances so as to reach the Lower Fox River Site, and denies that it has any liability under CERCLA.  Further, Leicht lacks knowledge or information to either confirm or deny the allegations in said paragraph as to the other defendants, and, therefore, denies them.

98/165/180    Defendants are liable for the Lower Fox River Costs and damages paid to date by API and NCR, and consequently API and NCR are entitled to recover these costs and damages from Defendants.

**98/165/180**    Answering paragraph 98/165/180, Defendant Leicht denies that it caused a release of hazardous substances so as to reach the Lower Fox River Site, and denies that it has any liability under CERCLA.  Further, Leicht lacks knowledge or information to either confirm or deny the allegations in said paragraph as to the other defendants, and, therefore, denies them.

99/166/181    Alternatively, API and NCR have paid more than API/NCR's allocable share of the Lower Fox River Costs and damages paid to date.  API and NCR request that the Court determine the parties' proper allocable shares with respect to Lower Fox River Costs and damages and determine that Defendants are liable to API and NCR for those Lower Fox River

Costs and damages paid by each of API and NCR that are in excess of API/NCR's allocable share and that are properly attributable to Defendants.

**99/166/181** Answering paragraph 99/166/181, admits that the Plaintiffs have requested that the Court determine the parties' allocable shares of liability, but otherwise denies the allegations in said paragraph.

100/167/182 Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(l), API and NCR have provided a copy of the Complaint[7] to the Attorney General of the United States and the Administrator of USEPA.

**100/167/182** Answering paragraph 100/167/182, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

101/168/183 Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), API and NCR are entitled to recover interest on the Lower Fox River Costs and damages they have paid or may pay in the future.

**101/168/183** Answering paragraph 101/168/183, denies the allegation.

<u>**COUNT II – CLAIM UNDER CERCLA § 113**</u>

102/169/184 API and NCR reallege and incorporate by reference paragraphs 1 through 101/168/183 as if fully set forth herein.

**102/169/184** Answering paragraph 102/169/184, realleges and incorporates herein by reference admissions, denials, and affirmative allegations pleaded in answer to those paragraphs referenced in paragraph 102/169/184.

---

[7] The Fourth and Fifth Complaint state "this Fourth/Fifth Amended", respectively.

Case 2:08-cv-00016-WCG    Filed 06/23/08    Page 51 of 64    Document 160

103/170/185    Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), authorizes any person to seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

**103/170/185**    Paragraph 103/170/185 contains legal conclusions to which an answer is not required.  To the extent such allegations require an answer, Leicht admits that Section 113(f)(1) of CERCLA contains provisions governing contribution claims, and, except as so admitted, denies the allegations in paragraph 103/170/185.

104/171/186    API and NCR have reimbursed the United States and the State of Wisconsin for amounts greater than API/NCR's allocable share of the Lower Fox River Costs and damages paid to date.  API and NCR also have made other payments relating to Lower Fox River Costs and damages that are greater than API/NCR's allocable share of Lower Fox River Costs and damages.  Defendants are liable for those Lower Fox River Costs and damages paid by each of API and NCR that are in excess of API/NCR's allocable share and that are properly attributable to Defendants.

**104/171/186**    Answering paragraph 104/171/186, denies the allegation.

105/---/---    Pursuant to Section 113(1) of CERCLA, 42 U.S.C. § 9613(1), API and NCR have provided a copy of this Third [Fourth and Fifth] Amended Complaint to the Attorney General of the United States and the Administrator of USEPA.

**105/---/---**    Answering paragraph 105/---/---, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/172/---    Pursuant to Section 113(1) of CERCLA, 42 U.S.C. § 9613(1), API and NCR have provided a copy of this Fourth Amended Complaint to the Attorney General of the United States and the Administrator of USEPA.

**---/172/---**        Answering paragraph ---/172/---, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

---/---/187        Pursuant to Section 113(1) of CERCLA, 42 U.S.C. § 9613(1), API and NCR have provided a copy of this Fifth Amended Complaint to the Attorney General of the United States and the Administrator of USEPA.

**---/---/187**        Answering paragraph ---/---/187, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

106/173/188    Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), API and NCR are entitled to recover interest on the Lower Fox River Costs and damages they have paid and will pay in the future in excess of API/NCR's allocable share.

**106/173/188**        Answering paragraph 106/173/188, denies the allegation.

## COUNT III – CLAIM FOR DECLARATORY RELIEF

Leicht has filed a Motion to Dismiss Counts I and III of the Complaint.  Leicht answers Count III in the alternative as follows:

107/174/189    API and NCR reallege and incorporate by reference paragraphs 1 through 106/173/188 as if fully set forth herein.

**107/174/189**        Answering paragraph 107/174/189, realleges and incorporates herein by reference admissions, denials, and affirmative allegations pleaded in answer to those paragraphs referenced in paragraph 107/174/189.

108/175/190    Through various letters and most recently the Order to implement the remedy set forth in the 2007 Amended ROD, the United States, the State of Wisconsin and the natural resource damages trustees have demanded that API, NCR and other potentially

responsible parties fund the response work and natural resource damages projects to be undertaken at the Lower Fox River Site.

**108/175/190** Answering paragraph 108/175/190, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

109/176/191    Defendants Glatfelter and Menasha[8] have refused to acknowledge their fair and reasonable share for response costs and damages arising out of the Lower Fox River Contamination.  Many of the other defendants have refused to acknowledge their liability to API and NCR for response costs and damages arising out of the Lower Fox River Contamination.  Thus, an actual, substantial, and legal controversy has arisen and now exists between API and NCR, on the one hand, and Defendants, on the other, with regard to responsibility for the Lower Fox River Costs and damages and how these should be allocated among the parties.  The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**109/176/191**    Answering paragraph 109/176/191, alleges lack of knowledge or information sufficient to form a belief to either confirm or deny, and, therefore, denies the allegations.

110/177/192    Absent a judicial declaration setting forth the parties' rights and obligations, including the appropriate allocable shares under CERCLA, a multiplicity of actions may result, and API and NCR may be obligated in the future to pay costs and damages that, under CERCLA, are in fact the responsibility of Defendants.

**110/177/192**    Answering paragraph 110/178/192, denies the allegations.

---

[8] The Fifth Amended Complaint states "Glatfelter, Menasha, WTM I and U.S. Paper".

111/178/193   For these reasons, API and NCR seek a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and Section 2201 of the Judicial Code, 28 U.S.C. § 2201, allocating Lower Fox River Costs and damages among API/NCR, on the one hand, and Defendants, on the other, and holding Defendants liable for that share of Lower Fox River Costs and damages allocated to them.

**111/178/193**   Answering paragraph 111/178/193, admits that Plaintiffs are seeking a declaration, but otherwise denies the allegations in said paragraph.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

As an affirmative defense, alleges that the Plaintiffs' Complaint, and each count thereof, fails to state a cause of action upon which relief can be granted.

### Second Affirmative Defense

As an affirmative defense, alleges that Plaintiffs' claims may be barred in whole or in part by the applicable statute of limitations under CERCLA.

### Third Affirmative Defense

As an affirmative defense, alleges on information and belief, Leicht's liability, if any, is the result of an act or omission of a third party or parties within the meaning of Section 103 (b)(3) 42 U.S.C. § 9607(b)(3) over which Leicht had no control and for which Leicht has no liability.

### Fourth Affirmative Defense

As an affirmative defense, alleges that pursuant to the Small Business Liability Relief and Brownfields Revitalization Act and Section 107(o) of CERCLA, 42 U.S.C. § 9607(o), alleges that Leicht is exempt from liability as a *de micromis* party, if it has any liability at all.

## Fifth Affirmative Defense

As an affirmative defense, alleges that Plaintiffs lack standing to pursue claims for natural resource damages or such claims are not ripe for adjudication.

## Sixth Affirmative Defense

As an affirmative defense, alleges that the contribution to the PCB contamination of the Lower Fox River through Leicht, if any, is so infinitesimally small such that any allocation of liability to Leicht would be inequitable.

## Seventh Affirmative Defense

As an affirmative defense, alleges on information and belief that Plaintiffs' claims for recovery of response costs are barred in that a reasonable basis exists for allocation of liability based upon divisibility of the particular type of pollutant that is the subject of the remediation in that the alleged environmental harm was caused entirely by the production or reprocessing of carbonless paper in which Leicht was not directly or indirectly involved.

## Eighth Affirmative Defense

As an affirmative defense, alleges on information and belief that Plaintiffs may have failed to comply with the requirements of the National Contingency Plan in which case they cannot be reimbursed for expenses they may have incurred or may later incur.

## Ninth Affirmative Defense

As an affirmative defense, alleges on information and belief that Plaintiffs' and/or third parties failed to use reasonable care and diligence to mitigate and to avoid and/or minimize the injuries or damages alleged.

## Tenth Affirmative Defense

As an affirmative defense, alleges on information and belief that Plaintiffs' claims are barred by the equitable doctrine of estoppel.

## Eleventh Affirmative Defense

As an affirmative defense, alleges on information and believe that Plaintiffs' claims may be barred in whole or in part by the doctrine of unclean hands in that harm to the environment is the sole result of the negligence of Plaintiffs and other parties.

## Twelfth Affirmative Defense

As an affirmative defense, alleges on information and belief that Plaintiffs' claims may be barred by the doctrine of waiver and/or laches.

## Thirteenth Affirmative Defense

As an affirmative defense, alleges on information and belief that Plaintiffs' damages, if any, may have been caused by their own acts, over which Leicht had no control.

## Fourteenth Affirmative Defense

As an affirmative defense, alleges that Plaintiffs are not the real party or parties in interest to bringing a claim for, or arising out of, alleged natural resource damages.

## Fifteenth Affirmative Defense

As an affirmative defense, alleges that Plaintiffs have failed to name all necessary and indispensable parties.

## Sixteenth Affirmative Defense

As an affirmative defense, alleges in the alternative that in the event Leicht has any liability, such liability is limited to Leicht's fair share and that Leicht has no joint and several

liability or liability for the fair share of any other person or entity, whether such person, or entity is a party to this lawsuit or not.

### Seventeenth Affirmative Defense

As an affirmative defense, Leicht asserts and relies upon all available defenses under CERCLA.

### Eighteenth Affirmative Defense

As an affirmative defense, Leicht relies upon and incorporates applicable defenses and to amend its affirmative defenses barred on discovery in this action.

## COUNTERCLAIM

Defendant, Leicht Transfer & Storage Company ("Leicht"), by its attorneys, Ruder Ware, L.L.S.C., and, to the extent Plaintiffs' Third Amended Complaint states a claim for joint and several liability under 42 U.S.C. § 9607(a), counterclaims pursuant to 42 U.S.C. § 9113(f), 42 U.S.C. § 9607(a) and/or as a mater of equity, as follows:

### Claim For Contribution

1.    The Third, Fourth and Fifth Amended Complaints allege a claim for joint and several liability against Leicht, pursuant to 42 U.S.C. § 9607(a), which claim Defendant denies.

2.    Plaintiffs are liable, pursuant to 42 U.S.C. § 9607(a), for response costs or damages incurred, or to be incurred, for PCB contamination of the Lower Fox River Site as those terms are defined in Plaintiffs' Third Amended Complaint.

3.    To the extent that the Third, Fourth and Fifth Amended Complaints state a claim for joint and several liability for response costs or damages at the Lower Fox River Site, and results in a judgment against defendant Leicht, Leicht is entitled to statutory and/or common law

contribution, cost recovery and/or indemnity from Plaintiffs pursuant to 42 U.S.C. § 9613(f), 42 U.S.C. § 9607(a) and/or as a matter of equity.

4.    In the event Plaintiffs fail to prove that Leicht is not exempt from liability or a *de micromis* party pursuant to Section 107(o), 42 U.S.C. § 9607(o).  Plaintiffs will be liable for Leicht's actual attorneys' fees and other actual costs of defense.

## PRAYER FOR RELIEF

WHEREFORE, Leicht respectfully request that the Court enter judgment in favor of Leicht and against Plaintiffs as follows:

(1)    that Plaintiffs have no recovery from Leicht based on their Third, Fourth, and Fifth Amended Complaints;

(2)    that each and all of the claims asserted in Plaintiffs' Third, Fourth, and Fifth Amended Complaints be dismissed with prejudice;

(3)    for an award of costs and for attorneys' fees and other actual costs of defense (to the extent permitted in defense against the claims asserted by the Plaintiffs); and

(4)    for such other and further relief as the Court deems just and proper.

Dated this 23rd day of June, 2008.

RUDER WARE
Attorneys for Defendant Leicht Transfer & Storage Company


By:   s/Russell W. Wilson
        Russell W. Wilson
        State Bar No. 1017482

RUDER WARE
500 First Street, Suite 8000
P.O. Box 8050
Wausau, WI 54402-8050
Telephone: 715.845.4336
Fax: 715.845.2718
Email: rwilson@ruderware.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 23, 2008, a copy of the foregoing Leicht Transfer & Storage Company's Reiterated Motion To Dismiss Counts I And III Of Plaintiffs' Third, Fourth And Fifth Amended Complaints And Answers In The Alternative To Plaintiffs' Third, Fourth, And Fifth Complaint was filed electronically. Notice of this filing will be sent to counsel listed below by operation of the Court's electronic filing system.

Michael L. Hermes, Esq.
Metzler, Timm, Treleven & Hermes, S.C.
222 Cherry Street
Green Bay, WI 54301-4223
mhermes@mtthlaw.com

Philip A. Munroe, Esq.
DiRenzo & Bomier, LLC
Two Neenah Center, Suite 701
P.O. Box 788
Neenah, WI 54957-0788
pmunroe@direnzollc.com

Evan B. Westerfield, Esq.
J. Andrew Schlickman, Esq.
Joan Radovich, Esq.
Kathleen L. Roach, Esq.
Sidley Austin, LLP
1 South Dearborn Street
Chicago, IL 60603
evanwesterfield@sidley.com
jaschlickman@sidley.com
jradovich@sidley.com
kroach@sidley.com

Jennifer E. Simon, Esq.
Marc E. Davies, Esq.
Ronald M. Varnum, Esq.
Sabrina Mizrachi, Esq.
David G. Mandelbaum, Esq.
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 Market Street – 51st Floor
Philadelphia, PA 19103
simonj@ballardspahr.com
davies@ballardspahr.com
varnumr@ballardspahr.com
mizrachis@ballardspahr.com
mandelbaum@ballardspahr.com

J. Ric Gass, Esq.
Gass Weber Mullins, LLC
309 North Water Street, Suite 700
Milwaukee, WI 53202
gass@gasswebermullins.com

Scott B. Fleming, Esq.
Weiss Berzowski Brady, LLP
700 North Water Street, Suite 1400
Milwaukee, WI 53202-4206
sbf@wbb-law.com

Delmar R. Ehrich, Esq.
Faegre & Benson, LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402-3901
dehrich@faegre.com

Arthur F. Radke, Esq.
Michelle A. Gale, Esq.
Dykema Gossett, P.L.L.C.
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
aradke@dykema.com
mgale@dykema.com

Joseph J. Beisenstein, Esq.
Mark R. Feldmann, Esq.
Menn Law Firm, Ltd.
2501 East Enterprise Avenue
P.O. Box 785
Appleton, WI 54912-0785
joseph-beisenstein@mennlaw.com
mark-feldmann@mennlaw.com

Colin C. Deihl, Esq.
Jacy T. Rock, Esq.
Faegre & Benson, LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
cdeihl@faegre.com
jrock@faegre.com

Christopher P. Riordan, Esq.
David J. Edquist, Esq.
Patrick L. Wells, Esq.
von Briesen & Roper, S.C.
411 East Wisconsin Avenue, Suite 700
P.O. Box 3262
Milwaukee, WI 53201-3262
criordan@vonbriesen.com
dedquist@vonbriesen.com
pwells@vonbriesen.com

Randall M. Stone
United States Department of Justice (DC)
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044
randall.stone@usdoj.gov

Sarah A. Slack, Esq.
Linda E. Benfield, Esq.
Foley & Lardner, LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5300
sslack@foley.com
lbenfield@foley.com

Daniel C. Murray, Esq.
Garrett L. Boehm, Jr., Esq.
Frederick S. Mueller, Esq.
Johnson & Bell, Ltd.
33 West Monroe Street, Suite 2700
Chicago, IL 60603-5404
murrayd@jbltd.com
boehmg@jbltd.com
muellerf@jbltd.com

Mathew B. Beredo, Esq.
Baker & Hostetler, LLP
3200 National City Center
1900 East 9th Street
Cleveland, OH 44114-3485
mberedo@bakerlaw.com

Timothy B. Anderson, Esq.
Remley & Sensenbrenner, S.C.
219 East Wisconsin Avenue
Neenah, WI 54956
tanderson@remleylaw.com

William E. Coughlin, Esq.
Thomas R. O'Donnell, Esq.
Calfee, Halter & Griswold, LLP
1400 Key Bank Center
800 Superior Avenue
Cleveland, OH 44114-2688
wcoughlin@calfee.com
todonnell@calfee.com

Joseph C. Basta, Esq.
Dykema Gossett PLLC
2723 S. State Street, Suite 400
Ann Arbor, MI 48104
jbasta@dykema.com

John F. Cermak, Jr., Esq.
Sonja A. Inglin, Esq.
Baker Hostetler LLP
12100 Wilshire Blvd., 15th Floor
Los Angeles, CA 90025
jcermak@bakerlaw.com
singling@bakerlaw.com

Lora L. Zimmer, Esq.
Hinshaw & Culbertson LLP
100 West Lawrence St.
Appleton, WI 54911
lzimmer@hinshawlaw.com

Ted Waskowski, Esq.
Richard C. Yde, Esq.
Stafford Rosenbaum, LLP
222 West Washington Ave., Suite 900
P.O. Box 1784
Madison, WI 53701-1784
twaskowski@staffordlaw.com
ryde@staffordlaw.com

Bruce A. Olson, Esq.
Davis & Kuelthau SC
318 South Washington St., Suite 300
Green Bay, WI 54301
bolson@dkattorneys.com

Charles M. Gering, Esq.
Foley & Lardner, LLP
321 N. Clark St., Suite 2800
Chicago, IL 60610-5313
cgering@foley.com

Thomas R. Schrimpf, Esq.
Hinshaw & Culbertson LLP
100 East Wisconsin Ave., Suite 2600
Milwaukee, WI 53202-4115
tschrimpf@hinshawlaw.com

Kevin J. Lyons, Esq.
William J. Mulligan, Esq.
Davis & Kuelthau SC
111 East Kilbourn Ave., Suite 1400
Milwaukee, WI 53202-6613
wmulligan@dkattorneys.com
klyons@dkattorneys.com

James A. Gunz, Esq.
Gunz Law Office
1142 Glenayre Dr.
Neenah, WI 54956-4236
attygunz@msn.com

In addition, a copy will be sent by U.S. Mail to the following:

City of Green Bay
100 North Jefferson St.
Green Bay, WI  54956-4236

City of Appleton
100 North Appleton St.
Appleton, WI  54911

Brown County
P.O. Box 23600
Green Bay, WI  54305-3600

City of Kaukauna
201 West 2nd St.
Kaukauna, WI  54130-2442

Village of Kimberly
Kimberly Municipal Complex
515 West Kimberly Ave.
Kimberly, WI  54136

Green Bay Metropolitan Sewerage District
P.O. Box 19015
2331 North Quincy St.
Green Bay, WI 54307-9015

WTM I Company
c/o SCA Tissue North America
P.O. Box 2400
Neenah, WI  54957-2400

Village of Wrightstown
P.O. Box 227
Wrightstown, WI  54180

U.S. Paper Mills Corporation
c/o Sonoco Products Company
One North 2nd St.
Hartsville, SC  29550

_____ s/Russell W. Wilson_____
Russell W. Wilson