# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

| | | |
|---|---|---|
| APPLETON PAPERS INC. and | ) | |
| NCR CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-CV-00016-WCG |
| | ) | |
| GEORGE A. WHITING PAPER COMPANY, | ) | |
| P. H. GLATFELTER COMPANY, | ) | |
| MENASHA CORPORATION, | ) | |
| GREEN BAY PACKAGING INC., | ) | |
| INTERNATIONAL PAPER COMPANY, | ) | |
| LEICHT TRANSFER & STORAGE COMPANY, | ) | |
| NEENAH FOUNDRY COMPANY, | ) | |
| NEWPAGE WISCONSIN SYSTEM INC., | ) | |
| THE PROCTER & GAMBLE PAPER | ) | |
| PRODUCTS COMPANY, | ) | |
| WISCONSIN PUBLIC SERVICE CORP., | ) | |
| CITY OF APPLETON, | ) | |
| CITY OF DE PERE, | ) | |
| CITY OF GREEN BAY, | ) | |
| CITY OF KAUKAUNA, | ) | |
| BROWN COUNTY, | ) | |
| GREEN BAY METROPOLITAN | ) | |
| SEWERAGE DISTRICT, | ) | |
| HEART OF THE VALLEY METROPOLITAN | ) | |
| SEWERAGE DISTRICT, | ) | |
| NEENAH-MENASHA SEWERAGE | ) | |
| COMMISSION, | ) | |
| VILLAGE OF KIMBERLY, | ) | |
| VILLAGE OF WRIGHTSTOWN, | ) | |
| WTM I COMPANY,  and | ) | |
| U.S. PAPER MILLS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO THE UNITED STATES' *AMICUS CURIAE* BRIEF ADDRESSING ISSUES RAISED BY MOTIONS TO DISMISS CERTAIN CLAIMS IN PLAINTIFFS' THIRD AMENDED COMPLAINT

Plaintiffs Appleton Papers Inc. and NCR Corporation (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file their response to the United States' Brief as *Amicus Curiae* Addressing Issues Raised by Motions to Dismiss Certain Claims in Plaintiffs' Third Amended Complaint ("DOJ Brief"). For the reasons set forth herein, and in Plaintiffs' prior Responses, the arguments set forth in the DOJ Brief should be rejected, and the Motions to Dismiss that have been filed should all be denied in their entirety.

## INTRODUCTION

In its brief to the Supreme Court in *United States v. Atlantic Research Corp.*, 127 S. Ct. 2331 (2007), the Department of Justice ("DOJ") argued that potentially responsible parties ("PRPs") could not recover costs under Section 107(a)(4)(B) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq*. *See* 42 U.S.C. § 9607(a)(4)(B). DOJ asserted that permitting such claims would "create friction between § 107(a) and § 113(f)," *Atlantic Research*, 127 S. Ct. at 2337, and thereby undermine the value of the contribution protection that can be granted under Section 113(f)(2). *See* 42 U.S.C. § 9613(f)(2). The Supreme Court rejected this argument, dismissing it as "internally confusing" and based on a "textually dubious construction that threatens to render the entire provision a nullity." *Atlantic Research*, 127 S. Ct. at 2336-37. The Court held that PRPs *could* state a cause of action under Section 107(a)(4)(B), and in fact, for certain types of costs (i.e., "voluntary" costs, or costs not compelled by government order), this was the "*only*" mechanism by which such costs could be recovered. *Id*. at 2338 n.6 (emphasis added). In order to assure that "neither remedy swallows the other," the Court further clarified that other types of costs (i.e., costs in the nature of reimbursement, paid pursuant to a legal judgment or settlement) could be recovered "*only*" under Section 113(f). *Id*. (emphasis added). As for the potential impact of this ruling on the government's ability to effectuate settlements to cleanup

2

contaminated sites, the Court was unsympathetic. *See id.* at 2339 ("[P]ermitting PRPs to seek recovery under § 107(a) will not eviscerate the settlement bar set forth in § 113(f)(2)").

Notwithstanding this holding, and the clear rejection of its position, DOJ now comes before this Court again insisting that PRPs like Plaintiffs should not be permitted to sue under Section 107(a)(4)(B). It makes this argument, moreover, even though Plaintiffs have alleged the incurrence of the very type of costs the Supreme Court said could "*only*" be recovered through such a claim. In effect, having lost at the Supreme Court, DOJ now hopes to prevail at the District Court level. This stratagem cannot be permitted to succeed. While the government has an important and respected role in effecting the cleanup of contaminated sites, Congress intended PRPs to have a role – and rights – as well. Plaintiffs here are simply trying to utilize one of those rights, and any effort by DOJ to deny this right must be rejected.[1]

## ARGUMENT

I.    **DOJ Is Not Neutral to the Issues Raised by the Motions to Dismiss, and Its Views on Those Issues Are Not Entitled to Deference.**

In its Motion for Leave to File Brief as *Amicus Curiae* ("DOJ Motion for Leave"), DOJ states that it can provide the Court with "substantial assistance" in resolving the issues raised by the parties' Motions to Dismiss, including the proper "interpretation of CERCLA." DOJ Motion for Leave, Dkt. # 131, p. 2. As the Court knows, however, DOJ's views on matters of statutory interpretation are not entitled to deference here, as Congress intended the courts, not

---

[1] DOJ argues only that, under its interpretation of CERCLA and *Atlantic Research*, Plaintiffs' Count I (seeking cost recovery under Section 107(a)(4)(B)), and Plaintiffs' Section 113(f) claim against Defendant P.H. Glatfelter Company relating to OU1 should be dismissed. DOJ does not contend that the remaining portions of Plaintiffs' Count II (seeking contribution under Section 113(f)) should be dismissed. *See* DOJ Brief, Dkt. # 132, p. 30 ("Plaintiffs have . . . a § 113(f) claim for all the costs they seek (except for OU 1 costs from Glatfelter . . .)"). Nor does DOJ argue that Plaintiffs' Count III (seeking declaratory relief under Section 113(g)(2) and the Declaratory Judgment Act) should be dismissed. *See id.* at p. 39 n.51 ("§ 113(g)(2) describes particular circumstances where a court 'shall' enter a declaratory judgment. It does not prohibit a court from granting declaratory relief in other circumstances, assuming the requirements for obtaining such relief are otherwise met . . . The United States expresses no views on whether such relief is appropriate in this case.").

3

Case 2:08-cv-00016-WCG    Filed 06/24/08    Page 3 of 23    Document 162

the executive branch, to define the scope of liability under CERCLA. *See, e.g., Kelley v. EPA*, 15 F.3d 1100, 1108 (D.C. Cir. 1994) ("If Congress meant the judiciary, not EPA, to determine liability issues – and we believe Congress did – EPA's view of statutory liability may not be given deference"); *see also Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990). Moreover, the Supreme Court's rejection of DOJ's views in *Atlantic Research* demonstrates that DOJ is not to be regarded as having any specialized knowledge concerning the interplay between Sections 107(a) and 113(f), and that it can be, and has been, mistaken about these matters.

Second, DOJ is not "neutral" when it comes to the rights and responsibilities granted to parties under CERCLA. Prior to *Atlantic Research*, a PRP had no ability to recover any of its costs unless it was sued by or settled with the government. *See Cooper Indust., Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004). As a result, PRPs in this procedural posture had no choice but to seek a deal with the government, and had little bargaining power in the negotiation. However, in *Atlantic Research*, the Supreme Court made clear that CERCLA does in fact grant PRPs the right to clean up sites and sue others to recover their costs under Section 107(a)(4)(B), without being necessarily beholden to the government. This development altered the balance of power between DOJ and PRPs, and so it comes as no surprise that DOJ would seek to revisit that ruling and advocate the narrowest possible application of the Supreme Court's decision in *Atlantic Research*.[2]

---

[2] Nor are DOJ's efforts in this regard limited to this case. It has filed similar briefs as "amicus curiae" in other cases around the country, as part of a concerted effort to shape the law to its advantage.

Finally, the government has its own liability issues to contend with. The United States, as a result of the activities of its various agencies, is itself responsible for contamination at scores of sites around the country.[3] In fact, the United States was a defendant in *Atlantic Research*. It is not unexpected, then, that DOJ would seek to limit Plaintiffs' recognized right to sue under Section 107(a). If PRPs like Plaintiffs have additional causes of action with which to seek the recovery of additional categories of costs, the liability risks for the government itself expand.

## II. Plaintiffs Can Assert Claims to Recover Certain of Their Costs Under Section 107(a), Irrespective of Whether They May Assert Claims for Other Costs Under Section 113.

In *Atlantic Research*, the Supreme Court made clear that CERCLA provides "separate" and "distinct" causes of action by which PRPs may recover their response costs. 127 S. Ct. at 2337. If the PRP has incurred costs "voluntarily" (i.e., not compelled by governmental order), those costs are recoverable under Section 107(a)(4)(B). *Id*. at 2338 n.6. And if the PRP has also incurred costs that are in the nature of reimbursement, paid pursuant to a legal judgment or settlement, those costs are recoverable under Section 113(f). *Id*.[4] Moreover, the Court was adamant that these causes of action are "clearly distinct": the first type of expenses (so-called "voluntary" costs) can "*only*" be recovered pursuant to Section 107(a)(4)(B), and the second type

---

[3] A query on the United States Environmental Protection Agency's website indicates that 157 federal facilities are presently on the National Priorities List ("NPL"). *See* http://www.epa.gov/superfund/sites/query/advquery.htm (last visited June 24, 2008). This number does not include sites owned by private parties where the United States is a PRP (such as the site at issue in *Atlantic Research*), or sites where the United States is a PRP based on prior ownership. Thus, in addition to the 157 federal facilities on the NPL, there are likely many more sites where the United States is a PRP.

[4] The Court also noted that if the PRP has incurred costs pursuant to a consent decree following a suit under Section 106 or 107(a), those costs can be recovered as well. *Atlantic Research*, 127 S. Ct. at 2338 n.6. However, the Court expressly declined to decide which provision would be the appropriate vehicle for recovery for that category of costs. *Id*. Plaintiffs have alleged the incurrence of such costs. *See* Third Amended Complaint, ¶¶ 32-38. However, given that Plaintiffs have properly pled claims under both Section 113(f) and Section 107(a)(4)(B), either or both of which can support Plaintiffs' claims to recover these costs, it is not necessary for this Court, at this stage of the litigation, to resolve the question left open by the Supreme Court.

of expenses (costs in the nature of reimbursement) can "*only*" be recovered pursuant to Section 113(f).  *Id*. (emphasis added).

In this case, Plaintiffs have plainly alleged in the Third Amended Complaint[5] that they have incurred *both* types of costs.  *See, e.g.,* Third Amended Complaint, Dkt. # 80, ¶ 42 (alleging expenses that were paid prior to or separate and apart from any governmental order or settlement), ¶ 104 (alleging reimbursement expenses paid pursuant to a settlement with the government).  Accordingly, Plaintiffs have brought claims under *both* Section 107(a)(4)(B) and Section 113(f).  *See* Third Amended Complaint, Dkt. # 80, Counts I and II.  Given the factual situation (i.e., the incurrence of both types of costs) and the clear guidelines laid down by the Supreme Court in *Atlantic Research* (that certain costs are recoverable "only" under Section 107(a) and others "only" under Section 113(f)), pleading both causes of action was both necessary and appropriate.

DOJ, however, has come on the scene to object to Plaintiffs' claim under Section 107(a)(4)(B).  Although Section 107(a)(4)(B) states that "*any* other person" is entitled to take advantage of this cause of action, and even though *Atlantic Research* directs that this is the "*only*" way to recover costs that are "voluntary" (i.e., not compelled by governmental order), DOJ insists that Plaintiffs' ability to use this provision is sharply constrained.  Specifically, DOJ argues that: (1) no party may seek to recover costs under Section 107(a)(4)(B) if that party also has "a claim for contribution under § 113(f)"; (2) no party may seek to recover costs under Section 107(a)(4)(B) if the party "sustained these expenses to extinguish a common liability"; and (3) no party may seek to recover costs under Section 107(a)(4)(B) if governmental actors "are exercising their authorities to achieve cleanup."  DOJ Brief, Dkt. # 132, pp. 25, 33.  In

_____

[5] Since DOJ's Brief was filed with the Court, Plaintiffs have filed a Fourth and Fifth Amended Complaint.  *See* Dkt. # 148, 149.  However, because DOJ refers and cites to the Third Amended Complaint in its Brief, Plaintiffs also, in the interest of consistency, will refer and cite to the Third Amended Complaint.  The Third, Fourth, and Fifth Amended Complaints are all substantively identical.

effect, DOJ is arguing that when Congress used the word "any," it did not really mean that. As explained below, this position flies in the face of the plain language of CERCLA, the Supreme Court's decision in *Atlantic Research*, and case law interpreting *Atlantic Research*.

A.      DOJ's Argument Is Contrary to the Plain Language of the Statute.

Section 107(a)(4)(B) does not contain any of the limitations DOJ would have this Court create here. It reads simply: "[A]ny person … shall be liable for … any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). This language imposes only two conditions on the recovery of costs by an "other person": the costs must be "necessary" and they must be "consistent with the national contingency plan." The language does not say that the "other person" cannot also have a claim under Section 113. The language does not say that the government must not have been "exercising their authorities to achieve cleanup." And the language does not say that there must be no "common liability" at the site. These other conditions, which DOJ would have this Court graft onto the statute, have no basis in the actual words of Section 107(a)(4)(B). At no point in its lengthy brief does DOJ make any effort to show how these conditions can be reconciled with the plain language of the statute. It does not because it cannot. Nothing in Section 107(a)(4)(B) even remotely suggests that the cause of action it provides PRPs for certain costs is extinguished by the existence of a cause of action under Section 113(f) for other costs. To hold that it does would create a limitation that the language cannot support and that Congress clearly did not intend.

In fact, DOJ's argument would turn Section 107(a)(4)(B) into a "dead letter." In *Atlantic Research*, DOJ argued that a cause of action under Section 107(a)(4)(B) was only available to "'innocent' private parties." *Atlantic Research*, 127 S. Ct. at 2336. The Court rejected this argument, in part, because this interpretation "would reduce the number of potential

plaintiffs to almost zero, rendering § 107(a)(4)(B) a dead letter." *Id.* at 2337. The interpretation DOJ now offers fails for the same reason. DOJ argues that a PRP cannot state a cause of action under Section 107(a) if the PRP shares a "common liability" with others at the site, or if governmental actors have been "exercising their authorities to achieve cleanup." DOJ Brief, Dkt. # 132, p. 33. However, there are few sites where there is only one PRP and where the government has taken no action. Accepting DOJ's argument would limit the availability of Section 107(a) to that vanishingly small number of sites and, contrary to *Atlantic Research*, would once again "reduce the number of potential plaintiffs to almost zero, rendering § 107(a)(4)(B) a dead letter." *Atlantic Research*, 127 S. Ct. at 2337. This cannot be what Congress intended when it created a right to sue for PRPs in Section 107(a)(4)(B).

B.    <u>DOJ's Argument Is Contrary to *Atlantic Research*.</u>

The conditions DOJ seeks to impose similarly cannot be squared with the Supreme Court's decision in *Atlantic Research*. The holding of *Atlantic Research* is stated simply and directly: "In this case, we must decide a question left open in *Cooper Industries, Inc. v. Aviall Services, Inc.*: whether § 107(a) provides so-called potentially responsible parties (PRPs), . . . with a cause of action to recover costs from other PRPs. We hold that it does." *Atlantic Research*, 127 S. Ct. at 2333 (internal citations omitted). Consistent with this holding, Plaintiffs have alleged the incurrence of certain voluntary (i.e., not compelled by government order) costs, and seek to recover those costs under Section 107(a). As the Court explained in *Atlantic Research*, the plain language of the statute "provides a cause of action to *anyone* except the United States, a State, or an Indian tribe." *Id.* at 2336 (emphasis added). Nothing in this language of the Court suggests that the cause of action is constrained in the ways DOJ wishes. The Court's use of the word "anyone" is not qualified in any way. Nor is the Court's plain statement that PRPs have "a cause of action to recover costs from other PRPs" in any way

restricted to situations where no "common liability" exists or governmental actors are not "exercising their authorities to achieve cleanup." These conditions cannot be found in the Court's holding, and therefore they cannot be imposed here.

In fact, the Court expressly rejected several times DOJ's position that a person seeking to recover certain costs under Section 113(f) should be barred from seeking to recover other costs under Section 107(a). For example, the Court emphasized that its ruling should not be understood to "suggest that §§ 107(a)(4)(B) and 113(f) have no overlap at all," citing its prior holding that "the statutes provide 'similar and somewhat overlapping remed[ies].'" *Id*. at 2338 n.6 (*citing Key Tronic Corp. v. United States*, 511 U.S. 809, 816 (1994)). It further stated that claims under Section 107(a) and Section 113(f) are "clearly distinct" and that "neither remedy swallows the other." *Id*. Finally, it expressly recognized the possibility that certain costs of response may be "recoverable under § 113(f), § 107(a), *or both*." *Id*. (emphasis added). All of these statements show that in the Court's view, PRPs are not necessarily limited to *either* Section 107 or Section 113. Instead, Section 107 and Section 113 are "complement[ary]" and "overlapping" – neither "swallows" the other. And as a result, DOJ's position – that Section 113 is the "exclusive" remedy for certain PRPs, "swallow[ing]" up any claims under Section 107 – flies in the face of *Atlantic Research* and must be rejected.

DOJ offers two arguments why *Atlantic Research* supports its position. First, DOJ argues that because the Court "takes pains" to distinguish between cost recovery claims under Section 107(a), on the one hand, and contribution claims under Section 113(f), on the other, the two cannot be used simultaneously by the same plaintiff. DOJ Brief, Dkt. # 132, pp. 22-24. But at no point in its Brief does DOJ offer any reason to support the final conclusion it draws. The two remedies are different, and do authorize the recovery of different types of costs. Further, it may well be the case that if certain costs are recoverable under Section 113(f), they

9

cannot also be recovered under Section 107(a). It does not necessarily follow, however, that a party seeking to recover multiple categories of costs cannot proceed under both Section 107(a) and Section 113(f) to comprehensively recover its costs. The Court itself certainly never made that leap in logic nor stated so in its opinion, and in fact made numerous statements, as discussed above, that the remedies are actually "overlapping" and *not* exclusive.

Second, DOJ argues that the Court's statement "We now affirm," placed directly after a quotation from the Eighth Circuit's opinion, "strongly indicates" that the Court would not allow a party with a Section 113(f) claim to also bring a Section 107(a)(4)(B) claim. This argument cannot bear the weight placed on it. The Court did not simply adopt the reasoning of the lower court, as DOJ implies, but instead proceeded in Section II of the opinion to articulate its own, different rationale for the holding. Footnote 8 of the opinion makes clear that the Court charted an entirely different course for its holding than that proffered by the Eighth Circuit. *Atlantic Research*, 127 S. Ct. at 2338 n.8. DOJ's argument, if accepted, would improperly treat the rest of the Court's opinion as at best dicta, and at worst a nullity.

C.  DOJ's Argument Is Contrary to the Case Law Interpreting *Atlantic Research*.

DOJ cites to five opinions issued subsequent to *Atlantic Research* that address the scope of cost recovery claims under Section 107. Two of these have rejected the argument DOJ makes here and concluded that a PRP who has or had a Section 113 claim "need not rely upon § 113 as its exclusive remedy." *New York v. Next Millennium Realty LLC*, No. 03-5985, 2008 WL 1958002, at *6 (E.D.N.Y. May 2, 2008); *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 458 (6th Cir. 2007).

In *Next Millennium*, defendants in a Superfund action cross-claimed against other defendants under Section 107, Section 113, and state law, seeking to recover response costs they had incurred. After a review of the cross-defendants' motion to dismiss the Section 107 claims,

as well as a review of the language of *Atlantic Research*, the magistrate judge stated: "In *Atlantic Research*, the Supreme Court made clear that under certain circumstances PRPs may avail themselves of *both* § 107(a)(4)(B) and § 113(f)(1) to recover cleanup costs . . . ." *Next Millennium*, 2008 WL 1958002, at *6 (emphasis added). According to the court, a PRP who has a claim under Section 113 "need not rely on § 113 as its exclusive remedy." [6] *Id.*

Similarly, in *BorgWarner*, a lower court dismissed a PRP's claims under Section 107 and Section 113. Upon appeal, the Sixth Circuit affirmed the dismissal of the Section 113 claims (on the ground that they were time-barred), but reversed the dismissal of the Section 107 claims (remanding for further consideration in light of *Atlantic Research*). This holding is a direct repudiation of the position advanced by DOJ here. According to DOJ, a plaintiff like the one in *BorgWarner* should not be permitted to pursue a claim under Section 107 because it has, or had, a Section 113 claim. *See* DOJ Brief, Dkt. # 132, p. 20 (because "Plaintiffs have, or had, a § 113(f) claim to recover costs . . . they are limited to this claim, and their claim under § 107(a)(4)(B) should be dismissed"). But as the Sixth Circuit made clear, this analysis is incorrect. A PRP that has, or had, a Section 113 claim may still have a viable Section 107 claim "depending on the circumstances leading up to the action." *BorgWarner*, 506 F.3d at 459 n.3. The two rights of action are not mutually exclusive, and the proper analysis instead is whether the PRP has alleged the incurrence of the types of costs appropriate for each.

None of the other decisions rendered in the wake of *Atlantic Research* compel a different conclusion. For example, in *Kotrous v. Goss-Jewett Co. of N. Cal.*, 523 F.3d 924 (9th Cir. 2008), the Ninth Circuit overruled its pre-*Atlantic Research* precedent and held that a PRP *can* seek to recover costs under Section 107. It also clarified that a PRP cannot bring a

---

[6] The magistrate ultimately dismissed the Section 107 claims, but not because the PRPs' Section 113 claims foreclosed them, as DOJ argues. The claims were dismissed because the PRPs could not allege, as Plaintiffs have here, that they incurred costs that were "voluntary" in nature (i.e., not compelled by government order).

contribution claim under Section 113 unless it has been first subject to a Section 106 or 107

action. But the court did *not* hold that once a PRP is sued under Section 106 or 107, it loses its

right to seek cost recovery under Section 107 for costs that it incurred "voluntarily" (i.e., not

compelled by governmental order). In fact, the court recognized that distinct types of costs are

recoverable under each provision, just as the Supreme Court did in *Atlantic Research*:

> A PRP cannot choose remedies, but must proceed under §
> 113(f)(1) for contribution if the party has paid to satisfy a
> settlement agreement or a court judgment pursuant to an action
> instituted under § 106 or § 107. *If, however, the private party has
> itself incurred response costs, it may seek recovery under § 107.*

*Kotrous*, 523 F.3d at 934 (emphasis added).

Likewise, in *E.I. DuPont de Nemours and Co. v. United States*, 508 F.3d 126 (3d

Cir. 2007), the Third Circuit overruled its prior precedent and held that "PRPs may apply *both* §§

107(a)(4)(B) and 113(f)(1) to recover cleanup expenses . . . ." *Id.* at 134 (emphasis added).

Recognizing that "the two sections provide two clearly distinct remedies," the court concluded

that "there is no doubt that, contrary to our precedents, a PRP may bring a cause of action for

cost recovery under § 107 and *need not rely upon § 113 as its exclusive remedy.*" *Id.* at 135

(emphasis added). Again, the court did *not* hold, let alone suggest, that a PRP who has incurred

voluntary response costs loses its right to recover those costs under Section 107(a) once it is sued

under Section 106.[7]

D.     DOJ's Argument Cannot Be Justified Based on Pre-*Atlantic Research* Case Law.

Unable to substantiate its position by any other means, DOJ hopes to rely on cases

decided prior to *Atlantic Research*. But none of these cases stand for the proposition DOJ

ascribes to them. For example, the holding in *Metropolitan Water Reclamation District v. N.*

---

[7] The fifth case rendered since *Atlantic Research* is *OSI, Inc. v. United States*, No. 07-10941, 2008 WL 1932117 (11th Cir. May 5, 2008). In that case, the court "reject[ed] OSI's claims for cost recovery under CERCLA" in a footnote, noting only that "OSI has not come forward with even a scintilla of evidence that they have incurred or plan to incur costs to clean up LF4." *Id*. at *2 n.1. The court engaged in no further substantive discussion.

*Am. Galvanizing & Coatings, Inc.,* 473 F.3d 824 (7th Cir. 2007), was strictly that a Section 113(f) claim can only be brought following a Section 106 or Section 107 action. It did not hold, as DOJ claims, that a Section 113(f) claim is *the only* claim that can be brought following a Section 106 or Section 107 action. If it had, it would directly conflict with the Supreme Court's clear statement that certain costs, regardless of when incurred, "are recoverable *only* by way of § 107(a)(4)(B)." *Atlantic Research*, 127 S. Ct. at 2338 n.6 (emphasis added).

Similarly, in *Consolidated Edison Co. v. UGI Utilities, Inc.*, 423 F.3d 90, 100 (2d Cir. 2005), the court merely held "that section 107(a) permits a party that has not been sued or made to participate in an administrative proceeding, but that, if sued, would be held liable under section 107(a), to recover necessary response costs incurred voluntarily . . . ." In fact, the court noted that, in *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), the Supreme Court had already "expressly stated that the section 107(a) cost recovery remedy and the section 113(f)(1) contribution remedy, though 'similar at a general level in that they *both* allow private parties to recoup costs from other private parties,' are 'clearly distinct.'" *Id.* (*quoting Cooper*, 125 S. Ct. at 582 n3) (emphasis added). The court made clear that "[t]his holding impels us to conclude that it no longer makes sense to view section 113(f)(1) as the means by which the section 107(a) cost recovery remedy is effected by parties that would themselves be liable if sued under section 107(a)." *Id.* Yet that is precisely what DOJ is urging the Court to do here—to read into CERCLA a requirement that would force Plaintiffs to effect the Section 107(a) cost recovery remedy through Section 113(f).

E. <u>DOJ's Argument Requires This Court to Resolve Questions of Fact and as Such Has No Place in the Context of a Motion to Dismiss.</u>

As a fall-back position, DOJ argues in the alternative that even if a PRP may bring claims simultaneously under both Section 107(a)(4)(B) and Section 113(f), Plaintiffs' Section 107(a) claim should still be dismissed because the costs Plaintiffs seek to recover were

13

not, in fact, incurred "voluntarily."[8]  DOJ Brief, Dkt. # 132, pp. 32-33.  According to DOJ, given the government's alleged "long history of involvement" at the Fox River site, any costs incurred by Plaintiffs must have been incurred "at the behest" of the government and so are not truly "voluntary."  DOJ Brief, Dkt. # 132, p. 32.  This argument fails for two reasons.

First, DOJ's argument is irrelevant and immaterial at this stage in the case. Plaintiffs have alleged that they sustained expenses separate and apart from those compelled by governmental order.  *See* Third Amended Complaint, Dkt. # 80, ¶ 42.  DOJ may disagree with that factual allegation, but such a factual disagreement has no place in the context of a motion to dismiss.  *See Jackson v. E.J. Brach Corp*., 176 F.3d 971, 977-78 (7th Cir. 1999) (in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is to "accept the well-pleaded allegations in the complaint as true and draw [ ] all reasonable inferences in favor of the plaintiff") (internal quotation marks omitted).  If a Defendant in this case believes that none of Plaintiffs' costs satisfy the criteria set out in *Atlantic Research*, that party can file a motion for summary judgment at the appropriate time, with properly substantiated affidavits and other evidence.  But until that time, Plaintiffs' allegations must be taken as true and DOJ's claims to the contrary should be rejected.

Second, DOJ's argument is premised on a gross overgeneralization.  DOJ assumes that once any governmental entity has taken any notice of a contaminated site, all subsequent costs were necessarily incurred "at the behest" of the governmental entity, even if there had been, for example, no communication between the two.  Such an overblown view of governmental power has no basis in the discussion of "voluntariness" contained in *Atlantic Research*.

---

[8] DOJ's fall-back argument further reveals that DOJ's motivation here is not simply to provide disinterested "assistance" to the Court in its "interpretation of CERCLA," because otherwise it would not be involving itself in a factual dispute over whether Plaintiffs' costs in fact meet the criteria for a Section 107(a) claim as outlined in *Atlantic Research*.

In its brief to the Supreme Court in the *Atlantic Research* case, DOJ argued that "Section 113(f) provide[d] the exclusive mechanism by which a potentially responsible party [could] sue another under CERCLA." *United States v. Atlantic Research Corp.*, No. 06-562, Brief for the United States, p. 26. The Supreme Court rejected this argument, in remarkably strong language, noting that it made "little textual sense," was "internally confusing," and required "a textually dubious construction that threatens to render the entire provision a nullity." *Atlantic Research*, 127 S. Ct. at 2336-37. Unbowed, DOJ has re-cast the argument again here, with only the slightest modification. Paying lip-service to *Atlantic Research,* it now concedes that PRPs can sue under Section 107(a). However, it then insists that this right is not available to "any" PRP, as the statute says, but instead only to a very limited class of PRPs, specifically, (1) those who never had a Section 113 claim; and (2) those who are involved in a site where there has been no governmental activity; and (3) those who do not share a "common liability" to the government with any other party. In short, DOJ wants this Court to limit *Atlantic Research* to its specific facts.[9] In so doing, it is DOJ, not Plaintiffs, that is trying to "shop for a better deal than Congress gave." DOJ Brief, Dkt. # 132, p. 29. It hopes to have this Court strip PRPs of the rights originally granted by Congress and affirmed by the Supreme Court in *Atlantic Research*. As discussed above, this effort would be contrary to the plain language of the statute, the Supreme Court's decision in *Atlantic Research*, and case law interpreting *Atlantic Research*, and therefore it must be rejected.

---

[9] In its Brief, DOJ repeatedly emphasizes that a Section 104(a)(4)(B) cause of action should only be permitted for "parties in ARC's situation." *See, e.g.,* DOJ Brief, Dkt. # 132, p. 22 ("The Court merely held that a person in ARC's situation did."); p. 25 ("the *Atlantic Research* court found that a § 107(a)(4)(B) remedy is provided to a person in ARC's situation"); p. 28 (same).

**III.    Plaintiffs Can Recover, Pursuant to Section 107(a), Payments Made to the Natural Resource Damage Trustees.**

A portion of Plaintiffs' Count I seeks to recover from Defendants their allocable shares of payments Plaintiffs made to the natural resource damages trustees for the Lower Fox River Site.  *See* Third Amended Complaint, Dkt. # 80, ¶ 2 ("API and NCR have made substantial payments to the trustees for natural resource damages to allow them to implement various restoration projects even before the design of the remedy is complete.  The amounts API and NCR have spent on these activities are well in excess of their responsibility for this work.").  To the extent these payments were "voluntary," they are clearly recoverable pursuant to a claim under Section 107(a).  *See Atlantic Research*, 127 S. Ct. at 2338 n.6 ("costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B)").

DOJ tries to make two arguments for why this portion of Count I should be dismissed.  First, DOJ cites the undisputed principle that private parties are not permitted to bring claims under Section 107(a)(4)(C), and then argues that Count I cites "Section … 107(a)(4)(C)" as its "sole statutory basis."  DOJ Brief, Dkt. # 132, p. 18.  This argument fails because Count I does not in fact rely on Section 107(a)(4)(C) as its "sole statutory basis."  Every complaint filed by Plaintiffs has cited Section 107(a)(4)(B) as a basis for its right to recover these payments.  *See* Complaint, Dkt. # 1a, ¶ 26; Amended Complaint, Dkt. # 35a, ¶ 29; Second Amended Complaint, Dkt. # 41, ¶ 30; Third Amended Complaint, Dkt. # 132, ¶ 43; Fourth Amended Complaint, Dkt. # 148, ¶ 64; Fifth Amended Complaint, Dkt. # 149, ¶ 68.  Yet the ellipsis in DOJ's citation to the Third Amended Complaint leaves out this reference to Section 107(a)(4)(B).

Second, DOJ argues that Section 107(a)(4)(B) does not contain the word "damages" and therefore Plaintiffs' claim for "damages" under Count I and Section 107(a)(4)(B)

cannot stand. DOJ's focus on the word "damages," however, misses the point. Section 107(a)(4)(B) authorizes a private party to recover "any other necessary costs of response … consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B); *Atlantic Research*, 127 S. Ct. at 2336. Plaintiffs' payments to the natural resource trustees, as alleged in Count I, can certainly qualify as "costs of response" and therefore are plainly recoverable under this provision. *See* 42 U.S.C. §§ 9601(23) and (25). By focusing on the word "damages," DOJ, like Movants, has misunderstood Plaintiffs' claim as seeking to recover natural resource damages in the first instance, which is not the case. *See* Plaintiffs' Consolidated Response to Defendants P.H. Glatfelter Company's and Menasha Corporation's Motions to Dismiss ("Consolidated Response"), Dkt. # 92, p 19.

## IV. Plaintiffs' Claims Against Glatfelter Relating to OU1 Are Not Barred by Section 113(f)(2).

Plaintiffs also have asserted claims under Sections 107(a)(4)(B) and 113(f) against Glatfelter relating to costs incurred at OU1 of the Lower Fox River Site. DOJ claims that both of these claims are barred by Section 113(f)(2). Again, DOJ's arguments are directly at odds with *Atlantic Research* and the plain language of the statute.

First, DOJ tries to characterize Plaintiffs' Section 107(a)(4)(B) claim against Glatfelter as an "attempt[] to avoid the contribution protection afforded Glatfelter by the OU1 settlement," and argues that Section 113(f)(2) bars this claim. DOJ Brief, Dkt. # 132, p. 35. However, the Supreme Court expressly noted in *Atlantic Research* that "[t]he settlement bar [set forth in Section 113(f)(2)] *does not by its terms protect against cost-recovery liability under § 107(a)*." *Atlantic Research*, 127 S. Ct. at 2339 (emphasis added). The Court reasoned that "permitting PRPs to seek recovery under §107(a) will not eviscerate the settlement bar set forth in § 113(f)(2)" because settling PRPs are still afforded "significant" benefits and protections under the statute. *Id.* at 2339 (emphasis added). Thus, under *Atlantic Research*, Plaintiffs have

properly alleged a claim under Section 107(a)(4)(B) to recover "voluntary" (i.e., not compelled by government order) costs from Glatfelter at OU1.  *See also* Consolidated Response, Dkt. # 92, p. 18.

Second, as Plaintiffs explained in their Consolidated Response, the plain language of Section 113(f)(2) limits the contribution protection granted by the OU1 Consent Decree to those "matters addressed in the settlement."  42 U.S.C. § 9613(f)(2); *see also* Consolidated Response, Dkt. # 92, pp. 20-21.  The OU1 Consent Decree expressly defines the "matters addressed in the settlement" as those response activities performed and response costs incurred "*after* July 1, 2003."  Order Granting Plaintiffs' Motion to Enter Consent Decree, *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949 (E.D. Wis. April 12, 2004), Dkt. # 22, ¶¶ 84(c), 101 (emphasis added).  The cost allegations in Plaintiffs' Third Amended Complaint are not so limited in time.  Plaintiffs have plainly alleged the incurrence of costs at the Lower Fox River Site at least as early as 1997.  *See* Third Amended Complaint, Dkt. # 80, ¶¶ 33-34.  As a result, contrary to DOJ's position, Plaintiffs' Section 113(f) claim against Glatfelter relating to OU1 is also not unequivocally barred by Section 113(f)(2).

## CONCLUSION

For the foregoing reasons, the arguments set forth in the United States' Brief as *Amicus Curiae* should be rejected, and the pending Motions to Dismiss of Defendants P.H. Glatfelter Company, Menasha Corporation, Leicht Storage & Transfer Company, and Wisconsin Public Service Corporation should be dismissed in their entirety.

Respectfully submitted,

APPLETON PAPERS INC.

s/ Michael L. Hermes

NCR CORPORATION

s/ Kathleen L. Roach

Counsel for NCR Corporation:
J. Andrew Schlickman
Kathleen L. Roach
Evan B. Westerfield
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
Fax: (312) 853-7036

J. Ric Gass
Gass Weber Mullins LLC
309 North Water Street
Milwaukee, Wisconsin 53202
(414) 224-7697
Fax: (414) 224-6116

Counsel for Appleton Papers Inc.:
Michael L. Hermes
Metzler Timm Treleven & Hermes SC
222 Cherry Street
Green Bay, Wisconsin 54301
(920) 435-9393
Fax: (920) 435-8866

Dated: June 24, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | | |
|---|---|---|
| APPLETON PAPERS INC. and<br>NCR CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-CV-00016-WCG |
| | ) | |
| GEORGE A. WHITING PAPER COMPANY, | ) | |
| P. H. GLATFELTER COMPANY, | ) | |
| MENASHA CORPORATION, | ) | |
| GREEN BAY PACKAGING INC., | ) | |
| INTERNATIONAL PAPER COMPANY, | ) | |
| LEICHT TRANSFER & STORAGE COMPANY, | ) | |
| NEENAH FOUNDRY COMPANY, | ) | |
| NEWPAGE WISCONSIN SYSTEM INC., | ) | |
| THE PROCTER & GAMBLE PAPER | ) | |
| PRODUCTS COMPANY, | ) | |
| WISCONSIN PUBLIC SERVICE CORP., | ) | |
| CITY OF APPLETON, | ) | |
| CITY OF DE PERE, | ) | |
| CITY OF GREEN BAY, | ) | |
| CITY OF KAUKAUNA, | ) | |
| BROWN COUNTY, | ) | |
| GREEN BAY METROPOLITAN | ) | |
| SEWERAGE DISTRICT, | ) | |
| HEART OF THE VALLEY METROPOLITAN | ) | |
| SEWERAGE DISTRICT, | ) | |
| NEENAH-MENASHA SEWERAGE | ) | |
| COMMISSION, | ) | |
| VILLAGE OF KIMBERLY, | ) | |
| VILLAGE OF WRIGHTSTOWN, | ) | |
| WTM I COMPANY,  and | ) | |
| U.S. PAPER MILLS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 24, 2008, I electronically filed **Plaintiffs' Response to the**

**United States'** *Amicus Curiae* **Brief Addressing Issues Raised by Motions to Dismiss**

**Certain Claims in Plaintiffs' Third Amended Complaint** using the ECF system, which will

send notification of such filing to: Philip Munroe at DiRenzo & Bomier LLC,

pmunroe@direnzollc.com; Scott Fleming at Weiss Berzowski Brady LLP, sbf@wbb-law.com;

David Mandelbaum at Ballard Spahr Andrews & Ingersoll, LLP,

mandelbaum@ballardspahr.com; Marc Davies at Ballard Spahr Andrews & Ingersoll, LLP,

davies@ballardspahr.com; Ronald Varnum at Ballard Spahr Andrews & Ingersoll, LLP,

varnumr@ballardspahr.com; Jennifer Simon at Ballard Spahr Andrews & Ingersoll, LLP,

simonj@ballardspahr.com; Sabrina Mizrachi at Ballard Spahr Andrews & Ingersoll, LLP,

mizrachis@ballardspahr.com; Mark Feldmann at Menn Law Firm, Ltd.,

mark-feldmann@mennlaw.com; Joseph Beisenstein at Menn Law Firm, Ltd.,

joseph-beisenstein@mennlaw.com; Jacy T. Rock at Faegre & Benson LLP, jrock@faegre.com;

Colin Deihl at Faegre & Benson LLP, cdeihl@faegre.com; Delmar Ehrich at Faegre & Benson

LLP, dehrich@faegre.com; David Edquist at von Briesen & Roper, s.c.,

dedquist@vonbriesen.com; Christopher Riordan at von Briesen & Roper, s.c.,

criordan@vonbriesen.com; Patrick Wells at von Briesen & Roper, s.c., pwells@vonbriesen.com;

Russell Wilson at Ruder Ware, rwilson@ruderware.com; Linda Benfield at Foley & Lardner

LLP, lbenfield@foley.com; Sarah Slack at Foley & Lardner LLP, sslack@foley.com; Charles

Gering at Foley & Lardner LLP, cgering@foley.com; Arthur Radke at Dykema Gossett PLLC,

aradke@dykema.com; Michelle Gale at Dykema Gossett PLLC, mgale@dykema.com; Joseph

Basta at Dykema Gossett PLLC, jbasta@dykema.com; Daniel Murray at Johnson & Bell, Ltd.,

murrayd@jbltd.com; Garrett Boehm, Jr. at Johnson & Bell, Ltd., boehmg@jbltd.com; Frederick

Mueller at Johnson & Bell, Ltd., muellerf@jbltd.com; John Cermak, Jr. at Baker & Hostetler

LLP, jcermak@bakerlaw.com; Sonja Inglin at Baker & Hostetler LLP, singlin@bakerlaw.com;

Timothy Anderson at Remley & Sensenbrenner, S.C., tanderson@remleylaw.com; Thomas

O'Donnell at Calfee Halter & Griswold LLP, todonnell@calfee.com; William Coughlin at

Calfee Halter & Griswold LLP, wcoughlin@calfee.com; Ted Waskowski at Stafford Rosenbaum

LLP, twaskowski@staffordlaw.com; Richard Yde at Stafford Rosenbaum LLP,

ryde@staffordlaw.com; Lora L. Zimmer at Hinshaw & Culbertson LLP,

lzimmer@hinshawlaw.com; William Mulligan at Davis & Kuelthau, s.c.,

wmulligan@dkattorneys.com; Kevin Lyons at Davis & Kuelthau, s.c., klyons@dkattorneys.com;

Bruce Olson at Davis Kuelthau, s.c., bolson@dkattorneys.com; Thomas Schrimpf at Hinshaw &

Culbertson LLP, tschrimpf@hinshawlaw.com; Randall Stone at U.S. Department of Justice,

randall.stone@usdoj.gov; Michael Hermes at Metzler, Timm, Treleven & Hermes, S.C.,

mhermes@mtthlaw.com; J. Ric Gass at Gass Weber Mullins LLC, gass@gasswebermullins.com.

 I also hereby certify that on June 24, 2008 I caused a copy of the foregoing to be sent by

United States Postal Service, postage prepaid, and electronic mail to the following counsel:

> James B. Gunz
> GUNZ LAW OFFICE
> 1142 Glenayre
> Neenah, WI 54956
> attygunz@msn.com
> *Counsel for Neenah-Menasha Sewerage Commission*


> NCR CORPORATION

> s/ Kathleen L. Roach
> By: One of Its Attorneys

J. Andrew Schlickman (Illinois Bar No. 3122104)
Kathleen L. Roach (Illinois Bar No. 6191432)
Evan Westerfield (Illinois Bar No. 6217037)
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

3

4