# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

APPLETON PAPERS INC. and NCR CORP.,

        Plaintiffs,

    v.                                   Case No. 08-C-16

GEORGE A. WHITING PAPER CO., et al.,

        Defendants.

## DECISION AND ORDER

Plaintiffs Appleton Papers Inc. and NCR Corp. brought this action seeking cost recovery and contribution for the costs of cleaning up contamination in the Lower Fox River. Plaintiffs also seek declaratory relief. At issue presently are the motions to dismiss initially filed by Defendants Menasha Corp., P.H. Glatfelter Co., and WTM I Company.[1] In their motions, which are joined in part by the United States as *amicus curiae*, the Defendants seek dismissal of two of the Fifth Amended Complaint's three counts. Defendants Glatfelter and WTM I Company also seek dismissal of portions of the remaining count to the extent that count seeks recovery of costs related to the cleanup of Little Lake Butte des Morts. For the reasons given below, the motions will be granted in part and denied in part.

---

[1]These parties have filed briefs in support of the motions to dismiss, but the motions have been joined by several other defendants. In addition, the filing of a series of amended complaints has resulted in a number of additional motions addressing these amended complaints. The parties have agreed that the third, fourth and fifth amended complaints did not change the substance of the claims the Plaintiffs have brought (and thus the substance of their arguments remained unchanged as well). The Fifth Amended Complaint is the most recent one, and I therefore address all of the arguments for dismissal with reference to that complaint.

# I. BACKGROUND

This case involves responsibility for cleaning up the Fox River, which has been polluted by polychlorinated biphenyls ("PCBs") released by area industries in decades past.[2] Plaintiffs NCR Corp. and Appleton Papers Inc. are two of eight entities identified by the Government as potentially responsible parties ("PRPs") liable for cleanup of the site under the Comprehensive Environmental Response, Compensation and Liability Act, better known as CERCLA, 42 U.S.C. § 9601 *et seq*. The other six PRPs, as well as several other businesses and municipal entities, are named as Defendants in this action.

Beginning in the mid-1990's, the federal government began assessing the environmental damage to the site, and by 1997 the Environmental Protection Agency called on the PRPs to begin negotiations to prepare for a remedial investigation and feasibility study for the site. In 2001, the United States and State of Wisconsin filed suit and lodged a Consent Decree proposing settlement with Plaintiffs. Pursuant to that decree, Plaintiffs agreed to pay up to $41.5 million over a four-year period for restoration efforts. (E.D. Wis. Case No. 01-C-816, Dkt. # 2.) Two of the Defendants — P.H. Glatfelter Co. and WTM I Company[3]—entered into their own Consent Decree in 2003 for remedial actions in Little Lake Butte des Morts, which was designated by the EPA as Operable Unit 1 ("OU1"). (The EPA divided the river site into a total of five "Operable Units.")

---

[2] Because the issues presented are largely questions of law, the factual background underlying this case has not been set forth at any length by any of the parties, with the exception of the Government's *amicus* brief. For more information, the EPA's website sets forth a detailed history of the cleanup project and references to key legal documents and cleanup plans. *See* http://www.epa.gov/region5/sites/foxriver/index.html (last visited Aug. 18, 2008).

[3] WTM stands for Wisconsin Tissue Mills, a predecessor entity.

In November 2007, the EPA issued a unilateral administrative order directing the PRPs to begin implementing the remedial work in OUs 2-5 (stretching from the dam in Appleton to the mouth of Green Bay) as set forth in the EPA's cleanup plans.[4]  These plans involve a combination of dredging and "capping" (covering up) the PCBs in the river bottom.[5]   In January 2008, the Plaintiffs filed this action seeking apportionment of the costs for the cleanup ordered and other costs associated with the PCB contamination.  Plaintiffs state that "[t]he purpose of this lawsuit is to allocate the equitable shares of the cleanup costs and natural resource damages associated with the Lower Fox River Contamination, and to require Defendants and the other responsible parties to pay for the upcoming remedial work and natural resource damages activities in accordance with their allocated shares."  (Fifth Am. Compl., ¶ 3.)

## II.  COUNT 1, CERCLA SECTION 107

In their first count, Plaintiffs allege that the Defendants are liable under CERCLA § 107 for costs Plaintiffs assert they have voluntarily paid in connection with the site cleanup.[6]   The

---

[4]The unilateral administrative order contains additional information about the history of the site.  *See* http://www.epa.gov/region5/sites/foxriver/pdf/fox-river-uao-20071113.pdf (last visited Aug. 18, 2008).

[5]See, e.g., http://dnr.wi.gov/org/water/wm/foxriver/capping.html (last visited Aug. 18, 2008).

[6]Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
    (1) the owner and operator of a vessel or a facility,
    (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
    (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or

3

Defendants, and the United States as *amicus*, argue that Plaintiffs' § 107 claim is not viable because they have exclusive recourse through § 113 of CERCLA. Because these parties believe § 113 is Plaintiffs' exclusive CERCLA remedy, they move for dismissal of Plaintiffs' § 107 claim.

## A. Recent Development of CERCLA

One court cited by the parties has noted that "wading through CERCLA's morass of statutory provisions can often seem as daunting as cleaning up one of the sites the statute is designed to cover." *Cadlerock Props. Joint Venture, L.P. v. Schilberg,* 2005 WL 1683494, at *5, 2005 U.S. Dist. LEXIS 14701 (D. Conn. 2005). This case lives up to that billing. The key dispute regarding Count I involves the interplay between §§ 107 and 113 of CERCLA, and the Seventh Circuit has recently had occasion to address the relationship between those statutes:

> Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., imposes liability on certain private parties for the cleanup costs associated with a hazardous waste contamination. In turn, CERCLA Section 113(f), added by the Superfund

> treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
> (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

4

Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99-499, 100 Stat. 1613 (1986), allows those responsible for cleanup costs to bring actions for contribution against one another as a means of apportioning fault.

*Metropolitan Water Reclamation Dist. of Greater Chicago v. North American Galvanizing & Coatings, Inc.,* 473 F.3d 824, 825 (7th Cir. 2007).

The genesis of the § 113 contribution action was the scenario that occurred when the EPA recovered costs from a responsible party in excess of that party's actual culpability. Although CERCLA originally lacked a specific section providing for contribution, courts had found an implied right of action for potentially responsible parties who had paid more than their fare share. That implied cause of action available under § 107 became express by virtue of an act of Congress:

> In 1986, Congress amended CERCLA by way of SARA to authorize expressly a contribution action. See SARA, Pub.L. No. 99-499, 100 Stat. 1613. The provision allowing for contribution states in relevant part: "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1). In actions under this provision [section 113], the court allocates costs using equitable principles. Liability is several, as opposed to Section 107(a)'s joint and several scheme.

*Id.* at 828.

As the Seventh Circuit noted in *Metropolitan Water,* following the creation of the statutory § 113 contribution action the question arose as to whether that section should now be viewed as a party's *exclusive* means of obtaining payment from other PRPs. Appellate courts addressing that issue all concluded that the § 113(f) contribution claim should in fact generally be deemed a PRP's exclusive remedy for obtaining contribution. Among the reasons for this conclusion was that § 113(f)'s contribution provisions were stricter: for example, it has a 3-year statute of limitations versus § 107(a)'s six-year limitations period. As the Second Circuit noted, to allow a PRP to use

§ 107(a) to recover costs when § 113(f) was now available would render § 113(f) meaningless and undermine Congress' purpose in creating the cause of action. *Bedford Affiliates v. Sills,* 156 F.3d 416, 424 (2d Cir. 1998).

It thus became clear that § 113(f) was the exclusive remedy of a PRP whose cleanup costs came in response to Government-ordered remedial action. The flip-side of that development was the Supreme Court's holding in *Cooper Indus. v. Aviall Svcs., Inc.* that a private party who had *not* been the subject of a Government-ordered cleanup action may *not* maintain a § 113(f) contribution claim against other liable parties. 543 U.S. 157, 160-61 (2004). In other words, the Court made it clear that § 113(f) was unavailable to PRPs who had not been the subject of any civil action under § 107(a) or § 106. In ruling out a § 113(f) action for such parties, the Court left open the possibility (without deciding the question) that the implied right of action under § 107 would still survive as a viable remedy for a party that had incurred cleanup costs on its own.

The Seventh Circuit addressed this question in *Metropolitan Water.* The question in that case was whether there was a private right of action for a party under § 107(a) for a *potentially* liable party—i.e., a party who has not been sued under § 107 or § 106 but who *might* be subject to such a suit one day. 473 F.3d at 834-36. Metropolitan Water had not been the subject of any EPA order nor compelled to initiate any cleanup action, and thus the cleanup costs it incurred were voluntary rather than the result of adverse litigation. Still, the defendant argued that Metropolitan Water could, in the future, be subject to such an action and thus should be limited to seeking relief under § 113(f). The court disagreed. Following the Eighth and Second Circuits, it found that a party was not foreclosed from bringing a § 107(a) cost recovery action merely because it might later be eligible to bring a contribution action under § 113(f). Allowing such cost-recovery actions at an

6

early stage (e.g., before a party was sued by the Government) would foster CERCLA's goal of speedy cleanup and would encourage parties to take remedial action rather than wait to be sued. *Id.* In sum, the court found that when a PRP incurs cleanup costs *voluntarily* (i.e., not the result of an adverse lawsuit), it may seek recovery of those costs under § 107 against other parties regardless of the fact that § 113(f) might be available to it in the event it were later sued.

In finding a viable § 107 action under those circumstances, however, the Seventh Circuit was careful to note that it was not overturning its earlier precedent, in particular its decision in *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994). In *Akzo,* the Court had found § 113(f) to be the exclusive recovery remedy for parties who had incurred costs as a result of lawsuits: a claim "'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make' sounds in contribution, and must be brought under § 113(f)(1)." *Metropolitan Water,* 473 F.3d at 828 (quoting *Akzo,* 30 F.3d at 764). Such *involuntarily* incurred recovery costs are the sort for which § 113(f)'s contribution regime is the exclusive remedy. In a similar holding, the Second Circuit summarized its own view succinctly: "we hold that section 107(a) permits a party that has not been sued or made to participate in an administrative proceeding, but that, if sued, would be held liable under section 107(a), to recover necessary response costs incurred voluntarily, not under a court or administrative order or judgment." *Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.,* 423 F.3d 90, 100 (2d Cir. 2005).

A year ago the Supreme Court addressed the question it had left open in *Cooper Industries* and agreed with the approach taken by the Seventh and Second Circuits. *United States v. Atlantic Research Corp.*, 127 S.Ct. 2331 (2007). Atlantic Research Corp. had caused pollution at a site

7

owned by the United States Government. It cleaned up the site on its own and then sought cost

recovery and contribution from the Government under both § 107 and § 113. The Court's decision

in *Cooper Industries* foreclosed recovery under § 113 because Atlantic Research had not been the

subject of any enforcement action. In other words, it had incurred no compelled cleanup costs. The

Supreme Court held, however, that by its plain terms § 107 allowed recovery even though Atlantic

Research was a PRP—in other words, as in *Metropolitan Water,* the fact that it might later be

subject to suit for liability did not render recovery under § 107 unavailable. A contribution action

under § 113 was premised on the traditional meaning of "contribution"—"a tortfeasor's right to

collect from others responsible for the same tort after the tortfeasor has paid more than his or her

proportionate share, the shares being determined as a percentage of fault." *Id.* at 2338 (quoting

Black's Law Dictionary 353 (8th ed. 1999)).

> By contrast, § 107(a) permits recovery of cleanup costs but does not create
> a right to contribution. A private party may recover under § 107(a) without any
> establishment of liability to a third party. Moreover, § 107(a) permits a PRP to
> recover only the costs it has "incurred" in cleaning up a site. 42 U.S.C.
> § 9607(a)(4)(B). When a party pays to satisfy a settlement agreement or a court
> judgment, it does not incur its own costs of response. Rather, it reimburses other
> parties for costs that those parties incurred.
>
> Accordingly, the remedies available in §§ 107(a) and 113(f) complement
> each other by providing causes of action "to persons in different procedural
> circumstances."

*Id.* (quoting *Consolidated Edison*, 423 F.3d at 99).

The court summarized the state of affairs as follows: "For our purposes, it suffices to

demonstrate that costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs

of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only

under § 113(f)." *Id.* n.6.

8

In sum, after *Atlantic Research,* the present state of the law can be boiled down to the following two principles:

1. Costs incurred involuntarily (e.g., as the result of adverse litigation or Government order) must be recovered through a contribution action under § 113(f).

2. Costs incurred voluntarily when no adverse litigation has occurred (as in *Atlantic Research* and *Metropolitan Water*) may be recouped through a cost recovery action under § 107.

## B. Analysis

The question Plaintiffs pose falls somewhere within this minefield. Plaintiffs concede that many of their costs were incurred as the result of adverse litigation against them and the consent decrees. As such, those costs were not "incurred" voluntarily and must be sought through a § 113 contribution action (as in Plaintiffs' Count II). They are part of a collective liability for a single tort. *Atlantic Research,* 127 S.Ct. at 2337-38. But, Plaintiffs add, there were *other* costs that, though associated with the adverse proceedings, were nevertheless *voluntarily* incurred by them. These costs, which might be called ancillary costs, include "the costs of identifying other responsible parties, conducting risk assessments, funding natural resources damages projects, and otherwise investigating and responding to the Lower Fox River Contamination." (Dkt. # 92 at 16.) Although these were incurred in *response* to the Government's involvement, Plaintiffs do not view such costs as part-and-parcel of the collective tort liability for which a contribution action would be appropriate. It is these costs that they seek to recover in their § 107 claim.

It seems the crux of the problem stems from what the courts have meant when they say that § 107 is available for a party to recover "voluntarily" incurred costs. Does "voluntary" mean that

9

courts should analyze all of a PRP's costs to determine which costs were compelled and which were voluntary? Or, instead, did the courts using that term assume that once a Government enforcement action began, all costs incurred by the PRP no longer qualified as voluntarily incurred costs? In other words, should the focus be on the nature of the costs themselves or on the procedural status of the party seeking to recover those costs?

In the Plaintiffs' view, the costs they seek to recover under § 107 were voluntarily incurred because they were "in addition to those costs and damages paid or to be paid pursuant to the State Agreement, the 2001 Consent Decree, the 2005 Consent Decree Extension, the Administrative Settlement Agreement and Order on Consent and the 2006 Phase I Consent Decree." (Dkt. # 92 at 16.) In other words, they believe that costs incurred above and beyond those explicitly provided for in consent decrees and settlement agreements are fairly recoverable under § 107.[7]

In opposing the viability of the Plaintiffs' § 107 claim, the Government takes the position that a PRP may have a cause of action under § 107 (as in *Atlantic Research*) <u>or</u> it may have a cause of action under § 113. Once it has been sued, however, it cannot pursue both. For this principle, the Government's brief relies on the *Atlantic Research* court's summary of its holding:

---

[7]*Key Tronic Corp. v. United States*, 511 U.S. 809 (1994), would seem to supply some support for Plaintiffs' position. In that case Key Tronic asserted a claim under § 113(f) to recover payments it had made in settlement of an enforcement action and a separate claim under § 107(a) to recover response costs it incurred prior to the settlement. The section § 113(f) claim was dismissed, partially on the merits and partially as moot after the parties reached a settlement, and the case went to the Supreme Court on the issue of whether attorneys fees were recoverable as a necessary cost of response under § 107(a). Describing claims under §§ 107(a) and 113(f) as "similar and somewhat overlapping remed[ies]," the Court concluded that attorneys fees were as a general matter not recoverable costs under § 107(a) but that other costs sought by Key Tronic were. 511 U.S. at 816. The question of whether Key Tronic even had a § 107(a) claim since it had previously been named in an enforcement action was not addressed, however, apparently because it had not been raised. I therefore do not view it as supporting authority for Plaintiff's position.

10

The [Eighth Circuit] reasoned that § 107(a)(4)(B) authorized suit by any person other than the persons permitted to sue under § 107(a)(4)(A). 459 F.3d at 835. Accordingly, it held that § 107(a)(4)(B) provides a cause of action to Atlantic Research. To prevent perceived conflict between § 107(a)(4)(B) and § 113(f)(1), the Court of Appeals reasoned that *PRPs that "have been subject to §§ 106 or 107 enforcement actions are still required to use § 113*, thereby ensuring its continued vitality." We granted certiorari, and now affirm.

*Id.* at 2335 (italics added).

In particular, the Government and Defendants focus on the italicized language stating that "PRPs that have been subject to §§ 106 or 107 enforcement actions are still required to use § 113." This phrase suggests that courts are not interested in analyzing the particular nature of the costs sought (as Plaintiffs prefer) but rather focus simply on the PRP's procedural status, specifically, whether it has been "subject" to an enforcement action. In sum, they assert that once the Government has ordered cleanup, the PRP's costs can no longer be deemed voluntary, regardless of whether the *specific* costs sought were actually compelled or not.

The position of the Defendants and the United States, in this Court's view, finds greater support in the text of CERCLA and the caselaw construing it. Despite the courts' use of the terms "voluntary" and "involuntary" to distinguish between payments recoverable under § 107(a) and those recoverable under § 113(f), the operative principle appears to be that § 107(a) is available to recover payments only in cases where § 113(f) is not.[8] In cases where a claim for contribution can be asserted under § 113(f), § 107(a) cannot be used. This makes sense for the reasons noted by the

---

[8]The notion that any of the response costs paid by API and NCR were voluntary is curious, to say the least. API and NCR are not philanthropic organizations devoted to cleaning up environmental messes created by other companies. Their contributions to the response effort to the PCB contamination of the Lower Fox River resulted from their recognition that they were at least in part responsible for the contamination. In this respect, payments made prior to the enforcement action are no more or less voluntary than payments made pursuant to the consent decree they voluntarily entered with the state and federal governments.

11

Third Circuit in *Bedford Affiliates v. Sills*: "Were we to permit a potentially responsible person to elect recovery under either § 107(a) or § 113(f)(1), § 113(f)(1) would be rendered meaningless. . . . A recovering liable party would readily abandon a § 113(f)(1) suit in favor of the substantially more generous provisions of § 107(a)." 156 F.3d at 424. At the same time, parties who do not have access to § 113(a), either because they are completely innocent and do not share common liability with any PRPs, or because the Government has not brought an enforcement action, must be allowed to recover under § 107(a) if injustice is to be avoided.

This interpretation is consistent with *Atlantic Research* and *Metropolitan Water*. In both cases, the party seeking recovery under § 107 had *not* been sued by the Government for cleanup and thus could not bring a claim under § 113(f). The Seventh Circuit's discussion in *Metropolitan Water*, in particular, strongly suggests that it is the procedural history of the case that determines whether § 107 is available:

> In *Akzo,* the plaintiff, before bringing suit against another PRP, had been the subject of an EPA administrative order under § 106 requiring Akzo Coatings and several other "liable persons" to conduct certain emergency removal activities. [30 F.3d] at 762. Here, by contrast, there has been no EPA order and no proceeding apportioning necessary costs of response to Metropolitan Water. Thus, unlike in *Akzo*, Metropolitan Water has not been compelled to initiate cleanup or repay the EPA, and Metropolitan Water's action against North American is not an action "for an appropriate division of the payment one of them has been compelled to make." *Id.* at 764.

473 F.3d at 836. Likewise, in *Atlantic Research* the Supreme Court quoted the Eighth Circuit's holding that PRPs that "have been subject to §§ 106 or 107 enforcement actions are still required to use § 113." 127 S.Ct. at 2335. This suggests, again, that it is the availability of a claim under § 113(f) that determines whether a PPR can seek relief under § 107(a).

12

It thus follows that the question whether Plaintiffs have a claim under § 107(a) depends on whether any of the payments they seek to recover are recoverable under § 113(f). If all of the payments they now seek to recover are recoverable under § 113(f), their § 107(a) claim should be dismissed. If, on the other hand, some of their payments can not be recovered under § 113(f), then their § 107(a) claim survives. Applying that principle here, I conclude that whatever payments made by Plaintiffs that exceeded their responsibility either are, or were, recoverable under § 113(f). Accordingly, their § 107(a) claim will be dismissed.

By its plain terms, § 113(f)(1) authorizes a contribution claim "during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(2). Plaintiffs were first sued by the EPA in August of 2001, and so they have been free to assert such a claim since at least that time. As to what relief they could seek under § 113(f), *Atlantic Research* held that contribution, as used in § 113(f), is to be understood in the traditional sense of a "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." 127 S.Ct. at 2338 (*quoting Black's Law Dictionary* 353 (8th ed. 1999). To recover on a claim for contribution, a plaintiff must prove that he shares a common liability with the defendant and that he paid more than his appropriate share of the loss or damages. Dobbs, *The Law of Torts* § 386, 1079 (West 2000). Although § 113(f) requires that a PRP first be sued in an enforcement action under § 106 or § 107 before it can assert a claim for contribution, there is no such prerequisite to a claim for contribution in its traditional sense. As it exists at common law, a claim for contribution arises as soon as one party pays more than his fair share to discharge a common liability. *See, e.g., Johnson v. Heintz*, 73 Wis. 2d 286, 295-96, 243 N.W.2d 822-23 (1976). While it is the plaintiff's

13

burden to prove common liability, there is no requirement that such proof take the form of a prior judicial determination of liability. Nor is there any rule limiting the amount that can be recovered in contribution to payments expressly mandated by a previous action. Any payments made to discharge a common liability in excess of the plaintiff's own fair share are recoverable. *The Law of Torts, supra.*

Plaintiffs here have clearly alleged the elements of a claim for contribution in their Fifth Amended Complaint. They allege that "API and NCR have been the leaders among the responsible parties in working with the U.S. Environmental Protection Agency ('USEPA') and Wisconsin Department of Natural Resources ('WDNR') (together, the 'Agencies') to address and remediate the Lower Fox River Contamination." (Fifth Am. Compl. ¶ 2.) They further allege that "[t]he amount API and NCR have spent on these activities are well in excess of their responsibility for this work." (*Id.*) If these allegations are proven at trial, Plaintiffs would be entitled to recover under § 113(f), subject to any other statutory defenses that may exist, whatever payments they made in excess of their proportionate share. This would include not only payments made pursuant to the consent decree filed in the civil action instituted against them on August 21, 2001, but also any other payments they made to discharge their common liability under § 107(a) before or after that time. Thus, they have no need to resort to § 107(a). Whatever amounts they are entitled to recover must be recovered under § 113(f).

In sum, the costs at issue here were incurred by the Plaintiffs in an effort to discharge the liability they claim to hold in common with the Defendants. Plaintiffs allege that they paid more than their proportionate share of such liability and thus are entitled to recover the excess they paid from those Defendants who have failed to pay their proportionate share. This is a claim for

14

contribution specifically authorized under § 113(f). Since any excess payments made by Plaintiffs are recoverable, if at all, under that section, they have no need to resort to § 107(a). Count One will therefore be dismissed.

### III. NATURAL RESOURCES DAMAGES

The Defendants and the Government contend that an additional reason exists for dismissing Plaintiffs' § 107 claim to the extent it seeks recovery for natural resources damages. The Defendants and the Government have argued at some length—citing numerous cases in support—that private parties lack standing to recover natural resource damages under that section, regardless of whether payment was made voluntarily. *See, e.g., Nat'l Ass'n of Mfrs. v. DOI,* 134 F.3d 1095, 1113 (D.C. Cir. 1998) ("CERCLA does not permit private parties to sue recovery for damages to natural resources held in trust by the federal, state or tribal governments.") Plaintiffs' very brief response echoes its argument above: it asserts that it is seeking to recover only those payments it made to natural resource trustees *voluntarily*, and thus relief under § 107(a)(4)(B) should be deemed available. As discussed above, Plaintiffs' overpayments, if any, are recoverable under § 113(a), and they therefore have no claim under § 107(a). Even aside from this, however, Plaintiffs have not cited any authority suggesting that private parties can use § 107(a) to recover for natural resources damages, regardless of whether a § 113(f) contribution claim is available or not. Based on the authority cited by the moving parties, I conclude that they cannot. Accordingly, that portion of Count I seeking recovery of natural resources damages will be dismissed for this reason as well.

15

## IV.  COUNT III, DECLARATORY JUDGMENT

The Defendants (but not the United States) have also moved to dismiss Plaintiffs'

declaratory judgment claim under § 113(g)(2).[9]  Section 113(g)(2) reads as follows:

> (2) Actions for recovery of costs
> An initial action for recovery of the costs referred to in section 9607 of this title must be commenced–
>
> (A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and
>
> (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.
>
> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

42 U.S.C. § 9613(g)(2).

The last paragraph of this section is the operative one, and it states that a court, "in any such

action," "shall enter a declaratory judgment on liability for response costs or damages."  *Id.*

Menasha argues that this phrase has been interpreted as meaning that declaratory relief is only

---

[9]The United States has urged the Court to reject Defendant Glatfelter's textual argument on this issue, but it has not apparently taken a position on whether the claim should be dismissed for the reasons asserted by Defendant Menasha.  Because Glatfelter's argument is directed at Plaintiffs' § 107 claim, which I have concluded is not viable for other reasons, I do not address it.

16

appropriate in § 107 actions, not § 113 contribution actions, and thus it believes the claim should be dismissed for failure to state a claim.

Strangely, one of the principal cases Menasha cites on this point holds just the opposite. In *Boeing Co. v. Cascade Corp.*, the Ninth Circuit affirmed the district court's apportionment of liability for future cleanup expenses and rejected the defendant's claim that the district court lacked authority to issue a declaratory judgment under § 113.

> The statute is silent on whether declaratory judgments are authorized in contribution actions. It does not prohibit them. It is hard to see why it would. CERCLA was intended to encourage quick response and to place the costs on those responsible. Declaratory relief serves these purposes because all parties, like those in this case, will know their share of costs before they are incurred. The more liability can be limited and quantified, the more practical it is for a party to budget and borrow to finance it. Environmental litigation is tremendously complex, lengthy, and expensive. The costs and time involved in relitigating issues as complex as these where new costs are incurred would be massive and wasteful. Declaratory relief allocating future costs is therefore consistent with the broader purposes of CERCLA.

207 F.3d 1177, 1191 (9th Cir. 2000).

As the Ninth Circuit noted, § 113(g) does not explicitly provide for declaratory actions, but neither does it forbid them. *See also United States v. Davis,* 261 F.3d 1, 46 (1st Cir. 2001) ("nothing in the statute precludes an interpretation that declaratory relief is available in both instances [cost recovery and contribution].") In short, nothing in CERCLA prevents the issuance of declaratory relief in a contribution action, and in fact the policies underlying CERCLA support such relief.

Menasha and Glatfelter also assert that relief is not appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). For instance, they argue that declaratory relief would be incomplete because not all PRPs are before the Court in this action. Further, they suggest that

17

liability is inherently speculative, given the large size of the cleanup site and the unknown extent of the cleanup required (much of the cleanup has not yet occurred). Whatever the merits of these arguments about the prudence of declaratory relief, I conclude such arguments are at best premature. These arguments do not suggest Count III fails to state a claim or that jurisdiction is lacking, only that the controversy may be ill-defined and not fully joined. The Defendants' motions to dismiss are premised on Fed. R. Civ. P. 12(b)(1) and (6), and as such they test the legal sufficiency of the claims as pled. Accordingly, all we are concerned with at this stage is whether the Court has subject matter jurisdiction over the declaratory judgment claim and whether Count III states a claim on which relief may be granted. If the declaratory relief claim later proves flawed or impracticable, relief can be denied at that point. But for now, I conclude that nothing within CERCLA precludes the Plaintiffs from proceeding on a claim for declaratory relief under § 113(g). Accordingly, I conclude Count III should not be dismissed.

## V. OU1 CLAIMS AGAINST GLATFELTER AND WTM I COMPANY

The arguments addressed above related only to Counts I (§ 107) and III (declaratory relief under § 113) of the Fifth Amended Complaint. Count II is Plaintiffs' contribution claim under § 113, which the Defendants and the Government generally concede is the proper cause of action for Plaintiffs to pursue in these circumstances.[10] Defendants Glatfelter and WTM I Company, however, have moved for partial dismissal of that count to the extent it seeks contribution for costs Plaintiffs incurred at the OU1 portion of the Fox River Site (i.e., Little Lake Butte des Morts) on

_____

[10]Plaintiffs also seeks to recover OU1 costs under § 107, but for the reasons set forth earlier I conclude that § 113 is Plaintiffs' only viable recourse.

18

the ground that the consent decree they entered into settled their liability as to that portion of the site. The Government's *amicus* brief also sides with these Defendants.

CERCLA § 113(f)(2) provides: "A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). Because Glatfelter and WTM I Company had resolved their liability by virtue of the judicially approved consent decree, they argue, the contribution protection of § 113(f) bars the Plaintiffs' contribution action for OU1 costs.

Plaintiffs do not deny that CERCLA generally affords protection to defendants who settle their liability with the Government. But the scope of that shield, they note, is not unlimited. In particular, Plaintiffs look to the text of the Consent Decree itself and argue that the Decree is not as all-encompassing as the Defendants believe.[11] The Consent Decree provides that Glatfelter and WTM I Company "are entitled . . . to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree." (Consent Decree ¶ 101.) That section further provides that the "matters addressed" in the Consent Decree are "OU1 Response Activities and Costs," which is a defined term: "For the purposes of this Consent Decree, the term 'OU1 Response Activities and Costs' is defined as all response activities for Operable Unit 1 performed or to be performed after July 1, 2003, as well as all costs for response activities for Operable Unit 1 incurred after July 1, 2003." (Consent Decree ¶ 83.b.)

---

[11]The parties refer to the Consent Decree lodged in Case No. 03-C-949. Its terms are found at Dkt. # 4 in that case.

With this definition in mind, Plaintiffs argue that they are seeking OU1 contribution for costs they incurred *prior* to July 1, 2003, that is, costs that do not meet the Decree's definition of OU1 Response Activities and Costs. In particular, they point to their involvement in the Fox River Group, which paid some $30,000,000 in responding to cleanup at the site between 1997 and 2001; they further cite their own 2001 Consent Decree, by which they agreed to pay $41,500,000 to fund restoration projects at the site. (Fifth Am. Compl., ¶¶ 55-57.) More generally, they cite the "costs of identifying other responsible parties, conducting risk assessments," and the like, all of which occurred prior to July 1, 2003. (*Id.*, ¶ 66.)

Glatfelter, WTM I Company and the Government do not address Plaintiffs' contention that the costs they are seeking to recover fall outside of the definition of "OU1 Response Activities and Costs" because they pre-date July 1, 2003.[12] The scope of the contribution protection provided by § 113(f)(2) is governed largely by the consent decree itself, and when the decree explicitly limits the "matters addressed" to a given timeframe it is difficult to say that the signatories to that decree bargained for more than what is provided therein. *See Akzo*, 30 F.3d at 767 (discussing scope of "matters addressed" in consent decrees). In short, Glatfelter and WTM I Company have not made any argument that costs incurred prior to the specific timeframe set out in the Consent Decree are barred by contribution protection under that decree. Accordingly, their motions to dismiss portions of Count II on that basis will be denied. That is not to say that the costs Plaintiffs seek to recover are properly the subject of a contribution action. Instead, I merely conclude that the reasons the

---

[12]Glatfelter evidently believes the Plaintiffs have "conceded" that contribution protection bars their § 113(f) claims, but that does not appear to be true. (Dkt. # 120 at 3.) Plaintiffs' response brief explains quite clearly their position that the Consent Decree does not bar all § 113(f) claims for contribution related to the OU1 site. (Dkt. # 92 at 20-21.)

Defendants cite in urging dismissal do not justify dismissing the § 113 OU1 claims at this stage of the proceedings.


## VI. CONCLUSION

For the reasons given above, the motions to dismiss are **GRANTED** in part and **DENIED** in part. The motions are **GRANTED** as to Count I of the Fifth Amended Complaint and that count is **DISMISSED**. The motions are **DENIED** as to the remaining counts, and the clerk is directed to set the matter for a Rule 16(a) conference. *See* Fed. R. Civ. P. 16(a).

Dated this ____20th____ day of August, 2008.


   s/ William C. Griesbach
William C. Griesbach
United States District Judge