UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

APPLETON PAPERS, INC. and
NCR CORPORATION,

        Plaintiffs,

    v.                                                     Case No. 08-C-16

GEORGE A. WHITING PAPER CO., et al.,

        Defendants.

**ORDER**

General Casualty Company of Wisconsin has filed a motion to intervene, bifurcate and stay the underlying claims brought against its insured, the Neenah-Menasha Sewerage Commission ("NMSC"), one of more than twenty defendants in this CERCLA action. General Casualty's intervening complaint seeks a declaratory judgment that General Casualty has no duty to defend or indemnify NMSC. (Dkt. # 341, Ex. 2.)

Motions to intervene and stay, and opposition to such motions, generally follow well-worn routes. On the one hand, insurers who question their duty to defend have an interest in intervening and obtaining speedy resolution of that question so as to minimize their exposure for defense costs. On the other hand, the insured and other parties do not want to hold up resolution of the merits while an insurer engages in discovery and takes up the court's time with coverage disputes.

This case, of course, is much different than the typical coverage dispute. First, the number of parties involved, the public interest, and the amount of money at issue are much greater, and these factors would make bifurcation and stay a less viable option than in the typical case involving

only a few parties. Second, General Casualty's motion to intervene is not based on a coverage dispute over the *terms* of the policy – it is founded in its belief that it did not issue NMSC any policy at all. According to its proposed complaint, neither General Casualty nor NMSC can locate any policies issued by General Casualty. As such, this is not so much a typical coverage dispute involving the terms of an existing policy as it is a dispute about whether such a policy ever existed at all.

General Casualty's motion has been met with significant opposition from the other parties concerned. The general tenor of the objection seems to be that granting General Casualty's motion would needlessly delay the merits of this complex litigation and even delay cleanup of the Fox River itself. Given the relatively minuscule nature of the dispute General Casualty has with its alleged insured (who is not one of the key defendants in the cleanup action), it would be unjust to stop these proceedings so its dispute can be sorted out. The other parties also object that General Casualty's motion was untimely and they suggest that it does not have a stake in this litigation significant enough to warrant intervention as of right. Finally, some parties suggest that General Casualty's proposed declaratory judgment action presents novel issues of state law, and for that reason I should decline to allow intervention. I will address these concerns below.

As General Casualty notes, many of the objecting parties' concerns go to the question of whether a stay is appropriate rather than the preliminary question of whether General Casualty may intervene under Fed. R. Civ. P. 24(a)(2). That rule provides that intervention must be permitted upon a timely motion of a party who

> claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair

2

or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

As the parties have noted, this court has previously allowed an insurer to intervene under Rule 24(a)(2). In *Hagen v. Van's Lumber & Custom Builders Inc.,* I noted that the contours of the right to be protected under Rule 24(a)(2) were unclear, but that when an insurer could be liable for damages in the underlying action its interest was sufficiently concrete to allow intervention.

> Regent clearly has an interest related to the transaction underlying this action by virtue of the general liability insurance policy it issued to Van's and Van's contention that Regent is required under its policy to defend and, if necessary, indemnify it for at least some of the damages claimed in the underlying lawsuit. If Van's is ultimately found liable for some of the damages claimed in the Hagen's action and coverage under its policy exists, Regent will be required to indemnify Van's for its loss. While Regent's interest, at this point in time, is contingent, this does not mean it is insufficient to satisfy Rule 24(a).

2006 WL 3404772, *2 (E. D. Wis. 2006).

The same holds true here. Although the dispute over coverage is somewhat different, the end result is that General Casualty has an interest "relating to" the transaction that is the subject of this lawsuit.[1] Furthermore, I conclude that an inability to intervene may impair General Casualty's ability to protect its interest. Although it could file a declaratory action in state court on the coverage question, its ultimate liability may be determined by the facts that are elicited in this action. Moreover, it is well-recognized that the intervention rule was intended to create efficiencies rather than eliminate them, and requiring insurers to file separate actions in state court would defeat that purpose. Accordingly, I find General Casualty is entitled to intervene under Fed. R. Civ. P. 24(a)(2).

---

[1] And for the reasons noted in *Hagen*, I also find subject matter jurisdiction exists.

3

The objecting parties also suggest that I should deny General Casualty's motion because it brings a declaratory judgment action and the Court has questionable subject matter jurisdiction because General Casualty (whose home office is in Wisconsin) is a nondiverse party. Supplemental jurisdiction over General Casualty's claim appears clear under 28 U.S.C. § 1367(a), however, and the fact that General Casualty's proposed complaint seeks declaratory relief does not necessarily counsel against allowing intervention. The parties suggest that the issue General Casualty seeks to litigate is a complex one involving novel issues of Wisconsin law governing nonexistent or "lost" insurance policies. Given federal courts' broad discretion to decline hearing declaratory judgment actions, the objecting parties argue this Court should decline to hear the case and allow a state court to tackle these thorny state law issues. Yet it is difficult to conclude that the question of whether or not an insurance policy was ever issued would pose such a challenge to a federal district court. *See., e.g., Remington Arms Co. v. Liberty Mut. Ins. Co.,* 810 F. Supp. 1420, 1424 (D. Del. 1992) (discussing problem and noting Federal Rules of Evidence apply to proving terms of lost insurance contract). Federal courts are well-equipped to consider issues involving the existence and terms of insurance policies, and I thus find little basis to punt the matter merely because it involves an issue of state law.[2]

The more important question is whether General Casualty should be granted a stay of the merits of this litigation. The parties opposing a stay are vehement in their opposition, but their objections appear misdirected. They are correct that it would not make sense to allow a single

---

[2]I do not find General Casualty's delay of a few months unreasonable under the circumstances and thus do not find its motion to intervene untimely. This is especially so when considering the limited nature of the stay it seeks. Nor do I find any indication that General Casualty has "waived" its ability to request bifurcation and a stay merely because it has not participated in the scheduling of this case thus far.

4

insurer of a single, relatively minor defendant to hold up the entirety of these proceedings while its own coverage dispute is litigated. In fact, given the magnitude of these proceedings, a request for a complete stay of all proceedings would be nothing short of audacious. But General Casualty protests that its request is actually quite modest. It does not wish to stay all proceedings. In fact, it notes that there are already stays in place regarding discovery and it seeks an order imposing a stay "in conjunction with the stays already in place." (General Casualty Br. at 7.) In its reply brief, it elaborates that it is seeking a stay only as to discovery relative to the liability and damages claims against NMSC. NMSC, a non-UAO party, is already subject to a stay of discovery until January 23rd. More critically, once that stay is no longer in effect, the case management order limits discovery in phase I of this case to "information regarding: (i) when each party knew, or should have known, that recycling NCR-brand carbonless paper would result in the discharge of PCBs to a waterbody, thereby risking environmental damage; and (ii) what, if any, action each party took upon acquiring such knowledge to avoid the risk of further PCB contamination." Presumably the question of when the Neenah-Menasha Sewerage Commission knew anything about PCBs in carbonless paper is not among the key matters in the underlying dispute, and so a stay of discovery on this issue would not throw a wrench into the works in the manner the objecting parties suggest. Moreover, General Casualty asserts that the discrete issue of whether it ever issued an insurance policy to NMSC and what its terms were is the sort of claim that can be fleshed out quickly, and without impeding progress on the merits of the action. To the extent it might wish to assert other defenses in the future, it notes that future case management orders can account for this.

But while I agree with General Casualty that the stay it seeks is quite limited and would not substantially delay progress on the merits of the action, its argument also cuts the other way. The

5

assumption seems to be that claims regarding NMSC's liability are quite limited (in the grand scheme of this lawsuit), and if that is the case any expenses General Casualty incurs in defending NMSC in phase I will also be limited. Moreover, General Casualty has asserted that the question of the existence of the insurance policy is a matter that can be litigated quickly. If that is true, there is little reason to hold up discovery on NMSC's liability during the brief period required for discovery on the missing insurance policy. The point is that if General Casualty never issued NMSC an applicable insurance policy, it can presumably move for summary judgment on that point in short order and be relieved from further defense costs. Finally, I note that even if it does incur significant expenses, General Casualty may be able to seek reimbursement of those expenses from its insured in the event no coverage is found. *See Kreuger Intern., Inc. v. Federal Ins. Co.,* No. 07-C-736, 2008 WL 4962669, *13-20 (E.D. Wis. November 19, 2008). Although the viability of that remedy under Wisconsin law is far from certain, it is not clear that General Casualty would necessarily be deprived of its expenses forever in the event there is no coverage.

Although I do not believe a stay of discovery with respect to NMSC would severely disrupt the underlying action, it would upset the case management order and require a somewhat piecemeal approach to discovery on the liability question. Given the overwhelming interest in a consolidated approach to this action, considerations of efficiency and regularity favor denial of the motion to bifurcate and stay. General Casualty's motion to stay will therefore be denied. Instead, the case management order is hereby expanded to allow General Casualty and NMSC to engage in discovery with respect to the coverage question, and a separate scheduling order governing that aspect of the case will be issued.

6

Accordingly, the motion to intervene is **GRANTED**, and General Casualty's complaint (Dkt. # 341, Ex. 2) will be detached and filed by the clerk. The motion to bifurcate and stay is **DENIED**. The clerk will schedule a telephone conference involving counsel for General Casualty and NMSC for scheduling of this aspect of the litigation.

**SO ORDERED** this ___8th___ day of January, 2009.

                                                                         _s/ William C. Griesbach_
                                                                         William C. Griesbach
                                                                         United States District Judge