# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

APPLETON PAPERS INC. and
NCR CORPORATION,

        Plaintiffs,

v.                                             Case No. 08-C-00016

GEORGE A. WHITING PAPER COMPANY, et al.,

        Defendants.

## LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The United States District Court for the Eastern District of Wisconsin presents its compliments to the Senior Master (Queen's Bench Division) and requests assistance in obtaining evidence to be used in a civil proceeding now pending before this Court.

The District Court requests the assistance of the Senior Master as described herein for the purpose of obtaining documentary evidence for use in trial from non-party witnesses British American Tobacco P.L.C. ("BAT Plc") and /or one or more its UK subsidiaries (collectively, "the BAT Companies"), in the possession, custody, or power of the historic documents of British American Tobacco (Investments) Limited, formerly called British-American Tobacco Company Limited ("BAT").

This request is made pursuant to, and in conformity with, Chapter II, Articles 17, 18 and 21 of the *Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*, to which both the United States and the United Kingdom are a party.

The District Court considers that the evidence sought is directly relevant to the issues in dispute, is evidence that will be used at trial, and is not discovery within the meaning of Article 23 of the Hague Convention, that is, discovery intended to lead to relevant evidence for trial. It is expected, based on existing timetables, that trial will begin on or about December 1, 2009. Accordingly, unless the order is made now, there will not be sufficient time to procure the evidence before trial.

The particulars of this Hague Convention Request are as follows:

1. *Sender:*  Honorable William C. Griesbach
   United States District Court
   Eastern District of Wisconsin
   Green Bay Division
   125 South Jefferson Street, Suite 203
   PO Box 22490
   Green Bay, Wisconsin 54305-2490
   U.S.A.
   Tel: +1(920) 884-3720

2. *Central Authority of the Requested State:*  COMPETENT AUTHORITY FOR ENGLAND AND WALES
   The Senior Master
   Queen's Bench Division
   ROYAL COURTS OF JUSTICE
   Strand
   London WC2A 2LL
   UNITED KINGDOM

   *On behalf of:*
   THE CENTRAL AUTHORITY FOR THE
   UNITED KINGDOM
   The Senior Master
   The Foreign Process Section
   ROYAL COURTS OF JUSTICE
   Strand
   London WC2A 2LL
   UNITED KINGDOM

2

| | | |
|---|---|---|
| *3.* | *Person(s) to whom the executed request is to be returned:* | Georgia-Pacific's Legal Representative in the UK:<br><br>John A. Hull<br>LATHAM & WATKINS (London) LLP<br>99 Bishopsgate<br>London EC2M 3XF<br>UNITED KINGDOM<br>Tel: +44.20.7710.1000<br>Fax: +44.20.7374.4460<br>john.hull@lw.com<br><br>*on behalf of:*<br>Honorable William C. Griesbach<br>United States District Court<br>Eastern District of Wisconsin<br>Green Bay Division |
| *4.* | *In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following requests:* | |
| *5a.* | *Requesting Judicial Authority:* | Honorable William C. Griesbach<br>United States District Court<br>Eastern District of Wisconsin<br>Green Bay Division |
| *5b.* | *To the competent authority of:* | ENGLAND AND WALES |
| *6.* | *Names and addresses of the parties and their representatives:* | |
| | *a.   Plaintiffs:* | **APPLETON PAPERS INC.**<br>**NCR CORPORATION**<br><br>*Plaintiffs Represented in the U.S.A. by:*<br><u>Counsel for Appleton Papers Inc.</u><br>Michael L. Hermes<br>Hermes Law, Ltd.<br>333 Main Street, Suite 601<br>Green Bay, Wisconsin 54301<br>Tel: +1 (920) 436-9870 |

3

Fax: +1 (920) 436-9871
mlh@hermeslawltd.com

Counsel for NCR Corporation
J. Andrew Schlickman
Kathleen L. Roach
Evan B. Westerfield
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel: +1 (312) 853-7000
Fax: +1 (312) 853-7036
jaschlickman@sidley.com
kroach@sidley.com
ewesterfield@sidley.com

J. Ric Gass
Gass Weber Mullins LLC
309 North Street
Milwaukee, Wisconsin 53202
Tel: +1 (414) 224-7697
Fax: +1 (414) 224-6116
gass@gasswebermullins.com

|   |   |   |
|---|---|---|
| *b.* | *Defendants:* | **GEORGIA-PACIFIC CONSUMER PRODUCTS LP (f/k/a FORT JAMES OPERATING COMPANY), FORT JAMES CORPORATION, AND GEORGIA-PACIFIC LLC (COLLECTIVELY, "GEORGIA-PACIFIC")** |

*Defendants Represented in the U.S.A. by:*
Ernest J. Getto
Karl S. Lytz
Patrick J. Ferguson
LATHAM & WATKINS LLP
505 Montgomery St, Suite 2000
San Francisco, CA 94114
U.S.A.
Tel: +1(415) 391-0600
Fax: +1(415) 395-8095
ernie.getto@lw.com
karl.lytz@lw.com
patrick.ferguson@lw.com

4

> *Represented in England by:*
> John A. Hull
> LATHAM & WATKINS (London) LLP
> 99 Bishopsgate
> London EC2M 3XF
> UNITED KINGDOM
> Tel: +44.20.7710.1000
> Fax: +44.20.7374.4460
> john.hull@lw.com

7. ***Nature and purpose of the proceedings and summary of the facts:***

This is a civil action brought by Plaintiffs Appleton Papers Inc. ("API") and NCR Corporation ("NCR") seeking cost recovery and contribution for the costs of cleaning up the polychlorinated biphenyl ("PCB") contamination in the Lower Fox River pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, better known as CERCLA, 42 US.C. § 9601 *et seq*.

**PARTIES**

Plaintiff API is a Delaware corporation with its principal place of business in Appleton, Wisconsin. Plaintiff NCR is a Maryland corporation with its principal place of business in Dayton, Ohio.

Third party British American Tobacco P.L.C. ("BAT Plc") is a company incorporated and doing business in England, which owns a number of subsidiaries incorporated and doing business in England (collectively, "the BAT Companies"), including but not limited to, British American Tobacco (Investments) Limited (formerly British-American Tobacco Company Limited) ("BAT"). As described below, documents likely to be critical to this litigation are likely to be in the possession of BAT Plc or one of its subsidiaries. These documents were created between 1964 and 1970 by the Research and Development Establishment of BAT, a company which was renamed as

5

Case 2:08-cv-00016-WCG   Filed 07/07/09   Page 5 of 19   Document 473

British American Tobacco (Investments) Limited on 24 April 1998 (Exhibit 1).

There are currently twenty-three defendants in this action. This includes the defendants collectively known as "Georgia-Pacific": (1) Georgia-Pacific Consumer Products Company (f/k/a Fort James Operating Company), a Delaware limited partnership with its principal place of business in Atlanta, Georgia; (2) Georgia-Pacific LLC, a Delaware limited liability company with its principal place of business in Atlanta, Georgia; and (3) Fort James Corporation, a Virginia corporation with its principal place of business in Atlanta, Georgia.

**DESCRIPTION OF THE CASE**

In this action, Plaintiffs NCR and API seek against the defendants cost recovery and contribution under CERCLA for the costs of cleaning up contamination in the Lower Fox River (Exhibit 2). The Fox River has been contaminated by PCBs as a result of the production, manufacturing, and recycling of carbonless copy paper ("CCP") that was coated with PCB-containing emulsion. Phase I of this litigation will address: "when each party knew, or should have known, that recycling NCR-brand carbonless paper would result in the discharge of PCBs [and] what, if any, action each party took upon acquiring such knowledge to avoid risk of further PCB contamination." (Exhibit 4).

NCR developed the process for producing CCP in the early 1950s. In about 1954, NCR started using PCBs in the emulsion used to produce CCP. The PCBs were sold to NCR by the Monsanto Corporation ("Monsanto") under the trade name "Aroclor" or "Arochlor." NCR manufactured its PCB emulsion in a number of locations, including a plant in Borehamwood, United Kingdom. NCR supplied the PCB emulsion to several companies that it licensed to produce CCP, including Wiggins Teape Research & Development Limited ("WT").

The BAT Companies acquired an ownership interest in WT in the early 1960s, and then

6

bought WT outright in about 1970 (Exhibits 1 & 5). In 1964, WT became concerned about recycling broke[1] because of fears about PCB toxicity, and, together with BAT and Monsanto, undertook a comprehensive examination of the PCB content of CCP broke, recycling wastes, and products made from CCP-related facilities in the UK and Belgium in the mid-to-late 1960s (Exhibits 5 & 6). Dr. Cora W. Ayers of the "Research & Development Establishment" of BAT, led this examination, which included sampling at NCR's Borehamwood facility, where NCR manufactured the PCB-containing emulsion used by WT to manufacture CCP until PCBs were removed from the UK emulsion in 1970 (Exhibits 6 & 7).

In 1978, the BAT Companies acquired NCR's Appleton Papers Division, which later became Plaintiff Appleton Papers, Inc. (Exhibit 5). Throughout the 1990s, the BAT Companies were involved in numerous smoking-related lawsuits and government investigations in the United States (Exhibit 8). As a result, the BAT Companies were forced to make public much of BAT's tobacco-related correspondence, and in July 2008, such documents were added to the publicly-accessible Legacy Tobacco Documents Library website *Id.*

Georgia-Pacific has searched the Legacy Tobacco Documents Library and obtained a number of documents suggesting that extensive contact between BAT, NCR, WT, and Monsanto related to the testing of NCR-brand CCP for PCBs occurred between 1964 and 1970 (Exhibit 9). Samples of such documents include:

- A November 5, 1964 memorandum written by Dr. Cora Ayers (of BAT's Research and Development Establishment) reporting on a meeting with WT's John Gough, who had earlier requested BAT's assistance in sampling products containing recycled CCP broke for PCB content. According to this memorandum, which was stored in a file referred to as "57A": "Mr. Gough explained the reason for their interest in Arochlor; it is present in the emulsion used to coat NCR paper. In the production of NCR paper there is a very large amount of waste which is repulped

---

[1] "Broke" is the paper that became scrap during the process of manufacturing CCP.

7

and used to make other types of papers. Arochlor, a chlorinated diphenyl, is toxic and so it is necessary to know how much is removed during the repulping process especially if the paper is to be used for food wrapping." (Exhibit 6).

- A January 29, 1965 letter, stamped as "File 57A," from John Gough of WT to Dr. Cora Ayers of BAT explaining that BAT planned to attend a "round table discussion group between all interested parties," including, among others, Monsanto, BAT, and WT to discuss the subject of the "determination of Arochlor" in NCR paper (Exhibit 10).

- A October 15, 1965 letter from C.W. Paradice of WT's paper mill, Thomas Owen and Company Limited, to Dr. Cora Ayers of BAT forwarding samples of backwater that "contain arochlor from our N.C.R. process," as "part of the project organized by Mr. J. Gough of [WT's] Research Base at Butler's Court, Beaconsfield." A handwritten note requests the letter to be filed "with Wiggins Teape [correspondence in file number] 57A." (Exhibit 11).

- A January 2, 1967 letter from Cora Ayers of BAT to Mrs. Woods of WT enclosing "the method which [BAT researchers] use to analyze NCR papers." (Exhibit 12).

- An August 7, 1967 letter from John Gough of WT to Cora Ayers of BAT referring to a "telephone conversation last week" regarding the determination of Arochlor content in several samples of NCR CCP, and enclosing samples of NCR paper for further testing (Exhibit 13).

- A February 21, 1969 letter to G.S. Carver of WT from Dr. Ayers of BAT concerning analysis of NCR CCP samples performed for WT (Exhibit 14).

- A January 26, 1970 Monsanto memorandum stating that the results of its PCB testing at Borehamwood were to be discussed with NCR during a February 26, 1970 meeting (Exhibit 7).

- A May 11, 1970 Monsanto memorandum reporting the results of visits made to NCR's Borehamwood PCB emulsion facility on January 8, 1970, and to WT's Treforest CCP facility on February 2, 1970. Monsanto diagramed Borehamwood PCB discharge routes to the environment, and reported exceptionally high PCB concentrations in plant effluents and the surrounding area (Exhibit 15).

Given the close relationship between BAT, WT, NCR, and Monsanto, there should be extensive records reflecting communications between these four companies. Yet, only a limited amount of correspondence is available on the Legacy Tobacco Documents Library website (Exhibit

8

8 & 9). For example, minutes of meetings between BAT and WT and numerous technical reports exchanged between the two companies, which are referenced in available documents, are not themselves available (Exhibits 6 & 11). These documents are highly relevant, perhaps critical, to Phase I issues—going directly to WT's and NCR's knowledge in the 1960s that PCBs were toxic, persistent in nature, and the cause of environmental contamination from WT's manufacturing of CCP.

On April 20, 2009, Georgia-Pacific wrote to Philip Scourfield, counsel for the BAT Companies, requesting the informal, company-to-company, production of historic BAT documents regarding NCR and WT, and their respective involvement in CCP production (Exhibits 9 & 16). On April 29, 2009, Mr. Scourfield responded that the BAT Companies were unwilling to provide Georgia-Pacific with such documents and requested that Georgia-Pacific submit its document requests using Hague Convention procedures. *Id.*

## STAGE OF THE PROCEEDINGS

This action was commenced by the filing of a complaint on January 7, 2008 (Exhibit 2). The parties have exchanged documents. The current schedule provides that the last day for the completion of expert reports is June 22, 2009, and the last day for the filing of dispositive motions on Phase I issues is August 14, 2009 (Exhibit 4). Trial on Phase I issues is expected to commence on December 1, 2009 *Id.*

## LIST OF DOCUMENTS SOUGHT FOR PRODUCTION

For the reasons set forth above, the District Court requests that BAT PLc, BAT, and/or other BAT Companies produce the following documents, described below, which are, or are likely to be, in their possession, custody or power (such evidence would not be privileged information constituting legal advice given by a lawyer to a client, but rather communications between NCR

and WT, and attorneys for third parties' BAT Companies, which are not protected by any privilege under either U.S. or English law):

1. The documents contained in the BAT file entitled "File 57A", which is believed to be BAT's internal filing designation for communications with WT during the 1960s.

2. The documents created as a result of or in preparation for to a telephone conversation on or around 5 October, 1964 between G. Mawdsley of WT and Dr. C. Ayers of BAT with respect to the possible identification of Aroclor in samples of NCR paper.

3. The documents created as a result of or in preparation for a meeting on or around 4 November, 1964 between Dr. C. Ayers and Mr. Roles of BAT and Messrs. John Gough and Spencer Hope of WT to discuss WT's interest in analyzing the Aroclor content of NCR paper.

4. The documents which form a continuous string of documents between the first and last dates set forth above in paragraphs 2 and 3 between WT and BAT regarding the analysis of NCR paper for Aroclor content.

5. The documents that accompanied the 6 November, 1964 shipment of samples of pulp preparation from the WT facility referred to as Sudbrook Pulp Mill to Dr. Ayers at BAT for Aroclor testing.

6. The documents created as a result of or in preparation for a 6 November, 1964 letter sent from I.F. Hendry at WT to Dr. Felton at BAT regarding, among other issues, the determination of Aroclor in pulp.

7. The memorandum, minutes, notes, technical reports, or other documents created as a result of or in preparation for meeting on 24 November, 1964 between D.J. Langston of WT and, among others, Dr. J. Hughes of BAT to discuss BAT's testing program for NCR paper.

8. The documents created as a result of or in preparation for a telephone conversation on or around 2 December, 1964 between John Gough of WT and Dr. C. Ayers of BAT regarding Aroclor analysis.

9. The documents created as a result of or in preparation for a telephone conversation on or around 29 January, 1965 between John Gough of WT and Dr. C. Ayers of BAT on the subject of the determination of Aroclor in NCR paper.

10. The documents which form a continuous string of documents between the first and last dates set forth above in paragraphs 8 and 9 between John Gough of WT and Dr. C. Ayers of BAT regarding Aroclor analysis of NCR paper.

11. The documents, reports, or data supplied to Dr. C. Ayers, or others, at BAT in response to Dr. Ayers' 2 February, 1965 letter to John Gough at WT related to the Monsanto method for Aroclor testing.

10

12. The documents created as a result of or in preparation for the telephone conversation and visit to the Beaconsfield facility by F. Haslam of BAT in or around February 1965 concerning BAT's interest in the NCR encapsulation process.

13. The documents created as a result of a 16 March, 1965 telephone conversation between John Gough of WT and Dr. C. Ayers of BAT regarding Aroclor testing.

14. The enclosures to the 2 April, 1965 letter from John Gough of WT to Dr. C. Ayers of BAT describing Monsanto's method for determination of Aroclor in paper and examples of chromotographs that Monsanto had produced.

15. The documents created as a result of or in preparation for the 5 April, 1965 letter from C. Capps of WT to Dr. Felton of BAT regarding C. Capp's trip to the NCR facility in Dayton, Ohio to discuss NCR paper developments.

16. The documents created as a result of or in preparation for the 23 April, 1965 letter from John Gough of WT to Dr. Ayers of BAT regarding WT problems involving the re-use of NCR Broke.

17. The communications between BAT and WT in or around May 1965 regarding BAT's testing of paper and pulp samples made from NCR "dyeline" broke.

18. The documents created as a result of or in preparation for a telephone conversation on or around 5 May, 1965 between John Gough of WT and Dr. C. Ayers of BAT on the subject of the results of BAT's investigation into WT's paper mill's problems with the use of NCR broke.

19. The documents which form a continuous string of documents between the first and last dates set forth above in paragraphs 16 and 18 related to BAT's investigation into problems with NCR paper and NCR paper broke at WT paper mills.

20. The documents created as a result of or in preparation for the 7 May, 1965 letter from a chemist at New Bury Paper Mills to Dr. Ayers at BAT regarding paper samples requested by WT.

21. The documents created as a result of or in preparation for a telephone conversation on or around May 1965 between Dr. C. Ayers of BAT and R.E. Jones of the Thomas Owen & Co. Treforest paper factory regarding the testing of "poisoned" NCR paper.

22. The communications between WT and BAT in or around May 1965 regarding the shipment of NCR self-contained capsules and on-the-paper-machine capsules to WT's Butler's Court facility.

23. The 10 June, 1965 communications from John Gough of WT to Dr. C Ayers of BAT regarding Aroclor testing of NCR paper.

11

24. The memorandum, minutes, notes, technical reports, or other documents created as a result of or in preparation for the 11 June, 1965 meeting at the WT facility at Butler's Court between WT, BAT, and J.L Knoop, of Brown & Williamson Tobacco Corporation concerning, among other topics, NCR encapsulation, NCR adhesives, and NCR copy paper.

25. The documents created as a result of or in preparation for a telephone conversation on or around 15 June, 1965 between D.W. Thornton of WT and Dr. C. Ayers of BAT regarding testing of NCR emulsion.

26. The memorandum, minutes, notes, technical reports, or other documents created as a result of or in preparation for John Gough's visit to the BAT facility on or around 8 July, 1965 to discuss BAT's Aroclor testing efforts.

27. The memorandum, minutes, notes, technical reports, or other documents created as a result of or in preparation for John Gough's visit to the BAT facility on or around 4 August, 1965 to discuss BAT's Aroclor testing efforts.

28. The documents created as a result of or in preparation for the 4 August, 1965 letter from Dr. Ayers of BAT to John Gough of WT regarding Aroclor analysis of backwater samples.

29. The documents created as a result of or in preparation for the 10 August, 1965 letter from Dr. Ayers of BAT to D.W. Thornton of WT regarding analysis of NCR paper samples provided by WT.

30. The documents which form a continuous string of documents between the first and last dates set forth above in paragraphs 25 and 29 related to communications between D.W. Thornton of WT and Dr. Ayers at BAT regarding Aroclor testing efforts.

31. The documents created as a result of or in preparation for a 21 October, 1965 letter from Dr. Ayers of BAT to C.W. Paradise of Thomas Owen & Co. related to Aroclor analysis performed on backwater samples.

32. The documents which form a continuous string of documents between October and November 1965 related to Aroclor analysis conducted by BAT on backwater samples provided by the Thomas Owen & Co. at the behest of John Gough at WT.

33. The documents created as a result of or in preparation for a telephone conversation on 17 November, 1965 between John Gough of WT and Dr. C. Ayers of BAT related to Aroclor analyses.

34. The documents created as a result of or in preparation for the 25 November, 1965 letter from Dr. C. Ayers of BAT to John Gough of WT related to the results of an Aroclor analyses on samples taken during a flotation trial.

12

35. The documents created as a result of or in preparation for the 2 December, 1965 letter from John Gough of WT to Dr. Ayers of BAT requesting Aroclor testing on a new formulation of NCR paper containing reclaimed NCR broke.

36. The 25 February 1966 communication from Dr. C Ayers of BAT to WT regarding the results of recent Aroclor analyses.

37. The memorandum, minutes, notes, technical reports, or other documents created as a result of or in preparation for the 4 July, 1966 visit by Mr. Leach of BAT to the WT office for a discussion with Mr. F. Jenkins of NCR on the subject of NCR Paper.

38. The documents created as a result of or in preparation for the 15 September, 1966 letter from Thomas Owen & Co. to Dr. C Ayers of BAT regarding Aroclor testing on NCR paper samples.

39. The documents created as a result of or in preparation for the 9 November, 1966 letter to Dr. C. Ayers of BAT from A.S. Bull of the WT Nivelles facility in Belgium related to recent analyses of CF paper conducted by BAT.

40. The enclosures of a 2 January, 1967 letter from Dr. C. Ayers at BAT to Mrs. Woods at WT, including documents related to the method which BAT used to analyze the Aroclor content of NCR paper.

41. The documents created as a result of or in preparation for the 14 February, 1967 letter to Dr. C. Ayers of BAT from G.S. Carver of WT's Nivelles facility in Belgium related to the Aroclor testing of samples of NCR coated front paper.

42. The documents created as a result of or in preparation for the 11 May, 1967 letter to Dr. C. Ayers of BAT from G.S. Carver of WT's Nivelles facility in Belgium related to the Aroclor testing of samples of NCR coated front paper.

43. The documents created as a result of or in preparation for the 1 June, 1967 letter to Dr. C. Ayers of BAT from G.S. Carver of WT's Nivelles facility in Belgium related to the Aroclor testing of samples of NCR coated front paper.

44. The documents which form a continuous string of documents between the first and last dates set forth above in paragraphs 41, 42 and 43 between G.S. Carver of WT's Nivelles facility in Belgium and BAT concerning the Aroclor testing of samples of NCR coated front paper.

45. The documents created as a result of or in preparation for the 30 June, 1967 letter to John Gough of WT from D.E. Conway of BAT related to the receipt of paper samples for Aroclor testing from Mr. Bell of Devon Valley.

46. The documents created as a result of or in preparation for a telephone conversation on or about 1 August, 1967 between John Gough of WT and Dr. C. Ayers of BAT related to Aroclor sampling.

47. The documents created as a result of or in preparation for a telephone conversation on or about 10 August, 1967 between John Gough of WT and Bill Roles of BAT related to Aroclor sampling, including the Aroclor sampling of tissue paper.

48. The documents created as a result of or in preparation for the 23 August, 1967 letter to Dr. C. Ayers of BAT from John Gough of WT concerning Aroclor testing.

49. The documents created as a result of or in preparation for the 3 December, 1968 letter to G.S. Carver of WT from Dr. Ayers of BAT concerning difficulties with Aroclor testing on several batches of NCR paper samples.

50. The documents created as a result of or in preparation for the 21 February, 1969 letter to G.S. Carver of WT from Dr. Ayers of BAT concerning analysis of NCR paper samples performed for WT.

51. The documents which form a continuous string of documents between the first and last dates set forth above in paragraphs 65 and 66 between Dr. Ayers of BAT and WT concerning Aroclor analysis of NCR paper.

52. The correspondence and/or meeting notes between September 1964 and August 1967 reflecting communications between Cora W. Ayers of BAT and John Gough of WT regarding the testing of NCR-brand paper from WT or WT's paper mills, including but not limited to the Thomas Owen & Company Limited facility at Treforest, the Sudbrook Paper Mill, and the Nivelles, Belgium facility (collectively, "WT paper mills") for Aroclor or PCBs.

53. The correspondence and/or meeting notes between September 1964 and August 1967 reflecting communications between Cora W. Ayers of BAT and Clive Capps of WT regarding the testing of NCR-brand paper from WT or WT paper mills for Aroclor or PCBs.

54. The correspondence and/or meeting notes between September 1964 and August 1967 reflecting communications between Cora W. Ayers of BAT and Spencer T. Hopes of WT regarding the testing of NCR-brand paper from WT or WT paper mills for Aroclor or PCBs

55. The correspondence and/or meeting notes between September 1964 and August 1967 reflecting communications between Cora W. Ayers of BAT and Ian F. Hendry of WT regarding the testing of NCR-brand paper from WT or WT paper mills for Aroclor or PCBs.

56. The correspondence and/or meeting notes between September 1964 and August 1967 reflecting communications between Cora W. Ayers of BAT and Geoff Mawdsley of WT regarding the testing of NCR-brand paper from WT or WT paper mills for Aroclor or PCBs.

57. The correspondence and/or meeting notes between September 1964 and August 1967 reflecting communications between Cora W. Ayers of BAT and C.W. Paradice of Thomas Owen & Company Limited regarding the testing of NCR-brand paper from WT or WT paper mills for Aroclor or PCBs.

58. The correspondence and/or meeting notes between September 1964 and August 1967 reflecting communications between Cora W. Ayers of BAT and D.W. Thornton of WT regarding the testing of NCR-brand paper from WT or WT paper mills for Aroclor or PCBs.

59. The correspondence and/or meeting notes between September 1964 and August 1967 reflecting communications between Cora W. Ayers of BAT and H.F. Rance of WT regarding the testing of NCR-brand paper from WT or WT paper mills for Aroclor or PCBs.

60. The correspondence and/or meeting notes between September 1964 and August 1967 reflecting communications between Dr. F. Haslam, D.E. Conway, S.J. Green, and/or H.G. Horsewell of BAT and representatives of NCR regarding encapsulation, NCR-brand carbonless copy paper, Aroclor, Aroclor testing methods, or PCBs.

61. The correspondence and/or meeting notes between September 1964 and August 1967 reflecting communications between representatives of BAT and representatives of Monsanto Chemical Company regarding encapsulation, NCR-brand carbonless copy paper, Aroclor, Aroclor testing methods, or PCBs.

62. The test results or analytical analyses performed by BAT for WT between September 1964 and August 1967 regarding the determination of Aroclor or PCB content in NCR-brand carbonless copy paper, scrap, or broke, including products made in whole or in part from recycling NCR-brand carbonless copy paper, and backwater or wastewater associated with the manufacturing or reprocessing of any of the above.

For the reasons set forth above, the District Court believes that the documents listed above will provide evidence for use at trial directly relevant to the main issues between the parties and without which the ends of justice could not be properly met. The District Court believes that this information is not available from any other source.

This Request is made pursuant to, and in conformity with, Article 18 of the Hague Convention of March 18, 1970; the Evidence (Proceedings in Other Jurisdictions) Act of 1975, the Rules of the Supreme Court Order 70; and Rule 34, paragraphs 6 and 8 of the Civil Procedure Rules.

15

| | | |
|---|---|---|
| *8.* | *Evidence to be obtained:* | Documents from the entities listed below |
| *9.* | *Identity and addresses of persons to be examined:* | **BRITISH AMERICAN TOBACCO P.L.C.**<br>Globe House<br>4 Temple Place<br>London<br>WC2R 2PG<br>ENGLAND<br>United Kingdom<br>Tel: +44 (0) 207 845 1000<br><br>**BRITISH AMERICAN TOBACCO (INVESTMENTS) LIMITED**<br>Globe House<br>1 Water Street<br>London<br>WC2R 3LA<br>ENGLAND<br>United Kingdom<br>Tel: +44 (0) 207 845 1000 |
| *10.* | *Subject matter about which the witnesses will be examined:* | None |
| *11.* | *Documents or other property to be inspected:* | Please see list of documents itemized above. |
| *12.* | *Any requirements that the evidence be given on oath or affirmation and any specific form to be used:* | None. |
| *13.* | *Special methods or procedures to be followed:* | If BAT Plc or BAT has any grounds to claim privilege or irrelevance under English and/or Wisconsin law, it may furnish a document log containing a list of claimed privileged and/or irrelevant documents and the grounds asserted for not producing the documents. The issue of whether the documents are privileged and/or irrelevant under Wisconsin law shall be submitted to the United States District Court for the Eastern District of Wisconsin for its ruling. If BAT Plc or BAT objects to |

16

|     |     |     |
| --- | --- | --- |
|     |     | producing documents on the grounds that the documents are privileged or irrelevant under English law, the issue shall be submitted to and determined by the High Court of England and Wales. |
| 14. | **Request for notification of the times and place for the execution of the Request and identity of the person to be notified:** | It is requested that the documents be produced at such place, date or time as ordered by the Senior Master and/or as otherwise scheduled by the representatives of BAT Plc or BAT and/or as otherwise agreed to by the witnesses and their respective representatives of the Parties.<br><br>Notice thereof should be made to Defendants' UK designee:<br><br>John A. Hull<br>LATHAM & WATKINS (London) LLP<br>99 Bishopsgate<br>London EC2M 3XF<br>UNITED KINGDOM<br>Tel: +44.20.7710.1000<br>Fax: +44.20.7374.4460<br>john.hull@lw.com |
| 15. | **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request:** | None. |
| 16. | **Specification of privilege or duty to refuse to give evidence under the laws of the State of origin:** | Under the laws of the United States, a party has a privilege to refuse to give evidence if the evidence discloses a confidential communication between that party and an attorney for that party that was made for the purpose of obtaining legal advice.<br><br>Parties also enjoy limited privileges on other grounds not relevant here such as communications between physician and patient, psychotherapist and patient, husband and wife, or clergy and penitent. |

17

U.S. law also recognizes a privilege against criminal self-incrimination.

Outside the strict area of privilege, certain limited immunities are available that may place restrictions on the giving of evidence, such as protection of documents created as the work product of attorneys during or in anticipation of litigation.

| | | |
|---|---|---|
| 17. | *The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:* | Defendants<br><br>in care of<br>Ernest J. Getto<br>Karl S. Lytz<br>Patrick J. Ferguson<br>LATHAM & WATKINS LLP<br>505 Montgomery St, Suite 2000<br>San Francisco, CA 94114<br>U.S.A.<br>Tel: +1(415) 391-0600<br>Fax: +1(415) 395-8095<br>ernie.getto@lw.com<br>karl.lytz@lw.com<br>patrick.ferguson@lw.com |
| 18. | *Date of Request:* | July 7th, 2009 |
| 19. | *Signature of the Requesting Authority:* | [signature]<br>Honorable William C. Griesbach<br>United States District Court<br>Eastern District of Wisconsin<br>Green Bay Division |
| | *Seal of the Requesting Authority:* | |

Attachments:

| | |
|---|---|
| Exhibit 1: | Information pages printed from BAT website (www.bat.com) on June 15, 2009 |
| Exhibit 2: | Seventh Amended Complaint |
| Exhibit 3: | Georgia-Pacific's Answer to Seventh Amended Complaint |
| Exhibit 4: | Case Management Decision and Scheduling Order |
| Exhibit 5: | Information pages printed from Arjowiggins website (www.arjowiggins.com) on June 15, 2009 |
| Exhibit 6: | November 5, 1964 memorandum from Cora Ayers to Dr. D.G. Felton. |
| Exhibit 7: | January 26, 1970 Monsanto memorandum entitled, "Aroclor – Environmental Contamination Status Report of European Studies – 23 January, 1970." |
| Exhibit 8: | Information pages printed from the Legacy Tobacco Documents Library website (http://legacy.library.ucsf.edu/about/about_bat.jsp) on June 15, 2009 |
| Exhibit 9: | Declaration of John C. Childs In Support of Georgia-Pacific's Motion For Issuance Of Letter of Request |
| Exhibit 10: | January 29, 1965 letter from John Gough of WT to Cora Ayers of BAT |
| Exhibit 11: | October 15, 1965 letter from C.W. Paradice of WT to Cora Ayers of BAT |
| Exhibit 12: | January 2, 1967 letter from Cora Ayers of BAT to Mrs. Woods of WT |
| Exhibit 13: | August 7, 1967 letter from John Gough of WT to Cora Ayers of BAT |
| Exhibit 14: | February 21, 1969 letter G.S. Carver of WT to Cora Ayers of BAT |
| Exhibit 15: | May 11, 1970 Monsanto memorandum entitled, "Environmental Contamination by P.C.Bs." |
| Exhibit 16: | April 20, 2009 email from John C. Childs of Georgia-Pacific to Philip Scourfield of BAT entitled, "BAT Documents." |