UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

APPLETON PAPERS INC. and NCR CORP.,

    Plaintiffs,

v.                                                                                            Case No. 08-C-16

GEORGE A. WHITING PAPER CO., et al.,

    Defendants.

**ORDER**

The Georgia-Pacific Defendants (herein, the "Defendants") have filed two motions to compel production of documents. In the first of these, they seek documents responsive to a subpoena they issued to Appleton Coated LLC, a nonparty to this action. They assert, based on inferences from other documents produced in discovery, that the sought documents exist and are in the possession of one or more of the corporate entities that owns or is affiliated with Appleton Coated LLC. Oral argument was heard on July 30.

Appleton Coated LLC is a member of a labyrinthine group of corporations under the ownership of a company called Sequana, S.A., a French paper company. The subpoena sought documents from four other nonparties: Arjo Wiggins USA, Inc., Arjo Wiggins Appleton, Arjomari Priouz, and Arjowiggins SAS. According to the briefs, this last company is the principal focus of the subpoena.

Defendants assert that the documents they seek could shed light on NCR's knowledge of the toxicity and discharging of PCBs because NCR had a close relationship with a company called

Wiggins Teape ("WT"), a former licensee of NCR's PCB emulsion that produced and recycled carbonless copy paper. Defendants assert that WT became concerned about PCBs in the 1960's and conducted some testing during that time, and correspondence and other documents from this period should be available. The Defendants' brief relates a long and tortuous corporate history, the upshot of which is that the WT company merged with several companies and ultimately restructured itself into what is now known as Arjowiggins SAS. Arjowiggins SAS is a sister company to Appleton Coated LLC – both are owned by Sequana, S.A.

Appleton Coated LLC opposes the motion on number of grounds, but I conclude at the outset that its objections have been waived. Objections to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B). Failure to object within the time period can result in a waiver of the objection. The subpoena was served on Appleton Coated LLC on January 29; the first inkling of an objection came roughly a month later, on February 27.

Appleton Coated concedes that its objections were untimely, but it argues it should be relieved of any waiver because the time limit in Rule 45(c)(2)(B) is not chiseled in stone. Several of its arguments are meritless. It argues, for example, that Defendants failed to comply with Rule 45 because the subpoena would require a nonparty to travel more than 100 miles. Fed. R. Civ. P. 45(c)(3)(A)(ii). But the subpoena seeks only documents, and a "person commanded to produce documents . . . need not appear in person at the place of production." Fed. R. Civ. P. 45(c)(2)(A). Appleton Coated also argues that it should be relieved of the time limit because it is currently searching its records for compliant documents, but attempting to comply with a subpoena is not the

2

same as making an objection. And of course if such an argument were viable it would forever postpone the 14-day objection period and obviate the rule entirely.

Appleton Coated does argue that the time limit of Rule 45(c)(2)(B) should not be applied in cases where compliance would be unfair or impossible. For example, if the Defendants had asserted that Appleton Coated had control over the Green Bay Packers Corporation and Appleton Coated had failed to object in a timely fashion, the "waiver" of the objection would not automatically mean the Defendants would somehow be entitled to have Appleton Coated produce documents owned by the Green Bay Packers. One can't waive something to which he has no right in the first place, and of course the Rules themselves are intended to do justice, Fed. R. Civ. P. 1, and to protect third-parties from harassment. But when two companies share corporate ownership, it can hardly be said that an injustice would be worked merely if one company obtains documents from the other. "[W]e think it is clear that Rule 45 contemplates assertion of all objections to document production within 14 days, including those based on the act of production privilege. Thus, assuming the[y] had a reasonable basis for asserting the Fifth Amendment privilege at the time they first received the subpoenas, they should have raised the privilege at that time." *In re DG Acquisition Corp.,* 151 F.3d 75, 81 (2d Cir. 1998) (finding waiver may be relieved if constitutional concerns are present).

Even if Appleton Coated's objections were properly before me, I would grant the motion. Appleton Coated's objections are that compliance with the subpoena is too burdensome and that the Defendants have not established that it has the requisite control over documents at its sister company, Arjowiggins SAS. The objection to the burden is not persuasive because the movants have identified only a few entities and locations that might hold the documents they seek. This is

3

not, as Appleton Coated paints it, a mandate to search all the records of every entity owned by Susquana. In fact, there is no hint of a fishing expedition or any other improper purpose in the subpoenas or briefs. Indeed, at the hearing on the motion, Appleton Coated conceded that the Defendants had significantly limited their initial request.

Appleton Coated's principal objection is that it does not control the documents in question. Rule 34(a) allows requests to produce documents within another party's "possession, custody, or control." Fed. R. Civ. P. 34(a). As Judge Warren has found, "in deciding whether a subsidiary has 'control' over documents held by its parent corporation, courts focus on the closeness of the relationship between the entities." *Flavel v. Svedala Industries, Inc.,* 1993 WL 580831, *4 (E.D. Wis. 1993). It is true that the mere existence of shared ownership does not, in itself, warrant a finding of control. For example, corporate sisters in a conglomerate or holding company like Berkshire Hathaway might have absolutely nothing to do with each other (e.g., See's Candies and GEICO Insurance) – they are merely investments that happen to be held by the same shareholders. But the Defendants have established that there is sufficient intermingling of resources and efforts here such that one could reasonably expect that Appleton Coated LLC has the ability to obtain documents from Arjowiggins. As they point out, Appleton Coated's website states that it is a subsidiary of Arjowiggins SAS, and it points viewers of its website directly to a link to Arjowiggins' own website:

> Appleton Coated, with approximately 800 employees, is a subsidiary of Arjowiggins SAS, a global leader in the production of high value-added creative and technical papers. Headquartered in Paris, France, Arjowiggins employs 7500, has production facilities across 4 continents, and generates sales of approximately €2 billion annually.

(http://www.appletoncoated.com/index.php?GroupID=37, last visited July 2, 2009.)

4

For its part, Arjowiggins' website lists Appleton Coated LLC as one of its North American Production sites. (Dkt. # 444, Ex. 6.) The only conclusion one could draw from this is that not only are the two entities related in a corporate ownership sense, they are united in a shared business purpose. Having boasted to the world about its close corporate relationship with Arjowiggins, Appleton Coated cannot now distance itself when it is convenient. Accordingly, I conclude that the motion to compel should be granted.

The Defendants also move to compel production of documents from Plaintiff Appleton Papers, Inc. The documents sought are similar in nature (or identical) to the documents sought from Appleton Coated LLC. Again the principal issue is control, and some context is required. Arjo Wiggins Appleton ("AWA") was formed after a merger in 1990 between WT, Appleton Papers, Inc. and a French company called Arjomari Prioux. In 2001, the current Appleton Papers, Inc. (one of the two plaintiffs in this action) was formed when the Appleton coating operation was sold to its employees through an ESOP. Under various indemnity agreements connected with the sale, Arjo Wiggins Appleton agreed to indemnify Appleton Papers, Inc. for certain Fox River cleanup costs – potentially more than a hundred million dollars' worth. This arrangement gave to AWA the right to direct the defense of certain environmental claims, and Plaintiffs have conceded AWA is directing Appleton Papers, Inc.'s prosecution of this lawsuit through a power of attorney agreement. Defendants assert that the indemnification and power of attorney agreements mean that AWA is the real party in interest in this lawsuit, even though Appleton Papers, Inc. is the nominal plaintiff. As such, Appleton Papers, Inc. should be deemed "control" the actions of AWA for purposes of Fed. R. Civ. P. 34(a).

5

Unlike the corporate relationship between Appleton Coated and Arjowiggins SAS, here AWA has no apparent ownership interest in Appleton Papers, Inc. This is not fatal, however, because in many ways the relationship between AWA and Appleton Papers, Inc. is, for purposes of this lawsuit, even closer. The potential for this lawsuit was clearly envisioned by the parties when Appleton Papers, Inc. was created, and now that it has materialized it is clear from the filings and argument that AWA is calling the shots. Although it might be argued that the arrangement gives AWA the right to control certain of Appleton Papers' actions – not the other way around – that is not particularly damning either. Courts considering the control issue under Rule 34 also look to which parties will benefit from the lawsuit.

> If a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession. In *Compagnie Francaise*, the French government, which had indemnified the plaintiff for its loss, would recover any judgment. To deny discovery of documents held by the government would be "unacceptable." 105 F.R.D. at 35. In *Soletanche* and *Rodio*, an American subsidiary brought a declaratory judgment action on patents held by its parent, which refused to permit discovery of certain documents relating to the validity of its patent. The court determined that the foreign parent would receive the benefit of the litigation, and the American subsidiary was only an instrumentality. 99 F.R.D. at 272. If the nonparty is to receive a benefit from the litigation, that fact along with others must be weighed in determining control for purposes of Rule 34.

*Afros S.P.A. v. Krauss-Maffei Corp.,* 113 F.R.D. 127, 131 (D. Del. 1986).

I am sensitive to the fact that American law affords a significant level of respect to the corporate form and will not ignore corporate formalities absent good cause. *See, e.g., Kestrel Coal Pty. Ltd. v. Joy Global, Inc.,* 362 F.3d 401 (7th Cir. 2004). But Rule 34's scope is broader than mere possession or ownership; by including "control" in its breadth, the rule explicitly allowed discovery of documents that may not actually be owned by the party in question. Indeed, the Plaintiffs have

conceded that the various district courts' analyses set forth above govern the outcome here. Thus, although AWA lacks a current ownership interest in Appleton Papers, Inc., when it sold the company it essentially kept on the bundle of liability relating to this lawsuit. It now has a power of attorney over this lawsuit and is required to indemnify Appleton Papers, Inc. for its cleanup expenses. By all accounts, therefore, AWA is the real part in interest here and will be the principal beneficiary of this litigation. Accordingly, I conclude that the Defendants have adequately shown that the documents in AWA's possession are within the control of Appleton Papers, Inc.

Accordingly, the motion to compel [Dkt. # 423] Appleton Papers, Inc. to produce documents is **GRANTED**. The motion to compel [Dkt. # 420] Appleton Coated LLC to produce documents is **GRANTED**. Appleton Coated LLC and Appleton Papers, Inc. are ordered to search for and produce any documents in the possession of AWA or Arjowiggins SAS that are responsive to Georgia-Pacific's subpoenas.

**SO ORDERED** this ___31st___ day of July, 2009.

      s/ William C. Griesbach
      William C. Griesbach
      United States District Judge