UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN, GREEN BAY DIVISION

---

APPLETON PAPERS INC. and NCR
CORPORATION,

                      Plaintiffs,

        v.

GEORGE A. WHITING PAPER
COMPANY, et al.,

                      Defendants.

Case No. 08-CV-16-WCG

---

### CERTAIN DEFENDANTS' PROPOSED FINDINGS OF FACT
### IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

---

Defendants U.S. Paper Mills Corporation ("U.S. Paper"), CBC Coating, Inc. ("CBC"), Menasha Corporation, the City of Appleton and the Neenah Menasha Sewerage Commission submit the following proposed findings of fact in support of their joint Motion for Summary Judgment. Pursuant to Civil Local Rule 56.2, each statement is supported by appropriate citation to the Record.

    1.    The Court has jurisdiction over this case under § 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1331 (federal question). Dkt.#s 265, 300, 327, 293, 283, 261, 258,[1] each at ¶ 5.

    2.    Venue is proper under § 113(b) of CERCLA, 28 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b). Dkt.#s 265, 300, 327, 293, 283, 261, 258 each at ¶ 6.

---

[1] Defendants Neenah Menasha Sewerage Commission and the City of Appleton stipulated that their answers to the Sixth Amended complaint could be used as their answers to the Seventh Amended Complaint. See Dkt. #s 289 and 296.

3. Plaintiff Appleton Papers Inc., is a Delaware corporation with its principal place of business in Appleton, Wisconsin. Dkt.#s 265, 300, 327, 293, 261 each at ¶ 7. Plaintiff NCR is a Maryland corporation with its principal place of business in Dayton, Ohio. Appleton Papers Inc., and NCR are collectively referred to as "Plaintiffs." Dkt.#s 265, 300, 327, 293, 261 each at ¶ 8.

4. Defendants U.S. Paper, CBC, Menasha Corporation, and WTMI Company (collectively the "Recycling Mills"), are, were, or are successors to, paper recycling mills located adjacent to the Lower Fox River. Dkt.# 265 at ¶¶ 32-33, 48-51, Dkt. #283 at ¶ 49, Dkt.# 327 at ¶ 51, Dkt. 300 at ¶ 48, Dkt.# 293 ¶ 33.

5. Defendants Neenah Menasha Sewerage Commission (Menasha, Wisconsin) and the City of Appleton (Appleton, Wisconsin) (collectively the "POTWs"), operate wastewater treatment facilities. The "Recycling Mills" and the "POTWs" are collectively referred to as "defendants" unless identified individually. Dkt. # 265 at ¶¶ 41, 47, Dkt.# 261 at ¶ 47, Dkt.# 258 at ¶ 41.

6. Plaintiffs applied an emulsion containing polychlorinated biphenyls ("PCBs") onto their carbonless copy paper ("NCR Paper") from the mid-1950s until mid-1971 ("The Production Period") when the Plaintiffs switched from a PCB based emulsion to MIPB.[2] (Decl. of Steven P. Bogart ¶ 2 & Attach. 2, NCR's Responses to Glatfelter's Interrogatories at Resp. No. 1; Bogart Decl. ¶ 3 & Attach. 3, API's Responses to

---

[2] MIPB stands for Mono-isopropyl biphenyl, the chemical solvent that the Plaintiffs used to replace PCBs. MIPB, unlike PCBs, does not contain chlorine. (Bogart Decl. ¶ 9 & Attach. 9, Dep. of J. Stutz (June 18, 2009) 74:13-24.)

Aroclor 1242 is the trade name for the PCBs used by Plaintiffs in the production of their NCR Paper (Bogart Decl. ¶ 16 & Attach. 16, Dep. of Gordon Taylor, (May 13, 2009) 42:16-23.)

2

Glatfelter's Interrogatories at Resp. No. 1; Bogart Decl. ¶ 9 & Attach. 9, Dep. of J. Stutz, (June 18, 2009 and July 1, 2009) at 61:6-25, 74:13-18, 163:14-17.)

      7.      In 1976 the US EPA Administrator set effluent standards for discharges of PCBs at 1 microgram per liter (1µg/l), finding that:

> The term polychlorinated biphenyls refers to a family of organic chemicals which have been produced and marketed in this country for approximately 45 years. These organic chemicals are synthetically made and consist of a number of chlorinated biphenyl isomers. They are highly stable compounds and are used primarily as dielectric and heat transfer fluids, though they have other uses as well. PCBs have been conclusively demonstrated to produce lethal and sublethal toxic effects and low dose levels upon a wide range of fish, mammals, and other wildlife, and have also demonstrated adverse health effects to humans. Moreover, they are highly mobile and persistent in the environment, and bioaccumulate greatly in tissue.

(Bogart Decl. ¶ 5 & Attach. 5, 41 Fed. Reg. 30467, 30468 (July 23, 1976)).

      8.      PCBs have been banned from production in the United States since January 1, 1979 and distribution of PCBs in the United States has been banned since July 2, 1979. (Bogart Decl. ¶ 6 & Attach. 6, Toxic Substances Control Act, Public L. No. 94-469, § 6(e)(3)(A); 90 Stat, 2025 (1976) (codified at 15 U.S.C. § 2605(e)(3)(A)).

      9.      Remediation of the PCB pollution of the Lower Fox River has been estimated to cost $700 million in future response costs alone. (Bogart Decl. ¶ 36 & Attach. 36, Jeffrey Spector letter to David Rabbino (Aug. 6, 2009) at 2.)

      10.      Plaintiffs' production of NCR Paper created waste paper ("broke" and "trim") which Plaintiffs sold through brokers throughout the Production Period for the express purpose of recycling. (Bogart Decl. ¶ 10 & Attach. 10, Dep. of D. Christiansen, (Mar. 25, 2009) at 21:5-14, 29:11-14, 47:5-48:1; Bogart Decl. ¶ 35 & Attach. 35, Dep. of D. Schumaker, (Aug. 19, 2009) at 290:25-291:23; Bogart Decl. ¶ 38 & Attach. 38,

Plaintiff NCR Corporation's Responses and Objections to Defendant Menasha Corporation's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission at Responses 130-131 to the Requests for Admission.)

11. Some recyclers recycled the Plaintiffs' broke, trim, and NCR Paper forms, all made from NCR Paper, to recover the wood fibers in the paper. The PCBs were of no use to the recyclers. (Bogart Decl. ¶ 18 & Attach. 18, Dep. of F. Heinritz, (Jan. 28, 2009) at 90:12-91:11; Bogart Decl. ¶ 10 & Attach. 10, Dep. of D. Christensen, (Mar. 25 2009) at 47:5-48:2; Bogart Decl. ¶ 38 & Attach. 38, Plaintiff NCR Corporation's Responses and Objections to Defendant Menasha Corporation's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission at Responses 130-131 to the Requests for Admission.)

12. PCBs entered the Fox River directly from Plaintiffs own manufacturing activities and from recycling the waste paper (broke and trim), and from recycling the NCR Paper forms discarded by consumers and diverted for recycling rather than for burial at landfills. (Bogart Decl. ¶ 19 & Attach. 19, WDNR Record of Decision (July 2003) at 5.)

13. There is no evidence in the record that the Plaintiffs ever told the Defendants during the Production Period that their NCR Paper and the waste paper created during the production of NCR Paper contained PCBs. (Bogart Decl. ¶ 9 & Attach. 9, Dep. of J. Stutz, (July 1, 2009) at 163:14-21; Bogart Decl. ¶ 10 & Attach. 10, Dep. of D. Christiansen, (Mar. 25, 2009) at 72:14-73:13; Bogart Decl. ¶ 11 & Attach. 11, Dep. of E. Gallagher, (Feb. 18 2009) at 176:7-177:14; Bogart Decl. ¶ 22 & Attach. 22, Dep of R. Suess, (Aug. 20, 2009) at 70:15-71:11.)

14. In 1972, an internal memorandum received by Carl Rench, NCR's Corporate Vice President of Research and Development stated that:

- "In the late 1960's accumulative evidence began to show that PCB's may have adverse effects on certain forms of animal life. The same properties that contributed to their usefulness were indited (sic) as contributing to the possible hazardous effects. The resistance to breakdown—such as thermal and biodegradation—was shown to lead to accumulations in the environment. These accumulations (in relation to PCB solvent properties) found their way into animal life as a result of PCB solubility in fatty tissue. The aquatic and fowl forms of life are particularly affected. Domesticated animals (and subsequently human beings) are contaminated through accident or such things as paints containing PCBs."

- "NCR paper was a potential hazard during the production, during the printing and direct handling by the customer and finally through being used in recycled stock for food packaging. The biological effects of PCB's are not completely defined and are still being investigated. The materials can be lethally toxic to aquatic forms of life."

- "The accumulation in bird and mammal liver and fatty tissues represents a danger to human beings from transfer through consumption of animal products."

(Bogart Decl. ¶ 7 & Attach. 7, NCR Report, "The Status of Polychlorinated Biphenyl Uses at NCR" (Nov. 10, 1972), at NCR-FOX-350916-918.)

15. NCR's corporate designee has testified as follows concerning NCR's lack of notification of the presence of PCBs in its NCR Paper:

> 9 **Q:** What area would have
>
> 10 been tasked with the responsibility for communicating
>
> 11 the risk of PCBs in NCR products to downstream users
>
> 12 of that product? This would be licensees, broke
>
> 13 dealers, customers, paper mills and the like. Was
>
> 14 there anybody who was tasked with that
>
> 15 responsibility?
>
> 16 **A**: Not that I'm aware of. I'm not aware of a document

5

17 or information that tells us there was a specific

18 person.

19 **Q**: Was there an area where that responsibility lay?

20 **A:** Same answer. I'm not aware.

21 **Q**: Same question with respect to municipal wastewater

22 treatment facilities.

23 MR. WESTERFIELD: I'll object. That's

24 outside the scope of the notice. If you know.

25 THE WITNESS: Same answer would apply.

Page 177

1 BY MR. HANSEN:

2 **Q**: Do you know of anyone within NCR that we could go to

3 and ask and find out that in fact such communications

4 occurred, people -- that NCR did, in fact, warn

5 people downstream of these risks?

6 **A**: No, I don't know of anyone in the company that could

7 be asked that question. I mean --

8 **Q**: Past or present. Still living.

9 **A**: You know, I would, again, just simply ask the people

10 that I've identified here so far.

11 **Q**: In the records that you looked at to prepare for this

12 deposition or any other records you've looked at,

13 have you seen any such notifications?

14 **A**: I don't recall seeing any, no.

(Bogart Decl. ¶ 11 & Attach. 11, Dep. of E. Gallagher, (Feb. 18 2009) at 176:9-177:14.)

16. The record contains no evidence that any of the Defendants discovered that NCR Paper contained PCBs until, at the very earliest, August 1971.

17. Throughout the 1970s Plaintiffs continued to tell the public and the Defendants that its NCR Paper forms were safe:

> The paper industry does not directly use PCBs in manufacture. Although Aroclor 1242 was formerly used as a dye solvent in NCR Paper, its use was minute in comparison with other PCB applications outside the paper industry.
>
> 'We'd like to emphasize that we stopped using PCBs in our NCR Paper manufacture in April 1971 . . . . During the past five years, we introduced no PCB in our finished paper; thus our waste Trim and wastewaters of our microcapsule manufacturing plants would reflect this change.'
>
> Regarding pre 1971 NCR Paper already in office files . . . 'No scientific evidence exists for fearing this paper to be a hazard.'

(Bogart Decl. ¶ 20 & Attach. 20, NCR's Appleton Papers Division statement to the WDNR (Feb. 18, 1976), at NCR-FOX-0159623-625 (quoting John P. Reeve, Division President, Thomas W. Busch, Vice President of Technical Research and development and Walter E. Spearin, Vice President for Environmental Control); Bogart Decl. ¶ 21 & Attach. 21, Memorandum from Bob Suess, Marketing and Corporate Services, NCR, to Frank McKinney, "PCBs" (Feb. 19, 1976), at GLTFOX-00002886-2888.)

18. In January 1976, Walter Spearin, NCR Appleton Papers Division's Vice President of Environmental Control informed James S. Haney, Bergstrom Paper Company's Public Affairs Director that "Aroclor 1242, the only PCB used in NCR carbonless paper, is readily biodegradable . . . ." (Bogart Decl. ¶ 23 & Attach. 23, Walter E. Spearin Letter to James S. Haney (Jan. 19, 1976) at NCR-FOX-0551378.)

19. The Neenah-Menasha Sewerage Commission did not discover PCBs in its effluent until 1972 through WDNR sampling. WDNR denied Neenah Menasha Sewerage Commission's requests for further PCB testing because of the insignificant amounts indicated by previous sampling. (Bogart Decl. ¶ 29 & Attach. 29, Letter from

7

Robert W. Bues, NMSC Manager-Engineer, to Thomas G Frangos of the WDNR (Nov. 25 1975), NMSCFOX000599-600.)

20. Neenah Menasha Sewerage Commission was never told that PCBs were used to make carbonless copy paper or that the Plaintiffs were recycling their waste NCR Paper. (Decl. of E. Miles ¶ 2, Ex. A, Dep. of R. St. Laurent (July 21, 2009) at 80:23-25; Miles Decl. ¶ 3, Ex. B, Dep. of J. Knabenbauer (August 4, 2009) at 36:1-7; Miles Decl. ¶ 4, Ex. C, Dep. of H. Schuelke (July 28, 2009) at 85:21-24; Miles Decl. ¶ 5, Ex. D, Dep. of D. Juedes (May 7, 2009) at 137:1-16; Miles Decl. ¶ 6, Ex. E, Dep. of Gerald Taylor (June 16, 2009) at 261:4-19; Miles Decl. ¶ 7, Ex. F, Dep. of Gordon Taylor (May 13, 2009) at 283:11-15; Miles Decl. ¶ 8, Ex. G, Dep. of W. West (May 14, 2009) at 101:12-16; Miles Decl. ¶ 9, Ex. H, Dep. of K. Nelson (June 22, 2009) at 106:22-107:4; Miles Decl. ¶ 10, Ex. I, Dep. of G. Walraven (June 23, 2009) at 106:11-19; Miles Decl. ¶ 11, Ex. J, Dep. of J. Wignall (July 8, 2009) at 64:15-65:5; Miles Decl. ¶ 12, Ex. K, Dep. of F. Whiting (May 12, 2009) at 132:18-133:13; Miles Decl. ¶13, Ex. L, Dep. of D. Bergstrom (May 20, 2009) at 215:6-12; Miles Decl. ¶ 14, Ex. M, Dep. of C. Hess (May 14, 2009) at 226:13-227:1; Miles Decl. ¶ 28 , Ex.AA, Dep. of D. Sipple (May 27, 2009) at 104:14-18; Miles Decl. ¶ 15, Ex. N, Dep. of J. Stutz (July 1, 2009) at 243:13-23; Miles Decl. ¶16, Ex. O, Dep. of D. Lee (May 19, 2009) at 175:14-23, 176:16-21; Miles Decl. ¶ 17, Ex. P, Dep. of D. Morton (May 1, 2009) at 208:22-209:3; Miles Decl. ¶ 18, Ex. Q, Dep. of O. Ross (May 28, 2009) at 261:23-262:5; Miles Decl. ¶ 19, Ex. R, Dep. of P. Tallmadge (March 25, 2009) at 109:13-110:6; Miles Decl. ¶ 20, Ex. S, Dep. of K. Voiss (May 21, 2009) at 180:7-13; Miles Decl. ¶ 21, Ex. T, Dep. of D. Sugden (May 6, 2009) at 96:2-12; Miles Decl. ¶ 22, Ex. U, Dep. of R. Swoboda (May 27, 2009) at 122:7-15; Miles Decl.

¶ 23, Ex. V, Dep. of W. Zabor (May 19, 2009) at 119:8-11; Miles Decl. ¶ 24, Ex. W, Dep. of J. Bodmer (March 16, 2009) at 207:12-208:24; Miles Decl. ¶ 25, Ex. X, Dep. of D. Hultgren (March 18, 2009) at 90:2-22; Miles Decl. ¶ 26, Ex. Y, Dep. of L. Balster (May 11, 2009) at 188:21-189:15; Miles Decl. ¶ 27, Ex. Z, Dep. of H. Schwab (June 30, 2009) at 164:23-165:1.)

21. The City of Appleton did not discover PCBs in its influent or effluent or that Plaintiffs NCR Paper contained PCBs until after the Production Period. (Bogart Decl. ¶ 37 & Attach. 37, Amended Responses of City of Appleton to Appleton Papers Inc.'s First Set of Interrogatories and Requests for the Production of Documents at Interrogatory Responses 4-5; Bogart Decl. ¶ 39 & Attach. 39, Plaintiff NCR Corporation's Responses to City of Appleton's First Set of Interrogatories at Response 1.)

22. U.S. Paper was and is today, a small paper company that made paper for the cores of toilet and paper towel roles. U.S. Paper did not produce paper used in food packaging. (Bogart Decl. ¶ 30 & Attach. 30, Dep. of J. Patterson, (Mar. 13, 2009) at 34:17-22, 125:4-11, 126:13-15; Bogart Decl. ¶ 31 & Attach. 31, Dep. of T. Olson, (May 12, 2009) at 35:4-14.)

23. There is no evidence in the record that Plaintiffs ever informed U.S. Paper that the NCR Paper, broke, and trim made by Plaintiffs contained PCBs.

24. There is no evidence in the record that U.S. Paper ever knew that Plaintiffs' NCR Paper contained PCBs until the 1990s. (Bogart Decl. ¶ 33 & Attach. 33, Dep. of D. Hecker, (June 10, 2009) at 59:25-60:23; Bogart Decl. ¶ 34 & Attach. 34, Dep. of T. Van Deurzen, (Mar. 12, 2009) at 76:18-77:21; Bogart Decl. ¶ 30 & Attach. 30, Dep. of J. Patterson, (Mar. 13, 2009) at 28:12-13, 101:25-102:3, 107:8-14; Bogart Decl. ¶ 32 &

Attach. 32, Dep of R. Gerbers, (Mar. 11, 2009) at 8:14-9:12, 23:10-24:5, 80:9-14; Bogart Decl. ¶ 31 & Attach. 31, Dep. of T. Olson, (May 12, 2009) at 36:11-21, 40:2-13.)

25. In 1973 the Wisconsin DNR began requiring all paper recyclers to test their waste water. Bogart Decl. ¶ 27 & Attach. 27, Wisc. Admin. Code § NR 101 (1973).

26. U.S. Paper did not have a laboratory or other facility to test NCR Paper or its effluent so U.S. Paper retained Foth and Van Dyke and Associates to conduct the testing required by the DNR. (Bogart Decl. 30 & Attach. 30, Dep. of J. Patterson, Mar. 13, 2009) at 114:21-115:4, 125:12-19; Decl. of Timothy Davis, Ex. A, Denis J. Loritz letter to Carl Albers with Attached Wastewater Samples at USPFOX00000066-72; Bogart Decl. ¶ 28 & Attach. 28, U.S. Paper's Response to Plaintiff NCR Corporation's First Set of Interrogatories at Responses 1 and 2.)

27. U.S. Paper never had a positive test for PCBs. (Decl. of John Van Lieshout, Ex. A, U.S. Paper's NR101 Summary Reports at USPFOX 00000052-56 (NR101 reports from 1973-1977 containing no reference to PCBs), USPFOX00000057-58(showing no detect for PCBs in 1978-79); Davis Decl., Ex. A, Denis J. Loritz letter to Carl Albers with Attached Wastewater Samples at USPFOX00000066-72 (reporting results below detection limits for PCBs (<0.0001)); Bogart Decl. ¶ 28 & Attach. 28, U.S. Paper's Response to Plaintiff NCR Corporation's First Set of Interrogatories at Responses 1 and 2.)

28. In an October 24, 1975 memorandum, Lowell Schleicher, who was the head of NCR's Research Department, stated that "the recycling companies are the innocent victims of circumstance created by carbonless manufactures which are still a

10

part of the paper industry." (Bogart Decl. ¶ 15 & Attach. 15, Memorandum from Lowell Schleicher to Tom Busch "Wisconsin Paper Council Brief on PCB's" (Oct. 24, 1975), at NCR-FOX-0536795; Bogart Decl. ¶ 16 & Attach. 16, Dep. of Gordon Taylor, (May 13, 2009) at 29:5-22; Bogart Decl. ¶ 17 & Attach. 17, Dep. of E. McKinney, (Apr. 8, 2009) at 201:8-24.)

29. Plaintiffs' patents indicate that solvents other than PCBs could have been used in the production of NCR Paper. (Bogart Decl. ¶ 12 & Attach. 12, U.S. Patent No. 2,712,507, col. 3 l. 50-59 (July 5, 1955)); *see also* (Bogart Decl. ¶ 13 & Attach. 13, U.S. Patent No. 3,849,164, col. 8 l. 39-51 (Nov. 19, 1974)).

30. Production of NCR paper rose from 54,000 reams in 1954, to 3,857,000 reams in 1971, and increased yet another 19% in 1972 after the switch from PCB to MIPB. (Bogart Decl. ¶ 4 & Attach. 4, U.S. Production NCR Paper Capsules, at NCR-FOX0549138.)

31. During the Production Period Plaintiffs kept their recipe used to make the PCB containing emulsion, including its contents, a closely guarded secret. (Bogart Decl. ¶ 35 & Attach. 35, Dep. of D. Shumaker, (Aug. 19, 2009) at 43:15-25, 290:11-24.)

32. Throughout the 1970s the Wisconsin and Federal Governments continued to encourage the recycling of paper despite the fact it could contain trace amounts of PCBs. On or about December 18, 1972, the Government publicly stated that prohibiting all PCB-containing paper in food-packaging material regardless of level of PCB contamination "would also have an adverse impact on recycling programs that would outweigh the beneficial effects, if any, that could be gained by a complete prohibition on the use of salvaged or reclaimed paper that contains low levels of PCBs." (Bogart Decl.

¶ 24 & Attach. 24, MONSFOX00041577-41579.) As late as May 31, 1979, in prohibiting the manufacture, processing, and distribution of PCBs, the EPA ruled:

> [E]xisting PCB carbonless copy paper may be used indefinitely. . . . There does not appear to be a way to distinguish PCB carbonless copy paper from non-PCB carbonless copy paper except perhaps by dates or other indications on unused inventories. A large portion of the PCB carbonless copy paper that has not been destroyed is probably in files. An enormous undertaking would be required of both business and government to purge existing files of PCB carbonless copy paper. Moreover, the amount of PCB on each sheet of carbonless copy paper is extremely small. In view of these practical considerations and because the potential PCB exposure and risks to human health or the environment are negligible, EPA has concluded that this activity does not present an unreasonable risk and is authorizing the continued use of existing PCB carbonless copy paper.

(Bogart Decl. ¶ 25 & Attach. 25, PCB Manufacturing, Processing, Distribution in Commerce, and Use Prohibitions, 44 Fed. Reg. 31514, 31535 (May 31, 1979)(as codified at 40 CFR pt. 761.)) In 1975, the Wisconsin legislature specifically excepted "wastepaper, pulp or other paper products or materials . . . to be purchased for use within this state in the manufacture of recycled products" from its total ban on the manufacturing or purchase of PCB containing products. (Bogart Decl. ¶ 26 & Attach. 26, 1976 Wis. Act. 412, (1975 Wisconsin Assembly Bill 1342 Section 2.))

Dated this 28th day of August, 2009.

| **Attorneys for US Paper Mills Corp.** | **Attorneys for CBC Coating, Inc.** |

s/ Scott W. Hansen
Thomas R. Gottshall
Stephen F. McKinney
Haynsworth Sinkler Boyd PA
1201 Main Street, Suite 2200
P.O. Box 11889
Columbia, SC 29211-1889
Telephone: 803-779-3080
Facsimile: 803-765-1243
tgottshall@hsblawfirm.com
smckinney@hsblawfirm.com

Scott W. Hansen
Steven P. Bogart
John M. Van Lieshout
David E. Frank
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
P.O. Box. 2965
Milwaukee, WI 53202-
Telephone: 414-298-1000
Facsimile: 414-298-8097
jvanlies@reinhartlaw.com
sbogart@reinhartlaw.com
shansen@reinhartlaw.com
dfranc@reinhartlaw.com

s/ Michael P. Carlton
Kelly J. Noyes
Michael P. Carlton
Thomas Armstrong
Susan E. Lovern
von Briesen & Roper SC
411 East Wisconsin Avenue, Suite 700
Milwaukee, WI 53202-4427
Telephone: 414-276-1122
Facsimile: 414-276-6281
knoyes@vonbriesen.com
mcarlton@vonbriesen.com
tarmstro@vonbriesen.com
slovern@vonbriesen.com

**Attorneys for Menasha Corporation**

s/ Philip c. Hunsucker
Allison E. McAdam
Brian L. Zagon
Christopher J. Dow
David Rabbino
Philip C. Hunsucker
Hunsucker Goodstein & Nelson PC
3717 Mt. Diablo Boulevard, Suite 200
Lafayette, CA 94549
Telephone: 925-284-0840
Facsimile: 925-284-0870
amcadam@hgnlaw.com
bzagon@hgnlaw.com

**Attorneys for Neenah-Menasha Sewerage Commission**

s/ William J. Mulligan
William J. Mulligan
Kevin J. Lyons
James E. Braza
Tara M. Mathison
Elizabeth K.Miles
Davis & Kuelthau SC
111 East Kilbourn Avenue, Suite 1400
Milwaukee, WI 53202-6613
Telephone: 414-225-1402
Facsimile: 414-278-3602
wmulligan@dkattorneys.com

13

cdow@hgnlaw.com
drabbino@hgnlaw.com
phunsucker@hgnlaw.com

klyons@dkattorneys.com
jbraza@dkattorneys.com
tmathison@dkattorneys.com
emiles@dkattorneys.com

Joseph J. Beisenstein
Mark R. Feldmann
Menn Law Firm Ltd.
2501 E. Enterprise Avenue
P.O. Box 785
Appleton, WI 54912-0785
Telephone:  920-731-6631
Facsimile:  920-734-00981
joseph-beisenstein@mennlaw.com
mark-feldmann@mennlaw.com

**Attorneys for City of Appleton**

s/ Paul G. Kent
Waltraud A. Arts
Paul G. Kent
Anderson & Kent SC
One North Pinckney Street, Suite 200
Madison, WI 53703-2868
Telephone:  608-246-8500
Facsimile:  608-246-8511
warts@andersonkent.com
kent@andersonkent.com
apotts@andersonkent.com
akim@andersonkent.com

James P. Walsh
Appleton City Attorney
100 North Appleton Street
Appleton, WI 54911
Telephone:  920-832-6423

REINHART\2855221