IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

APPLETON PAPERS INC. and
NCR CORPORATION,

        Plaintiffs,

v.                                                   No. 08-CV-16-WCG

GEORGE A. WHITING PAPER COMPANY, et al.,
        Defendants.

---

NCR CORPORATION,

        Plaintiff,

v.                                                   No. 08-CV-0895-WCG

KIMBERLY-CLARK CORPORATION, et al.,
        Defendants.

---

## PLAINTIFFS' PROPOSED FINDINGS OF FACT

---

Plaintiffs NCR Corporation ("NCR") and Appleton Papers Inc. ("API"), by their counsel, submit the following Proposed Findings of Fact:

**A.    Parties, Jurisdiction and Venue.**

1.    API is a Delaware corporation with its principal place of business in Appleton, Wisconsin. Complaint, Case no. 08-CV-16-WCG, at ¶ 7.

2.    NCR is a Maryland corporation with its principal place of business in Dayton, Ohio. Complaint, Case no. 08-CV-16-WCG, at ¶ 8; Complaint, Case no. 08-CV-895-WCG, at ¶ 7.

3. Defendants are identified in the original and amended complaints filed in Case no. 08-CV-16-WCG and Case no. 08-CV-895-WCG.

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. §913(b), and 28 U.S.C. § 1331 (federal question). Complaint, Case no. 08-CV-16-WCG, at ¶ 5; Complaint, Case no. 08-CV-895-WCG, at ¶ 5.

5. Venue is proper in this District pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 913(b), and 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims, including the alleged releases of hazardous substances, occurred in this District and the Lower Fox River is located entirely within this District. Additionally, Defendants conducted business or operations within this District at times relevant to the events described in the Plaintiffs' Complaints. Complaint, Case no. 08-CV-16-WCG, at ¶ 6; Complaint, Case no. 08-CV-895-WCG, at ¶ 6.

### A. Carbonless Paper.

6. NCR invented carbonless paper in 1953. Declaration of Ronald R. Ragatz ("Ragatz Dec.") at ¶ 2, Ex. A (Plaintiff NCR Corporation's December 19, 2008 Responses to Defendant P.H. Glatfelter Company's First Set of Interrogatories ("Interrogatory Response") No. 1).

7. In its simplest form, carbonless paper involved two sheets of paper, a top sheet with coating on the back and a bottom sheet with coating on the front.

*Id.* at ¶ 3, Ex. B (Deposition of Jerome Bodmer ("Bodmer Dep.") at 17-18); *Id.* at ¶ 4, Ex. C (Deposition of Dale Schumaker ("Schumaker Dep.") at 20).

8. The top sheet was coated with an emulsion consisting of microscopic gelatin capsules containing dye dissolved in a solvent. *Id.* at ¶ 3, Ex. B (Bodmer Dep. at 20-21); *Id.* at ¶ 5, Ex. D (Deposition of Ronald Jezerc ("Jezerc Dep.") at 34); *Id.* at ¶ 4, Ex. C (Schumaker Dep. at 75).

9. The original solvent in the microcapsules was a formulation of polychlorinated biphenyl ("PCB") sold by Monsanto as Aroclor 1242. *Id.* at ¶ 3, Ex. B (Bodmer Dep. at 30); *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 34, 56).

10. Impact on the front of the top sheet (e.g., by typewriter key or pen) would rupture the capsules on the back of that sheet and release the dye that reacted with the coating on the front of the bottom sheet, thereby creating a copy of whatever was typed or written. *Id.* at ¶ 3, Ex. B (Bodmer Dep. at 20-21); *Id.* at ¶ 6, Ex. E (Deposition of William Goetz ("Goetz Dep.") at 103, 157).

### B. Production Of Carbonless Paper During The Time PCBs Were Used.

11. Commercial production and sale of carbonless paper began in 1954. *Id.* at ¶ 2, Ex. A (Interrogatory Response No. 1).

12. NCR manufactured the emulsion. *Id.* at ¶ 6, Ex. E (Goetz Dep. at 40).

13. NCR contracted with certain companies to apply the emulsion and other coatings to the paper. *Id.* (Goetz Dep. at 38, 290-91); *Id.* at ¶ 7, Ex. F

3

(Deposition of Floyd Strelow ("Strelow Dep.") at 116-117); *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 124).

14. One such company was Appleton Coated Paper Company ("ACPC"), a specialty paper coater based in Appleton, Wisconsin. *Id.* at ¶ 6, Ex. E (Goetz Dep. at 38).

15. NCR sold the emulsion to ACPC and ACPC sold the coated paper back to NCR. *Id.* (Goetz Dep. at 38, 79); *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 109).

16. NCR marketed and sold the finished carbonless paper to its customers. *Id.* at ¶ 6, Ex. E (Goetz Dep. at 294).

17. The use of PCBs in carbonless paper ended in the spring of 1971. *Id.* at ¶ 2, Ex. A (Interrogatory Response No. 1); *Id.* at ¶ 9, Ex. H (NCR-FOX 0162136-0162137.

### C. ACPC Corporate History.

18. ACPC was incorporated in 1907 and remained a separate corporate entity throughout the time that PCBs were used in carbonless paper. *Id.* at ¶ 10, Ex. I (NCR-FOX 0090101-113).[1]

19. Through most of that time, NCR had no ownership interest in ACPC. *Id.* (NCR-FOX 0090101-13).

20. NCR and ACPC simply had a contractual business relationship. *Id.* at ¶ 6, Ex. E (Goetz Dep. at 38).

---

[1] Corporate history facts are not in dispute. However, further documents supporting Plaintiffs' corporate histories can be made available.

### D. NCR Corporate History.

21. In September 1969, The National Cash Register Company acquired Combined Paper Mills, Inc., which became its wholly-owned subsidiary. *Id.* at ¶ 10, Ex. I (NCR-FOX 0090101-113).

22. On or about September 30, 1970, The National Cash Register Company acquired Appleton Coated Paper Company, making it a wholly owned subsidiary. *Id.* (NCR-FOX 0090101-13).

23. On or about June 21, 1971, The National Cash Register Company created Appleton Papers, Inc. as a subsidiary by merging ACPC and Combined Paper Mills, Inc. *Id.* (NCR-FOX 0090101-13).

24. Appleton Papers, Inc. was a wholly-owned subsidiary of The National Cash Register Company. *Id.* (NCR-FOX 0090101-13).

25. Effective as of January 1, 1973, Appleton Papers, Inc. merged into The National Cash Register Company, and became known as the Appleton Papers Division of The National Cash Register Company. *Id.* (NCR-FOX 0090101-13).

26. On or about May 10, 1974, The National Cash Register Company changed its name to NCR Corporation ("NCR"), a Maryland corporation, which is one of the Plaintiffs in this action. *Id.* (NCR-FOX 0090101-13).

### E. API Corporate History.

27. In June 1978, NCR sold the assets of the Appleton Papers Division to Lentheric Inc. *Id.* (NCR-FOX 0090101-113).

5

28. Lentheric Inc. had no prior ownership affiliation with NCR or any prior interest in any of the Appleton Paper Divisions assets. *Id.* at ¶ 10, Ex. I (NCR-FOX 0090101-113).

29. On or about June 30, 1978, Lentheric Inc. changed its name to Appleton Papers Inc. ("API"), which is one of the Plaintiffs in this action. *Id.* (NCR-FOX 0090101-113).

30. API is a different corporation than Appleton Papers, Inc. *Id.* (NCR-FOX 0090101-113).

**F.  106 Order.**

31. In November 2007, the government issued a unilateral administrative order pursuant to CERCLA § 106 ("106 Order") to NCR and API, as well as six other recipients who are Defendants in this action. *Id.* at ¶ 11, Ex. J (106 Order).

32. The 106 Order states that NCR is liable as a successor to at least two corporate predecessors. *Id.* (106 Order, ¶ 7a.i).

33. The 106 Order likewise states that API is liable under CERCLA because it is a "successor" to companies that disposed of hazardous substances. *Id.* (106 Order, ¶ 7a.ii).

34. The 106 Order identifies the two corporate predecessors, ACPC and Combined Papers Mills, Inc. and their corporate history. *Id.* (106 Order, ¶ 7a.iv. and v).

35. The government does not state any basis for concluding that NCR is liable under CERCLA except as successor to ACPC and Combined Paper Mills, Inc. *Id.* at ¶ 11, Ex. J (106 Order, ¶ 7a.i).

36. API is alleged to have liability solely as a "successor." *Id.* (106 Order, ¶ 7a.ii).

37. API did no business until 1978, seven years after the use of PCBs in carbonless copy had ceased. *Id.* at ¶ 10, Ex. I (NCR-FOX 0090101-113).

38. Combined Paper Mills, Inc. conducted trial runs of CB coating on a limited basis for a short period of time when PCBs were used in making carbonless paper. *Id.* at ¶ 4, Ex. C (Schumaker Dep. at 44).

### G. ACPC Personnel.

39. Jerome Bodmer was an ACPC chemist. *Id.* at ¶ 3, Ex. B (Bodmer Dep. at 16).

40. Dale Schumaker was ACPC's coatings manager. *Id.* at ¶ 4, Ex. C (Schumaker Dep. at 17-18).

41. Ron Jezerc was ACPC's research manager. *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 15).

42. William Goetz was an ACPC chemist. *Id.* at ¶ 6, Ex. E (Goetz Dep. at 26).

43. Floyd Strelow was ACPC's purchasing manager. *Id.* at ¶ 7, Ex. F (Strelow Dep. at 10-11).

44. Donald Christensen was an ACPC employee in the purchasing department. *Id.* at ¶ 8, Ex. G (Deposition of Donald Christensen ("Christensen Dep.") at 8).

**H.    Role Of ACPC.**

45. ACPC purchased the emulsion manufactured by NCR and it applied the coatings to the paper. *Id.* at ¶ 6, Ex. E (Goetz Dep. at 38-40); *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 92).

46. NCR marketed and sold the finished product to its customers. *Id.* at ¶ 6, Ex. E (Goetz Dep. at 294); *Id.* at ¶ 4, Ex. C (Schumaker Dep. at 203-04).

47. ACPC never manufactured the emulsion for carbonless paper when it contained PCBs. *Id.* at ¶ 6, Ex. E (Goetz Dep. at 38-40).

48. ACPC did not control the chemical composition of the emulsion. *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 93).

49. NCR controlled the capsule technology and did not want ACPC to learn how to make capsules. *Id.* (Jezerc Dep. at 93, 108-09); *Id.* at ¶ 4, Ex. C (Schumaker Dep. at 43, 242).

50. ACPC did not know very much about the capsules because that was all controlled by NCR. *Id.* at ¶ 4, Ex. C (Schumaker Dep. at 31, 43, 74, 242).

51. The role of ACPC was to apply the coating so that the product performed in a way that was acceptable to NCR and its customers. *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 30-31); *Id.* at ¶ 4, Ex. C (Schumaker Dep. at 32).

52. ACPC treated the emulsion as a very valuable product. *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 32, 189).

### I.     ACPC's Knowledge And Actions.

53. ACPC first learned of generalized concerns about PCBs in mid to late 1969. *Id.* (Jezerc Dep. at 58, 74).

54. Upon learning of concerns related to PCBs, ACPC promptly began cooperating with NCR in efforts to identify a replacement solvent. *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 188).

55. NCR worked with Monsanto to find potential replacement solvents. *Id.* (Jezerc Dep. at 87-88).

56. ACPC did trial runs using emulsion with the replacement solvents in order to determine whether the new emulsion could be effectively applied to the paper in a way that would produce acceptable performance by the finished carbonless paper. *Id.* (Jezerc Dep. at 77-78).

57. ACPC did not believe that the attention raised about PCBs applied to Aroclor 1242. *Id.* at ¶¶ 13-14, Ex. L (MONSFOX00002456-457), Ex. M (NCR-FOX 0592823).

58. At that point, NCR was already looking for a replacement solvent. *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 88).

59. The transition to a replacement solvent was made in approximately the spring of 1971. *Id.* at ¶ 9, Ex. H (NCR-FOX 0162136-137).

60. There is no evidence that ACPC was aware that recycling NCR-brand carbonless paper would result in the discharge of PCBs to any water body. *Id.* at ¶ 5, Ex. D (Jezerc Dep. at 82, 187, 195); *Id.* at ¶ 8, Ex. G (Christensen Dep. at 64-65); *Id.* at ¶ 7, Ex. F (Strelow Dep. at 66, 99-100); *Id.* at ¶ 4, Ex. C (Schumaker Dep. at 193); *Id.* at ¶ 3, Ex. B (Bodmer Dep. at 37-38).

61. Defendants' PCB expert testified that the chronic effects of PCBs in the environment were not known until 1973 or 1974. *Id.* at ¶ 12, Ex. K (Deposition of Joseph V. Rodricks ("Rodricks Dep.") at 65-66).

62. Defendant's PCB expert simply assumed without any basis that ACPC had the same knowledge as NCR. *Id.* at ¶ 12, Ex. K (Rodricks Dep. at 231-33).

63. There is no evidence that ACPC knew, or should have known, during the time that PCBs were used in carbonless paper that recycling NCR-brand carbonless paper would result in the discharge of PCBs to a water body, thereby risking environmental damage. *Id*. at ¶ 5, Ex. D (Jezerc Dep. at 82, 187, 195); *Id.* at ¶ 8, Ex. G (Christensen Dep. at 64-65); *Id.* at ¶ 7, Ex. F (Strelow Dep. at 66, 99-100); *Id.* at ¶ 4, Ex. C (Schumaker Dep. at 193); *Id.* at ¶ 3, Ex. B (Bodmer Dep. at 37-38); *Id.* at ¶ 12, Ex. K (Rodricks Dep. at 65-66).

Dated this 28th day of August, 2009.

Respectfully submitted,

| APPLETON PAPERS INC. | NCR CORPORATION |
|---|---|
| /s/ Ronald R. Ragatz | /s/ Kathleen L. Roach |
| Counsel for Appleton Papers Inc.: | Counsel for NCR Corporation: |
| Michael L. Hermes | Kathleen L. Roach |
| HERMES LAW LTD. | SIDLEY AUSTIN LLP |
| 333 Main Street, Suite 601 | One South Dearborn Street |
| Green Bay, Wisconsin 54301 | Chicago, Illinois 60603 |
| (920) 436-9870 | (312) 853-7000 |
| Fax: (920) 436-9871 | Fax: (312) 853-7036 |
| Ronald R. Ragatz | J. Ric Gass |
| DEWITT ROSS & STEVENS S.C. | GASS WEBER MULLINS LLC |
| 2 E. Mifflin Street, Suite 600 | 309 North Water Street |
| Madison, Wisconsin 53703 | Milwaukee, Wisconsin 53202 |
| (608) 255-8891 | (414) 224-7697 |
| Fax: (608) 252-9243 | Fax: (414) 224-6116 |
| **COUNSEL FOR APPLETON PAPERS INC.** | **COUNSEL FOR NCR CORPORATION** |