IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS INC. and<br>NCR CORPORATION,<br><br>        Plaintiffs,<br>v.<br><br>GEORGE A. WHITING PAPER<br>COMPANY, ET AL.,<br><br>        Defendants. | Case No.: No. 08-CV-00016-WCG<br><br>(Consolidated with Case No. 08-CV-0895) |

### RESPONSE OF THE UNITED STATES TO PROPOSED FINDINGS OF FACT SUBMITTED WITH CERTAIN DEFENDANTS' THREE MOTIONS FOR SUMMARY JUDGMENT

The United States, a third-party defendant in Case No. 08-00016 and a defendant in Case No. 08-0895, submitted a response to the three Motions for Summary Judgment/Motions in Limine filed by "Certain Defendants," including specifically: (1) Certain Defendants' Motion For Partial Summary Judgment Or, In The Alternative, Motion In Limine (Dkt. 571, 572, 581) (hereinafter "Motion No. 1"); (2) Certain Defendants' Motion For Summary Judgment Or, Alternatively, Partial Summary Judgment (Dkt. 569, 570,587) (hereinafter "Motion No. 2"); and (3) Certain Defendants' Motion For Summary Judgment Pursuant To Fed. R. Civ. P. 1, 56, 56(d), 16, L.R. 56.2 & 7.1 Or, In The Alternative, Motion In Limine (Dkt. 551, 553, 554) (hereinafter "Motion No. 3"). The United States did not oppose those motions nor was the United States the subject of those motions. Accordingly, the United States is not required to respond to the Certain Defendants' proposed Findings of Fact and reserves its right to contest any such findings when and if they are asserted in a motion filed against the United States. Nevertheless, because the United States does cite certain factual material in its brief responding

to the Certain Defendants' three Motions, and because LR. 56.2(b) and (d) require parties to support the factual assertions in their briefs with reference to Proposed Findings of Fact, the United States sets forth the following responses to the Proposed Findings of Fact of the Certain Defendants (Dkt. 554) offered in support of Motion #3 and to the Proposed Findings of Fact of Certain Defendants (Dkt. 587) offered in support of Motion #2.

For the purpose of the present motions, the United States does not dispute the facts contained in either of Certain Defendants Proposed Findings of Fact (Dkt. 554 and Dkt. 587). The United States does, however, dispute the implication made on page 23 of Certain Defendants Brief in Support of Motion #3 (Dkt. 553) and on pages 25-33 of Certain Defendants' Brief in support of Motion #2 (Dkt. 570), that the United States represented or implied that NCR Paper made with PCBs was environmentally safe. In response to that implication, the United States offers the following:

1. Pursuant to considerable study and analysis performed by the United States Food and Drug Administration ("FDA"), in 1971 the FDA identified food packaging materials as a potential source of PCB contamination in food. See May 8, 1972, Draft Environmental Impact Statement on PCBs at FDA 47 (Ex. A).[1] At that point, it was understood that PCBs were toxic substances and the FDA study explained that these toxic substances may have made their way into the nation's food system through the processing of pulp and paper products. It was understood that carbonless copy paper contained 3-5 percent PCBs, and because carbonless copy paper was a potential source of food packaging contamination, attention focused on the manufacture and recycling of CCP. Ex. A at FDA 45-47.

2. In 1972, an intergovernmental task force comprised of technical experts from five agencies published a report on PCBs. See *Polychlorinated Biphenyls and the Environment*, May

---

[1] All Exhibits are attached to the Declaration of Mathew Oakes, which is submitted in support of this Response.

1972 (Ex. B). The goal of the report was to coordinate government efforts on understanding the potential hazards of PCBs. This report noted that "[a] large use of PCBs had been in carbonless duplicating paper," and that the FDA was testing to ensure that PCB-laden packaging did not contaminate the food supply. Ex. B at 2. Thus, it was through the actions of various agencies of the United States (and certain others) that the problems relating to PCB-laden CCP were identified.

3. In 1979 the U.S. Environmental Protection Agency ("EPA") promulgated regulations implementing the Toxic Substances Control Act ("TSCA"), which set out requirements and restrictions for the use and manufacture of PCBs. The TSCA regulations generally limited the use of PCBs to applications where the PCBs were entirely contained. 40 C.F.R. § 761.31(f) (1979). With regard to PCBs contained in remaining CCP, EPA determined that continuation of recycling activity "does not present an unreasonable risk" of injury to human health or the environment. 44 Fed. Reg. 31,514, 31,535 (May 31, 1979).

4. By 1979, when EPA addressed this issue within the TSCA statutory and regulatory framework created by Congress for such issues, the remaining stock of CCP available for recycling had been significantly reduced. For example, EPA modeling conducted in 1977 indicated that PCBs in paper products had been "completely dominated by the NCR contribution" and that when NCR ceased its production of PCB-laden carbonless paper in 1971, measurable PCB levels in paper products fell rapidly. NCR-FOX0530210-213 (Ex. C).

5. During the course of the TSCA rulemaking EPA noted that "[a] large portion of the PCB carbonless copy paper that has not been destroyed is probably in files," and further found that the amount of PCBs on each sheet of paper was extremely small. 44 Fed. Reg. at 31,535.

6. The decision of EPA in the late 1970s not to affirmatively prohibit the recycling of CCP was actively supported and, indeed, urged by the Certain Defendants and their industry. In 1973, long before the EPA developed the 1979 TSCA regulations, the Food and Drug Administration set limits on the allowable level of PCB contamination in food containers. 38 Fed. Reg. 18,096, 18,101-01 (July 6, 1973) (Ex. D).

7. Many of the Defendants are members of the American Paper Institute, Incorporated, whose members in 1972 supplied ninety percent of the wood pulp, paper and paperboard produced domestically in the United States for all uses. See Comments of American Paper Institute on FDA Proposed Rule to Regulate PCBs in Food Packaging FDA0000257-58 (Ex. E).

8. The American Paper Institute argued at length in the 1970s against regulations that would limit paper recycling, asserting that such regulation would cause recycling mills to suffer significant financial losses and undermine their businesses, which in turn would minimize the use of recycled materials and undermine national objectives on resource recovery. Id. at FDA0000262.

9. The Boxboard Research & Development Association, whose members in 1972 produced over 95% of the combination paperboard used in the United States, [2] also commented that proposed regulations limiting PCB levels in food packaging would adversely impact recycling and shut down at least 30 combination paperboard machines, resulting in significant business losses and undermining the goal of paper recycling. Comments of Boxboard Association at FDA000195 (Ex. G).

---

[2] At least by 1976, the Boxboard Research and Development Association included Menasha as one of its members. See FDA016472 (Ex. F).

10. In March 1976, James S. Haney, Bergstrom Paper Company's director of public affairs, made a statement to the National Conference on Polychlorinated Biphenyls (PCBs) that "the pulp and paper industry is expanding its papermaking capacity at a faster rate than it is expanding its ability to produce pulp. It simply must be a national priority to encourage recycling." Ex. H at NCR-FOX-319405.

11. In an August 1975 hearing before the Wisconsin Department of Natural Resources ("WDNR"), a representative for the Wisconsin Paper Council warned that given the fact that a fifth of Wisconsin's annual paper production was made from post-consumer papers, "we face a paper and fiber crisis in this country." Ex. I at WTMFOX00008948. Based on that representation, *inter alia*, Wisconsin Paper stated that recycling "must be encouraged." Id.

12. At the August 1975 hearing, Richard Wand of the Bergstrom Paper Company emphasized the importance of recycling both to his industry and to the nation, and stated that a limit on PCB discharges to .005 milligrams per liter "could well put the Bergstrom paper company out of business." Id. at WTMFOX00008953.

13. At the August 1975 hearing, Milton Lorman of Lorman Iron and Metal Company argued that his company had invested significant capital in a wastepaper recycling plant, and he was very apprehensive that regulation of the wastepaper industry would undermine his business. Id. at WTMFOX00008976.

14. Similar comments were received from other members of the industry. See e.g., Comments of Container Corporation of America at FDA000132-33 (Ex. J) (stating that the proposed FDA regulations would force paper mills, especially mills whose employees reside in economically depressed neighborhoods, to shut down); Comments of Menasha Corporation at FDA000470-71 (Ex. K) (recommending no regulation in food packaging at that time in part

based on the increase in solid waste disposal); Menasha's letter to U.S. Senator William Proxmire at FDA000824-25 (Ex. L) (referring to the proposed rulemaking to regulate PCBs in food packaging as an action which "disturbs the economic balance"); Bergstrom Paper Co. May 23, 1975 letter to the Wisconsin Department of Natural Resources (disclosing that PCBs were detected in 50% of the paper they recycle and claiming that "[i]f it were necessary for us to eliminate these grades from our recycling process it would impose a serious financial burden on us and would throw this large volume of waste back for other means of disposal such as landfill incineration.") (Ex. M).

15. In 1981, the American Paper Institute continued to actively lobby for carbonless paper to be exempt from applicable rules controlling the use of PCBs. See American Paper Institute's June 29, 1979 letter to EPA at A565117966-67 (Ex. N) and November 16, 1981 Comments to EPA at A565-122678-96 (Ex. O).

16. In 1984, Fort Howard Paper Company argued that, in spite of the fact that PCBs are found in all grades of paper, "recycling of these grades of wastepaper has a distinct advantage" over other means of disposal. See Fort Howard's October, 1984 "Polychlorinated Biphenyls Information Report" at NCR-FOX-0098006-07 (Ex. P).

Dated: Sept. 30, 2009            Respectfully Submitted,

                                     JOHN C. CRUDEN
                                     Acting Assistant Attorney General
                                     United States Department of Justice

                                     s/Perry M. Rosen
                                     JOSHUA M. LEVIN
                                     MATTHEW R. OAKES
                                     PERRY M. ROSEN
                                     Environmental Defense Section
                                     United States Department of Justice
                                     P.O. Box 23986
                                     Washington, DC  20026-3986

joshua.levin@usdoj.gov
matthew.oakes@usdoj.gov
perry.rosen@usdoj.gov

MICHELLE L. JACOBS
United States Attorney

MATTHEW V. RICHMOND
Assistant U. S. Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave., Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
matthew.richmond@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 30, 2009, the foregoing document:

**RESPONSE OF THE UNITED STATES TO PROPOSED FINDINGS OF FACT SUBMITTED WITH CERTAIN DEFENDANTS' THREE MOTIONS FOR SUMMARY JUDGMENT**

was filed electronically with the Clerk of the Court using the Electronic Court Filing System, which will send electronic notification of said filing to the attorneys of record/parties who have registered as CM/ECF participants.

                                              s/ Matthew R. Oakes

                                              MATTHEW R. OAKES