IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| APPLETON PAPERS INC. and<br>NCR CORPORATION, | )<br>)<br>) | |
| Plaintiffs, | ) | |
| v. | ) | No. 08-CV-16-WCG |
| | ) | |
| GEORGE A. WHITING PAPER COMPANY,<br>ET AL., | )<br>) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NCR CORPORATION, | )<br>) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-CV-0895-WCG |
| | ) | |
| KIMBERLY-CLARK CORPORATION,<br>ET AL., | )<br>) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSES TO CERTAIN DEFENDANTS'
PROPOSED FINDINGS OF FACT IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
MOTION IN *LIMINE***

Plaintiffs NCR Corporation and Appleton Papers Inc., through their Attorneys, for their Responses to Certain Defendants' Proposed Findings of Fact In Support Of Their Motion For Partial Summary Judgment Or, In The Alternative, Motion In *Limine*, [Docket No. 581] state as follows:

**PARTIES**

1.   Plaintiff Appleton Papers Inc. ("API") is a Delaware corporation with its principal place of business in Appleton, Wisconsin. (Seventh Am. Compl. (Doc. 265) (Ex. 13)).

   **RESPONSE:** Undisputed.

2.   Plaintiff NCR Corporation ("NCR") is a Maryland corporation with its principal place of business in Dayton, Ohio. *Id.*

**RESPONSE:** Undisputed.

3. Defendant P.H. Glatfelter Company is a Pennsylvania corporation with its principal place of business in York, Pennsylvania. (Glatfelter's Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' Seventh Amended Complaint (Doc. 298) (Ex. 14)).

**RESPONSE:** Undisputed.

4. Defendant Menasha Corporation is a Wisconsin corporation with its principal place of business in Neenah, Wisconsin. (Menasha Corporation's Answer to Seventh Amended Complaint and Counterclaims (Doc. 293) (Ex. 33)).

**RESPONSE:** Undisputed.

5. Defendant WTM I Company is a Delaware corporation with its principal place of business in Las Vegas, Nevada. (Answer and Counterclaims of WTM I Company To The Seventh Amended Complaint (Doc. 300) (Ex. 15)).

**RESPONSE:** Undisputed.

6. Defendant U.S. Paper Mills Corp. is a Wisconsin corporation with its principal place of business in De Pere, Wisconsin. (U.S. Paper Mill Corp.'s Answer To Seventh Amended Complaint, Affirmative Defenses and Counterclaim (Doc. 283) (Ex. 35)).

**RESPONSE:** Undisputed.

7. Defendant Georgia-Pacific Consumer Products LP is a Delaware limited partnership with its principal place of business in Atlanta, Georgia and was formerly known as Fort James Operating Company; Defendant Georgia-Pacific LLC is a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia (Doc. 310) (Ex. 16)).

**RESPONSE:** Undisputed.

8. Defendant Fort James Corporation is a Virginia corporation with its principal place of business in Atlanta, Georgia. (GP's Amended Answer, Affirmative Defenses and Counterclaim to Plaintiffs' Seventh Amended Complaint (Doc. 310) (Ex. 16)).

**RESPONSE:** Undisputed.

9. Defendant CBC Coating, Inc. is a Wisconsin corporation with its principal place of business in Appleton, Wisconsin. (CBC Coating, Inc.'s Amended Answer, Affirmative Defenses and Counterclaim to Plaintiffs' Seventh Amended Complaint (Doc. 327) (Ex. 36)).

**RESPONSE:** Undisputed.

## JURISDICTION

10. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1331 (federal question).

**RESPONSE:** Undisputed.

11. Venue is proper in this District pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because events giving rise to the claims stated in the Seventh Amended Complaint, including the alleged releases of hazardous substances, occurred in this District, and the Lower Fox River is located entirely within this District.

**RESPONSE:** Undisputed.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

12. In 1966 the Combined Locks Paper Company changed its name to Combined Paper Mills, Inc. ("CPM"). (API-GF039124-Appleton Papers Chronology (Ex. 1)).

**RESPONSE:** Undisputed.

13. In 1969 NCR acquired CPM. *Id.*

**RESPONSE:** Undisputed.

14. In 1907 Appleton Coated Papers Company ("ACPC") was founded at Appleton, Wisconsin. *Id.*

**RESPONSE:** Undisputed.

15. In 1970, NCR acquired ACPC as a wholly-owned subsidiary of NCR. *Id.*

**RESPONSE:** Undisputed.

16. On June 21, 1971, NCR merged its two subsidiaries, Combined Paper Mills, Inc. and Appleton Coated Paper Company, to create Appleton Papers, Inc., a subsidiary of NCR. *Id.*

**RESPONSE:** Undisputed.

17. On January 1, 1973 Appleton Papers, Inc. merged with NCR and changed from a subsidiary of NCR to a division of NCR. *Id.*

**RESPONSE:** Undisputed.

18. From 1954 to 1971, NCR manufactured an emulsion that contained polychlorinated biphenyls ("PCBs") that NCR's licensee ACPC, and later NCR, applied as a coating to carbonless copy paper ("NCR Paper") manufactured by NCR. (NCR's Resp. to GP's Interrog. #2 (Ex. 2); NCR's Resp. to Glatfelter's Interrog. #1 (Ex. 3)).

**RESPONSE:** Disputed in part. While it is undisputed that between 1954 and April 1971, NCR manufactured a PCB-containing emulsion for use in NCR Paper brand carbonless copy paper ("CCP"), the record evidence cited does not support this fact. Additionally, the record evidence cited does not support the statement that ACPC was NCR's licensee. It is disputed that between 1954 and 1971, NCR applied PCB-containing coating to CCP and that NCR "manufactured" CCP during that time. Declaration of Kathleen L. Roach in Support of Plaintiffs' September 30, 2009, Pleadings, filed herewith ("Roach Decl."), Ex. 235 [W. Goetz Dep. at 38, 79]; Ex. 234 [R. Jezerc Dep. at 109]; Ex. 15 [Aug. 7, 2009 Expert Report of H. Kytomaa at 3].

19. From 1954 to 1971, under contract to NCR, ACPC applied this emulsion to NCR Paper at a coating facility in Appleton, Wisconsin ("the Appleton Plant"). (NCR's Resp. to GP's First Set of Interrog. at 8, 4-5 (Ex. 2)).

**RESPONSE:** Undisputed.

20. From 1954 to 1971, ACPC, and then NCR, discharged wastewater containing PCBs from the Appleton Plant to the Lower Fox River. (Charles P. Klass Decl. ("Klass Decl.") ¶ 9 (Ex. 6); Dennis Hultgren Dep. 16:21-17:23, 28:23-40:1 (Ex. 8); Gerald Taylor Dep. 209:25-213:14 (Ex. 9); Proposed Remedial Action Plan Lower Fox River and Green Bay ("PRAP") at 5-6 (Ex. 10)).

**RESPONSE:** Disputed in part. It is undisputed that the record evidence cited indicates that wastewater containing PCBs was discharged by ACPC from the Appleton Plant to the City of Appleton Publicly-Owned Treatment Works ("Appleton POTW"), which ultimately discharged to the Lower Fox River after treatment. It is disputed that the Appleton Plant ever discharged wastewater directly to the Lower Fox River. Roach Decl., Ex. 15 [Aug. 7, 2009 Expert Report of H. Kytomaa at 7]. It is also disputed that between 1954 and 1971, NCR discharged wastewater from the Appleton Plant. Roach Decl., Ex. 228 [Highlights of History, NCR-FOX-0090101].

21. From 1969 to 1971, NCR Paper was also produced at a facility in Combined Locks, Wisconsin that NCR acquired in 1969. (NCR's Resp. to GP's Interrog. #2 (Ex. 2); NCR's Resp. to Glatfelter's Interrog. #1 (Ex. 3)).

**RESPONSE:** Undisputed, though the record evidence cited does not support the statement that NCR acquired a facility in Combined Locks, Wisconsin in 1969.

22. From 1969 to 1971, NCR discharged wastewater containing PCBs from the Combined Locks Mill to the Lower Fox River with little to no treatment. (Klass Decl. ¶¶ 11, 12 (Ex. 6); Dennis Hultgren Dep. 16:21-17:23 (Ex. 8); PRAP at 5-6 (Ex. 10)).

**RESPONSE:** Disputed in part. It is undisputed that between late 1969 and 1971, wastewater containing PCBs was discharged from the Combined Locks Mill to the Lower Fox River. However, nothing in the record evidence cited indicates the wastewater received "little to no treatment." It is also disputed that between 1969 and 1971, NCR discharged wastewater from the Combined Locks Mill. Roach Decl., Ex. 228 [Highlights of History, NCR-FOX-0090101].

23. From 1954 to 1971, ACPC, and then NCR, sold production scrap (known as "broke") from the coating of NCR Paper to recycling mills. (NCR's Resp. to GP's Interrog. #3 (Ex. 2); Alan Kresch Dep. 80:19-81:17 (Ex. 11); Donald Christensen Dep. 47:5-49:19 (Ex. 12); Klass Decl. ¶ 13 (Ex. 6)).

**RESPONSE:** Disputed. Between 1954 and 1971, NCR did not sell broke from the coating of CCP ("CCP broke"). Roach Decl., Ex. 228 [Highlights of History, NCR-FOX-0090101]. Additionally, the record evidence cited clearly indicates that between 1954 and 1971, the CCP broke sold by ACPC was sold to brokers or dealers, not directly to recycling mills. Mooney Decl., Ex. 2 ("bids were solicited from brokers or dealers"); Mooney Decl., Ex. 12 ("I guess there's always that uncertainty or unknown that the broker sold it to somebody"). Roach Decl., Ex. 99 [D. Christensen Dep. at 31:13-32:3]; Ex. 101 [F. Strelow Dep. at 40:23-41:23]; Ex. 23 [F. Heinritz Dep. at 20:15-20].

24. Some of the recycling mills which purchased broke from ACPC and NCR discharged to the Fox River. (Klass Decl. ¶ 14 (Ex. 6); PRAP at 5-6 (Ex. 10); Seventh Am.

5

Compl. ¶¶ 31-51 (Ex. 13); Glatfelter's Answer to Seventh Am. Compl. ¶ 32 (Ex. 14); WTM's Answer to Seventh Am. Compl. ¶ 48 (Ex. 15)).

**RESPONSE:** Disputed in part. It is undisputed that some recycling mills discharged wastewater to the Lower Fox River. It is disputed that either ACPC or NCR ever sold NCR Paper broke directly to recycling mills. Roach Decl., Ex. 99 [D. Christensen Dep. at 31:13-32:3]; Ex. 101 [F. Strelow Dep. at 40:23-41:23]; Ex. 23 [F. Heinritz Dep. at 20:15-20].

25. The recycling mills' wastewater discharge from recycling broke purchased from ACPC and NCR from 1954 to 1971 was treated to varying degrees and contained PCBs. (Klass Decl. ¶ 14 (Ex. 6); PRAP at 5-6 (Ex. 10)).

**RESPONSE:** Disputed in part. It is undisputed that wastewater discharged from certain recycling mills contained PCBs. While not supported by the record evidence cited, it is undisputed that wastewater from certain recycling mills was treated to varying degrees. It is disputed that either ACPC or NCR ever sold CCP broke directly to recycling mills. Roach Decl., Ex. 99 [D. Christensen Dep. at 31:13-32:3]; Ex. 101 [F. Strelow Dep. at 40:23-41:23]; Ex. 23 [F. Heinritz Dep. at 20:15-20]. Additionally, it is disputed that NCR ever sold CCP broke between 1954 and 1971. Roach Decl., Ex. 228 [Highlights of History, NCR-FOX-0090101].

26. The practice of selling broke for recycling continued after the Spring of 1971. (Donald Christensen Dep. 63:19-24 (Ex. 12)).

**RESPONSE:** It is undisputed that, after the Spring of 1971, ACPC continued selling CCP broke to brokers or dealers.

27. The broke sold after the Spring of 1971 did not contain PCBs. (NCR's Resp. to Glatfelter's Interrog. #1 (Ex. 3); NCR's Resp. to CBC's Req. for Admis. #121 (Ex. 17); Klass Decl. ¶ 15 (Ex. 6)).

**RESPONSE:** It is undisputed that, after the Spring of 1971, CCP broke sold by ACPC to brokers or dealers did not contain PCBs.

28. From 1954 until the inventory of PCB-containing NCR Paper was used up some time shortly after Spring 1971, NCR sold PCB-containing NCR Paper to printers and converters of business forms. (Klass Decl. ¶ 16 (Ex. 6); Dennis Hultgren Dep. 16:21-18:12 (Ex. 8)).

**RESPONSE:** Undisputed.

29. Printers and converters of business forms sold their production scrap to recycling mills. (James Haney Dep. 67:24-68:8 (Ex. 18); Donald H. DeMeuse Dep. 65:13-23 (Ex. 19); Roy Geigel Dep. 19:19-22 (Ex. 20); Walter Charles Dep. 55:25-56:16 (Ex. 21)).

**RESPONSE:** Undisputed.

30. From 1954 until the inventory of PCB-containing NCR Paper was used up some time shortly after Spring 1971, production scrap from printers and converters of business forms contained PCBs. (Klass Decl. ¶ 16 (Ex. 6); Dennis Hultgren Dep. 16:21-18:12 (Ex. 8)).

**RESPONSE:** Disputed in part. It is undisputed that the record evidence cited indicates that from 1954 until the inventory of PCB-containing CCP was used up sometime after Spring 1971, production scrap from printers and converters that printed or converted CCP contained PCBs. Whether or not that inventory was used up "shortly" after Spring 1971 is not a "fact" appropriate for a proposed finding of fact, and is also unsupported by the record evidence cited.

31. Wastewater discharges from Fox Valley recycling mills recycling production scrap from printers and converters from 1954 until some time shortly after Spring 1971 contained PCBs. (Klass Decl. ¶ 16 (Ex. 6)).

**RESPONSE:** It is undisputed that wastewater discharges from Fox Valley recyling mills that recycled CCP production scrap from printers and converters from 1954 until some time after Spring 1971 contained PCBs. Whether such discharges contained PCBs until some time "shortly" after Spring 1971 is not a "fact" appropriate for a proposed finding of fact, and is disputed. Wastewater discharges from Fox Valley recycling mills continued to contain PCBs through the 1970s and into the 1980s, in some cases. Roach Decl., Ex. 226 [Summary of WDNR August 1975 hearings (NCR-FOX-475447)]; Ex. 227 [NR101 Summary Reports, NCR-FOX-0328207].

7

32. Some recycling mills recycled some post-consumer wastepaper grades. (Klass Decl. ¶ 18 (Ex. 6); Dennis Hultgren Dep. 16:21-18:12 (Ex. 8)).

**RESPONSE:** It is undisputed that the recycling mills owned and/or operated (or formerly owned and/or operated) by Defendants recycled some post-consumer wastepaper grades.

33. From 1954 until the last sheets of PCB-containing NCR Paper were removed from the waste paper stream, recycling mills that used post-consumer wastepaper grades discharged wastewater containing PCBs to the Fox River after varying degrees of treatment. (Klass Decl. ¶ 18 (Ex. 6)).

**RESPONSE:** Undisputed.

34. Of all the sources of PCBs sent to recycling mills, post-consumer wastepaper was the least concentrated source. (Klass Decl. ¶ 19 (Ex. 6)).

**RESPONSE:** Disputed. All PCB-containing CCP contained the same average concentration of PCBs regardless of what grade of recovered fiber it was classfied as. Roach Decl., Ex. 230 [Jan. 19, 1976, NCR Letter (NCR-FOX-604952)]; Ex. 231 [July 6, 1977 NCR Letter (NCR-FOX-353202)]; Ex. 232 [July 6, 1973, 38 Federal Register 129 (NCR-FOX-0573453)]. Plaintiffs further dispute this proposed finding of fact as being outside the scope of Phase I, as defined by the CMO. Discovery on this issue has been precluded, and therefore a finding of fact on this issue would be premature.

35. The United States Environmental Protection Agency concluded that "[n]inety-eight percent of the total PCBs released into the Lower Fox River had been released by the end of 1971." (EPA's Record of Decision, Operable Unit 1 and Operable Unit 2, Lower Fox River and Green Bay, Wisconsin ("ROD") at 4 (Ex. 23)).

**RESPONSE:** It is undisputed that this proposed fact reflects a statement made by USEPA, however, the accuracy of the statement is disputed. Roach Decl., Ex. 229 [D. Hultgren Dep. at 33:15 – 34:16].

36. Much of the total PCBs released to the Lower Fox River had been released by the end of 1971. (Comments of Appleton Papers Inc. and NCR Corporation on the Draft Remedial Investigation, Feasibility Study, Baseline Human health and Ecological Risk Assessment, Model

8

Development Report and Proposed Remedial Action Plan for Lower Fox River and Green Bay ("NCR/API Comments on PRAP") at 41 (Ex. 24)).

**RESPONSE:** Undisputed.

37. In 2002, plaintiffs took the position that the discharge of PCBs to the Lower Fox River during the period when PCBs were used in the formulation of the emulsion for NCR Paper (the "Production Period") was more than 690,000 pounds. (NCR/API Comments on PRAP at 40-41 (Ex. 24); Comments of Appleton Papers Inc. and NCR Corporation on the January 15, 1999 Revision of Technical Memorandum 2d ("NCR/API Comments on Tech Memo") 3-6 (Ex. 25) (arguing that EPA underestimated PCB releases during Production Period)).

**RESPONSE:** Disputed in part. It is undisputed that in 2002, prior to any formal discovery of Defendants, Plaintiffs estimated that more than 690,000 pounds of PCBs were released to the environment as a "result of the manufacture and deinking of PCB-containing NCR Paper." It is disputed that this estimate covered only the so-called "Production Period."

38. Some of the defendants have taken the position that the discharge of PCBs to the Lower Fox River during the Production Period was less than 690,000 pounds. (Comments of the P.H. Glatfelter Company to the Proposed Remedial Action Plan Lower Fox River and Green Bay ("Glatfelter Comments on PRAP") 26-29 (Ex. 26)).

**RESPONSE:** Disputed. The record evidence cited indicates that a single defendant, P.H. Glatfelter Company, took the position that less than 690,000 pounds of PCBs had been discharged to the Lower Fox River. The cited document does not state that less than 690,000 pounds of PCBs had been discharged to the Lower Fox River *during the Production Period*, but rather repeatedly refers to the "total mass of PCBs discharged" to the Lower Fox River.

39. Plaintiffs' experts do not offer an opinion that, during the period after PCBs were replaced in the formulation of the emulsion used in NCR Paper (the "Post-Production Period") actions by the recycling mills would have made a meaningful difference for purposes of this case with respect to PCBs discharged to the Lower Fox River. (Moore Dep. 20:25-29:11 (Ex. 27); Walter J. Shields Dep. 20:5-27:7 (Ex. 28)).

**RESPONSE:** Disputed. Defendants' expert offers an opinion that the actions of Defendants after 1971 increased the risk of further PCB contamination. Roach Decl., Ex. 17 [June 4, 2009 Expert Report of M. Williams at 74-95, 100-118].

9

40. Plaintiffs' expert on recycled paper markets does not offer any opinion concerning the Production Period. (Moore Dep. 20:25-29:11 (Ex. 27)).

**RESPONSE:** The scope of Plaintiffs' expert's opinions is not a "fact" appropriate for a proposed finding of fact.

41. EPA has found that the total mass of PCBs discharged to the Lower Fox River was approximately 690,000 pounds, about 675,000 pounds of which occurred prior to the end of 1971. (PRAP at 6 (Ex. 10)).

**RESPONSE:** Disputed in part. It is undisputed that EPA has *estimated* that "approximately" 690,000 pounds of PCBs were released into the environment. The remainder of this proposed finding of fact is unsupported by the record evidence cited.

42. The Appleton Plant received about 30 million pounds of PCBs in the emulsion used to coat NCR Paper. (PRAP at 6 (Ex. 10); Klass Decl. ¶ 21 (Ex. 6); Comments of Appleton Papers Inc. and NCR Corporation on the January 15, 1999 Revision of Technical Memorandum 2d ("NCR/API Comments on Tech Memo") 7 (Ex. 25)[1]; GLTFOX00002789¬GLTFOX00002792 (Ex. 37)).

**RESPONSE:** Disputed. The record evidence cited states that, prior to 1971, approximately 30 million pounds of PCB-containing *emulsion* (not 30 million pounds of PCBs) were used in the Fox River Valley to coat CCP.

43. Most of the recycling mills and wastewater treatment plants began sampling their outfalls for PCBs in the early 1970s. (NCR-FOX-0126982 (Ex. 29); Defendant P.H. Glatfelter Company's Response and Objections to Plaintiff NCR Corporation's First Set of Interrogatories and Requests for the Production of Documents at 7-11 (Ex. 30); Defendant P.H. Glatfelter Company's Amended Responses and Objections to Plaintiff Appleton Papers Inc.'s First Set of Interrogatories to Defendant P.H. Glatfelter Company at 7-8 (Ex. 31); Georgia-Pacific Consumer Products LP's (f/k/a Fort James Operating Company's), Fort James Corporation's and Georgia-Pacific LLC's Objections and Responses to Plaintiff NCR Corporation's First Set of Interrogatories and Requests for Production of Documents at 7-8 (Ex. 32); Responses of WTM I Company to Appleton Papers Inc.'s First Set of Interrogatories and Requests for the Production of Documents at 5-6 (Ex. 4); Responses of Defendant WTM I Company to NCR's First Set of Interrogatories and Requests for the Production of Documents at 5-6 (Ex. 5); Defendant Menasha Corporation's First Amended and Supplemental Responses and Objections to Plaintiff NCR Corporation's First Set of Interrogatories and Requests for the Production of Documents at 28

---

[1] Approximately two-thirds of the approximately 45 million pounds of PCBs used to coat NCR Paper went to the Appleton facility.

(Ex. 7); Defendant U.S. Paper Mills Corp.'s Responses to Plaintiff NCR Corporation's First Set of Interrogatories and Requests for the Production of Documents at 6 (Ex. 22)).

**RESPONSE:** Whether "most" facilities started sampling their wastewater for PCBs in the "early 1970s" is too vague to properly be considered a "fact" appropriate for a proposed finding of fact.

44. All of the sources of PCBs to the Fox River ended in or about 1971 except for recycling post-consumer wastepaper. (Klass Decl ¶ 20 (Ex. 6)).

**RESPONSE:** Disputed. Roach Decl., Ex. 1 [July 17, 1975 WDNR Progress Report (NCR-FOX-0162508)]; Ex. 140 [Aug. 7, 2009 Expert Report of J. Braithwaite]; Ex. 233 [Jan. 1996 Report (API-GF008474)].


Respectfully submitted,

| APPLETON PAPERS INC. | NCR CORPORATION |
|---|---|
| /s/ Michael L. Hermes | /s/ Kathleen L. Roach |
| Counsel for Appleton Papers Inc.: | Counsel for NCR Corporation: |
| Michael L. Hermes | Kathleen L. Roach (Illinois Bar No. 6191432) |
| HERMES LAW LTD. | SIDLEY AUSTIN LLP |
| 333 Main Street, Suite 601 | One South Dearborn Street |
| Green Bay, Wisconsin 54301 | Chicago, Illinois 60603 |
| (920) 436-9870 | (312) 853-7000 |
| Fax: (920) 436-9871 | Fax: (312) 853-7036 |
| Ronald R. Ragatz | J. Ric Gass (Wisconsin Bar No. 1011998) |
| DEWITT ROSS & STEVENS S.C. | GASS WEBER MULLINS LLC |
| 2 E. Mifflin Street, Suite 600 | 309 North Water Street |
| Madison, Wisconsin 53703 | Milwaukee, Wisconsin 53202 |
| (608) 255-8891 | (414) 224-7697 |
| Fax: (608) 252-9243 | Fax: (414) 224-6116 |

September 30, 2009

**CERTIFICATE OF SERVICE**

     I hereby certify that on September 30, 2009, I electronically filed **Plaintiffs' Responses to Certain Defendants' Proposed Findings of Fact in Support of Their Motion for Partial Summary Judgment or, in the Alternative, Motion in *Limine*** using the ECF system, which will send notification of such filing to: Philip Munroe at DiRenzo & Bomier LLC, pmunroe@direnzollc.com; Scott Fleming at Weiss Berzowski Brady LLP, sbf@wbb-law.com; David Mandelbaum at Ballard Spahr Andrews & Ingersoll, LLP, mandelbaum@ballardspahr.com; Marc Davies at Ballard Spahr Andrews & Ingersoll, LLP, davies@ballardspahr.com; Ronald Varnum at Ballard Spahr Andrews & Ingersoll, LLP, varnumr@ballardspahr.com; Sabrina Mizrachi at Ballard Spahr Andrews & Ingersoll, LLP, mizrachis@ballardspahr.com; Monique Mooney at Ballard Spahr Andrews & Ingersoll, LLP, mooney@ballardspahr.com; Caleb Holmes at Ballard Spahr Andrews & Ingersoll, LLP, holmescj@ballardspahr.com; Patrick Zaepfel at Kegel Kelin Almy & Grimm, LLP, zaepfel@kkaglaw.com; Mark Feldmann at Menn Law Firm, Ltd., mark-feldmann@mennlaw.com; Joseph Beisenstein at Menn Law Firm, Ltd., joseph-beisenstein@mennlaw.com; Philip Hunsucker at Hunsucker Goodstein & Nelson PC, phunsucker@hgnlaw.com; David Rabbino at Hunsucker Goodstein & Nelson PC, drabbino@hgnlaw.com; Christopher Dow at Hunsucker Goodstein & Nelson PC, cdow@hgnlaw.com; Allison McAdam at Hunsucker Goodstein & Nelson PC, amcadam@hgnlaw.com; Eric Mroz at Hunsucker Goodstein & Nelson, P.C, mroz@hgnlaw.com; David Edquist at von Briesen & Roper, s.c., dedquist@vonbriesen.com; Christopher Riordan at von Briesen & Roper, s.c., criordan@vonbriesen.com; Patrick Wells at von Briesen & Roper, s.c., pwells@vonbriesen.com; Russell Wilson at Ruder Ware, rwilson@ruderware.com; Linda

Benfield at Foley & Lardner LLP, lbenfield@foley.com; Sarah Slack at Foley & Lardner LLP, sslack@foley.com; Charles Gering at Foley & Lardner LLP, cgering@foley.com; Michelle Gale at Dykema Gossett PLLC, mgale@dykema.com; Joseph Basta at Dykema Gossett PLLC, jbasta@dykema.com; Daniel Murray at Johnson & Bell, Ltd., murrayd@jbltd.com; Garrett Boehm, Jr. at Johnson & Bell, Ltd., boehmg@jbltd.com; Frederick Mueller at Johnson & Bell, Ltd., muellerf@jbltd.com; John Cermak, Jr. at Baker & Hostetler LLP, jcermak@bakerlaw.com; Sonja Inglin at Baker & Hostetler LLP, singlin@bakerlaw.com; Timothy Anderson at Remley & Sensenbrenner, S.C., tanderson@remleylaw.com; Thomas O'Donnell at Calfee Halter & Griswold LLP, todonnell@calfee.com; William Coughlin at Calfee Halter & Griswold LLP, wcoughlin@calfee.com; Ted Waskowski at Stafford Rosenbaum LLP, twaskowski@staffordlaw.com; Richard Yde at Stafford Rosenbaum LLP, ryde@staffordlaw.com; Meg Vergeront at Stafford Rosenbaum LLP, mvergeront@staffordlaw.com; Lora L. Zimmer at Hinshaw & Culbertson LLP, lzimmer@hinshawlaw.com; William Mulligan at Davis & Kuelthau, s.c., wmulligan@dkattorneys.com; Kevin Lyons at Davis & Kuelthau, s.c., klyons@dkattorneys.com; Tara Mathison at Davis & Kuelthau, s.c., tmathison@dkattorneys.com; Elizabeth Miles at Davis & Kuelthau, s.c., emiles@dkattorneys.com; Thomas Schrimpf at Hinshaw & Culbertson LLP, tschrimpf@hinshawlaw.com; Paul Kent at Anderson & Kent, S.C., pkent@andersonkent.com; Waltraud Arts at Anderson & Kent, warts@andersonkent.com; James P. Walsh at the Appleton City Attorney's Office, jim.walsh@appleton.org; Ian Pitz at Michael Best & Friedrich, LLP, iapitz@michaelbest.com; Allison Swanson at the City of Green Bay, allisonsw@ci.green-bay.wi.us; Ted Warpinski at Friebert, Finerty & St. John, S.C., taw@ffsj.com; S. Todd Farris at Friebert, Finerty & St. John, S.C., stf@ffsj.com; M. Andrew Skwierawski at Friebert, Finerty &

St. John, S.C., mas@ffsj.com; Scott Hansen at Reinhart Boerner Van Deuren s.c., shansen@reinhartlaw.com; Steven Bogart at Reinhart Boerner Van Deuren s.c., sbogart@reinhartlaw.com; John Van Lieshout at Reinhart Boerner Van Deuren s.c., jvanlieshout@reinhartlaw.com; David Frank at Reinhart Boerner Van Deuren s.c., dfrank@reinhartlaw.com; Thomas Gottshall at Haynsworth Sinkler Boyd, P.A., tgottshall@hsblawfirm.com; Stephen McKinney at Haynsworth Sinkler Boyd, P.A., smckinney@hsblawfirm.com; William Harbeck at Quarles & Brady LLP, whh@quarles.com; David Strifling at Quarles & Brady, LLP, dstrifli@quarles.com; Nancy Peterson at Quarles & Brady LLP, nkp@quarles.com; Susan Lovern at von Briesen & Roper, s.c., slovern@vonbriesen.com; Thomas Armstrong at von Briesen & Roper, s.c., tarmstro@vonbriesen.com; Michael P. Carlton at von Briesen & Roper, s.c., mcarlton@vonbriesen.com; Kelly Noyes at von Briesen & Roper, s.c., knoyes@vonbriesen.com; Arthur Foerster at Latham & Watkins LLP, Arthur.Foerster@law.com; Margrethe Kearney at Latham & Watkins LLP, Margrethe.Kearney@lw.com; Mary Rose Alexander at Latham & Watkins LLP, Mary.Rose.Alexander@lw.com; Ernest Getto at Latham & Watkins LLP, Ernie.Getto@lw.com; Karl Lytz at Latham & Watkins LLP, Karl.Lytz@lw.com; Andrea Hogan at Latham & Watkins LLP, Andrea.Hogan@lw.com; Nathan Fishbach at Whyte Hirschboeck Dudek S.C., nfishbach@whdlaw.com; Jan Conlin at Robins, Kaplan, Miller & Ciresi L.L.P., jmconlin@rkmc.com; Sarah Lindsey at Warner Norcross & Judd LLP, slindsey@wnj.com; Steven Kohl at Warner Norcross & Judd LLP, skohl@wnj.com; Thomas Andreoli at Sonnenschein Nath & Rosenthal LLP, tandreoli@sonnenschein.com; Matthew Adams at Sonnenschein Nath & Rosenthal LLP, madams@sonnenschein.com; Robin Jacobs at Cook & Franke, S.C., jacobs@cf-law.com; Randall Stone at U.S. Department of Justice,

randall.stone@usdoj.gov; Joshua Levin at U.S. Department of Justice, joshua.levin@usdoj.gov; Matthew R. Oakes at U.S. Department of Justice, matthew.oakes@usdoj.gov; Perry Rosen at U.S. Department of Justice, perry.rosen@usdoj.gov; Michael Hermes at Hermes Law, Ltd., mlh@hermeslawltd.com; Brandon Evans at Hermes Law, Ltd., bje@hermeslawltd.com; Anthony Steffeck at Hermes Law, Ltd., ajs@hermeslawltd.com; Heidi D. Melzer at Hermes Law, Ltd., hdm@hermeslawltd.com; Dennis Birke at DeWitt Ross & Stevens S.C., db@dewittross.com; Ronald Ragatz at DeWitt Ross & Stevens S.C., rrr@dewittross.com; Megan Senatori at DeWitt Ross & Stevens S.C., ms@dewittross.com; J. Ric Gass at Gass Weber Mullins LLC, gass@gasswebermullins.com David Turek at Gass Weber Mullins LLC, turek@gasswebermullins.com.

       NCR CORPORATION

       s/ Kathleen L. Roach
       By: One of Its Attorneys