IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| APPLETON PAPERS INC. and <br> NCR CORPORATION, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | No. 08-CV-00016-WCG |
| v. | ) <br> ) | |
| GEORGE A. WHITING PAPER <br> COMPANY, et al., | ) <br> ) <br> ) | |
| Defendants. | ) <br> ) | |

**DEFENDANT CITY OF APPLETON'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF FACT IN OPPOSITION TO DEFENDANT CITY OF APPLETON'S MOTION FOR SUMMARY JUDGMENT**

The City of Appleton (City) hereby responds to Appleton Papers Inc. and NCR's (collectively Plaintiffs') Proposed Findings of Fact in Opposition to the City's Motion for Summary Judgment:

**I. THE CONSENT DECREE**

1. On December 10, 2001, a consent decree ("Consent Decree") was entered in the Eastern District of Wisconsin, case number 01-C-0816, dismissing by stipulation and without prejudice a lawsuit between the United States of America and the State of Wisconsin as plaintiffs and API and NCR as defendants. Dkt. # 566-2 (Consent Decree) at 37.[1]

**RESPONSE:** Undisputed.

2. The Consent Decree was a funding mechanism so certain cleanup and natural resource damages ("NRD") projects could be undertaken while the agencies continued their studies of cleanup and NRD options. Dkt. # 566-2 (Consent Decree) at 9.

**RESPONSE:** Undisputed but incomplete. The Consent Decree was also a mechanism for

---

[1] All documents cited herein have been previously submitted to the Court and are part of the Court's record in these consolidated matters. Plaintiffs would be happy to provide the Court with duplicate copies of the documents cited here in upon request.

the promotion of settlement among potentially responsible parties for liability for cleanup of the contamination of the Lower Fox River. (Dkt. 566-2 at 9).

    3.    The Statement of Purpose of the Consent Decree states:
This Consent Decree is intended to advance the following purposes: providing interim funding for response action projects and natural resource damage restoration projects at the Site; acquiring knowledge from projects performed under this Consent Decree, so that knowledge gained can be utilized in selecting and implementing future response action projects and restoration projects, providing partial reimbursement for past natural resource damage assessment costs for the Site paid by DOJ; and providing an opportunity for the parties to focus on negotiations concerning potential resolution of the Defendants' alleged liability for the Site, as well as their potential counterclaims.
Dkt. # 566-2 (Consent Decree) at 9.

**RESPONSE:** Undisputed as an attempted accurate quotation of language from the Consent Decree, however "for" should be replaced with "of" in line 5 and "DOJ" should be replaced with "DOI" in line 6.

    4.    The Consent Decree states:
Appleton Papers Inc. and NCR Corporation (collectively 'Defendants') are current and/or former owners and operators of two paper mill facilities at or near the Site. By entry into this Consent Decree, the Defendants do not admit any liability arising out of the transactions or occurrences alleged in the complaint.
Dkt. # 566-2 (Consent Decree) at 5.

**RESPONSE:** Undisputed as an attempted accurate quotation of language from the Consent Decree, however "the" should be inserted between "collectively" and "Defendants" in line 1.

    5.    The Consent Decree provides:
The Plaintiffs, the Tribes, and the Defendants mutually intend to consult and engage in good faith efforts to negotiate a resolution of Defendants' alleged CERCLA liability for the Site, including alleged liability for all necessary response actions and alleged liability for natural resource damages, as well as Defendants' alleged potential counterclaims.
Dkt. # 566-2 (Consent Decree) at 22.

**RESPONSE:** Undisputed as an accurate quotation of language from the Consent Decree.

    6.    The Consent Decree provides:
The Parties agree that nothing in this Consent Decree shall be construed as a waiver of any claim, defense, argument or position that the Defendants may have against the Plaintiffs, the Tribes, or others, including without limitation: … (ii) the right to contest liability for response costs and response actions at the Site;….
Dkt. #566-2 (Consent Decree) at 33.

**RESPONSE:** Undisputed as an accurate quotation of language from the Consent Decree.

7. The Consent Decree provides:
> The Parties agree that this Consent Decree and the payment of funds hereunder are not based on any views or assumptions of what the Defendants' share of costs, damages or liability should be. The Defendants reserve their right to contest, litigate, and/or argue what their applicable and appropriate share should be and to bring contribution and other actions against persons who are not Parties to this Consent Decree to recover those amounts paid hereunder that are in excess of Defendants' fair and allocable share as determined by appropriate law. This Consent Decree is without prejudice to any arguments, positions, claims and defenses of the Defendants with respect to allocation matters.

Dkt. # 566-2 (Consent Decree) at 34.

**RESPONSE:** Undisputed as an attempted accurate quotation of language from the Consent Decree, however, "right" should be pluralized as "rights' in line 3, "applicable" should read "allocable" in line 4, and "the" should be omitted from line 8.

8. The Consent Decree provides:
> Pursuant to Fed. R. Civ. P. 41(a)(2), as of the Effective Date of this Consent Decree, the above-captioned action is hereby *dismissed without prejudice*, upon the terms and conditions set forth in this Consent Decree.

Dkt. # 566-2 (Consent Decree) at 40.

**RESPONSE:** Undisputed as an accurate quotation of language from the Consent Decree, with emphasis added by Plaintiffs.

9. Nowhere does the Consent Decree indicate that any claims against API and NCR were adjudicated, resolved or settled. Dkt. # 566-2 (Consent Decree).

**RESPONSE:** Disputed in part in regard to whether certain claims were settled. The Consent Decree provided that if liability against the Plaintiffs was determined, the amounts paid under the Consent Decree would be credited against any such liability. Dkt. 566-2 p. 31. It also specifically uses the term "Settlement" in regard to such credits. *Id*. By entering into the Consent Decree, the Plaintiffs received a temporary covenant not to sue from the governments which enabled them to pursue a negotiated settlement among all of the parties. Dkt. 566-2, p. 26).

10. The Consent Decree does not involve a "settlement" as contemplated by CERCLA. Dkt. # 566-2 (Consent Decree).

**RESPONSE:** Disputed. See Response to PFF No. 9 above.

3

11. The United States and the State of Wisconsin covenanted not to sue API and NCR during the Effective Period of the Consent Decree. Dkt. 566-2 (Consent Decree) at 26-28.

**RESPONSE:** Undisputed.

12. The governments did not agree that any claims they have against API and NCR are released or foreclosed. Dkt. 566-2 (Consent Decree) at 26-29.

**RESPONSE:** Disputed in part. The governments did agree to credit the Plaintiffs with the amounts paid under the Consent Decree should liability be established against the Plaintiffs. Dkt. 566-2, p. 31.

13. The Consent Decree does not establish or absolve any potential liability of API and NCR for the Fox River Contamination. Dkt. 566-2 (Consent Decree).

**RESPONSE:** Disputed in part in regard to the word "absolve". The Consent Decree does provide for the Plaintiffs to receive a credit in the event there is liability, so in that sense it absolves a portion of the potential liability of the Plaintiffs for the Fox River Contamination. Dkt. 566-2, p. 31.

14. The Consent Decree nowhere provides that judgment was entered on any of the governments' claims in the complaint. Dkt. 566-2 (Consent Decree).

**RESPONSE:** Disputed due to the vague and overbroad language "judgment was entered". The Consent Decree itself was entered and was an enforceable order of the court that bound the Plaintiffs and their successors and assigns. Dkt. 566-2, p. 6.

**II. TOLLING AGREEMENT**

15. Plaintiffs and the City entered into an agreement entitled, "Fox River Tolling and Standstill Agreement" ("Tolling Agreement"). Dkt. # 566-3 (Tolling Agreement).

**RESPONSE:** Undisputed.

16. Plaintiffs both signed the Tolling Agreement on December 9, 2004. Dkt. # 566-3 (Tolling Agreement) at 4.

**RESPONSE:** Undisputed.

17. The City signed the Tolling Agreement on December 1, 2004. Dkt. # 566-3 (Tolling Agreement) at 5.

**RESPONSE:** Undisputed.

4

18. The stated purpose for the Tolling Agreement was to delay litigation for a limited period of time. Dkt. # 566-3 (Tolling Agreement) Preamble.

**RESPONSE:** Disputed in part. While this is stated in the Preamble to the Tolling Agreement, it is not the only purpose of the agreement.

19. The Tolling Agreement states:
Whereas, the Parties have therefore decided that it is in their collective best interests to agree, for a limited period and subject to termination as provided below, to avoid cost-recovery or contribution litigation at this time and to toll applicable statutes of limitation.
Dkt. # 566-3 (Tolling Agreement) at 2.

**RESPONSE:** Undisputed as an accurate quotation of language from the Tolling Agreement.

20. Paragraph number one of the Tolling Agreement states:
During the Effective Period of this Agreement, as defined in Paragraph 3, below, NCR and API, on behalf of themselves, their successors and assigns, covenant not to sue the City of Appleton on any claims they may have arising in connection with the Fox River Contamination. This covenant not to sue terminates at the end of the Effective Period.
Dkt. # 566-3 (Tolling Agreement) at 3.

**RESPONSE:** Undisputed as an accurate quotation of language from the Tolling Agreement.

21. Paragraph number two of the Tolling Agreement states:
In consideration of the foregoing, the City of Appleton, on behalf of itself and its successors and assigns, agrees that the Effective Period shall not be included in the calculation of the time that has elapsed for purposes of determining whether NCR's and API's Claims against the City of Appleton are barred by any applicable statute of limitations, statute of repose, laches, or any other bar or restriction based on timing. For the purpose of this Agreement, "Claim" shall mean any claim relating to or arising in connection with the Fox River Contamination.
Dkt. # 566-3 (Tolling Agreement) at 3.

**RESPONSE:** Undisputed as an accurate quotation of language from the Tolling Agreement.

22. Paragraph number three of the Tolling Agreement provides as follows:
The "Effective Period" shall mean that period of time beginning with the date on which this Agreement is executed by all Parties and continuing until thirty (30) days after the day on which any Party provides notice to all the other Parties, pursuant to Paragraph 4, below, that it wishes to terminate the Agreement.
Dkt. # 566-3 (Tolling Agreement) at 3.

**RESPONSE:** Undisputed as an accurate quotation of language from the Tolling Agreement.

23. Paragraph number four of the Tolling Agreement provides as follows:
Each Party has the right to terminate this Agreement at any time. Notice to terminate this Agreement shall be provided to the other Parties by such means that will ensure its timely receipt, and will be deemed to have provided on the date that the other Party actually

5

receives the notice. Notice shall be sent to each Party's representative, as designed on Exhibit A. Each Party shall have the right to change its representative upon ten (10) days written notice to the other Parties.

Dkt. # 566-3 (Tolling Agreement) at 3.

**RESPONSE:** Undisputed as an attempted accurate quotation of language from the Tolling Agreement, however "designed" should read "designated in line 4.

24. The Tolling Agreement was a temporary covenant not to sue. Dkt. # 566-3 (Tolling Agreement).

**RESPONSE:** Disputed in part. The Tolling Agreement contained a temporary covenant not to sue but there were other provisions in the Agreement as well as the covenant not to sue.

25. The Effective Period of the Tolling Agreement includes the date on which Notice of Termination ("Notice") was received. Dkt. # 566-3 (Tolling Agreement) at 3.

**RESPONSE:** Undisputed.

26. The Effective Period of the Tolling Agreement does not include the thirtieth (30th) day after Notice was received. Dkt. # 566-3 (Tolling Agreement) at 3.

**RESPONSE:** Disputed. The Effective Period of the Tolling Agreement does include the thirtieth (30th) day after Notice was received under its plain language.

### III. TERMINATION OF THE TOLLING AGREEMENT

27. On May 12, 2008, Plaintiffs sent the City its Notice, which alerted the City of its intent to name the City as a Defendant in this action. Dkt. # 566-4 (Notice) at 2.

**RESPONSE:** Undisputed.

28. The City received Notice on May 13, 2008. Dkt. # 566-5 (Stamped Notice) at 2.

**RESPONSE:** Undisputed.

### IV. THIS ACTION

29. June 11, 2008 was the first day on which Plaintiffs could sue the City under the Tolling Agreement. Dkt. # 566-3 (Tolling Agreement) at 3; Dkt. # 566-4 (Notice) at 2.

**RESPONSE:** Disputed. Counting the thirty (30) day period in accordance with the language of the Tolling Agreement requires that the thirty (30) days begin the day AFTER the notice

6

of termination is received. In this case, the first day of the thirty (30) day period was May 14, 2008. The Effective Period then continues for thirty (30) days therefrom, with the last day within the Effective Period being June 12, 2008. The first day on which Plaintiffs could sue the City under the Tolling Agreement was June 13, 2008. (Dkt 566-3, p.3).

30. On June 11, 2008, Plaintiffs filed the Fourth Amended Complaint, naming the City as a defendant in this action for the first time. Dkt. # 148 (Fourth Amended Complaint).

**RESPONSE:** Undisputed.

31. On June 12, 2008, Plaintiffs filed the Fifth Amended Complaint which added Defendants who were not included in the Fourth Amended Complaint. Dkt. # 148 (Fourth Amended Complaint); Dkt. # 149 (Fifth Amended Complaint).

**RESPONSE:** Undisputed but incomplete. The claims against the City of Appleton were made again in the Fifth Amended Complaint filed on June 12, 2008, so that the Plaintiffs filed suit against the City on both June 11 and June 12, 2008. (Dkt. 149).

32. Plaintiffs filed the Sixth Amended Complaint on September 15, 2008. Dkt. # 247 (Sixth Amended Complaint).

**RESPONSE:** Undisputed but incomplete. The Sixth Amended Complaint was the first complaint filed against the City after the Effective Period of the Tolling Agreement ended and it was filed after the statute of limitations contained in 42 U.S.C. § 9613(g)(3) had expired. (Dkt. 247).

33. Plaintiffs filed the Seventh Amended Complaint on September 29, 2008. Dkt. # 265 (Seventh Amended Complaint).

**RESPONSE:** Undisputed but incomplete. The Seventh Amended Complaint was the second complaint filed against the City after the Effective Period of the Tolling Agreement ended and it was filed after the statute of limitations contained in 42 U.S.C. § 9613(g)(3) had expired. (Dkt. 265).

34. The Fifth Amended Complaint, and all subsequent complaints, named the City as a defendant in this action. Dkt. # 149 (Fifth Amended Complaint); Dkt. # 247 (Sixth Amended Complaint); Dkt. # 265 (Seventh Amended Complaint).

**RESPONSE:** Undisputed but incomplete. The first complaint that named the City was the Fourth Amended Complaint filed on June 11, 2009, not the Fifth Amended Complaint. (Dkt. 148). The Fifth, Sixth, and Seventh Amended Complaints all named the City and made claims against it identical to those made in the Fourth Amended Complaint filed on June 11, 2008. The Fourth and Fifth Amended Complaints were filed during the Effective Period of the Tolling Agreement. (Dkt. 148; Dkt. 149). The Sixth and Seventh Amended Complaints were filed after the expiration of the statute of limitations found in 42 U.S.C. § 9613(g)(3) (Dkt. 247; Dkt. 265).

## V. CONSIDERATION FOR TOLLING AGREEMENT.

35. The Plaintiffs did not sue the City at any time from December 9, 2004, through June 10, 2008. Dkt. # 1 (Complaint); Dkt. #35 (Amended Complaint); Dkt. 41 (Second Amended Complaint); Dkt. # 80 (Third Amended Complaint); Dkt. # 148 (Fourth Amended Complaint).

**RESPONSE:** Undisputed.

36. The City received consideration under the Tolling Agreement. Dkt. # 566-3 (Tolling Agreement) at 3.

**RESPONSE:** Undisputed but incomplete. The consideration received by the City was the agreement of the Plaintiffs not to file suit against it during the Effective Period of the Tolling Agreement. (Dkt. 566-3, p. 3).

## VI. THE CITY HAS NOT BEEN HARMED

37. The record contains no evidence that the City was harmed or damaged by being sued on June 11, 2008, or June 12, 2008, as opposed to any other day in June. Dkt. # 565 (City's brief); Dkt. # 566 (Arts Declaration).

**RESPONSE:** Disputed. The City does not claim pecuniary harm from the breach of the covenant not to sue in the Tolling Agreement but asserts that the Plaintiffs should be held to their bargain and should not be permitted to breach their own Agreement with no explanation as to why they filed suit during the Effective Period of the Tolling Agreement or why they did not file suit in

8

conformity with the one day window they had left themselves when they signed the Tolling Agreement on December 9, 2004.

Dated this 19th day of October, 2009.

Respectfully submitted,

*/s/Paul G. Kent*
Paul G. Kent (#1002924)
Waltraud A. Arts (#1008822)
Attorneys for Defendant City of Appleton
Anderson & Kent, S.C.
1 North Pinckney Street, Suite 200
Madison, WI 53703
Phone: 608-246-8500
Fax: 608-246-8511
pkent@andersonkent.com
WArts@andersonkent.com