IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

APPLETON PAPERS INC. and
NCR CORPORATION,

    Plaintiffs,

    v.          No. 08-CV-16-WCG

GEORGE A. WHITING PAPER COMPANY, et al.,

    Defendants.

---

NCR CORPORATION,

    Plaintiff,

    v.          No. 08-CV-0895-WCG

KIMBERLY-CLARK CORPORATION, et al.,

    Defendants.

---

**PLAINTIFFS' REPLY TO THE RESPONSES OF THE
UNITED STATES TO PROPOSED FINDINGS OF FACT SUBMITTED
WITH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs, NCR Corporation ("NCR") and Appleton Papers Inc. ("API"), by their undersigned counsel, submit the following Reply to the Responses of the United States to Proposed Findings of Fact Submitted with Plaintiffs' Motion for Summary Judgment.

**PPFF 35:** The government does not state any basis for concluding that NCR is liable under CERCLA except as successor to ACPC and Combined Paper Mills, Inc. *Id.* at ¶ 11, Ex. J (106 Order, ¶ 7a.i).

**Response to PPFF 35:** Although the United States Environmental Protection Agency ("EPA") did allege in its November 2007, UAO that NCR and API were liable as a successors to two corporate predecessors — Appleton Coated Paper Company and

Combined Paper Mills, Inc., EPA also alleged that "NCR and API and their corporate predecessors have owned and/or operated two paper production facilities in the Fox River Valley: one located at 825 E. Wisconsin Avenue in Appleton, Wisconsin (the 'Appleton Facility') and another located at 540 Prospect Street in Combined Locks, Wisconsin (the 'Combined Locks Facility')".  UAO ¶ 7(a)(iii)(Exhibit A).

<u>**Reply to PPFF 35:**</u>    The United States has failed to adequately dispute PPFF 35.

First, in the Unilateral Administrative Order ("UAO") the United States expressly stated that NCR and API are each "liable for payment of response costs and performance of response activities at the Site because NCR [or API] is… a successor":

> 7.a.i.    **NCR Corporation ("NCR") is a party that is liable** for payment of response costs and performance of response activities at the Site **because NCR is:  (1) a successor** to at least two corporate predecessors that, at the time of disposal of hazardous substances, owned and/or operated a facility at which such hazardous substances were disposed of, and from which there has been a release of hazardous substances to the Site; and **(2) a successor** to at least two corporate predecessors that by contract, agreement, or otherwise arranged for disposal or treatment of hazardous substances at a facility owned or operated by another party or entity and from which there has been a release of hazardous substances to the Site.
>
> 7.a.ii.  **Appleton Papers Inc. ("API") is a party that is liable** for payment of response costs and performance of response activities at the Site **because API is:  (1) a successor** to one or more corporate predecessors that, at the time of disposal of hazardous substances, owned and/or operated a facility at which such hazardous substances were disposed of, and from which there has been a release of hazardous substances to the Site; and **(2) a successor** to one or more corporate predecessors that by contract, agreement, or otherwise arranged for disposal or treatment of hazardous substances at a facility owned or operated by another party or entity and from which there has been a release of hazardous substances to the Site.

2

Declaration of Matthew Oakes ("Oakes Decl.") (Document No. 648), Ex. A, ¶¶ 7(a)(i)-(ii) (emphasis added).

Second, in paragraph 7(a)(iii) of the UAO the United States does not assert liability against API and/or NCR under CERCLA as a current owner and/or operator. Rather, paragraph 7(a)(iii) merely alleges as a factual matter that NCR and API have owned and/or operated certain facilities located at 825 E. Wisconsin Avenue in Appleton, Wisconsin, and 540 Prospect Street in Combined Locks, Wisconsin. Nowhere in paragraph 7(a)(iii) or anywhere else in the UAO does the United States assert that API and NCR have liability for their own actions or inactions while they were owners and/or operators of such facilities, nor does the United States allege in the UAO that the facilities discharged PCBs during the time period that NCR, and later API, owned or operated the facilities.

As shown above, the United States alleged in the UAO that NCR and API are liable solely "because" they are successors – and for no other reason. Accordingly, there is no basis for the United States to deny PPFF 35.

**PPFF 36:** API is alleged to have liability solely as a "successor." *Id.* (106 Order, ¶ 7a.ii).

**Response to PPFF 36:** EPA's allegations go beyond mere successorship. EPA alleged that (1) Combined Paper Mills, Inc. became a wholly-owned subsidiary of NCR in 1969, and that both before and after that acquisition, Combined Paper Mills, Inc. owned and/or operated the Combined Locks Facility; and (2) Appleton Coated Paper Company became a wholly-owned subsidiary of NCR in 1970, and both before and after that acquisition, Appleton Coated Paper Company owned and/or operated the Appleton

3

Facility. Both of those facilities produced PCB containing NCR paper and both facilities discharged PCBs to the Fox River when the facilities were operated by NCR subsidiaries. The Combined Locks Facility also discharged PCBs in connection with its reprocessing of PCB-containing wastepaper. Appleton Coated Paper Company was merged into Combined Paper Mills, Inc. in 1971, and the resulting entity changed its name to Appleton Papers, Inc., which remained a wholly-owned subsidiary of NCR. In 1973, Appleton Papers, Inc. merged into NCR and became known as the Appleton Papers Division of NCR. API later acquired the assets of NCR's Appleton Papers Division (including the Appleton Facility and the Combined Locks Facility) and API assumed relevant liabilities in connection with that asset purchase. November 2007 UAO ¶¶ 7(a)(v)-7(a)(x) (Exhibit A).

**<u>Reply to PPFF 36</u>:** **The United States has failed to adequately dispute PPFF 36.** The United States purports to support all of the allegations contained in its response to PPFF 36 with a citation to the November 2007 UAO ¶¶ 7(a)(v)-7(a)(x)(Exhibit A to the Oakes Decl. (Document No. 648)). However, the paragraphs cited do not allege that API has liability other than as a successor.

First, as shown above in Reply to PPFF 35, the United States specifically and exclusively alleged in the UAO that API and NCR are liable "because" they are successors. Oakes Decl. (Document No. 648), Ex. A, ¶¶ 7(a)(i)-(ii).

Second, the United States has not come forward with any evidence to show that it has asserted liability against API and/or NCR for their own actions or inactions. To the contrary, the liability allegations contained in the UAO relate solely to the actions or inactions of corporate predecessors of API and NCR. Oakes Decl. (Document No. 648),

4

Ex. A, UAO ¶ 7(a)(ix) (asserting liability against API and NCR on the alleged basis that "**Corporate predecessors of NCR and API generated** substantial amounts of PCB-containing wastepaper 'broke' during production of NCR PAPER between at least 1954 and 1971.") (emphasis added); Oakes Decl. (Document No. 648), Ex. A, UAO ¶ 7(a)(x) (asserting liability against API and NCR on the alleged basis that "**As owners and/or operators of the Combined Locks Facility, certain corporate predecessors of API and NCR also discharged** wastewater containing PCBs directly to the Lower Fox River…) (emphasis added); Oakes Decl. (Document No. 648), Ex. A, UAO ¶ 7(a)(xi) (asserting liability against API and NCR because "[i]n connection with the production of PCB-containing carbonless paper at the Appleton Facility between at least 1954 and 1971, **corporate predecessors of NCR and API discharged** wastewater containing PCBs to the City of Appleton's wastewater collection systems and publicly-owned treatments works, and the City of Appleton in turn discharged the Appleton Facility's partially-treated wastewater to the Lower Fox River.") (emphasis added).

In sum, the United States did not assert liability against API and/or NCR for their own actions and/or inactions while owners and/or operators of the Combined Locks or Appleton facilities. The United States asserted in the UAO that NCR and API were liable solely "because" they are successors to corporations that either discharged wastewater containing PCBs or generated broke containing PCBs. Accordingly, there is no evidentiary support for the United States to deny PPFF 36.

Further, the United States imprecisely alleges a variety of dates in its response to PPFF 36 pertaining to the corporate history. However, it is undisputed that the following events in the corporate history happened on the following dates:

5

- Combined Paper mills, Inc. became a wholly-owned subsidiary of NCR in September 1969 (not simply in "1969" as the United States contends); and

- Appleton Coated Paper Company became a wholly-owned subsidiary of NCR on July 31, 1970 (not simply in "1970" as the United States contends); and

- Appleton Coated Paper Company was merged into Combined Paper Mills, Inc. in July 1971 (not simply in "1971" as the United States contends); and

- API acquired the assets of NCR's Appleton Paper Division on June 30, 1978 (not simply "later" as the United States contends).

Finally, the United States has also made additional claims in its response to PPFF 36 that are imprecise and unsupported by the evidence. For example, the United States claims broadly in its response to PPFF 36 that: "Both of those facilities [the Appleton plant and the Combined Locks mill] produced PCB containing NCR paper and both facilities discharged PCBs to the Fox River when the facilities were operated by NCR subsidiaries." While both Appleton plant and the Combined Locks mill produced CCP containing PCBs, they did so at different time periods. As set forth in more detail below, it is undisputed that the Combined Locks mill only produced CCP containing PCBs for a short period of time (July 1969 through April 1971) even according to the United States' own cited evidence – Technical Memorandum 2d. Moreover, the Appleton plant never discharged its wastewater to the Lower Fox River. Rather, it is undisputed that ACPC's

6

effluent was discharged to the City of Appleton POTW.  Declaration of Dennis P. Birke (Document No. 665), Ex. 57 at NCR-FOX-0078283.

**PPFF 38:**    Combined Paper Mills, Inc. conducted trial runs of CB coating on a limited basis for a short period of time when PCBs were used in making carbonless paper.  *Id.* at ¶ 4, Ex. C (Schumaker Dep. at 44).

**Response to PPFF 38:** Evidence shows that the Combined Locks Facility discharged PCBs into the Fox River not only prior to the time it was a owned by an NCR subsidiary, but also after NCR bought the company that owned that Facility (in 1969), and after that Facility became owned by NCR itself (in 1973).  See Technical Memorandum 2d:  Compilation and Estimation of Historical Discharges of Total Suspended Solids and Polychlorinated biphenyls from Lower Fox River Point Sources at NCR-FOX-39425; NCR-FOX-394637 (Exhibit C).  The data at NCR-FOX-394637 shows that there were *measurable PCB levels in the effluent* from the Combined Locks Facility in 1974 – after the corporate subsidiary that owned and operated the Combined Locks Facility had merged into NCR.  NCR-FOX-394637.  The data at NCR-FOX-394646 shows mass estimates of PCB discharges from the Combined Locks Facility for each year from 1954 to 1997, including a high of 3153.5 pounds of PCBs discharged in 1970, and discharges of 110.9 pounds of PCBs in 1974, 59.3 pounds of PCBs in 1975, and a spike of 7.6 pounds of PCBs discharged as late as 1985.  Additional documents produced by NCR identify "NCR Appleton paper Div – Combined Locks" as a continuing source of PCB discharges through at least the late 1970s.  See NCR-FOX-328209-11 (Exhibit D).  These documents demonstrate that the Combined Locks facility was discharging PCBs both before and after it was directly owned and operated by NCR,

7

and create an issue of fact as to whether Plaintiffs' liability is based solely on their status as successor corporations.

**Reply to PPFF 38:** **The United States: (a) has not come forward with any evidence to refute PPFF 38; and (b) has not come forward with any evidence to show that the Combined Locks mill contributed a net amount of PCBs to the Fox River while the facility was owned and/or operated by API or NCR. Accordingly, there is no dispute of material fact relating to PPFF 38.**

First, the United States has not come forward with any evidence refuting the factual proposition set forth in PPFF 38, which stated in full: "Combined Paper Mills, Inc. conducted trial runs of CB coating on a limited basis for a short period of time when PCBs were used in making carbonless paper." Specifically, the United States has produced no evidence showing that the Combined Locks mill conducted trial runs of CB coating other than "on a limited basis for a short period of time when PCBs were used in making carbonless paper." In fact, the United States own cited authority – Technical Memorandum 2d – confirms that the Combined Locks mill only conducted trial runs of CB coating on a limited basis from July 1969 through April 1971. *See* simultaneously filed Declaration of Ronald R. Ragatz ("Ragatz Decl."), Ex. A at APIFOX00002967 (stating that the Combined Locks mill "[u]sed PCB containing emulsion to produce NCR Paper: July (December?) 1969 through April 1971."). There is simply no evidentiary basis for the United States to dispute PPFF 35.

Second, the United States has not come forward with any evidence to show that the Combined Locks mill was a net contributor of PCBs to the Fox River after 1974 – when NCR, and later, API, owned and/or operated the Combined Locks mill. Instead,

8

the United States attempts to rely upon a document (Technical Memorandum 2d) which is inadmissible hearsay under Fed. R. Evid. 801 and cannot serve as evidentiary support for the facts it has alleged. *See* Oakes Decl. (Document No. 648), Ex. C. Moreover, the reliability of the information contained in Technical Memorandum 2d is disputed.

Finally, the United States has not come forward with any evidence to find that the Combined Locks mill contributed a net amount of PCBs to the river. To the contrary, the evidence shows the Combined Locks mill did not contribute a net amount of PCBs to the river. The Combined Locks mill used raw river water influent drawn from the Fox River to be used as process water. James Beatty, the Technical Director for the Combined Locks Mill from 1973 until 1985, testified that the typical finding of test results at the Combined Locks mill during that time period showed that "the effluent that we were discharging had less [PCBs] in it than the water that we were taking in [from the river]." Ragatz Decl., Ex. B [Trial Testimony of James Beatty dated February 27, 2008, Brown County Case No. 2005 CV 36 ("Beatty Trial Testimony") at p. 2041:21-24]. In other words, Combined Locks was not contributing PCBs to the River.

Mr. Beatty testified as follows:

> Q: You were asked a series of questions about potential PCB testing on the Locks Mill during the '78 to the '85 time period. do you recall those?
>
> A: Oh, yes.
>
> **Q: And is it true that the Locks Mill periodically tested for PCBs?**
>
> **A: Yes.**
>
> **Q: And what were the typical findings?**
>
> **A: Basically the findings were that we would remove PCBs from the water. It was going back – the**

9

>     **effluent that we were discharging had less in it than the water that we were taking in.**
>
> Q: Okay. Can you explain that for the jury a little bit? What kind of water were you taking into the mill?
>
> A: We were taking in the raw river water, and we were processing that in our water treatment system, and that was used in the papermaking and pulp making operations, and what we discharged from the paper machines, that went through our primary and secondary waste treatment systems, and someplace along the line PCBs were removed.

*Id.* [Beatty Trial Testimony at p. 2041:12- 2042:12] (emphasis added). Mr. Beatty's testimony is supported by test results taken during the same time period that the United States now alleges that the Combined Locks mill was discharging PCBs to the Fox River.

For example, test results taken at the Combined Locks mill in 1975 and 1979 (shown in parts per million) consistently showed either a no-detect for PCBs or that on average there were less PCBs in the effluent going out of the Combined Locks mill than the amount of PCBs contained in the process water from the river that the mill was using as influent:

| PCB Test Date | River Influent | Plant Effluent | Bates Label |
|---|---|---|---|
| 3-20-1975 | <0.00005 | <0.00005 | NCR-FOX-0140919 |
| 6-12-1975 | 0.0008 | 0.0013 | NCR-FOX-0140918 |
| 9-13-1975 | 0.0005 | 0.0004 | NCR-FOX-0531258 |
| 11-29-1975 | 0.00245 | 0.00060 | NCR-FOX-0140917 |
| 9-27-1979 | <0.00005 | <0.00005 | API-GF039335 |
| 12-4-1979 | <0.001 | <0.001 | API-GF039337 |

10

Ragatz Decl., Ex. C [Attaching copies of 1975 and 1979 test results shown in the above table].

Likewise, test results taken at the Combined Locks mill in 1983 (also shown in parts per million) consistently showed *a no-detect* for PCBs:

| PCB Test Date | River Influent | Plant Effluent | Bates Label |
| --- | --- | --- | --- |
| 12-21-1983 | <0.0002 | <0.0002 | NCR-FOX-0569860 |
| 10-21-1983 | <0.0002 | <0.0002 | NCR-FOX-056981 |
| 3-15-1983 | <0.0002 | <0.0002 | NCR-FOX-0569862 |
| 7-27-1983 | <0.0002 | <0.0002 | NCR-FOX-0569863 |

Ragatz Decl., Ex. D [Attaching copies of 1983 test results shown in the above table].

In sum, while it is undisputed that after 1974 there were positive results for PCBs in the effluent from the Combined Locks mill, the level of PCBs contained in the effluent from the Combined Locks mill was not significantly different than the level of PCBs contained in the raw river water influent drawn from the river by the Combined Locks mill to be used as process water. In fact, in almost all cases, the amount of PCBs contained in the effluent from the Combined Locks mill was less than the amount of PCBs contained in the influent from the river. The United States has simply not shown that the Combined Locks mill was a net contributor of PCBs to the Fox River. Accordingly, there is no dispute of genuine material fact relating to the release of PCBs

11

from the Combined Locks mill during the period of time that it was owned by and/or operated by NCR and/or API.

Dated: October 19, 2009.

Respectfully Submitted,

| | |
|---|---|
| APPLETON PAPERS INC. | NCR CORPORATION |
| /s/ Ronald R. Ragatz | /s/ Kathleen L. Roach |
| Counsel for Appleton Papers Inc.: | Counsel for NCR Corporation: |
| DEWITT ROSS & STEVENS S.C. | Kathleen L. Roach |
| 2 E. Mifflin Street, Suite 600 | SIDLEY AUSTIN LLP |
| Madison, Wisconsin 53703 | One South Dearborn Street |
| (608) 255-8891 | Chicago, Illinois 60603 |
| Fax: (608) 252-9243 | (312) 853-7000 |
| | Fax: (312) 853-7036 |
| Michael L. Hermes | |
| HERMES LAW LTD. | |
| 333 Main Street, Suite 601 | J. Ric Gass |
| Green Bay, Wisconsin 54301 | GASS WEBER MULLINS LLC |
| (920) 436-9870 | 309 North Water Street |
| Fax: (920) 436-9871 | Milwaukee, Wisconsin 53202 |
| | (414) 224-7697 |
| | Fax: (414) 224-6116 |
| **COUNSEL FOR APPLETON PAPERS INC.** | **COUNSEL FOR NCR CORPORATION** |