UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

APPLETON PAPERS INC. and NCR CORP.,

          Plaintiffs,

v.                                                      Case No. 08-C-16

GEORGE A. WHITING PAPER CO., et al.,

          Defendants.

**DECISION AND ORDER DENYING MOTIONS FOR
LEAVE TO AMEND AND TO MODIFY CASE MANAGEMENT ORDER**

Plaintiffs have filed a motion seeking leave to file an eighth amended complaint to reinstate certain claims arising under § 107 of CERCLA. A corollary to that motion is Plaintiffs' motion to modify the Case Management Order.[1] I dismissed Plaintiffs' § 107 claims in an August 20, 2008 decision (Dkt. # 227), and that decision explains the factual background underlying such claims. The premise of the motion to amend is that the Supreme Court's recent decision in *Burlington Northern & Santa Fe Ry. Co. v. United States* undermines the reasons for my dismissal of the § 107 claims and thus an amendment should be allowed so that the Plaintiffs may now pursue them. 129 S.Ct. 1870 (2009). The motions have been fully briefed, and oral argument was heard on November 10. For the reasons given below, I conclude that the motions should be denied.

**I.** ***Burlington Northern* does not require a "divisibility" phase**

In my decision dismissing the § 107 claims, I found that because Plaintiffs Appleton Papers, Inc. ("API") and NCR Corp. were able to sue other parties for contribution under CERCLA

---

[1] The arguments Plaintiffs make in these motions also permeate their response to summary judgment.

§ 113(f), they were barred from bringing a claim under § 107. Based on precedent and the statutes themselves, I concluded that because the Plaintiffs had been subject to an enforcement action, their attempt to recover costs from others was limited to the contribution action provided by § 113.

Contribution actions are governed by equitable principles, e.g. fault, and thus in this case I have designated "Phase I" to be an inquiry into whether, and how much, the parties are at fault for the damage that was caused to the Fox River. Specifically, the questions to be explored involve when the parties knew that recycling the Plaintiffs' carbonless copy paper could lead to PCB discharges, and what actions they took once they learned about the dangers. In contrast, liability under § 107 is strict and apportionment under that section asks not about whether parties were at fault but simply about *how much* they contributed to the damage. *Burlington Northern,* 129 S. Ct. at 1882 ("Equitable considerations play no role in the apportionment analysis; rather, apportionment is proper only when the evidence supports the divisibility of the damages jointly caused by the PRPs.")

It is perhaps not surprising that the Plaintiffs would prefer an apportionment scheme and avoid reliance on the sorts of equitable considerations that are inherent in a contribution claim. Yet there is nothing within *Burlington Northern* that suggests my dismissal of their § 107 claims was error. *Burlington Northern* is indeed a watershed apportionment case – it significantly eases the burden on defendants who seek to avoid joint and several liability by allowing courts more leeway in determining whether the damage in question is capable of being apportioned and, then, in divvying up the damage. But these are largely *evidentiary* issues. The Court's holding on apportionment was actually quite limited: "we conclude that the facts contained in the record reasonably supported the apportionment of liability." *Id.* at 1882. In sanctioning the district court's

2

approach to apportioning the environmental damage in that case, the Supreme Court was merely holding that the lower court could rightly consider such things as the physical surface areas of the damaged land, the length of time over which the pollution occurred, and the areas where the pollution was released. Nowhere in the opinion is there any hint that the Court was intending to change the relationship between § 107 and 113.

Plaintiffs argue that § 113 is actually not available to them because they do not share common liability with the Defendants; as such, they must be allowed access to § 107. They suggest that in all of the other § 113 cases, it was *assumed* that the parties were jointly and severally liable for the damage, and thus the issue of apportionment – i.e., the attempt to avoid joint and several liability – never arose. Plaintiffs further argue that such is the (as yet unexamined) premise of this case. After *Burlington Northern*, which eased the standards for apportionment, they posit that the first step should be to determine whether they are even jointly and severally liable at all. If they can succeed in showing divisibility, as in *Burlington Northern*, then they are not jointly and severally liable with the defendants and thus they could not seek "contribution" from them because that is an undertaking that assumes the parties all share at least some degree of liability. In that event, this would not be a § 113 case at all but a § 107 action for cost recovery. In other words, if the harm is truly divisible, then their payments for cleanup expenses are payments for others' liability – not their own. As such, they assert they are not seeking contribution but complete cost recovery because they bear zero liability for such expenses.

There are several problems with Plaintiffs' approach. First, the questions of divisibility and apportionment existed long before *Burlington Northern* was ever decided. 128 S. Ct. at 1880 (noting that "[t]he seminal opinion on the subject of apportionment in CERCLA actions was written

3

in 1983. . .") If that question were really so fundamental to a § 113 or § 107 claim, Plaintiffs could have raised it earlier, and in fact it is surprising that it has never been discussed in any of the countless § 113 and § 107 cases cited to this Court. (The exception being *Akzo*, where the Seventh Circuit was unimpressed.[2]) Surely the Plaintiffs are not the first plaintiffs subject to § 113 who allege that the harm in question is divisible. (As noted below, the "divisibility" question arises frequently in § 113 cases, as it is one of the equitable factors courts may consider.) *Burlington Northern*, after all, was an affirmance of the district judge's approach to apportionment, which occurred in five years before this case was filed. Thus, there is nothing in *Burlington Northern* that opens the door to some kind of new, fundamental, analysis in § 113 claims, and Plaintiffs have identified no other case in the history of CERCLA where a plaintiff could bring a § 107 claim to determine apportionment.

Second, Plaintiffs' premise that a § 113 claim relies on an implicit finding of indivisibility is not sound. Although many parties in contribution actions are assumed to be jointly and severally liable, all that is required for a CERCLA contribution action is that a potentially responsible party

---

2

"Akzo suggests that whether its claim is one for contribution may depend on whether the harm done to the Fisher-Calo site is divisible. If, for example, all of Akzo's solvents were deposited at Two-Line Road while Aigner's were deposited at a different facility, Akzo's claim for cleaning up the Two-Line Road site looks less like one for contribution and more like a section 107 cost recovery action. But the basis for holding Aigner liable in that scenario escapes us. Only the hypothesis that the whole Fisher-Calo site is the proper unit of analysis, or that *both* Akzo and Aigner sent solvents to Two-Line Road, would give Akzo a legitimate claim against Aigner. Either way, Akzo is seeking to apportion liability for an injury to which it contributed."

*Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 765 (7th Cir. 1994).

4

("PRP") have a "common liability" with other PRPs. *United States v. Atlantic Research Corp.*, 551 U.S. 128, 139 (2007) ("Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a).") As the United States explained at oral argument, under CERCLA, contribution under § 113 is not necessarily identical to a common law contribution claim. In fact, it is available to someone whose liability may not have been firmly established at all. It is enough that the party be subject to some compulsion to pay – here, the government's § 106 order. The Sixth Circuit pointed this out in *Centerior Service Co. v. Acme Scrap Iron & Metal Corp.*:

> [Plaintiffs] contend that contribution exists only when a party has either been "adjudged" liable or settled a common liability. Under the common law, however, there was no requirement that a party be "adjudged" liable before seeking contribution, and none of the definitions set forth above referred to any such requirement. It was enough that a plaintiff act under some compulsion or legal obligation to an injured party when he or she discharged the payment. . . . A § 106 administrative order requiring cleanup in the face of penalties or fines clearly satisfies such a requirement.

153 F.3d 344, 351-52 (6th Cir. 1998) (abrogated on other grounds by *Atlantic Research,* 551 U.S. 128.)

> As one commentator has explained,
>
> the Restatement approach reflects the basic principle that, in order to bring an action for contribution, a party must either have had a legal obligation or have been liable to the injured party when he discharged the liability. The authorities have often phrased this principle in terms of allowing the plaintiff to recover when he or she has been "compelled" or "coerced" to discharge the liability to the injured party. To have been "compelled" or "coerced," the party who discharged the liability to the injured party must have had a legal duty or obligation to do so and could not have legally resisted the obligation.

Michael Hernandez, *Cost Recovery or Contribution? Resolving the Controversy over CERCLA Claims Brought by Potentially Responsible Parties*, 21 Harv. Envtl. L. Rev. 83, 103 -104 (1997).

5

As such, there is no requirement that a contribution plaintiff be "adjudged" liable for an indivisible harm prior to bringing a § 113 claim. Section 113 reflects this more expansive approach to contribution as well. It does not state, of course, that contribution is available only for "indivisible" harms. Instead, § 113 is quite broad: "any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title." 42 U.S.C. § 9613(f). And the breadth of contribution law is reflected in other environmental statutes as well. For instance, Arkansas has a Remedial Action Trust Fund Act, which provides that "[a]ny person who has undertaken or is undertaking remedial action at a hazardous substance site in response to an administrative or judicial order initiated against such person . . . may obtain contribution from any other person who is liable for such hazardous substance site." Ark. Code Ann. § 8-7-520(a). Although of course this latter statute does not apply here, it reflects the general principle that contribution is not limited to harms judged to be indivisible – it is open to any person who has undertaken remedial action in response to a governmental order, which is exactly the scenario we have here.

The point is that in order to bring a § 113 claim, a plaintiff must have some kind of liability that is common with the defendants, and this liability can result from something like a § 106 order or other compulsion. It does not require some sort of judicial finding, judgment or concession that the liability is "joint and several" or that the harm is "indivisible." As noted in previous rulings, Plaintiffs were subject to a § 106 administrative order. That order triggered their right under § 113 to bring a contribution action and seek payment from other PRPs for any costs they incurred that they allege were more than their fair share.

Third, the procedural circumstances of this case are different than almost every other § 107 or § 113 action. Although § 107 is sometimes available to private parties, Plaintiffs have not cited, and this Court has not found, any cases in which a putative § 107 plaintiff was allowed to advance a § 107 claim based on his allegation that the harm in question was divisible. Nor are there any § 113 cases in which a court determined the divisibility question before finding that § 113 was available. Instead, the cases uniformly talk about a *defendant* being able to avoid joint and several liability by proving divisibility. It is called a "divisibility defense." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1513 (11th Cir. 1996). There is simply no precedent for a *plaintiff* instituting an action whose first order of business is to obtain a ruling on divisibility before going forward. *Burlington Northern* itself, of course, arose in the context of a *defendant* proving divisibility, and the Supreme Court was addressing apportionment as a *defense* to joint and several liability, not some sort of independent claim or component of a claim. And in fact that is how the issue almost always arises: "[a]lthough it possible that a private party may qualify as an 'innocent' plaintiff enabling it to bring a cost recovery action based on § 107(a) alone, the typical § 107(a) action is brought by a governmental plaintiff that has expended taxpayer dollars in cleaning up a facility." *Redwing Carriers,* 94 F.3d at 1513. Simply put, there is nothing within *Burlington Northern* that requires courts to make some sort of threshold determination regarding joint and several liability or allow plaintiffs in a contribution action to make an apportionment argument.

Finally, Plaintiffs' policy arguments are unpersuasive. They suggest that somehow it is unfair to force them to seek contribution, rather than apportionment. But contribution under § 113 often encompasses many of the same considerations involved in an apportionment, and in many cases the result would be the same because the amount of harm actually caused by the parties can

7

be a critical factor in an equitable division case. (The first "Gore factor" involves "the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished." *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 326 (7th Cir. 1994)). Moreover, there is something unusual about arguing that a resort to equity and its principles of fairness is somehow itself "unfair" – it is an argument that would appeal only to those who fear, for whatever reason, the imposition of liability based on such principles, and presumably that is a small subset of litigants.

In addition, I am satisfied that allowing Plaintiffs to pursue a divisibility case at this stage would upset the government's right to proceed as it sees fit against Plaintiffs and other PRPs. As the United States notes, in its enforcement role it is entitled significant leeway as to when, and how, it wishes to enforce the environmental laws. Divisibility is primarily a defense to liability vis-a-vis the government itself, and the government's role in this action is somewhat tangential. In other words, it would not be advisable to allow the Plaintiffs to litigate the divisibility issue and require the government to accede to any rulings this Court might make as to whether the harm is divisible or not.

But these are ancillary points. The controlling principle comes from the Supreme Court's holding that "the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.'" *United States v. Atlantic Research Corp.,* 551 U.S. 128, 139 (2007) (citation omitted). The relevant "procedural circumstances" are whether the party's incurred costs resulted from a government action under § 106 or 107. If they did, the party must use § 113. Nothing within § 113 or *Burlington Northern* suggests that § 113 is only available for harms that are indivisible.

8

**II. "Arranger" status need not be determined in advance**

Plaintiffs also suggest that the CMO should be thrown out because *Burlington Northern* changed the standards for "arranger" liability and this case cannot move forward without a threshold determination as to whether Plaintiffs are arrangers. This argument dovetails with their argument that the harm can be shown to be divisible. If Plaintiffs can show that they are not "arrangers" for any part of the damage, they assert, then their action sounds more in cost recovery under § 107 than contribution under § 113.

Although *Burlington Northern* changed the applicable standards for "arranger" liability, it did not suggest that now arranger liability is some sort of threshold issue in § 113 cases. Plaintiffs have conceded that they are potentially liable under CERCLA for PCBs that their predecessor company discharged. Adding or subtracting *another* statutory basis for liability (e.g. arranger liability) will not change the calculation or result of the equitable contribution factors. In other words, even if Plaintiffs are not arrangers under the *Burlington Northern* standard, that would not impact this Court's determination of whether they are entitled to contribution in this action.

Accordingly, the motion to amend the complaint [548] is **DENIED** as futile; the motion to alter the case management order [556] is also **DENIED**.

**SO ORDERED** this ___18th___ day of November, 2009.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
