IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS, INC. and <br> NCR CORPORATION, <br>       Plaintiffs, <br><br> v. <br><br> GEORGE A. WHITING PAPER COMPANY, et al., <br>       Defendants, | No. 2:08-cv-00016-WCG |

### BROWN COUNTY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

It is a foregone conclusion that Brown County is entitled to summary judgment dismissing Plaintiffs' claims against Brown County in their entirety. The Court's analysis in its Order dismissing Plaintiffs' contribution claims against those Defendants which moved for summary judgment prior to the Phase I trial applies with equal force to the claims against Brown County. (*See* Decision & Order Dismissing Plaintiffs' Claims for Contribution, Dkt. No. 795 ("Decision & Order"); Position of Brown County with Respect to Court Order of January 20, 2010, Dkt. No. 813). The undisputed facts demonstrate that Brown County had a lesser role in the contamination of the Lower Fox River than those Defendants who received the benefit of the Court's earlier Decision & Order. And, needless to say, by virtue of that undisputed fact, Brown County is infinitely less culpable than Plaintiffs.

Plaintiffs' claims against Brown County stem from its alleged ownership and operation of disposal sites at Renard Isle and Bay Port. (Eighth Amended Complaint, Dkt. No. 548-2, at ¶¶ 43, 155). Plaintiffs allege that "Brown County's management of the Bay Port Disposal Site

and Renard Isle landfill operations resulted in the release of PCBs into the Lower Fox River Site." (Id., ¶ 155).

Even if Plaintiffs' allegations were true, any discharges from Bay Port and Renard Isle would have been included as a tiny fraction of the already miniscule percentage the Court previously found to be attributable to Defendants during the post-production period. (*See* Decision & Order, p. 38-40). As a matter of undisputed fact, however, Plaintiffs' allegations against Brown County are untrue. There has never been evidence of any PCB release from the Bay Port disposal facility to the Lower Fox River Site. And Brown County does not own or operate Renard Isle.

## STATEMENT OF UNDISPUTED FACTS

There is insufficient evidence to support a conclusion that PCBs have been released from the Bay Port facility to the Lower Fox River Site. (Larscheid Decl., ¶ 3). Sampling data from the Bay Port facility show insignificant concentrations of PCBs and a 1992 study by the Wisconsin Department of Natural Resources indicated that discharges, if any, from the Bay Port facility were miniscule. (Id.) Brown County adopts and incorporates by reference the arguments and proposed findings of the City of Green Bay, which detail additional facts concerning the operation of the Bay Port facility.

The Renard Isle facility is not Brown County's responsibility as Brown County is neither an owner, nor an operator, of that facility. The Army Corps of Engineers owns and operates the Renard Isle facility. Brown County's only relationship to that facility is as a local sponsor for the Corps' activities. Brown County's local sponsorship of the Corps' Renard Isle operations was necessary because Renard Isle was constructed on the lakebed of Green Bay and lakebed property in Wisconsin is held in trust for the public pursuant to constitutional mandate. Brown

2

Case 2:08-cv-00016-WCG   Filed 04/05/10   Page 2 of 8   Document 947

County obtained a lakebed grant for the land to enable the Corps to construct the Renard Isle facility, but that did not transfer legal title from the State to Brown County. And Brown County has never manifested other indicia of ownership or control over the facility, such as maintenance or upkeep, which is all administered by the Corps of Engineers. (Larscheid Decl., ¶ 4).

Brown County adopts the Court's factual findings from its December 16, 2009 Decision & Order concerning the relative knowledge of the parties and culpability of Plaintiffs and Defendants. Those findings demonstrate that Plaintiffs had substantial knowledge concerning the toxic nature of the discharged product prior to 1971 and Defendants did not. (Decision & Order, pp. 8-21). Brown County had no greater knowledge than the Defendants whose claims have already been dismissed. (Larscheid Decl., ¶ 5). Brown County's Port and Solid Waste Director, Charles J. Larscheid, is familiar with Brown County's documents demonstrating its historical knowledge concerning PCB contamination. He is unaware of any evidence in the documentary record which would support a conclusion that Brown County had knowledge of the toxic effects of PCB contamination, or establish Brown County's alleged role in contributing to the PCB contamination of the Lower Fox River prior to 1971. (Larscheid Decl., ¶ 5).

## ARGUMENT

### I. THERE IS NO EVIDENCE OF SIGNIFICANT PCB CONTAMINATION ATTRIBUTABLE TO THE BAY PORT OR RENARD ISLE FACILITIES.

Summary judgment is proper under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

3

which that party will bear the burden of proof at trial." *Id.* A complete failure of proof on an essential element of a plaintiff's case makes all other facts immaterial. *Id.* at 323.

A defendant moving for summary judgment satisfies its burden by pointing to the plaintiff's failure to introduce sufficient evidence to support each essential element of the cause of action. *Anderson v. Liberty Lobby, Inc.*, 377 U.S. 242, 256 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose summary judgment successfully; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Summary judgment functions as "'the put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999)).

There is no evidence of a significant release of PCBs from either Bay Port or Renard Isle. (Larscheid Decl., ¶ 3). To the contrary, testing data has demonstrated statistically insignificant concentrations of PCBs released from Renard Isle and no credible evidence exists that Bay Port has been responsible for any release of PCB contamination into the Lower Fox River. (Id.). To the extent there has been any release of PCBs from either facility, those releases would be included within the insignificant percentage of PCB contamination that the Court attributed to Defendants in its Decision & Order and, therefore, insufficient to overcome summary judgment. (Decision & Order, p. 38-40).

## II.    BROWN COUNTY DOES NOT OWN OR OPERATE RENARD ISLE.

Brown County cannot be considered an owner or operator of the Renard Isle disposal facility. The Seventh Circuit has held that "in determining whether a party has ownership interest in property, and thus is liable for response costs under CERCLA, a court should look to state property law." *United States v. Capital Tax Corp.*, 545 F.3d 525, 531 (7th Cir. 2008).

4

In this case, the Renard Isle facility was constructed, not by Brown County, but by the United States Army Corps of Engineers. (Larscheid Decl., ¶ 4). It has been maintained by the United States Army Corps of Engineers, not Brown County. (Id.). It has been administered by the United States Army Corps of Engineers, not Brown County. (Id.).

Brown County's involvement with Renard Isle is limited to Brown County's local sponsorship of a legislative lakebed grant to enable the Corps of Engineers to construct the facility at that location. That does not constitute ownership.

Renard Isle was constructed on the lakebed of Green Bay. (Larscheid Decl., ¶ 4). Lakebed property is unique in that the State of Wisconsin holds all lakes, rivers and lakebed property in trust for the public. *See* WI Const. Art. IX, § 1. Pursuant to its mandated duty as a local sponsor, Brown County obtained a legislative lakebed grant for the land underlying Renard Island, but that does not constitute ownership. Legislative grants of public trust property do not operate to transfer the legal title from the State to the grantee and the rights vested in the grantee are extremely limited. *See City of Madison v. State*, 1 Wis. 2d 252, 83 N.W.2d 674 (1957); *Meunch v. Public Service Comm'n*, 261 Wis. 2d 492, 53 N.W.2d 514 (1952).

### III. BROWN COUNTY IS NOT LIABILE FOR CONTRIBUTION UNDER CERCLA.

"In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." The district judge's power in establishing an equitable allocation is "broad and loose." *Browning-Ferris Indus. v. Ter Maat*, 195 F.3d 953, 957 (7th Cir. 1999).

The Seventh Circuit has established a non-exclusive list of considerations to evaluate in weighing the equities (the so-called "Gore Factors"):

> (1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished;
> (2) the amount of the hazardous waste involved;
> (3) the degree of toxicity of the hazardous waste involved;
> (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;
> (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and
> (6) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment.

*Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 326 (7th Cir. 1994).

The Court has already analyzed those factors and concluded that Plaintiffs' contribution claims cannot stand. (Decision & Order, p. 22-40). Application of those factors to Brown County makes an even more compelling case.

Brown County's contribution to the discharge of contaminating materials, if any, is indistinguishable from that of other responsible parties and cannot be apportioned. As a result, Plaintiffs' contribution claim fails. *Burlington Northern & Santa Fe Railway Co. v. United States*, 129 S. Ct. 1870 (2009).

To the extent any release of PCBs is attributable to Brown County at all, the amount of hazardous waste involved is *de minimus* compared to Plaintiffs' substantial contributions to the problem in the Lower Fox River. Brown County's involvement in the generation, transportation, treatment, storage and disposal of the hazardous waste is, likewise, insignificant as compared to that of the primarily responsible parties. Indeed, Brown County's history of involvement with PCB contamination in the Lower Fox River has primarily been in the context of trying to fix problems caused by other parties.

Brown County did not create the products using the hazardous substances. It was not involved in their transportation or treatment. Brown County also had little, if any, role in the Corps of Engineers' dredging activities. Brown County did not direct or control how those activities were conducted and it had no role whatsoever in open water dumping of dredging materials by the Corps of Engineers. (Larscheid Decl., ¶ 4). Instead, Brown County undertook to assemble the land for the disposal facilities which ended open water dumping. The Corps of Engineers then designed and constructed those facilities and transported the fill to them. (Id.).

Brown County also cannot be accused of failing to exercise due care in its treatment of hazardous substances. "Congress' intent [in drafting CERCLA was] that courts should equitably allocate costs of clean-up according to the *relative culpability* of the parties." *Environmental Transp. Sys., Inc. v. EMSCO, Inc.*, 969 F.2d 503, 509 (7th Cir. 1992) (emphasis added). Brown County did not profit from the products which caused PCB contamination in the Lower Fox River. Nor did Brown County undertake any activities which it knew at the time would contribute to the contamination of the Lower Fox River. In contrast to Plaintiffs, whose culpable conduct has already been explored in detail by prior orders of the Court, Brown County's relative culpability is nonexistent.

All of the pertinent equitable factors which the Court should analyze -- and, indeed, has already analyzed -- require dismissal of Plaintiffs' claims in this action as a matter of law.

## CONCLUSION

For the foregoing reason, Defendant Brown County respectfully requests summary judgment in its favor and against Plaintiffs on all claims in this action.

Dated this 5th day of April, 2010.

>Respectfully submitted,
>
>  s/ Ian A. J. Pitz
> David A. Crass, Esq.; SBN 1000731
> Ian A. J. Pitz, Esq.; SBN 1031602
> *Attorneys for Defendant Brown County*
> MICHAEL BEST & FRIEDRICH, LLP
> One South Pinckney Street, Ste. 700
> Madison, WI 53703-4257
> Telephone: (608) 257-3501
> Fax: (608) 283-2275
> Email: dacrass@michaelbest.com
>            iapitz@michaelbest.com