IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| APPLETON PAPERS INC. and<br>NCR CORPORATION,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GEORGE A. WHITING PAPER COMPANY, et al.,<br><br>　　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) | No. 08-CV-00016-WCG |
| NCR CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KIMBERLY-CLARK CORPORATION, et al.,<br><br>　　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) | No. 08-CV-0895-WCG |

**RESPONSE OF PLAINTIFFS APPLETON PAPERS INC. AND NCR CORPORATION TO NEENAH-MENASHA SEWERAGE COMMISSION'S PROPOSED FINDINGS FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Civil L.R. 56(b)(2)(B) of the United States District Court for the Eastern District of Wisconsin, Plaintiffs Appleton Papers Inc. ("API") and NCR Corporation ("NCR") (collectively, "Plaintiffs"), respectfully submit this Response to the Proposed Findings of Facts in Support of its Motion for Summary Judgment filed by Defendant Neenah-Menasha Sewerage Commission ("NMSC").

1. In 1994, NMSC entered into a cooperative agreement with the State of Wisconsin Department of Natural Resources (WDNR) and other defendants in this case (collectively known

as the Fox River Coalition) to finance remediation of the Lower Fox River. *Affidavit of Roger Voigt (Voigt Aff.), ¶ 3, Ex. A.*

**RESPONSE:** The proposed finding of fact is not supported by the record evidence. It is undisputed that the evidence cited by Defendants in support of this finding of fact is a Cooperative Agreement with the State of Wisconsin Department of Natural Resources and participating members of the Fox River Coalition, but this "Cooperative Agreement" is not signed by NMSC and does not indicate any acceptance by the WDNR. *See* Voigt Aff., Ex. A.

2. The cooperative agreement stated that the members "agree to provide funding . . . for the purpose of financing a contract(s) for the remedial investigation (RI) of the contaminated sediment sites in the Lower Fox River identified in the 1993 Green Bay Remedial Action Plan Update as sites POG, D/E, N and EE(27) and a feasibility study (FS) of sites POG and N. Funding will be used solely for contractual purposes." *Voigt Aff., ¶ 3, Ex. A.*

**RESPONSE:** It is undisputed that the referenced "cooperative agreement" contains the language cited, but as referenced in Plaintiffs' Response to PFF ¶ 1, this "Cooperative Agreement" is not signed by NMSC and does not indicate any acceptance by the WDNR. *See* Voigt Aff., Ex. A.

3. In May 1994, NMSC paid $19,457.00 to WDNR for sediment investigation, as agreed upon in the cooperative agreement. *Voigt Aff., ¶ 4, Ex. B.*

**RESPONSE:** It is undisputed that NMSC issued a check to the WDNR in May 1994 in the amount of $19,457.00. However, it is disputed whether this payment was made pursuant to the cooperative agreement as this "Cooperative Agreement" is not signed by NMSC and does not indicate any acceptance by the WDNR. *See* Voigt Aff., Ex. A. Given that Plaintiffs have been denied any discovery into NMSC's claimed response costs, Plaintiffs dispute this proposed finding of fact. Rule 56(f) Declaration of Kathleen L. Roach, ¶¶ 27-31, filed simultaneously herewith, hereinafter referred to as "Rule 56(f) Decl."

2

4. In June 1995, NMSC paid $1,915.79 to the Lower Fox River Dischargers Association, which included payment for WDNR water quality funding and a USGS flow gauging station. *Voigt Aff., ¶ 5, Ex. C.*

**RESPONSE**: It is undisputed that NMSC issued a check to the Lower Fox River Dischargers Association in June 1995 in the amount of $1,915.79. However, the record evidence does not support the contention that such payment was made related to the Lower Fox River remediation as the Lower Fox River Dischargers Association is a private organization and not a governmental entity in charge of the remediation. Given that Plaintiffs have been denied any discovery into NMSC's claimed response costs, Plaintiffs dispute this proposed finding of fact. Rule 56(f) Decl., ¶¶ 27-31.

5. In July 1995, NMSC paid $11,974.00 to WDNR for sediment investigation of the Fox River. The funds were "used as matching funds for two projects related to cleanup of contaminated sediment in the Lower Fox River." *Voigt Aff., ¶ 6, Ex. D.*

**RESPONSE**: It is undisputed that NMSC issued a check to the WDNR in the amount of $11,974.00. This payment is not governed by the "Cooperative Agreement" referenced in PFF ¶1, and there is no record evidence as to how such payment was used by the WDNR. Given that Plaintiffs have been denied discovery into NMSC's claimed response costs, Plaintiffs dispute this proposed finding of fact. Rule 56(f) Decl., ¶¶ 27-31.

6. In the letter accompanying NMSC's July 1995 check, NMSC stated it "strongly supports the efforts of the Fox River Coalition and the Department to investigate contaminated sites downstream of DePere and to prepare to implement cost-effective remediation projects upstream of the DePere Dam." *Voigt Aff., ¶ 6, Ex. D.*

**RESPONSE:** It is undisputed that the referenced letter contains the language cited, but – as referenced in Plaintiffs' Response to PFF ¶ 5, however, this payment is not governed by the "Cooperative Agreement" referenced in PFF ¶1, and there is no record evidence as how such payment was used by the WDNR. Given that Plaintiffs have been denied discovery into

3

Case 2:08-cv-00016-WCG   Filed 05/03/10   Page 3 of 9   Document 958

NMSC's claimed response costs, Plaintiffs dispute this proposed finding of fact. Rule 56(f) Decl., ¶¶ 27-31.

7. In February 1996, NMSC paid $2,000.00 to Fox River Coalition – Natural Resources Foundation for the Fox River Coalition public education fund. *Voigt Aff., ¶ 7, Ex. E.*

**RESPONSE**: It is undisputed that NMSC issued a check to the Fox River Coalition in February 1996 in the amount of $2000.00. However, the record evidence does not support the contention that such payment was made related to the Lower Fox River remediation. In fact, the letter included in Exhibit E states that the funds were for the "Fox River Coalition public education funds," and would be used "toward developing a strong public education component." There is no indication that the payment was to be applied to the Lower Fox River remediation. Given that Plaintiffs have been denied any discovery into NMSC's claimed response costs, Plaintiffs dispute this proposed finding of fact. Rule 56(f) Decl., ¶¶ 27-31.

8. A letter from WDNR regarding the February 1996 payment thanked NMSC for its "participation through funding and in-kind services toward developing a strong public education component of Lower Fox River restoration activities." *Voigt Aff., ¶ 7, Ex. E.*

**RESPONSE**: It is undisputed that the referenced letter contains the language cited, however, the record evidence does not support the contention that such payment was used toward the Lower Fox River remediation. In fact, it states that the funds were used for "public education." This payment is not governed by the "Cooperative Agreement" referenced in PFF ¶1. Given that Plaintiffs have been denied discovery into NMSC's claimed response costs, Plaintiffs dispute this proposed finding of fact. Rule 56(f) Decl., ¶¶ 27-31.

9. In February 1997, NMSC paid $1,694.74 to the Lower Fox River Dischargers Association for its annual membership in the Association and for WDNR Fox River water quality monitoring stations. *Voigt Aff., ¶ 8, Ex. F.*

4

**RESPONSE**: It is undisputed that NMSC issued a check to the Lower Fox River Dischargers Association in February 1997 in the amount of $1,694.74. However, the record evidence does not support the contention that such payment was made related to the Lower Fox River remediation. Given that Plaintiffs have been denied any discovery into NMSC's claimed response costs, Plaintiffs dispute this proposed finding of fact. Rule 56(f) Decl., ¶¶ 27-31.

10. NMSC's facility did nothing in its process or treatment of influent that introduced PCBs into the wastewater it discharged. *Declaration of Elizabeth Miles in Support of Neenah-Menasha Sewerage Commission's Motion for Summary Judgment on its Counterclaim (Miles Decl.), ¶ 2, Ex. A, Nos. 8, 14.*

**RESPONSE**: Disputed in part. It is undisputed that there is no evidence to show that NMSC did anything to introduce PCBs into the wastewater it discharged. However, it is disputed that NSMC adequately treated wastewater. It was well known that from the earliest days of its existence in the 1930's, the NMSC facility did not treat a substantial portion of the domestic and industrial waste that entered its sewers and instead bypassed them to the Fox River. *See* Declaration of James Braithwaite, ¶ 56, filed simultaneously herewith, hereinafter referred to as "Braithwaite Decl."

11. In 1935, the Wisconsin legislature passed Wis. Stat. § 66.20(11)(g) that required NMSC's facility to accept waste except to "prohibit discharge into such sewers, of any liquid waste deemed detrimental to the sewerage system herein provided for." *Miles Decl., ¶ 3, Ex. B.*

**RESPONSE**: Undisputed.

12. In 1971, the Wisconsin legislature amended section 66 to include waste that "will or may be harmful to the system or any person operating it." *Miles Decl., ¶ 4, Ex. C.*

**RESPONSE**: Undisputed.

13. To this day, NMSC has not experienced harm to its operators or its systems from PCBs. *Miles Decl., ¶ 5, Ex. D at 28.*

**RESPONSE**: It is undisputed that the referenced exhibit contains the language cited, however, it was well known that from the earliest days of its existence in the 1930's, the NMSC

5

facility did not treat a substantial portion of the domestic and industrial waste that entered its sewers and instead bypassed them to the Fox River. *See* Braithwaite Decl. , ¶ 56.

14. During the relevant time period, NMSC's facility treated influent from several mills that recycled NCR Paper. *Miles Decl., ¶¶ 6-7, Exs. E at 395 and F at 751.*

**RESPONSE**: Undisputed.

15. Wisconsin Tissue Mills, Inc. used fiber recovery systems including sidehill screens and save-alls at its facility before sending its wastewater to NMSC's facility. *Miles Decl., ¶¶ 8-9, Exs. G and H.*

**RESPONSE**: Undisputed.

16. Plaintiffs' expert characterized Wisconsin Tissue Mills' wastewater treatment practices as reasonable and prudent in preventing environmental harm. *Miles Decl., ¶ 10, Ex. I at 95.*

**RESPONSE**: Disputed in part. The characterization of the opinion of Plaintiffs' expert, Marcia Williams is not a complete accurate statement. Plaintiffs' expert stated that "Beginning in the early 1970's, WTM took reasonable and prudent actions with regard to preventing further PCB environmental harm to the LFR." Plaintiffs' expert does not speak to the actions of WTM prior to the early 1970's. *See* Miles Decl., ¶10, Ex. I at 95; Braithwaite Decl. , ¶ 55.

17. NMSC first became aware that its effluent might be contributing to PCB contamination of a water body in November 21, 1975 from a *Milwaukee Sentinel* article reporting on a speech given by WDNR employee Stanton Kleinert regarding PCBs in Lake Michigan. *Miles Decl., ¶ 11, Ex. J.*

**RESPONSE**: Disputed. In a November 25, 1975 letter to the WDNR, NMSC states that "We have discussed PCB's informally, several times over the past few years, as a matter of mutual professional interest with the DNR." *See* Miles Decl., ¶11,Ex. J.

18. The *Milwaukee Sentinel* article quoted Kleinert as saying, "a large part of the PCBs getting into Lake Michigan comes from the discharges of municipal sewerage treatment plants at Sheboygan, Neenah-Menasha, and Milwaukee." *Miles Decl., ¶ 12, Ex. K.*

**RESPONSE**: Undisputed.

6

19. NMSC knew of only two tests performed by WDNR at the NMSC facility involving PCBs: one on March 28, 1972, which indicated an effluent level of 3.3 parts per billion discharged from the facility, and one on October 16, 1974, which indicated a total of 0.16 parts per billion discharged. *Miles Decl., ¶ 11, Ex. J.*

**RESPONSE**: Disputed. It is undisputed that the referenced exhibit contains the language cited, however, in a November 25, 1975 letter to the WDNR, NMSC states that "We have discussed PCB's informally, several times over the past few years, as a matter of mutual professional interest with the DNR." *See* Miles Decl., ¶11, Ex. J.

20. WDNR Acting Assistant Secretary sent NMSC a copy of Kleinert's report and stated, "In reading this report, I think you will agree that the Neenah-Menasha treatment plant is not cited as a major contributor of PCBs to Lake Michigan." WDNR did not suggest directly or indirectly that the NMSC treatment facility had any role in generating PCBs or should take any action. *Miles Decl., ¶ 13, Ex. L.*

**RESPONSE:** Disputed in part. It is undisputed that the referenced letter contains the language cited. However the letter dated, December 8, 1975, is based on information the WDNR had as of that date. In its letter, the WDNR does not eliminate NMSC from being a contributor to the PBCs to Lake Michigan. *See* Miles Decl., ¶ 13, Ex. L.; Foley Declaration [Dkt. 601, Ex. 6]

21. NMSC had primary treatment since 1937 and secondary treatment by 1967, which removed a significant amount of PCBs from NMSC's effluent. *Miles Decl., ¶¶ 6,14, Exs. E and M at 270.*

**RESPONSE**: It is undisputed that NMSC had primary treatment since 1937 and secondary treatment by 1967. However, it was well known that from the earliest days of its existence in the 1930's, the NMSC facility did not treat a substantial portion of the domestic and industrial waste that entered its sewers and instead bypassed them to the Fox River. *See* Braithwaite Decl., ¶ 56.

22. By the late 1960s, NMSC had expanded its plant even before learning that PCBs might be in its plant's effluent. *Miles Decl., ¶ 15, Ex. N at 653.*

7

**RESPONSE**: It is undisputed that NMSC expanded its plant by the late 1960s, which is before NMSC states it learned that PCB's might be in its effluent. However, it was well known that from the earliest days of its existence in the 1930's, the NMSC facility did not treat a substantial portion of the domestic and industrial waste that entered its sewers and instead bypassed them to the Fox River. *See* Braithwaite Decl., ¶ 56.

23. NMSC "employed reasonable and appropriate wastewater treatment methods from the 1950s to the 1980s." NMSC "worked cooperatively with the appropriate regulatory agencies" and "acted responsibly in its equipment upgrades, wastewater treatment, and solids management." *Miles Decl., ¶ 5, Ex. D at 28.*

**RESPONSE**: Disputed. It took NMSC at least 30 years to bring its sewerage system into reasonable compliance with State Water Quality Standards. This delay allowed untold millions of pounds of PCB containing suspended solids to be discharged into the Fox River during the period 1954 to about 1985 when the paper mills had the PCBs in their industrial wastewater under control or had withdrawn their wastewaters from the NMSC system. *See* Braithwaite Decl., ¶ 60.

24. The plaintiffs characterized the Defendants as "innocent victims." *Miles Decl., ¶ 16, Ex. O.*

**RESPONSE**: Disputed. The characterization of the Defendants as "innocent victims" is not a complete accurate statement and is taken out of context. It is undisputed that *an NCR* representative in October 1975, stated that *he* believed the claim made by the recycling companies in a brief prepared by the Wisconsin Paper Council that they were innocent victims was "correct," but he listed that claim by the recycling companies as one of his criticisms of the brief. *See* Miles Decl., ¶ 16, Ex. O. Further the statement references only recycling companies and makes no mention of NMSC. *Id.* NMSC is not a recycling company and this statement cannot be reasonably construed to apply to NMSC.

8

Respectfully submitted,

| | |
|---|---|
| APPLETON PAPERS INC. | NCR CORPORATION |
| /s/ Michael L. Hermes | /s/ Kathleen L. Roach |
| Counsel for Appleton Papers Inc. | Counsel for NCR Corporation |
| Michael L. Hermes (WI Bar No. 1019623) | William F. Conlon (IL Bar No. 0499072) |
| HERMES LAW, LTD. | Kathleen L. Roach (IL Bar No. 6191432) |
| 333 Main Street, Suite 601 | SIDLEY AUSTIN LLP |
| Green Bay, WI 54301 | One South Dearborn Street |
| (920) 436-9870 | Chicago, Illinois 60603 |
| Fax: (920)436-9871 | (312) 853-7000 |
| | Fax: (312) 853-7036 |
| Ronald R. Ragatz (WI Bar No. 1017501) | |
| DEWITT ROSS & STEVENS S.C. | J. Ric Gass (WI Bar No. 1011998) |
| Two East Mifflin Street | GASS WEBER MULLINS LLC |
| Madison, WI 53703 | 309 North Water Street |
| (608) 255-8891 | Milwaukee, Wisconsin 53202 |
| Fax: (608) 252-9243 | (414) 224-7697 |
| | Fax: (414) 224-6116 |

Dated: May 3, 2010