IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| APPLETON PAPERS INC. <br> and NCR CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> GEORGE A. WHITING PAPER <br> COMPANY, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br> No. 08-CV-00016-WCG |

**PLAINTIFFS APPLETON PAPERS INC. AND NCR CORPORATION'S RESPONSE TO DEFENDANT CITY OF GREEN BAY'S PROPOSED FINDINGS OF FACT**

Plaintiffs Appleton Papers Inc. and NCR Corporation (collectively, "Plaintiffs"), by and through their undersigned attorneys, respectfully submit the following response to Defendant City of Green Bay's Proposed Findings of Fact.

**FINDINGS OF FACT**

1. In 1962, the United States Congress, under the Rivers and Harbors Act, directed the Army COE to widen and deepen the shipping channel which runs from Green Bay into the lower Fox River (the "Channel Improvement Project"). *See The Rivers and Harbors Act of 1962, PL 87-874.*

**RESPONSE:** Not supported by record evidence cited. The Rivers and Harbors Act of 1962, PL 87-874, authorized a project for Green Bay Harbor for navigation purposes, but did not provide further detail regarding its nature.

2. The Channel Improvement Project required the Army COE to obtain local cooperation prior to any dredging operations. *See Declaration of Edward P. Wiesner, at Ex. B, GB-DP0009385.*

1

**RESPONSE:** Not supported by record evidence cited. Wiesner Decl., Exhibit B (GB-DP0009385) is a letter from the Brown County Port Director to the U.S. Army Corps of Engineers ("Corps"), which transmits certain documents, including a Brown County resolution authorizing assurance of local cooperation relating to Green Bay Harbor. The letter does not specify that the Channel Improvement Project required the Corps to obtain local cooperation prior to any dredging operations.

3. Brown County, which operates the Green Bay Harbor Commission, agreed to provide local cooperation for the Army COE. *Id.*

**RESPONSE:** It is undisputed that Brown County provided local cooperation for the Corps on Green Bay dredging. However, the record evidence cited does not support a finding that Brown County operates the "Green Bay Harbor Commission."

4. One of the requirements of providing local cooperation was that Brown County provide locations for depositing dredge spoils removed during the Army COE operations. *See the Rivers and Harbors Act of 1962, PL 87-874.*

**RESPONSE:** Not supported by record evidence cited. No such requirement was specified in the Rivers and Harbors Act of 1962, PL 87-874.

5. In 1966, the City of Green Bay, interested in using the dredge spoils to create developable land, purchased a 585 acre tract of land on the lower west shore of Green Bay, known at the time as the Atkinson Marsh. The land was purchased with the intent to provide a place the Army COE could put the material it removed from the channel during the dredging operation. *Wiesner Decl. at Ex. B, GB-DP0009349, GB-DP0004646, GB-DP0004658.*

**RESPONSE:** Undisputed.

6. Working with Brown County, the City of Green Bay began the process of turning the marsh into a confined disposal facility. It constructed a perimeter dike encircling approximately 400 acres of the marsh in order to fully contain the anticipated dredge spoils. *Id. GB-DP0004717, GB-DP0004679.*

2

**RESPONSE:** Disputed in part. It is undisputed that Green Bay worked with Brown County on construction of a dike in order to turn marshland into the Bayport disposal facility ("Bayport") for dredged materials. However, it is disputed that the dike was designed to "fully contain the anticipated dredge spoils" so that Bayport would become a "confined disposal facility." The Wisconsin Department of Natural Resources ("WDNR") observed that Bayport was "not designed to completely isolate dredged materials from the environment." Declaration of Kathleen L. Roach in Support of Plaintiffs' May 3, 2010, filings ("KLR Decl.") Ex. 34 [Lower Green Bay Remedial Action Plan, WDNR, February 1988, GPFOX00089079, at GPFOX00089211].

7. At all times, the construction of the dike and the operation of the facility was done at the direction of and approved by the Army COE and the State Conservation Department (now the Wisconsin DNR). *Wiesner Decl. at ¶ 6, Wiesner Decl. Ex. B, GB-DP0009339, GB-DP0001356, GB-DP0001781, GB-DP0009377, GB-DP0009387, GB-DP0009637.*

**RESPONSE:** Disputed in part. It is undisputed that State departments approved the filling operation and that filling was performed by the Corps . However, the remainder of City of Green Bay Prop. Finding of Fact No. 7 is not supported by the record evidence cited. Wiesner Decl. Ex. B (GB-DP0009339) discussed possible disposal locations and requested confirmation that Brown County would arrange for construction of necessary diking; Wiesner Decl. Ex. B (GB-DP0001356) discussed depositing of dredged materials by the Corps; Wiesner Decl. Ex. B (GB-DP0001781) related to State approval of the filling operation (without mention of the dike); Wiesner Decl. Ex. B (GB-DP0009377) concerned the deadline for dike construction; Wiesner Decl. Ex. B (GB-DP0009387) transmitted a letter from the Corps regarding possible disposal locations; and Wiesner Decl. Ex. B (GB-DP000 9637) discussed the disposal site.

8. Phase I of the Channel Improvement Project began in late 1966. A pilot project initially placed approximately 500,000 cubic yards of dredge spoil into the Bayport CDF. *Wiesner Decl. at ¶ 7, Wiesner Decl. at Ex. B, GB-DP0005261, GB-DP0009361*.

**RESPONSE:** Undisputed.

9. In 1968, the Army COE requested that it be allowed to deposit dredge spoils in the Bayport CDF for maintenance of the existing shipping channel (the "Channel Maintenance Project"). The City of Green Bay agreed and began accepting dredge spoils from the Channel Maintenance Project in late 1968. *Wiesner Decl. at ¶ 8; Wiesner Decl. at Ex B at GB-DP0009413*.

**RESPONSE:** It is undisputed that Mr. Wiesner made such statements in the Wiesner Declaration, however Plaintiffs have not had an opportunity to depose Mr. Wiesner (or otherwise conduct full written or oral discovery of the City of Green Bay) because discovery on such issues has been precluded. Because of this lack of discovery, Plaintiffs dispute this proposed finding. *See* Plaintiffs' 56(f) Declaration, filed concurrently herewith ("56(f) Decl.").

10. The second phase of the Channel Improvement Project began in 1969. *Id. at GB-DP0009429*.

**RESPONSE:** Disputed in part. Wiesner Decl., Ex. B (GB-DP0009429) discussed plans and specifications for Entrance Channel and Outer Harbor Dredging at Green Bay Harbor in 1969, however the record evidence cited does not indicate this work was part of a "second Phase of the Channel Improvement Project."

11. By 1971, approximately 800,000 cubic yards had been deposited in the Bayport CDF. All dredge spoils had been deposited from the Army COE's Channel Improvement and Channel Maintenance projects. *Id. at GB-DP0009438*.

**RESPONSE:** Disputed. Wiesner Decl., Ex. B (GB-DP0009438) stated that by May 1971 approximately 702,100 cubic yards of dredged materials were deposited into Bayport in conjunction with the channel deepening project.

4

12. Prior to accepting dredge spoils for the second phase of the Channel Improvement Project, the Army COE required the City of Green Bay to pay $620,000 into an escrow account to reimburse the Army COE for additional costs required to transport dredge spoils from its dredging operations in the shipping channel to the Bayport CDF. *Id. at GB-DP0009418-19, GB-DP0009432*.

**RESPONSE:** Disputed in part. It is undisputed that the City of Green Bay entered into an agreement under which it paid $620,000 to the Federal Government for obtaining spoils for Bayport. However, the remainder of ¶12 is not supported by the record evidence cited. Plaintiffs note that the City of Green Bay has failed to attach Wiesner Decl., Ex. B (GB-DP0009419) to the Wiesner Declaration. *See* Wiesner Decl.

13. While the City of Green Bay knew the dredge spoils would contain some pollutants, the City of Green Bay had no knowledge during the entire Production Period of PCBs in any of the dredge spoils placed in the Bayport CDF. *Wiesner Decl. at ¶ 11*.

**RESPONSE:** Undisputed in part, otherwise not supported by the record evidence. It is undisputed that the City of Green Bay knew by the mid-1960s that dredged materials would contain some pollutants. However, the remainder of City of Green Bay Prop. Finding of Fact. 13 is not supported by the record evidence. Mr. Wiesner stated in ¶11 of his declaration that from 1954 to 1971 the City of Green Bay was not "ever informed" that the dredged materials obtained from the Corps contained PCBs, not that the City had "no knowledge" of PCBs in dredged materials. Further, Plaintiffs have not had an opportunity to depose Mr. Wiesner (or otherwise conduct full written or oral discovery of the City of Green Bay) because discovery on such issues has been precluded. Because of this lack of discovery, Plaintiffs dispute this proposed finding. *See* 56(f) Decl.

14. A review of documents in the City of Green Bay's possession indicates that while the sediments removed from the shipping channel were tested for certain pollutants in 1969, the dredge spoils were first tested for PCBs in 1976. *Id. at GP-DP0008638, GB-DP0008716-17, GB-DP0003444*.

5

**RESPONSE:** Disputed in part. Plaintiffs do not dispute that sediment was sampled for the presence of certain contaminants in 1969. However, it is disputed that sediment was first tested for PCBs in 1976. At least as early as 1974, the Corps began to sample sediments subject to dredging in Green Bay for the presence of PCB materials as part of an effort to examine the effects of dredging and open-water discharge on the release of PCBs and pesticides. PCBs similar to both Aroclor 1242 and Aroclor 1254 were found at least as early as January 1975. KLR Decl. Ex. 41[Laboratory Study of the Release of Pesticide and PCB Materials to the Water Column During Dredging and Disposal Operations, December 1975, pp. 1, 20].

15. Yet even after the presence of PCBs was detected in the dredge spoils, both the Army COE and the Wisconsin DNR approved the use of the Bayport CDF as an acceptable facility for safely containing PCB contaminated dredge spoils. *Id. See also GB-DP0009663*.

**RESPONSE:** Disputed. The WDNR observed that Bayport was "not designed to completely isolate dredged materials from the environment." KLR Decl. Ex. 34[Lower Green Bay Remedial Action Plan, WDNR, February 1988, GPFOX00089079, at GPFOX00089211]. WDNR also found that "uncovered contaminated wastes and substantial use by wildlife … have potential for run-off and for contaminants to move through the food chain into fish and wildlife." KLR Decl. Ex. 34[Lower Green Bay Remedial Action Plan, WDNR, February 1988, GPFOX00089079, at GPFOX00089275]. In the 1990s, WDNR found that a sample taken from the southwest corner of the Bayport site "indicates significant PCB and lead detections in the slough flow after the storm event samples"; the slough "flows westward … and then out to the bay." KLR Decl. Ex. 30[WDNR Preliminary Green Bay Mass Balance Groundwater Monitoring Report (An Assessment of the Bayshore Landfills), January 1990, Dkt. 870-3, pp. 8-9, GB-DP0008405-06]. In 1993, WDNR identified "[o]bserved releases" of Aroclor 1248 in surface

6

water samples taken from the perimeter ditches that drain the site. KLR Decl. Ex. 42 [Final Screening Site Inspection Report for the Bayport Industrial Park, 9/23/1993, pp. 44].

16. In 1990 and 1992, the Wisconsin Department of Natural Resources tested the Bay Port CDF for PCBs as part of its Mass Balance Groundwater Monitoring Report, wherein it concluded that PCBs "are not emanating from [the Bay Port] site in concentrations which are likely to adversely affect adjacent surface waters." *Wiesner Decl. at Ex. C, page 13.*

**RESPONSE:** Disputed in part. Plaintiffs do not dispute that such statement was made in a 1992 WDNR report, found on page 13 of Wiesner Decl., Exhibit D (not Exhibit C). However, Plaintiffs note that a 1993 report prepared by WDNR identified "[o]bserved releases" of Aroclor 1248 in surface water samples taken from the perimeter ditches that drain the Bayport site. KLR Decl. Ex. 42 [Final Screening Site Inspection Report for the Bayport Industrial Park, 9/23/1993, pp. 44]. Further, Dr. Donald Hayes found that "historical and continuing PCB losses" from Bayport "are a contributing reason for the extensive long-term monitoring requirements within Green Bay. KLR Decl. Ex. 3 [April 30, 2010 Declaration of D. Hayes, ¶¶13-14].

17. In addition, the Bayport CDF is not located within the bounds of the "Fox River Site." *Wiesner Decl. at ¶ 14.*

**RESPONSE:** Disputed. Bayport is adjacent to Green Bay, which is designated as OU-5 of the Lower Fox River Site. KLR Decl. Ex. 35 [Record of Decision Amendment, June 2007, p. 9].

18. During the entire period of its operation of the Bayport CDF, the City of Green Bay never engaged in any dredging operations and did not place any dredge spoils in the Bayport CDF. *Wiesner Decl. at ¶ 10.*

**RESPONSE:** It is undisputed that Mr. Wiesner stated in the Wiesner Declaration that the City of Green Bay did not perform dredging work, however, he stated that the City of Green Bay "was not responsible for the placement of the dredge spoils" at Bayport, not that the City of

Green Bay never did in fact place dredged materials there. Plaintiffs further note that Mr. Wiesner was not employed by the City of Green Bay for the "entire period" of Bayport operations. Plaintiffs have not had an opportunity to depose Mr. Wiesner (or otherwise conduct full written and oral discovery of the City of Green Bay) because discovery on such issues has been precluded. Because of this lack of discovery, Plaintiffs dispute this proposed finding. *See* 56(f) Decl.

19. The City relied on the Army COE to direct and design the operation of the Bayport CDF. *Wiesner Decl. at Ex. B, GB-DP0005990, GB-DP0005301.*

**RESPONSE:** Disputed. Wiesner Decl., Ex. B (GB-DP5990), WDNR described the City of Green Bay as being "responsible for providing an approved and constructed disposal facility." Dkt. 870-2, p. 37.

20. During the City of Green Bay's ownership of the Bay Port CDF, over 3 million cubic yards of dredge spoils have been deposited at the Bayport CDF. *Wiesner Decl. at ¶ 9.*

**RESPONSE:** Disputed. WDNR estimated that more than 10 million cubic yards of dredged materials were deposited at Bayport. KLR Decl. Ex. 32 [Tech Memo 2g, p. 33, API-GEO009921].

21. Plaintiffs, Appleton Papers, Inc. and NCR Corporation, have alleged a contribution claim against the City based upon alleged releases of PCBs from the Bayport Confined Disposal Facility (the "Bayport CDF"). *See Declaration of M. Andrew Skwierawski at Ex. A, Resp. to Interrogatory No. 1; Skwierawski Decl. at Ex. B, Resp. to Interrogatory No. 1.*

**RESPONSE:** Undisputed.

22. Plaintiffs have been unable to support an allegation that there have been any material releases of PCBs from the Bayport CDF. *Skwierawski Decl. at ¶¶ 2-5, Exs. A,B, and C.*

8

**RESPONSE:** Disputed. Historical and continuing PCB losses from Bayport are a contributing reason for long-term monitoring requirements in OU-5. KLR Decl. Ex. 3 [April 30, 2010 Declaration of D. Hayes, ¶¶13-14].

23. Plaintiffs have no evidence that PCBs released from the Bayport CDF migrated to the Fox River Site. *Id.*

**RESPONSE:** Disputed. Historical and continuing PCB losses from Bayport are a contributing reason for long-term monitoring requirements in OU-5. KLR Decl. Ex. 3 [April 30, 2010 Declaration of D. Hayes, ¶¶13-14]. Further, the WDNR observed that Bayport was "not designed to completely isolate dredged materials from the environment." KLR Decl. Ex. 34 [Lower Green Bay Remedial Action Plan, WDNR, February 1988, GPFOX00089079, at GPFOX00089211]. In the 1990s, WDNR found that a sample taken from the southwest corner of the Bayport site "indicates significant PCB and lead detections in the slough flow after the storm event samples"; the slough "flows westward … and then out to the bay." Dkt. 870-3, pp. 8-9. In 1993, WDNR identified "[o]bserved releases" of Aroclor 1248 in surface water samples taken from the perimeter ditches that drain the site. KLR Decl. Ex. 42 [Final Screening Site Inspection Report for the Bayport Industrial Park, 9/23/1993, pp. 44]. Finally, it should be noted that Plaintiffs have been denied the opportunity to conduct full discovery on such issues. Because of this lack of discovery, Plaintiffs dispute this proposed finding. *See* 56(f) Decl.

Respectfully submitted,

APPLETON PAPERS INC.

/s/ Michael L. Hermes

NCR CORPORATION

/s/ Kathleen L. Roach

| Counsel for Appleton Papers Inc.: | Counsel for NCR Corporation: |
|---|---|
| Michael L. Hermes  (WI Bar No. 1019623) | William F. Conlon (IL Bar No. 0499072) |
| HERMES LAW LTD. | Kathleen L. Roach (IL Bar No. 6191432) |
| 333 Main Street, Suite 601 | SIDLEY AUSTIN LLP |
| Green Bay, Wisconsin 54301 | One South Dearborn Street |
| (920) 436-9870 | Chicago, Illinois 60603 |
| Fax: (920) 436-9871 | (312) 853-7000 |
|  | Fax: (312) 853-7036 |
|  |  |
| Ronald R. Ragatz  (WI Bar No. 1017501) | J. Ric Gass (WI Bar No. 1011998) |
| DEWITT ROSS & STEVENS S.C. | GASS WEBER MULLINS LLC |
| 2 E. Mifflin Street, Suite 600 | 309 North Water Street |
| Madison, Wisconsin 53703 | Milwaukee, Wisconsin 53202 |
| (608) 255-8891 | (414) 224-7697 |
| Fax: (608) 252-9243 | Fax: (414) 224-6116 |

Dated: May 3, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2010, I electronically filed the foregoing using the ECF system, which will send notification of such filing to: Philip Munroe at DiRenzo & Bomier LLC, pmunroe@direnzollc.com; Scott Fleming at Weiss Berzowski Brady LLP, sbf@wbb-law.com; David Mandelbaum at Greenberg Traurig, LLP, mandelbaumd@gtlaw.com; Marc Davies at Greenberg Traurig, LLP, daviesm@gtlaw.com; Sabrina Mizrachi at Greenberg Traurig, LLP, mizrachis@gtlaw.com; Monique Mooney at Greenberg Traurig, LLP, mooneym@gtlaw.com; Caleb Holmes at Greenberg Traurig, LLP, holmesc@gtlaw.com; Patrick Zaepfel at Kegel Kelin Almy & Grimm, LLP, zaepfel@kkaglaw.com; Philip Hunsucker at Hunsucker Goodstein & Nelson PC, phunsucker@hgnlaw.com; David Rabbino at Hunsucker Goodstein & Nelson PC, drabbino@hgnlaw.com; Christopher Dow at Hunsucker Goodstein & Nelson PC, cdow@hgnlaw.com; Allison McAdam at Hunsucker Goodstein & Nelson PC, amcadam@hgnlaw.com; Eric Mroz at Hunsucker Goodstein & Nelson, P.C, mroz@hgnlaw.com; David Edquist at von Briesen & Roper, s.c., dedquist@vonbriesen.com; Christopher Riordan at von Briesen & Roper, s.c., criordan@vonbriesen.com; Patrick Wells at von Briesen & Roper, s.c., pwells@vonbriesen.com; Russell Wilson at Ruder Ware, rwilson@ruderware.com; Linda Benfield at Foley & Lardner LLP, lbenfield@foley.com; Sarah Slack at Foley & Lardner LLP, sslack@foley.com; Charles Gering at Foley & Lardner LLP, cgering@foley.com; Michelle Gale at Dykema Gossett PLLC, mgale@dykema.com; Joseph Basta at Dykema Gossett PLLC, jbasta@dykema.com; Daniel Murray at Johnson & Bell, Ltd., murrayd@jbltd.com; Garrett Boehm, Jr. at Johnson & Bell, Ltd., boehmg@jbltd.com; Frederick Mueller at Johnson & Bell, Ltd., muellerf@jbltd.com; John Cermak, Jr. at Baker & Hostetler LLP, jcermak@bakerlaw.com; Sonja Inglin at Baker & Hostetler LLP, singlin@bakerlaw.com; Timothy Anderson at Remley & Sensenbrenner, S.C., tanderson@remleylaw.com; Thomas O'Donnell at Calfee Halter &

Griswold LLP, todonnell@calfee.com; William Coughlin at Calfee Halter & Griswold LLP, wcoughlin@calfee.com; Ted Waskowski at Stafford Rosenbaum LLP, twaskowski@staffordlaw.com; Richard Yde at Stafford Rosenbaum LLP, ryde@staffordlaw.com; Meg Vergeront at Stafford Rosenbaum LLP, mvergeront@staffordlaw.com; Lora L. Zimmer at Hinshaw & Culbertson LLP, lzimmer@hinshawlaw.com; William Mulligan at Davis & Kuelthau, s.c., wmulligan@dkattorneys.com; Kevin Lyons at Davis & Kuelthau, s.c., klyons@dkattorneys.com; Tara Mathison at Davis & Kuelthau, s.c., tmathison@dkattorneys.com; Elizabeth Miles at Davis & Kuelthau, s.c., emiles@dkattorneys.com; Thomas Schrimpf at Hinshaw & Culbertson LLP, tschrimpf@hinshawlaw.com; Paul Kent at Anderson & Kent, S.C., pkent@andersonkent.com; Waltraud Arts at Anderson & Kent, warts@andersonkent.com; James P. Walsh at the Appleton City Attorney's Office, jim.walsh@appleton.org; Ian Pitz at Michael Best & Friedrich, LLP, iapitz@michaelbest.com; Allison Swanson at the City of Green Bay, allisonsw@ci.green-bay.wi.us; Ted Warpinski at Friebert, Finerty & St. John, S.C., taw@ffsj.com; S. Todd Farris at Friebert, Finerty & St. John, S.C., stf@ffsj.com; M. Andrew Skwierawski at Friebert, Finerty & St. John, S.C., mas@ffsj.com; Scott Hansen at Reinhart Boerner Van Deuren s.c., shansen@reinhartlaw.com; Steven Bogart at Reinhart Boerner Van Deuren s.c., sbogart@reinhartlaw.com; John Van Lieshout at Reinhart Boerner Van Deuren s.c., jvanlieshout@reinhartlaw.com; David Frank at Reinhart Boerner Van Deuren s.c., dfrank@reinhartlaw.com; Thomas Gottshall at Haynsworth Sinkler Boyd, P.A., tgottshall@hsblawfirm.com; Stephen McKinney at Haynsworth Sinkler Boyd, P.A., smckinney@hsblawfirm.com; William Harbeck at Quarles & Brady LLP, whh@quarles.com; David Strifling at Quarles & Brady, LLP, dstrifli@quarles.com; Nancy Peterson at Quarles &

Brady LLP, nkp@quarles.com; Susan Lovern at von Briesen & Roper, s.c., slovern@vonbriesen.com; Thomas Armstrong at von Briesen & Roper, s.c., tarmstro@vonbriesen.com; Michael P. Carlton at von Briesen & Roper, s.c., mcarlton@vonbriesen.com; Kelly Noyes at von Briesen & Roper, s.c., knoyes@vonbriesen.com; Arthur Foerster at Latham & Watkins LLP, Arthur.Foerster@law.com; Margrethe Kearney at Latham & Watkins LLP, Margrethe.Kearney@lw.com; Mary Rose Alexander at Latham & Watkins LLP, Mary.Rose.Alexander@lw.com; Ernest Getto at Latham & Watkins LLP, Ernie.Getto@lw.com; Karl Lytz at Latham & Watkins LLP, Karl.Lytz@lw.com; Andrea Hogan at Latham & Watkins LLP, Andrea.Hogan@lw.com; Patrick J. Ferguson at Latham & Watkins LLP, Patrick.Ferguson@lw.com; Nathan Fishbach at Whyte Hirschboeck Dudek S.C., nfishbach@whdlaw.com; Jan Conlin at Robins, Kaplan, Miller & Ciresi L.L.P., jmconlin@rkmc.com; Sarah Lindsey at Warner Norcross & Judd LLP, slindsey@wnj.com; Steven Kohl at Warner Norcross & Judd LLP, skohl@wnj.com; Thomas Andreoli at Sonnenschein Nath & Rosenthal LLP, tandreoli@sonnenschein.com; Matthew Adams at Sonnenschein Nath & Rosenthal LLP, madams@sonnenschein.com; Randall Stone at U.S. Department of Justice, randall.stone@usdoj.gov; Joshua Levin at U.S. Department of Justice, joshua.levin@usdoj.gov; Matthew R. Oakes at U.S. Department of Justice, matthew.oakes@usdoj.gov; Perry Rosen at U.S. Department of Justice, perry.rosen@usdoj.gov; Michael Hermes at Hermes Law, Ltd., mlh@hermeslawltd.com; Brandon Evans at Hermes Law, Ltd., bje@hermeslawltd.com; Anthony Steffeck at Hermes Law, Ltd., ajs@hermeslawltd.com; Heidi D. Melzer at Hermes Law, Ltd., hdm@hermeslawltd.com; Dennis Birke at DeWitt Ross & Stevens S.C., db@dewittross.com; Ronald Ragatz at DeWitt Ross & Stevens S.C., rrr@dewittross.com; Megan Senatori at DeWitt Ross & Stevens S.C., ms@dewittross.com; J.

Ric Gass at Gass Weber Mullins LLC, gass@gasswebermullins.com David Turek at Gass Weber Mullins LLC, turek@gasswebermullins.com.

I also hereby certify that on May 3, 2009, I caused a copy of the foregoing to be sent via electronic mail to the following counsel:

>Peter C. Karegeannes
>QUARLES & BRADY LLP
>411 E. Wisconsin Avenue
>Milwaukee, WI 53202
>pck@quarles.com
>*Counsel for WTM I Company*
>
>James E. Braza
>DAVIS & KUELTHAU, S.C.
>111 E. Kilbourn Avenue, Suite 1400
>Milwaukee, WI 53202
>jbraza@dkattorneys.com
>*Counsel for Neenah-Menasha Sewerage Commission*

>NCR CORPORATION
>
>/s/ Kathleen L. Roach
>Kathleen L. Roach (Illinois Bar No. 6191432)
>SIDLEY AUSTIN LLP
>One South Dearborn Street
>Chicago, Illinois 60603
>(312) 853-7000
>Fax: (312) 853-7036