IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. and
NCR CORPORATION,

    Plaintiffs,

    v.

GEORGE A. WHITING PAPER COMPANY, et al.

    Defendants.

No. 08-CV-0016-WCG

**DEFENDANT BROWN COUNTY'S REPLY TO PLAINTIFFS
RESPONSE TO DEFENDANT BROWN COUNTY'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant Brown County, by its attorneys, Michael Best & Friedrich, LLP, presents the following Reply to Plaintiffs' "Response to Defendant Brown County's Proposed Findings of Fact and Conclusions of Law."

**FINDINGS OF FACT**

1. Plaintiffs' claims against Brown County stem from its alleged ownership and operation of disposal sites at Renard Isle and Bay Port. (Eighth Amended Complaint, Dkt. No. 548-2, at ¶¶ 43, 155).

RESPONSE: Undisputed, except to note that Plaintiffs' Motion for Leave to File an Eighth Amended Complaint was denied by this Court. However, the same allegations are found in the Seventh Amended Complaint. *See* Dkt. 265.

    **Reply:** Undisputed.

2. Plaintiffs allege that "Brown County's management of the Bay Port Disposal Site and Renard Isle landfill operations resulted in the release of PCBs into the Lower Fox River Site." (*Id.*, ¶ 155).

RESPONSE: Undisputed, except to note that Plaintiffs' Motion for Leave to File an Eighth Amended Complaint was denied by this Court. However, the same allegations are found in the Seventh Amended Complaint. *See* Dkt. 265.

**Reply:** Undisputed.

3. Any discharges from Bay Port and Renard Isle would have been included as a tiny fraction of the already miniscule percentage the Court previously found to be attributable to Defendants during the post-production period. (See Decision & Order Dismissing Plaintiffs' Claims for Contribution ("Decision & Order"), Dkt. No. 795, p. 38-40).

RESPONSE: Not supported by record evidence cited. First, neither the Bayport disposal facility ("Bayport") nor the Renard Island Confined Disposal Facility ("Renard Island") was mentioned or considered by the Court in rendering its December 16 Order. Second, pages 38 - 40 of the Order deal with other defendants' recycling of post-consumer papers after 1971 and have nothing to do with dredging or disposal of dredged materials. Finally, Brown County has not cited any evidence that PCB discharges from Bayport occurred <u>only</u> after 1971, rendering the reasoning on pages 38 - 40 of the Order inapposite. (Bayport accepted dredged materials from the Lower Fox River Site beginning in the late 1950s). Declaration of Kathleen L. Roach in Support of Plaintiffs May 3, 2010 Filings ("KLR Decl."), Ex. 30 [WDNR Preliminary Green Bay Mass Balance Groundwater Monitoring Report, January 1990, at NCR-FOX-0097406]. Renard Island was developed as a disposal facility in the late 1970s. *Id.*, Ex. 33 [Ten-Year Dredged Material Disposal Plan for Lower Green Bay, Bay-Lake Regional Planning Comm'n, 1983, p. 8727]. Indeed, record evidence shows that Bayport was "not designed to completely isolate dredged materials from the environment." *Id.*, Ex. 34 [Lower Green Bay Remedial Action Plan, Wisconsin Department of Natural Resources ("WDNR"), February 1988, GPFOX00089079, at GPFOX00089211].

**Reply:** Disputed fact is not genuine or material. The Court's December 16, 2009 Order determined that the entire post-production PCB contribution to the Lower Fox River amounted to, at best, 2% of the overall PCB contamination. Dkt. 795. The Bay Port Facility did not exist until the late 1960's (see Plaintiff's response to City of Green Bay's Proposed Findings of Fact at ¶ 5); Renard Isle was not constructed until the late 1970's (see Plaintiff's response to City of Green Bay's Proposed Findings of Fact at ¶ 3). Information, documents and sampling data provided to Plaintiffs during discovery support the conclusion that any discharge from Renard Isle or Bayport would have been a tiny fraction of the 2% post-production contribution. See Defendants' Reply Brief in Support of Summary Judgment Motion at 5-8, 11-15; Pitz Declaration ¶¶ 4-6, Ex. 2-3.

4. There is insufficient evidence to support a conclusion that PCBs have been released from the Bay Port facility to the Lower Fox River Site. (Larscheid Decl., ¶ 3).

RESPONSE: Not supported by record evidence. The Larscheid Declaration does not state there is insufficient evidence, but rather claims "[t]here is *no reason to believe* that PCBs have been released from the Bay Port Facility to the Lower Fox River Site." (Emphasis added). This is not a "fact[] that would be admissible in evidence," and therefore does not provide proper support for this proposed finding. *See* Fed. R. Civ. P. 56(e)(l). Indeed, record evidence shows that releases of PCBs occurred from Bayport. *See, e.g.,* KLR Decl., Ex. 42 [Final Screening Site Inspection Report for the Bayport Industrial Park, 9/23/1993, p. 44 ("[o]bserved releases" of Aroclor 1248 in surface water samples taken from the perimeter ditches that drain the Bayport site)]. Additionally, Plaintiffs note that discovery on such issues was precluded by this Court's Phase I Order. Plaintiffs are therefore unable to present to the Court additional record evidence essential to support their opposition of Brown County's Motion for Summary Judgment without

3

further discovery. *See* 56(f) Declaration of Kathleen L. Roach ("56(f) Decl."), filed concurrently herewith.

**Reply:** Any disputed fact is not genuine or material. Plaintiffs cite to the Final Screening Site Inspection Report for the Bayport Industrial Park, 9/23/1993 at 44 to claim "observed releases" in water samples from Bayport – this claim is not supported by the evidence cited. In fact, the samples in question were sediment samples, not surface water samples. See Dkt 980-39 at 10-13; 44 (Final Screening Site Inspection Report for the Bayport Industrial Park, 9/23/1993). Plaintiffs were given ample opportunity to conduct full discovery on all of the issues relevant to Defendant's Summary Judgment Motion. Although Plaintiffs had the opportunity to depose numerous witnesses, Plaintiffs noticed only one deposition with one Brown County witness and only one deposition with one City of Green Bay witness. Plaintiffs cancelled both depositions, but they did so of their own volition without request from the Municipalities, who were fully prepared to offer their witnesses at the dates and times noticed. Even after the Court's admonishment during its ruling on the City of Green Bay's Motion for Clarification, Plaintiffs never re-noticed or re-scheduled the depositions. Pitz Declaration, ¶¶ 3-6. In fact, Plaintiffs took no further discovery after the Court explicitly informed them they would be bound by the Court's decisions in Phase I. See Defendants' Reply Brief in Support of Summary Judgment Motion at 5-8; Pitz Declaration ¶¶ 3-6, Ex. 1-3. Thousands of pages of sampling data provided to Plaintiffs during discovery generally demonstrate that any discharges from

4

Bayport and Renard Isle resulted in miniscule, if any, discharge of PCB contaminated material into the Lower Fox River. *Id.*

5. Sampling data from the Bay Port facility show insignificant concentrations of PCBs and a 1992 study by the Wisconsin Department of Natural Resources indicated that discharges, if any, from the Bay Port facility were miniscule. (Larscheid Decl., ¶ 3).

RESPONSE: Disputed. Continuing PCB losses from Bayport have been found to be a contributing reason for long-term monitoring requirements in Green Bay. KLR Decl., Ex. 3 [April 30, 2010 Declaration of D. Hayes, ¶¶ 13-14]. WDNR has expressed a concern that Bayport was "not designed to completely isolate dredged materials from the environment." KLR Decl., Ex. 34 [Lower Green Bay Remedial Action Plan, WDNR, February 1988, GPFOX00089079, at GPFOX000892 11]. Further, Brown County Proposed Finding of Fact No. 5 is not supported by the record evidence cited. The Larscheid Declaration does not include or attach any sampling data from the Bayport facility, but instead includes a statement purporting to relay the results of sampling data. This is not a "fact[] that would be admissible in evidence," and therefore does not provide proper support for this proposed finding. *See* Fed. R. Civ. P. 56(e)(1).

> **Reply:** Any disputed fact is not genuine or material. The expert declaration of D. Hayes cites no documents to support any connection between any supposed discharges from the facilities and any long term monitoring requirements of OU5. Conclusory statements by an expert cannot form the basis of a material fact for summary judgment. *Vollmert v. Wisconsin Dept. of Transp.*, 197 F.3d 293, 298-99 (7th Cir. 1999). Extensive water sampling conducted since the 1988 Lower Green Bay Remedial Action Plan, including the 1992 study conducted by WDNR and provided to Plaintiffs during discovery, demonstrates that any discharge from

the Bay Port facility is miniscule. See Defendants' Reply Brief in Support of Summary Judgment Motion at 5-8; Pitz Declaration ¶¶ 3-6, Ex. 1-3.

6. The Army Corps of Engineers owns and operates the Renard Isle facility. (Larscheid Decl., ¶ 4).

RESPONSE: Disputed. Record evidence shows that Brown County owned and/or owns Renard Isle and was involved in its operational aspects. *See, e.g.,* KLR Decl., Ex. 31 [Final Environmental Impact Statement relating to Operation, Maintenance, and Dredging Material Disposal at Green Bay Harbor, Army Corps, November 1977, at 1-11 ("Brown County will retain the title to the filled confined disposal facility, any granted easements or rights-of-way, and must maintain the filled facility in a manner which the Secretary of the Army determines to be satisfactory")]; Ex. 34 [Lower Green Bay Remedial Plan, February 1988, at 27]; Ex. 36 [Brown County Port and Solid Waste Department news release, June 5, 2008]; Ex. 37 [Green Bay Press-Gazette, February 8, 2010]. Additionally, Plaintiffs note that discovery on such issues was precluded by this Court's Phase I Order. Plaintiffs are therefore unable to present to the Court additional record evidence essential to support their opposition of Brown County's Motion for Summary Judgment without further discovery. *See* 56(f) Decl.

> **Reply:** Any disputed fact is not genuine or material. Plaintiffs cite "evidence" that Brown County owns Renard Island; however, the documents Plaintiffs rely on do not constitute legal agreements; they do not expressly grant any authority or ownership rights to any party; and they do not operate to transfer ownership of any property to any party. See Defendants' Reply Brief in Support of Summary Judgment Motion at 8-11. Moreover, Brown County cannot claim ownership over Renard Isle because the Wisconsin Constitution prohibits the ownership transfer of lakebed property -- such property is held in the public trust by the State

of Wisconsin. *Id.*, citing WI Const. Art. IX, sec. 1; *Muench v. Public Serv. Comm'n*, 261 Wis. 2d 492, 53 N.W.2d 514 (1952); *City of Madison v. State*, 1 Wis. 2d 252, 260, 83 N.W.2d 674 (1957); Melissa Scanlan, Comment, *The Evolution of the Public Trust Doctrine and the Degradation of Trust Resources: Courts, Trustees and Political Power in Wisconsin*, 27 Ecology Law Review Quarterly 135, 134, 147 (2004).

7. Brown County's only relationship to that facility is as a local sponsor for the Corps' activities. (Larscheid Decl., ¶ 4).

RESPONSE: Disputed. Record evidence shows that Brown County owned and/or owns Renard Isle and was involved in its operational aspects. *See, e.g.,* KLR Decl., Ex. 31 [Final Environmental Impact Statement relating to Operation, Maintenance, and Dredging Material Disposal at Green Bay Harbor, Army Corps, November 1977, at 1-11 ("Brown County will retain the title to the filled confined disposal facility, any granted easements or rights-of-way, and must maintain the filled facility in a manner which the Secretary of the Army determines to be satisfactory"); Ex. 34 [Lower Green Bay Remedial Plan, February 1988, at 27]; Ex. 36 [Brown County Port and Solid Waste Department news release, June 5, 2008]; Ex. 37 [Green Bay Press-Gazette, February 8, 2010]. Further, WDNR has recognized that "appropriate closure" of Renard Island - including proper capping, monitoring and maintenance - was the responsibility of the Corps and Brown County. *Id.*, Ex. 35 [Record of Decision Amendment, Operable Unit 2 (Deposit DD), Operable Unit 3, Operable Unit 4 and Operable Unit 5 (River Mouth), June 2007, p. 104)].

> **Reply:** See Defendants' Reply to ¶ 6 above, concerning ownership of Renard Island. Moreover, WDNR having "recognized" that appropriate closure of Renard Isle "was the responsibility of the Corps and Brown County" is

7

Case 2:08-cv-00016-WCG   Filed 05/21/10   Page 7 of 17   Document 1012

insufficient to establish as evidence that Brown County had any authority to operate, maintain or control operations at Renard Isle. WDNR is not the agency responsible for administering federally-mandated navigational dredging activities, nor is it responsible for assigning duties pursuant to such activities.

8. Brown County has never manifested other indicia of ownership or control over the facility, such as maintenance or upkeep, which is all administered by the Corps of Engineers. (Larscheid Decl., ¶ 4).

RESPONSE: Disputed. Record evidence shows that Brown County owned and/or owns Renard Isle and was involved in its operational aspects. *See, e.g.,* KLR Decl., Ex. 31 [Final Environmental Impact Statement relating to Operation, Maintenance, and Dredging Material Disposal at Green Bay Harbor, Army Corps, November 1977, at I-II ("Brown County will retain the title to the filled confined disposal facility, any granted easements or rights-of-way, and must maintain the filled facility in a manner which the Secretary of the Army determines to be satisfactory")]; Ex. 34 [Lower Green Bay Remedial Plan, February 1988, at 27]; Ex. 36 [Brown County Port and Solid Waste Department news release, June 5, 2008]; Ex. 37 [Green Bay Press-Gazette, February 8, 2010]. Further, WDNR has recognized that "appropriate closure" of Renard Island - including proper capping, monitoring and maintenance - was the responsibility of the Corps and Brown County. *Id.*, Ex. 35 [Record of Decision Amendment, Operable Unit 2 (Deposit DD), Operable Unit 3, Operable Unit 4 and Operable Unit 5 (River Mouth), June 2007, p. 104).

**Reply:** See Defendants' Reply to ¶¶ 6, 7 above, concerning ownership and control of Renard Island.

9. Plaintiffs had substantial knowledge concerning the toxic nature of the discharged product prior to 1971 and Defendants did not. (Decision & Order, pp. 8-21).

RESPONSE: Disputed and not supported by record evidence cited. In issuing the December 16 Order, the Court did not have evidence relating to Brown County or dredging operations before it, and therefore the Order provides no support for the proposition that Brown County did not have "substantial knowledge concerning the toxic nature of the discharged product prior to 1971." Further, it is disputed that Plaintiffs had any "substantial knowledge" prior to 1971. For example, Monsanto, the manufacturer of PCBs, repeatedly assured customers before 1971 that Aroclors did not represent industrial toxicological problems at normal temperatures. Dkt. 661 ¶ 9. Additionally, prior to the early 1970s, the limited data available on PCBs did not show that PCBs would be an environmental contaminant. *Id.*, ¶¶ 51, 79. Plaintiffs could not have reasonably known prior to 1972 that Aroclor 1242, the only PCB used in the manufacture of NCR Paper, posed environmental risks, as research focused on higher-chlorinated Aroclors. *Id.*, ¶¶ 20, 62, 79, 129-130, 142, 145-146. The federal government only recognized the potential environmental impacts of PCBs in 1972. *Id.*, ¶¶ 132 -141. Published reports in 1972 noted that 75 percent of Aroclor 1242 historically released into the environment would have disappeared by that point. Dkt. 660, ¶ 17, p. 29.

Additionally, Plaintiffs note that discovery on such issues was precluded by this Court's Phase I Order. Plaintiffs are therefore unable to present to the Court additional record evidence essential to support their opposition of Brown County's Motion for Summary Judgment without further discovery. *See* 56(f) Decl.

> **Reply:** Any disputed fact is not genuine or material. The Court's December 16, 2009 Order included an exhaustive review of the facts surrounding the Lower Fox River PCB contamination. The Court found that Plaintiffs possessed specific knowledge of the human health and environmental dangers of PCBs and the

unique opportunity to reduce or control the production and discharge into the environment of PCBs after learning of such dangers. The Court held Plaintiffs decided to at once conceal their knowledge of the danger to avoid bad publicity and to *increase* production of their PCB-containing products. Dkt. 795 at 5-21. The Court dismissed all of the moving Defendants -- including paper recycling mills and other direct dischargers of PCBs -- from this contribution action, based in part on the Defendants' lack of knowledge and fault, but more on the overwhelming evidence of Plaintiffs egregious conduct in light of the potential grave human health and environmental risks. Dkt. 795. Based on information and documents provided to Plaintiffs during discovery, those factors all apply with equal or greater weight to Plaintiffs' claims against Brown County. See Defendants' Reply Brief in Support of Summary Judgment Motion at 5-8; Pitz Declaration ¶¶ 3-6, Ex. 1-3. See Defendants' Reply to ¶ 4 above, concerning Plaintiffs' opportunity to conduct discovery.

10. Brown County had no greater knowledge than the Defendants whose claims have already been dismissed. (Larscheid Decl., ¶ 5).

RESPONSE: Not supported by record evidence cited. The Larscheid Declaration merely claims that "Certainly, Brown County's knowledge concerning PCB contamination would be less than that of the Defendants," with no citations to This is not a "fact[] that would be admissible in evidence, record evidence or other support. " and therefore does not provide proper support for this proposed finding. *See* Fed. R. Civ. P. 56(e)(1). Additionally, Plaintiffs note that discovery on such issues was precluded by this Court's Phase I Order. Plaintiffs are therefore unable to present to the Court record evidence essential to support their opposition of Brown County's Motion for Summary Judgment without further discovery. *See* 56(f) Decl.

10

**Reply:** Any disputed fact is not genuine or material. See Defendants' Reply to ¶ 4 above, concerning Plaintiffs' opportunity to conduct discovery. Information and documents provided to Plaintiffs during discovery provide ample support for the disputed fact. Plaintiffs certainly had the opportunity to depose Mr. Larschied on the issues relevant to Defendant's Summary Judgment Motion.

11. Brown County's Port and Solid Waste Director, Charles J. Larscheid, is familiar with Brown County's documents demonstrating its historical knowledge concerning PCB contamination. He is unaware of any evidence in the documentary record which would support a conclusion that Brown County had knowledge of the toxic effects of PCB contamination, or establish Brown County's alleged role in contributing to the PCB contamination of the Lower Fox River prior to 1971. (Larscheid Decl., ¶ 5).

RESPONSE: It is undisputed that Mr. Larscheid made such statements in the Larscheid Declaration, however Plaintiffs have not had an opportunity to depose Mr. Larscheid because discovery on such issues was precluded by this Court's Phase I Order. Because of this lack of discovery, Plaintiffs dispute this proposed finding. *See* 56(f) Decl.

**Reply:** Any disputed fact is not genuine or material. See Defendants' Reply to ¶ 4 above, concerning Plaintiffs' opportunity to conduct discovery.

## CONCLUSIONS OF LAW

1. Summary judgment is proper under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

RESPONSE: Undisputed.

**Reply:** Undisputed.

2. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

RESPONSE: Undisputed, except to point out that the Supreme Court held that Rule 56 mandates entry of summary judgment on such terms only "<u>after adequate time for discovery</u>." *Celotex Corp.*, 477 U.S. at 322. Here, Plaintiffs' discovery of Brown County has been limited by the Court's Phase I Order, precluding Plaintiffs from collecting and presenting necessary evidence to the Court to defeat Brown County's Motion for Summary Judgment. *See* 56(f) Decl.

> **Reply:** Undisputed. See Defendants' Reply to ¶ 4 above, concerning Plaintiffs' opportunity to conduct discovery.

3. A complete failure of proof on an essential element of a plaintiff's case makes all other facts immaterial. Id. at 323.

RESPONSE: Undisputed that *Celotex* contains that language. However, Plaintiffs note the language in *Celotex* that allows entry of summary judgment only "<u>after adequate time for discovery</u>." *Celotex Corp.*, 477 U.S. at 322. Here, Plaintiffs' discovery of Brown County has been limited by the Court's Phase I Order, precluding Plaintiffs from collecting and presenting necessary evidence to the Court to defeat Brown County's Motion for Summary Judgment. *See* 56(f) Decl.

> **Reply:** Undisputed. See Defendants' Reply to ¶ 4 above, concerning Plaintiffs' opportunity to conduct discovery.

4. A defendant moving for summary judgment satisfies its burden by pointing to the plaintiff's failure to introduce sufficient evidence to support each essential element of the cause of action. *Anderson v. Liberty Lobby, Inc.*, 377 U.S. 242, 256 (1986).

RESPONSE: Undisputed that *Anderson* contains that language. However, Plaintiffs note the language in *Celotex* that allows entry of summary judgment only "<u>after adequate time for discovery</u>." *Celotex Corp.*, 477 U.S. at 322. Here, Plaintiffs' discovery of Brown County has been limited by the Court's Phase I Order, precluding Plaintiffs from collecting and presenting

necessary evidence to the Court to defeat Brown County's Motion for Summary Judgment. *See* 56(f) Decl.

> **Reply:** Undisputed. See Defendants' Reply to ¶ 4 above, concerning Plaintiffs' opportunity to conduct discovery.

5. Summary judgment functions as "'the put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999)).

RESPONSE: Undisputed. However, Plaintiffs note the language in *Celotex* that allows entry of summary judgment only "after adequate time for discovery." *Celotex Corp.*, 477 U.S. at 322. Here, Plaintiffs' discovery of Brown County has been limited by the Court's Phase I Order, precluding Plaintiffs from collecting and presenting necessary evidence to the Court to defeat Brown County's Motion for Summary Judgment. *See* 56(f) Decl.

> **Reply:** Undisputed. See Defendants' Reply to ¶ 4 above, concerning Plaintiffs' opportunity to conduct discovery.

6. Equitable considerations require dismissal of Plaintiffs' claims against Brown County. (See generally, Decision & Order).

RESPONSE: Disputed and not supported by record evidence cited. First, Plaintiffs' discovery of Brown County has been limited by the Court's Phase I Order, precluding Plaintiffs from collecting and presenting necessary evidence to the Court to defeat Brown County's Motion for Summary Judgment. *See* 56(f) Decl. Second, in its December 16 Order, the Court had no evidence concerning Brown County before it, and therefore could not have considered and decided in its order whether "[e]quitable considerations required dismissal of Plaintiffs' claims against Brown County." Finally, exacerbation of existing contamination can serve as the basis

for CERCLA liability, and such cases can result in "something other than a zero allocation." *See e.g., Coeur D'Alene Tribe* v. *Asarco Inc.*, 280 F. Supp. 2d 1094, 1133 (D. Idaho 2003).

> **Reply:** The Court's December 16, 2009 Order included an exhaustive review of the facts and equitable considerations relevant to this case. The Court found the equities overwhelmingly favored the moving defendants and granted summary judgment. Information and documents provided to Plaintiffs during discovery demonstrate that Brown County had no special knowledge of PCB risk and was in no better position than the moving defendants were to prevent or mitigate PCB discharges into the Lower Fox River. See Defendants' Reply Brief in Support of Summary Judgment Motion at 5-8; Pitz Declaration ¶¶ 4-7, Ex. 2-4. By a fortiori reasoning, the Municipalities' must also be granted summary judgment.

7. Brown County is not an owner or operator of the Renard Isle disposal facility. *United States v. Capital Tax Corp.*, 545 F.3d 525, 531 (7th Cir. 2008); WI Const. Art. IX, § 1; *City of Madison v. State*, 1 Wis. 2d 252, 83 N.W.2d 674 (1957); *Meunch v. Public Service Comm 'n*, 261 Wis. 2d 492, 53 N.W.2d 514 (1952).

RESPONSE: Disputed. Evidence collected by Plaintiffs shows that Brown County has had an owner/operator role at Renard Island. *See e.g.,* KLR Decl., Ex. 31 [Final Environmental Impact Statement relating to Operation, Maintenance, and Dredging Material Disposal at Green Bay Harbor, 1977, p. 1-11]; Ex. 37 [Green Bay Press-Gazette, Feb. 8, 2010]; Ex. 34 [Lower Green Bay Remedial Plan, February 1988, at 27]; Ex. 35 [Record of Decision Amendment, Operable Unit 2 (Deposit DD), Operable Unit 3, Operable Unit 4 and Operable Unit 5 (River Mouth), June 2007, p. 104].

Moreover, in *Muench v. Public Service Comm'n*, 53 N.W.2d 514, 518 (Wis. 1952), the court observed that the public trust "extends only to land under the stream of the navigable water so long as such land constitutes part of the bed of the stream, and if the course of the stream is

changed so that such land no longer is part of the river bed, it ceases to be impressed with the public trust." Development and expansion of Renard Island for disposal of dredged materials qualifies as such a change.

Further, Plaintiffs note that discovery on such issues was precluded by this Court's Phase I Order. Plaintiffs are therefore unable to present to the Court record evidence essential to support their opposition of Brown County's Motion for Summary Judgment without further discovery. *See* 56(f) Decl.

> **Reply:** See Defendants' Reply to ¶¶ 7, 8 above, concerning ownership and control of Renard Isle; ¶ 4 above, concerning Plaintiffs' opportunity to conduct discovery.

8. Brown County's contribution to the discharge of contaminating materials, if any, is indistinguishable from that of other responsible parties and cannot be apportioned. As a result, Plaintiffs' contribution claim fails. *Burlington Northern & Santa Fe Railway Co. v. United States*, 129 S. Ct. 1870 (2009).

RESPONSE: Not supported by record evidence. Plaintiffs' discovery of Brown County has been limited by the Court's Phase I Order, precluding Plaintiffs from collecting and presenting necessary evidence to the Court to defeat Brown County's Motion for Summary Judgment. *See* 56(f) Decl.

> **Reply:** See Defendants' Reply to ¶ 4 above, concerning Plaintiffs' opportunity to conduct discovery. Plaintiffs have the burden to demonstrate, based on the record and information obtained in discovery, that Defendants' contribution to the discharge of contaminating materials is distinguishable from that of other responsible parties. Plaintiffs have failed to do so.

9. To the extent any release of PCBs is attributable to Brown County at all, the amount of hazardous waste involved is *de minimis* compared to Plaintiffs' substantial contributions to the problem in the Lower Fox River. (See generally, Decision & Order).

15

RESPONSE: Disputed. First, Plaintiffs' discovery of Brown County has been limited by the Court's Phase I Order, precluding Plaintiffs from collecting and presenting necessary evidence to the Court to defeat Brown County's Motion for Summary Judgment. *See* 56(f) Decl. Second, the record evidence cited does not support a finding that Brown County's PCB discharges are *de minimis*. KLR Decl., Ex. 3 [April 30, 2010 Declaration of D. Hayes, ¶¶ 13-14]. Third, in issuing the December 16 Order, the Court did not have evidence relating to Brown County or dredging-related issues before it, and therefore the Order provides no support for the proposition that Brown County's PCB discharges were *de minimis*. Finally, case law is clear that the significance of a release is not a basis for denying a party's contribution claim. *See Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 659-660 (reversible error for district court to grant summary judgment and deny contribution against a defendant on ground that defendant's releases were *de minimis)*.

> **Reply:** See Defendants' Reply to ¶ 4 above, concerning Plaintiffs' opportunity to conduct discovery and Defendants' Reply to ¶ 5 above, concerning the expert declaration of D. Hayes and sampling data produced during discovery. Although Phase One of this contribution action was limited to Defendants' relative knowledge and fault for PCB contamination, the Court specifically stated that although "volume is not part of the case management order…it's inevitably part of the analysis that I'll make." *See* Transcript of Preliminary Pretrial Conference, Case No. 08-C-16, July 30, 2009 at 25. Defendant Brown County has not asserted that the significance of any alleged release *alone* should justify granting summary judgment, but rather that under the totality of the circumstances, contribution should not be allowed. Such circumstances include: the fact that

Plaintiffs generated the PCBs which contaminated the Lower Fox River, Plaintiffs possessed specific knowledge of the human health and environmental dangers of PCBs and a unique opportunity to reduce or control the production and discharge of PCBs into the environment after learning of such dangers, Plaintiffs made business decisions to conceal their knowledge of the PCB danger to avoid bad publicity, Plaintiffs made business decisions to *increase* production of their PCB-containing products after understanding the potential danger, Municipal Defendants performed but ministerial duties as the "local sponsor" for the construction and filling of confined disposal facilities to be used in conjunction with federally-mandated navigational dredging activities, and that extensive sampling and laboratory test results generally demonstrate that any PCB discharge from the CDFs to the Lower Fox River would be infinitesimally small. See Defendants' Reply Brief in Support of Summary Judgment Motion at 16.

Dated this 21th day of May, 2010.

           Respectfully submitted,

           s/ Ian A. J. Pitz
           David A. Crass, Esq.; SBN 1000731
           Ian A. J. Pitz, Esq.; SBN 1031602
           MICHAEL BEST & FRIEDRICH, LLP
           One South Pinckney Street, Ste. 700
           Madison, WI 53703-4257
           Telephone: (608) 257-3501
           Fax: (608) 283-2275
           Email: dacrass@michaelbest.com
                   iapitz@michaelbest.com

           *Attorneys for Defendant Brown County*