**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | | |
|---|---|---|
| APPLETON PAPERS INC. and | ) | |
| NCR CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-CV-16-WCG |
| | ) | |
| GEORGE A. WHITING PAPER COMPANY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| NCR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-CV-895-WCG |
| | ) | |
| KIMBERLY-CLARK CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION BY
PLAINTIFFS NCR CORPORATION AND APPLETON PAPERS INC.
FOR ENTRY OF PARTIAL FINAL JUDGMENT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 54(b)**
_____

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS .......................................................................................................2

    A.    The November and December 2009 Orders. .....................................................2

    B.    The March 2011 Order...........................................................................................5

    C.    Plaintiffs' Continued Cleanup Efforts. ..............................................................5

    D.    The Governments' Settlements with the *Whiting* Defendants..........................6

    E.    Defendants' Reliance on the December 2009 Order. .......................................9

ARGUMENT .........................................................................................................................10

    A.    Rule 54(b) Certification Is Necessary and Appropriate in the Interest of Fairness. ..............................................................................................................10

    B.    Rule 54(b) Certification Is Appropriate Because Plaintiffs' Claims Are Final and Severable from Defendants' Counterclaims. ...........................................12

        1.    Plaintiffs' Claims Are Legally and Factually Distinct from Defendants' Counterclaims................................................................12

        2.    The November and December 2009 Orders Are Final and Therefore Appropriate for Rule 54(b) Certification. ...........................................13

    C.    There Is No Just Cause to Delay Rule 54(b) Certification. .............................14

CONCLUSION......................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Coopers & Lybrand v. Livesay*,
   437 U.S. 463 (1978).................................................................................14

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
   446 U.S. 1 (1980)..............................................................................10, 11

*Lockett v. Gen. Fin. Loan Co. of Downtown*,
   623 F.2d 1128 (5th Cir. 1980) ...............................................................14

*Marseilles Hydro Power, LLC v. Marseilles Land & Power Co.*,
   518 F.3d 459 (7th Cir. 2008) .................................................................13

*Martin v. Consultants & Adm'rs, Inc.*,
   966 F.2d 1078 (7th Cir. 1992) ...............................................................12

*Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*,
   908 F.2d 1363 (7th Cir. 1990) ...............................................................13

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
   513 F. Supp. 1334 (E.D. Pa. 1981) ...............................................10, 11, 13


**Statutes & Rules**

42 U.S.C. § 9607................................................................................................1

Federal Rule of Civil Procedure 54(b)....................................................... passim

ii

Plaintiffs NCR Corporation ("NCR") and Appleton Papers Inc. ("API") (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Renewed Motion for Entry of Partial Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b) as to the Court's December 16, 2009 Decision and Order Dismissing Plaintiffs' Claims for Contribution (the "December 2009 Order") and the Court's November 18, 2009 Decision and Order Denying Plaintiffs' Motion for Leave to File an Eighth Amended Complaint (the "November 2009 Order"). Plaintiffs' Motion is a renewal of an earlier-filed Rule 54(b) Motion, and is based on the significant change in circumstances that has occurred over the past 15 months.

## PRELIMINARY STATEMENT

Plaintiffs brought this action in January 2008 to recover response costs and damages arising out of the contamination of the Lower Fox River site. Plaintiffs ultimately named 28 defendants, all of whom have been identified by the United States and the State of Wisconsin (the "Governments") as parties that contributed to the contamination of the site. On November 18, 2009, the Court issued an order denying Plaintiffs' motion for leave to file an Amended Complaint asserting claims under Section 107 of CERCLA, 42 U.S.C. § 9607. On December 16, 2009, the Court issued an order on summary judgment that dismissed Plaintiffs' claims under Section 113 of CERCLA, 42 U.S.C. § 9613. The November and December 2009 Orders thus brought final resolution to Plaintiffs' claims. The Court declined to enter partial final judgment on Plaintiffs' claims at that time, but indicated that it would reconsider entry of partial judgment as to the November and December 2009 Orders if Defendants' counterclaims could not swiftly be resolved by dispositive motions.

Following the Court's Order on March 1, 2011 (the "March 2011 Order"), it is now clear that Defendants' counterclaims cannot be resolved by dispositive motions. The March 2011 Order granted in part and denied in part Defendants' motions for summary judgment, identifying disputed questions of material fact with respect to damages amounts and Plaintiffs' purported arranger liability. Resolution of these outstanding issues will require discovery and an evidentiary hearing, which are likely to take an extensive period of time.

As demonstrated below, the unresolved factual disputes arising from Defendants' counterclaims should not further delay Plaintiffs' appeal of the November and December 2009 Orders, which are final and ripe for appeal. NCR and API have continued to incur tens of millions of dollars in cleanup costs that are far in excess of their divisible or equitable share of liability. Meanwhile, numerous Defendants in this case have settled with the Governments in proposed agreements that purport to extinguish Plaintiffs' pending contribution claims, even though Plaintiffs have thus far been unable to appeal. Rule 54(b) certification of the November and December 2009 Orders at this time is both necessary and appropriate given the circumstances of the case. Accordingly, Plaintiffs respectfully request that the Court enter partial final judgment as to the November and December 2009 Orders.

STATEMENT OF FACTS

A.    **The November and December 2009 Orders.**

Plaintiffs filed this action on January 7, 2008, asserting claims under Sections 107 and 113 of CERCLA and the Declaratory Judgment Act for contribution and cost recovery from other potentially liable parties at the Lower Fox River site. (Dkt. #1.) Plaintiffs subsequently filed Amended Complaints that ultimately named a total of 28

2

Defendants, including through consolidation of a related case. (Dkt. #265.) Nineteen of those 28 Defendants filed counterclaims against Plaintiffs, asserting claims under federal, state and common law.[1]

On August 20, 2008, the Court dismissed Plaintiffs' Section 107 claims for cost recovery against all Defendants. (Dkt. #227.) On November 18, 2009, the Court denied Plaintiffs' Motion for Leave to File an Eighth Amended Complaint reasserting their Section 107 claims based upon new legal authority. (Dkt. #548, #751.) On December 16, 2009, the Court dismissed Plaintiffs' Section 113 claims. (Dkt. #795.) The November and December 2009 Orders thus resolved all of Plaintiffs' claims in the *Whiting* action, with no issues on Plaintiffs' claims remaining to be tried.[2]

Plaintiffs moved for Entry of Partial Final Judgment as to the Court's November and December 2009 Orders on January 14, 2010. (Dkt. #803.) In response, the Court requested that Defendants submit scheduling proposals for resolution of Defendants' counterclaims, noting:

> If the remaining proceedings can be resolved *within the vicinity of a half year's time or less*, there would be little reason to chop up the case and create multiple judgments for a piecemeal appeal. If, however, the remainder of the case would last significantly longer than that, the Plaintiffs would have a

---

[1] Cross-claims among Defendants were stayed by stipulation on November 3, 2008. (Dkt. #335.) Defendant Menasha Corporation filed a third-party complaint against the United States, but that claim was also stayed on March 3, 2010. (Dkt. #855.)

[2] The December 2009 Order did not specify whether it applied to all Defendants. The Court has subsequently issued supplemental orders clarifying that the December 2009 Order dismissed Plaintiffs' Section 113 claims against the twelve "*De Minimis*" Defendants, Kimberly-Clark Corporation, the City of Appleton and NewPage Wisconsin System Inc. (*See* Dkt. #850 (the *De Minimis* Defendants except the City of De Pere); #851 (Kimberly-Clark); #854 (City of Appleton); #856 (NewPage); #1055 (City of De Pere).) In the March 2011 Order, the Court dismissed Plaintiffs' claims against the U.S. Army Corps of Engineers based on the reasoning set forth in the December 2009 Order. (Dkt. #1080 at 30-31.) The Court stayed Plaintiffs' claims against Brown County and the City of Green Bay pending resolution of those parties' Proposed Consent Decree. (*Id.* at 28-29.)

3

better argument for entry of a partial judgment immediately. (Dkt. #811 at 2 (emphasis added).)

At the time, Defendants responded that their counterclaims "can easily be decided within six months". (Dkt. #822 at 5; *see also* Dkt. #817 at 2 (City of Appleton concurring with Defendants' six-month estimate); Dkt. #819 at 1 (United States estimating same).)

On February 10, 2010, the Court entered an order denying entry of partial final judgment. However, the Court expressly indicated that Rule 54(b) certification would be appropriate if Defendants' counterclaims could not swiftly be resolved at summary judgment:

> The United States and some of the Defendants have proposed a briefing schedule that would allow the parties to file dispositive motions on the remaining claims. *If such motions do not resolve the remaining claims, they propose that any remaining claims then be stayed so that an appeal may be taken.* This approach allows for the possibility that all claims can be resolved relatively swiftly (i.e., this year), but still affords an "out" – a Rule 54(b) certification and appeal – if the claims cannot. (Dkt. #826 at 3 (emphasis added).)

On March 2, 2010, the Court denied Plaintiffs' request for discovery relating to Defendants' counterclaims, stating in part:

> [In denying the Plaintiffs' motion for partial judgment], I explicitly acknowledged the possibility that discovery would be needed and that the Defendants' claim could *not* be handled as swiftly as they propose. This latter possibility seems to be the genesis of the Plaintiffs' instant motion, and as such the motion will be denied because these concerns have already been accounted for. This is*, if Plaintiffs are right, then the Defendants' claims will not be resolved swiftly (perhaps because they cannot be resolved without extensive discovery) and this Court will deny the Defendants' motions and, in all likelihood, grant the very partial judgment that Plaintiffs are seeking*. In other words, the very concerns Plaintiffs now assert as reasons for modification of the schedule would be grounds for denying the Defendants' motions. (Dkt. #843 at 1 (second emphasis added).)

In an April 14, 2010 Order, the Court reiterated this approach:

> It was not the intent of this Court's scheduling order to have *all* potential claims resolved. The purpose was to allow the Defendants to attempt, relatively swiftly, to have their own contribution counterclaims resolved (or not) on the grounds they

4

proposed. *And if they could not be resolved, then a partial judgment could be entered and the matters decided earlier could be appealed.* (Dkt. #953 at 1 (second emphasis added).)

B.  **The March 2011 Order.**

Now almost 15 months later, Defendants' counterclaims still have not been resolved. On March 1, 2011, the Court granted in part and denied in part Defendants' motions for summary judgment on Defendants' counterclaims. (Dkt #1080.) The Court held, *inter alia*, that "Defendants are entitled to contribution from Plaintiffs for expenses incurred in cleaning up OU2-OU5". (*Id.* at 33.) The Court denied summary judgment with respect to the amount of damages to which Defendants are entitled for cleanup in OU2-OU5, finding that factual questions remain concerning: (i) certain Defendants' insurance recoveries; and (ii) whether certain expenses were necessary or consistent with the National Contingency Plan ("NCP"). (*Id.* at 25-26, 33.) The Court also denied summary judgment with respect to Defendants' expenses in OU1, finding that a determination of Plaintiffs' purported "arranger" liability involves disputed questions of fact. (*Id.* at 9, 33.)

C.  **Plaintiffs' Continued Cleanup Efforts.**

In the numerous months that have passed since the November and December 2009 Orders dismissing Plaintiffs' claims, NCR and API have financed all cleanup efforts at the Lower Fox River site. NCR and API have now spent more than $239 million paying for and directly supervising cleanup efforts. NCR and API formed a limited liability company that contracted with Tetra Tech EC, Inc., to perform dredging and capping work. NCR and API also built a massive remediation facility to manage and treat the dredged materials removed from the river. In-river work began on time in 2009, and more than 1.2 million cubic yards of sediment have been dredged and properly disposed of to date. Even the

5

Governments have admitted that the cleanup is exceeding goals: one of their representatives has stated, "So, needless to say, we are quite pleased.... [G]iven this year's progress, [the cleanup] may be completed a year earl[y]". (Dkt. #997 Ex. 1 at 2, 4.)

Plaintiffs vehemently maintain that the extensive costs they are incurring to fund these efforts exceed Plaintiffs' divisible or equitable share of liability. Notably, even the *Governments' own analysis* has assigned Plaintiffs a 30% volumetric share of the contamination at the site; just 2% higher than the share it attributed to both Georgia-Pacific ("GP") and P.H. Glatfelter. (*See* McAtee Decl. Ex. 3 (2001 Amendola Rep.) at 2.) Nevertheless, Plaintiffs remain the sole PRPs conducting cleanup efforts, and indeed are the *only* PRPs currently complying with the 2007 Unilateral Administrative Order ("UAO") that compels cleanup efforts at the site.

D.    **The Governments' Settlements with the *Whiting* Defendants.**

On appeal, Plaintiffs intend to challenge vigorously the Court's conclusions that Defendants are not liable in contribution to Plaintiffs for the hundreds of millions of dollars that Plaintiffs have been incurring in response costs at the site. However, Plaintiffs' ability to recover those costs on appeal is being increasingly threatened by the Governments' settlements. To date, the Governments have entered into proposed settlements with *16* of the 28 Defendants in this action, including with Defendants that released substantial volumes of hazardous substances into the site. Each proposed settlement purports to grant the Settling Defendants "protection from contribution actions or claims . . . for 'matters addressed' in th[e] Consent Decree" – *i.e.*, to preclude Plaintiffs' contribution claims even before Plaintiffs have had the opportunity to appeal those claims. (No. 10-cv-910, Dkt. #2-1 ¶ 24, #31-1 ¶ 26;

6

No. 09-cv-692, Dkt. #16-1 ¶ 22).  Each does so, moreover, for a disproportionately small amount:

1. *Georgia-Pacific.*  This Court currently has pending before it the Governments' Proposed Consent Decree with GP, a defendant that the Governments have previously estimated is responsible for 23-40% of the contamination at the site.[3]  (*See* McAtee Decl. Ex. 2 (2000 Amendola Rep.) at tbl.4; Ex. 3 (2001 Amendola Rep.) at 2; Ex. 1 (WDNR Rep.) at 1.)  If approved by the Court, the proposed settlement seeks to release GP from liability for the Upper OU4 region of the site where GP's releases *admittedly* caused contamination, and where the Governments expect cleanup to cost almost $282 million.  The proposed settlement also does not require GP to make any contribution at this time to the ongoing work in Lower OU4 and OU5, despite the fact that GP has *conceded its liability for these areas* – areas that the Governments expect will cost some $331 million to remediate.  The proposed settlement further purports to resolve GP's liability for the Governments' past and future costs for the entirety of the river for a one-time payment of $7 million – a mere fraction of the Governments' costs, and a mere fraction of the 23-40% volumetric share that the Governments previously attributed to GP.

2. *The Dredging Parties.*  The Governments have also entered into a Proposed Consent Decree with the U.S. Army Corps of Engineers ("Army Corps"), the City of Green Bay and Brown County (collectively, the "Dredging Parties").[4]  If approved by the

---

[3] Plaintiffs filed public comments in opposition to the GP Consent Decree on November 24, 2010, and filed a brief in opposition to entry of the Proposed Consent Decree on January 31, 2011. (No. 10-cv-910, Dkt. #91).

[4] The Proposed Consent Decree also includes agencies of the United States for their recycling activities.  (No. 10-cv-910, Dkt. #31-1 (Dec. 1, 2010).)  Plaintiffs and numerous Defendants filed public comments in opposition to the Proposed Consent Decree between the Governments and the

Court, that proposed settlement purports to release the settling parties from all liability at the site for a one-time payment of $5.2 million (less than one-half of one percent of the Governments' estimate of the total cleanup costs at the site), with most if not all of those funds being directed to purposes *other* than paying for remediation. The Governments agreed to that share of liability even though substantial evidence shows that the Army Corps engaged in improper practices while dredging the river's navigational channel, including over-dredging (dredging deeper than authorized) and sidecasting (indiscriminately disposing of dredged materials to the side of the navigational channel), creating areas of contamination that otherwise would not have existed and that could cost over $50 million to remediate.

3. *The "De Minimis" Defendants*. In 2009, the Governments also settled with twelve purportedly "*de minimis*" defendants for $2.2 million, or 0.15% of the total costs and damages at the site.[5] That settlement occurred even though (i) the evidence shows that a significant portion of the polychlorinated biphenyl ("PCB") contamination at the Lower Fox River site is due to non-Aroclor 1242 PCBs, which cannot be attributed to the processing of carbonless copy paper ("CCP"); and (ii) there is substantial evidence that at least several of the settling parties released large quantities of such non-Aroclor 1242 PCBs. (*See* No. 09-cv-692, Dkt. #38 at 20, 28.)

---

Dredging Parties on February 25, 2011. A copy of Plaintiffs' comments is filed herewith as Exhibit 4 to the McAtee Declaration.

[5] Plaintiffs filed public comments in opposition to the Consent Decree with the *De Minimis* Defendants on August 21, 2009. Plaintiffs intervened in the settlement action and filed a brief opposing entry of the Proposed Consent Decree on November 2, 2009. (No. 09-cv-692, Dkt. #26; #38; #52.) The district court entered the Consent Decree on December 16, 2009 (*id.*, Dkt. #58), and on April 20, 2010, the court entered an amended Consent Decree that added the City of De Pere (*id.*, Dkt. #77.). Plaintiffs filed a notice of appeal to the Seventh Circuit on June 18, 2010. (*Id.*, Dkt. #81; App. No. 10-2480 (7th Cir).) Briefing on appeal proceeded in the fall of 2010; oral argument was heard on January 12, 2011. A decision is still pending.

The Governments have indicated that they are actively pursuing settlements with other *Whiting* defendants. (*See* Dkt. #819 at 2.)

Significantly, the Governments' proposed settlements have each been submitted for approval by this Court without Plaintiffs having had an opportunity to conduct discovery concerning the Settling Defendants' releases because of the Case Management Order ("CMO") that was entered in this case on September 28, 2008: a case management order that will itself form part of Plaintiffs' appeal. Over Plaintiffs' objection, the CMO limited discovery in the case to focus solely on each party's knowledge of the risk that recycling CCP could result in environmental harm. (*See* Dkt. #252 at 8.) The CMO thus expressly precluded, for example, discovery concerning the volume and nature of the Defendants' releases; the Defendants' continued releases of PCBs after 1971; and the presence of non-1242 Aroclors in the River that are properly attributed to activities other than the processing of CCP – issues that are germane to any settling defendant's liability.[6]

E.    **Defendants' Reliance on the December 2009 Order.**

Since the December 2009 Order was issued, Defendants have relied on that Order as justification to avoid participating in the cleanup, even though six Defendants remain subject to the UAO compelling cleanup at the site. At least one Defendant has also invoked the December 2009 Order to justify the low-dollar amount it is paying in its proposed settlement with the Governments. (*See infra* at 15.) Defendants' improper interpretation and reliance on the December 2009 Order is yet a further example of why Plaintiffs are being prejudiced by their inability to appeal.

---

[6] Plaintiffs also did not have a full and fair opportunity to conduct discovery of the Dredging Parties. *See* Dkt. #983 at 3-4; #988 at 3 (noting that "the Court confirmed [at a preliminary conference] that 'the dredging aspect' of the case 'will not a part of Phase One . . .'").

9

<u>ARGUMENT</u>

A.    **Rule 54(b) Certification Is Necessary and Appropriate in the Interest of Fairness.**

Rule 54(b) provides, in pertinent part, that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay". Fed. R. Civ. P. 54(b).

The underlying purpose of Rule 54(b) is to "reduce the probability that delay will result in substantial hardship and unfairness to the parties in complex multiple-claim actions". *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 513 F. Supp. 1334, 1338 (E.D. Pa. 1981). In deciding whether to enter a Rule 54(b) judgment, the Court may consider, *inter alia*, unfair prejudice to parties who would otherwise have to wait an undue period of time before obtaining relief. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10-11 (1980).

This case presents the precise type of circumstance that Rule 54(b) certification was designed to address. In *Curtiss-Wright*, the Supreme Court approved Rule 54(b) certification of partial final judgment while defendants' counterclaims were pending, so that the plaintiff could immediately receive its monetary award and begin investing that award. The Court reasoned that it would impose an undue economic loss on plaintiff to require it to accept the standard 6% prejudgment interest on its award that would accrue while the remainder of the case was litigated. *Id.* at 10. Here, the potential economic risk to Plaintiffs is much more severe: whereas the plaintiff in *Curtiss-Wright* risked forgoing an advantageous interest rate, further delay in *this* case risks costing Plaintiffs contribution

10

claims worth hundreds of millions of dollars if Plaintiffs succeed on appeal.[7] *See also Zenith Radio*, 513 F. Supp. at 1338 (concluding that "[s]ound judicial administration of this case cries out for resolution of the numerous issues subsumed in our grant of summary judgment before the parties turn their attention to the counterclaims").

The fact that Plaintiffs' contribution claims against Defendants are contingent upon Plaintiffs' successful appeal of the December 2009 Order does not change this conclusion. In *Curtiss-Wright*, the Court approved Rule 54(b) certification even though plaintiff's risk of economic loss was only a potential risk because plaintiff's award was subject to potential set-off by defendants' pending counterclaims. *Curtiss*, 446 U.S. at 11-12.

Rule 54(b) certification is particularly appropriate here because the posture of the case puts Plaintiffs in an inescapable Catch-22. As discussed above, Plaintiffs have been foreclosed from taking necessary discovery on the key issues relevant to the proposed settlements, including the volume and nature of Defendants' releases of PCBs to the site, and the presence at the site of non-1242 Aroclor PCBs that cannot possibly be attributed to the processing of CCP. (*See supra* at 9.) On appeal, Plaintiffs intend to challenge the limited discovery and theory of liability upon which Plaintiffs' contribution claims were dismissed. But in the interim, Plaintiffs have been unable to fully contest the terms of the Governments'

---

[7] Plaintiffs contend that the Governments' proposed settlements, if approved, would effect an unconstitutional taking without just compensation of Plaintiffs' vested property interest in their contribution claims. *See* NCR and API Opp'n to GP Consent Decree at 21-25 (No. 10-cv-910, Dkt. #91.) Nevertheless, if Plaintiffs are unsuccessful in this argument, they risk losing the value of their contribution claims as a consequence of never having been able to obtain final judgment on those claims before the Government settlements were entered.

settlements because of the limited scope of discovery.[8]  Plaintiffs thus find themselves in a

no-win situation, unable to adequately dispute the proposed consent decrees, but purportedly

foreclosed by the terms of those very settlements from *ever* fully pursuing, or appealing, their

claims against the settling Defendants.  Such an arrangement is intrinsically unfair, and can

be remedied only by immediate entry of partial final judgment so that Plaintiffs may proceed

with their appeal.[9]

      **B.**      **Rule 54(b) Certification Is Appropriate Because Plaintiffs' Claims Are Final and Severable from Defendants' Counterclaims.**

Entry of a Rule 54(b) judgment is appropriate when (1) "the action involves

separate claims"; (2) "there is a final decision as to at least one of these claims"; and

(3) "there has been an express – and proper – determination that there is no just reason for

delay".  *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1083 (7th Cir. 1992).  All

three requirements are met with respect to the November and December 2009 Orders.

      **1.**      *Plaintiffs' Claims Are Legally and Factually Distinct from Defendants' Counterclaims.*

As the Court recognized when it first considered Plaintiffs' original motion

for Rule 54(b) certification, Plaintiffs' claims are legally and factually distinct from

Defendants' counterclaims.  Plaintiffs' claims seek to recover costs that *Plaintiffs* have

incurred in connection with the Lower Fox River site.  (Dkt. #265.)  By contrast, Defendants'

counterclaims seek contribution for costs and payments *by Defendants.*  Defendants'

---

[8]  Plaintiffs have repeatedly called attention to this error in their oppositions to the Government consent decrees. *See, e.g.*, Plaintiffs' Opp'n to *De Minimis* Consent Decree at 28 (No. 09-cv-692, Dkt. #38); Plaintiffs' Opp'n to GP Consent Decree at 10, 24 (No. 10-cv-910, Dkt. #91).

[9]  The significant prejudice to Plaintiffs should also be remedied by denying the two Government settlements that have not yet been approved:  the GP Consent Decree (No. 10-cv-910, Dkt. #75) and the Dredging Parties Consent Decree (No. 10-cv-910, Dkt. #31).

12

counterclaims raise numerous factual issues that have yet to be resolved, including (i) the extent to which insurance recoveries limit the amount of damages that Defendants can recover; (ii) whether certain Defendants' expenses were necessary and incurred in a manner consistent with the NCP; and (iii) whether Plaintiffs are liable as arrangers for the costs incurred in OU1. These factual questions raise distinct issues that are entirely separate from the dismissal of Plaintiffs' contribution claims in the November and December 2009 Orders.[10]

Because Defendants' counterclaims raise separate factual issues than Plaintiffs' claims, the claims are separable for purposes of Rule 54(b) certification. *See Marseilles Hydro Power, LLC v. Marseilles Land & Power Co.*, 518 F.3d 459, 464 (7th Cir. 2008) ("Even if two claims arise from the same event or occurrence, they may be separable for Rule 54(b) purposes if they rely on entirely different legal entitlements yielding separate recoveries"); *see also Zenith Radio*, 513 F. Supp. at 1338 (finding that "counterclaims are factually and legally distinct from plaintiffs' claims, [even] though there are a number of factually overlapping issues between the claims dismissed this day and the counterclaims"); *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1368 (7th Cir. 1990) (Rule 54(b) judgment permitted where "the claims are legally distinct and involve at least some separate facts").

    2.    *The November and December 2009 Orders Are Final and Therefore Appropriate for Rule 54(b) Certification.*

A decision concerning a claim is "final" if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" entered on that claim.

---

[10] The December 2009 Order explicitly "[left] aside the unanswered question of arranger liability". (Dkt. #795 at 23 n.20.)

13

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978); *see Lockett v. Gen. Fin. Loan Co. of Downtown*, 623 F.2d 1128, 1130 (5th Cir. 1980) (approving Rule 54(b) certification where district court's denial of motion to amend "effectively terminate[d]" plaintiff's claim). Here, there can be no question that the Court's November and December 2009 Orders amount to "final" decisions for purposes of Rule 54(b). The Court's November 2009 Order denied Plaintiffs leave to amend the complaint to file a Section 107 claim against Defendants. The Court's December 2009 Order dismissed Plaintiffs' Section 113 claims, holding that "Plaintiffs are not entitled to recover from the Defendants for their costs incurred in cleaning up [PCBs in the Lower Fox River]". (Dkt. #795 at 47.) The November and December 2009 Orders thus "end[ed] the litigation" of Plaintiffs' claims: there are no damages to determine, and no further steps to take before entry of final judgment as to those claims.

C.      **There Is No Just Cause to Delay Rule 54(b) Certification.**

Because Plaintiffs' claims are distinct and several from Defendants' unresolved counterclaims, there is no just cause to delay certification of the November and December 2009 Orders so that Plaintiffs may finally appeal the dismissal of their claims. Indeed, the current circumstances present the exact scenario that the parties and the Court foresaw when Plaintiffs first moved for Rule 54(b) certification of the November and December 2009 Orders, when the Court expressly contemplated that Rule 54(b) certification would be appropriate if Defendants' counterclaims could not swiftly be resolved within six months. (*See supra* at 4.)

Failure to finally grant partial final judgment at this time would substantially harm Plaintiffs in at least three ways. *First*, as discussed above, Plaintiffs' ability to recover their contribution costs is being threatened by the Governments' proposed settlements, which

14

purport to foreclose Plaintiffs' ability *ever* to recover in contribution the extensive costs that Plaintiffs are incurring at the Lower Fox River Site.

*Second*, despite the fact that the December 2009 Order has not yet been certified by this Court as final, numerous defendants are using that Order as a justification to avoid their legal obligation to participate in the cleanup as required by the UAO. As recently as last month, GP argued to this Court that the December 2009 Order provided a justification for GP to no longer fund cleanup efforts at the site. (*See* No. 10-cv-910, Dkt. #103 at 5 ("After this Court's December 16, 2009 Decision and Order denying NCR/API's contribution claims, GP understandably ceased funding the NCR/API dredging efforts").) Defendants' improper interpretation of the December 2009 Order to avoid participating in the cleanup causes continuing prejudice to NCR and API, who are currently the sole PRPs conducting cleanup at the Site. The defendants' interpretation of the December 2009 Order is also directly at odds with the Enforcement Action brought by the government in *United States v. NCR Corp., et al.*, 10-cv-910 (E.D. Wis. 2010), which seeks to require six of the defendants in this case to comply with their cleanup obligations under the UAO.

*Third*, GP has also invoked conclusions in the December 2009 Order as support for its low-value settlement with the Governments, despite the fact that those conclusions are contested and will be the subject of appeal. In its brief in support of its Proposed Consent Decree, GP argues that its continued release of PCBs after 1971 should not increase its share of liability because this Court concluded, in the December 2009 Order, that discharges of PCBs after 1971 were "*de minimis*". (No. 10-cv-910, Dkt. #103 at 6-7.) The issue of post-1971 releases was a much-contested fact that was not the subject of

15

discovery.[11] GP's reliance on a hotly disputed aspect of the December 2009 Order is yet a further example of why Plaintiffs are being prejudiced by their inability to appeal.

These matters must be addressed without delay, and without causing further prejudice to Plaintiffs by requiring them to wait for the remaining issues resulting from the March 2011 Order to be resolved.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Renewed Motion for Entry of Partial Final Judgment as to the November and December 2009 Orders.

Dated:  March 25, 2011                          Respectfully submitted,


APPLETON PAPERS INC.                   NCR CORPORATION

/s/ Ronald R. Ragatz                           /s/ Evan R. Chesler

*Counsel for Appleton Papers Inc.*         *Counsel for NCR Corporation*

HERMES LAW LTD.                          CRAVATH, SWAINE & MOORE LLP
Michael L. Hermes                             Evan R. Chesler
333 Main Street, Suite 601                   Sandra C. Goldstein
Green Bay, Wisconsin  54301               Darin P. McAtee
Phone: (920) 436-9870                         Worldwide Plaza, 825 Eighth Avenue
Fax: (920) 436-9871                            New York, New York 10019
rrr@dewittross.com                             Phone: (212) 474-1000
                                                      Fax: (212) 474-3700
                                                      echesler@cravath.com

---

[11]  The Court indeed recognized that Defendants' releases after 1971 had not been the subject of discovery, and thus granted Plaintiffs' Motion for a Determination that the "98 Percent" Statement in the Records of Decision is Not Binding on the Court.  (*See* Dkt. #550 (Motion), #552 (Brief), #795 at 39, 47 & n.29 (December 2009 Order).)

16

DEWITT ROSS & STEVENS S.C.
Ronald R. Ragatz
2 E. Mifflin Street, Suite 600
Madison, Wisconsin 53703
Phone: (608) 255-8891
Fax: (608) 252-9243

SIDLEY AUSTIN LLP
Kathleen L. Roach
Evan B. Westerfield
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601

17

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2011, I electronically filed the

Memorandum of Law in Support of the Renewed Motion by Plaintiffs NCR Corporation and

Appleton Papers Inc. for Entry of Partial Final Judgment Pursuant to Federal Rule of Civil

Procedure 54(b) using the ECF system, which will send notification of such filing by

operation of the Court's electronic systems. Parties may access this filing via the Court's

electronic system.

_/s/ Evan R. Chesler_
Evan R. Chesler
