IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. and
NCR CORPORATION,

     Plaintiffs,

  v.            No. 08-CV-16-WCG

GEORGE A. WHITING PAPER
COMPANY, *et al*.,

     Defendants.

## MEMORANDUM OF PLAINTIFF APPLETON PAPERS INC. IN SUPPORT OF MOTION TO RECONSIDER THE COURT'S CONCLUSION THAT API'S LIABILITY UNDER CERCLA IS UNCONTESTED

Plaintiff Appleton Papers Inc. ("API"), through its undersigned counsel, submits this Memorandum In Support Of Motion To Reconsider The Court's Conclusion That API's Liability Under CERCLA Is Uncontested.

### INTRODUCTION

In the March 1, 2011 Decision and Order (Dkt. 1080) ("Decision"), the Court stated that API's liability under CERCLA § 107 for the OU2-5 portions of the river is not contested:

> **Plaintiff NCR is the successor to ACPC and Combined Paper Mills, Inc.,** the past owners of the Appleton and Combined Locks plants, which are located in OU2, the span of the river between Little Lake Butte des Morts and the lower section of the De Pere portion of the river. These facilities discharged PCBs into OU2 as a result of the production of carbonless copy paper, and these PCBs flowed down river from OU2 into the rest of the Lower Fox River Site (apart from OU1, which is upstream). **As such, Plaintiffs' liability under § 107 for the OU2-5 portions of the river is not contested.**

Decision, Dkt. 1080, p. 14 (emphasis added). There is no other portion of the 34-page Decision that elaborates on or justifies this conclusion. Respectfully, the Court's statement in the Decision that API is not contesting liability is incorrect.

API has consistently denied that it has liability under CERCLA. API included these denials in its answers to counterclaims, responses to proposed findings of fact, and arguments to the Court. API is also contesting its CERCLA liability to the Government in the recently-filed government enforcement action, *United States of America, et al. v. NCR Corporation, et al.,* Eastern District of Wisconsin Case No. 10-CV-00910-WCG (hereafter "*US v. NCR*"), where API finally will have the right to directly challenge the Governments' allegations that API is liable under CERCLA. 42 U.S.C. § 9613(h).

There is abundant evidence in the *Whiting* record to conclude that Defendants have not met their summary judgment burden on the issue of API's liability under CERCLA. It is undisputed that API did not own or operate the former Appleton Coated Paper Company ("ACPC") or Combined Paper Mills plants until seven years after the use of PCBs in carbonless copy paper ("CCP") had ceased. It is likewise undisputed that API acquired those plants through an arms-length purchase of assets from NCR and that NCR remains in existence today. These and other facts support API's denial that it is a successor to ACPC, Combined Paper Mills, Inc., or NCR with respect to Fox River liabilities. Without such a finding, API can have no liability in this matter or in *US v. NCR*.

Accordingly, API respectfully asks the Court to reconsider its conclusion that API has not contested its liability under CERCLA and, instead, to state that API's CERCLA liability remains an open issue. API further asks that, since proof of CERCLA liability is essential to a contribution claim, the Court modify its Decision to deny the summary judgment motions against API.

## STANDARD FOR RECONSIDERATION

The Decision does not dispose of all issues as to all claims and parties and, thus, is not final for purposes of an appeal as a matter of right. As such, the Decision "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also, Acme Printing Ink Co. v. Menard, Inc.,* 891 F. Supp. 1289, 1295 (E.D. Wis. 1995) (granting a motion for reconsideration of a non-final summary judgment decision in a CERCLA case pursuant to Fed. R. Civ. P. 54(b)). Reconsideration is an appropriate device to correct manifest errors at the district court level. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Reconsideration motions serve a valuable function where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Id.* (quoted case omitted). This motion addresses such a situation where the Court has overlooked API's position.[1]

---

[1] API believes there are other errors in the Decision that are not simply a matter of misunderstanding or misapprehension, but of reasoning. API reserves its rights as to all such issues.

- 3 -

## LAW AND ARGUMENT

**I.     API HAS CONSISTENTLY CONTESTED CERCLA LIABILITY.**

API has consistently disputed its CERCLA liability in its answers to Defendants' counterclaims, responses to proposed findings of fact, and arguments, including, most recently, at the September 1, 2010, oral argument on Defendants' summary judgment motions.

Plaintiffs filed this action in January 2008 and a number of Defendants filed counterclaims alleging that Plaintiffs, including API, are liable under CERCLA. API consistently denied those allegations in its Answers. *See, e.g.,* Dkt. 351, ¶¶ 8, 15; Dkt. 348, ¶¶ 6, 13; Dkt. 338, ¶¶ 9-14; Dkt. 337, ¶ 14; Dkt. 334, ¶¶ 29, 34; Dkt. 318, ¶ 7; Dkt. 317, ¶ 7; Dkt. 319, ¶ 7; Dkt. 316, ¶ 3. API specifically denied allegations that it is liable as a successor:

> 22.     Plaintiff and Counter-defendant API is a successor to all relevant liabilities of ACPC and Appleton Papers arising out of the ownership and operation of the Appleton Facility and the Combined Locks Facility.
>
> **ANSWER:**  API and NCR deny the allegations in Paragraph 22.

Dkt. 348, ¶ 22 (emphasis original); *see also,* Dkt. 351, ¶ 23.

Moreover, it is undisputed that API is not in the corporate line of the two companies that used PCBs in making CCP, ACPC and Combined Paper Mills, Inc. Those companies merged into Appleton Papers, Inc. (with a comma – a different corporation than API). The merged entity, Appleton Papers, Inc., was then merged into NCR Corporation. Dkt. 987, ¶¶ 4-9 (Resp. to GP's Stmt. of Undisputed Facts). That is where the relevant corporate line ended, as NCR remains in existence today.

API is in a different corporate line with different ownership. Dkt. 987, ¶ 11. It is undisputed that API did not begin doing business until July 1978, seven years *after* the use of PCBs in making CCP had ceased. At that time, API bought assets (not stock) from NCR that included the plants once operated by ACPC and Combined Paper Mills, Inc.

In the spring of 2010, when Defendants filed motions for summary judgment on their counterclaims, they submitted proposed findings of fact asserting that API is liable under CERCLA and that it is a successor to ACPC, Combined Paper Mills, Inc., and/or NCR by virtue of the 1978 Purchase and Sale Agreement ("1978 Agreement"). API expressly disputed each such proposed finding of fact:

> 27. In 1978, API assumed the liabilities of NCR's Appleton Papers Division.
>
> **RESPONSE: Disputed…**
>
> 28. At the time of the 1978 assumption of liability by API, it was well aware of PCB contamination arising out of the former operations of ACPC and Combined Locks.
>
> **RESPONSE: Disputed…**
>
> 29. By operation of law, by contract or both, NCR and API both are legally liable under CERCLA for the release of hazardous substances by ACPC or Combined Locks to the Lower Fox River.
>
> **RESPONSE: Disputed...**

Dkt. 1004, ¶¶ 27-29 (Resp. to Menasha Corp.'s Stmt. of Undisputed Facts) (citations omitted) (emphasis added); *see also,* Dkt. 987, ¶¶ 19-20 (also denying API assumed CERCLA liability in the 1978 Agreement). In each such instance, after specifying that the assertion was "disputed," API also specifically stated that Defendants' allegations regarding API's liability were inaccurate, unsupported by the record evidence cited, and vigorously disputed by API. *Id.*

Further, API explained in its briefing that it played no role in contaminating the Lower Fox River with PCBs:

> API did not come into existence until seven years after the use of Aroclor 1242 in CCP had ceased. It has been judicially determined that API itself did not contribute in any way to the PCB contamination in the Fox River. (PFF, ¶ 20).

Dkt. 966, p. 14-15 (Resp. to Menasha Corp.'s S.J. for Decl. Relief); *see also*, Dkt. 968, ¶ 20 (Proposed Findings of Fact); Dkt. 981, Ex. 2, p. 2 (Order in *Columbia Cas. Co. v. Arjo Wiggins P.L.C.*, Brown County Case No. 05-CV-36 (Dec. 31, 2007) (The Honorable Donald R. Zuidmulder holding that "It is undisputed that API did not commit any acts that caused PCB contamination of the Fox River or Green Bay."). Accordingly, Defendants merely relied upon their unproven allegations that API had successor liability, allegations which API disputed. Defendants provided no analysis or explanation of their successor liability theory and failed to identify any provisions of the 1978 Agreement that they claimed to be an express assumption of CERCLA liability by API.

In a reply brief, certain Defendants tried to rely on the outcome of an agreed arbitration between NCR, API, and BAT to support a successor liability claim. Dkt. 1042, pp. 9-10 of 20 (Menasha Corp.'s Reply on S.J. Decl. Relief). However, at oral argument, counsel for API reiterated that API disputes any liability, including successor liability, and directly addressed Defendants' argument about the arbitration:

> The third point that I'd like to make today is that Menasha goes out of its way in its brief to have joint and several liability against both NCR and API for 100 percent of future costs. It's an element they have to establish in order to get future costs; however, the general rule as cited in our brief is that there is no joint and several liability. And thus, the Defendants have to prove that both API and NCR are jointly and severally liable for the CERCLA liabilities of the discharges to the river, those being Appleton Coated Paper and Combined Paper Mills. Those are the persons who discharged PCBs, and those are the persons who have liability.

- 6 -

> Defendants, on this record, haven't met this burden. **They've set forth no case law on the topic. They merely state that API contractually assumed the liabilities associated with the assets of the Appleton Papers NCR Division. It did not. Merely purchasing the assets does not lead to successor liability. In fact, the <u>North Shore Gas</u> case from the Seventh Circuit says exactly that.**
>
> **Menasha attempts, through the 2005 arbitration agreement, to cast its web to catch both API and NCR, but a close examination of the 2005 arbitration agreement does not establish who was the successor to either ACPC or Combined Paper Mills. It just says that as between API and NCR, 60 percent of the damage gets paid by API, and 40 percent gets paid by NCR. But it does not establish conclusively who bears the successor liability and who is the responsible party under CERCLA.**
>
> **So on this record, the Defendants have not established to you who bears the CERCLA liability, either NCR or API. And I would submit to you it would be virtually impossible to say it's API, a company who did not come into existence until June 30, 1978, and who, if it did not assume the CERCLA liabilities under the 1978 purchase agreement, could not be a liable party and cannot then have a judgment against it for future costs.**

Dkt. 1074, pp. 86-88 (S.J. Motions Transcript of 9/1/10) (emphasis added).

As shown above, API consistently has denied that it has CERCLA liability both generally and specifically in response to allegations that it is liable under CERCLA as a successor. There is no analysis of that dispute in the Decision. Instead, in the single paragraph dealing with liability for the OU2-5 portions of the site, the Court begins by stating that "Plaintiff NCR is the successor to ACPC and Combined Paper Mills, Inc., the past owners of the Appleton and Combined Locks plants" which discharged PCBs. Decision, Dkt. 1080, p. 14. The Court then concludes, "[a]s such, Plaintiffs' liability under § 107 for the OU2-5 portions of the river is not contested." *Id*. There is no articulated nexus between the premise (that NCR is successor to ACPC and Combined Paper Mills, Inc.) and the conclusion that the liability of Plaintiffs (plural) is not contested. There is no specific reference to whether API has liability and no discussion or analysis of Defendants' successor liability allegations against API anywhere in the Court's 34-page Decision.

API's denial of liability was overlooked by the Court, which is the kind of mistake that should be addressed in a motion for reconsideration. Reconsideration is crucial because proof of liability is necessary before Defendants can obtain summary judgment against API on their CERCLA contribution claims.

As shown above, API has contested its liability. Moreover, the record, construed in the light most favorable to API as the non-moving party, does not support the conclusion that API is, in fact, liable under CERCLA. Accordingly, the Court's conclusion that API's CERCLA liability "is not contested" should be removed from the Decision and the Court should state that API's liability remains a contested issue.

## II.  DEFENDANTS FAILED TO MEET THEIR SUMMARY JUDGMENT BURDEN TO PROVE AS A MATTER OF LAW THAT API IS LIABLE UNDER CERCLA.

### A. Defendants Bear The Burden Of Proving API's CERCLA Liability.

As this Court explained in its Decision, a party seeking contribution bears the burden of proving the CERCLA liability of the party against whom liability is sought:

> Thus, **if Plaintiffs are not arrangers and if they lack any other kind of liability for OU1 damages under § 107, there would seem to be no basis upon which the Defendants could obtain contribution.** Of course the Defendants argue that this § 113 proceeding is not the proper forum to address the Plaintiffs' liability, and that appeared to be true with respect to the *Plaintiffs'* own contribution action against the Defendants. But now that the Defendants are seeking contribution from the Plaintiffs, they have not provided any authority upon which I could base a contribution award when none of the § 107 types of liability apply (assuming they cannot show arranger liability). . . . **In sum, if Plaintiffs are not owners, operators, arrangers, disposers, etc.,** *see* **42 U.S.C. 9607(a), I am satisfied that they cannot be deemed liable for contribution, and Defendants have not provided any authority to the contrary.**

Decision, Dkt. 1080, pp. 11-12 (bold emphasis added; italics original). While the Court was specifically addressing OU1, the principle that CERCLA liability is a prerequisite to a judgment for contribution applies to the whole site. The Court's ruling that the party seeking contribution has the burden of proving that the party against whom contribution

- 8 -

is sought is a responsible party under CERCLA is consistent with case law.[2] *See, e.g., Elementis Chromium L.P. v. Coastal States Petroleum Co.*, 450 F.3d 607, 612 (5th Cir. 2006). Defendants concede this point (Dkt. 670, p. 17 of 38 (Certain Defendants' Opposition to S.J. on Phase I)) ("Courts describe contribution actions as a two-step process, whereby after liability is established, courts may then consider all relevant factors in allocating response costs among PRPs."). Defendants did not, however, establish API's liability under CERCLA.

Finally, since Defendants have proceeded on motions for summary judgment, the Defendants' burden of proof is overlain by the summary judgment burden. Defendants must establish that there is no genuine issue of material fact and that, construing all evidence and inferences in the light most favorable to API, they are entitled to judgment as a matter of law. *Celotex Corp. vs. Catrett*, 477 U.S. 317, 330 n.2 (1986). Defendants clearly failed to meet their burden.

There is abundant evidence in the record that, at a minimum, creates an unresolved issue as to whether API has CERCLA liability. It is undisputed that the use of PCBs in making CCP ceased in 1971. Dkt. 987, ¶ 1 (Resp. to GP's Stmt. of Undisputed Facts). Throughout the time that PCBs were used in CCP, the Appleton plant was owned and operated by ACPC.[3] Dkt. 987, ¶ 6. Likewise, throughout the time that PCBs were used in CCP, the Combined Locks plant was owned and operated by

---

[2] Further, a claimant seeking contribution against more than one party has the burden of proving a basis for joint and several liability or proving the several liability of each party against whom contribution is sought. *Elementis Chromium,* 450 F.3d at 612; *Minyard Enters., Inc. v. Se. Chem. & Solvent Co.,* 184 F.3d 373, 385 (4th Cir. 1999). Thus, Defendants not only had the burden of proving API's liability, but also the burden of either proving a several share for API or proving a basis for joint and several liability against API and NCR, which is not the norm in a § 113 action. *Elementis*, 450 F.3d at 612-613. However, as API explained in its briefing, Defendants have "not even attempted to meet their burden for imposing 100% equitable allocation jointly and severally on NCR and API." Dkt. 966, p. 14.

[3] In September 1970, NCR acquired the stock of ACPC, but ACPC continued as a separate corporate entity (a wholly owned subsidiary) throughout the time PCBs were used in CCP. Dkt. 987, ¶ 6.

- 9 -

Combined Paper Mills, Inc.[4]  Dkt. 987, ¶ 4.  Through a series of corporate transactions, those two companies were eventually merged into NCR.  Dkt. 987, ¶¶ 7, 9.

API did not begin doing business until July 1978 and, thus, had no involvement with the Appleton and Combined Locks plants when PCBs were used at those plants prior to April 1971.  A company named "Lentheric, Inc.," a subsidiary of B.A.T. Industries, p.l.c., acquired the Appleton and Combined Locks plants in an asset purchase from NCR on June 30, 1978 and then changed its name to "Appleton Papers Inc." (no comma), the Plaintiff in this action.  Dkt. 987, ¶ 11.  The 1978 Agreement does not make any reference to Fox River liabilities, CERCLA liabilities, or PCBs.  Dkt. 938, Attachment 3, Ex. 23 (the 1978 Agreement).  NCR continued to exist after the 1978 transaction and remains in existence today.[5]

### B. Defendants Did Not Meet Their Burden Of Proof That API Has Successor Liability.

#### 1. The General Rule Is That An Asset Purchaser Does Not Succeed To The Liabilities Of The Seller.

The general rule is that an asset purchaser does not succeed to the liabilities of the asset seller, subject to four traditional bases for imposing successor liability on an asset purchaser:

> The general rule is that an asset purchaser . . . does not acquire the liabilities of the seller.  There are, however, four exceptions to this general rule:  (1) the purchaser expressly or impliedly agrees to assume the liabilities; (2) the transaction is a de facto merger or consolidation; (3) the purchaser is a "mere continuation" of the seller; or (4) the transaction is an effort to fraudulently escape liability.

---

[4] Combined Paper Mills, Inc. was acquired by NCR in September 1969, but, likewise, continued to operate as a separate corporate entity (a wholly owned subsidiary) throughout the time PCBs were used in CCP.  Dkt. 987, ¶ 4.

[5] API takes no position on whether Defendants established a basis for NCR to be liable under CERCLA.  Defendants certainly, however, have not taken the next step of showing that API, a separate and distinct corporation that purchased assets (not stock) from NCR in 1978, is liable under CERCLA.

*North Shore Gas Co. v. Salomon Inc.,* 152 F.3d 642, 651 (7th Cir. 1998), *overruled on other grounds, Envision Health Care Inc. v. PreferredOne Ins. Co.,* 604 F.3d 983 (7th Cir. 2010); *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 439 (7th Cir. 1977).

### 2. Successor Liability Generally Does Not Apply Where The Asset Seller Continues In Existence As A Viable Company.

In *North Shore Gas,* the Seventh Circuit stated that "while CERCLA permits successor liability, it does not require it unless justified by the facts of each case." 152 F.3d at 650 (internal quotations and citation omitted). The court noted that "[s]uccessor liability is an equitable doctrine, not an inflexible command…" *Id.* (quoted source omitted). In a previous case, the Seventh Circuit explained that it would be grossly unfair to impose liability on an asset purchaser when the seller is capable of providing relief:

> **The successor doctrine is derived from equitable principles, and it would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief** or when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower price.

*Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 750 (7th Cir. 1985) (emphasis added).

Where the predecessor (asset seller) is a viable company, there is no equitable reason to impose liability on a buyer. For example, in *Durham Manufacturing Co. v. Merriam Manufacturing Co.,* 294 F. Supp. 2d 251, 273-74 (D. Conn. 2003), the court refused to impose CERCLA successor liability where the seller continued to exist as a viable entity. Similarly, in *United States v. Mexico Feed & Seed Co.*, 980 F.2d 478, 490 (8th Cir. 1992), the court refused to impose CERCLA liability on an asset purchaser where the asset seller continued to be a viable entity because:

> . . . the very concern animating the doctrine of corporate successor liability – that the corporate veil thwart plaintiffs in actions against corporations which have sold their assets and distributed the proceeds – is not present.

The public policies underlying the imposition of successor liability under CERCLA simply do not exist where there is a viable predecessor:

> **If the predecessor is still a functioning corporation which can compensate Plaintiffs, there is no equitable reason for holding Clark liable.** The rationale behind successor liability in CERCLA, to distribute costs and to allocate the burden of the cleanup to others than the taxpayers, are irrelevant if the predecessor can provide a remedy. Accordingly, **if Old Clark exists and can provide a remedy to Plaintiffs, Clark is not liable.**

*Ninth Ave. Remedial Group v. Allis-Chalmers Corp.,* 195 B.R. 716, 728 (N.D. Ind. 1996) (emphasis added; citation omitted).

It is undisputed that NCR remained in existence as a separate corporate entity after the sale of assets to API in 1978. It is undisputed that NCR remains a viable corporation today. In fact, far from proving that NCR is not a viable corporation, Defendants have argued emphatically that NCR is fully capable of providing the remedy they seek. *See, e.g.,* Dkt. 894, pp. 8, 12, 14 of 38 (GP and Others' Motion for S.J. on Equitable Factors).[6] Accordingly, for that independent reason alone, Defendants failed to meet their burden of proving that API has successor liability under CERCLA.

### 3. Defendants Have Not Provided Any Meaningful Analysis Of Their Claim That API Is Liable As A Successor.

Defendants have provided no analysis of how they contend that API has successor liability other than to claim, without any support, that API assumed liabilities in the 1978 Agreement. They have not specified any provision(s) of that lengthy document that they claim specifically transferred Fox River liabilities from NCR (or its predecessors) to API. They point to no provision of the 1978 Agreement or its appendices making any reference to any Fox River liabilities or to PCBs (indeed, there are no such references

---

[6] As noted above, API takes no position on whether Defendants established a basis for NCR to be liable under CERCLA. Defendants certainly, however, have not taken the next step of showing that API, a separate and distinct corporation that purchased assets (not stock) from NCR on June 30, 1978, is liable under CERCLA.

- 12 -

anywhere in the 1978 Agreement). There is also no reference to CERCLA liabilities (CERCLA was not passed until 1980). Defendants have not analyzed the 1978 Agreement or specified the provisions they rely upon as the basis for their assertion of successor liability against API.

Certain Defendants argued in their reply brief that API has CERCLA liability due to a 2005 arbitration decision. Dkt. 1042, pp. 9-10 of 20 (Menasha Corp.'s Reply in S.J. Decl. Relief). The arbitration decision was the result of a compromise settlement of a private dispute that resolved rights solely as between NCR, API, and BAT, with no admission of liability of any kind or any creation of third party rights.[7] Further, counsel for API addressed Defendants' reply brief assertions at oral argument, explaining that the arbitrators in the arbitration between NCR, API and BAT did not decide the issue of successor liability or CERCLA liability. Instead, the arbitration decision was based on a much different and broader standard embodied in the settlement. Further, the 60/40 division of costs between API/BAT and NCR resulting from that arbitration decision is inconsistent with the conclusion that API expressly assumed Fox River liabilities. The arbitration decision thus does not assist Defendants in their burden of proof.

On summary judgment, all facts must be construed in the light most favorable to API. Thus, Defendants have provided the Court with nothing to carry their burden of proving that API has successor liability.

---

[7] By filing this motion, API is not seeking to collaterally attack the private settlement agreement among API, BAT and NCR, or the resulting arbitration decision. However, neither the private settlement agreement nor the arbitration decision make API liable under CERCLA § 107(a).

### C. Defendants Failed To Prove That API Has CERCLA Liability As The Current Owner Of Facilities That Allegedly Discharged Hazardous Substances In The Past.

Certain Defendants also alleged in their counterclaims that API has liability under CERCLA § 107(a)(1) because it is allegedly the owner and operator of facilities that discharged hazardous substances. API denied those allegations. *See, e.g.,* Dkt. 351, ¶ 47; Dkt. 348, ¶ 38; Dkt. 337, ¶ 14; Dkt. 334, ¶ 29.

Defendants have not articulated their "current owner and operator" argument. However, they apparently contend that the mere fact that API today owns a facility that allegedly disposed of hazardous substances off-site years before API owned it is sufficient to establish CERCLA liability. That argument fails.

CERCLA defines the term "facility" in very broad terms. 42 U.S.C. § 9601(9). However, as a matter of law, a party only has liability as a current owner and operator of a facility if hazardous substances were disposed of on-site at that facility and the facility is the focus of the cleanup efforts:

> CERCLA defines the term "facility" in part as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." CERCLA § 101(9)(B), 42 U.S.C. § 9601(9)(B); . . . The term "facility" should be construed very broadly to include "virtually any place at which hazardous wastes have been dumped, or otherwise disposed of." . . . In the present case, however, **the place where the hazardous substances were disposed of and where the government has concentrated its cleanup efforts is the Denney farm site, not the NEPACCO plant. The Denney farm site is the "facility." Because NEPACCO, Lee and Michaels did not own or operate the Denney farm site, they cannot be held liable as the "owners or operators" of a "facility" where hazardous substances are located under CERCLA § 107(a)(1), 42 U.S.C. § 9607(a)(1).**

*United States v. Ne. Pharm. & Chem. Co.,* 810 F.2d 726, 743 (8th Cir. 1986) (emphasis added; citations omitted); s*ee also, ACC Chem. Co. v. Halliburton Co.,* 932 F. Supp. 233, 238 (S.D. Iowa 1995) (emphasis added) ("The facility is 'the place where the hazardous

substances were disposed of and where the government has concentrated its clean-up efforts.'" (quoted source omitted)).

In this case, it is undisputed that the site where the hazardous substances are located and the Government has exclusively concentrated its cleanup efforts is the Lower Fox River and Green Bay, not the Appleton or Combined Locks plants. Accordingly, as a matter of law, API's current ownership or operation of the ACPC facility is not a basis for CERCLA liability.

### III. NOW IS THE APPROPRIATE TIME FOR THE COURT TO RECONSIDER AND CORRECT THE MISTAKEN CONCLUSION THAT API'S LIABILITY UNDER CERCLA IS UNCONTESTED.

Now is the appropriate time to correct the statement in the Decision that API does not contest its CERCLA liability and vacate the resulting grant of summary judgment against API that was made on the assumption that API was not contesting its liability. The Decision contemplates further proceedings. The issue of API's CERCLA liability should be taken up as a part of those proceedings. If reconsideration is granted, then when final judgments are rendered and an appeal is taken from them, the Court of Appeals will have the benefit of this Court's informed analysis of the question of API's liability, rather than a mistaken conclusion that API's liability was uncontested.

It is also important to correct the Decision now, because API's CERCLA liability is a live issue in *US v. NCR,* the separate enforcement action filed against API and other Defendants in October 2010. There, the United States and the State of Wisconsin ("Governments") have specifically alleged that API is liable as a successor. *US v. NCR,* Dkt. 1, ¶ 45 (Complaint). API has denied that allegation. *US v. NCR,* Dkt. 65, ¶ 45 (Answer); *see also,* Dkt. 65, p. 34 (API's First Affirmative Defense – "API Not Liable," ¶¶ 1-6). By virtue of the filing of that enforcement action, API is now in a position to

- 15 -

challenge the Governments' allegations that it is liable under CERCLA. 42 U.S.C. § 9613(h).[8]

The most basic element that the Governments must prove is that API is liable under CERCLA § 107. To date, that issue has not been addressed or resolved. However, the parties in *US v. NCR* have already begun citing the Decision from this action. *See, e.g., US v. NCR,* Dkt. 114, pp. 5, 10 of 17 (Memo. in Opposition to Strike or Dismiss All Counterclaims and Cross-Claims). If the mistaken conclusion that API is not contesting liability is imported into *US v. NCR*, the mistake will be compounded, the process of undoing it will become more complicated, and API's due process rights will be prejudiced.

## CONCLUSION

For the reasons set forth above, API respectfully requests that the Court: (1) reconsider its conclusion that API's liability under CERCLA was not contested; (2) state that API's liability remains an open issue; and (3) deny summary judgment as to API on Defendants' counterclaims.

---

[8] The Government previously acknowledged that the Unilateral Administrative Order ("UAO") did not in any way establish API's liability:

> [A]s Plaintiffs correctly point out, the EPA's statements in the UAO about the parties' status as liable parties under CERCLA § 107 are not binding on the Court.

Dkt. 646, p. 8 of 13 (Resp. to Plaintiff's S.J. Motion on Phase I); *see also* Dkt. 614, p. 6 of 20 (Opposition to Leave to File Amend. Compl.). However, in 2009, the Government objected to deciding the issue of whether API is liable as a successor in Phase I of this action. Dkt. 646, p. 11 of 13 (objecting to resolving the issue of API's successor liability in Phase I and noting that "summary judgment based on Plaintiffs' corporate successor defenses is not appropriate.").

Dated this 29th day of March, 2011.

      Respectfully submitted,

         APPLETON PAPERS INC.

         /s/ Ronald R. Ragatz

         Counsel for Appleton Papers Inc.:
         Michael L. Hermes
         HERMES LAW LTD.
         333 Main Street, Suite 601
         Green Bay, Wisconsin 54301
         (920) 436-9870
         Fax: (920) 436-9871

         Ronald R. Ragatz
         DEWITT ROSS & STEVENS S.C.
         2 E. Mifflin Street, Suite 600
         Madison, Wisconsin 53703
         (608) 255-8891
         Fax: (608) 252-9243

         **COUNSEL FOR APPLETON PAPERS INC.**

- 17 -

Case 2:08-cv-00016-WCG Filed 03/29/11 Page 17 of 18 Document 1102

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2011, I electronically filed the Memorandum Of Plaintiff Appleton Papers Inc. In Support Of Motion To Reconsider The Court's Conclusion That API's Liability Under CERCLA Is Uncontested using the ECF system, which will send notification of such filing by operation of the Court's electronic systems. Parties may access this filing via the Court's electronic system.

              s/ Ronald R. Ragatz
              Ronald R. Ragatz