IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS INC. and NCR CORPORATION, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 08-CV-00016-WCG ) |
| GEORGE A. WHITING PAPER COMPANY, et al., | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANT GEORGIA-PACIFIC LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF APPLETON PAPERS INC.'S MOTION TO RECONSIDER THE COURT'S CONCLUSION THAT API'S LIABILITY UNDER CERCLA IS UNCONTESTED**

**I.    INTRODUCTION**

Defendant Georgia-Pacific LLC ("GP") joins Certain Defendants' Memorandum in Opposition to Plaintiff Appleton Papers Inc.'s Motion to Reconsider, but writes separately to address a single issue not discussed there – namely, Appleton Paper Inc.'s ("API") contention that it is not liable for Fox River response costs under CERCLA Section 107(a)(1) based on its current ownership of Appleton Coated Paper Company's ("ACPC") coating plant ("Appleton Facility"). According to API, only the owners of sites where hazardous substances are located have liability under Section 107(a)(1). Dkt. #1102 at 14-15. Since the PCBs at issue are located in the Fox River – in which API has no ownership interests – API thus claims that it has no current owner liability under Section 107(a)(1) even though it admits to owning the Appleton

Facility which discharged PCBs that are now in the river and the subject of on-going remedial actions in Operable Units ("OU's") 2 - 5.[1]

As the United States observed in its Joint Reply to Briefs by NCR Corporation and Appleton Papers Inc. in Opposition to Plaintiffs Motion to Dismiss, *United States v. NCR Corp.*, No. 10-C-910, Dkt. #131 at 4-5, API's view of current owner liability is "flat wrong." As explained below, it is clear that Section 107(a)(1) liability attaches to the current owner of a plant that discharged hazardous substances which came to be located on the property of another, and that API has such liability based on its ownership of the Appleton Facility.

## II. ARGUMENT

### A. Current Owner Liability under CERCLA Section 107(a)(1) Includes Liability for Hazardous Substances Released to Off-site Areas

CERCLA Section 107(a)(1) places liability on "the owner and operator of a vessel or a facility . . . from which there is a release, or a threatened release which causes the incurrence of response costs…" CERCLA Section 101(9) defines "facility" to mean:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be

---

[1] *See, e.g.*, Dkt. #269 [Plaintiffs Appleton Papers Inc. and NCR Corporation's Answer to Defendant P.H. Glatfelter Company's Counterclaim], pg. 5, ¶ 14 ("API and NCR admit that API is the current owner of a plant in Appleton, WI, and that this plant discharged wastewater, which at times contained residues of PCB-containing emulsion"); *see also* Appleton Papers Inc.'s 2010 10-K, 13 ("Appleton has been named a PRP because of discharges of polychlorinated biphenyls, or PCBS, into the Lower Fox River from its Appleton Plant in the 1950s, 1960s and 1970s, and because of discharges from the Appleton Coated paper mill in Combined Locks, Wisconsin, which Appleton (and its predecessors) owned from 1978 to 2000."), *available at* http://www.appletonideas.com/pdf/Form10-K%20AS%20FILED%203-11-11.pdf.

2

> located; but does not include any consumer product in consumer use or any vessel.

In its discussion of "facility," API focuses only on Section 101(9)(B), which defines a "facility" to include sites where hazardous substances are located. Dkt. #1102 at 14-15. What API fails to point out, however, is that "facility" also means any "building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works)...."[2] Thus, the owner of a manufacturing plant that discharges a hazardous substance is the owner of a facility under Section 107(a)(1) even if the hazardous substance it released is located off-site, and an owner of land where a hazardous substance has come to be located is also the owner of a "facility" even if the hazardous substances present on his land came from an off-site source.

The fact that Section 107(a)(1) liability is not restricted to the present owners of hazardous waste sites has been broadly recognized by the courts. In *Amcast Indusrial Corp. v. Detrex Corp.,* 2 F.3d 746, 750-751 (7th Cir. 1993), for example, the Seventh Circuit found that the owner of tank trucks that spilled hazardous substances onto another person's property was liable under Section 107(a)(1) for the response costs incurred at that other facility. The Fifth Circuit reached a similar conclusion about spills from trucks onto the property of another in *Uniroyal Chemical Co., Inc. v. Deltech Corp.,* 160 F.3d 238, 253 (5th Cir. 1999). And in

---

[2] A "release" is defined to include a "discharg[e]," *see* CERCLA Section 101(22), and by API's own admission, equipment at the Appleton Facility "discharged" wastewater containing PCBs that came to be located in the Fox River. *See supra* n. 1. Thus, the discharge of PCBs from the Appleton Facility to a pipe leading to a publicly owned treatment works ("POTW") constitutes a release, particularly since the undisclosed presence of PCBs in ACPC's wastewater discharges resulted in their ultimate pass through to the Fox River by the City of Appleton's POTW. On these facts, API is clearly the owner of a facility which discharged PCBs into the environment. In the alternative, however, API must at least be seen as having arranged for the disposal of PCBs by the POTW (even though the POTW never knew what it was doing because of ACPC's concealment).

*Westfarm Associates Ltd. Partnership v. Washington Suburban Sanitary Commission,* 66 F.3d 669, 680 (4th Cir. 1995), the Fourth Circuit found that the owner of sewer pipes that leaked hazardous substances onto the property of another was liable under Section 107(a)(1) for response costs incurred at the other person's property.

The fact pattern in which a release from one "facility" comes to be located at another "facility" is often referred to as a "two-site" case. In two-site cases, it is necessary to demonstrate that the hazardous substances released from the first facility caused the incurrence of response costs at the other. *See, e.g., Kalamazoo River Study Grp. v. Rockwell Int'l Corp.,* 171 F.3d 1065, 1068 (6th Cir. 1999) (concerning PCB releases from plants into the Kalamazoo River). Once a causal relationship is established between an "off-site" release and the incurrence of "on-site" response costs, however, the owner of the "off-site" facility is treated just the same as any "on-site" contributor. *See, e.g., ITT Corp. v. Borgwarner, Inc.,* 2009 U.S. Dist. LEXIS 75637, *8 (W.D. Mich. Aug. 25, 2009) (off-site contributor may be jointly and severally liable for all necessary response costs).

Moreover, CERCLA Section 107(a)(1) liability exists even if the release at issue occurred before the current owner acquired its interest in the facility. This is exactly what the Second Circuit held in *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir. 1983) (rejecting contention that Section 107(a)(1) liability arises only if releases occur during the current ownership, and finding current owners liable without regard to causation). Likewise, in *Uniroyal Chemical Co. v. Deltech Corp.,* 160 F.3d 238 (5th Cir. 1999), the Fifth Circuit found that the current owner liability language of Section 107(a)(1) does not require a disposal during the period of ownership, whereas liability as a former owner or operator under Section 107(a)(2) only exists with respect to releases that occurred during the prior ownership period. For the

4

purposes of Section 107(a)(1) current owner liability, what matters is whether response costs are incurred after the owner acquired its interest. *Cal. Dept. of Toxic Substances Control v. Hearthside Residential Corp.,* 613 F.3d 910, 916 (9th Cir. 2010) (suit against current owner of a facility for response costs incurred at adjoining property).

The cases API cites in support of the proposition that only owners of sites where hazardous substances are located can have liability under Section 107(a)(1) do not support its position. In *ACC Chemical Co. v. Halliburton Co.,* 932 F. Supp. 233 (S.D. Iowa 1995), the court found that "[t]he record is clear that Halliburton is not at present an 'owner or operator of a vessel or a facility' from which there is a release or threatened release which causes response costs." *Id.* at 237. In the court's view, the pump truck Halliburton operated on the plaintiff's property was certainly a facility, but it was not the facility from which the release had occurred. Instead, the release occurred from facilities owned by the plaintiff. Similarly, in *United States v. Northeastern Pharmaceutical & Chemical Co., Inc.,* 810 F.2d 726 (8th Cir. 1986), releases from the defendant's industrial facility were not the cause of the response costs, which instead were incurred with respect to releases at an off-site disposal facility to which the defendant had sent hazardous waste for disposal.[3]

---

[3] Although not cited by API, we call the Court's attention to *United States v. Washington State Department of Transportation*, No. 3:08-cv-05722-RJB (W.D. Wash. July 7, 2010), in which the court concluded that the Department of Transportation – which allegedly owned roadways and storm drains within a broad area defined as a Superfund site that encompassed numerous contaminated and uncontaminated properties – was not an owner for the purposes of 107(a)(1) liability. The United States had incurred response costs in certain waterways within the Superfund site, but not in relation to the Department's property. Based on its concern that a broad interpretation of Section 107(a)(1) could result in liability being imposed on persons with no responsibility for the contamination, the court wrongly concluded that "for liability to attach to [the Department] under CERCLA section 107(a)(1), it must be the owner or operator of the facility in which the United States incurred a response cost." Dkt. #96 at 9-10. The decision is poorly

5

## B. API Is Liable for Fox River Response Costs Under CERCLA Section 107(a)(1)

As demonstrated above, current owner liability is not restricted to the owners of sites where hazardous substances are located. Courts concluded long ago that CERCLA was not just directed at the remediation of hazardous waste disposal sites, but instead also addresses response costs incurred with respect to transportation accidents, discharges from sewer systems and non-permitted releases from industrial facilities. The pattern of "two-site" cases is quite common, especially at rivers into which numerous plants have discharged their wastes.

The evidence in this case clearly points to the Appleton Facility as a discharger of PCBs that have come to be located in OU's 2 – 5 and are a significant cause of on-going response costs. API bought that facility knowing about such issues and sought to protect itself against them. Indemnification agreements in 1978, indemnity litigation and arbitration in the late 1980s and 1990s, liability transfers to AT&T and Alcatel-Lucent, and further indemnifications in connection with the 2001 ESOP all demonstrate API's knowledge of environmental remediation risks arising from its ownership of the Appleton Facility. Thus, through its decades of ownership, API has knowingly acquired Section 107(a)(1) liability as the current owner of a facility known to have contributed hazardous substances to one of the largest environmental problems in the United States.

---

reasoned and failed to address whether hazardous substance releases from the Department's property had contributed to the contamination that necessitated response costs – i.e., a "two-site" analysis. In any event, the decision is inconsistent with the law in the Seventh and other Circuits, and that court's general concern about holding non-contaminating property owners liable is also not present here since there is no doubt that the Appleton Facility had a causal relationship with the contamination for which response actions are required.

6

## III. CONCLUSION

Because API has CERCLA liability as both a successor to ACPC and as the current owner of the Appleton Facility, its motion for reconsideration should be denied.

Dated: April 22, 2011                                             Respectfully submitted,

                                                                                          */s/ Karl S. Lytz*
                                                                                          Karl S. Lytz

Karl S. Lytz
CA Bar No. 110895
Patrick J. Ferguson
CA Bar No. 252778
Latham & Watkins LLP
505 Montgomery St., Ste. 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Fax: (415) 395-8095
Karl.Lytz@lw.com
Patrick.Ferguson@lw.com

Mary Rose Alexander
IL Bar No. 6205313
CA Bar No. 143899
Margrethe K. Kearney
IL Bar No. 6286559
Latham & Watkins LLP
233 S. Wacker Dr.
Ste. 5800
Chicago, IL 60606
Telephone: (312) 872-7700
Facsimile: (312) 993-9767
Mary.Rose.Alexander@lw.com
Margrethe.Kearney@lw.com