IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. and
NCR CORPORATION,

       Plaintiffs,

       v.                                    No. 08-CV-16-WCG

GEORGE A. WHITING PAPER
COMPANY, et al.,

       Defendants.

**REPLY MEMORANDUM OF DEFENDANT APPLETON PAPERS INC.
IN SUPPORT OF MOTION TO RECONSIDER THE COURT'S CONCLUSION
THAT API'S LIABILITY UNDER CERCLA IS UNCONTESTED**

Michael L. Hermes
Heidi D. Melzer
Brandon J. Evans
Ericka L. Krumrie
HERMES LAW LTD.
333 Main Street, Suite 601
Green Bay, Wisconsin 54301
(920) 436-9870
Fax: (920) 436-9871

Ronald R. Ragatz
Dennis P. Birke
Megan A. Senatori
DEWITT ROSS & STEVENS S.C.
2 E. Mifflin Street, Suite 600
Madison, Wisconsin 53703
(608) 255-8891
Fax: (608) 252-9243

**COUNSEL FOR APPLETON PAPERS INC.**

Defendant Appleton Papers Inc. ("API") respectfully submits this Reply Memorandum in Support of Motion to Reconsider the Court's Conclusion That API's Liability Under CERCLA is Uncontested. Dkt. #1101.

## ARGUMENT

### I. API HAS NOT ADMITTED LIABILITY.

Defendants argue that API admitted it is liable under CERCLA by commencing a contribution action under CERCLA § 113(f). Dkt. #1121 at 2. However, a party does not concede CERCLA liability simply by suing for contribution. This Court previously held that the unproven allegations of liability in the 106 Order were enough to trigger the right to sue under § 113(f), making it unnecessary for API to either concede liability or obtain an adjudication of its liability. Dkt. #751 at 5 ("[§ 113(f)] is available to someone whose liability may not have been firmly established at all. It is enough that the party may be subject to some compulsion to pay – here, the government's § 106 order."). *See also United States v. Atlantic Research Corp.,* 551 U.S. 128, 138-39 (2007) ("§ 113(f)(1) permits suit before . . . the establishment of common liability."). The language Defendants quote from the Complaint (Dk. #1121 at 2) is simply an acknowledgement that the Government's 106 Order asserted that API was a "responsible part[y]," a claim that API had no ability to challenge at the time. 42 U.S.C. § 9613(h).

Defendants next point to a brief filed in this action in the fall of 2009 where there was reference to "Plaintiffs as successors to ACPC" rather than saying "Plaintiffs as the alleged successors to ACPC." Dkt. #1121 at 2-3. Such trivial nuances in phraseology in a brief filed when API could not challenge its liability to the Government and where API's liability was not an issue (Plaintiffs' alleged liability was not an issue designated

1

for Phase I under the Case Management Order) does not, and could not, amount to an admission of liability.

As explained in API's opening brief, each time Defendants alleged in their counterclaims that API was liable under CERCLA, as successor or otherwise, API denied those allegations. Dkt. #1102 at 4. Further, API specifically denied Defendants' proposed findings of fact claiming that API had assumed Fox River liabilities and API argued that it had no CERCLA liability. *Id*. at 5. In the face of API's repeated and unambiguous denials of any CERCLA liability, Defendants' assertion that API has nonetheless, somehow admitted CERCLA liability is, bluntly, wrong.

## II. API DID NOT ASSUME FOX RIVER LIABLITIES IN THE 1978 AGREEMENT.

Defendants' brief for the first time identifies paragraphs 1.4.3, 1.4.5 and 1.4.9 of the 1978 Purchase and Sale Agreement ("1978 Agreement") as the basis for their contention that API expressly assumed Fox River liabilities. Dkt. #1121 at 3-5.[1] However, Defendants provide no analysis or evidence to support the argument that API assumed Fox River PCB contamination liability pursuant to any of those three provisions.

Under ¶ 1.4.9, API agreed to assume certain of the seller's liabilities:

> . . . with respect to compliance of the Property or the products or operations of APD with all applicable federal, state and local and other governmental environmental and pollution control laws, ordinances, regulations, rules and standards.

Dkt. #938-3, ¶ 1.4.9 at 20 of 96. "APD" refers to the Appleton Papers Division of NCR. *Id.* at 7 of 96. The Appleton Papers Division was formed in 1973 (Dkt. #579-10 at 4 of

---

[1] Since Defendants cited no specific provision from the 1978 Agreement in their briefs supporting their motions for summary judgment on their counterclaims, API had no reason or occasion in its briefs opposing those motions to address these provisions.

14), and operated until the sale of assets to API in June 1978. *Id*. The term "Property" refers to the assets that were being purchased. Dkt. #938-3, ¶ 1.1 at 10 of 96.

The assumption under ¶ 1.4.9 was expressly limited to liabilities arising from the failure of the Property or the products or operations of the Appleton Papers Division to comply with environmental and pollution control laws. The Fox River PCB liability did not result from the failure of either the Property or the products or operations of the Appleton Papers Division to comply with applicable governmental environmental and pollution control laws. The Appleton Papers Division, which operated from 1973-78, never used PCBs in making NCR-brand carbonless copy paper ("CCP"). Even when PCBs were used in CCP (1954-71), the use of PCBs was legal. Defendants have not identified any environmental law that either the Property or products or operations of the Appleton Papers Division failed to comply with that gave rise to Fox River PCB liability. Accordingly, no such liability was assumed under ¶ 1.4.9.

Defendants also cite a second provision under which API assumed: "all of Seller's obligations and liabilities . . . with respect to the compliance of the assets, properties, products or operations of APD with all governmental laws, ordinances, regulations, rules and standards." Dkt. #938-3, ¶ 1.4.3 at 18 of 96. Like ¶ 1.4.9, ¶ 1.4.3 requires a failure of the assets, properties, products or operations of the Appleton Papers Division to comply with governmental laws. The Defendants offered no evidence that the assets, properties, products, or operations of the Appleton Papers Division failed to comply with any law in 1978 that has given rise to any Fox River PCB liability. CERCLA did not exist in 1978 and CERCLA's later enactment did not establish that any of the assets or operations failed to comply with any laws as of 1978. When enacted in

3

1980, CERCLA created liability for activities or conditions that complied with applicable laws. This was not a form of liability or obligation assumed under the 1978 Agreement.

Under the third provision Defendants rely upon, API assumed:

> . . . **all of Seller's obligations and liabilities** of any kind, character or description relating to the period subsequent to the Closing Date **which arise out of or in respect of any** threatened suit, patent infringement suit, patent or trademark interference or opposition, action, claim, investigation by any governmental body, or legal, administrative or arbitration **proceeding set forth on Schedules A or M,** in each case whether such obligation or liability is accrued, absolute, contingent or otherwise and whether or not such obligation or liability is reflected or reserved against on the Financial Statements or the Closing Date Balance Sheet;

*Id.*, ¶ 1.4.5 at 19 of 96 (emphasis added). Schedules A and M make no reference to any existing or potential liability with respect to the Lower Fox River or PCB contamination. The Defendants quote an excerpt from Schedule A stating that "facilities of Appleton Papers Division . . . located in Pennsylvania and Wisconsin may be operating in violation of applicable federal, state, local and other governmental environmental and pollution control laws." Dkt. #1121 at 4-5; Dkt. #901-12 at 30 of 33. Plainly, this language was not related to CERCLA (CERCLA was not enacted until 1980). Nor have the Defendants produced any evidence that Schedule A's reference to violations that "may be" occurring as of 1978 had anything to do with the later-determined Fox River PCB liabilities.

Indeed, as set forth in the quoted excerpt from Schedule A, the Appleton Papers Division had received certain notices from the Government "claiming violation of environmental and pollution control laws . . ." Dkt. #901-12 at 30 of 33. Thus, Schedule A addressed specific non-compliance issues that had *already* been the subject of government investigation and notices. Fox River PCB contamination was not one of those issues.

4

Proof of API's liability is Defendants' burden, and one that is particularly heavy given the summary judgment posture of Defendants' motions. It is not even necessary for the Court to draw inferences in the non-movant's favor as is required under Rule 56. The clauses of the 1978 Agreement invoked by Defendants expressly refute, rather than somehow silently support the assumption of the Fox River PCB liability which was unknown at the time and did not result from any noncompliance with or violation of any law and had nothing to do with the Schedule A disclosure.

Defendants also claim that "the agreement has no language limiting API's assumption of environmental liability. . . ." Dkt. #1121 at 6. Defendants' assertion is belied by the plain language of the very provisions from the 1978 Agreement that they quote in their brief. Section 1.4.9 states explicitly that "Purchaser shall not assume, and shall not be liable for, any liability or obligation of Seller, which is not provided for in this Section 1.4 and in Sections 1.2.1.2 and 1.2.2.3." Dkt. #938-3 at 21 of 96. The provisions of Section 1.4 the Defendants cite were carefully drafted so that no liability was assumed *unless* it arose from non-compliance of the property, products or operations of the Appleton Papers Division with environmental laws. While there are other limitations in the language, the non-compliance limitation is dispositive because Defendants have failed to provide any evidence of such non-compliance that gave rise to Fox River PCB liabilities.

### III. THE 1998 SETTLEMENT AGREEMENT DID NOT IMPOSE CERCLA LIABLITY ON API.

Perhaps realizing the flaws in their successor liability argument based on the 1978 Agreement, the Defendants attempt to rely upon the 1998 Settlement Agreement

and the resulting 2005 arbitration decision. Dkt. #1121 at 8. However, neither the 1998 Settlement Agreement nor the 2005 arbitration imposed CERCLA liability on API.

First, NCR, API and BAT entered into the 1998 Settlement Agreement expressly without admitting any responsibility, fault or liability:

> **Without admitting any fact, responsibility, fault, or liability**, the parties agree to combine and allocate as between themselves, beginning February 16, 1998, all Damages or Group Defense Costs allocated or assessed to, imposed upon, or incurred by NCR or API/BAT, **either singly or collectively**, relating to the Fox River sites, the Marina Cliffs sites (to the extent that the reopener provisions are invoked), or Future Sites as follows: 55% will be borne by API/BAT and 45% will be borne by NCR, up to a total of $75,000,000 in the aggregate (the "Initial Allocation").

Dkt. #124-1 at 14 of 27 in Case No. 10-CV-910 (emphasis added).[2] By beginning with express statements that no liability is admitted and specifying they are splitting costs imposed "either singly or collectively" on them, the parties made it clear that neither of them acknowledged or assumed any liability under CERCLA or otherwise.

That conclusion is fully consistent with the rule that a settlement cannot be used as evidence to prove liability. Fed. R. Evid. 408. The rule against using settlements as admissions of liability is critical to "the public policy favoring the compromise and settlement of disputes." Cmt. to 1972 Proposed Rule 408; *see also Kritikos v. Palmer Johnson, Inc.,* 821 F.2d 418, 423 (7th Cir. 1987) (Fed. R. Evid. 408 "is to encourage settlements. The fear is that settlement negotiations will be inhibited if the parties know that their statements may later be used as admissions of liability.") (*quoting Central Soya Co. v. Epstein Fisheries, Inc.,* 676 F.2d 939, 944 (7th Cir. 1982)). Because the

---

[2] It is noteworthy that Defendants now attempt to prove a critical element of their summary judgment motions – API's liability under CERCLA – by relying upon documents that were never filed with their motions in this action. Instead, they are now compelled to cite to documents filed in a different case almost a year after their motions were filed.

6

1998 Settlement Agreement was a compromise settlement of a private dispute that resolved cost-sharing rights solely as between NCR and API/BAT, with no admission of liability, it is not evidence of liability to any third party.

Further, the Wisconsin Court of Appeals emphatically rejected an argument by API's liability insurers that API assumed CERCLA liability in the 1998 Agreement:

> We begin with the Insurers' assertion that the "1998 Settlement is the sole basis for API's liability (under CERCLA or otherwise) for the PCB contamination." (Emphasis omitted.) **This is a breathtaking assertion**, in light of the relevant CERCLA provisions and case law, **and we reject it**.

*Westport Ins. Corp. v. Appleton Papers Inc.,* 2010 WI App 86, ¶ 42, 327 Wis. 2d 120, 787 N.W.2d 894 (emphasis added).

Rather, the private cost-sharing arrangement between NCR and API/BAT operates as a mutual indemnity arrangement, and an agreement to indemnify does not render the indemnitor liable under § 107(a). For example, in *Port Allen Marine Services, Inc. v. Chotin,* 765 F. Supp. 887, 888-89 (M.D. La. 1991), the district court rejected an argument that an insurer of a liable party is liable under CERCLA as a successor under § 107(a):

> [T]he plaintiffs contend that insurers should be treated as successor owners of responsible corporations, merger partners, or parent corporations of responsible subsidiaries, which have been found by various courts to be liable under 9607(a) of CERCLA because each assumed a contractual obligation of the responsible party. **[The insurers] have not assumed the contractual obligations of Chotin** under the facts of this case. The insurers are only liable for certain coverages as set forth in the policies. **Thus, the plaintiffs' argument that 9607(a) imposes liability on insurers of potentially responsible parties is without merit. To read this section otherwise would require the Court to ignore and disregard the clear language of 9607(a).** [Emphasis added]

*See also Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.* 989 F.2d 1256, 1263 n.11 (1st Cir. 1993) ("CERCLA itself does not provide a direct cause of action against a responsible party's liability insurer."). Thus, the 1998 Agreement provides no basis for

imposing *CERCLA* liability on API simply because it (along with BAT) agreed to share certain costs with NCR as part of a private settlement.

## IV. THE 2005 ARBITRATION DECISION DID NOT DETERMINE THAT API IS LIABLE UNDER CERCLA.

Defendants contend that "CERCLA liability for this Site is exactly what NCR and API resolved through arbitration, and API cannot relitigate that issue." Dkt. #1121 at 7. The first and sufficient answer to Defendants' argument is that the 2005 arbitration was part of the settlement and, accordingly, is not evidence of API's liability for the reasons set forth above.

Further, the assertion that CERCLA liability for the Site was resolved in that arbitration is factually incorrect. The 1998 Settlement Agreement and the Subsequent Allocation Arbitration Agreement did not direct the arbitrators to decide anything under CERLCA. *See* Dkt. #124-1 at 14 in Case No. 10-CV-910; Dkt. #139-13 at 20 of 24 in Case No. 10-CV-910. The arbitrators were not directed to determine whether any of the parties, NCR, API or BAT, had any CERCLA liability. Instead, the arbitrators were to decide how to allocate among those parties the costs that may be imposed on any or all of them "relating to the release or disposal of Hazardous Substances to or at the Fox River sites or Future Sites". *Id*., at 4 of 24. The express direction to the arbitrators was to select within a specified range "any allocation that they deem appropriate." For costs over $75 million:

> Neither party may be allocated more than 75% or less than 25% of the liability for amounts to be expended beyond $75 million. Within that range, **the arbitrators may select any allocation that they deem appropriate.**

*Id*., at 20 of 24 (emphasis added).

The arbitration decision expressly followed that direction. Dkt #124-2 at 6-7 of 11 in Case No. 10-CV-910. There is no finding that either NCR or API is liable under CERCLA. There is no finding that API assumed any CERCLA liability or that it has successor liability. Rather, the arbitrators simply exercised their broad discretion authorized by the Subsequent Allocation Arbitration Agreement. Pursuant to that Agreement "the Arbitrators deem appropriate the following allocation:" API/BAT 60% and NCR 40%. *Id*., at 7 of 11. The arbitrators explained in their conclusion simply that "the allocation set forth above represents the Panel's weighing of all of its findings and its collective judgment on the appropriate allocation under the terms of the Allocation Agreement." *Id.*, at 8 of 11.

Like Solomon, the arbitrators were given the authority and discretion to resolve the allocation, even if that meant "dividing the baby." That authority came from the compromise settlement of the parties, not from CERCLA.

Defendants suggest API is bound by issue preclusion (collateral estoppel) principles from relitigating its CERCLA liability. Dkt. #1121 at 7. However, to be binding, the issues decided in the 2005 arbitration must be "identical" to the issues to be decided in this action.[3] The issues clearly are not identical. In order to decide the issue of successor liability under CERCLA, an assumption of liability requires an express

---

[3] A party attempting to invoke collateral estoppel must show that:

(1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) **the issues are identical**.

*O'Neill v. Merrill Lynch, Pierce, Fenner & Smith*, 654 F. Supp. 347, 351 (N.D. Ill. 1987) (emphasis added). *See also Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.,* 58 F.3d 303, 307 (7th Cir. 1995) (For the doctrine of collateral estoppel to apply, the issue has to have been "actually litigated and decided in the initial action.").

assumption based on clear and unambiguous contract language. *See e.g.*, 15 William Meade Fletcher, *Fletcher Cyclopedia Corporations* § 7114, p. 180 (rev. 2008 ed.) (An agreement to assume liabilities "must be clear and unambiguous in order for it to amount to an assumption."). However, the arbitration panel *expressly* found that the 1978 Agreement was insufficient to transfer Fox River liabilities to API:

> Having considered all of the language of the 1978 Agreement, the Panel concludes that **the language is not sufficiently clear and unambiguous with respect to the issue of responsibility for the environmental costs at issue to permit an award based solely on the contract language.**

Dkt. #124-2 at 8 of 11 (emphasis added). Therefore, the arbitrators went beyond the contractual language in the 1978 Agreement and based their allocation on the very broad discretion specifically agreed to by NCR, API and BAT in the Subsequent Allocation Arbitration Agreement. Accordingly, the issues resolved among NCR, API and BAT in the 2005 arbitration decision are not "identical" to the issue of whether API is liable under CERCLA as a successor to Fox River liabilities.

Finally, the arbitration decision's 60/40 allocation of costs is inconsistent with the conclusion that the arbitrators decided that API expressly assumed Fox River liabilities. The arbitrators were authorized to make any allocation between a floor of 25% and a ceiling of 75%. If they had found that API assumed the Fox River PCB liabilities, that would logically have compelled imposing 75% on API. The assumption provisions in the 1978 Agreement were "all or nothing," not 60/40. *See American Nat'l Bank & Trust Co. v. Harcros Chems., Inc.*, No. 95 C 3750, 1997 WL 281295, at \*16 (N.D. Ill. May 20, 1997) ("The key is whether there is language limiting the indemnity and whether the language shows an intent to allocate all possible liabilities among the parties. If there is

limiting language, the clause does not cover CERCLA."). There is no basis in law or common sense to impose partial successor liability.

Therefore, neither the 1998 Settlement Agreement nor the 2005 arbitration decision provide any basis for the Defendants' assertion that API is liable under CERCLA. Instead, NCR and API/BAT agreed to certain mutual contractual indemnity obligations to be decided on the basis of an arbitration panel's broad discretion to select "any allocation that they deem appropriate." Neither the arbitration panel's award nor these contractual obligations provide a basis for the imposition on API of CERCLA liability.

## V. API HAS NO CURRENT OWNER LIABILITY.

Georgia Pacific ("GP") claims that API has direct liability under CERCLA § 107(a)(1), 42 U.S.C. § 9607(a)(1), even in the absence of successor liability, because it is the current owner of a facility which, when owned by a previous owner, arranged for disposal of hazardous substances off site. Dkt. #1126. There is no precedent for what GP seeks and no other party, including the Government, has made such a claim. GP's contention is contrary to the purposes of CERCLA, and contrary to the structure of CERCLA § 107(a). In short, GP is trying to force a square peg into a round hole and it simply doesn't work.

GP claims that the former owner of the Appleton plant, Appleton Coated Paper Company ("ACPC"), arranged for disposal of wastewater containing PCBs through the City of Appleton sanitary sewer collection system and the City discharged PCBs to the Lower Fox River. GP does not claim that API itself disposed of hazardous substances

but, rather, that API is liable simply because it is the current owner of the plant formerly owned by ACPC.[4]

Only GP has argued that API is liable under CERCLA § 107(a)(1). The Government has pled no claim against API under CERCLA § 107(a)(1). Dkt. #30, ¶ 54 at 14 of 36 in Case No. 10-CV-910 (alleging that API is liable under § 107(a)(2) and 107(a)(3)). Further, there is no precedent for GP's claim. The cases cited by GP (Dkt. #1126 at 3-5) all involve imposition of liability on either: (a) the owner of a facility at the time of an off-site release to the environment; or (b) the current owner of a facility with continuing contamination on that facility from disposal in the past. In other words, those cases all involve imposition of liability on a party that was directly involved in the contaminating event or was the current owner of the property when there was continuing contamination.

Imposing liability on a party that does not fit into either of those categories is contrary to the fundamental purposes of CERCLA. *See, e.g., United States v. Wash. State Dep't of Transp.*, No. 08-5722, 2010 WL 2698854 (W.D. Wash. July 7, 2010). In that case, the United States sought to impose liability under CERCLA § 107(a)(1) on the current owner of land that was not itself contaminated or the subject of any remediation, and where the current owner had not caused any of the off-site contamination. The court rejected the argument, explaining that:

> If the Court was to take the view that response costs need not be incurred on the facility owned or operated by the defendant, then liability may be imposed on persons not related to the contamination, which is not the purpose of CERCLA.

---

[4] API at one time owned the facility in Combined Locks, Wisconsin previously owned and operated by Combined Paper Mills, Inc., but has not owned that facility for over a decade. Accordingly, GP has made no argument that API has current owner liability with respect to the Combined Locks plant.

*Id.* at *5. The Court further explained:

> CERCLA was not intended to place the cost of clean up on persons who are not responsible for the contamination. *See U.S. v. Bestfoods*, 524 U.S. 51, 56, 118 S. Ct. 1876, 141 L.Ed.2d 43 (1998) ("those *actually* responsible for any damage, environmental harm, or injury from chemical poisons may be tagged with the cost of their actions.")

*Id.* (italics original). *See also Burlington Northern & Santa Fe Ry. Co. v. United States*, __ U.S. __, 129 S. Ct. 1870, 1874 (2009) ("The Act was designed to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination").

The Seventh Circuit case cited by GP, *Amcast Industrial Corp. v. Detrex Corp.*, 2 F.3d 746 (7th Cir. 1993), fits within that fundamental CERCLA purpose. The court imposed liability on the owner of a truck (which was deemed to be a "facility") that spilled hazardous substances at the property being cleaned up. As the party that owned and operated the truck at the time of the spill, the owner was clearly responsible for the contamination. On the other hand, if the owner had sold the truck to a third party who had nothing to do with the spill of hazardous substances, imposing liability on that subsequent owner would be contrary to the purposes of CERCLA. That is exactly what GP is asking this Court to do.

In addition to being contrary to the purposes of CERCLA, GP's argument does not fit within the structure of CERCLA § 107(a). The Appleton plant always sent its wastewater to the City of Appleton's sanitary sewer collection system for proper treatment and disposal. Dkt. #579-11 at 9 of 65, ¶ 7.a.xi. To the extent there is CERCLA liability from the wastewater sent to the POTW, it is liability of ACPC under § 107(a)(3) for having "arranged for disposal or treatment" of its waste, not a liability of API under

13

§ 107(a)(1) as the current owner of the plant. API is not liable as an arranger because it is not ACPC's successor.

Thus, GP's argument is groundless and is nothing more than a desperate attempt to avoid the fact that it is unable to prove successor liability.

## CONCLUSION

For the reasons set forth above, and those set forth in API's opening brief, API respectfully requests that the Court: (1) reconsider its conclusion in the March 1 Order that API's liability under CERCLA was not contested; (2) state that API's liability under CERCLA remains a disputed issue of fact; and (3) deny summary judgment as to API on Defendants' counterclaims.

Dated this 4th day of May, 2011.

>Respectfully submitted,
>
>APPLETON PAPERS INC.
>
>/s/ Ronald R. Ragatz
>
>Michael L. Hermes
>Heidi D. Melzer
>Brandon J. Evans
>Ericka L. Krumrie
>HERMES LAW LTD.
>333 Main Street, Suite 601
>Green Bay, Wisconsin 54301
>(920) 436-9870
>
>Ronald R. Ragatz
>Dennis P. Birke
>Megan A. Senatori
>DEWITT ROSS & STEVENS S.C.
>2 E. Mifflin Street, Suite 600
>Madison, Wisconsin 53703
>(608) 255-8891
>
>**COUNSEL FOR APPLETON PAPERS INC.**

15