APPLETON PAPERS INC. and
NCR CORPORATION,

        Plaintiffs,

        v.

Case No. 08-CV-00016-WCG

GEORGE A. WHITING PAPER
COMPANY, et al.,

        Defendants.

---

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION SEEKING CLARIFICATION**

---

Defendants respectfully request that the Court clarify that the relief granted in its February 2011 Decision includes recovery on Defendants' CERCLA Section 113 claims for their overpayments of natural resource damages ("NRDs") and a declaration that the Plaintiffs are liable to Defendants not only for cleanup costs, but also for any NRD payments to the Trustees.

Notwithstanding NCR's and API's own prior contribution claims for NRDs against the Defendants,[1] NCR *now* contends that "CERCLA's plain language does not provide an equitable right to contribution for natural resources damages payments." Dkt. 1125 at 8. It further argues that even if there were contribution claims for NRD overpayments, the Defendants must show that the Plaintiffs' releases of PCBs "caused the specific injury," *id.* at 3,[2] and then speculates that certain defenses to NRD liability might apply, *id.* at 9 - 10.

---

[1] In its Seventh Amended Complaint and Motion for Summary Judgment, NCR and API both asserted CERCLA Section 113 contribution claims for NRDs. Dkt. #265 [Seventh Amended Complaint]; Dkt. #576 [API/NCR Motion for Summary Judgment on Phase I]. The award of contribution against them has obviously altered their view.

[2] In a similar vein, API argues there is no need for declaratory relief as to future NRD overpayments because, in its view, each defendant may only be held liable for NRDs actually caused by its release. Dkt. 1124 at 3 – 4.

None of these contentions has any merit. As explained below, it is clear under the terms of the statute that private parties *do* have a right to recover through Section 113 any NRD overpayments they have made to governmental trustees, as this Court concluded in its August 2008 Decision ("Plaintiffs' overpayments, if any, are recoverable under Section 113(a)[sic] ..."). Dkt. 227 at 15. If CERCLA's NRD liability scheme did not provide contribution rights, it would run counter to the common law, most statutory tort law, and ordinary notions of fairness by precluding parties that share a common liability from readjusting those payments among themselves, so that the liability is shared fairly. There is no reason to believe that Congress set up such an idiosyncratic structure based on either the statute itself or its underlying policies.

Plaintiffs' arguments on the law of causation likewise are not supported by the statutory language or the cases interpreting the statute's causation requirements for triggering NRD liability. This Court has already found that the "Plaintiffs' own pollution caused a significant part of the environmental damage" (Dkt. 1080 at 14), and that, based on comparative fault, the Plaintiffs should bear the entire liability for remediating OU2-5.

NCR contends that this Court's February 2011 opinion *only* can be read to hold that contribution for NRDs is never available under Section 113 or any other law. (API does not make this argument.) Defendants obviously disagree with that reading. But the ambiguity evident from the parties' briefs suggests that the Court should clarify.

I. **THE FEDERAL RULES ENTITLE DEFENDANTS TO SEEK CLARIFICATION.**

    A. **Rule 60(a) is Appropriate Here.**

Before fully addressing the merits, we first respond to NCR's procedural objections to this motion. Defendants sought clarification under Rule 60(a) because, unlike the Court's August 2008 Decision (Dkt. 227), its February 2011 Decision (Dkt. 1080) spoke only to the lack of "standing" of private parties, like Defendants, to recover NRDs; and lack of standing is a

2

CERCLA Section 107 issue. This Court's August 2008 Decision dismissing Plaintiffs' Section 107 claims concluded that NRD overpayments could be recovered under CERCLA Section 113. Dkt. 227 at 15. However, that conclusion was not addressed or referenced in the 2011 Decision.

Defendants thus believe and understand that the Court's August 2008 ruling - that a party's "overpayments" of NRDS are recoverable under Section 113 - remains intact. They simply seek clarification that this is, in fact, the case given that NRDs are a component of the damages that the Court has ruled the Plaintiffs should bear based on fault. As the Court stated: "With respect to OU2-5, Plaintiffs' own pollution caused a significant part of the environmental damage, and requiring them to foot the entire bill is an equitable result under the circumstances of this case." Dkt. 1080 at 14.

The Court's award to Georgia-Pacific of its NRD payments under its Section 113 counterclaim reinforced the Defendants' understanding that NRDs were to be included in the "bill" that Plaintiffs should bear.[3] Because the Court's February 2011 Decision had awarded Georgia-Pacific its past NRD payments, the remaining Defendants believed Rule 60(a) to be the appropriate mechanism for clarification of any potential ambiguity or oversight in the Court's February 2011 Decision as it pertained to the their respective parallel counterclaims seeking

---

[3] Georgia-Pacific submitted a past cost claim totaling slightly more than $83 million. Dkt. 1080 at 19. That $83 million claim included Georgia-Pacific's prior NRD payments of approximately $13.1 million. *See* Georgia-Pacific LLC's and Certain Defendants' Motion for Summary Judgment on Equitable Factors, Dkt. 893 at 3 Par. C.3 (seeking "[a]ll amounts that Georgia-Pacific has incurred to assess natural resource damages (NRDs) or on account of natural resource damages for the Lower Fox River and Green Bay Site. Georgia-Pacific has settled its potential NRD liabilities with federal, state and tribal trustees through a combination of cash payments and environmental restoration projects valued at $13,126,370.62.") The February 2011 Decision granted Georgia-Pacific's motion for summary judgment on all of its claimed costs other than for $2.7 million in costs and damages to which the Plaintiffs had raised factual disputes. Dkt. 1080 at 25-26.

3

recovery under Section 113 of their NRD overpayments.[4] Plaintiffs disagree with Defendants' interpretation of the Court's decision, so there is a need for clarification.

Courts have often used Rule 60(a) to clarify potential ambiguities arising from mistake or inadvertence. *See, e.g.*, *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992); *see also Panama Processes, S.A. v. Cities Service Co.*, 789 F.2d 991, 993 (2nd Cir. 1986). *Burton* involved an ambiguous district court order that "the Petitioner be released unless a new trial is commenced within 90 days." *Id.* The Tenth Circuit acknowledged that the district court's decision was ambiguous because it was subject to two separate interpretations. It went on to hold that a district court is "permitted to invoke Rule 60(a) to resolve an ambiguity in its original order *to more clearly reflect its contemporaneous intent and ensure that the court's purpose is fully implemented.*" *Burton*, 975 F.2d at 694 (emphasis added).

Here, as in *Burton*, there are two possible interpretations of the Court's February 2011 Decision as it relates to NRDs: (1) that under CERCLA Section 113, consistent with the August 2008 and February 2011 rulings, the Plaintiffs should "foot the entire bill" for the environmental damages arising from the PCB contamination, including NRDs, or (2) that NRD overpayments, whether sought under Section 107 or Section 113, are not recoverable at all. As even NCR acknowledges, Rule 60(a) is properly invoked if the "error" in the decision "was by pure inadvertence." Dkt. 1125 at 6 (citing *Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 341 (7th Cir. 2004)).

Any supposed or arguable uncertainty as to the proper interpretation of the Court's decision on the NRD issues is correctable under Rule 60(a).

---

[4] Defendants were advised by Georgia-Pacific when the motion was filed that it did not join this motion because the Court had awarded its Section 113 NRD claim for its prior NRD payments it had made pursuant to its judicially-approved consent decree.

### B. If the Motion Does Not Fall Under Rule 60(a), the Court Can Consider It Under Rule 54(b) or Pursuant to Its Inherent Power to Reconsider Interlocutory Orders.

If there is any doubt as to whether Rule 60(a) has been properly invoked, the motion is unquestionably authorized under both Rule 54(b) and the Court's inherent power to reconsider interlocutory orders. Under Rule 54(b) "any order . . . which adjudicates fewer than all the claims . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties." It is also well established that a district court has the inherent power to reconsider interlocutory orders before entry of final judgment. *Manitowoc Marine Group LLC v. Ameron Int'l Corp.,* No. 03-C-0232, 2006 WL 2519219, at *1 (E.D. Wis. Aug. 29, 2006).

Regardless of its label, it is the substance of the motion that matters:

> In short, motions are to be analyzed according to their terms. When the substance and label of a post-judgment motion . . . are not in accord, district courts should evaluate it "based on the reasons expressed by the movant." Neither the timing of the motion, nor its label . . . is dispositive with respect to the appropriate characterization of the motion.

*Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008) (quoting *Jennings v. Rivers*, 394 F.3d 850, 855 n.4 (10th Cir. 2005) (internal citations omitted); s*ee also Bayer Healthcare, LLC v. Norbrook Labs, Ltd.*, No. 08-C-953, 2011 WL 1113366, *1 (E.D. Wis. Mar. 24, 2011) (a motion for reconsideration that failed to even mention the rule under which it was filed could properly be construed as a Rule 59(e) motion for reconsideration.)

Thus this Court has ample authority to clarify its rulings on NRDs.

### II. OVERPAYMENTS OF NATURAL RESOURCE DAMAGES ARE RECOVERABLE IN CONTRIBUTION UNDER CERCLA.

As demonstrated in the following discussion, while Defendants do not have standing to assert Section 107(a) NRD claims, they may recover their NRD overpayments from Plaintiffs

5

through Section 113 contribution actions. Consistent with this Court's rulings that Plaintiffs are liable for all of the response costs flowing from the environmental harm they unleashed, Plaintiffs are liable for all past and future natural resource damages arising from that harm.

> A. **CERCLA Section 113 Provides Private Parties Contribution Claims Against Others to Recover NRD Overpayments to Trustees.**

NCR's legal argument is that – because Section 113(f)(1) mentions response costs but not damages – there is no contribution claim by private parties for NRD overpayments to governmental trustees. But that contention wrongly overlooks the critical, first sentence of Section 113(f)(1):

> Any person may seek contribution from any other person who is liable or potentially liable under 9607(a) of this title [that is, CERCLA Section 107(a)] . . . .

42 U.S.C. § 9613(f)(1). This provision could not be more straightforward: parties such as the Defendants may seek contribution for *any* liabilities arising under Section 107(a). This key first sentence does not limit the contribution rights under Section 113(f) to claims involving Section 107(a)(1-4)(B) -- the subsection that addresses response costs. 42 U.S.C. Section 9607(a)(1-4)(B). Instead contribution rights apply more broadly to liability "under 9607(a)." Liability for NRDs, in turn, arises "under 9607(a)" (also referred to as CERCLA Section 107(a)). 42 U.S.C. § 9607(a)(1-4)(C). The fact that a subsequent sentence mentions only response costs does not foreclose what the first sentence unambiguously allows.

Furthermore, NCR's argument ignores the provisions of CERCLA Section 113(g)(3), which provides:

> No action for contribution for any response costs or ***damages*** may be commenced more than 3 years after --
> (A) the date of judgment in any action under this chapter for recovery of such costs or ***damages***, or
> (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title

6

> (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or ***damages***.

(Emphasis added.) ( "[D]amages" means "damages for injury or loss of natural resources as set forth in section [107](a). . . ." CERCLA Section 101(6).) There would be no need for a Section 113 NRD statute of limitations if Section 113(f)(1) did not allow such a claim. NCR's proposed interpretation of Section 113(f)(1) would write the word "damages" out of Section 113(g)(3) altogether, which is contrary to CERCLA's express provisions, and would violate the rules of statutory construction prohibiting any interpretation that does not give meaning to all of a statute's terms. *See, e.g., TRW, Inc. v. Andrews,* 534 U.S. 19, 31 (2001) ("It is a 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'") (citations omitted).

The federal agencies that implement CERCLA also understand that Section 113 allows NRD contribution claims. For example, EPA has stated:

> Sections 113(g)(3)-(4) provide exceptions for the Section 113(g)(1) limitation period on actions involving contribution and subrogation. Section 113(g)(3) provides that no action for contribution of NRD may be commenced more than three years after: (1) the date of judgment for recovery of NRD; or (2) the date of an administrative or court order for a *de minimis* or cost recovery settlement.

(http://www.epa.gov/superfund/programs/nrd/statute.htm)

Similarly, trustees routinely settle NRD claims against private parties via standard consent decrees that provide contribution protection for the settling party against further NRD liability from third parties. For example, Georgia-Pacific's Fox River NRD consent decree with the Department of Interior ("DOI") and other trustees provides:

> The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendant is entitled, as of the effective date of this Consent Decree, to **protection from contribution actions or claims as provided by Section**

7

> **113(f)(2)** of CERCLA, 42 U.S.C. § 9613(f)(2), or any other applicable law, **for** "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are Covered Response Costs and **Natural Resource Damages.**

Dkt. #900 [Declaration of Paul Montney in Support of GP's Motion for Summary Judgment] Ex. N [2002 NRD Consent Decree] at ¶ 23 (emphasis added). Again, there would be no need to extend such protection if NRD contribution claims did not exist in the first place. As the agencies generally entrusted with CERCLA enforcement, the EPA and DOI interpretation of the statute is entitled to deference. *See, e.g., Chevron v. Natural Res. Def. Council,* 467 U.S. 837 (1984).

Numerous courts have approved NRD consent decrees with contribution protection provisions, such as those found in the Georgia-Pacific Fox River NRD settlement that was approved by this Court. *See, inter alia, United States v. Fort James Operating Company*, 313 F. Supp. 2d 902 (E.D. Wis. 2004) (quoted above); *In re Acushnet River & New Bedford Harbor*, 712 F. Supp 1019 (D. Mass. 1989) (rejecting non-settlors' objections to NRD Consent Decree that included a contribution protection provision); *United States v. Southeastern Pennsylvania Transport. Auth.*, 235 F.3d 817, 821-22 (3d Cir. 2000) (approving Consent Decree that provided contribution protection for response costs and natural resource damages); *United States v. Keystone Sanitation Co.*, No. 1:CV-93-1482, 1999 WL 33597863, *4 (M.D. Pa. Sept. 10, 1999) (rejecting non-settling PRPs' objection to Consent Decree that "the inclusion of natural resource damages for which contribution protection is afforded is unfair to non-settlors.")[5]

Stated differently, the case law recognizes that parties who share a "common liability" under CERCLA are subject to contribution claims under Section 113. *United States v. Atlantic*

---

[5] NCR minimizes the two cases cited in our initial brief – *Amoco Oil v. Dingwell*, 690 F. Supp. 78, 85 (D. Me. 1988), and *Champion Labs., Inc. v. Metex Corp.*, 2008 WL 1808309 (D.N.J. April 21, 2008). But both cases support the legal proposition that NRDs can be awarded under Section 113. That neither case was at the stage where the facts had been sufficiently developed for an actual award of NRDs is of no moment. Here the facts have been developed.

*Research Corp.*, 551 U.S. 128, 138-139 (2007). In *Atlantic Research*, the Supreme Court stated that "contribution," as used in Section 113(f), should be given its traditional meaning, "the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his fair share, the shares being determined as a percentage of fault.'" *Id.* (quoting from Black's Law Dictionary 353, 8th Edition). "Thus, Section 113(f)(1) permits suit before or after the establishment of common liability." *Id.*

In this respect, CERCLA's NRD liability scheme is no different from typical tort liability. Under common law, the Uniform Contribution Among Joint Tortfeasors Act, or the Uniform Comparative Fault Act, a defendant that discharges a common liability by satisfying the plaintiff's claim may pursue contribution against other persons that share that common liability. *See Restatement (Third) of Torts* §23 (2000); *Unif. Comparative Fault Act* § 4 (1977); *Unif. Contribution Among Tortfeasors Act* §1 (1955). Anything else would be radically unfair, and Congress did not intend such an unfair result.[6]

### B. Defendants Properly Brought Their NRD Contribution Claims For Overpayments Under Section 113(f), Since Only Designated Governmental Trustees May Bring Section 107(a) Natural Resource Damage Claims.

The Defendants do not dispute that they lack standing to bring a claim for natural resource damages under CERCLA Section 107. CERCLA Sections 107(a)(1-4)(C) make specified parties liable for "damages for injury to, destruction of, or loss of natural resources . . . resulting from . . . a release." "Damages" is defined to mean "damages for injury or loss of *natural resources* as set forth in section [107](a) or [111](b) of this title." Section 101(6) (emphasis added). Section 101(16) of CERCLA defines "natural resources" to mean:

---

[6] In defining CERCLA contribution rights, Congress also addressed fairness to non-settlors by providing that a party's settlement with the government "reduces the potential liability of the others [meaning non-settlors] by the amount of the settlement." 42 U.S.C. § 9613(f)(2).

9

> Land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and such other resources *belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States . . . any State or local government, any foreign government, any Indian tribe . . . .*

(Emphasis added.) Only injuries to public or tribal resources are subject to NRD claims under Section 107(a), and private parties are not entitled to recover for public resource injuries. Section 107(f)(1) expressly states that:

> In the case of injury to, destruction of, or loss of natural resources under subparagraph (C) of subsection (a)[(4)] of this section [107] **liability shall be to the United States Government and to any State** for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State **and to any Indian tribe** for natural resources belonging to, managed by, controlled by, or appertaining to such tribe, or held in trust for the benefit of such tribe . . . .

(Emphasis added.) In short, private parties do not have *standing* to assert NRD claims under Section 107(a), but may bring claims for NRD overpayments under Section 113. That is exactly what the Court decided in August 2008 when it dismissed Plaintiffs' 107(a) NRD claims. Dkt. 277 at 15.

### C. Plaintiffs' Causation Arguments Are Unavailing.

Plaintiffs' arguments that Defendants have not satisfied "a prima facie" case of causation ignores CERCLA precedent and this Court's prior rulings. Dkt. 1125 at 9-10; Dkt. 1124 at 3-4. NCR argues that the "resulting from" language in CERCLA Section 107(a) requires the Defendants to establish that "releases *from a defendant's facility* caused the specific injury to the natural resources in question." Dkt. 1125 at 3 (emphasis in original). None of the cases cited by NCR say this, nor to our knowledge has any court ever so held, because that is not what Section 107(a) provides. At the outset, the pages cited by NCR in *Coeur D'Alene Tribe v. Asarco*, *Inc.*, 280 F. Supp. 2d 1094 (D. Idaho 2003), merely recite and compare the statutory elements of both a response costs claim and a claim for NRDs, which are remarkably similar. *Id.* at 1102-03.

10

Nowhere does the court say that the elements for an NRD claim include that: (a) the *specific* injury, (b) be *solely* caused by or result from, (c) releases from a defendant's facility.

While it is certainly true that Section 107(a)(C) requires the demonstration of a causal relationship between a release and the damages, *see, e.g. Dedham Water Co. v. Cumberland Dairy Farms, Inc.,* 889 F. 2d 1146, 1154 fn.7 (2d Cir. 1989), NCR and API have overstated the legal requirement for causation. NCR conveniently overlooks what the court in *Coeur D'Alene Tribe* did say about causation. That court was faced with a case analogous to the Fox River – one in which multiple sources released the same hazardous substances which became commingled. The court decided causation did not require "the Trustees to fingerprint which release caused what harm . . . ," *id.* at 1120, but only required proof that a party's release was a "contributing factor" to the damages. *Id.* at 1124.

API's reference to *2 RCRA and Superfund: A Practice Guide* (3rd ed. 2010) § 14:138, also conveniently omits that a variety of courts have adopted the "contributing factor" test for NRD liability. *Id.* at 14-291, 292. Another case cited by Plaintiffs, *Idaho v. Bunker Hill*, 635 F. Supp. 665, 674 (D. Idaho 1986), stands for nothing more than the proposition that there be "a causal link" between the damage and the release, not that the damage be solely caused by a defendant's release. Finally, *Dedham Water Company v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146, 1154 n.7 (2d Cir. 1989), simply noted that the difference between an NRD claim and a response costs claim is that in the former, "there must be *a connection* between the defendant and the damages to the natural resources; in the latter there must be a connection between the defendant and the response costs . . . ." (emphasis added).

Here, there is no question that the evidence, as found by this Court regarding the Plaintiffs' releases of PCBs and the resulting environmental damage, meets the causation

standard for imposing NRD liability. There is clearly "a causal link" or "a connection" between Plaintiffs' releases of PCBs into OU2-5 and their "creating the hazardous condition" which is the basis for NRD liability. Dkt. 1080 at 17. As a consequence, Plaintiffs share a common liability with Defendants for any injuries to natural resources in OU2-5 caused by their releases, which then are subject to Section 113 claims.

Further, based on the Plaintiffs' relative fault as compared to the Defendants, the Plaintiffs have been found 100% responsible for the response costs arising from common liability in OU2 - 5. Likewise, the allocation of NRDs arising from common liability in OU2-5 should be based on a determination of fault. *See Atlantic Research*, 551 U.S. at 138-39; *see also Morrison Enterprises v. Davos Corporation*, No. 10-1468, 2011 WL 1237526, *5, *8-*9 (8th Cir. Apr. 5, 2011).

Under a comparative fault standard, the Plaintiffs should foot the entire bill for the environmental damages resulting from all PCB releases into OU2-5. This is because, as this Court has already found and concluded,"[the Defendants] do not share any of the culpability for the PCB pollution that gave rise to this CERCLA action." Dkt. 1080 at 17. Given this Court's prior rulings on culpability, there is no logical or factual reason to treat the allocation of Defendants' Section 113 claims for NRDs any differently than their Section 113 claims for response costs.

Finally, Defendants will demonstrate at trial that NCR and API have arranger liability for the PCB discharges arising from the disposal of NCR broke at the Defendants' recycling plants. Therefore, in the event that any NRD payments ever specifically pertain to natural resource injuries in OU1, Plaintiffs will share a "common liability" for such payments which they should

12

fairly bear.[7]

### D. Plaintiffs Point to No Facts in Support of Their Speculation that NRD Statutory Defenses Might Apply.

NCR tosses in the contention that NRD claims contain a distinct set of statutory defenses. Dkt. 1125 at 9-10. Neither Plaintiff resisted summary judgment on this basis before. In responding to Defendants' motions they pointed to no evidence establishing a material factual dispute on any potential defense, and they point to none now. Their conjecture is not a sufficient basis to avoid summary judgment. *Wilson v. TecStar Mfg. Co.*, No. 04-CV-233, 2007 WL 201051, *4-*5 (E.D. Wis. Jan 23, 2007) (citing *O'Neal v. City of Chicago*, 392 F.3d 909, 912 (7th Cir. 2004); *see also Magarian v. Hawkins*, 321 F.3d 235, 240 (1st Cir. 2003) ("'Conclusory allegations, improbable inferences, and unsupported speculation' are insufficient to defeat summary judgment.") (quoting *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993)).

There is nothing to clarify as to defenses.

### III. THE DEFENDANTS ARE ENTITLED TO A DECLARATION THAT PLAINTIFFS ARE LIABLE IN CONTRIBUTION FOR NRD OVERPAYMENTS.

Under CERCLA Section 113(g)(2) or the Declaratory Judgment Act, 28 U.S.C. § 2201, Defendants are entitled to a declaration that Plaintiffs are liable to Defendants for any natural resource damages they pay to the Trustees. Defendants have shown that Plaintiffs are 100% liable to Defendants in contribution for natural resource damages in OU2-5 that the Defendants have already paid to the Trustees. This court should also enter a declaration that Plaintiffs are 100% liable to Defendants in contribution for any natural resource damages in OU2-5 that the Defendants pay to the Trustees in the future.

---

[7] Were the Court to conclude that Plaintiffs have arranger liability, it would be an independent basis, in addition to Plaintiffs' liability arising from their discharges of PCBs into OU2, for holding them liable for the NRDs in OU2-5.

While it is true that Glatfelter and Menasha Corp. took the position on a motion to dismiss early on in this case that a declaratory judgment was not available to Plaintiffs, Plaintiffs opposed that motion and they prevailed, the Court ruling that a declaration could be awarded. Dkt. 227 at 17.[8] Plaintiffs *won* the point of law at the motion to dismiss stage, but want to take up the *losing* side now. Defendants seek to apply the *winning* position on the point of law decided in 2008.

API contends that there is no need for a declaration of Plaintiffs' liability for future NRD overpayments because the Defendants have paid no NRDs, that Defendants have an "ulterior" motive, and that a declaration would serve no purpose. In fact, WTM and Glatfelter have paid NRDs to the Trustees. Those NRD payments, contrary to the Plaintiffs' statement, were not specific to OU1 natural resource injuries. The OU1 Consent Decree was a vehicle for the United States to require an "NRD Commitment," meaning partial payments for the Trustees' past expenditures and future restoration work at the Site as a whole. *See* Dkt. 889-6 [Amended OU1 Consent Decree] at ¶¶48, 49, 52(a)(ii), and 53. To the extent the Plaintiffs put forth evidence that specific NRD payments were due to injuries assessed by the Trustees specifically in OU1, WTM and Glatfelter should be able to recover by either showing that those NRD payments were not, in fact, specific to OU1 natural resource injuries,[9] or by prevailing on arranger liability.

Furthermore, payment of NRDs or response costs is not a prerequisite for obtaining declaratory relief as to liability for NRDs and response costs. *See City of Gary v. Shafer*, 683 F. Supp. 2d 836, 861-862 (N.D. Ind. 2010) (defendant/counterclaimant that was liable under §

---

[8] In its order, the Court chastened Menasha: "Strangely, one of the principal cases Menasha cites on this point holds just the opposite. In *Boeing Co. v. Cascade Corp.*, the Ninth Circuit affirmed the district court's apportionment of liability for future cleanup expenses and rejected the defendant's claim that the district court lacked authority to issue a declaratory judgment under § 113." Dkt. 227 at 17.
[9] Portions of the FRG costs claimed by WTM and Glatfelter are for OU2-5 NRD payments, pursuant to the 1997 Agreement Between the State of Wisconsin and Certain Companies Concerning the Fox River.

107(a) but that had not yet paid any response costs was granted declaratory judgment for § 113(f) contribution against plaintiff because future allocation dispute between the parties satisfied the case or controversy requirement of the Declaratory Judgment Act); *United States v. Davis*, 31 F. Supp. 2d 45, 59 (D. R.I. 1998) (contribution plaintiff was granted declaratory judgment against parties that were liable to plaintiff under § 113(f) because "apportionment of liability among the litigants presents a real and substantial controversy between parties having adverse interests that satisfies the requirements of the Declaratory Judgment Act").

Finally, API's accusations about Defendants' "ulterior purpose" are nonsensical. Like a declaration for future response costs, a declaration as to the liability for any NRDs paid in the future will remove the uncertainty the parties have been facing since 1994 regarding their NRD liability. The declaration will result in the Plaintiffs bearing the full responsibility for the environmental damages they unleashed. It is not a result the Plaintiffs agree with, but it is neither unfair nor a "ruse." And were any Defendant ultimately to reach a final settlement with the Trustees on NRDs, as Georgia-Pacific has, that settlement would be subject to the judicial Consent Decree approval process.

For the foregoing reasons, Defendants request that their motion be granted.

15

Dated: May 9, 2011.

Respectfully submitted,

| | |
|---|---|
| /s/ William H. Harbeck | /s/ David G. Mandelbaum |
| William H. Harbeck (Wis. Bar No. 1007004) | David G. Mandelbaum |
| Nancy K. Peterson (Wis. Bar No. 1000197 | Marc E. Davies |
| Peter C. Karegeannes (Wis. Bar No. 1015025) | Monique M. Mooney |
| QUARLES & BRADY LLP | Sabrina Mizrachi |
| 411 East Wisconsin Avenue | Caleb J. Holmes |
| Milwaukee, WI 53202 | GREENBERG TRAURIG, LLP |
| Telephone: 414_-277-5000 | Two Commerce Square, Suite 2700 |
| E-mail: william.harbeck@quarles.com | 2001 Market Street |
| | Philadelphia, PA 19103 |
| *Attorneys for Defendant WTM I Company* | Telephone: 215-988-7800 |
| | Email: mandelbaumd@gtlaw.com |
| | |
| | *Attorneys for Defendant P.H. Glatfelter Company* |
| | |
| /s/ Susan E. Lovern | /s/ Scott W. Hansen |
| Susan E. Lovern (#1025632) | Scott W. Hansen |
| Michael P. Carlton (#1016037) | Steven P. Bogart |
| Thomas Armstrong (#1016529) | Reinhart Boerner Van Deuren s.c. |
| Kelly J. Noyes (#1064809) | 1000 N. Water Street, Suite 1700 |
| Von Briesen & Roper, s.c. | P.O. Box 2965 |
| 411 E. Wisconsin Avenue, Suite 700 | Milwaukee, WI 53202 |
| Milwaukee, WI 53202 | Telephone: 414-298-1000 |
| Telephone: 414-276-1122 | Email: sbogart@reinhartlawa.com |
| Email: slovern@vonbriesen.com | |
| | Thomas R. Gottshall |
| *Attorneys for Defendant CBC Coating, Inc.* | Stephen F. McKinney |
| | Haynsworth Sinkler Boyd PA |
| | 1201 Main Street, Suite 2200 |
| | P.O. Box 11889 |
| | Columbia, SC 29211-1889 |
| | Telephone: 803-779-3080 |
| | Email: tgottshall@hsblawfirm.com |
| | |
| | *Attorneys for Defendant U.S. Paper Mills Corp.* |

16

/s/ William J. Mulligan  
William J. Mulligan (#1008465)  
Kevin J. Lyons (#1013826)  
Elizabeth K. Miles (#1064284)  
Davis & Kuelthau, s.c.  
111 E. Kilbourn Avenue, Suite 1400  
Milwaukee, WI 53202  
Telephone: 414-276-0200  
Email: wmulligan@dkattorneys.com  

*Attorneys for Defendant Neenah Menasha Sewerage Commission*

/s/ Paul G. Kent  
Paul G. Kent (#1002924)  
Richard C. Yde (#1013600)  
Ted Waskowski (#1003254)  
Stafford Rosenbaum LLP  
222 W. Washington Avenue, Suite 900  
P.O. Box 1784  
Madison, WI 53701-1784  
Telephone: 608-256-0226  
Email: pkent@staffordlaw.com  

James P. Walsh (#1009328)  
Appleton City Attorney's Office  
100 North Appleton Street  
Appleton, WI 54911-4702  
Telephone: 920-832-6423  
Email: jim.walsh@appleton.org  

*Attorneys for Defendant City of Appleton*

/s/ Philip C. Hunsucker  
Philip C. Hunsucker  
David A. Rabbino  
Hunsucker Goodstein & Nelson PC  
3717 Mt. Diablo Blvd., Suite 200  
Lafayette, CA 94549  
Telephone: 925-284-0840  
Email: phunsucker@hgnlaw.com  

*Attorneys for Defendant Menasha Corporation*

17  
Case 2:08-cv-00016-WCG   Filed 05/09/11   Page 17 of 18   Document 1130

CERTIFICATE OF SERVICE

      I hereby certify that on May 9, 2011, I electronically filed Defendants' Reply Memorandum in Support of Motion Seeking Clarification Under Rule 60(a) Regarding the Court's March 1, 2011 Decision and Order Concerning Natural Resource Damage Costs using the ECF system which will send notification of such filing by operations of the Court's electronic systems. Parties may access this filing through the Court's electronic system.

                                              /s/Wendy L. Goode
                                              Wendy L. Goode
                                              Legal Secretary
                                              QUARLES & BRADY LLP
                                              411 E. Wisconsin Avenue
                                              Suite 2040
                                              Milwaukee, WI 53202-4497