IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS, INC. and<br>NCR CORPORATION,<br><br>                Plaintiffs,<br><br>     v.<br><br>GEORGE A. WHITING PAPER<br>COMPANY, et al.,<br><br>                Defendants. | No. 08-CV-00016-WCG |

## DEFENDANTS'[1] SUBMISSION FOR AUGUST 1, 2011 STATUS CONFERENCE

Pursuant to this Court's July 14, 2011 Order (Dkt. 1141), the parties will appear for a status conference on August 1, 2011 to obtain the Court's guidance as to the issues identified in Dkt. 1140, which reflect the Parties' disagreement as to what the Court decided in its February 28, 2011 Decision and Order (Dkt. 1080) ("February 2011 Decision"). As directed by the Court's July 19, 2011 Order (*US v. NCR*, Dkt. 184), this submission briefly summarizes Defendants' perspective on those issues. In Defendants' view, the February 2011 Decision (1) provided the Court's analysis of the arranger liability issues that remain for trial, and (2) awarded

---

[1] This submission is filed on behalf of the following Defendants: Georgia-Pacific Consumer Products LP (f/k/a Fort James Operating Company), Fort James Corporation, and Georgia-Pacific LLC (collectively, "GP"), the City of Appleton, CBC Coating, Inc. ("CBC"), Menasha Corporation ("Menasha"), Neenah-Menasha Sewerage Commission ("NMSC"), P.H. Glatfelter Company ("P.H. Glatfelter"), US Paper Mills Corporation, and WTM I Company ("WTM I") (hereinafter collectively referred to as the "Defendants"). Defendants seek guidance from the Court on these issues, and do not intend to substantively brief all issues before the hearing. If the Court believes additional briefing is needed after the hearing on some or all of the issues raised, Defendants are happy to do so.

the OU 2-5 Defendants all of their past costs and natural resource damage overpayments[2]
(except $2.7 Million of GP's past cost claim and except to the extent past costs could be offset by insurance recoveries), and all of their appropriate future costs and damages. Despite the Court's conclusion "that Defendants are entitled to full contribution from the Plaintiffs for OU2-OU5 cleanup costs," Plaintiffs seek to relitigate virtually every issue decided in the February 2011 Decision. (February 2011 Decision, at 19). Plaintiffs also take an expansive view of the remaining factual issues that will determine whether they are liable as arrangers.

>   **Agenda Item No 1.** The parties disagree over the permissible scope of discovery on the arranger issue. This has potential implications for depositions and pending discovery requests.

Plaintiffs intend to take extensive new discovery of Defendants on arranger issues, including re-deposing many if not all of their seventy and eighty year-old former employees about events forty to fifty years ago. Defendants believe re-deposing their former employees is unnecessary.

In its February 2011 Decision, this Court denied Defendants' motion for summary judgment seeking past and future costs of cleaning up Little Lake Butte des Morts ("OU1") because Plaintiffs had demonstrated the existence of a dispute over whether Plaintiffs' predecessors ACPC and Combined Paper Mills "arranged" for disposal of hazardous substances by selling "broke" to recycling paper mills through waste paper brokers. The Court found:

> [A]lthough "knowledge alone" is not enough (as in *Burlington*), it is probable that Plaintiffs would have arranger liability if Defendants can show their intent to dispose of broke (even valuable broke) combined with a particular

---

[2] Defendants do not here raise the issue of whether natural resource damages were awarded by this Court, as there is currently a separate motion seeking clarification on that issue. (Dkt. 1103).

knowledge that nontrivial amounts of the broke waste product would
inevitably end up in the river. . . . [T]hese are fact questions . . . .

(February 2011 Decision, at 9).

That ruling sets forth the only facts at issue for trial on the "arranger" question.[3] Those facts deal only with the knowledge and intent of *Plaintiffs* or their predecessors. As the Court specifically stated: "Here the debate turns on ACPC's intent in selling the broke to brokers." Dkt 1080 at 6. Therefore, on-going discovery and the February 2012 trial should have nothing to do with the knowledge or intent of any of *Defendants*. Indeed, the undisputed facts concerning recycling mills' knowledge and intention have already been set out multiple times in Phase I of this case. Should it be important to the efficient disposition of this phase of the case, however, Defendants will stipulate or unilaterally admit to the undisputed facts about recycling mills' purpose in buying and use of NCR Paper broke and trim in their operations, as set forth in the footnote below.[4]

Discovery of Defendants, their former employees, or third-parties would only be proper under Fed. R. Civ. P. 26 if that discovery would be reasonably likely to lead to admissible evidence concerning the knowledge or intent of *Plaintiffs* or their predecessors. If any further discovery were allowed, it must be limited to subject matter not previously covered in the more than 140 depositions that were taken in this case during 2009. Plaintiffs

---

[3] The parties may have legal disputes, such as how particular Plaintiffs' knowledge had to be about the "disposal" within the sense of 42 U.S.C. § 6903(3), which would not affect the issues relevant for trial.

[4] Recycling mills purchased broke and trim because its paper fibers had value to them for which they were willing to pay. Recycling mills purchased broke knowing that it contained coatings, fillers, sizing, print, and other non-fiber materials that would have to be removed in order to recover reusable paper fibers. Recycling mills knew that the materials they removed from broke would either: (1) be retained to some degree on the fibers they would reuse; (2) be removed from recycling wastewater by onsite waste water treatment plants and ultimately disposed on land; or (3) be discharged into the public sewer or into the receiving stream for the mill.

3

have already questioned each deponent, all or substantially all of whom were past retirement age, some well into their 80s, on all aspects of Defendants' historical operations, knowledge of PCBs, and intentions with respect to paper recycling. Defendants do not believe that further depositions of any of their current or former employees would be appropriate ***except*** to the extent that the witness was not previously deposed or the deposition is limited to what that witness knows of ***Plaintiffs'*** knowledge or intent.

> **Agenda Item No. 2.** **The parties dispute whether this Court awarded all costs incurred by the Fox River Group ("FRG"), or whether at least some FRG costs are currently subject to discovery and trial.**

Plaintiffs believe this Court did not award Defendants FRG costs and that Defendants have the burden to prove at trial that these costs were consistent with the National Contingency Plan ("NCP"). Defendants believe the Court did award their FRG costs and that this particular set of costs need not be shown to be NCP-consistent in light of the FRG Agreements entered into by the parties.

When Plaintiffs initiated this action, they sought, among other things, reallocation of the costs they had incurred with the FRG. (Dkt. 265, at ¶¶ 54, 55). The FRG Agreements specified provisions for a final reallocation of the FRG costs. (*See* Dkt. 909 ("Vogel Decl."), at ¶ 12, 15-16, 18). By initiating this action, NCR and API put in motion the "final allocation."

In turn, Defendants sought their FRG costs in their counterclaims. In Section B.3 of their motion (Dkt. 893), for example, Defendants generally asked for "[a]ll assessments Defendants paid to fund the Fox River Group after January 1, 1997 . . ." and GP, CBC, Glatfelter and WTM I specifically identified their FRG costs and interest in Section C.6 of Dkt. 893, in Dkt. 905 at 3, and in Dkt. 861 at 1.c and 2.c, respectively. All FRG costs and interest claims were fully supported by the Vogel Declaration (Dkt. 909).

4

Defendants fully briefed their requests for equitable allocation of their FRG costs, (*See* Dkt. 893, at 8-9, 30), and Plaintiffs fully responded to those arguments. The parties also specifically addressed statute of limitations arguments and the issue of whether Defendants had properly pled their claim for FRG costs by reference to Federal Rule of Civil Procedure 54(c), which allows this Court to enter judgment on the FRG costs even if not expressly requested in Defendants' pleadings. (*Id.* at 8 n.4).

Based on all of the foregoing, this Court held that "Defendants are entitled to contribution from Plaintiffs for expenses incurred in cleaning up OU2-OU5. . . " (February 2011 Decision, at 33). In fact, this Court expressly granted Dkt. No. 893 (which detailed Defendants' FRG costs) in its February 2011 Decision, with certain exceptions that did not include FRG costs.[5] If, however, Defendants are mistaken and the Court did not award Defendants their FRG costs, it should do so as part of these proceedings. It would be inefficient to resolve the FRG cost claims in some other or subsequent proceeding.

> **Agenda Item No. 3.** **Plaintiffs and GP dispute which other specific GP costs remain at issue following the February 2011 Decision.**

In its February 2011 Decision, this Court noted that: "Plaintiffs also challenge roughly $2.7 million in expenses GP seeks on the grounds that the expenses were not necessary or consistent with the National Contingency Plan." (February 2011 Decision, at 25). This Court then ruled in favor of GP's Motion for Summary Judgment, other than with respect to "issues of fact [that] preclude a ruling ***on some aspects of damages, as set forth above***." (*Id.* at 33) (emphasis added). Nevertheless, Plaintiffs now seek full discovery of GP's response costs, and

---

[5] The OU1 Defendants, Glatfelter and WTM 1 also incurred FRG costs in relation to OU 2-5, and in any event, FRG costs should be awarded pursuant to the FRG Agreements and not as a Section 113 Contribution claim. Thus, the OU 1 Defendants should also be entitled to recover their FRG costs regardless of whether our not Plaintiffs are "arrangers" for OU 1 releases.

specifically seek detailed information with respect to $8,072,125.62 of those costs. In GP's view, further discovery is only warranted on the $2.7 million of GP's costs actually contested by Plaintiffs.

In its Motion for Summary Judgment, GP provided detailed descriptions and documentation of its response costs and natural resource damage overpayments. The burden was then shifted to Plaintiffs to demonstrate either (1) the existence of a genuine issue of a material fact supporting GP's cost claims, or (2) that GP was not entitled to recovery of its costs as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) ("When the moving party has carried its burden under *Rule 56(c)*, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*'") (citation omitted, emphasis in original); *see also Albiero v. City of Kankakee*, 246 F.3d 927 (7th Cir. 2001). As noted, Plaintiffs disputed only $2.7 million in costs sought by GP.

Plaintiffs now assert, however, that the issues of fact they raised in their briefing were only "examples." Not only does this argument come too late – it fails. Plaintiffs had the burden to raise issues of fact in their opposition, but chose to challenge only $2.7 million of GP's costs and damages. Plaintiffs cannot now claim that there are many more issues of fact than those they expressly identified. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (party opposing summary judgment must "identify with reasonable particularity the evidence upon which he relies [and t]he evidence relied upon must be competent evidence of a type otherwise admissible at trial.").

> **Agenda Item No. 4.** The parties disagree about the permissible scope of discovery on the insurance issue, including discovery related to (a) defense costs, (b) conditional settlement agreements, and (c) an unidentified insurance carrier.

6

Case 2:08-cv-00016-WCG    Filed 07/25/11    Page 6 of 14    Document 1145

In its February 2011 Decision, the Court denied Defendants' motions to the extent Defendants' costs were covered by insurance and stated that further discovery on relevant insurance proceeds may be permitted if necessary. (February 2011 Decision, at 25). The parties are now engaged in such discovery, and on April 4, 2011, NCR served Interrogatories and Requests for Production of Documents (the "Insurance Requests") on Defendants requesting information on payments received from any insurer relating to Lower Fox River Environmental Claims, as well as whether Defendants contended that any portion of the payment should not be applied to and/or offset against Defendants' recovery. Defendants believe that the relevant inquiry should be limited to whether an award from Plaintiffs would amount to a double recovery because of amounts recovered from insurers in settlement of insurance coverage litigation. The following issues are in dispute:

**(a) Defense Costs (GP, WTM I, and CBC).**

NCR has requested the detailed billing records of GP's counsel in *this litigation*, claiming those documents are relevant to whether insurance settlements received by GP to cover attorneys' fees can be used to offset GP's recovery. Pursuant to Federal Rule of Evidence 1006, GP produced a summary of these attorneys' fees and costs. The detailed billing records themselves are not relevant because the sole issue here is whether GP will obtain double recovery, not the reasonableness of the fees or the substance of the legal work performed. Furthermore, the detailed billing records of GP's counsel in *this litigation* are clearly privileged.

Similarly, WTM has produced a copy of each and every monthly Quarles &Brady LLP invoice summary *for the current litigation* that has been submitted to one carrier. Each monthly invoice summary shows the total monthly charges for the underlying detailed hourly bills. In addition to producing the invoice summaries, WTM has also produced the documents evidencing

the payments made by the carrier, which match the amounts shown on the Quarles & Brady LLP invoice summaries. The detailed hourly bills have not been produced because they are not relevant for the reasons expressed in the previous paragraph.

A similar issue may also pertain to CBC.

**(b) Conditional Settlement Agreements (WTM I).**

In its Insurance Requests, NCR requested information on, among other things "payments…which you have contracted to receive in the future" from any Insurer relating to Lower Fox River Environmental Claims. Other than the payments from one carrier described in the previous section (for which documents have been produced), WTM I has received no payments from its other insurers. Other insurers have entered into two confidential conditional settlements with WTM I. Those agreements create only the ***possibility*** of payments in the future, ***if*** certain conditions occur. They are not contracts "to receive [payments] in the future" because the agreements do not currently, and may never, require the carriers to make any payments. If there are no payments, there can be no set-off.

WTM I has objected to the discovery on the grounds that this information is not discoverable, and that the requests are premature and seek confidential information that cannot be adequately protected through the Stipulated Protective Order entered by this Court. ("Protective Order," Dkt. 1127). WTM I is very concerned that production of the agreements and related information could adversely impact future negotiations between WTM I and its carriers. If it appears that the conditions will not occur, the agreement with the carriers may be renegotiated and/or materially amended. Disclosure also could adversely impact possible negotiations between WTM I and Plaintiffs, and possible mediation and/or negotiations between WTM I and the governments. WTM I's carriers also view the conditional settlement

agreements and related information as currently irrelevant to set-off (among other objections to production) and, therefore, certain carrier representatives as to each agreement will not waive the confidentiality provisions of these agreements even if the documents were to be produced pursuant to the Protective Order.

As to the carrier that has covered some defense costs, WTM I has a conditional agreement in principle that has not yet been finalized. Drafts of the conditional agreement have not been produced; it is still under negotiation. The documents that have been produced include correspondence indicating that the carrier's payments have been made to WTM I subject to the carrier's full and complete reservation of rights, including the carrier's statement that it reserves the right to seek reimbursement of the amounts paid if a final settlement is not reached.

WTM I's discovery responses further make clear that if and when any additional payments are received from carriers, WTM I's responses will be supplemented accordingly.

### (c) Unidentified Insurance Carrier.

In response to the Insurance Requests, four Defendants produced insurance policies, settlement agreements, and correspondence with the name of the insurance carrier redacted ("Carrier X"). The settlement agreements between the four defendants and Carrier X contain a confidentiality clause, which requires any party in receipt of a discovery request related to the settlement agreement to decline to provide the requested information. Upon notice by Defendants of the Insurance Requests, counsel for "Carrier X" agreed to allow Defendants to produce the documents under the Protective Order and with the name of the insurance carrier and all references to the insurance carrier redacted. The documents were produced in this manner by agreement among the parties.

Subsequent to this production by Defendants, NCR has requested production of the documents without redaction. Carrier X continues to invoke the settlement agreements and has not consented to disclosure of the documents without redaction. Unless under court order to disclose the identity of Carrier X, such disclosure would place Defendants in violation of the settlement agreements.

> **Agenda Item No. 5**: The parties dispute whether NCR and API may challenge the recoverability of any amounts paid by Glatfelter or WTM I pursuant to the OU1 Consent Decree, as amended, except on the grounds (a) that NCR and API are not "arrangers" or (b) that the amounts should be offset by insurance recoveries.

In their motion for summary judgment, WTM I and Glatfelter sought (a) FRG Costs, which were incurred in connection with downstream projects, (b) certain OU2-5 response costs, and (c) a declaration as to future costs. This Court concluded that WTM I and Glatfelter's motion as to payments made under the OU1 Consent Decree "will require a determination of 'arranger' liability." (February 2011 Decision, at 33).

"Arranger liability" and the insurance offset (if any) are the only issues left open on the recoverability of payments by WTM I and Glatfelter pursuant to the consent decree and amended consent decree entered in *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949-LA (E.D. Wis.). Section 113(f)(3)(B) of CERCLA permits recovery in contribution of amounts paid in under CERCLA settlements with the United States or a State. 42 U.S.C. § 9613(f)(3)(B). There is no factual dispute that Glatfelter and WTM I resolved claims of the United States and the State under a consent decree that called for payments, which each party made, to an escrow account. There is no dispute as to the amounts of those payments. The only factual issue for trial as to these OU1 costs is the "arranger" question noted above.

Plaintiffs wish to examine how the funds were spent or if they were spent. Disposition of settlement payments is not relevant to a contribution claim under section

113(f)(3)(B) as a matter of law. If Plaintiffs fully reimburse Defendants, they, of course, would be subrogated to any rights that Defendants would have to return of any unspent money in the OU1 Escrow Account.

**Agenda Item No. 6:  The effect of the Court's Order Granting Reconsideration (Dkt. No. 1139) on the current Scheduling Order.**

Defendants do not believe that the Court's July 5, 2011 Orders regarding API's CERCLA liability in this litigation and in the US enforcement action have affected the current Scheduling Order.  (*See* Dkt. #1139, Order Granting Reconsideration and Regarding Numerous Motions Files in 2009); (*US v. NCR*, Dkt. #172, Decision and Order).  Defendants would oppose any request from API to dismiss *Whiting* claims against it based on those Orders.

**Agenda Item No. 7:  The location of the trial scheduled to commence on February 21, 2012**

Defendants will try the case in Green Bay or any alternative location the Court prefers.

Dated:  July 25, 2011                                        Respectfully Submitted,

| | |
|---|---|
| /s/ Mary Rose Alexander<br><br>Mary Rose Alexander<br>*IL Bar No. 6205313*<br>*CA Bar No. 143899*<br>Margrethe K. Kearney<br>*IL Bar No. 6286559*<br>LATHAM & WATKINS LLP<br>233 S. Wacker Dr.<br>Ste. 5800<br>Chicago, IL 60606<br>Telephone: (312) 872-7700<br>Facsimile: (312) 993-9767<br>Mary.Rose.Alexander@lw.com<br>Margrethe.Kearney@lw.com<br><br>Karl S. Lytz<br>*CA Bar No. 110895*<br>Patrick J. Ferguson<br>*CA Bar No. 252778*<br>LATHAM & WATKINS LLP<br>505 Montgomery St., Ste. 2000<br>San Francisco, CA 94111-6538<br>Telephone:  (415) 391-0600<br>Fax:  (415) 395-8095<br>Karl.Lytz@lw.com<br>Patrick.Ferguson@lw.com<br><br>**Attorneys for Defendants Georgia-Pacific Consumer Products LP (f/k/a Fort James Operating Company), Fort James Corporation, and Georgia-Pacific LLC** | /s/ Philip C. Hunsucker<br>Philip C. Hunsucker<br>David A. Rabbino<br>Hunsucker Goodstein & Nelson PC<br>3717 Mt. Diablo Blvd., Suite 200<br>Lafayette, CA 94549<br>Telephone:  925-284-0840<br>Email:  phunsucker@hgnlaw.com<br><br>**Attorneys for Defendant Menasha Corporation** |

| | |
|---|---|
| s/ William H. Harbeck<br>William H. Harbeck (Wis. Bar No. 1007004)<br>Peter C. Karegeannes (Wis. Bar No. 1015025)<br>Nancy K. Peterson (Wis. Bar No. 1000197)<br>Quarles & Brady LLP<br>411 E. Wisconsin Avenue<br>Milwaukee, WI 53202<br>Telephone: 414-277-5000<br>whh@quarles.com<br><br>**Attorneys for Defendant WTM I Company** | s/ David G. Mandelbaum<br>David G. Mandelbaum<br>Marc E. Davies<br>Monique M. Mooney<br>Sabrina Mizrachi<br>Caleb J. Holmes<br>Adam B. Silverman<br>GREENBERG TRAURIG, LLP<br>Two Commerce Square, Suite 2700<br>2001 Market Street<br>Philadelphia, PA 19103<br>215.988.7800<br>mandelbaumd@gtlaw.com<br><br>**Attorneys for Defendant P.H. Glatfelter Company** |
| s/ Susan E. Lovern<br>Susan E. Lovern (#1025632)<br>Michael P. Carlton (#1016037)<br>Thomas Armstrong (#1016529)<br>Kelly J. Noyes (#1064809)<br>von Briesen & Roper, s.c.<br>411 East Wisconsin Avenue, Suite 700<br>Milwaukee, WI 53202<br>Telephone: (414) 276-1122<br>Fax: (414) 276-6281<br>slovern@vonbriesen.com<br>mcarlton@vonbriesen.com<br>tarmstro@vonbriesen.com<br>knoyes@vonbriesen.com<br><br>**Attorneys for Defendant CBC Coating, Inc.** | s/ Scott W. Hansen<br>Scott W. Hansen<br>Steven P. Bogart<br>Reinhart Boerner Van Deuren s.c.<br>1000 North Water Street, Suite 1700<br>P.O. Box. 2965<br>Milwaukee, WI 53202<br>Telephone: 414-298-1000<br>Facsimile: 414-298-8097<br>sbogart@reinhartlaw.com<br>shansen@reinhartlaw.com<br><br>Thomas R. Gottshall<br>Stephen F. McKinney<br>Haynsworth Sinkler Boyd PA<br>1201 Main Street, Suite 2200<br>P.O. Box 11889<br>Columbia, SC 29211-1889<br>Telephone: 803-779-3080<br>Facsimile: 803-765-1243<br>tgottshall@hsblawfirm.com<br>smckinney@hsblawfirm.com<br><br>**Attorneys for Defendant U.S. Paper Mills Corp.** |

| | |
|---|---|
| /s/ Paul G. Kent<br>Paul G. Kent (#1002924)<br>Richard C. Yde (#1013600)<br>Ted Waskowski (#1003254)<br>Stafford Rosenbaum LLP<br>222 W. Washington Avenue, Suite 900<br>P.O. Box 1784<br>Madison, WI 53701-1784<br>Telephone:  608-256-0226<br>Email:  pkent@staffordlaw.com<br><br>James P. Walsh (#1009328)<br>Appleton City Attorney's Office<br>100 North Appleton Street<br>Appleton, WI 54911-4702<br>Telephone:  920-832-6423<br>Email:  jim.walsh@appleton.org<br><br>**Attorneys for Defendant City of Appleton** | s/William J. Mulligan<br>William J. Mulligan (WI Bar No. 1008465)<br>Kevin J. Lyons (WI Bar No. 1013826)<br>Elizabeth K. Miles (WI Bar No. 1064284)<br>Davis & Kuelthau, s.c.<br>111 E. Kilbourn Avenue, Suite 1400<br>Milwaukee, WI 53202<br>Telephone: (414) 276-0200<br>Facsimile: (414) 276-9369<br>Email: wmulligan@dkattorneys.com<br>klyons@dkattorneys.com<br>emiles@dkattorneys.com<br><br>**Attorneys for Defendant Neenah Menasha Sewerage Commission** |