# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

| | | |
|---|---|---|
| APPLETON PAPERS INC. and NCR CORPORATION, | ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | No. 08-CV-16-WCG |
| GEORGE A. WHITING PAPER COMPANY, et al., | ) ) ) ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| NCR CORPORATION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 08-CV-0895-WCG |
| KIMBERLY-CLARK CORPORATION, ET AL., | ) ) ) | |
| Defendants. | ) | |

_____

**PLAINTIFF NCR CORPORATION'S RESPONSE TO GEORGIA-PACIFIC LLC'S MOTION FOR SANCTIONS AGAINST APPLETON PAPERS INC., DEWITT ROSS & STEVENS S.C., AND HERMES LAW LTD.**

_____

**PRELIMINARY STATEMENT**

In addition to seeking sanctions against Appleton Papers Inc. ("API"), Georgia-Pacific LLC ("GP") also—and improperly—asks the Court to enter adverse inferences and other injunctive relief against NCR Corporation ("NCR").[1] There is no basis in law or equity for such requests. As discussed in more detail below, NCR has never seen, had possession of, or had any control over or ability to access any of the original materials from the Butler's Court facility. Moreover, NCR has never received any Butler's Court materials until after GP itself had already received them. Simply put, NCR has never had, and continues not to have, any involvement with the Butler's Court materials, with one notable exception: very early on, NCR asked API's counsel to ensure that all steps be taken to *preserve* these materials.

It would be entirely inappropriate to sanction NCR for the alleged acts of its co-party when there is no evidence that NCR had the ability to control the Butler's Court materials. Moreover, the essential element of a sanctions claim—bad faith—is entirely lacking as to NCR. GP does not even attempt to suggest that NCR tried to "hide adverse information," nor can it. NCR's only action was to request that those with access or control make the effort to preserve the evidence. NCR therefore respectfully requests that the relief GP seeks be denied to the extent it is directed against or otherwise prejudicial to NCR.

---

[1] This response is directed only to that part of GP's motion that is addressed to NCR. NCR takes no position with respect to those portions of the motion, or the relief sought, that pertain exclusively to API.

ARGUMENT

I.   NCR HAD NO INVOLVEMENT IN THE EVENTS GIVING RISE TO THIS MOTION.

GP misleads the Court when it insinuates that NCR had "access" to the index of the Wiggins Teape documents and therefore should have known that there were additional documents allegedly responsive to Defendants' discovery requests. Georgia-Pacific LLC's Memorandum in Support of its Motion for Sanctions, Dkt. 1169, p. 5 ("GP Brief"). The facts demonstrate exactly the opposite:

- NCR never owned the Butler's Court facility from which these documents originated. *See* Declaration of E. Gallagher ("Gallagher Decl."), ¶ 3.

- NCR has never seen, had physical possession of, or been given access to the paper documents or the microfiche maintained at, or obtained from, the Butler's Court facility. *See* Gallagher Decl., ¶ 4.

- NCR has also never had any ability to control the paper documents or the microfiche from the Butler's Court facility. In particular, NCR is not aware of any agreement, law or legal theory that gives NCR the legal right to any documents controlled by Wiggins Teape, API, Appleton Coated LLC ("Appleton Coated"), or counsel for any of these entities. *See* Gallagher Decl., ¶ 5.

- NCR did not even know that the Butler's Court paper documents or microfiche existed until informed of this fact on April 7, 2009, in a letter from counsel for GP. *See* Gallagher Decl., ¶ 6.

- NCR first learned of the alleged destruction of the paper documents from the Butler's Court facility when it received a letter dated May 5, 2009, signed by counsel for GP. *See* Gallagher Decl., ¶ 8. On May 6, 2009, Ernest Getto (counsel for GP) sent an email to Kathy Roach (counsel for NCR) requesting that NCR "take all necessary steps to preserve these records." On May 7, 2009, Ms. Roach responded that NCR has no existing corporate relationship with any of the relevant entities and no control over the Butler's Court documents. Ms. Roach further stated that notwithstanding these limitations, NCR had asked API to request that the records "be preserved indefinitely (until the issue has been finally resolved either in the US or the UK) at a solicitor's office in England." *See* Gallagher Decl., ¶ 8. Ms. Roach also informed GP that NCR had no additional information regarding the alleged destruction of the Butler's Court hard copy documents (other than what was contained in the materials provided to NCR by GP).

- The first time NCR saw anything from the Butler's Court facility was in September 2009, when NCR's counsel received electronic images of the Butler's Court microfiche from

Hermes Law Ltd. This was *after the same images had already been provided to GP*. In addition, to NCR's knowledge, NCR's counsel received the same set of images that GP received (BCFOX00000001 – BCFOX00065026), and did not receive any documents or databases beyond those produced to GP. *See* Gallagher Decl., ¶¶ 10-11.

- NCR first learned about the alleged destruction of the microfiche and other Butler's Court materials on June 22, 2011, when NCR's counsel received a call from counsel for Appleton Coated. Appleton Coated formally advised the Court of this fact the next day. *See* Gallagher Decl., ¶ 12.

- Prior to that time, NCR did not have any information about the whereabouts of the microfiche. *See* Gallagher Decl., ¶ 13. In particular, NCR never knew that the microfiche had been returned to the United Kingdom or that the microfiche had been sequestered due to a tariff dispute, as was recently reported. *See* Gallagher Decl., ¶ 13; Dkt. #1174-8 at 4.

- NCR's counsel received additional electronic images of the Butler's Court microfiche from Hermes Law Ltd. on August 2, 2011, and August 18, 2011. As before, to NCR's knowledge, NCR's counsel received the same set of documents that GP received, *after* GP received them, and did not receive any documents or databases beyond those produced to GP. *See* Gallagher Decl., ¶ 14.

- NCR's counsel received a duplicate set of the Butler's Court microfiche images from GP on August 9, 2011. Together with those images, NCR's counsel also received a Microsoft Office Access Database that is presumably the "indexing database" referenced in the third bullet on page 1 of GP's memorandum. Prior to this date, NCR had never seen or had access to this database. To NCR's knowledge, it was not included in *any* productions from API to NCR. *See* Gallagher Decl., ¶ 15.

- Neither NCR nor its counsel were part of any discussions with any person about destroying any materials from the Butler's Court facility (other than the communications referenced above), and NCR was not aware of any destruction, loss, damage to, or other disposition of the Butler's Court microfiche. *See* Gallagher Decl., ¶ 16.

These facts unequivocally show that NCR had no involvement in the events giving rise to this motion. In particular, they show that GP is wrong to suggest that NCR must have had "access to at least the indexing database." GP Brief, p. 5. To this day, NCR has never received any materials from the Butler's Court facility (including the indexing database) before GP itself received them. In addition, NCR has never been consulted about the preservation of these materials, nor has it had any information about the location of any of these materials beyond that which has been given contemporaneously to GP and the Court. Finally, NCR has

never had any right or ability to control these materials. The fact that NCR and API are both parties to a joint defense agreement does not change this conclusion. The agreement between NCR and API does alter their status as mere arms-length co-obligors, and certainly does not give NCR any "legal right" to API's documents, as NCR has explained to GP's counsel in the past. *See* Gallagher Decl., ¶ 5. Thus, GP's attempt to tarnish NCR by association should not be permitted.

## II. THERE IS NO BASIS FOR ESTABLISHING ANY ADVERSE INFERENCES AGAINST NCR.

Neither the law nor the facts support GP's request that the Court establish an inference—***adverse to NCR***—that NCR, Wiggins Teape and Appleton Coated Paper Company were at all times aware of and knowledgeable regarding all material aspects of the repulping of NCR Paper broke and trim.

The case law is clear that adverse inference sanctions should not be imposed against a co-party, like NCR here, that had no part in the destruction of the evidence at issue. *See, e.g.*, *Gurvey v. Fixzit Nat'l Install Serv., Inc.*, No. 06-1779, 2011 WL 550628, at *5 (D.N.J. Feb. 8, 2011). In *Gurvey*, plaintiffs sought an adverse inference sanction based on an allegation that one group of defendants had destroyed records relevant to the case. The court found that there was no evidence of spoliation and additionally held: "Spoliation inferences are only appropriately entered against the party that actually destroyed the evidence. . . . [I]t would serve no sensible purpose to punish innocent co-defendants so severely for the malfeasance of others." *Id*. To punish NCR for the alleged acts of its co-party API (or for the alleged acts of *non-parties*) would run directly counter to this case law, as well as violate the Seventh Circuit's requirement that Rule 37 sanctions be proportionate to the offending conduct. *See generally Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997); *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998).

4

Moreover, GP has failed to show that *any* of the prerequisites exist here for imposing an adverse inference sanction *against NCR*.[2] For example, in order to find that sanctions for spoliation are warranted against NCR, the Court must find that NCR had control over the evidence and therefore a duty to preserve it. *See MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 800 (N.D. Ill. 2010)("A party has a duty to preserve evidence over which it had control and reasonably knew or could reasonably foresee was material to a potential legal action."). No such finding can be made here. As discussed above, NCR never had any right to access any of the Butler's Court materials, much less possession of or control over these materials. Further, as is shown by the recent rulings of this Court in the case of *United States, et al. v. NCR Corp., et al.*, No. 10-cv-910 (E.D. Wis.), even though NCR and API share the title of "plaintiff," they are very much separate entities and the actions of one cannot be imputed to the other. Under such circumstances, an adverse inference against NCR, for the alleged actions of API, is not appropriate.

In addition, an adverse inference can be imposed against a party only if there is a finding that the party destroyed the evidence in bad faith (*i.e.,* for the purpose of "hiding adverse information"). *See generally Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002) ("[T]o draw such an inference, the employer must have destroyed the documents in bad faith."); *Olson*

---

[2] Although the primary focus of GP's brief is on the actions of API, GP does make one passing criticism of NCR, when it argues that certain laboratory notebooks recently produced by NCR in response to document requests in this phase of the litigation should have been produced during Phase I. GP Brief, pp.5-6. This point is misleading and incorrect. As NCR explained to GP, "[T]he laboratory notebooks included in the [recent] Production were not produced [earlier] because they did not contain information responsive to the Phase I discovery requests. While each has occasional references to NCR Paper, none of these references is relevant to the specific, narrow set of issues on which the Court permitted discovery—a restriction that was imposed at Defendants' urging." *See* Gallagher Decl., ¶ 18. In addition, there is no allegation of bad faith as to these notebooks and, in fact, NCR has been diligently working to produce all responsive documents relevant to this phase as quickly as possible.

*v. Sax*, No. 09-C-823, 2010 WL 2639853, at *2 (E.D. Wis. June 25, 2010)("Such a showing is a prerequisite to imposing sanctions for the destruction of evidence. . . . It is not enough to show that evidence was destroyed intentionally; 'bad faith' means destruction for the purpose of hiding adverse information." (citation and internal quotation marks omitted)). As the Seventh Circuit has made clear: "First the court must be of the opinion from the fact that a party has destroyed evidence that the party did so in bad faith. Only then may the court infer from this state of mind that the contents of the evidence would be unfavorable to *that party* if introduced in court." *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R.*, 695 F.2d 253, 258 (7th Cir. 1982) (emphasis added).

Here, there can be no finding that (i) NCR destroyed any of the Butler's Court materials or (ii) that NCR did so for the purpose of "hiding adverse information." NCR never had possession or control over any of the Butler's Court materials, never had any information about their contents before copies were produced to GP, and never even had any information about their location until *after* the materials had allegedly already been destroyed. Given these facts, it is impossible to find that NCR destroyed any of the Butler's Court materials, let alone that it acted in bad faith. Accordingly, an adverse inference as to NCR cannot be justified.

None of the cases relied on by GP compels a different conclusion. The only cited case that involved a co-party was *Langley*, but it is factually different from this case in every critical respect. There, a party was sanctioned for a co-party's destruction of evidence—but only because the party was aware of the evidence from the onset of the case, had relied on the co-party to store and care for the evidence, and had made no claim that it was unable to produce the evidence. 107 F.3d at 514. That situation is exactly the opposite of the situation here, where

NCR had no control over or possession of the Butler's Court materials, and no actual or constructive control over API.

## III. THERE IS NO BASIS FOR AN ORDER DECLARING ALL THE BUTLER'S COURT MATERIALS AUTHENTIC AND ADMISSIBLE *AS TO NCR*.

GP also fails to offer any justification for its request that every one of the approximately one million pages of Butler's Court images be deemed both authentic and admissible *as against NCR*. Such extraordinary relief cannot be granted when NCR did not possess or have any legal right to the materials at issue, and any alleged malfeasance was by a party NCR did not control. *See, e.g.*, *Gurvey*, 2011 WL 550628, at *5. In addition, GP does not offer any evidence to suggest that NCR had any role in the alleged destruction of the Butler's Court materials, which is necessary in order to impose a sanction against NCR. Thus, the same reasons that require the Court to deny GP's request for an adverse inference apply equally to this additional request.

GP appears to be trying to gain a strategic advantage in an ongoing evidentiary dispute between NCR and GP that is not affected in any way by the alleged destruction of the Butler's Court materials. At issue is a Butler's Court document dated 1965 that was purportedly signed by a former employee of Appleton Coated Paper Company named Fred Heinritz ("1965 Letter").[3] Mr. Heinritz has testified that he did not author this letter, and he pointed to a number of indicia supporting this conclusion: the letter uses a British spelling of "favourably," something

---

[3] GP's argues that NCR's objections should be deemed waived because NCR did not raise any concerns about the authenticity of the 1965 Document in the fall of 2009 when GP first received it and when it was submitted to the Court as part of the summary judgment briefing. This argument ignores the fact that GP never produced these documents to all parties, per the parties' agreement, and NCR did not have any basis to question the authenticity of the 1965 Letter until Mr. Heinritz provided sworn testimony in spring of 2010, disclaiming authorship. That subsequently discovered information, provided under oath, provided more than adequate grounds to challenge the authenticity of the document, which NCR promptly did. *See* Gallagher Decl. Ex E.

Mr. Heinritz would not have used; is signed "Bud," something he did not customarily do; and has typed rather than printed letterhead, something he never did. *See* Gallagher Decl. Ex E.

GP continues to question Mr. Heinritz's sworn testimony. Whether the statements in this document can be attributed to Appleton Coated Paper Company, then, will be an important evidentiary issue for the February trial and the subject of motions *in limine*. However, in order to avoid the argument on the merits, where its position is weak, GP hopes to get a favorable advance judicial declaration that all of the Butler's Court documents, including the 1965 Letter, are admissible. There is no basis for such relief. The destruction of the Butler's Court materials has not hindered GP's ability to litigate this issue. There is no dispute that this document is a true and accurate copy of the "original" that existed within the Butler's Court files; NCR has even offered to so stipulate. *See* Gallagher Decl., ¶ 21. Instead, the question is whether this document was in fact written by Mr. Heinritz. Access to the "original" of this document, or even other "originals" in the collection, would in no way assist the Court in resolving this question. That is a matter that can be resolved only by testimony from the letter's true author and recipient. GP's requested sanction should therefore be denied.

## CONCLUSION

For the foregoing reasons, NCR respectfully requests that the Court deny GP's motion to the extent it seeks any adverse evidentiary inferences against NCR or any other relief that is prejudicial to NCR.

Dated: October 3, 2011

Respectfully submitted,

NCR CORPORATION

/s/ Kathleen L. Roach
*Counsel for NCR Corporation*

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Sandra C. Goldstein
Darin P. McAtee
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
dmcatee@cravath.com

SIDLEY AUSTIN LLP
Kathleen L. Roach
Evan B. Westerfield
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601

# CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2011, I electronically filed Plaintiff NCR Corporation's Response to Georgia-Pacific LLC's Motion for Sanctions Against Appleton Papers Inc., DeWitt Ross & Stevens S.C., and Hermes Law Ltd. using the ECF system, which will send notification of such filing to: Philip Munroe at DiRenzo & Bomier LLC, pmunroe@direnzollc.com; Scott Fleming at Weiss Berzowski Brady LLP, sbf@wbb-law.com; David Mandelbaum at Greenberg Traurig, LLP, mandelbaumd@gtlaw.com; Marc Davies at Greenberg Traurig, LLP, daviesm@gtlaw.com; Sabrina Mizrachi at Greenberg Traurig, LLP, mizrachis@gtlaw.com; Monique Mooney at Greenberg Traurig, LLP, mooneym@gtlaw.com; Caleb Holmes at Greenberg Traurig, LLP, holmesc@gtlaw.com; Adam Silverman at Greenberg Traurig, LLP, silvermana@gtlaw.com; Philip Hunsucker at Hunsucker Goodstein & Nelson PC, phunsucker@hgnlaw.com; David Rabbino at Hunsucker Goodstein & Nelson PC, drabbino@hgnlaw.com; Allison McAdam at Hunsucker Goodstein & Nelson PC, amcadam@hgnlaw.com; David Edquist at von Briesen & Roper, s.c., dedquist@vonbriesen.com; Christopher Riordan at von Briesen & Roper, s.c., criordan@vonbriesen.com; Patrick Wells at von Briesen & Roper, s.c., pwells@vonbriesen.com; Russell Wilson at Ruder Ware, rwilson@ruderware.com; Linda Benfield at Foley & Lardner LLP, lbenfield@foley.com; Sarah Slack at Foley & Lardner LLP, sslack@foley.com; Paul Bargren at Foley & Lardner LLP, pbargren@foley.com; Howard Iwrey at Dykema Gossett PLLC, hiwrey@dykema.com; Joseph Basta at Dykema Gossett PLLC, jbasta@dykema.com; Daniel Murray at Johnson & Bell, Ltd., murrayd@jbltd.com; Garrett Boehm, Jr. at Johnson & Bell, Ltd., boehmg@jbltd.com; Frederick Mueller at Johnson & Bell, Ltd., muellerf@jbltd.com; John Cermak, Jr. at Baker & Hostetler LLP, jcermak@bakerlaw.com; Sonja Inglin at Baker & Hostetler LLP, singlin@bakerlaw.com; Timothy Anderson at Remley & Sensenbrenner, S.C., tanderson@remleylaw.com; Thomas O'Donnell at Calfee Halter & Griswold LLP, todonnell@calfee.com; William Coughlin at Calfee Halter & Griswold LLP, wcoughlin@calfee.com; Ted Waskowski at Stafford Rosenbaum LLP, twaskowski@staffordlaw.com; Richard Yde at Stafford Rosenbaum LLP, ryde@staffordlaw.com; Meg Vergeront at Stafford Rosenbaum LLP, mvergeront@staffordlaw.com; Paul Kent at Anderson & Kent, S.C., pkent@staffordlaw.com; James P. Walsh at the Appleton City Attorney's Office, jim.walsh@appleton.org; Lora L. Zimmer at Hinshaw & Culbertson LLP, lzimmer@hinshawlaw.com; William Mulligan at Davis & Kuelthau, s.c., wmulligan@dkattorneys.com; Kevin Lyons at Davis & Kuelthau, s.c., klyons@dkattorneys.com; Tara Mathison at Davis & Kuelthau, s.c., tmathison@dkattorneys.com; Elizabeth Miles at Davis & Kuelthau, s.c., emiles@dkattorneys.com; Thomas Schrimpf at Hinshaw & Culbertson LLP, tschrimpf@hinshawlaw.com; Ian Pitz at Michael Best & Friedrich, LLP, iapitz@michaelbest.com; Anthony S. Wachewicz, III at City of Green Bay, tonywa@ci.green-bay.wi.us; Ted Warpinski at Friebert, Finerty & St. John, S.C., taw@ffsj.com; S. Todd Farris at Friebert, Finerty & St. John, S.C., stf@ffsj.com; M. Andrew Skwierawski at Friebert, Finerty & St. John, S.C., mas@ffsj.com; Scott Hansen at Reinhart Boerner Van Deuren s.c., shansen@reinhartlaw.com; Steven Bogart at Reinhart Boerner Van Deuren s.c., sbogart@reinhartlaw.com; John Van Lieshout at Reinhart Boerner Van Deuren s.c., jvanlieshout@reinhartlaw.com; David Frank at Reinhart Boerner Van Deuren s.c., dfrank@reinhartlaw.com; Thomas Gottshall at Haynsworth Sinkler Boyd, P.A., tgottshall@hsblawfirm.com; Stephen McKinney at Haynsworth Sinkler Boyd, P.A., smckinney@hsblawfirm.com; William Harbeck at Quarles & Brady LLP,

william.harbeck@quarles.com; Nancy Peterson at Quarles & Brady LLP, nancy.peterson@quarles.com; Peter Karegeannes at Quarles & Brady LLP, peter.karegeannes@quarles.com; Susan Lovern at von Briesen & Roper, s.c., slovern@vonbriesen.com; Thomas Armstrong at von Briesen & Roper, s.c., tarmstro@vonbriesen.com; Michael P. Carlton at von Briesen & Roper, s.c., mcarlton@vonbriesen.com; Kelly Noyes at von Briesen & Roper, s.c., knoyes@vonbriesen.com; Arthur Foerster at Latham & Watkins LLP, Arthur.Foerster@law.com; Margrethe Kearney at Latham & Watkins LLP, Margrethe.Kearney@lw.com; Mary Rose Alexander at Latham & Watkins LLP, Mary.Rose.Alexander@lw.com; Karl Lytz at Latham & Watkins LLP, Karl.Lytz@lw.com; Andrea Hogan at Latham & Watkins LLP, Andrea.Hogan@lw.com; Patrick J. Ferguson at Latham & Watkins LLP, Patrick.Ferguson@lw.com; Nathan Fishbach at Whyte Hirschboeck Dudek S.C., nfishbach@whdlaw.com; Jan Conlin at Robins, Kaplan, Miller & Ciresi L.L.P., jmconlin@rkmc.com; Sarah Lindsey at Warner Norcross & Judd LLP, slindsey@wnj.com; Steven Kohl at Warner Norcross & Judd LLP, skohl@wnj.com; Matthew Adams at SNR Denton, matthew.adams@snrdenton.com; James Braza at Davis & Kuelthau, s.c., jbraza@dkattorneys.com; Randall Stone at U.S. Department of Justice, randall.stone@usdoj.gov; Joshua Levin at U.S. Department of Justice, joshua.levin@usdoj.gov; Matthew R. Oakes at U.S. Department of Justice, matthew.oakes@usdoj.gov; Perry Rosen at U.S. Department of Justice, perry.rosen@usdoj.gov; Michael Hermes at Hermes Law, Ltd., mlh@hermeslawltd.com; Brandon Evans at Hermes Law, Ltd., bje@hermeslawltd.com; Ericka L. Krumrie at Hermes Law, Ltd., elk@hermeslawltd.com; Heidi D. Melzer at Hermes Law, Ltd., hdm@hermeslawltd.com; Dennis Birke at DeWitt Ross & Stevens S.C., db@dewittross.com; Ronald Ragatz at DeWitt Ross & Stevens S.C., rrr@dewittross.com; Megan Senatori at DeWitt Ross & Stevens S.C., ms@dewittross.com; J. Ric Gass at Gass Weber Mullins LLC, gass@gasswebermullins.com David Turek at Gass Weber Mullins LLC, turek@gasswebermullins.com.

                NCR CORPORATION

                 /s/ Evan B. Westerfield
                 One of Its Attorneys

                Kathleen L. Roach
                Evan B. Westerfield
                Eric W. Ha
                Margaret R. Sobota
                SIDLEY AUSTIN LLP
                One South Dearborn Street
                Chicago, Illinois 60603
                Phone: (312) 853-7000
                Fax: (312) 853-7036
                Email: kroach@sidley.com
                   evanwesterfield@sidley.com
                   eha@sidley.com
                   msobota@sidley.com

Evan R. Chesler
Sandra C. Goldstein
Darin P. McAtee
Omid H. Nasab
Vanessa A. Lavely
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Phone: (212) 474-1000
Fax:     (212) 474-3700
Email: echesler@cravath.com
            sgoldstein@cravath.com
            dmcatee@cravath.com
            onasab@cravath.com
            vlavely@cravath.com