IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS INC. and<br>NCR CORPORATION,<br><br>                    Plaintiffs,<br>v.<br><br>GEORGE A. WHITING PAPER COMPANY, et al.<br><br>                    Defendants. | No. 08-CV-16-WCG |

**DEFENDANT WTM I COMPANY'S RESPONSE TO NCR
CORPORATION'S MOTION TO COMPEL**

## I. INTRODUCTION

This Court has determined that NCR Corporation ("NCR") is responsible for all costs associated with clean-up and damages of OU 2-5 at the Lower Fox River Site (and responsible for OU1 as well, in the event it is found to be an "arranger" in the upcoming trial), with such liability potentially reduced only by amounts that other PRPs have received as insurance proceeds. Consistent with these rulings and the language of this Court's Scheduling Order on the scope of remaining issues in this matter,[1] WTM I Company ("WTM") has provided NCR with responses to its discovery requests relating to payments WTM has received or contracted to receive in the future from any insurer relating to WTM's Fox River liability.

For NCR this is not enough. It insists that WTM also provide it with conditional settlement agreements under which WTM has received no payments, and pursuant to which

---

[1] The Scheduling Order provided that: "Discovery on the remaining issues in this matter shall be limited to information regarding:…(b) **the amount of Defendants' insurance recoveries** related to the Fox River, and any other information necessary to determine the amount by which any of the costs sought by Defendants from Plaintiffs are or should be offset **by Defendants' insurance recoveries**…" (Emphasis added). Dkt. 1115 at 1.

1

WTM may or may not receive insurance recoveries in the future. The settlement agreements are contingent on the occurrence of certain conditions, are still the subject of further negotiations, and in no event represent anything that can remotely be labeled an insurance recovery by WTM at this point. What NCR wants is essentially a seat at the negotiating table with WTM and its insurers as they work out deals based in large part on an assessment of WTM's underlying liability at the Lower Fox River Site.

That NCR has sought this information on an emergency basis, due to the pending mediation, shows precisely why the motion should be denied. NCR doesn't want the information for purposes of *litigation*, i.e., any impending motion or trial. Indeed the existing conditional agreements will in no way be relevant or admissible in any court proceeding. Those conditional agreements will both expire by early December, are currently under negotiation and will be modified before ever becoming final. That is because WTM and its parent, Canal Corporation (formerly Chesapeake Corporation), are both in bankruptcy and have asked the carriers to eliminate indemnifications running from Canal to the carriers as well as to restrict the scope of indemnifications from WTM.

Assuming the conditional agreements are extended and amended to address bankruptcy-related issues, it will still be uncertain whether even the revised agreements will ever become final. But it is certain that requiring full disclosure of the existing conditional agreements now – in the midst of negotiations not only with the carriers but all other parties to both the Whiting litigation and the enforcement litigation – would unfairly expose WTM's strategy and evaluation of the case. Other parties that have not finally settled with their carriers are not required to disclose their on-going settlement communications. Requiring WTM to disclose the conditional

agreements would, in effect, require disclosure of on-going negotiations with the carriers which others will not be required to disclose.

While discovery standards are liberal, those standards should not overwhelm the very real and practical dilemma NCR's motion presents for WTM and its insurers, namely, that disclosure of the conditional and inchoate settlement agreements will give NCR a window into how WTM values this case and consequently its likely settlement parameters. The motion should be denied.

## II. FACTS RELEVANT TO THIS MOTION

WTM has been in negotiations with its insurers for years in connection with the Fox River Site. (Peterson Dec. ¶3). At the end of August of 2011, WTM completed a settlement with one of those insurers, and that settlement has since been approved by the Bankruptcy Court. WTM provided NCR with a copy of that settlement pursuant to the *Whiting* Stipulated Protective Order at the same time as the agreement was filed under seal with the Bankruptcy Court to gain that court's approval of the settlement. (*Id.* ¶4).

Two other insurer settlements are potentially pending. (*Id.* ¶5). Both were originally negotiated and signed with certain conditions that made the payment of insurance proceeds contingent; that is, *if* certain conditions occurred, the settlements would become final and the insurers would then have an obligation to pay WTM an agreed sum. *If* certain conditions did not occur, the agreement would not become final and insurance recovery would only occur through further negotiations or contested litigation. These conditional settlements contain strict confidentiality provisions.[2] (*Id.*).

---

[2] In an effort to reach a compromise with NCR, and with the consent of Carrier X, WTM produced to NCR a redacted version of one of the two conditional settlement agreement - the agreement with Carrier X. The provisions redacted were those most sensitive to WTM and the insurer, namely the settlement amount, the conditions section, definitions relating to the conditions, and the carrier's name. The redacted provisions have nothing to do with allocation of insurance proceeds. (Peterson Dec. ¶ 8).

Both conditional settlements are now the subject of further negotiations. This is due in part to the fact that WTM and its corporate parent, Canal Corporation, filed for bankruptcy protection in late 2008, and, as a result, Canal and WTM may not be able to perform certain provisions of the settlements relating to indemnification. (Id. ¶6).

Most importantly, nothing has been paid, and nothing is due to be paid, under either conditional agreement. (*Id.* ¶7).

### III. ARGUMENT

**A.    Standards Governing This Motion**

Rule 26(b) (1) of the Federal Rules of Civil Procedure governs the scope of discoverable information. Discovery is allowed for any information which is "relevant to any party's claim or defense." Such information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* NCR cites case law for the proposition that discovery need only be "relevant to the subject matter." NCR Brief p.2. That is no longer the standard. Discovery of information "relevant to the subject matter" is only permitted upon court order made "for good cause shown." *Id.* Just last April, this Court expressly recognized the requirement that "good cause" be shown before opening the door to discovery of information beyond that which is relevant to an existing "claim or defense" (or which is reasonably calculated to lead to the discovery of admissible evidence). *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, 2011 WL 1343166, *1 (E.D.Wis. 2011) (in patent infringement case, denying motion to compel various types of tangential information relating to inventors and prior art for patents in issue).

Thus, the standard is broad but not without limits – and certainly not without careful judicial scrutiny of the necessity for the requested information. Put another way, while the standard of relevance is a liberal one, it is not so liberal so to allow a party 'to roam in shadow

4

QB\14768124.1

Case 2:08-cv-00016-WCG    Filed 10/11/11    Page 4 of 9    Document 1207

zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975). On that basis, a number of courts have refused to order production of information that could not be relevant nor reasonably calculated to lead to the discovery of relevant evidence. *Alabama & Gulf Coast Railway, LLC v. United States*, No. CA 10-0352-WS-C, 2011 WL 1838882 *4 (S.D. Ala. May 13, 2011) (denying motion to compel production of personnel files for employees who happened to be present on ship when it collided with bridge, finding the files to be irrelevant since the employees were not operating the ship or acting as lookouts and therefore were mere witnesses to the alleged negligent acts); *Blum v. Schlegel*, 150 F.R.D. 38, 39-40 (W.D.N.Y. 1993) (denying motion to compel production of tenure review files of other faculty members, finding that such files were not relevant to plaintiff's claim that he was denied fair consideration for tenure solely in retaliation for his exercise of free speech rights); *Coastal States Marketing, Inc. v. New England Petroleum, Corp.*, 471 F. Supp. 131, 136 (S.D.N.Y. 1979) (denying motion to compel production of information related to transactions between plaintiff and alleged dummy corporations, or violations of FEA regulations, finding that such information was not relevant to the subject matter of the action at hand, a transaction involving the sale of oil from plaintiff to defendant).

B.     **Conditional Settlement Agreements Are Neither Relevant To Any "Claim Or Defense" Nor Reasonably Calculated To Lead To Discovery Of Admissible Evidence In A Case Involving A Claim For Setoff.**

Applying the above standards, the conditional settlement agreements at issue in this case are clearly not discoverable.

For starters, they are not relevant to any "claim or defense" at issue in this case. The only conceivable candidate for relevancy is, of course, the set-off claim identified by this Court in its March 1, 2011 decision and order addressing the effect of insurance proceeds on NCR's liability.

5

But that decision addresses proceeds in the context of the collateral source rule, not the mere possibility of proceeds, a possibility with no bearing on the collateral source rule or the right of set-off. It is black letter law that "a contingent or unmatured obligation which is not presently enforceable cannot be the subject of set-off." 80 C.J.S. *Set-Off and Counterclaim*, § 3 (2011); *Can Can Development, Inc. v. Manno*, 2011 WL 4379064 (Del. Ch. Ct. September 13, 2011); *see also City of Milwaukee v. Milwaukee Civic Development Inc.*, 71 Wis. 2d, 647, 661, 239 N.W. 2d 44 (1976)(claim for set off based on contingent facts is subject to motion to dismiss). Currently, NCR is not entitled to set-off because WTM has not received insurance recoveries under the conditional agreements. The conditional settlement agreements will only become relevant if and when WTM recovers or, at the very least, if and when the agreements become final such that the carriers have an unconditional obligation to pay WTM.

Given the inadmissibility and lack of relevancy of these agreements, it is hard to see how they could be "reasonably calculated to lead to the discovery of admissible evidence" either. It is hard to fathom what the production of these agreements (or any of the underlying documents relating to them) would be "reasonably calculated" to uncover unless and until the agreements themselves become relevant and admissible evidence. NCR's motion provides no basis for claiming otherwise.

Contrast the situation here with that in *Friedland v. TIC*, 566 F.3d 1203 (10th Cir. 2009), the case relied upon by this Court for its ruling that insurance proceeds are potential offsets to NCR's liability. The plaintiff in that case, Friedland, had paid some $20 million in remediation costs, and $28 million in defense costs, with respect to an abandoned gold mine, and recovered the remediation costs from his insurer. The Tenth Circuit found that Friedland could not recover from a joint tortfeasor in contribution what he had already recovered from his insurer (and was

6

not permitted to retroactively "allocate" the insurance proceeds to defense costs). The court applied the "equitable" principle underlying CERCLA contribution that Friedland was not entitled to recover the money twice.

Unlike *Friedland*, this case does not involve insurance proceeds. It does not involve even a final agreement with an unconditional obligation to pay such proceeds. It involves only a possible recovery, one that is contingent on the happening of future conditions that are at this point conjecture at best.

Every case considering a set-off for insurance recoveries has done so only in the context of *actual* insurance recoveries. *See, e.g., Basic Mgt. v. United States*, 569 F. Supp.2d 1106 (D. Nev. 2008) (plaintiff PRPs could not recover in contribution for amounts insurers paid for remediation); *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115 (Wash. 2001) (addressing right of set-off of non-settling insurer in context of settlement with insurer that involves releases that are broader than loss for which set-off is sought); *Raytheon Aircraft Co. v. United States*, 2007 WL 4300221 (D. Kan. 2008) (insured negotiated buy back of policies for lump sum amount; court allowed discovery pertaining to how recovery was allocated).

To be sure, as these cases demonstrate, issues arise in the context of insurance recoveries as to how the recovery will be allocated. And of course issues may arise in this case as to an insurer's subrogation rights and the interplay of such rights and this Court's ruling on the collateral source rule. But there still has to be a *recovery* before these issues ever come into play. To hold otherwise opens up to discovery every facet of a PRP's insurance recovery process – *and does so as that process transpires*. Litigation with carriers, communications with carriers, negotiations with carriers, draft agreements – all would be fair game in discovery in any contribution action between PRPs. That cannot be the law.

This is not to say that settlement information should never be produced. If and when WTM receives insurance proceeds, or its carriers have an unconditional obligation to pay WTM under a final agreement, WTM will produce the agreement and information on the insurance recoveries. NCR will have every right to litigate the extent to which such recoveries should act as a set off to its obligations to WTM in light of this Court's decisions on NCR's liability. But unless and until a recovery occurs or is certain to occur, the discovery sought by NCR has no bearing on any claim or defense in this case, and will serve only to cause unfair prejudice to WTM.

In truth, there is only one purpose that could possibly be served for the production of these agreements at this time – to allow NCR to learn how WTM has valued the underlying case – information that NCR will find particularly helpful as it attempts to negotiate a settlement with WTM. Putting that in the context of the standards described previously, to the extent that this information is "relevant to the subject matter" there is certainly no "good cause" shown for producing this information. To the contrary, there are compelling reasons for denying it.

Dated this 11th day of October, 2011.

    NANCY K. PETERSON (SBN 1000197)
    PETER C. KAREGEANNES (SBN 1015025)
    WILLIAM H. HARBECK (SBN 1007004)

    __s/Nancy K. Peterson_____
    QUARLES & BRADY LLP
    411 E. Wisconsin Avenue, Suite 2040
    Milwaukee, WI 53202
    Phone: 414-277-5000
    Fax: 414-203-0190
    nancy.peterson@quarles.com
    peter.karegeannes@quarles.com
    william.harbeck@quarles.com

    *Attorneys for WTM I Company*

9
QB\14768124.1
Case 2:08-cv-00016-WCG   Filed 10/11/11   Page 9 of 9   Document 1207