IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| APPLETON PAPERS INC. and <br> NCR CORPORATION, | ) <br> ) <br> ) | |
|        Plaintiffs, | ) | |
|     v. | ) <br> ) | No. 08-CV-16-WCG |
| GEORGE A. WHITING PAPER <br> COMPANY, et al., | ) <br> ) <br> ) | |
|        Defendants. | ) | |

___

| | | |
|---|---|---|
| NCR CORPORATION, | ) <br> ) | |
|        Plaintiff, | ) <br> ) | |
|     v. | ) <br> ) | No. 08-CV-0895-WCG |
| KIMBERLY-CLARK CORPORATION, <br> ET AL., | ) <br> ) | |
|        Defendants. | ) | |

___

**PLAINTIFF NCR CORPORATION'S REPLY IN SUPPORT OF
ITS MOTION TO COMPEL DIRECTED TO WTM I COMPANY**

___

## TABLE OF CONTENTS

                                                                                                                        **Page**

I.     WTM'S CONDITIONAL INSURANCE AGREEMENTS ARE RELEVANT AND SHOULD BE PRODUCED. ...................................................................................2

       A.     WTM's Conditional Settlement Agreements Are Highly Relevant to Its Contribution Counterclaim Against NCR. ...........................................................2

       B.     WTM Cannot Meet Its Burden to Deny Discovery of Relevant Settlement Agreements. ......................................................................................................4

              1.     WTM's Tactical Concerns and Vague Assertions of Prejudice Do Not Overcome the Presumption in Favor of Broad Discovery. ...........................5

              2.     WTM's Settlement Agreements Are Discoverable Despite the Fact that WTM's Carriers Have Not Yet Paid the Insurance Proceeds. .....................7

              3.     The Doctrine of Set-Off Is Inapplicable to Insurance Offsets Under CERCLA. ....................................................................................................8

II.    WTM'S FAILURE TO PRODUCE INSURANCE SETTLEMENT AGREEMENTS PREVENTS NCR FROM EVALUATING ITS INSURANCE OFFSET AND SHOULD RESULT IN FORFEITURE OF WTM'S CONTRIBUTION CLAIM. ...............................9

III.   CONCLUSION. ..........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett v. La Pere*,
　112 F.R.D. 136 (D.R.I. 1986) ...................................................................................8

*EEOC v. Klockner H & K Machs., Inc.*,
　168 F.R.D. 233 (E.D. Wis. 1996) ..............................................................................2

*Friedland v. TIC-The Indus. Co.*,
　566 F.3d 1203 (10th Cir. 2009) .................................................................................2

*Hickman v. Taylor*,
　329 U.S. 495 (1947) ...................................................................................................2

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
　No. 09-C-0916, 2011 WL 1343166 (E.D. Wis. Apr. 8, 2011) ...................................4

*Oppenheimer Fund, Inc. v. Sanders*,
　437 U.S. 340 (1978) ...................................................................................................2

*EEOC v. Rush Prudential Health Plans*,
　No. 97 C 3823, 1998 WL 156718 (N.D. Ill. Mar. 31, 1998) .................................. 5-6

*United States v. Procter & Gamble*,
　356 U.S. 677 (1958) ...................................................................................................6

**Statutes & Rules**

Fed. R. Civ. R. 26 ............................................................................................... *passim*

Fed. R. Civ. P. 37 ..........................................................................................................9

**Other Authorities**

80 C.J.S. *Set-Off & Counterclaim*, § 3 (2011) ...........................................................8

WTM I Company ("WTM") claims over $50 million in contribution costs from NCR Corporation ("NCR"), which the Court ruled may be offset to the extent those costs "have been covered by insurance". (Dkt. #1080 at 25.) WTM stipulated, and the Court ordered, that the scope of discovery for the issues to be tried in February 2012 includes any information needed to determine the amount by which Defendants' costs are or should be offset by insurance recoveries. WTM nonetheless refuses to produce promptly and fully two settlement agreements reached with its insurers relating to its Fox River liabilities, thereby precluding NCR from evaluating WTM's claim for purposes of settlement and trial. This refusal also impacts the Court's ability to make a fully informed equitable determination of whether and to what extent WTM is entitled to contribution. In effect, WTM wants the benefit of the Court's contribution ruling without the burden of the Court's insurance ruling. But WTM cannot have it both ways. Nor can WTM assert merits-based arguments to prevent discovery of relevant information because it believes that NCR is ultimately not entitled to offset any of WTM's costs. Every other Defendant seeking costs from NCR in this litigation has already produced *all* of its insurance settlement agreements in response to NCR's discovery requests. WTM's demand for special treatment should be denied.

As discussed below, WTM cannot overcome its heavy burden of showing why the relevant information should not be produced. Accordingly, NCR respectfully requests that the Court grant its Motion to Compel or, in the alternative, order that WTM must forfeit its contribution claim against NCR if the relevant insurance information is not produced. NCR further respectfully requests that the Court rule on this Motion by Monday, October 24, 2011, so that the parties have sufficient time to prepare for the deposition of WTM's 30(b)(6) designee for insurance issues, which is scheduled for Thursday, October 27, 2011.

**I. WTM'S CONDITIONAL INSURANCE AGREEMENTS ARE RELEVANT AND SHOULD BE PRODUCED.**

NCR is entitled to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense". Fed. R. Civ. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that could reasonably lead to other matter[s] that could bear on, any issue that is or may be in the case". *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Rule 26 imposes few limitations on the broad scope of discovery, none of which is applicable here. *See* Fed. R. Civ. P. 26(b)(2).

The objecting party bears the burden of showing why discovery of relevant material should be denied. *See EEOC v. Klockner H & K Machs., Inc.*, 168 F.R.D. 233, 235 (E.D. Wis. 1996). Because WTM cannot satisfy its burden, the production of the unredacted settlement agreements and related documents should be compelled.

A. <u>WTM's Conditional Settlement Agreements Are Highly Relevant to Its Contribution Counterclaim Against NCR.</u>

The relevance of WTM's insurance settlement agreements to its contribution counterclaim against NCR has been conceded by WTM and so ordered by the Court—it cannot be disputed. WTM initiated a counterclaim against NCR seeking contribution for costs relating to the Fox River, and the Court ruled that contribution will be denied to the extent WTM's costs are covered by insurance. (Dkt. #1080 at 25.) The Court reasoned that although CERCLA permits a PRP to resort to contribution when the costs for which it seeks recoupment are actually incurred, equity prohibits contribution for any portion of the costs that "'has been *or will be* compensated'" by insurance. (*Id.* (quoting *Friedland v. TIC-The Indus. Co.*, 566 F.3d 1203, 1207 (10th Cir. 2009) (emphasis added)).)

2

WTM subsequently consented to an order defining the scope of discovery to include insurance settlement agreements relating to the Fox River—without mentioning a word about its plans to seek special treatment for its own agreements.  On April 6, 2011, certain parties (including WTM and NCR) jointly submitted for the Court's consideration a Proposed Scheduling Order, stating that it "is a result of compromises to which the parties have acquiesced, on both the scope of discovery and scheduling".  (Dkt. #1111 at 1.)  The Court approved that Order, thereby confirming that the scope of discoverable information includes the issue of "Defendants' insurance recoveries related to the Fox River, and any other information necessary to determine the amount by which any of the costs sought by Defendants from Plaintiffs are or should be offset by Defendants' insurance recoveries".  (Dkt. #1115 at 1.)

The parties later agreed to a Stipulated Protective Order, which affirms that insurance settlements are "a remaining issue which must be resolved to conclude this case", and specifically provides for Defendants' disclosure to NCR and API of "certain confidential insurance information such as insurance settlement agreements, policies and related documents".  (Dkt. #1127 at 1.)  Although WTM consented to this Order as well, it again said nothing about the "secret conditions" or any other issues concerning its settlement agreements.  The plain language of the Scheduling Order and the Protective Order establishes that WTM's insurance settlement agreements are "relevant to the claim or defense of any party" and thus discoverable. Fed. R. Civ. P. 26(b)(1).

In light of WTM's consent to the Court's Orders expressly defining insurance settlement agreements as within the scope of discovery relevant to WTM's contribution counterclaim, WTM's attempt to impose a "good cause" standard on NCR's Motion to Compel should be rejected.  WTM argues that "good cause" must be shown "before opening the door to

3

discovery of information *beyond that which is relevant* to an existing 'claim or defense'". (WTM Brief at 4 (emphasis added) (citing *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 09-C-0916, 2011 WL 1343166, at *1 (E.D. Wis. Apr. 8, 2011)).) The Court need not consider whether "good cause" exists, however, because the settlement agreements are relevant to WTM's contribution claim and thus fall squarely within the scope of Rule 26(b)(1).[1] In any event, the Court *has* expressly opened the door to discovery of Defendants' insurance settlement agreements relating to the Fox River. For the reasons discussed herein, the "good cause" standard would be satisfied if it applied.

      B.      <u>WTM Cannot Meet Its Burden to Deny Discovery of Relevant Settlement Agreements.</u>

WTM advances several arguments against production of its insurance settlement agreements, none of which falls within Rule 26(b)(2)'s limited exceptions to the liberal discovery of relevant information. *First*, WTM's contention that disclosing its settlement agreements to NCR under the Protective Order would somehow prejudice WTM in either *Whiting* or with respect to its carriers is unavailing. The mere fact that information could potentially benefit an opposing party can hardly be reason for withholding it, or *all* insurance discovery could be quashed on that ground. In any event, WTM fails to explain how it would be prejudiced, aside from making broad-sweeping statements that "harm" would result. *Second*, WTM mischaracterizes both the nature of its agreements (by referring to them as "drafts") and the obligations contained therein (by suggesting that the conditions render the

---

[1] The cases cited by WTM in support of its "good cause" argument are thus also inapplicable. (WTM Brief at 5.) Unlike in those cases, in which parties sought the production of information that could not be relevant to the parties' claims or reasonably calculated to lead to the discovery of relevant evidence, NCR is seeking production of a circumscribed set of documents that are expressly identified as discoverable in the Court's Orders.

4

agreements irrelevant). At least one of the settlement agreements at issue is a *signed* and legally enforceable contract.[2] WTM cannot repackage the agreement as a "draft" simply because certain provisions may need to be changed in light of WTM's bankruptcy proceedings. Relatedly, the inclusion of conditions does not render the agreements irrelevant *for purposes of discovery*. *Finally*, WTM's reliance on the doctrine of set-off—which is entirely unrelated to insurance offsets in the context of CERCLA contribution—is inapposite. Because WTM cannot meet its burden of showing why discovery of its settlement agreements should be denied, the default rule in favor of exchange of relevant information must govern, and the agreements and related documents should be produced.[3]

1. **WTM's Tactical Concerns and Vague Assertions of Prejudice Do Not Overcome the Presumption in Favor of Broad Discovery.**

WTM relies heavily on the argument that disclosure of the insurance settlement agreements would reveal its "strategy", "settlement parameters" and "assessment of WTM's underlying liability at the Lower Fox River Site". (WTM Brief at 2-3.) Such tactical concerns are unavailing, given the strong presumption in favor of disclosure of insurance agreements in litigation where they may assist a party in ascertaining the extent of its liability. *See* Fed. R. Civ. R. 26(a)(1)(A)(iv) (requiring the disclosure of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment"); *see also EEOC v. Rush*

---

[2] Although WTM has refused to produce in any form the other insurance settlement agreement at issue here, counsel for WTM expressly declared that both agreements were "negotiated and signed". (*See* Dkt. #1208 ¶ 5.)

[3] WTM does not assert any objections to production on the grounds of privilege or confidentiality, nor can it. Any confidentiality concerns would be addressed by the Protective Order to which WTM agreed. (Dkt. #1127.)

5

*Prudential Health Plans*, No. 97 C 3823, 1998 WL 156718, at *3 (N.D. Ill. Mar. 31, 1998) (citing the Advisory Committee's emphasis on the practical significance of insurance in decisions about settlement and trial preparation in making a "realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation") (internal quotation marks and citations omitted). Indeed, the very purpose of discovery is to make trial "less a game of blind man's b[l]uff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible". *United States v. Procter & Gamble*, 356 U.S. 677, 682 (1958).

In light of these liberal standards for production of insurance agreements, it is unclear what WTM could possibly mean when it asserts that disclosure of the agreements would "unfairly expose WTM's strategy and evaluation of the case". (WTM Brief at 2.) If WTM is referencing statements in the agreements about the possible value of its and NCR's Fox River claims and WTM's willingness to settle at certain "deal points", inclusion of this information does not render the agreements any different from the run-of-the-mill insurance settlement agreements that are routinely disclosed in litigation. Indeed, such disclosure, which necessarily results in a party learning information regarding its adversary's valuation and settlement appraisal, is often compulsory. *See* Fed. R. Civ. P. 26(a)(1)(A)(iv). It is unlikely that WTM's settlement agreements with its carriers go so far as to lay out explicitly WTM's "settlement strategy" with respect to its claims against NCR in *Whiting*, beyond the standard valuation and appraisal points. But even if they do, the presumption in favor of discovery is not overcome by a showing that the information would be harmful to a party's litigation position. Such an exception would quickly swallow the rule. It would be no more prejudicial for WTM to disclose its insurance settlement agreements than it was for Glatfelter, GP or CBC.

Contrary to what WTM suggests, NCR is not asking for "a seat at the negotiating table with WTM and its insurers". (WTM Brief at 2.) WTM entirely fails to explain how producing its insurance settlement agreements would give NCR the ability to have an impact—much less a substantial one—on the outcome of WTM's negotiations with its carriers. As discussed below, NCR is merely seeking production of the unredacted settlement agreements in order to inform its evaluation of WTM's contribution claim for purposes of settlement and to prepare its defenses for a fair trial.[4]

2. **WTM's Settlement Agreements Are Discoverable Despite the Fact that WTM's Carriers Have Not Yet Paid the Insurance Proceeds.**

WTM further asserts that its settlement agreements need not be produced because they are subject to further negotiations and include certain contingencies. (WTM Brief at 7.) These arguments are belied by basic principles of contract law and equity.

*First*, that an insurance settlement agreement could be subject to further negotiation does not render it a "draft" agreement or a mere "negotiation" with the carrier. Every written and signed contract between private parties is amenable to further negotiation by mutual agreement, and is nonetheless a "final" agreement. The heavily redacted Carrier X settlement agreement that WTM produced to NCR was reduced to writing and fully executed by all of the parties over a year ago—it can hardly be considered a "draft". WTM provides no explanation for this characterization of its agreement.

---

[4] NCR focused in its opening brief on the relevance of the agreements to a possible settlement because it wanted to ensure that the impending mediation would be a valuable use of the mediator's and the parties' time. Discussions that took place at the mediation, which are ongoing, were productive. As NCR explained in its opening brief and during the call with the Court, however, settlement efforts would be facilitated by full disclosure of all relevant insurance information—particularly WTM's settlement agreements. (*See* Dkt. #1187 at 1.) Even if this litigation cannot be resolved through mediation, disclosure of WTM's settlement agreements is equally important to NCR's preparation for trial.

7

*Second*, WTM's arguments concerning the conditional nature of its settlement agreements are also unpersuasive. In the simplest terms, WTM has contracted to receive an insurance payment. That the proceeds have not yet been transferred does not mean that the potential for such recovery is irrelevant from a discovery standpoint. *See Bennett v. La Pere*, 112 F.R.D. 136, 138 (D.R.I. 1986) (holding that a structured settlement agreement without a definitive sum was relevant to the issue of whether the settlement could provide an offset against damages). Moreover, it is possible that the secret conditions that must occur before an insurance recovery is paid are in WTM's control. Such an agreement could effectively allow WTM to evade the Court's insurance offset ruling by manipulating the circumstances giving rise to the payments it is allegedly owed by NCR. The risk of such manipulation—and potential double recovery—only adds to the inequity that would result from denial of NCR's Motion to Compel.

3. **The Doctrine of Set-Off Is Inapplicable to Insurance Offsets Under CERCLA.**

WTM's argument that conditional settlement agreements cannot be the subject of set-off invokes a body of law inapplicable to WTM's contribution claim. The doctrine of set-off to which WTM refers has no relation to the unique equitable principles applied by the Court in its March 2011 Order, where it ruled that Defendants' contribution claims against NCR must be denied to the extent any of the funds they seek are covered by insurance. The Court need not go further than the plain language of the treatise cited by WTM to conclude that the common-law doctrine of set-off applies only in circumstances involving (1) two "parties that owe mutual debts to each other", and (2) a claim that is "enforceable in its own right" that could be maintained "in an independent action". 80 C.J.S. *Set-Off & Counterclaim,* § 3 (2011).

The doctrine of set-off is inapposite to this discovery dispute, in which there is no mutuality of debts between two parties. Here, NCR may owe contribution payments to WTM,

8

and the insurance carriers may owe insurance payments to WTM—the offset is between those two potential payments and is intended to prevent double recovery by parties in WTM's position. Moreover, the offset to which NCR may be entitled as against WTM's costs is not a claim "enforceable in its own right"; it is contingent upon WTM's contribution counterclaim. The doctrine of set-off and the case law applying this doctrine therefore have no relevance here.

## II. WTM'S FAILURE TO PRODUCE INSURANCE SETTLEMENT AGREEMENTS PREVENTS NCR FROM EVALUATING ITS INSURANCE OFFSET AND SHOULD RESULT IN FORFEITURE OF WTM'S CONTRIBUTION CLAIM.

In light of the indisputable relevance of the Fox River-related insurance settlement agreements to WTM's contribution claim, NCR bears no further burden under the Federal Rules to demonstrate that it is entitled to the requested discovery. *See* Fed. R. Civ. P. 26. NCR nevertheless has numerous affirmative reasons that support its request and subsequent Motion to Compel. *See* Fed. R. Civ. P. 37.

Production of the settlement agreements is critical because, without them, NCR is unable to prepare properly for settlement discussions or trial. These agreements are vital to a key determination in this case: the amount of WTM's final judgment (if any). More specifically, NCR needs information about WTM's potential insurance recoveries for its liability valuation, strategy development and overall assessment of the possibility of resolution via settlement or trial. WTM asserts that the settlement information may be produced at an unknown date in the future, without providing any guidance as to when that might be or under what "conditional" circumstances. (WTM Brief at 8.) Equitable principles preclude WTM from obtaining a judgment of potentially more than $50 million in contribution—all of which could be covered by insurance—while keeping NCR completely in the dark about the crucial facts of if, when and how its insurance recoveries may be obtained.

9

The information in WTM's insurance settlement agreements is important not only for NCR's evaluation of this case but also for the Court's consideration. Monetary judgments for contribution and allocation under CERCLA are equitable determinations made within the discretion of the district court based on principles of reasonableness and common sense. (*See* Dkt. #1080 at 25.) Regardless of whether insurance payments have actually been paid, insurance settlement agreements—and their specific terms and payment provisions—are significant allocation factors the Court should consider in calculating the amount of the judgment. For purposes of evaluating this Motion, NCR thus requests that, at the very least, the Court view unredacted versions of WTM's settlement agreements *in camera* to assess the relevance and import of the agreements on WTM's contribution claim.

Finally, NCR requests that WTM be required to bear the burden of its choice to withhold production of its insurance settlement agreements. WTM should not be permitted to obtain the benefit of its contribution claim without providing adequate information for NCR and the Court to evaluate the extent to which WTM's claim is covered by insurance. As stated by the Court at the August 1, 2011 Status Conference: "I think there is a risk that to the extent there's not the disclosure that's required in order to allow NCR to assess and evaluate how much was paid by insurance . . . [NCR] ha[s] an argument that contribution should not be allowed. That's the risk here". (Aug. 1, 2011 Transcript at 41.) If WTM refuses to produce information regarding the amount and circumstances under which its Fox River costs are covered by insurance, it must forfeit its contribution claim.

## III.  CONCLUSION.

The two unredacted insurance settlement agreements NCR seeks by this Motion are indisputably within the scope of the Court's Scheduling Order and Stipulated Protective Order and are vital to NCR's evaluation of the remaining issues to be resolved in this litigation.

10

Accordingly, NCR respectfully requests that the Court order WTM to produce all documents requested in NCR's Motion to Compel. As noted above, the deposition of WTM's 30(b)(6) designee for insurance issues is scheduled for Thursday, October 27, 2011. NCR therefore respectfully asks that the Court grant the requested relief by Monday, October 24, 2011.

NCR would accept any condition regarding confidentiality that the Court views as reasonable and necessary under the circumstances. At a minimum, the Court should review the unredacted settlement agreements *in camera* to assess their relevance to WTM's contribution claim. If WTM is unwilling to provide NCR with the information necessary to evaluate whether and the extent to which WTM's costs should be offset by insurance recoveries, then WTM must forfeit its claim to contribution.

Dated: October 17, 2011

Respectfully submitted,

NCR CORPORATION

/s/ Darin P. McAtee
*Counsel for NCR Corporation*

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Sandra C. Goldstein
Darin P. McAtee
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
dmcatee@cravath.com

SIDLEY AUSTIN LLP
Kathleen L. Roach
Evan B. Westerfield
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601