IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS INC. and<br>NCR CORPORATION,<br><br>      Plaintiffs,<br><br>      v.<br><br>GEORGE A. WHITING PAPER<br>COMPANY, et al.,<br><br>      Defendants. | No. 08-CV-00016-WCG |

**REPLY DECLARATION OF DOUGLAS M. GARROU IN SUPPORT OF
GEORGIA-PACIFIC LLC'S MOTION FOR SANCTIONS AGAINST APPLETON
PAPERS INC., DEWITT ROSS & STEVENS S.C., AND HERMES LAW LTD.**

I, Douglas M. Garrou, declare as follows:

1. I am a partner in the law firm of Hunton & Williams LLP, and I am generally familiar with this matter.

2. I make this declaration in support of Georgia-Pacific LLC's Motion for Sanctions against Appleton Papers Inc., DeWitt Ross & Stevens S.C., and Hermes Law Ltd.

3. I am an attorney duly authorized to practice before courts including all courts of the Commonwealth of Virginia, and the United States District Court for the Eastern District of Wisconsin.

4. I have personal knowledge of the matters stated in this declaration, and I could testify competently to those matters.

5. Georgia-Pacific filed a miscellaneous action in the Eastern District of Wisconsin to compel compliance with subpoenas served upon third parties Hermes Law, Ltd. ("Hermes"), Appleton Papers Inc., and Appleton Coated LLC ("AC") (the "Miscellaneous Action").

6. Those underlying subpoenas sought, among other things, production of certain microfiche (and an associated indexing database) that originally had been maintained at the "Butler's Court" research facility in England. My understanding is that the Butler's Court facility was operated by Arjo Wiggins Fine Papers Ltd at the time of its closure in 2009, and that two separate but somewhat related sets of microfiche and microfilm files remained at the facility in about August 2009. One set of these microfiche files is referred to as the Library Set, which had a corresponding database that catalogued the microfiche documents, and the other set is referred to as the Post Room Set.

7. My understanding is that the Library Set and its related indexing database were brought to the United States from England in 2009 in connection with discovery in *Appleton*

1

*Papers Inc. v. George A. Whiting Paper Co.* (Case No. 2:08-cv-0016) (E.D. Wisc.) (the "Whiting Case"). My understanding is that, as part of the production process in the Whiting Case, the Library Set microfiche were imaged in their entirety.

8. Proceedings in the Miscellaneous Action revealed that, unfortunately, the Library Set microfiche themselves were destroyed in 2011. In connection with the Miscellaneous Action, the Court ordered Hermes to produce all the images of the Library Set microfiche to Georgia-Pacific, along with the indexing database.

9. I reviewed a large number of those produced images, and a large number of entries in the indexing database. That review, and reviews by other persons working with me, revealed a number of documents that had not been produced to Georgia-Pacific in the Whiting Case, including a partially illegible document detailing a March 3, 1965 meeting between representatives of Monsanto, NCR, and Wiggins Teape in Ruabon, North Wales, United Kingdom (the "Ruabon Document").

10. As part of a resolution of certain disputes in the Miscellaneous Action, Georgia-Pacific recently obtained, from Appleton Coated LLC, access to the Post Room Set. The Post Room microfiche, until recently housed in England, were believed by Appleton Coated LLC to be a partial copy, or subset, of the (now destroyed) Library Set of microfiche originally brought to this country in connection with the Whiting Case.

11. I reviewed the Post Room Set on Wednesday, October 5, 2011, at a facility in Arlington, Virginia. The microfiche were made available along with illuminated and magnifying microfiche readers that had printing capability.

12. The Post Room Set consists of a number of drawers of microfiche, with groups of microfiche sheets separated by tabbed and labeled dividers. The dividers are generally arranged

alphabetically, and their labels generally correspond to specific types of documents (e.g., technical letters), subject matters (e.g., carbonless paper), and/or Wiggins Teape facility locations (e.g., Newbury). Within tabs, microfiche are typically arranged in chronological order, and are generally labeled.

13. When using the actual microfiche, it is relatively straightforward to locate a document of interest identified in the indexing database, as Wiggins Teape likely intended when it created the system.

14. For example, searching the indexing database for the terms "broke," "carbonless," "NCR," and/or "repulping" would reveal, among other database entries, an entry for a 1958 Wiggins Teape document entitled "Repulping of NCR Broke." That database entry would show that the code for the document is "GRSB/G24/58."

15. With that code in hand, the microfiche containing that document can then quickly be found in the Post Room Set under the appropriate tab in the microfiche drawers. Specifically, in this case, a two-page guide accompanying the Post Room Set indicates that "GRSB" refers to "Group Research Southern Base," and that these microfiche are located in the "R&D" section. The "R&D" tab appears in alphabetical order in the microfiche.

16. The following photograph shows the first page of the document coded "GRSB/G.24/58," along with the microfiche on which it was located in the Post Room Set:

WIGGINS TEAPE GROUP  
RESEARCH ORGANISATION     *Samples in box*    GRSB/G.24/58.

## REPULPING OF N.C.R. BROKE

### INTRODUCTION

In the production of NCR one of the main problems has been the utilisation of the broke, especially of the CFB grade. This is because of the formation of dye spots in the resulting pulp. Some experiments had been carried out at the mill laboratories but none of the results obtained were satisfactory. Experiments done at the Research Laboratories (B.P.B.I.) Kenley using various bleaching methods gave satisfactory results using the methods but these methods were not considered practic̲ lant available. It had been rumoured that the cessfully produced a good white pulp from NCR b rch Laboratories sent us two reports ls on the re-use of NCR broke. Th quaternary Ammonium sal This report descri information



*figures in samples box*

G.R.S.B. Reports. From G. 23. To G. 25.   "G"   (W.T. 2103.)   1958.

hydra... broke to make a slurry about 6%  
consis... circulated for about 10 minutes.  
0.08% o... quad... weight of pulp, soap... s, Accocel (when required) and 4% weight of Sodium Hy...de (in the form of a 10% solution) were added in that or...

...continued for 40-50 mins. and then

4

17. If the destroyed Library Set of microfiche were also organized with tabbed dividers, then this same procedure presumably could have been used to quickly and easily locate documents of interest identified in the indexing database.

18. To my knowledge, document GRSB/G24/58 cannot be found in the images of the destroyed Library Set of microfiche. I have reviewed those images at some length in search of the document. Generally, it is much more difficult to find documents in the Library Set images than in the Post Room Set, because the Library Set images are not organized with tabbed dividers.

19. Despite diligent efforts, I have been unable to find GRSB/G24/58 in the images of the destroyed Library Set of microfiche. It therefore appears that the Post Room Set is *not* entirely a subset of the destroyed microfiche.

20. Meanwhile, the destroyed Library Set microfiche images include materials that are not in the Post Room Set. For example, a number of documents of interest are "Technical Letters." The Post Room Set, however, indicates that it does not contain Technical Letters prior to 1969:



21. Accordingly, the Post Room Set does not purport to contain a microfiche copy of the 1965 Ruabon Document, nor was I able to find the Ruabon Document in the Post Room Set. It therefore appears that the only microfiche containing the Ruabon Document (i.e. the Library Set) has been destroyed.

22. Access to the microfiche containing the Ruabon Document might have revealed the writing in the illegible portions of the image taken of that document. When using the microfiche reader and printer to review the Post Room Set, I noticed on several occasions that poor-quality images were more legible on the reader screen than in printed form. It is therefore possible that the first page of the Ruabon Document, and/or other poor-quality portions of that

document, could have been deciphered if Georgia-Pacific was given access to the microfiche themselves.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of October, 2011, at Richmond, Virginia.

                                            DOUGLAS M. GARROU