# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

APPLETON PAPERS INC. and )
NCR CORPORATION, )
                       )
         Plaintiffs, )
         v. )       No. 08-CV-16-WCG
                       )
GEORGE A. WHITING PAPER )
COMPANY, et al., )
                       )
         Defendants. )

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF NCR CORPORATION'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE ON DEFENDANTS' NEW THEORY THAT NCR, THROUGH ITS OWN ACTS, ARRANGED FOR THE DISPOSAL OF ACPC'S BROKE**

NCR Corporation ("NCR") respectfully submits this memorandum in support of its motion *in limine* to exclude evidence or argument regarding Defendants' new theory that NCR is directly liable under CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), for "arranging for" the disposal of carbonless copy paper broke ("CCP broke") produced and sold by Appleton Coated Paper Company ("ACPC"). [1]

## PRELIMINARY STATEMENT

Since this lawsuit began in 2008, Defendants have alleged that ACPC is liable as an arranger because of its sales of CCP broke. But, in December 2011, after the close of Phase II fact discovery and two months before trial, Defendants introduced a new and unpleaded theory of liability into their case. Apart from whether ACPC is liable as an arranger under CERCLA, and NCR therefore is liable as a successor, Defendants now contend that NCR (based on its own acts) is also liable as an arranger. Defendants new theory, which relies on the so-called "formulator liability" doctrine, concerns whether NCR (rather than ACPC) owned or possessed CCP broke and intended to dispose of it. These facts are distinct from the facts relevant to the issue that the parties have been litigating throughout this case—whether ACPC is liable as an arranger.

Trying this late-arriving theory at the February trial is inappropriate for three reasons. First, NCR never had notice of it until after the close of fact discovery, and thus has not had a fair opportunity to prepare a defense. Second, litigating this theory will deprive the parties of time needed to try the core issue at dispute in Phase II, namely, whether ACPC is liable as an

---

[1] Unless otherwise referred to specifically, "Defendants" refers to Georgia-Pacific Consumer Products LP (f/k/a Fort James Operating Company), Fort James Corporation, and Georgia-Pacific LLC (collectively, "Georgia-Pacific"); CBC Coating, Inc.; U.S. Paper Mills Corporation; P.H. Glatfelter Company; WTM I Company and Menasha Corporation.

2

arranger. And third, adjudication of NCR's direct liability is unnecessary given NCR's undisputed status as a successor to ACPC; the new legal theory about NCR seemingly is being pushed by Defendant Georgia-Pacific because it wishes to use this Court to obtain precedent for a related litigation with NCR over the cleanup of the Kalamazoo River, in Michigan.

For these reasons, NCR requests that Defendants be precluded from introducing evidence or argument that NCR itself can be held liable for arranging for the disposal of ACPC's CCP broke.

## BACKGROUND

Between March 2008 and January 2009, all Defendants to this litigation filed 42 sets of counterclaims, consistently pressing (among other things) the theory that ACPC arranged for the disposal of PCB-containing CCP broke and that NCR is liable as a successor owner of ACPC. No counterclaim by any Defendant set forth factual allegations that, if proven, might lead to NCR's direct liability for the alleged disposal of broke sold by ACPC. (*E.g.*, Dkt. No. 239; Dkt. No. 244; Dkt. No. 293; Dkt. No. 310.) Specifically, no counterclaim pleaded that NCR ever owned or possessed the PCB-containing CCP broke that was sold by ACPC, a prerequisite to arranger liability under CERCLA. *See* CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3) (providing liability for any "person" who "arranged for disposal" of hazardous substances "*owned or possessed by such person*") (emphasis added). Nor did any counterclaim ever plead allegations that NCR exercised a level of control over ACPC's CCP broke so pervasive as to constitute constructive ownership or possession. And notwithstanding the Supreme Court's holding in *Burlington Northern* that an intent to dispose is a necessary element of liability under CERCLA § 107(a)(3), no counterclaim by any Defendant alleged facts that would show that NCR itself intended to dispose of ACPC's CCP broke. *See* 129 S. Ct. 1870, 1879-80 (2009).

3

At the outset, and consistent with Defendants' proposal, this Court organized the lawsuit into phases, with Phase I focusing on "when each party knew, or should have known, that recycling NCR-brand carbonless paper would result in the discharge of PCBs to a waterbody" and "what, if any, action each party took upon acquiring such knowledge to avoid the risk of further PCB contamination". (Dkt. No. 252 at 2-3.) The parties completed fact and expert discovery on these issues, and, in December 2009, the Court granted Defendants' motions for summary judgment, ruling that Plaintiffs could not obtain contribution for costs associated with the cleanup of the Lower Fox River. (Dkt. No. 795.) Defendants then filed a second round of summary judgment motions, this time on whether Plaintiffs were liable to them for contribution. In March 2011, the Court granted Defendants' motions for summary judgment with respect to OU2 through OU5 of the site, but ruled that issues of disputed fact required a trial as to OU1. (Dkt. No. 1080.)

With respect to OU1, Defendants only ever had argued that Plaintiffs were liable as successors to ACPC, which allegedly "arranged" for the disposal of CCP broke produced by its manufacturing process. Defendants made no effort to argue that NCR was itself directly liable as an arranger with respect to ACPC's CCP broke, even stating in a footnote in their opposition brief that they were purposefully *not* pursuing that theory. (Dkt. No. 670 at 21 n.10 ("[i]f necessary, [we] will show in a later phase of this case that NCR is also liable as an arranger for the disposal of waste emulsion and broke before NCR acquired ACPC").) As a result, in finding a triable issue on arranger liability for Phase II, the Court explained, "the debate turns on *ACPC's* intent in selling the broke to brokers". (Dkt. No. 1080 at 6 (emphasis added).)

The Court entered a second scheduling order for Phase II that provided for discovery regarding "Plaintiffs' alleged liability as an 'arranger' under section 107(a)(3)". (Dkt.

4

No. 1115 at 1.)  The parties then proceeded to conduct fact discovery, during which Defendants again gave no notice of their intent to pursue a theory of direct liability against NCR. Defendants' initial disclosures identified no categories of documents that could be understood to cover issues relevant to direct liability for NCR, such as information regarding the nature of the relationship between NCR and ACPC before the former's acquisition of the latter.  *See, e.g.*, Declaration of Omid H. Nasab, Esq., in Support of Motion *in Limine* ("Nasab Decl."), Ex. 1 (Georgia-Pacific's Rule 26(a)(1) Initial Disclosures); Nasab Decl., Ex. 2 (Georgia-Pacific's Supplement to Rule 26(a)(1) Initial Disclosures); Nasab Decl., Ex. 3 (Georgia-Pacific's Second Supplement to Rule 26(a)(1) Initial Disclosures).  Defendants further gave no responses to NCR's interrogatories and requests for admission that could have provided such notice.  *E.g.*, Nasab Decl., Ex. 4 (Menasha Corp.'s Resps. and Objections to NCR's Interrogs. and Reqs. for the Produc. of Docs. Interrogs. 10-11); Nasab Decl., Ex. 5 (U.S. Paper Mills Corp.'s Resps. to NCR's Reqs. for Admission, RFA 20)  Finally, none of the fact depositions, more than two dozen in number, touched on the subject, with the arguable exception of Dale Schumaker's deposition, which was noticed by Plaintiffs and taken two days before the close of fact discovery.  *See* Nasab Decl., Ex. 7 (Notice of Dep. for Dale Schumaker).

Defendants further avoided any indication of their intent to pursue a direct liability theory against NCR until November 25, 2011, when Defendants disclosed a pair of expert reports written by James Kittrell and Robert Dolan that offered opinions concerning the nature of the relationship between ACPC and NCR.  With these reports, Defendants signaled for the first time that they intended to argue at this trial that NCR bore direct responsibility for

arranging for the disposal of ACPC's CCP broke, even when Defendants acknowledged that

ACPC was an "independently owned and operated" company.[2]  (*See* Dkt. No. 1300 ¶ 13.)

Two weeks after disclosing the Kittrell and Dolan reports, in December 2011,

Defendants filed a successive motion for summary judgment on the question of arranger liability,

in which they argued for the first time that NCR was itself liable for arranging for the disposal of

CCP broke sold by ACPC.  (*See* Dkt. No. 1247.)  Defendants' new motion was followed by a

letter from Defendant Georgia-Pacific's attorneys to this Court, acknowledging that "[we are]

contending for the first time that NCR itself has arranger liability based on its own conduct.  This

issue was not raised previously".  (Dkt. No. 1262 at 2 n.1 (citation omitted).)  Days later, this

Court struck Defendants' motion, but converted their summary judgment brief into a pretrial

brief.  (Dkt. No. 1265.)  NCR now seeks to preclude any evidence or argument at this trial of the

new, belated theory of liability raised by that brief.

## ARGUMENT

This lawsuit is now in its fifth year, and, in that time, Defendants have failed to

take the appropriate steps to give notice of their intent to advance a theory of direct liability

against NCR, either at the pleading stage or in the years of discovery that followed.  Any

introduction of that theory at this point comes after the close of fact discovery and would cause

undue prejudice to NCR, which has not had a full and fair opportunity to prepare a defense.

Defendants' theory of formulator liability has been put before this Court belatedly and

---

[2] Given Defendants' unexpected allegations and the short time for expert rebuttal reports,
NCR did not have sufficient time to identify and retain new experts to rebut the points raised by
Mr. Kittrell and Mr. Dolan.  Instead, NCR submitted a single supplemental opinion from its
already retained expert, Robert Rock, regarding certain aspects of the financial relationship
between NCR and ACPC.

6

improperly, and both the theory and any evidence gathered in support of it should be precluded at trial.

As a threshold point, it is important to note that whether *NCR* purportedly "arranged" for the disposal of ACPC's CCP broke is fundamentally distinct from whether *ACPC* arranged for the disposal of ACPC's CCP broke. Obviously, liability under CERCLA § 107(a)(3) requires pleading and proving facts with respect to the party whose acts are the basis of liability, as CERCLA § 107(a)(3) imposes liability on the "*person*" who "own[s] or possesse[s]" hazardous material, and "arrange[s]" to have "any other party or entity" dispose of it. CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3) (emphasis added).

Here, Defendants have only pleaded vague and conclusory allegations, devoid of any factual material that could provide notice of their belief that NCR is directly liable for the disposal of any CCP broke. First, they have never pleaded allegations that NCR (as opposed to ACPC) ever owned or possessed the CCP broke produced by ACPC, a necessary element of any form of arranger liability. *See* CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3). Second, they have never pleaded facts that could support a finding that NCR intended to dispose of ACPC's CCP broke, a necessary element after the Supreme Court's decision in *Burlington Northern*. 129 S. Ct. at 1879-80. For example, Defendants never alleged that NCR owned or possessed any CCP produced at ACPC, or that NCR was involved in CCP broke sales, influenced the handling or sale of CCP broke or otherwise intended for the disposal of ACPC's CCP broke. Nor have Defendants ever alleged in this case that NCR consigned, rather than sold, PCB-containing emulsion to ACPC—a fact on which Defendants' formulator liability experts and GP's stricken summary judgment brief rely. (*See* Dkt. No. 1247 at 33.) Defendants are entitled to pursue relief "based on any legal theory . . . under any set of facts that [can] be established consistent

7

with the allegations," *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 428 (7th Cir. 2005), but, by their new theory, they seek relief based on a purported set of facts entirely distinct from their pleaded allegations.

Defendants' initial disclosures, discovery requests, responses to NCR's discovery requests, depositions and submissions to the Court never provided adequate notice, and it would substantially prejudice NCR if Defendants were permitted to amend their pleadings now, long after the time for doing so has passed. Federal Rule of Civil Procedure 15, which governs amendments to pleadings, generally favors providing parties the opportunity to try their claims on their merits. 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1488 (3d ed. 2011). But, as the Court recently noted in denying Defendants' attempt to add an anticipatory breach of contract claim shortly before trial, that principle has important limitations. (Dkt No. 1294.) Because "[p]arties to litigation have an interest in speedy resolution of their disputes without undue expenses", "[s]ubstantive amendments to the complaint just before trial are not to be countenanced and only serve to defeat these interests". *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225 (7th Cir. 1988). Accordingly, a court may deny leave to amend in cases of "undue delay, bad faith, . . . dilatory motive, . . . undue prejudice to the opposing party[,] or futility of amendment". *Park v. City of Chicago*, 297 F.3d 606, 612-13 (7th Cir. 2002) (quotation omitted). The longer the delay, the more justifiable the denial. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008).

These considerations compel denial of Defendants' attempt to amend. First, Defendants' amendment comes far too late. The parties have exchanged over a million pages of documents, deposed dozens of witnesses, employed the services of nearly twenty experts and briefed and argued two full rounds of summary judgment motions (not to mention the myriad

8

other motions filed). Yet Defendants failed to disclose their intent to allege that NCR arranged for the disposal of ACPC's CCP broke until late November 2011, when Defendant Georgia-Pacific disclosed the Kittrell and Dolan expert reports. Under these circumstances, an amendment should be denied. *See Soltys*, 520 F.3d at 743-44 (denying leave to amend requested shortly before trial when plaintiffs "mistakenly or inadvertently" failed to add a claim they had been aware of all along); *Carroll v. Stryker Corp.*, 670 F. Supp. 2d 891, 900 (W.D. Wis. 2009) (denying a motion to amend to add a purportedly unanticipated claim, because permitting the amendment "would allow a plaintiff endlessly to spin out his lawsuit as he claimed a mulligan every time his current claims were proved inadequate").

Second, the resulting prejudice to NCR is clear. With fact discovery finished, NCR cannot propound discovery requests or take depositions with respect to the new factual issues that Defendants seek to litigate. And the new factual issues are many. Defendants have stipulated that NCR never owned or possessed CCP broke produced by ACPC. (Dkt. No. 1300, ¶¶ 39-40); *see also* CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3) (providing liability for any "person" who "arranged for disposal" of hazardous substances "*owned or possessed by such person*" (emphasis added).) Defendants' only possible avenue to proving NCR's direct liability is thus by asserting that NCR had such pervasive control over ACPC's CCP broke as to have constructive ownership of the broke. Even if legally sufficient, this is a highly fact-intensive inquiry.

Moreover, Defendants must also show that NCR intended to dispose of ACPC's broke. Based on their pretrial brief and expert reports, it appears that Defendants will attempt to do this by putting forth evidence at trial on topics such as the terms under which CCP emulsion was sold by NCR to ACPC, ACPC's financial accounting, the nature of NCR's performance

9

specifications for CCP paper and NCR's relationships with foreign corporations such as Wiggins Teape and Jujo Paper Company.  (*See, e.g.*, Dkt. No. 1247 at 21-29.)

While NCR disputes the legal relevance of these facts to its alleged arranger liability, the facts are mostly distinct from the facts relevant to ACPC's intent and are themselves disputed by the parties.  NCR has not had a fair opportunity to develop these facts.  For example, with proper notice of Defendants' new theory, NCR would have elicited testimony from deponents rebutting Defendants' characterization of the relationship between NCR and ACPC. NCR has also not had an opportunity to search for and retain expert witnesses who could digest the enormous record in this case in the three weeks provided to NCR for Phase II rebuttal expert reports.  And with just a few weeks remaining until trial, NCR cannot effectively mine the over one million pages of documents produced in this case to seek material to rebut Defendants' new allegations.  The cumulative effect is undue prejudice.  *Ferguson v. Roberts*, 11 F.3d 696, 706-07 (7th Cir. 1993) (affirming denial of a motion to amend, in light of "the fast-approaching trial date," when the amendment sought to add "new complex and serious charges which would undoubtedly require additional discovery for the defendants to rebut" (internal quotations omitted)).[3]

Third, Defendants' late amendment will waste the parties' and this Court's resources.  As for the parties, if Defendants are allowed to add their new theory of liability against NCR, the parties will have to divert their limited trial time from the core issues

_____

[3] Defendants may contend that no amendment is required because some evidence in the record arguably supports their new theory of liability.  But that is not enough to provide NCR with reasonable notice, as a "court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim."  *Ippolito v. WNS, Inc.*, 864 F.2d 440, 456 (7th Cir. 1988) (quotation omitted).  Rather, consistent with the requirements of Federal Rule 8(a), the party seeking to advance the claim bears the burden of noticing it.

10

surrounding ACPC. As for the Court, it would be forced, at this late stage, to delve into an entirely new set of factual allegations and evidence. This is no small detour. As noted above, the disputed facts relevant to Defendants' new formulator liability allegation are not only distinct from the facts relevant to ACPC's arranger status, but also voluminous.

This waste of the parties' and this Court's resources is particularly unjustified given that Defendants will, in any event, be able to prosecute their arranger claims against Plaintiffs through their allegation that ACPC arranged for the disposal of CCP broke. Indeed, given NCR's undisputed successor liability, this effort to add a new theory of liability seems motivated by Georgia-Pacific's desire to obtain precedent for a later-filed contribution suit against NCR regarding the Kalamazoo River in Michigan, in which Georgia-Pacific alleges that NCR is liable under the formulator theory as an arranger for broke sold by the Mead Corporation ("Mead"). (Notably Georgia-Pacific originally attempted to prosecute the Kalamazoo action in this Court.) Unlike with ACPC, NCR is not a successor to Mead, and thus, in the Kalamazoo action, Georgia-Pacific is limited to an allegation that NCR's own acts constituted an arrangement to dispose of Mead's CCP broke. *See* Complaint, *Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 11-CV-00483-RJJ (Dkt. No. 1) (W.D. Mich. Dec. 3, 2010). Georgia-Pacific's pursuit of a perceived tactical advantage for purposes of a different lawsuit are not a good use of the parties' or this Court's resources.

## CONCLUSION

For the foregoing reasons, NCR respectfully requests that this Court grant its motion *in limine* to exclude evidence or argument regarding Defendants' theory that NCR is directly liable under the formulator theory for arranging for the disposal of CCP broke produced and sold by ACPC.

11

Dated:  February 2, 2012                    Respectfully submitted,


                                            NCR CORPORATION

                                            /s/ Darin P. McAtee
                                            *Counsel for NCR Corporation*

                                            CRAVATH, SWAINE & MOORE LLP
                                            Evan R. Chesler
                                            Dave R. Marriott
                                            Darin P. McAtee
                                            Worldwide Plaza, 825 Eighth Avenue
                                            New York, New York 10019
                                            Phone: (212) 474-1000
                                            Fax: (212) 474-3700
                                            dmcatee@cravath.com

                                            SIDLEY AUSTIN LLP
                                            Evan B. Westerfield
                                            One South Dearborn Street
                                            Chicago, Illinois 60603
                                            Phone: (312) 853-7000
                                            Fax: (312) 853-7036

                                            MARTEN LAW PLLC
                                            Linda R. Larson
                                            Bradley M. Marten
                                            1191 Second Avenue, Suite 2200
                                            Seattle, Washington 98101
                                            Phone: (206) 292-2600
                                            Fax: (206) 292-2601

Case 2:08-cv-00016-WCG   Filed 02/02/12   Page 12 of 12   Document 1312