IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS INC. and <br> NCR CORPORATION, <br>                   Plaintiffs, <br><br>      v. <br><br> GEORGE A. WHITING PAPER <br> COMPANY, et al., <br>                   Defendants. | No. 08-CV-00016-WCG |

**DEFENDANTS' / COUNTERCLAIM-PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NCR CORPORATION'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE ON DEFENDANTS' CLAIMS THAT NCR, THROUGH ITS OWN ACTS, ARRANGED FOR THE DISPOSAL OF A HAZARDOUS SUBSTANCE** [1]

Karl S. Lytz
Patrick J. Ferguson
Latham & Watkins LLP
505 Montgomery St., Ste. 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Fax: (415) 395-8095
Karl.Lytz@lw.com
Patrick.Ferguson@lw.com

Mary Rose Alexander
Margrethe K. Kearney
Latham & Watkins LLP
233 S. Wacker Dr., Ste. 5800
Chicago, IL 60606
Telephone: (312) 872-7700
Facsimile: (312) 993-9767
Mary.Rose.Alexander@lw.com
Margrethe.Kearney@lw.com

February 9, 2012

---

[1] This memorandum is filed on behalf of the following Defendants: Georgia-Pacific Consumer Products LP (f/k/a Fort James Operating Company), Fort James Corporation, and Georgia-Pacific LLC (collectively, "GP"), CBC Coating, Inc., U.S. Paper Mills Corporation, P.H. Glatfelter Company, WTM I Company, and Menasha Corporation.

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND .............................................................................................................3

III. ARGUMENT...................................................................................................................6

    A. NCR Had All The Notice The Law Requires – Defendants' Counterclaims State Direct Arranger Claims Against NCR, And Defendants May Thus Prove Those Claims Through Any Set Of Facts Showing NCR Is Liable, Including NCR's Own Acts. ......................................................................................6

        1. The Law Allows A Stated Claim To Be Supported By Any Set Of Facts Consistent With The Pleading's Allegations.......................................7

        2. Defendants May Use Any Facts Showing NCR Is Directly Liable As An Arranger At Trial Because Such Facts Are Consistent With Defendants' Counterclaims..............................................................................8

        3. NCR's Direct Arranger Liability Has Been At Issue Since Defendants Filed Their 2008 Counterclaims, And NCR's Claim Of Undue Prejudice Is Without Merit.................................................................9

    B. NCR's Direct Arranger Liability Is A Core Issue To Be Tried, Not A Diversion, And It Can Be Efficiently Tried Alongside ACPC's Arranger Liability Within The Allotted Trial Time. ...............................................................11

    C. The Direct Arranger Claim Against NCR Is Necessary Since This Case Is About Holding NCR Accountable For Its Own Acts, Not Just Those Of ACPC. .........................................................................................................................13

IV. CONCLUSION..............................................................................................................14

**I.      INTRODUCTION**

NCR's direct involvement in the contamination of the Fox River has always been, and still is, a central focus of this case. The Court should deny NCR's motion *in limine* to exclude evidence of its own arranger liability, Dkt. #1312 ("Motion"), because, as an initial matter, the Defendants specifically pleaded direct arranger liability counterclaims against NCR in 2008, which were more than sufficient to satisfy the Seventh Circuit's notice pleading standard. Since then, NCR's control over the production of NCR Paper and its involvement in the disposal of the broke waste inevitably generated by that process have been the subject of fact and expert discovery, extensive motion practice by all parties, and this Court's prior decisions. NCR cannot credibly claim surprise or ambush. This issue is ripe for trial, the parties have the time and resources to try it, and doing so will result in an efficient use of the Court's resources because it will allow all the parties to present the facts necessary for a truly final resolution of this matter.

NCR's three stated reasons for excluding evidence of its direct arranger liability at trial are baseless. *First*, NCR's argument that these claims are "new and unpleaded" is not accurate. Motion at 2. For instance, paragraph 39 of GP's 2008 counterclaim specifically alleged that "*NCR Corporation* is a person who by contract, agreement or otherwise *arranged for disposal* or treatment . . . *of hazardous substances, in the form of PCB-containing NCR broke, within the meaning of CERCLA § 107(a)(3)*." Dkt. #310 ¶ 39.[2] These short and plain statements of

---

[2]   Other Defendants made similar counterclaims: Dkt. #239 (Menasha's counterclaim) ¶ 30 (same language); Dkt. #242 (Glatfelter's counterclaim) ¶ 10 ("NCR arranged for the transportation for treatment or disposal of hazardous substances at facilities from which there have been releases of hazardous substances to the Site"); Dkt. #244 (WTM I's counterclaim) ¶ 48 ("As a result of its disposition of NCR Paper broke, NCR or its predecessors were persons who by contract, agreement, or otherwise, arranged for disposal or treatment of hazardous substances at a facility, as defined by Section 107(a) of CERCLA, 42 U.S.C. §9607(a)."). In quotations, unless otherwise indicated, emphasis is added, and internal quotations, citations, brackets, and ellipses are omitted.

Defendants' claims – none of which were even mentioned in NCR's Motion – satisfy the notice pleading standard. NCR's Motion should be summarily denied on this basis alone because the law clearly provides that parties need not include legal theories in their pleadings, and can support their cases with *any set of facts* that are consistent with a properly noticed claim. Moreover, as explained below in Section II and III.A, the issue of NCR's arranger liability has been an ongoing subject of discovery and motion practice since the start of these proceedings.

*Second*, NCR's argument that this claim will divert trial time away from core issues is incorrect because NCR's direct arranger liability *is itself* a core issue of the case, and has always been. The vast majority of the evidence against NCR – primarily ancient business records and deposition testimony that the Court has already seen and relied upon in Phase I – overlaps, and is inextricably bound up with, the evidence that supports ACPC's arranger liability. The NCR direct liability claim can therefore be tried with little additional evidentiary presentations during the presently allotted trial time, and all parties (including NCR) have expert witnesses who will testify on these issues. *See* Part III.B.

*Third*, NCR's argument that adjudication of its direct liability is unnecessary is also incorrect. This is a case very much concerned with holding NCR accountable for what it knowingly did to the detriment of the Fox River and Green Bay, and the fact of the matter is that NCR by this Motion is once again trying to hide its own conduct from judicial review. In Phase I, NCR argued that the Court should only consider ACPC's knowledge because (it claimed) that NCR's only potential liability was as ACPC's successor. The Court rightly rejected that contention in the context of those equitable proceedings. Dkt. #795 at 24. Now, NCR is trying to hide its conduct from the Court's consideration in the Phase II arranger proceedings, which is not surprising given what is at stake. As detailed in GP's Pre-Trial Brief, Dkt. #1247, ancient

business records prove that NCR knew that NCR Paper production would inevitably generate PCB-containing broke waste that had to be disposed of, actively investigated broke recycling options, and helped facilitate disposal through broke sales to recyclers. There can be no doubt that NCR, through its knowledge of, participation in, and control over the NCR Paper manufacturing process, took intentional steps towards the disposal of a hazardous substance, and therefore is itself liable as an arranger under the U.S. Supreme Court's standard in *Burlington Northern & Santa Fe Railway Co. v. United States,* 129 S. Ct. 1870 (2009) ("*BNSF*").[3]

As the Court recognized in denying NCR's Rule 54(b) motion, the Seventh Circuit should have this Court's full factual record and complete legal determinations on any review of this case, and NCR's direct liability is part of that record. *See* Part III.C. The Court should deny NCR's Motion and allow the Defendants to set forth the facts that prove their direct arranger liability counterclaims against NCR.

## II. BACKGROUND

Since 2008, the Defendants have continuously maintained that NCR itself has direct liability as an arranger, a fact that was apparent even during Phase I, which focused on both NCR's and ACPC's knowledge of, intent regarding, and responses to the environmental risks of

---

[3] This is exactly the type of case that the U.S. Supreme Court would have had in mind when it wrote in *BNSF* that: "it is true that in some instances an entity's knowledge that its product will be leaked, spilled, dumped or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes." 129 S. Ct. at 1880. NCR, having filed motions based on *BNSF* on two prior occasions, Dkt. #549; Dkt. #560, can hardly be "surprised" that Defendants contend that NCR's conduct satisfies the arranger standard set forth therein. Furthermore, this is a case in which arranger liability may also be found under *United States v. Aceto Agricultural Chemicals Corporation*, 872 F.2d 1373 (8th Cir. 1989) ("*Aceto*"), and its progeny – *i.e.*, cases finding that an entity's ability to control a toll manufacturing relationship knowing that waste disposal was an inherent feature of the manufacturing process gives rise to arranger liability. Dkt. #1247 at 10-11. As *Aceto* was decided nearly 23 years ago and has since been cited or followed in a number of other courts, *id.* at 16-17, including citation by Judge Posner, *G.J. Leasing Co. v. Union Elec. Co.*, 54 F.3d 379, 384-85 (7th Cir. 1995), NCR's claim of surprise even on the *Aceto* theory is unconvincing.

NCR Paper broke recycling. While arranger liability was not a direct issue during Phase I, the facts common to both arranger liability and Phase I culpability were.[4] Indeed, much of the evidence presented during Phase I related to NCR's own conduct and knowledge, *e.g.*, the Butler's Court materials that went to NCR's knowledge of broke recycling, capsule breakage, and the release of PCBs to water.[5] *See, e.g.*, Dkt. #570 (8-28-09), Dkt. #719 (10-19-09) at 3-12 ("Both NCR and ACPC's Knowledge and Fault are Relevant to Phase I"). NCR's control of the NCR Paper production process was also very much at issue during the Phase I depositions.[6]

NCR filed numerous papers attempting to disclaim the Defendants' efforts to hold NCR directly liable for its own conduct, thus demonstrating NCR's awareness that its direct arranger liability was at issue. For example, in its September 30, 2009 summary judgment opposition, NCR argued that "Defendants' focus upon the knowledge of NCR is misplaced as a matter of law. Plaintiffs' alleged liability arises from the actions of their predecessor, [ACPC], and therefore it is ACPC's knowledge and actions alone which are relevant to the Phase I analysis." Dkt. #658 at 1-2. NCR further argued there that "NCR itself did not discharge any PCBs into the Lower Fox River and it did not sell PCB-containing broke to paper recyclers. It therefore has no direct liability for contamination of the Fox River. NCR's alleged CERCLA liability arises only

---

[4] While the issue was not specifically moved on in Phase I, Defendants noted in their September 30, 2009 filing that "[i]f necessary, Defendants will show in a later phase of this case that NCR is also liable as an arranger for the disposal of waste emulsion and broke before NCR acquired ACPC." Dkt. #670 at 21 n.10.

[5] Notably, the same issues are involved in Phase II, and that evidence fits hand and glove with this Court's articulated test for arranger liability. Dkt. #1080 at 3-9.

[6] *See, e.g.*, Declaration of Karl Lytz in Support of Defendants' Opposition, filed concurrently herewith, ("Lytz Decl."), Ex. 1 (Heinritz 1/28/09) at 17:15-19:3 (NCR control over production process); Ex. 2 (McIntosh 4/7/09) at 124:7-125:6, 146:5-147:14 (same); Ex. 3 (McKinney 4/8/09) at 25:22-27:10 (ACPC not a licensee of NCR); Ex. 4 (Jezerc 4/20/09) at 108:19-109:12, 122:23-124:6 (same; NCR control over capsule technology); Ex. 5 (Goetz 4/24/09) at 77:22-78:21 (NCR control over production process; ACPC not a licensee of NCR) (quoted *infra*); Ex. 6 (Schwab 6/30/09) at 34:18-35:10 (ACPC not a licensee of NCR).

from its status as the successor to ACPC." *Id.* at 13.

Similarly, in its October 19, 2009 summary judgment reply, NCR again expressly noted that the Defendants were alleging that NCR itself had arranger liability apart from its status as ACPC's successor, stating that "Defendants . . . claim for the first time that they can show that NCR has CERCLA liability other than as successor to ACPC. For instance, they argue that NCR could have liability as the seller of the emulsion used in making CCP. However, the seller of a useful product only has CERCLA arranger liability if it planned and intended to dispose of hazardous substances through the sale." Dkt. #729 at 2-3. Further, NCR stated that "NCR's alleged knowledge and actions are not relevant . . . because ACPC – not NCR – is the 'actor' whose activities allegedly give rise to CERCLA liability." *Id.* at 9; *see also, e.g.*, Dkt. #560 at 12-13 (NCR moved to modify the case management order, stating that "[t]his case cannot be resolved without determining whether plaintiffs have arranger liability," and then went to great lengths to argue that NCR had no direct liability).

In response, the Court determined in its Phase I Decision and Order that:

> [I]f one company is instrumental in causing environmental damage, it would not make sense, in an equitable action, to ignore that company's past actions on the grounds that it is liable only as a successor in interest to another company. Accordingly, I will consider the knowledge of NCR not just in its role as a successor corporation to Appleton Coated, but also in its role as the creator of carbonless copy paper and a key customer of Monsanto.

Dkt. #795 at 24.[7] The Court did not examine the difference between NCR and ACPC's knowledge in the context of the equitable proceedings, recognizing that "to the extent there is any material difference in the culpability of the two Plaintiffs, that is an issue for other

---

[7] *See also Id.* at 10 n.15 ("[I]t does not require a stretch to conclude that the Plaintiffs, two sophisticated corporations with exposure to the paper industry in the Fox Valley, knew that recycling and production of paper using recycled materials was a water-intensive process and that paper plants released significant quantities of wastewater, water that would find its way into the river.").

proceedings." *Id*. at 6 n. 8. The parties' Phase I filings and the Court's Phase I Decision show that the issue of NCR's direct liability was never unstated, hidden, or ignored.[8] Consequently, both ACPC's and NCR's "alleged liability as an 'arranger' under Section 107(a)(3)" are properly before the Court now. Dkt. #1115 ¶ 1.[9]

## III. ARGUMENT

Despite the clear arranger allegations against NCR in Defendants' counterclaims and the subsequent record, NCR argues that the Defendants' trying NCR's direct arranger liability is "inappropriate for three reasons" – (i) lack of notice and resulting prejudice, Motion at 2, 6-10, (ii) diversion or waste of trial time, *id.* at 2-3, 10-11, and (iii) adjudication of an unnecessary issue, *id.* at 3, 11. As shown below, all three are without merit.

### A. NCR Had All The Notice The Law Requires – Defendants' Counterclaims State Direct Arranger Claims Against NCR, And Defendants May Thus Prove Those Claims Through Any Set Of Facts Showing NCR Is Liable, Including NCR's Own Acts.

NCR first argues that Defendants "failed to take the appropriate steps to give notice of their intent to advance a theory of direct liability against NCR." *Id.* at 6. This is not correct. The law and the record here show that NCR received all the notice of the direct arranger claim

---

[8] Defendants' December 11, 2009 Proposed Findings of Fact further show that the facts underlying Defendants' direct arranger claim have been at issue in the case for years. Dkt. #779 ¶¶ 140-41, 161-62, 169, 171, 173; *see also* Dkt. #987 at 1 (NCR's responses) ("NCR has no CERCLA liability for its own historical actions.").

[9] The threat of direct arranger liability and NCR's defenses thereto are not something new, special, or unique to this case. In the related Section 106 enforcement case before the Court, the United States similarly put NCR on notice of its direct liability, and NCR has disclaimed such liability in that case too. *See United States v. NCR Corp.*, No. 10-910, Dkt. #1, Compl. ¶¶ 51-52 (10-14-10); Dkt. #82, NCR's Amended Answer ¶¶ 51-52 (10-10-11) ("Plaintiffs' claims are barred in whole or in part because NCR did not arrange for disposal or treatment of any hazardous substances, within the meaning of CERCLA, at the Lower Fox River site."). Likewise, as far back as 1999, NCR was employing its "useful product" defense to direct arranger liability. Lytz Decl. Ex. 7 at NCR-FOX-0524593 (NCR letter to Sen. Trent Lott, Apr. 2, 1999 ("the sale or broke by NCR constituted the sale of useful product")).

against it that it was due, and then some.  Moreover, in direct conflict with NCR's argument about the Defendants' so-called "unpleaded theory," *id.* at 2, the *McDonald* case – on which NCR itself relies – made clear that "[p]arties *do not need to plead legal theories* in their complaints in federal court."  *McDonald v. Household Int'l*, 425 F.3d 425 (7th Cir. 2005); *see* Motion at 7-8 (citing *id*. at 424).

### 1. The Law Allows A Stated Claim To Be Supported By Any Set Of Facts Consistent With The Pleading's Allegations.

"To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a 'short and plain statement of the claim showing that [it] is entitled to relief.'"  *McIntosh v. Jadin*, No. 09-1106, 2010 WL 346633, at *1 (E.D. Wis. Jan. 21, 2010) (Griesbach, J.) (quoting FRCP 8(a)(2)).  That means, "[i]n order to give a defendant fair notice of what the claim is, and the grounds upon which the claim rests, [Rule] 8(a)(2) requires only a short and plain statement of a claim showing that the plaintiff is entitled to relief."  *Dental Health Prods. v. Ringo*, No. 08-1039, 2009 WL 1076883, at *4 (E.D. Wis. Apr. 20, 2009) (Griesbach, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 55 (2007)).

Thereafter, "*[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.*"  *Reynolds v. CB Sports Bar*, 623 F.3d 1143, 1147 (7th Cir. 2010) (quoting *Twombly*, 550 U.S. at 563).  Indeed, as the Supreme Court has held, "once a claim for relief has been stated, a plaintiff receives the benefit of *imagination*, so long as the hypotheses are consistent with the complaint."  *Twombly*, 550 U.S. at 563; *see also Non Typical Inc. v. Transg. Logistics Grp. Inc.*, No. 10-1058, 2011 WL 1792927, at *2 (E.D. Wis. May 10, 2011) (Griesbach, J.) (same); FRCP 8(e) ("Pleadings must be construed so as to do justice.").

### 2. Defendants May Use Any Facts Showing NCR Is Directly Liable As An Arranger At Trial Because Such Facts Are Consistent With Defendants' Counterclaims.

Defendants' 2008 counterclaims indisputably pleaded arranger liability claims against NCR under Section 107(a)(3). As noted above, paragraph 39 of GP's counterclaim specifically alleged that:

> NCR Corporation is a person who by contract, agreement or otherwise arranged for disposal or treatment . . . of hazardous substances, in the form of PCB-containing NCR broke, within the meaning of CERCLA § 107(a)(3).

Dkt. #310 ¶ 39; *see also* n. 1. These allegations belie NCR's assertion that Defendants' direct arranger theory against NCR is "seek[ing] relief based on a purported set of facts *entirely distinct* from [its] *pleaded allegations*." Dkt. #1312 at 8. They are not "entirely distinct" – they are *entirely consistent* with these allegations. Nothing in GP's paragraph 39 (or any of the other Defendants' counterclaims) is so limiting as to prevent a claim of direct arranger liability against NCR.

Moreover, while NCR now hints at Rule 12 arguments on the eve of trial, Motion at 7, it is beyond dispute that Defendants' counterclaims adequately state claims for direct arranger liability against NCR. NCR never contested the adequacy of Defendants' counterclaims under Rule 12(b)(6), and its failure to have done so is fatal to its belated (and incorrect) arguments that these claims should not proceed. Defendants' direct arranger liability counterclaims "ha[ve] been stated adequately," *Reynolds*, 623 F.3d at 1147, and Defendants may, therefore, employ their "imagination" to conceive and bring "any set of facts" to prove their claim that NCR is liable as an arranger – whether those facts show NCR is liable as successor, liable in its own

8

right, or both. *Twombly*, 550 U.S. at 563.[10]

### 3. NCR's Direct Arranger Liability Has Been At Issue Since Defendants Filed Their 2008 Counterclaims, And NCR's Claim Of Undue Prejudice Is Without Merit.

The proceeding discussion conclusively shows that the Motion should be denied. A review of NCR's other arguments further confirms that result.

*First,* NCR argues that "it would substantially prejudice NCR if Defendants were permitted to amend their pleadings now." Motion at 8-10. This argument and NCR's repeated references to Defendants' wanting to amend their pleadings are nothing more than a straw man. Defendants do not seek and have no reason to amend their pleadings. As shown above, the counterclaims are fine as they are, *see supra* Part III.A.2, and NCR cannot be prejudiced by an amendment that is not even sought.

*Second,* NCR argues that "submissions to the Court never provided adequate notice" of Defendants' direct arranger liability claim against NCR. Motion at 8. As explained above, however, Defendants' counterclaims put NCR on notice in 2008, and Defendants' subsequent submissions to the Court confirm that NCR has long been aware of the Defendants' consistent contention that NCR is directly liable. *See supra* Part II (citing Dkt. #570; Dkt. #719; Dkt. #779). Most telling of all, however, are NCR's *own* submissions to the Court that repeatedly and expressly *disclaimed* its direct arranger liability. *See id.* (citing Dkt. #560, Dkt. #658, Dkt. #729, Dkt. #987). In sharp contrast to NCR's present assertion that "Defendants . . . avoided any indication of their intent to pursue a direct liability theory against NCR until November 25,

---

[10] This point is illustrated in the *McDonald* case on which *NCR* relies. Motion at 8 (citing *McDonald*, 425 F.3d 424). In *McDonald*, the Seventh Circuit ruled that the district court erred in not allowing a possible, additional theory from the same core allegations to be heard since the law "entitle[d the plaintiffs] to explore these possibilities further." 425 F.3d at 429-30; *see also id.* at 425 (quoted *supra*).

*2011*" Dkt. #1312 at 5, NCR correctly observed in its October 19, *2009* reply that: "Defendants . . . claim . . . that they can show that NCR has CERCLA liability other than as successor to ACPC." Dkt. #729 at 2-3; *see also, e.g.*, *supra* Part II; Dkt. #658 at 13. NCR's own filings thus prove false its present assertion that it did not receive notice of such a claim until November 2011.[11]

*Third,* NCR argues that written discovery and depositions "never provided adequate notice" of Defendants' direct arranger liability claim against NCR. Motion at 8. This too is incorrect. As an initial matter, while NCR elsewhere correctly notes that the notice obligation here is an issue of pleading arising under Rule 8, *id.* at 10 n.3, no where does NCR explain how there is an additional obligation to notice a liability claim through written discovery and/or depositions – since there is no such requirement. Even so, the discovery record is replete with examples of written discovery and deposition questions related to NCR's direct liability. For example, on December 19, 2008, GP asked NCR to:

> Please identify and explain the relationship between or among NCR and Monsanto, Wiggins, BAT, Mead, Jujo and/or Mitsubishi, including but not limited to . . . cooperation regarding the identification and assessment of issues raised by the use of PCBs in the production of CCP, the production of CCP emulsion, or the recycling of "waste," "broke," "trim," "scrap," "cut-offs" or "off-cuts" from CCP.

Lytz Decl. Ex. 8 at Interrogatory 4; *see also*, *e.g.*, *id.* at Interrogatories 1-2, 5, RFP 21. Similarly, the issue was raised in multiple depositions, including that of ACPC's William Goetz on April 24, 2009:

---

[11] GP's December 9, 2011 letter to the Court noted a difference in its Phase I and II briefing in that Phase II was "contending for the first time that NCR itself has arranger liability based on its own conduct." Dkt. #1262 at 2 n.1. This does not show any lack of notice. The letter simply noted, as GP had before, that it did not move for summary judgment on this claim earlier when the summary judgment focus was on ACPC. Dkt. #670 at 21 n.10. That is not to say, however, that the NCR direct liability claim was not pleaded or that NCR was not on notice of it since the outset.

> Q What was your understanding of the relationship between Appleton Coated and NCR during [the relevant] time period?
>
> A [NCR] would give us orders for product. We would buy the base paper from approved sources *by NCR*. We would buy the capsule material *from NCR*. We would buy the starch and whatever additives from other suppliers as directed *by NCR*. And we would buy the receiver material . . . specified *by NCR*. We would take those materials and put them together in formulas that were provided *by NCR*. And then we would apply that to paper, to the specifications *by NCR*. . . . And then we would cut the paper up into rolls or sheets, do orders as provided *by NCR*, and we would ship the material to customers as defined *by NCR*.

Lytz Decl. Ex. 5 at 77:22-78:21; *see also, e.g.*, *supra* n.5 (listing other depositions).

Discovery clearly put NCR on notice and afforded it the opportunity to ask questions of witnesses and otherwise develop facts related to its defense to direct arranger liability. Indeed, discovery was the means by which Defendants developed the set of facts that support their direct arranger liability claim against NCR. Dkt. #1247 at 21-29.

> **B.  NCR's Direct Arranger Liability Is A Core Issue To Be Tried, Not A Diversion, And It Can Be Efficiently Tried Alongside ACPC's Arranger Liability Within The Allotted Trial Time.**

NCR argues that "this late amendment will waste the parties' and this Court's resources." Motion at 10; *see also id.* at 2. Once again, there is no amendment at issue here. In any event, NCR's direct arranger liability will not divert time and resources from the core issues in this case because NCR's direct liability *is a core issue* – properly noticed in 2008 and now ripe for trial. *See supra* Part III.A. As demonstrated in Defendants' Pre-Trial Brief, Dkt. #1247, [12] NCR's

---

[12]  Among other things, ancient business records prove the following: In 1953, NCR knew that a substantial portion of the PCB emulsion it conveyed to ACPC would inevitably end up in waste broke that had to be disposed of, preferably through recycling. *Id*. at 21-29. Beginning in 1953, NCR knew that recycling NCR Paper broke was problematic because repulping it ruptured PCB and ink-containing coatings, turning the repulped NCR broke fibers blue. *Id.* Beginning in 1954, NCR consulted with the Waste Paper Utilization Council to find recycling alternatives for NCR broke. *Id.* In 1958, NCR conducted its own experiments on the removal of emulsion coatings from NCR broke, advised its licensee (Wiggins Teape) of those results, and coordinated the exchange of NCR Paper broke recycling information among its contract coaters (including

11

direct arranger liability is primarily based on ancient business records already before the Court. At trial, Defendants intend to offer the testimony of two expert witnesses, who were properly designated under the Court's scheduling order, and who base their NCR liability opinions on documents produced by Plaintiffs (in large part during Phase I) and third-party materials produced during the course of arranger discovery. NCR has seen these experts' reports, deposed them, and can be fully prepared to cross-examine them on these issues. Indeed, NCR already has its own experts prepared to rebut this testimony. Consequently, NCR's assertion that the Court "would be forced, at this late stage, to delve into an entirely new set of factual allegations and evidence," Motion at 11, is incorrect.

It is worth noting again that Defendants are pursuing two legal theories with regard to NCR's direct arranger liability: first under the *BNSF* standard, and secondarily under the *Aceto* line of cases. *See supra* Part I & n.2. *BNSF* requires that Defendants demonstrate that NCR conveyed its emulsion to ACPC knowing that some of it would be disposed of by ACPC through broke sales, and planned for that inevitability. *Id.*[13] As shown in GP's Pre-Trial Brief, Dkt. #1247, the *BNSF* evidence is largely based on the same ancient business records that Defendants presented the Court in Phase I, and in some instances were already explicitly relied upon by the Court in its Phase I Decision. *See e.g.*, Dkt. #795 at 8-20, 22-26 & n.21. Contrary to NCR's assertions, Motion at 9, the *BNSF* liability case does not require additional or voluminous accounting evidence or the like.

The *Aceto* claim is a slightly different theory where ownership and control of the emulsion, ownership of intermediate and final products, and control of the manufacturing

---

ACPC) and Wiggins Teape. *Id.* Ancient business records further establish that NCR continued this pattern of conduct in the 1960's. *Id.*

[13] Contrary to NCR's arguments, Motion at 7, Defendants need not show that NCR owned the broke. *See supra* n.2 (quoting 129 S. Ct. at 1880); *see also* Dkt. #1247 at 21-29.

process are a part of the analysis, 872 F.2d at 1381. Again, however, all of the evidence supporting this claim was either produced by Plaintiffs during Phase I and II, or collected from third parties and produced during Phase II.

Trying the NCR direct liability claim now will ultimately save – not waste – judicial and party resources. If the NCR successor claim is tried alone and ultimately unsuccessful, then there would need to be a second trial on the NCR direct liability claim.[14] The interests of judicial economy and a "speedy resolution," Motion at 8, therefore counsel in favor of trying both the direct and successor claims together now.

### C. The Direct Arranger Claim Against NCR Is Necessary Since This Case Is About Holding NCR Accountable For Its Own Acts, Not Just Those Of ACPC.

NCR finally argues that "adjudication of NCR's direct liability is unnecessary" and that "[t]his waste of . . . resources is particularly unjustified given that Defendants will . . . be able to prosecute their arranger claims . . . through their allegation that ACPC arranged for the disposal of CCP broke." Dkt. #1312 at 3, 11. This too is incorrect for several reasons. First, the alleged "waste" again refers back to NCR's erroneous "pleading amendment" arguments. As stated above, there is no amendment at issue, and this argument should be disregarded. Second, the fact that the Defendants might be able to recover from NCR under alternative theories of NCR liability – direct and as a successor – cannot be grounds for not trying both. *See also Supra* Part III.B. Indeed, under the Court's prior rulings, the OU 1 Defendants will not be entitled to

---

[14] If the Court concludes, as it should, that ACPC was an arranger and that NCR is its successor, then the Court need not necessarily reach this issue (though doing so may save resources following any appeal). On the other hand, if the Court concludes ACPC was not an arranger, NCR can still be an arranger directly. It therefore would be prudent for the Court to address the direct claim now in order to efficiently bring finality to this case.

recover their response costs and damages unless NCR is an arranger, and they are fully entitled to pursue both direct and successor liability claims against NCR, as are the OU 2-4 Defendants.

This is a case about holding NCR accountable for what it did to the Lower Fox River and Green Bay, and NCR should not be allowed to shield its own knowledge and conduct from judicial scrutiny. As the Court recognized in denying NCR's Rule 54(b) motion, the Seventh Circuit should have the full factual record on any review of this case, Dkt. #1191, and NCR's direct liability is part of that record.

## IV. CONCLUSION

Defendants respectfully request that the Court deny NCR's Motion and allow Defendants to set forth the facts that prove their Section 107(a)(3) direct liability counterclaims against NCR.

Dated: February 9, 2012

Respectfully submitted,
   /s/ Karl Lytz

Karl S. Lytz
CA Bar No. 110895
Patrick J. Ferguson
CA Bar No. 252778
Latham & Watkins LLP
505 Montgomery St., Ste. 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Fax: (415) 395-8095
Karl.Lytz@lw.com
Patrick.Ferguson@lw.com

Mary Rose Alexander
IL Bar No. 6205313
CA Bar No. 143899
Margrethe K. Kearney
IL Bar No. 6286559
Latham & Watkins LLP
233 S. Wacker Dr., Ste. 5800
Chicago, IL 60606
Telephone: (312) 872-7700
Facsimile: (312) 993-9767
Mary.Rose.Alexander@lw.com
Margrethe.Kearney@lw.com