CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
Case No. 08-CV-16 WCG

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS INC. and NCR CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>GEORGE A. WHITING PAPER COMPANY, et al.,<br><br>Defendants. | No. 08-CV-16 WCG |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO WTM I COMPANY'S TRIAL BRIEF ON THE ISSUE OF ITS $66.6 MILLION IN RECOVERIES RECEIVED FROM PM USA**

## INTRODUCTION

In this case, WTM I Company ("WTM") seeks a profit of over $▮ for polluting the Lower Fox River. It is undisputed that WTM has already recovered $66.6 million from PM USA, a non-insurance indemnitor that has released its subrogation rights. WTM also has recovered $▮ from its insurers, and, after the Court compelled production of WTM's "conditional" insurance settlements, it was revealed that WTM also can elect at any time to recover an additional $▮ from its insurers. These recoveries far exceed the $53.7 million that WTM is seeking in contribution.

CERCLA does not permit such a pollution windfall. A party seeking contribution is not entitled to recover sums for which it already has been or will be compensated. *Friedland v. TIC-The Industrial Co.*, 566 F.3d 1203 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1080 (U.S. Jan. 11, 2010); Dkt. 1080 at 25. This rule is grounded on the fact that a contribution claim, unlike a tort claim in a personal injury action, is "between two or more culpable tortfeasors." *Friedland*, 566 F.3d at 1207. The collateral source rule, therefore, does not apply in a CERCLA

contribution action. *Id.* at 1207-08; Dkt. 1080 at 24-25. It cannot be disputed that WTM has been reimbursed by PM USA for its Fox River costs, and there is no reason or basis in law to apply a different analysis merely because the source of some of WTM's recoveries is a non-insurer indemnitor.

Moreover, as the party seeking contribution, WTM must prove it has incurred unreimbursed costs for which it is entitled to contribution. Under *Friedland*, if WTM wanted to allocate its recoveries (either from its insurers or from PM USA) to costs other than its response costs, such an allocation had to be express in the relevant documents. *Id.* at 1210-1211. WTM chose not to do so. Only if such recoveries had been specifically allocated to something other than response costs can WTM claim that they should not be part of the offset to which Plaintiffs are entitled.

This analysis with respect to WTM applies equally to the other Defendants. This Court need not delve into the minutia of Defendants' claimed costs at trial by reading thousands of documents and hearing live testimony from more than five witnesses, because all Defendants' Fox River recoveries that were not specifically allocated to something other than response costs, regardless of the source, must be applied to the amounts sought in contribution from Plaintiffs.

WTM cannot hide its attempted triple recovery behind the pending bankruptcy proceeding. This Court has jurisdiction to decide WTM's contribution claim—the bankruptcy court (at WTM's request) has expressly so ruled. Further, the issue is not one controlled by bankruptcy law in any event. The issue before this Court—whether WTM can recover in contribution amounts it has already recovered in full from two other sources—is one of basic fairness, and in the CERCLA context this Court is the proper forum for that determination. WTM's claim that the doctrine of "triangular setoffs" has any applicability here is baseless.

WTM's brief is a transparent attempt to convince this Court to either "punt" the issues to the Bankruptcy Court or to allow WTM a triple recovery. Neither option is appropriate.

## ARGUMENT

### I. AS THE PARTY SEEKING CONTRIBUTION, WTM MUST DEMONSTRATE THAT IT IS ACTUALLY "OUT OF POCKET" BEFORE IT CAN RECOVER ANY SUMS FROM PLAINTIFFS IN CONTRIBUTION.[1]

#### A. The Collateral Source Rule Does Not Apply.

In the Court's March 1, 2011 Decision, the Court stated: "As Plaintiffs note, contribution is an exercise in allotting responsibility for actual expenses sustained by PRPs, not expenses that have already been covered." Dkt. 1080 at 24. Therefore, relying on *Friedland*, the Court denied Defendants' summary judgment motion "to the extent any of the funds it seeks have been covered by insurance." Dkt. 1080 at 25.

In *Friedland*, the former director and president of a gold mining company initiated a CERCLA contribution action against two other parties. The Tenth Circuit held that the collateral source rule was inapplicable to a CERCLA contribution action. *Id.* at 1206 ("even assuming that CERCLA generally contemplates application of the collateral source rule, it is clearly inapplicable in the specific context of a § 113(f) contribution action by a PRP...."). The court reasoned:

> We have explained that a claim for contribution is a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make...." Thus, **a CERCLA contribution action** is not a personal injury action by an innocent plaintiff. Instead, it **is a claim between two or more culpable tortfeasors, and the policy underlying the collateral source rule – to provide the innocent party with the benefit of any windfall – is simply not advanced in such cases.**

---

[1] WTM is not entitled to any judgment against API unless and until WTM establishes that API is, in fact, liable under CERCLA. That issue will not be decided in the upcoming trial.

*Id.* at 1206-07 (emphasis added; internal citations omitted). The *Friedland* court noted it was "unaware of any court that has applied the collateral source rule to a claim for contribution, even outside the CERCLA context." *Id.* at 1207, n.3.

Likewise, in *Basic Management, Inc. v. United States*, 569 F. Supp. 2d 1106 (D. Nev. 2008), a district court in a CERCLA contribution action refused to allow a party to recover any amounts for which it could not demonstrate it was actually out of pocket:

> Plaintiffs have not been damaged and are not "entitled" to money as a damaged party; but rather, **Plaintiffs can only receive reimbursement for the costs they expended beyond their share of actual responsibility for the environmental damage. There is an actual dollar amount associated with those costs, and in this case, almost all of those costs have been paid directly by Plaintiffs' insurers, and without further right of subrogation in the insurers. In other words, no party or potential party here has incurred a cost as a PRP for which they could seek "contribution" from another PRP. Allowing Plaintiffs to recover those costs "again" from Defendants would in essence allow Plaintiffs to profit from their own and prior contamination of the site simply because they are in the subsequent chain of title.**

*Id.* at 1123-24 (emphasis added). The *Basic Management* court, therefore, held that the plaintiffs could not recover in contribution any remediation costs that had been paid by their insurance indemnitors, where these indemnitors lacked a further right of subrogation. *Id.* at 1125; *see also United Alloys, Inc. v. Baker*, 797 F. Supp. 2d 974, 1003 (C.D. Cal. 2011) ("The Court has found no case law in which the collateral source rule was extended to CERCLA actions."); *N.Y. State Elec. & Gas Corp. v. First Energy Corp.*, No. 03-CV-0438, slip op at 271-72, 808 F. Supp. 2d 417, 2011 WL 3471079 (N.D.N.Y. July 11, 2011).[2]

This Court may easily determine the amount of WTM's unreimbursed costs at trial. *Friedland* holds that where, as here, the monies recovered are not specifically allocated in the

---

[2] Likewise here, PM USA paid the $66.6 million without further right of subrogation. The 2008 Consent Decree between PM USA, Chesapeake and WTM, states in pertinent part: "PM USA waives and releases all claims to recover past indemnification payments made to Chesapeake and WTM I for the Fox River Matter." Dkt. 1305, Ex. H.

relevant documents, the *entire* amount should be credited against the amount WTM seeks in contribution. There, the plaintiff argued that its settlement proceeds should be allocated exclusively toward his $28 million in defense costs. The Tenth Circuit rejected the argument, holding that defendants were entitled to a full settlement credit since the plaintiff's settlement documents did not specifically allocate the settlement:

> [Plaintiff] contended in his interrogatory responses that a substantial portion of the amounts recovered in the [prior] settlements were attributable to his $28 million in defense costs and not to the ... settlement amount [with the Government]. The [prior] settlement agreements, however, do not expressly or impliedly allocate the settlement money toward amounts [plaintiff] paid in settling the underlying litigation on the one hand and for legal defense costs on the other. In *Hess Oil*, we held that the plaintiff's failure to allocate costs in this manner was fatal to its contention that the defendant was not entitled to a credit in the settlement amount.

*Id.* at 1210.

WTM's attempt at the final pre-trial conference to distinguish *Friedland* based on plaintiff's discovery admissions in that case is unavailing. *See also* Dkt. 1328 at 4. The Tenth Circuit's decision stands independently on the plaintiff's failure in that case to allocate the settlement money in the agreements. The district court ruled that "defendants are entitled to full credit for the amount of the settlements" based on the absence of an express allocation without even a passing reference to the discovery admissions that WTM now argues render *Friedland* an "aberration". *Friedland v. TIC-The Industrial Co.*, No. 04-cv-01263-REB-KLM, 2008 WL 185693, at *1-3 (D. Colo. Jan. 18, 2008). The Tenth Circuit affirmed. *Friedland*, 566 F.3d at 1211. WTM's assertion that *Friedland* was "driven by the unique circumstances of that case" (Dkt. 1328 at 4) ignores the *Friedland* court's reliance on an earlier decision, *Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197 (10th Cir. 1988), which likewise held that a party seeking contribution bears the burden of proving, through its settlement documents, whether the monies paid were for covered costs.

The Tenth Circuit in *Hess Oil* similarly ruled that it must "look to the settlement agreements to determine the intent of the settling parties" and based its decision on the absence of an express allocation, not upon any admissions by the plaintiff. The court held that, if the plaintiff could not meet its burden based on the settlement agreements, then the defendant was entitled to a full credit of all settlement amounts:

> **[W]e must look to the settlement agreements to determine the intent of the settling parties as to what damages and claims are covered.** Because we find that [the plaintiff's] agreements with the settling defendants do not expressly state how the various causes are being compromised, it would be unjust for [the defendants] to suffer the consequences of not receiving credit.
>
> * * *
>
> **If [the plaintiff] wanted to have any particular application of its settlement with the settling defendants toward [the defendant's] liability, it should have specifically stipulated in the settlement documents what allocations of damages were applicable to each cause of action.** Because of the generality of the settlement between [the plaintiff] and the settling defendants, and the fact that the verdict against [the defendant] included the same type of damages included in the settlements, the trial court correctly held that [the defendant] is entitled to a full credit ... on its liability to [the plaintiff].

*Hess Oil* at 1208-09 (emphasis added; footnote omitted).[3]

Here, the settlement agreements do not allocate WTM's recoveries. Therefore, under *Friedland* and related cases, there is no need to spend trial time sifting through mountains of documents and trial testimony from numerous witnesses about the nature of the claimed costs—because the entire amount paid can be credited due to WTM's decision not to expressly allocate

---

[3] The *Hess Oil* and *Friedland* decisions are consistent with a number of state court cases placing the burden of allocating settlement proceeds on the party entering into such settlements. *See, e.g. Farrall v. A. C. & S. Co.*, 586 A.2d 662, 667 (Del. Super. Ct. 1990) ("Where, as here, a party has commingled the recovery instead of separately listing the allocation, I conclude that the Court should not speculate on what the parties might have done, but that the amount to be applied against the award is the [full] amount which plaintiff received from the settling party."); *Weeks v. City of Colorado Springs*, 928 P.2d 1346, 1348-49 (Colo. App. 1996) (interpreting a Colorado statute to require the deduction of the entire amount of a prior settlement from the sum for which a defendant tortfeasor was liable, since the settlement document did not specifically state the amount attributable to any separate claim); *Nauman v. Eason*, 572 So.2d 982 (Fla. Dist. Ct. App. 1990) (same, interpreting a Florida statute); *Patton v. Carbondale Clinic, S.C.*, 641 N.E.2d 427 (Ill. 1994) (same, interpreting an Illinois statute).

the costs in the relevant settlement documents.[4] Accordingly, API and NCR are entitled to a full credit for all amounts that WTM has received from other sources.

### B. The Collateral Source Rule Does Not Apply To WTM's $66.6 Million Recovery From PM USA.

Ignoring the basic rationale from the above cases, WTM argues that where costs have been reimbursed by a source *other than* insurance, the collateral source rule should "carry the day" because "[a] wrongdoer such as NCR should not have its legal liabilities defrayed by a benefit from a third party (PM USA) which was paid for by an innocent party (WTM)." Dkt. 1329 at 7. Of course, WTM is not an "innocent party." WTM *undisputedly* discharged large amounts of PCBs into the Fox River and is therefore *undisputedly* a liable party under CERCLA. WTM is named in the same Unilateral Administrative Order that was issued to API and NCR. It has been sued by the Government in the enforcement action. As this Court and the above cases have made clear, the collateral source rule does not "carry the day" in contribution actions between jointly and severally liable parties. *See* Dkt. 1080 at 24-25.

Second, WTM's claim that the bar against double recovery in CERCLA contribution actions applies only to insurance recoveries is incorrect and unsupported. By contrast, at least one federal court has precluded double recovery in the CERCLA context where a claimant's costs had been paid by non-insurers. In *Vine Street, LLC v. Keeling*, 460 F. Supp. 2d 728 (E.D. Tex. 2006), a Texas district court considered whether a CERCLA claimant, Vine Street, could recover cleanup and remediation costs in contribution when nearly all of those costs had already been reimbursed by the Roosth and Genecov Groups, which were composed of individuals and

---

[4] Other Defendants have likewise failed to allocate in their settlement agreements, as Plaintiffs will demonstrate at trial.

trusts related to two families, one of which had members that also owned Vine Street. Vine Street claimed that the collateral source rule applied.

The court rejected Vine Street's argument, noting that "no court has ever applied the collateral source rule – a tort doctrine – in the context of CERCLA response-cost reimbursement." *Id.* at 765. Further, the court noted that "CERCLA provisions also reflect Congress's apparent desire to prevent claimants from recovering the same response costs twice. Thus, a court may consider 'preventing someone from recovering for the same harm twice' as an equitable factor in resolving CERCLA contribution claims." *Id.* (quoted source omitted). The fact that the monies paid to Vine Street came from Roosth and Genecov Groups, who were not insurers, did not prevent the court from reducing Vine Street's recovery by amounts already reimbursed.

WTM has given no justification to apply a different analysis to the $66.6 million it has recovered from PM USA, which waived all rights of subrogation. Equity does not permit a CERCLA claimant to recover in contribution where, as here, the claimant is not out of pocket and the source of payment has not reserved subrogation rights. As the *Friedland* court aptly stated, "permitting a CERCLA contribution-action plaintiff to recoup more than the response costs he paid out of pocket flies in the face of CERCLA's mandate to apportion those costs equitably among liable parties." 566 F.3d at 1207. Yet, that is precisely what WTM is attempting to do here.

## II. THE COURT SHOULD REJECT WTM'S EFFORTS TO HIDE ITS ATTEMPTED TRIPLE RECOVERY BEHIND THE PENDING BANKRUPTCY.

In an effort to divert the Court from the fact that it is not out of pocket, WTM throws up two diversions. First, it claims there are "bankruptcy jurisdictional issues." Dkt. 1329 at 4-5.

Second, it claims "NCR's setoff argument constitutes an improper attempt to effect a triangular setoff, which is not allowed under the Bankruptcy Code." *Id.* at 2. Both claims are meritless.

### A. This Court – Not The Bankruptcy Court – Can And Should Decide The Amount That WTM May Recover In Contribution, If Any.

This Court has jurisdiction over WTM's contribution claims, because WTM specifically asked – and the bankruptcy court specifically agreed – to give this Court such jurisdiction. On February 20, 2009, WTM and its affiliated debtors in possession filed a "Motion of the Debtors for an Order Pursuant to Section 362 of the Bankruptcy Code and Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure to Modify the Automatic Stay" ("Lift Stay Motion"). *In re Canal Corporation et al.* (formerly captioned In re: Chesapeake Corporation et al) U.S. Bankr. Ct., E.D. VA, Case No. 08-36642, Docket No. 265 ("*Canal*"). In the motion, WTM argued:

> [N]ot modifying the automatic stay to allow the Whiting Litigation to proceed as to WTM could result in the claims asserted against WTM in the Whiting Litigation, as well as cross-claims not yet asserted (due to the District Court's Order staying such claims until after the Phase I Trial) being litigated in this Court. Furthermore, **lifting the stay would enable a determination of WTM's appropriate share of Lower Fox River response costs and damages in an action which has been pending since early 2008, where the District Court is already deeply involved in case management and has become familiar with the issues relating to those claims. Absent a lifting of the stay, this Court, rather than the District Court, may have to preside over what virtually would amount to a plenary CERCLA case.** This is because determining WTM's share of Fox River response costs and damages is relative to the share of each of the other parties in the Whiting Litigation, and necessarily requires consideration of the other Whiting Litigation parties' contributions.

*Canal*, Dkt. 265 at ¶ 27 (emphasis added). Accordingly, WTM argued that "judicial economy will be promoted by lifting the stay and allowing the Whiting Litigation to continue." *Id.* at ¶ 29.

API and NCR supported WTM's Lift Stay Motion, noting that their support was "founded on the representations made by the Debtors in the Lift Stay Motion...". *Canal* Dkt. 332 at ¶ 1. API and NCR stated their "concurrence with the Debtors' statements that the District Court is the most cost-effective, efficient, and generally most appropriate forum for

resolution of the Whiting Litigation claims." *Id.* at ¶ 2. Finally, in reliance on WTM's representations about judicial economy, API and NCR advised the bankruptcy court that they were "prepared to expend the resources in that forum as necessary to liquidate the claims against and by WTM, as contemplated by the relief sought in the Lift Stay Motion." *Id.*

On March 19, 2009, the Bankruptcy Court granted WTM's Lift Stay Motion in an order granting jurisdiction to this Court:

> The automatic stay is lifted to allow the Whiting Litigation to proceed with respect to liquidating the claims against and by WTM; provided, however, that no distributions shall be made on any such claims against WTM from any source without further order of this Court.

*Canal* Dkt. 386 at 2. Since there is no request for any distribution from the estate of WTM, the Bankruptcy Court's order clearly permits this Court to adjudicate WTM's contribution claim.

Now, in complete disregard of judicial economy and its prior representations to the Bankruptcy Court, WTM is demanding that the basic issue of the amount of money, if any, that it can recover in contribution must be heard by the Bankruptcy Court. WTM's selective attempt to keep this part of the case in limbo between two jurisdictions should be rejected. This Court has jurisdiction.

### B. The Bankruptcy Doctrine Of "Triangular Setoff" Has No Application Here.

WTM claims that "NCR is plainly attempting to implement a prohibited triangular setoff." Dkt. 1329 at 6. WTM's argument misconstrues bankruptcy law.

Section 553 of the bankruptcy code, *i.e.*, the section relied upon by WTM for its "triangular setoff" argument, states as follows:

> Except as otherwise provided ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case [subject to certain restrictions].

11 U.S.C. § 553.

This provision of the bankruptcy code stands only for the proposition that in bankruptcy, unlike at common law, parties cannot contractually circumvent the well-established principle that setoff requires mutuality. For NCR to attempt a so-called triangular setoff, it would have to assert that NCR was offsetting a debt it owed to WTM by a debt that PM USA owes to NCR, when at the same time WTM owes a debt to PM USA. WTM makes no such claim and no such circumstances in fact exist.

A common example of a prohibited triangular setoff can be found in the case of *In re SemCrude, L.P.*, 399 B.R. 388 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010). There, four related corporate entities (SemCrude, L.P., SemGroup, L.P., SemFuel, L.P., and SemStream, L.P.) each filed for Chapter 11 bankruptcy. *Id.* at 390. Prior to the bankruptcy, Chevron USA Inc. did business with three of the debtors (SemCrude, L.P., SemFuel, L.P., and SemStream, L.P.). *Id.* at 391. At the time of the filing, pre-bankruptcy transactions resulted in "Chevron owing a balance of $1,405,878.40 to SemCrude. Chevron [was] owed $10,228,439.34 by SemFuel, however, and [was] owed an additional $3,302,806.03 by SemStream." *Id.* at 392. In the bankruptcy proceedings, Chevron USA Inc. attempted to setoff these debts against each other in an effort to net the debts and credits across all three companies to avoid paying SemCrude, L.P. *Id.* In essence, Chevron USA Inc. asked to apply credits of two companies against the debts of a third, separate company, and leave it to the three companies to then net out the differences among themselves. This is a prime example of an improper triangular setoff, and the court held accordingly. *Id.* at 392-93.

That scenario bears no resemblance to the scenario before this Court. The issue before this Court is not whether NCR and API can offset a debt to WTM, but whether WTM can recover in contribution at all. API and NCR are not claiming that a debt owed to them by any

party (WTM, PM USA or otherwise) should be used to reduce the amount that WTM may recover in contribution. The Court has already denied API and NCR any contribution. API and NCR are simply asserting that because WTM has already recovered from its insurers and PM USA, it cannot seek these same sums from API and NCR in contribution. Bankruptcy law and the issue of triangular setoffs are irrelevant.

### C. The PM USA Indemnity Issue Should Be Addressed At Trial.

Finally, this Court should reject WTM's invitation to defer this issue to a later phase of the case, because, as WTM readily concedes, the facts necessary to decide this issue are undisputed:

> The parties have entered into a Stipulation regarding certain facts related to the indemnity issues to avoid an additional discovery dispute about the matter. With the stipulation, at least the *facts* of the dispute are not contested.

Dkt. 1329 at 4, n. 1 (italics original). There is no reason not to decide the issue now.

API and NCR have been waiting for years for a final judgment and with it an opportunity for appellate review of prior orders of this Court that have compelled them alone to bear the burden of remediating the Lower Fox River while PRPs like WTM sit idle and non-compliant with the UAO. Moreover, the fact that WTM's recovery from PM USA is an issue at trial is not a "surprise" to WTM. The issue was addressed extensively in written discovery and in depositions. Further, the facts concerning the PM USA indemnity have already been stipulated to by the parties. Therefore, there will be no prejudice to WTM by addressing the issue at trial.

## CONCLUSION

For the foregoing reasons, Plaintiffs Appleton Papers Inc. and NCR Corporation respectfully requests that the Court reject WTM's efforts to prevent this Court from addressing all issues related to WTM's contribution claim, including whether WTM may recover in

contribution amounts that it has already recovered from other sources, including the $66.6 million it received from PM USA.

Dated this 21st day of February, 2012.

Respectfully submitted,

/s/ Darin P. McAtee
CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott
Darin P. McAtee
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
dmcatee@cravath.com

SIDLEY AUSTIN LLP
Evan B. Westerfield
One South Dearborn Street Chicago, Illinois 60603 Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue
Suite 2200
Seattle, Washington 98101 Phone: (206) 292-2600
Fax: (206) 292-2601

**Attorneys for Plaintiff NCR Corporation**

/s/ Ronald R. Ragatz
DEWITT ROSS & STEVENS S.C.
Ronald R. Ragatz
Dennis P. Birke
Megan A. Senatori
Two East Mifflin Street
Madison, WI 53703
Phone: (608) 255-8891
Fax: (608) 252-9243

HERMES LAW, LTD.
Michael L. Hermes
Heidi D. Melzer
Ericka L. Krumrie
333 Main Street, Suite 601
Green Bay, WI 54301
Phone: (920) 436-9870
Fax: (920) 436-9871

Gregory A. Krauss
Gregory A. Krauss PLLC
1629 K St. NW
Suite 300
Washington, DC 20006
(202) 355-6430

**Attorneys for Plaintiff Appleton Papers Inc.**