IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| APPLETON PAPERS INC. and<br>NCR CORPORATION, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | ) | No. 08-CV-16-WCG |
| GEORGE A. WHITING PAPER COMPANY, et al., | )<br>)<br>) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| NCR CORPORATION, | )<br>) | |
| Plaintiff, | )<br>) | |
| v. | ) | No. 08-CV-895-WCG |
| KIMBERLY-CLARK CORPORATION, et al., | )<br>)<br>) | |
| Defendants. | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON PARTIAL FINDINGS**
_____

I. **PRELIMINARY STATEMENT**

Defendants have the burden to prove their arranger liability case by a preponderance of the evidence and they have failed to do so. They have not shown that Appleton Coated Paper Company ("ACPC") or NCR Corporation ("NCR") possessed an "intent to dispose of broke (even valuable broke) combined with a particular knowledge that nontrivial amounts of the broke waste product would inevitably end up in the river." Dkt. No. 1080 at 9. Defendants' own witnesses conceded essential points and gave testimony that fatally undermined their case. Indeed, Defendants' own expert witness on the paper industry dispositively stated that the "primary purpose" in selling broke was not to dispose of it, but to make new paper. Nor have Defendants met their burden on actual or particular knowledge, or on their formulator theory. Accordingly, this Court should enter judgment for Plaintiffs on the arranger liability issue, pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.

II. **PROCEDURAL STANDARD**

Rule 52(c) provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

The Court may grant a Rule 52(c) motion "where the plaintiff has failed to make out a prima facie case or where the plaintiff has made out a prima facie case but the court determines that a preponderance of the evidence goes against the plaintiff's claim". *Stokes v. Perry*, No. 94 Civ. 0573, 1997 WL 782131, at *9 (S.D.N.Y. Dec. 19, 1997).[1]

---

[1] "Plaintiff" applies to Defendants (the counterclaim plaintiffs) in this matter.

"Rule 52(c), added to the civil rules in 1991, streamlines bench trials by authorizing the judge, having heard all the evidence the plaintiff has to offer, to make findings of fact adverse to the plaintiff, including determinations of credibility, without waiting for the defense to put on its case, since the evidence presented by the defendant would be unlikely to help the plaintiff". *Wsol v. Fiduciary Mgmt. Assocs., Inc.*, 266 F.3d 654, 656 (7th Cir. 2001) (affirming district court's grant of a Rule 52(c) motion). Under this rule, "the court does not consider the evidence in the light most favorable to the non-moving party. Rather, the court's task is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies". *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 433 (S.D.N.Y. 2004) (citation and quotation marks omitted).

### III.  ARGUMENT

#### A.  Legal Standard for Arranger Liability

Defendants have failed to prove that (1) ACPC or NCR intended to dispose of a hazardous substance, (2) ACPC or NCR had the level of knowledge required by the Court and (3) NCR had sufficient control over the hazardous substances owned by ACPC to satisfy Defendants' formulator theory.

In *Burlington N. & Santa Fe Ry. Co. v. United States* ("*BNSF*"), the Supreme Court held that an entity may qualify as an arranger only when it "takes intentional steps to dispose of a hazardous substance". 129 S. Ct. 1870, 1879 (2009). "[M]ere knowledge that [disposal] occur[s] is insufficient". *Id.* at 1880. A seller's indifference to the disposal method ultimately employed by the buyer is not sufficient to show intent under *BNSF*; rather, the plaintiff must prove that "the company entered into the relevant transaction with *the specific purpose* of disposing of a hazardous substance". *Team Enters., LLC v. W. Inv. Real Estate Trust*, 647 F.3d 901, 909 (9th Cir. 2011)

(emphasis original).  And when there is more than one possible purpose for a transaction, courts—including this Circuit—look to the *primary purpose* of the transaction to determine whether a seller possessed an intent to dispose.  *See G.J. Leasing Co. v. Union Electric Co.*, 54 F.3d 379, 385 (7th Cir. 1995); *Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R. Co.*, 142 F.3d 769, 775-76 (4th Cir. 1998).

In addition to satisfying the primary purpose standard, Defendants were also required to prove that ACPC or NCR possessed "a particular knowledge that nontrivial amounts of the broke waste product would inevitably end up in the river."  Dkt. No. 1080 at 9.  This is a substantial burden.  To have "particular" knowledge of a fact, one must have knowledge that is distinct or specific.  Furthermore, the knowledge (not the later discovered fact) must be about "non-trivial amounts", or amounts that equal or exceed a volume that is considered significant or important.  And knowledge that an outcome is "inevitable" cannot be satisfied with a showing that it is possible, probable or even highly likely to happen.  It is not sufficient for Defendants to surmise, as all of their witnesses have, that ACPC or NCR "could have" or "should have" this knowledge.  And it is surely insufficient for Defendants to rely on surmise in the face of multiple, sworn denials of such knowledge by the very individuals on whose shoulders Defendants seek to place the liability.

Finally, Defendants have failed to demonstrate that NCR is liable as an arranger for at least two independent reasons.  First, they offered no proof that NCR either retained ownership or possession over the hazardous substances or had control over ACPC's alleged disposal of emulsion-containing broke, which CERCLA requires.  *See*

3

42 U.S.C. § 9607(a)(3). Second, they failed to show that NCR intended to dispose of ACPC's broke. *See BNSF*, 129 S. Ct. at 1879.

### B. Defendants Have Failed to Meet the Arranger Liability Standard by a Preponderance of the Evidence

#### 1. Defendants Have Not Proven the Requisite Intent

Defendants have failed to carry their burden of proving that ACPC intended to dispose of a hazardous substance, without which there can be no arranger liability. The evidence presented shows that ACPC's primary purpose in selling carbonless copy paper ("CCP") broke was to capture the value that broke possessed to brokers, paper makers and recyclers. Even Defendants' paper industry expert, Charles Klass, agreed. He stated that "the primary purpose when the coated broke is sold" in his experience was "[f]or use in making new paper". Trial Tr. (Klass) at 403:4-7; *see also id.* at 402:16-21, 403:8-13, 403:14-18. And Defendants' witness John Heitmann admitted that removal of the coating is "incidental to the sale of [coated] paper to make new paper". *Id.* (Heitmann) at 594:16-20; *see Pneumo Abex*, 142 F.3d at 775 (holding that seller of used wheel bearings was not an arranger where the removal of the bearings' impurities was "incidental" to the primary purpose of the transaction—remolding them into new bearings).

The evidence shows that CCP broke was a valuable and useful raw material in paper making and not a waste that ACPC would need or want to discard. There has been a market for wastepaper for mills for over a century, (Trial Tr. (Klass) at 399:12-17), in which the prices of various grades of reused paper were determined by supply and demand (*id.* (Klass) at 401:13-16). To participate in this market, ACPC treated CCP broke like a valuable paper-making product at every step of its lifecycle.

4

According to Defendants' markets and pricing expert, Robert Dolan, ACPC sorted, weighed, stored, protected, developed specific handling procedures for, inventoried and sold broke "in order to increase the money that came into the firm from their disposition of their broke". *Id.* (Dolan) at 319:14-21. Defendants' attempt to counter this conclusion by eliciting testimony about the use of the word "waste paper" is unavailing. Not only is "waste paper" just an industry synonym for "secondary fiber" and "paper stock" (*id.* (Klass) at 397:18-398:2), but Dr. Dolan's testimony confirms that this label doesn't matter—it is the actual economic foundation that is important to the analysis (*id.* at (Dolan) 329:11-16).

Defendants have broadly failed to prove that ACPC's primary purpose in selling broke, or the mills' primary purpose in buying it, was to dispose of a hazardous substance. Rather, the evidence establishes that broke was a valuable product sold in a dynamic market, for the primary purpose of making new paper.

### 2. Defendants Have Not Proven the Requisite Knowledge

Defendants have failed to prove that ACPC had a "particular knowledge that nontrivial amounts of the broke waste product would inevitably end up in the river."[2] Dkt. No. 1080 at 9. They have presented absolutely no evidence that any employee of ACPC possessed this knowledge, and their witnesses made the conscious decision to ignore or mischaracterize the direct testimony of ACPC employees about what they actually knew or did not know. Defendants' experts either did not examine, or chose to disregard, the testimony from Defendants' own former employees—people who, unlike

---

[2] Even if Defendants could prove that ACPC had the requisite knowledge, under *BNSF*, arranger liability cannot attach without a showing of intent. *BNSF*, 129 S. Ct. at 1879-80.

5

Case 2:08-cv-00016-WCG   Filed 02/24/12   Page 6 of 9   Document 1342

ACPC's personnel, had actually engaged in making and recycling paper—that not even they understood during the relevant period that their own wastewater treatment systems were discharging broke waste product into the river. The contrived assumptions by Defendants' witnesses of what other people may have known cannot satisfy Defendants' burden. As Mr. Klass explained, he is "not a mind reader" and does not know "more about what any specific person knew on a particular topic than that person does". Trial Tr. (Klass) at 427:11-14.[3]

### 3. Defendants Have Not Proven Their Formulator Theory

Defendants also have not proven that NCR had possession or ownership of a hazardous substance, or control over ACPC's alleged disposal of emulsion-containing broke. NCR never owned or possessed CCP broke generated by ACPC. (Dkt. No. 1300, Section C, ¶¶ 39-40.) Nor does Defendants' evidence establish NCR control. Indeed, Dr. Dolan admitted that broke was "basically Appleton's ball game" (Trial Tr. (Dolan) at 336:5-8) and Dr. Kittrell admitted that he had no evidence whatsoever about NCR's control over ACPC broke disposition (*id.* (Kittrell) at 559:13-561:14).[4]

---

[3] In cross-examination, Mr. Klass repeatedly affirmed that he did not find the testimony of ACPC employees as to what they actually knew to be important to his expert opinion. The court should, therefore, disregard Mr. Klass's "opinions" about ACPC's knowledge as speculation. *See, e.g.*, *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (holding that district court erred by allowing an expert to testify about the supposed motives of a corporation where the expert "lacked any scientific basis for an opinion about the motives of GM's designers" and noting that "the whole point of *Daubert* is that experts can't 'speculate'").

[4] Even if Defendants had a sound legal basis for their toll formulator theory based on *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1382 (8th Cir. 1989), which they do not (*see* Dkt. No. 1330 at 36-38), Defendants do not present evidence that satisfies that theory. Furthermore, Defendants' expert, Dr. Kittrell, conceded that his definition of a toll manufacturing relationship is not supported by any court decision he could cite. *Id.* (Kittrell) at 556:14-24.

6

Independently, Defendants failed to present any evidence that NCR intended to dispose of CCP broke, without which arranger liability cannot attach. *See BNSF*, 129 S. Ct. at 1879-80. The evidence confirms that NCR had nothing to do with selling ACPC's broke—so NCR could not have had any intent with respect to ACPC's broke sales. Only two of Defendants' witnesses even addressed NCR as part of their testimony. And no evidence showed that NCR entered into transactions with the specific purpose to dispose of CCP broke. At most, Defendants put on some evidence that NCR knew that the manufacture of CCP would generate broke. *See id*.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court enter judgment for Plaintiffs on Defendants' arranger liability claim.

Dated: February 24, 2012                    Respectfully submitted,


/s/ Darin P. McAtee                         /s/ Ronald R. Ragatz
CRAVATH, SWAINE & MOORE LLP                 DEWITT ROSS & STEVENS S.C.
Evan R. Chesler                             Ronald R. Ragatz
David R. Marriott                           Dennis P. Birke
Darin P. McAtee                             Megan A. Senatori
Worldwide Plaza, 825 Eighth Avenue          Two East Mifflin Street
New York, New York 10019                    Madison, WI 53703
Phone: (212) 474-1000                       Phone: (608) 255-8891
Fax: (212) 474-3700                         Fax: (608) 252-9243
dmcatee@cravath.com

                                            HERMES LAW, LTD.
SIDLEY AUSTIN LLP                           Michael L. Hermes
Evan B. Westerfield                         Heidi D. Melzer
One South Dearborn Street                   Brandon J. Evans
Chicago, Illinois 60603                     Ericka L. Krumrie
Phone: (312) 853-7000                       333 Main Street, Suite 601
Fax: (312) 853-7036                         Green Bay, WI 54301
                                            Phone: (920) 436-9870
MARTEN LAW PLLC                             Fax: (920) 436-9871
Linda R. Larson
Bradley M. Marten
1191 Second Avenue                          **Attorneys for Plaintiff Appleton Papers**
Suite 2200                                  **Inc.**
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601

**Attorneys for Plaintiff NCR Corporation**