IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. and )
NCR CORPORATION, )
                                               )
                Plaintiffs, )
                                               )
                       v. ) No. 08-CV-0016-WCG
                                               )
GEORGE A. WHITING PAPER COMPANY et al. )
                                               )
                Defendants. )
_____

NCR CORPORATION, )
                                               )
                Plaintiff, )
                                               )
                      v. ) No. 08-CV-0895-WCG
                                               )
KIMBERLY-CLARK CORPORATION et al. )
                                               )
                Defendants. )
_____

**BRIEF OF PLAINTIFFS NCR CORPORATION AND APPLETON PAPERS INC.
REGARDING INTEREST AND EARNINGS ON OU1 ESCROW ACCOUNT**
_____

**INTRODUCTION**

Defendants P.H. Glatfelter Co. ("PHG") and WTM I Co. ("WTM") are together seeking over $91 million from Plaintiffs related to OU1. That claim, however, includes approximately $4 million[1] that was not actually spent by either PHG or WTM. Thus, even assuming PHG and WTM were entitled to recover any OU1-related costs, which they are not,[2] they certainly cannot recover *these* costs, which they themselves never incurred. *See, e.g.*, *Browning-Ferris Indus. v. Ter Maat*, 195 F.3d 953, 955 (7th Cir. 1999) (only a person who "incurs costs" can seek contribution under CERCLA).

This approximately $4 million (the "Escrow Interest") consists of interest that accrued on funds in an escrow account established for the OU1 work. By the express terms of the agreement establishing this escrow account, PHG and WTM relinquished control over and right to these funds. Thus, to the extent that the Escrow Interest was spent on OU1 work, and it is not clear it has been,[3] those expenditures were not made by PHG and WTM; never having owned the Escrow Interest, PHG and WTM also necessarily never could have spent it. To award PHG or WTM any of the Escrow Interest, then, would result in a recovery for which there were no corresponding losses, and thus a windfall profit that is contrary to the purposes of CERCLA.

Indeed, PHG and WTM are attempting to circumvent the well-established mechanism that Congress included in CERCLA to address this very type of situation: the pre-judgment interest provision. To the extent a party believes it is entitled to interest on costs that have been deemed recoverable, its exclusive remedy is through CERCLA. *See* 42 U.S.C.

---

[1] The exact amount of accrued interest is still in dispute. That issue is not before the Court.

[2] Defendants failed to meet their burden at trial of proving that Plaintiffs are liable as arrangers, as Plaintiffs will demonstrate in their post-trial brief; accordingly, Plaintiffs have no liability for costs related to OU1.

[3] *See infra* pp. 4-5.

§ 9607(a). A party clearly cannot claim that it theoretically could have invested its cleanup costs in a high-interest fund and thus seek to recover interest at that rate instead of the permitted interest rate in a contribution action. Nor can PHG and WTM rely on the interest rate in an account that they do not own or control—or seek to recover almost a decade of interest when CERCLA would allow at most only a few years (based on when the costs were specifically demanded in writing).

Defendants have already indicated that they intend to ask the Court to award statutory interest under CERCLA, thus acknowledging the proper mechanism for recovery of interest. *See* Declaration of Evan B. Westerfield, ¶ 3, at p. 27; ¶ 4, at p. 25. PHG's and WTM's claim for the Escrow Interest, *in addition to* their claim for statutory interest, represents an effort to obtain "interest on their interest," and such double-recovery is barred by the statute.

PHG and WTM are even seeking interest on funds they unquestionably never owned. Their calculation of the Escrow Interest includes not only interest that accrued on the funds they contributed, but also interest that accrued on the approximately $10 million contributed by the governmental agencies (which came from NCR and API originally). In other words, PHG and WTM go so far as to claim entitlement to earnings on funds that came from *other parties*. This attempt to profit through the guise of § 113 should not be permitted.

## STATEMENT OF FACTS

In 2003, PHG and WTM entered into a consent decree with the United States and the State of Wisconsin to perform certain cleanup work in OU1. *See* Westerfield Decl., ¶ 5 (Trial Ex. 5917, Consent Decree for Remedial Design and Remedial Action at Operable Unit 1 of the Lower Fox River and Green Bay Site) ("OU1 Consent Decree"). PHG and WTM eventually contributed, together, approximately $83 million toward this work. Dkt. # 1320, Final Pretrial Report, at ¶¶ 150, 163. The governmental agencies also contributed to this work $9,224,497,

2

which the agencies obtained from a separate 2001 consent decree with NCR and Appleton Papers Inc ("API"). Dkt. # 890, Declaration of Rachel Schneider, at ¶ 14; *see also* Westerfield Decl., ¶ 6 (GWCOSTS0022020-27).

All of these funds were deposited into a special account (the "Escrow Account") that was established pursuant to an escrow agreement. Westerfield Decl. at ¶ 7 (Trial Ex. 5311, Escrow Agreement for the Fox River OU1 Escrow Account) ("Escrow Agreement"). Once in this account, the funds ceased to be the property of PHG and WTM, as the Escrow Agreement states unequivocally:

> [PHG and WTM] absolutely and irrevocably assign, convey, and transfer to the Escrow Account and its successors and assigns, for the benefit of the [the United States and the State of Wisconsin], all funds deposited in the Escrow Account (as well as all interest and income earned on the funds deposited in the Escrow Account), subject only to certain provisions of the Escrow Agreement . . . and certain provisions of the Consent Decree . . ..

Escrow Agreement preamble, § 1.

WTM has admitted that it has had no ownership interest in the funds in the Escrow Account. Almost immediately after filing for bankruptcy protection, WTM filed a motion requesting authorization to continue to comply with the Escrow Agreement and the OU1 Consent Decree. Westerfield Decl. ¶ 8 (Motion for Entry of Interim and Final Orders Authorizing the Debtors to Continue to Authorize Payments Under, and to Comply with, Escrow Agreement and Consent Decree, *In re: Chesapeake Corp.*, No. 08-36642 (Bankr. E.D. Va. Jan. 7, 2009) ("WTM Bankruptcy Motion"). As part of that motion, WTM stated repeatedly that ***"[t]he funds in the Escrow Account do not constitute property of [WTM's] estates***." WTM Bankruptcy Motion, at ¶¶ 4, 17, 24-30 (emphasis added)).

According to WTM, this was because "[t]he transfer of funds to the Escrow Agreement was irrevocable and the Escrow Agreement does not allow WTM to compel the

3

Escrow Agent to transfer funds in the Escrow Account to WTM." *Id*. ¶ 4. WTM also asserted: "Further, the Escrow Agent, a third party, holds and controls the funds in the Escrow Account. Moreover, neither [WTM] nor [its] creditors have the ability to access funds in the Escrow Account." *Id.* ¶ 29. Put another way, WTM had none of the indicia of ownership, and therefore the funds in the Escrow Account were not "property" of WTM's estate. *Id*. ¶¶ 27-30 (citing numerous cases holding that funds in an escrow account, such as those here, are not owned by the grantor).

This Court previously came to the same conclusion. At an August 1, 2011, status conference, the Court heard argument concerning whether PHG and WTM could recover funds that they had contributed to the Escrow Account, but that had not yet been actually spent on any cleanup work. Dkt. # 1163, at pp. 19-22. The Court ruled that they could, based on the finding that once PHG and WTM contributed funds to the OU1 account, they "have spent that money, they have expended that money, and it's no longer in their control." *Id*. at p. 22; *see also id.* at p. 20 ("This money that has been paid pursuant to consent decrees with the government, that is—it's spent and the government has utilized that.").[4] In other words, in the Court's own assessment, PHG's and WTM's ownership and control of the funds in the Escrow Account ceased as soon as those funds were deposited.

The Escrow Account was managed so as to earn interest on the existing balance. Over time, a significant sum of money—over $4 million—accrued. However, there is currently an even larger sum—more than $10 million—remaining in the Escrow Account. *See supra* note 4. In

---

[4] Plaintiffs respectfully disagree with this ruling and note that a significant sum of money—perhaps more than $10 million—remains in the Escrow Account. *See* Westerfield Decl. ¶ 6, at GWCOSTS0022027, showing a balance of $10,033,751. These funds have never been (and may never be) spent on any Fox River cleanup work.

addition, it is possible that these remaining funds will never be spent on the OU1 work in the future. Dkt. #1163, at p. 21. Thus, it is not known whether any of the Escrow Interest has been or will ever be spent on OU1 work.

## ARGUMENT

### I. PHG AND WTM ARE NOT ENTITLED TO RECOVER THE ESCROW INTEREST BECAUSE THESE FUNDS WERE NEVER ACTUALLY SPENT BY PHG OR WTM.

It is a truism that a party cannot recover under CERCLA § 113 costs that it never in fact incurred, or that were actually incurred by another party.[5] Nevertheless, that is precisely what PHG and WTM are attempting to do here. PHG and WTM do not have, nor have they ever had, any right to, title in, or ownership of the Escrow Interest, and so did not in fact incur any costs to the extent these funds were spent on OU1 work. Consequently, PHG's and WTM's attempt to recover the Escrow Interest from Plaintiffs, and thereby reap a windfall profit, should be denied.

#### A. The Escrow Agreement States Unequivocally That Any Funds in the Escrow Account, Including Accrued Interest, Are Not the Property of PHG or WTM.

The express terms of the Escrow Agreement resolve this issue. Under the Escrow Agreement, PHG and WTM "absolutely and irrevocably assign[ed], convey[ed], and transfer[red] to the Escrow Account . . . , for the benefit of the Beneficiaries [i.e., the United States and Wisconsin], all funds deposited in the Escrow Account (*as well as all interest and income earned on the funds deposited in the Escrow Account*) . . . ." Escrow Agreement, § 1 (emphasis added). This contractual language is clear on its face and not subject to interpretation: PHG and WTM agreed to convey certain assets to the Escrow Account— and at the same time to irrevocably

---

[5] *See, e.g.*, *Browning-Ferris*, 195 F.3d at 955; *City of Wichita v. Trs. of APCO Oil Corp.*, 306 F. Supp. 2d 1040, 1049 (D. Kan. 2003); *Karras v. Teledyne Indus.*, 191 F. Supp. 2d 1162, 1166 (S.D. Cal. 2002).

5

relinquish any claim to prospective interest that might accrue on those assets.[6] Thus, the Escrow Interest never belonged to PHG or WTM. To the extent the Escrow Interest has been spent on the OU1 work, those funds could not have been spent by PHG or WTM. PHG's and WTM's attempt to recover costs they never owned and/or incurred is improper.

Further corroboration that the Escrow Interest never belonged to PHG or WTM can be found in the fact that the OU1 Consent Decree envisioned that the Escrow Account would be set up as a qualified settlement fund ("QSF"), within the meaning of applicable U.S. Treasury regulations. *See* OU1 Consent Decree § VI.11, apps. C-D. When an account qualifies as a QSF, the assets in the account are no longer treated as owned by the transferor; rather, ownership of the assets transfers to the QSF itself. *See* Treas. Reg. § 468B-1(j). In addition, any accrued interest on the assets is income to the QSF, not to the grantor. *See United States v. Brown*, 348 F.3d 1200, 1207 (10th Cir. 2003); *see also* Treas. Reg. § 1.468B-2(a). The fact that the Escrow Account was intended to be a QSF confirms that Escrow Interest from the account is not the property of the grantors (*i.e.*, PHG and WTM). Accordingly, there is no basis for PHG and WTM to claim that they are entitled to recover the Escrow Interest from Plaintiffs.[7]

---

[6] Under established Wisconsin law, which governs interpretation of the Escrow Agreement, Escrow Agreement § 6.4, the express and unambiguous language of the Escrow Agreement ends discussion regarding the parties' intent. *See, e.g., Town Bank v. City Real Estate Dev., LLC*, 793 N.W.2d 476, 483-84 (Wis. 2010); *Huml v. Vlazny*, 716 N.W.2d 807, 820 (Wis. 2006). The OU1 Consent Decree is similarly subject to traditional rules of contract interpretation. *See United States v. Outboard Marine Corp.*, 764 F. Supp. 1315, 1316 (N.D. Ill. 1991) ("a consent decree is interpreted under general contract principles," though "construe[d] in light of the statutory basis upon which the suit was originally brought," in that case CERCLA).

[7] The plain language of the Escrow Agreement is also typical of trusts in Wisconsin, where a settler loses rights to the trust property at the moment of transfer. *See, e.g.*, Wis. Stat. § 701.05(1) (presumption, without express contractual limitations, is that "trustee takes all title of the settlor or other transferor and holds such title subject to the trustee's fiduciary duties as trustee"); *id.* § 701.01(8) (defining "trustee" as "a person holding in trust title to or holding in trust a power over property"); *Wis. Dept. of Taxation v. Pabst*, 112 N.W.2d 161, 164 (Wis. 1961) ("It is an elementary principle of law that the title to trust property vests in the trustees."). Having ceded control over and rights to the principal in the Escrow Account at the time of transfer, PHG and WTM also ceded rights to any interest earnings that the principal generated.

**B.   WTM Has Admitted That Funds in the Escrow Account, Including the Escrow Interest, Are Not Its Property.**

WTM has already conceded in its bankruptcy proceeding that it does not own or have a right to any of the assets in the Escrow Account. As noted above, WTM represented several times that *"[t]he funds in the Escrow Account do not constitute property of [WTM's] estates."* WTM Bankruptcy Motion ¶¶ 4, 17 (emphasis added). WTM even recites various arguments and cases confirming that WTM has no right to, interest in, or control over any funds within the Escrow Account—whether it be funds actually contributed by WTM or interest that accrued thereafter. *Id*. ¶¶ 27-30. Given these admissions, WTM cannot claim here that it owned the funds in the Escrow Account so as to have a right to seek recovery of the Escrow Interest from Plaintiffs.[8]

**C.   The Court's Prior Ruling Concerning the Escrow Account Confirms That PHG or WTM Never Owned or Controlled Interest in the Escrow Account.**

The Court's observations at the August 1, 2011, status conference also compel the conclusion that PHG and WTM cannot recover the Escrow Interest from Plaintiffs. According to the Court, once PHG and WTM deposited their funds in the Escrow Account, they "have spent that money, they have expended that money, and it's no longer in their control and at most they might have, if not reimbursed, a claim to it later." Dkt. # 1163, at p. 22. In the Court's view, evidently, once PHG and WTM contributed funds to the Escrow Account, those funds were no longer "in their control." It necessarily follows that any interest subsequently accruing on those funds was similarly not "in their control." According to this Court's own reasoning, then, PHG

---

[8] Requiring "litigants to choose one position irrevocably" is an important aspect of bankruptcy proceedings and should be protected with the doctrine of judicial estoppel. *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (citing *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1428 (7th Cir.1993)).

and WTM should not be permitted to recover the Escrow Interest from Plaintiffs, for otherwise PHG and WTM would improperly recover funds that were never theirs and that they did not spend on cleanup efforts.

* * *

The fact is that PHG and WTM lost any rights to the funds in the Escrow Account at the time of payment. At that point, the United States and the State of Wisconsin utilized a third party to hold their settlement proceeds and generate interest on those proceeds until the funds were needed to complete work within OU1. In so doing, these governmental agencies maximized the value and impact of the settlement proceeds—but none of this gives **PHG and WTM** a right to recover these funds from anyone, let alone from Plaintiffs.[9]

Fundamentally, PHG's and WTM's claim for the Escrow Interest represents a naked attempt to recover more than CERCLA allows. First, PHG and WTM are trying to circumvent CERCLA's strict guidelines for the recovery of pre-judgment interest, which limit both the rate at which interest can accrue and when it begins to accrue. PHG and WTM are seeking interest that accrued at rates well above the statutory trust fund rates – and beginning in 2004, rather than from a date, if any, when they demanded a specified sum from Plaintiffs. Second, to the extent that PHG and WTM request statutory pre-judgment interest *in addition to* the Escrow Interest, the claim seeks an impermissible double recovery of "interest on their interest." Finally, PHG and WTM claim entitlement to *all* the Escrow Interest, even though a substantial portion of this interest is attributable to funds deposited by the governmental agencies (from funds originally obtained from NCR and API). Trying to recover for themselves the benefits of funds contributed by others is profiteering that has no place under CERCLA.

## II. THERE IS NO MERIT TO ANY OF PHG'S AND WTM'S ARGUMENTS FOR WHY THEY CAN RECOVER THE ESCROW INTEREST.

Counsel for PHG and WTM may try to justify the recovery of the Escrow Interest on any number of grounds. None have any validity.

First, PHG and WTM may raise the erroneous argument that recovery is authorized by the plain language of the OU1 Consent Decree. There is simply no basis for this assertion. A review of the OU1 Consent Decree discloses no such provision—and as noted above, there is instead the unambiguous provision that the Escrow Interest specifically ***does not belong to PHG or WTM***. *See supra* p. 3. While it is true that the OU1 Consent Decree provides that all interest on the Escrow Account funds be spent on the cleanup, *see* OU1 Consent Decree, at ¶ 96, this does not compel any conclusion about the recoverability of such interest. Just because the OU1 Consent Decree requires that the Escrow Interest be used for OU1 work does not mean that these funds are recoverable ***by PHG and WTM***. The costs must still be owned and/or incurred by PHG and WTM to be recoverable by them.[10]

Second, PHG and WTM may try to argue that they did own Escrow Interest because they paid tax on these funds, but this argument also fails. There is no evidence in the record presently before the Court that PHG or WTM paid any such taxes. In fact, as noted above, the OU1 Consent Decree envisioned that the Escrow Account would be a QSF that would pay its own taxes. *See supra* p. 6. Moreover, even if PHG and/or WTM had paid some taxes on these funds, it would not confirm that they in fact owned the Escrow Interest. As Plaintiffs' cost expert Robert Rock testified when cross-examined on this issue, the fact that a party pays tax on an asset

---

[10] PHG and WTM's argument, by its own logic, would mean that PHG and WTM could also seek to recover from Plaintiffs the approximately $10 million contributed to the OU1 work by the governmental agencies (which was obtained originally from NCR and API). The absurdity of this result exposes the flaw in PHG's and WTM's argument.

9

signifies nothing about ownership of the asset. Transcript of Court Trial, Volume 6, 1278:19-23.

Third, PHG and WTM may try to argue that when they agreed to pay a certain amount of money toward the work in OU1, it was contemplated that their contribution would also include the interest that would accrue over time on the escrowed contribution. The flaw in this argument is that there is no indication of such an intention either in the OU1 Consent Decree itself or in the record presently before the Court. Without any such evidentiary foundation, this argument simply cannot justify PHG's and WTM's claim for recovery.

Finally, PHG and WTM may try to argue that it is only "fair" that they recover the Escrow Interest because they should be compensated for the time-value of the money they contributed toward the OU1 work. This argument is equally baseless. Not only is there nothing "fair" about obtaining a windfall recovery for funds actually owned or incurred by someone else, but the fact is that CERCLA already has a mechanism to compensate parties for the time-value of their money: Section 107(a)'s provision for pre-judgment interest. 42 U.S.C. § 9607(a).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny PHG's and WTM's claim for contribution under CERCLA § 113 for the approximately $4 million in interest that accrued in the OU1 Escrow Account after PHG and WTM made their required payments to the account. In the alternative, Plaintiffs request that the Court deny PHG's and WTM's claims to the extent they seek interest that accrued on funds other than those actually contributed by PHG and WTM, such as any interest on the $9,224,497, contributed to the OU1 Escrow Account by the governmental agencies (and that was originally provided by NCR and API).

Dated:  March 12, 2012                              Respectfully submitted,


/s/ Darin P. McAtee                                 /s/ Ronald R. Ragatz
CRAVATH, SWAINE & MOORE LLP                         DEWITT ROSS & STEVENS S.C.
Evan R. Chesler                                     Ronald R. Ragatz
David R. Marriott                                   Dennis P. Birke
Darin P. McAtee                                     Megan A. Senatori
Worldwide Plaza, 825 Eighth Avenue                  Two East Mifflin Street
New York, New York 10019                            Madison, WI 53703
Phone: (212) 474-1000                               Phone: (608) 255-8891
Fax: (212) 474-3700                                 Fax: (608) 252-9243
dmcatee@cravath.com

                                                    HERMES LAW, LTD.
SIDLEY AUSTIN LLP                                   Michael L. Hermes
Evan B. Westerfield                                 Heidi D. Melzer
One South Dearborn Street                           Ericka L. Krumrie
Chicago, Illinois 60603                             333 Main Street, Suite 601
Phone: (312) 853-7000                               Green Bay, WI 54301
Fax: (312) 853-7036                                 Phone: (920) 436-9870
                                                    Fax: (920) 436-9871

MARTEN LAW PLLC
Linda R. Larson                                     **Attorneys for Plaintiff Appleton Papers**
Bradley M. Marten                                   **Inc.**
1191 Second Avenue
Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601

**Attorneys for Plaintiff NCR Corporation**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2012, I electronically filed Brief of Plaintiffs NCR Corporation and Appleton Papers Inc. Regarding Interest and Earnings on OU1 Escrow Account using the ECF system, which will send notification of such filing to: Philip Munroe at DiRenzo & Bomier LLC, pmunroe@direnzollc.com; Scott Fleming at Weiss Berzowski Brady LLP, sbf@wbb-law.com; David Mandelbaum at Greenberg Traurig, LLP, mandelbaumd@gtlaw.com; Marc Davies at Greenberg Traurig, LLP, daviesm@gtlaw.com; Monique Mooney at Greenberg Traurig, LLP, mooneym@gtlaw.com; Caleb Holmes at Greenberg Traurig, LLP, holmesc@gtlaw.com; Adam Silverman at Greenberg Traurig, LLP, silvermana@gtlaw.com; Francis Citera at Greenberg Traurig, LLP, citeraf@gtlaw.com; Philip Hunsucker at Hunsucker Goodstein & Nelson PC, phunsucker@hgnlaw.com; David Rabbino at Hunsucker Goodstein & Nelson PC, drabbino@hgnlaw.com; Allison McAdam at Hunsucker Goodstein & Nelson PC, amcadam@hgnlaw.com; David Edquist at von Briesen & Roper, s.c., dedquist@vonbriesen.com; Christopher Riordan at von Briesen & Roper, s.c., criordan@vonbriesen.com; Patrick Wells at von Briesen & Roper, s.c., pwells@vonbriesen.com; Russell Wilson at Ruder Ware, rwilson@ruderware.com; Linda Benfield at Foley & Lardner LLP, lbenfield@foley.com; Sarah Slack at Foley & Lardner LLP, sslack@foley.com; Paul Bargren at Foley & Lardner LLP, pbargren@foley.com; Howard Iwrey at Dykema Gossett PLLC, hiwrey@dykema.com; Joseph Basta at Dykema Gossett PLLC, jbasta@dykema.com; Daniel Murray at Johnson & Bell, Ltd., murrayd@jbltd.com; Garrett Boehm, Jr. at Johnson & Bell, Ltd., boehmg@jbltd.com; Frederick Mueller at Johnson & Bell, Ltd., muellerf@jbltd.com; John Cermak, Jr. at Baker & Hostetler LLP, jcermak@bakerlaw.com; Sonja Inglin at Baker & Hostetler LLP, singlin@bakerlaw.com; Timothy Anderson at Remley & Sensenbrenner, S.C., tanderson@remleylaw.com; Thomas O'Donnell at Calfee Halter & Griswold LLP, todonnell@calfee.com; William Coughlin at Calfee Halter & Griswold LLP, wcoughlin@calfee.com; Ted Waskowski at Stafford Rosenbaum LLP, twaskowski@staffordlaw.com; Richard Yde at Stafford Rosenbaum LLP, ryde@staffordlaw.com; Meg Vergeront at Stafford Rosenbaum LLP, mvergeront@staffordlaw.com; Paul Kent at Stafford Rosenbaum LLP, pkent@staffordlaw.com; Margaret Hoefer at Stafford Rosenbaum LLP, mhoefer@staffordlaw.com; James P. Walsh at the Appleton City Attorney's Office, jim.walsh@appleton.org; William Mulligan at Davis & Kuelthau, s.c.,

wmulligan@dkattorneys.com; Kevin Lyons at Davis & Kuelthau, s.c., klyons@dkattorneys.com; Tara Mathison at Davis & Kuelthau, s.c., tmathison@dkattorneys.com; Elizabeth Miles at Davis & Kuelthau, s.c., emiles@dkattorneys.com; Ian Pitz at Michael Best & Friedrich, LLP, iapitz@michaelbest.com; Anthony S. Wachewicz, III at City of Green Bay, tonywa@ci.green-bay.wi.us; Ted Warpinski at Friebert, Finerty & St. John, S.C., taw@ffsj.com; S. Todd Farris at Friebert, Finerty & St. John, S.C., stf@ffsj.com; M. Andrew Skwierawski at Friebert, Finerty & St. John, S.C., mas@ffsj.com; Scott Hansen at Reinhart Boerner Van Deuren s.c., shansen@reinhartlaw.com; Steven Bogart at Reinhart Boerner Van Deuren s.c., sbogart@reinhartlaw.com; John Van Lieshout at Reinhart Boerner Van Deuren s.c., jvanlieshout@reinhartlaw.com; Thomas Gottshall at Haynsworth Sinkler Boyd, P.A., tgottshall@hsblawfirm.com; Stephen McKinney at Haynsworth Sinkler Boyd, P.A., smckinney@hsblawfirm.com; William Harbeck at Quarles & Brady LLP, william.harbeck@quarles.com; Nancy Peterson at Quarles & Brady LLP, nancy.peterson@quarles.com; Peter Karegeannes at Quarles & Brady LLP, peter.karegeannes@quarles.com; Susan Lovern at von Briesen & Roper, s.c., slovern@vonbriesen.com; Thomas Armstrong at von Briesen & Roper, s.c., tarmstro@vonbriesen.com; Michael P. Carlton at von Briesen & Roper, s.c., mcarlton@vonbriesen.com; Kelly Noyes at von Briesen & Roper, s.c., knoyes@vonbriesen.com; Arthur Foerster at Latham & Watkins LLP, Arthur.Foerster@law.com; Margrethe Kearney at Latham & Watkins LLP, Margrethe.Kearney@lw.com; Mary Rose Alexander at Latham & Watkins LLP, Mary.Rose.Alexander@lw.com; Karl Lytz at Latham & Watkins LLP, Karl.Lytz@lw.com; Andrea Hogan at Latham & Watkins LLP, Andrea.Hogan@lw.com; Patrick J. Ferguson at Latham & Watkins LLP, Patrick.Ferguson@lw.com; Charles Bohl at Whyte Hirschboeck Dudek S.C., cbohl@whdlaw.com; Richard Lewandowski at Whyte Hirschboeck Dudek S.C., rlewandowski@whdlaw.com; Jan Conlin at Robins, Kaplan, Miller & Ciresi L.L.P., jmconlin@rkmc.com; Sarah Lindsey at Warner Norcross & Judd LLP, slindsey@wnj.com; Steven Kohl at Warner Norcross & Judd LLP, skohl@wnj.com; Matthew Adams at SNR Denton, matthew.adams@snrdenton.com; James Braza at Davis & Kuelthau, s.c., jbraza@dkattorneys.com; Randall Stone at U.S. Department of Justice, randall.stone@usdoj.gov; Joshua Levin at U.S. Department of Justice, joshua.levin@usdoj.gov; Matthew R. Oakes at U.S. Department of Justice, matthew.oakes@usdoj.gov; Perry Rosen at U.S. Department of Justice,

perry.rosen@usdoj.gov; Michael Hermes at Hermes Law, Ltd., mlh@hermeslawltd.com; Ericka L. Krumrie at Hermes Law, Ltd., elk@hermeslawltd.com; Heidi D. Melzer at Hermes Law, Ltd., hdm@hermeslawltd.com; Dennis Birke at DeWitt Ross & Stevens S.C., db@dewittross.com; Ronald Ragatz at DeWitt Ross & Stevens S.C., rrr@dewittross.com; Megan Senatori at DeWitt Ross & Stevens S.C., ms@dewittross.com; Gregory A. Krauss at Gregory A. Krauss PLLC, gkrauss@krausspllc.com; J. Ric Gass at Gass Weber Mullins LLC, gass@gasswebermullins.com David Turek at Gass Weber Mullins LLC, turek@gasswebermullins.com.

NCR CORPORATION

   /s/ Evan B. Westerfield
   One of Its Attorneys

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott
Darin P. McAtee
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
dmcatee@cravath.com

SIDLEY AUSTIN LLP
Evan B. Westerfield
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue
Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601

**Attorneys for Plaintiff NCR Corporation**