IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. and
NCR CORPORATION,

        Plaintiffs,

    v.                          No. 08-CV-16 WCG

GEORGE A. WHITING PAPER
COMPANY, *et al.*,

        Defendants.

**PLAINTIFF APPLETON PAPERS INC.'S MEMORANDUM IN SUPPORT
OF ITS OBJECTIONS TO CERTAIN OF DEFENDANTS' TRIAL EXHIBITS**

       Plaintiffs and Defendants have agreed upon the admissibility of hundreds of trial exhibits, subject to preserved relevance objections. Plaintiff Appleton Papers Inc. ("API") has raised objections or otherwise not agreed to the admissibility of 109 of Defendants' proposed exhibits.[1] The disputed exhibits fall into the following categories:

•     API objects to Exhibits 2148 through 2218[2] on grounds of authenticity. These are all documents with "BCFOX" prefix Bates numbers and purport to be internal Wiggins Teape documents that came from the Butler's Court storage facility in the United Kingdom. API and NCR additionally object to the authenticity of BCFOX Exhibits 2159 and 2208, two copies of the so-called "Heinritz letter," because its purported author has testified that he did not write it; because it is at best an unoriginal

---

[1] A summary chart is attached as Exhibit A for the Court's convenience. Plaintiff NCR Corporation joins certain of these objections, as noted below.

[2] Exhibit 2218 is the same as Exhibit 2655 and Exhibit 2179 is the same as Exhibit 2664. Plaintiffs' objections apply to both versions.

re-typed document; and because spelling and other factors within the document create suspicions about its authenticity.

- API also objects to Exhibits 2680-2703, 2705-2708, and 2716-2724 on grounds of authenticity. These are all documents with "GPFOX" prefix Bates numbers that purportedly come from a University of California, San Francisco database of tobacco litigation documents. Defendants have presented no information that this database is a place where these documents, if authentic, would likely be found.

- API and NCR object to 24 of the above BCFOX documents[3] and 31 of the above GPFOX documents[4] on relevance grounds because they are Wiggins Teape documents that on their face do not relate in any way or speak to Appleton Coated Paper Company's ("ACPC") or NCR's knowledge on any pertinent issue, including the Phase 2 broke recycling issues. Some are internal Wiggins Teape documents for which there is no indication that they were sent or otherwise communicated to ACPC or NCR. Some involve correspondence by Wiggins Teape employees with entities other than ACPC or NCR.

- API and NCR object to 26 of the above BCFOX documents[5] and five of the above GPFOX documents[6] because they contain multiple levels of hearsay, and

---

[3] Exhibits 2166, 2168, 2169, 2170, 2171, 2175, 2177, 2178, 2179, 2182, 2189, 2191, 2194, 2196, 2197, 2198, 2200, 2205, 2206, 2207, 2210, 2212, 2213, and 2216.

[4] Exhibits 2680, 2681, 2682, 2683, 2684, 2685, 2686, 2687, 2688, 2689, 2690, 2692, 2693, 2694, 2695, 2696, 2697, 2698, 2699, 2700, 2701, 2702, 2703, 2705, 2706, 2707, 2708, 2721, 2722, 2723, and 2724.

[5] Exhibits 2149, 2155, 2164, 2165, 2167, 2172, 2173, 2174, 2176, 2180, 2181, 2184, 2185, 2187, 2188, 2190, 2192, 2193, 2195, 2199, 2201, 2202, 2203, 2204, 2215, and 2218.

[6] Exhibits 2716, 2717, 2718, 2719, and 2720.

Defendants have not shown, and cannot show, that each layer of hearsay falls within an exception.

- API objects to Exhibit 3067, an internal Monsanto document characterizing a meeting between Monsanto, Wiggins Teape and NCR, on grounds of both authenticity and multiple levels of hearsay. NCR joins in the multiple hearsay objection.

- API and NCR object to Exhibits 2001 and 2949 (duplicate copies of the so-called "Hoover Report") on grounds of authenticity. The document's purported author has testified under oath that he did not draft the document.

- API objects to Exhibit 2729, a "screenshot" of a database search, on grounds of authenticity and hearsay. NCR joins the hearsay objection.

At the outset of trial, Georgia-Pacific ("GP"), on behalf of Defendants, challenged Plaintiffs' grounds for not agreeing to the admissibility of these exhibits, making various assertions that were factually and legally incorrect. Trial Tr. 7-39. Then, during the course of trial, Defendants offered certain of these disputed documents into evidence in connection with witness testimony. In such cases, API raised its specific objections. In most cases, however, Defendants made no specific reference to the disputed documents during the course of trial, instead offering them into evidence at the close of their case.[7] This Memorandum sets forth the bases for Plaintiffs' objections to certain of Defendants' exhibits.

---

[7] Presumably, Defendants did this in order to reference the contents of the documents in connection with their proposed findings of fact. Because Defendants' proposed findings have not yet been filed, API presently cannot focus its objections on the documents upon which Defendants *actually* rely, or tailor its objections to Defendants' specific use of any disputed document. API reserves the right to address these matters in its reply brief.

-3-
Case 2:08-cv-00016-WCG   Filed 04/26/12   Page 3 of 18   Document 1381

# ARGUMENT

## I. PLAINTIFFS HAVE NOT WAIVED ANY OBJECTIONS TO THE ADMISSIBILITY OF THE EXHIBITS IN DISPUTE.

At trial, Defendants asserted that Plaintiffs failed to object to the use of 33 of the disputed BCFOX exhibits in support of summary judgment briefing in 2009, and as such waived any objections to their admissibility. Trial Tr. at 14.[8] Defendants contend that this alleged failure to object during summary judgment waives a party's right to object to the admissibility of the evidence at trial. *Id*.

This argument is incorrect factually and legally. Plaintiffs objected to Defendants' use of internal Wiggins Teape (*i.e.*, BCFOX) documents as a proxy for the knowledge possessed by either NCR Corporation or (more importantly) ACPC in their opposition to Defendants' summary judgment motions in 2009.[9] Therefore, any assertion that Plaintiffs voiced no objection to Defendants' use of the BCFOX documents in connection with the 2009 summary judgment motions is pure fiction.

Moreover, Defendants' waiver argument suffers from a fundamental legal defect. It has long been recognized that "making an objection [to the admissibility of proffered evidence] at the time of the motion [for summary judgment] is not required to preserve the objection for trial." William W. Schwarzer, et al., *The Analysis and Decision of*

---

[8] GP to date has not specifically identified the 33 exhibits that allegedly are subject to this waiver argument.

[9] *See, e.g.*, Dkt. 733 at 106 ("Defendants have not shown ACPC ever had any knowledge of the cited information. Further, the document is an internal WT report. There is no indication that the information was provided to anyone outside of WT."); 107 ("There is no evidence that ACPC was a party to, or even aware of, the letter."); 109 ("[T]hese comments were WT's commentary on its own operations in comparison to those of ACPC and Mead. The document provides no evidence that the issue of broke was actually discussed with ACPC."); 111-12 ("[T]he relevant knowledge at issue is the knowledge of ACPC, not the knowledge of third parties such as WT or BAT. The cited document purports to summarize a meeting attended by representatives of WT and BAT. There is no evidence that the matters discussed at the meeting were communicated to ACPC or NCR.").

*Summary Judgment Motions*, 139 F.R.D. 441, 482 (1992).[10] This is confirmed by the Advisory Committee Notes to the 2010 Amendments to Fed. R. Civ. P. Rule 56:

> If the case goes to trial, failure to challenge admissibility at the summary judgment stage does not forfeit the right to challenge admissibility at trial.

*See also Yeager v. Bowlin*, No. CIV. 2:08-102, 2010 WL 95242, *2, n.3 (E.D. Cal. Jan. 6, 2010) ("To this court's knowledge, failure to object to evidence presented in connection with a summary judgment motion does not waive any objection to that evidence at trial."). The court in *Yeager* noted the "frustrations expressed by this and other courts" over the practice of "cluttering the record with unnecessary evidentiary objections in connection with summary judgment motions." *Id.* at *1. The court observed that "this focus on the technical compliance of the declarations with the Federal Rules of Evidence does not appear to be in the spirit of Rule 56, or what the Supreme Court contemplated when it clarified the summary judgment procedure in *Celetex* [sic], *Anderson*, and *Matsushita*." *Id.* at *3. Defendants cited no authority in support of their waiver argument, and we have not located any decision that would support it.

Thus, the scope of any objections made in connection with briefing on prior summary judgment motions is irrelevant to Plaintiffs' present objections.

## II. DEFENDANTS HAVE FAILED TO ESTABLISH THE AUTHENTICITY OF CERTAIN EXHIBITS.

Defendants have designated 69 potential trial exhibits that were produced as part of the Butler's Court collection of documents. They have designated an additional 36 potential trial exhibits that allegedly were found in an online collection of tobacco litigation documents maintained by the University of California, San Francisco. In order

---

[10] At the time this article was published, Judge Schwarzer, a United States District Court Judge for the Northern District of California, was the Director of the Federal Judicial Center.

to satisfy authenticity requirements, Defendants — not API — have the burden to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Federal Rule of Evidence 901(a). Defendants have not satisfied, and cannot satisfy, this requirement.

### A. Butler's Court Documents.

Defendants offer three insufficient grounds for claiming that authenticity requirements for the Butler's Court documents have been satisfied. First, Defendants' assertion that API produced the Butler's Court documents — thereby "implicitly authentic[ating]" these documents (Trial Tr. at 14) — fails because in fact a third party (and not API) produced them.[11] Second, Defendants' contention that the declarations of Stacey Taylor and John Gough provide the certifications necessary to render the documents "self-authenticated" under FRE 902(12) ("Certified Foreign Records of Regularly Conducted Activities") fails because neither Ms. Taylor nor Mr. Gough can provide the requisite certifications.[12] Finally, the ancient status of the Butler's Court

---

[11] In its April 2009 motion to compel, GP asked the Court to order Appleton Coated LLC, an entity with whom API is not affiliated, to produce documents in the possession of corporations related to Appleton Coated (but not API) located in the United Kingdom. Dkt. 420/421. In its July 31, 2009 Order, the Court granted the motion (Dkt. 507), and in response Appleton Coated asked its sister corporation, Arjo Wiggins Fine Papers, Ltd. ("Fine Papers"), to provide to it the microfiche that GP sought. Fine Papers shipped the microfiche (which had apparently been stored at the Butler's Court facility) to Appleton Coated, which then produced responsive documents from that collection. Dkt. 1195 at 6-7. Therefore, it was Appleton Coated, on behalf of Fine Papers, and not API, that produced the Butler's Court documents. Dkt. 1196-6 at 2 of 4. Accordingly, contrary to GP's claim, the act of production of these documents does not constitute any kind of "implicit authentication" (Trial Tr. at 14) that can be attributed to API.

[12] Under FRE 902(12), the party offering a foreign business record must "meet[] the requirements of Rule 902(11)." The latter requires a "certification of the custodian or another qualified person" demonstrating that "the requirements of Rule 803(6)(A)-(C)" have been satisfied. The person offering the certification must "have knowledge of the procedure under which the records were created." *Collins v. Kibort*, 143 F.3d 331, 338 (7th Cir. 1998). The Taylor Declaration fails to satisfy this requirement because the declarant (Stacey Taylor) was not employed at the Butler's Court facility until 1992 — two or more decades after the documents which Defendants seek to admit were first created. Indeed, she was not even employed by the entity whose employees generated the documents. While Ms. Taylor purports to have knowledge regarding how the documents were maintained, she cannot possibly know how they were created — decades before she was employed at the Butler's Court facility. *See Rambus v. Infineon*
(footnote continued on next page)

documents fails to authenticate the documents because Defendants have failed to offer any evidence that each document was in a condition that creates no suspicion about its authenticity and was found in a place where, if authentic, such records would likely be kept. *See* FRE 901(b)(8).

### 1. Exhibits 2159 and 2208: the "Heinritz Letter".

API and NCR object specifically to the admissibility of Trial Exhibits 2159 and 2208 — two copies of the so-called "Heinritz letter" — because Defendants failed to demonstrate their authenticity. While Defendants' failure to authenticate the Butler's Court documents applies equally to these exhibits (*see supra* II.A.), Defendants also fail to overcome specific problems with the Heinritz letter that create significant suspicion about its authenticity. First, and most significantly, Mr. Heinritz himself has sworn that he did not write it: "[I]t's not a letter that I wrote." Heinritz 2010 Dep. 76:11-77:1, attached as Exhibit C. Second, Exhibits 2159 and 2208 are purportedly retyped letters — they are undisputedly not originals. They are unsigned and are not written on Appleton Coated Paper Company letterhead. That these documents are not original letters, and that Defendants have not offered testimony from anyone with knowledge of how these specific documents were created (*see supra* n.11), raises suspicion as to their authenticity.

---

(footnote continued from prior page)
*Technologies AG*, 348 F. Supp. 2d 698, 703 (E.D. Va. 2004) ("[T]he custodian or qualified witness must not only be familiar with the maintenance of the records, but also with how they were created.").

  In an attempt to cure the Taylor Declaration's defects, GP also provided the Declaration of John Gough, a former employee of Wiggins Teape. Before 1976, however, Mr. Gough was not the custodian of the Butler's Court library and did not have a role in the maintenance and storage of the library records. Gough Tr. 87:16-21; 88:20-89:2, attached as Exhibit B. In addition, Mr. Gough retired in 1987, and therefore has no basis to know how the BCFOX documents were maintained by Butler's Court since his retirement. Moreover, Mr. Gough acknowledged in a deposition taken on October 20, 2011 that his declaration is based in part on information from another person since he did not have the required personal knowledge. Gough Tr. 98:7-100:18; 111:19-112:9; and 112:14-113:2, attached as Exhibit B. Mr. Gough's Declaration is insufficient because he does not have the personal knowledge necessary to attest to the authenticity of the BCFOX documents.

Third, these exhibits contain British spelling conventions (*i.e.*, use of the word "favourably"). That spelling would not be reflected in an authentic document. Specifically, the purported author, Fred Heinritz, is an American who never utilized British spelling conventions. Heinritz 2010 Dep. 76:22-77:13, attached as Exhibit C. Thus, the British spelling convention creates suspicion as to the authenticity of these exhibits.

Mr. Heinritz's disavowal of any knowledge regarding these exhibits, combined with the indicia of inauthenticity discussed above, creates sufficient suspicion as to their authenticity such that the Court should find Exhibits 2159 and 2208 inadmissible.

### B. Documents From The University Of California Tobacco Litigation Database.

API is unable to stipulate to the admissibility of the GPFOX exhibits (Exhibits 2680 through 2724). Defendants claim that the GPFOX documents come from the University of California, San Francisco's on-line database "Legacy Tobacco Documents Library" and are authentic as ancient documents. Defendants do not explain, however, why this on-line database is "a place where, if authentic, [the GPFOX documents] would likely be," as required by FRE 901(b)(8)(B). Among the questions that Defendants do not answer:

- Who is the custodian of documents in the database?
- What is the purpose of the database?
- Who put the GPFOX documents into the database?
- How long have the documents been in the database?
- What were the history and chain of custody for the documents before they were included in the database?

- Why are documents pertaining to Wiggins Teape carbonless paper research in a tobacco document database?
- What, if any, protocol exists for the inclusion or exclusion of documents in the database?
- What, if any, controls are in place to prevent someone from uploading a collection of documents to the on-line database in an attempt to cloak the documents in an aura of authenticity?

It is Defendants' burden under FRE 901(a) to establish the authenticity of the GPFOX documents at the time they are offered into evidence. Defendants have not met that burden.

### C. Exhibit 3067.

Exhibit 3067 (PHGNCR-2001875-1879) purports to be the minutes, prepared by Monsanto, of a meeting attended by representatives of Monsanto, NCR and Wiggins Teape. Defendants attempt to satisfy the requirements of Rule 901(b)(8) by offering the affidavit of Deborah Belleau. But because the affidavit does not attest to Ms. Belleau's personal knowledge, it is insufficient. In her affidavit, Ms. Belleau, a former Monsanto employee, discusses documents maintained by what she calls "Old Monsanto." Ms. Belleau left the employ of "Old Monsanto" in 1997 to work for a Monsanto spin-off that she left in 2004. This affidavit was executed 12 years after she left the employ of "Old Monsanto," which maintained the documents, and five years after she left the employ of the spin-off. Ms. Belleau has no basis to know how Exhibit 3067 was maintained by "Old Monsanto" in the 12 years after leaving "Old Monsanto." The affidavit is inadequate on its face.

### D. Exhibits 2001 And 2949.

Exhibits 2001 and 2949 are copies of the same document: an October 1972 report entitled "The Status of Polychlorinated Biphenyl Uses at NCR," purportedly authored by T.E. Hoover ("Hoover Report"). The authenticity of the Hoover Report has been disputed by Plaintiffs since 2008 when its purported author, Troy Hoover, a retired NCR employee, testified under oath at a deposition that he did not prepare the report, did not know who prepared the report, and had never seen the report before it was sent to him by counsel for API. *See* Exhibit D, NCR-FOX-0562809 (Hoover September 24, 2008 Deposition at 51:17-52:8).

Defendants have not offered evidence that resolves the report's disputed authenticity. In 2009, API stipulated only that: (i) "the files from which [the Hoover Report] came were maintained by and in the custody and control of API at all times since the 1978 purchase;" and (ii) "[the Hoover Report] was located in a place where, if authentic, it would have been maintained." Doc. 746-1 at 2. However, API did not (and could not) stipulate that the "Hoover Report" was "in such condition that creates no suspicion concerning its authenticity." FRE 901(b)(8)(A).

Because API did not stipulate to its authenticity, and because the purported author has denied under oath having prepared the report, the Hoover Report (Exhibits 2001 and 2949) cannot be authenticated as an ancient document under FRE 901(b)(8).

### E. Exhibit 2729.

Defendants claim that Exhibit 2729 is a "screenshot" of an Arjo Wiggins Fine Papers database. API objects to the authenticity of Exhibit 2729 because Defendants, who have the burden of establishing this document's authenticity, have offered no proof to meet that burden. They have provided no information to the Court to explain how the

database was compiled, by whom, for what purpose, or any other fact relevant to the authenticity question. Defendants have offered nothing to prove that this document is what it purports to be. Moreover, API has no basis to know that this document is what it purports to be. This document is not a screenshot of an API database; rather, it is from an Arjo Wiggins Fine Papers database. API has no corporate relationship to Arjo Wiggins Fine Papers. API has no idea how the database was created or how database entries were made. API also does not know how this screenshot was created.

* * *

At the outset of the trial, GP chided API for challenging the authenticity of documents that GP and other Defendants seek to use as evidence in this proceeding. It is Defendants' burden, however, to proffer evidence sufficient to authenticate these documents. Defendants have failed to do so. Instead, for many of these documents, they offer the Court a patchwork of facially-deficient affidavits and declarations, none of which (individually or in combination) are sufficient to meet their burden.

## III. CERTAIN OF DEFENDANTS' DESIGNATED EXHIBITS CONTAIN MULTIPLE LEVELS OF INADMISSIBLE HEARSAY.

API and NCR also object to the admissibility of 32 designated exhibits (26 BCFOX, 5 GPFOX, and Exhibit 3067) on the ground they contain multiple levels of hearsay. Defendants offered four of these exhibits (Exhibits 2174, 2202, 2655 (a/k/a Exhibit 2218) and 3067) into evidence during their case in chief, and the Court reserved ruling on their admissibility. Trial Tr. 381, 508-09, 588. API and NCR object to the admission of these exhibits.

At trial, Defendants asserted that these documents are admissible because they are "ancient documents" and that this renders them admissible in their entirety under an

exception to the rule against hearsay. Trial Tr. at 23-24. In support of their claim, Defendants cited a ruling by the Eastern District of Pennsylvania. But under Seventh Circuit precedent, multiple levels of hearsay contained within an authenticated ancient document are not *per se* admissible. A hearsay exception is required for *each* level of hearsay within an authenticated ancient document. *United States v. Hajda*, 135 F.3d 439 (7th Cir. 1998). In *Hajda*, the court began its admissibility analysis by noting that "this admissibility exception [Rule 803(16)] applies only to the document itself." *Id*. at 444. Because the document contained a separate level of hearsay, the court held that the "actual statement needs a separate exception in order to be admissible." *Id*. Contrary to Defendants' claim at trial (Trial Tr. at 24), the *Hajda* court in fact reached—and expressly rejected—the proposition Defendants advocate.

This Court likewise requires separate exceptions for the admission of multiple levels of hearsay within an ancient document. In *State Financial Bank v. City of South Milwaukee*, No. 00-C-1530, 2006 WL 2691604 (E.D. Wis. Sept. 20, 2006), the court granted a motion to strike a proposed finding of fact that was based, in part, on a newspaper article that fell within the ancient documents exception because it was more than 20 years old. However, the court noted that the article contained hearsay within hearsay and was therefore inadmissible.

Courts outside the Seventh Circuit have also interpreted Rule 803(16) to require exceptions for each level of hearsay within an ancient document. In *United States v. Stelmokas*, Civ. A. No. 92-3440, 1995 WL 464264 (E.D. Pa. Aug. 2, 1995), the government's case relied, in part, on a report that recorded the statements of several

witnesses to a shooting. The defendant argued that the witness statements contained within the report were inadmissible as hearsay within hearsay. The court agreed:

> The Court concludes that the hearsay statements within the Marcinkus report are not admissible under Rule 805. As a general matter, evidence admitted under the hearsay exceptions in Rule 803 remains subject to the multiple hearsay requirement of Rule 805. If the law were otherwise, Rule 805 would be rendered superfluous.

*Id*. at *6.[13]

The court went on to explain the rationale for requiring exceptions for each level of hearsay within an ancient document:

> [T]here is no guarantee that a hearsay statement contained in the document is accurate. The author of the ancient document may have misheard or misunderstood the hearsay statement or his written words may not convey the meaning intended by the hearsay declarant. These issues of perception and narration are not merely peripheral but are fundamental problems of hearsay evidence. Consequently, hearsay statements contained within an ancient document lack the same indicia of trustworthiness and reliability that provide the rationale for admitting statements where the declarant is the author of the ancient document. It is for these reasons that the Court interprets Rule 803(16) as an exception to the hearsay rule only for statements where the declarant is the author of the ancient document. This ruling best gives effect to the combined purposes of Rules 803(16) and 805.

*Id*. (internal citation omitted).[14]

---

[13] Rule 805 (Hearsay Within Hearsay) provides: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

[14] Other courts have held likewise. *See Columbia First Bank, FSB v. United States*, 58 Fed. Cl. 333, 338 (Fed. Cl. 2003) ("[T]he weight of authority distinguishes between single hearsay and double hearsay in ancient documents."); *Kesey, LLC v. Francis*, No. CV 06-540-AC, 2009 WL 909530 at *28-29 (D. Or. Apr. 3, 2009) (holding that two newspaper articles were admissible under the ancient documents rule but that statements contained in the articles that were not attributed to the author of the articles were hearsay and inadmissible if offered for the truth of the matter asserted); *Hicks v. Charles Pfizer & Co.*, 466 F. Supp. 2d 799, 806-07 (E.D. Tex. 2005):

> The rationale of Rule 803(16) in permitting the admission of statements in ancient documents where the author is the declarant does not justify the admission of double hearsay merely because of its presence in an ancient document. The danger of faulty perception persists unabated because a narrator, such as a reporter, may not properly record the remarks of the speaker. More generally, the risk of deception or mistake is compounded with each additional layer of hearsay, as any error will inevitably be passed

(footnote continued on next page)

In this case, Defendants have submitted 32 documents as trial exhibits that contain multiple levels of hearsays. Even if Defendants can properly authenticate the documents they seek to admit as ancient documents, additional levels of hearsay contained within these documents make certain statements inadmissible unless there is a separate exception to the hearsay rule for each level of hearsay. Generally, these designated exhibits are internal Wiggins Teape, 3M or Monsanto documents that recount or characterize meetings or visits with NCR or ACPC. The characterization by an employee of Wiggins Teape, 3M or Monsanto of statements allegedly made by employees of NCR or ACPC during the meetings constitutes hearsay within hearsay for which Defendants have provided no separate exception to the hearsay rule.

For example, Exhibit 2174, which was offered during the direct examination of Charles Klass, is an internal Wiggins Teape memorandum that contains multiple levels of hearsay. This document reports on a visit by ACPC employees to Wiggins Teape and contains the Wiggins Teape employee's characterization of information that ACPC employees purportedly stated during the meeting. The author's characterization of what ACPC purportedly said has no indicia of trustworthiness. Even if admissible as an

---

(footnote continued from prior page)
> on regardless of the accuracy or sincerity of the author of the ancient document or prior relators.
>
> * * *
>
> Better reasoned authority indicates that the ancient documents exception permits the introduction of statements only where the declarant is the author of the document. Even if a document qualifies as ancient under Rule 803(16), other hearsay exceptions must be used to render each individual layer of hearsay admissible. This interpretation best reconciles the underlying justifications of Rule 803(16) with the limitations of Rule 805. Rule 805 would be superfluous if the explicit hearsay exceptions excused double hearsay. Therefore, the canons of statutory interpretation compel this court to give effect to Rule 805 as well as Rule 803(16), rendering the newspaper articles inadmissible under the ancient documents exception to the hearsay rule.

*Id*. at 806-07 (internal citations omitted).

ancient document, each item of hearsay contained within the document requires its own hearsay exception, *i.e.*, its own indicia of trustworthiness, to be admissible. Defendants offer no such exception.

Exhibit 2202, which was offered by Defendants during the direct examination of their expert, James Kittrell, is another internal Wiggins Teape memorandum that contains multiple levels of hearsay. This internal memorandum reports on a visit by Wiggins Teape to NCR in Dayton, Ohio. Again, the Wiggins Teape author characterized information that NCR and ACPC employees purportedly stated during the meeting as he recalled the statements. Defendants have offered no exception to the hearsay contained within this document.

Exhibit 3067, offered during the direct examination of Mr. Kittrell, purports to be an internal Monsanto memorandum reporting statements purportedly made by NCR employees during a meeting between Monsanto, NCR and Wiggins Teape. Like the previous examples, no exception to the multiple levels of hearsay contained within this document has been offered by Defendants.

Exhibit 2655 (also Exhibit 2218), also offered during the examination of James Kittrell, purports to be an internal Wiggins Teape memorandum (largely illegible) that contains multiple levels of hearsay.[15] This Wiggins Teape internal memorandum reports on a meeting at which NCR was present and includes a Wiggins Teape employee's characterization of statements purportedly made by an employee of NCR. Again, Defendants have offered no exception to overcome this hearsay within the document.

---

[15] When this document was offered into evidence by Defendants as Exhibit 2655, the Court acknowledged this document as a BCFOX document for which API maintains objections on the grounds of authenticity and double hearsay Trial Tr. at 588.

Defendants have provided no exception to the hearsay within hearsay contained within the specific four exhibits already offered to the Court, nor have they provided an exception for the 28 other double hearsay documents on their exhibit list. Defendants have failed to meet their burden as to the admissibility of the statements and, therefore, the statements should not be admitted into evidence.

## IV.   CERTAIN OF DEFENDANTS' DESIGNATED EXHIBITS ARE INADMISSIBLE BASED ON RELEVANCE.

API and NCR object to the admissibility of 55 of Defendants' designated exhibits from the BCFOX and GPFOX collections on the ground that these documents are not relevant to the knowledge of ACPC or NCR on Phase 2 broke recycling issues. To be clear, Plaintiffs do not maintain a relevancy objection to all 109 documents for which API also maintains authenticity objections. It is only those documents that clearly have no connection to the knowledge of ACPC or NCR for which Plaintiffs also maintain a specific relevancy objection. Under Federal Rule of Evidence 401, evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Evidence is irrelevant when it has no tendency to prove a fact of consequence.

The 55 documents in question in no way relate to ACPC or NCR's knowledge about Phase 2 broke recycling issues. These documents are primarily comprised of confidential internal Wiggins Teape documents from the Butler's Court facility with no indication on the face of the documents that they were sent to or otherwise communicated to ACPC or NCR. In fact, the testimony of Wiggins Teape employee John Gough shows that such research documents were not shared outside of Wiggins Teape:

> Q.   Mr. Gough, we saw a number of documents during the examination by Mr. Lytz where documents were labeled "confidential"?

-16-
Case 2:08-cv-00016-WCG   Filed 04/26/12   Page 16 of 18   Document 1381

> A. Right.
>
> Q. Can you please explain for us what that means when a document is marked "confidential"?
>
> A. It means that they are certainly not meant to be seen by people outside the company and probably distribution will be restricted inside the company it can affect company policy competitors and that sort of thing.

Gough Tr. 89:3-89:14, attached as Exhibit B. Mr. Gough testified that such documents were not shared with NCR:

> Q. And during this time period, communications with other companies, including NCR, were very tightly managed, correct?
>
> A. Yes. By Dr. Rance.
>
> Q. Sorry, we are talking over each other. I do not want to be repetitive, but I want to make sure we have a clear record.
>
> A. Yes, Dr. Rance kept a very tight grip on the business. And you would only talk to outside people once it has been cleared by him.
>
> Q. So in other words the commercial relationship with NCR and the flow of information was very tightly controlled, right?
>
> A. Yes.

*Id.*, 91:9-91:22.

Other documents involve correspondence that was not sent from or addressed to ACPC or NCR and include no indication on the face of the documents that they were otherwise communicated to ACPC or NCR. Therefore, these documents have no tendency to make a fact more or less probable than it would be without the evidence, and the facts contained within these documents are of no consequence because they do not address ACPC's or NCR's knowledge.

## CONCLUSION

For the foregoing reasons, Plaintiff Appleton Papers Inc. respectfully requests that the Court deny admitting into evidence the exhibits discussed in this Memorandum.

Dated this 26th day of April, 2012.

                    Respectfully submitted,

                    APPLETON PAPERS INC.

                    By:   /s/ Michael L. Hermes
                           One of Its Attorneys

            Counsel for Appleton Papers Inc.:

| | |
|---|---|
| Michael L. Hermes (#1019623) | Ronald R. Ragatz (#1017501) |
| Heidi D. Melzer (#1076125) | Dennis P. Birke (#1018345) |
| Ericka L. Krumrie (#1066383) | Megan A. Senatori (#1037314) |
| Hermes Law, Ltd. | DeWitt Ross & Stevens S.C. |
| 333 Main Street, Suite 601 | Two East Mifflin Street |
| Green Bay, WI 54301 | Madison, WI 53703 |
| (920) 436-9870 | (608) 255-8891 |
| Fax: (920)436-9871 | Fax: (608) 252-9243 |
| | |
| | Gregory A. Krauss |
| | Gregory A. Krauss PLLC |
| | 1629 K St. NW |
| | Suite 300 |
| | Washington, DC 20006 |
| | (202) 355-6430 |