# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### GREEN BAY DIVISION

APPLETON PAPERS INC. and )
NCR CORPORATION, )
                Plaintiffs, )
                )
     v. )
                )    No. 08-CV-00016-WCG
GEORGE A. WHITING PAPER )
COMPANY, et al., )
                Defendants. )
                )

## DEFENDANTS' OPPOSITION TO PLAINTIFF APPLETON PAPERS INC.'S MEMORANDUM IN SUPPORT OF ITS OBJECTIONS TO CERTAIN OF DEFENDANTS' TRIAL EXHIBITS[1]

---

[1]      This memorandum is filed on behalf of the following Defendants: Georgia-Pacific Consumer Products LP (f/k/a Fort James Operating Company), Fort James Corporation, and Georgia-Pacific LLC (collectively, "GP"), CBC Coating, Inc., U.S. Paper Mills Corporation, P.H. Glatfelter Company, WTM I Company, Menasha Corporation, and Neenah Menasha Sewerage Commission.

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT ........................................................................................................2

    A.    Plaintiffs' Authenticity Objections Should be Denied.............................2

        1.    The Butler's Court Documents Are Authentic ............................................3

        2.    The "Heinritz Letter" Is Authentic .............................................................6

        3.    The BAT Documents from the Legacy Tobacco Database Are Authentic........................................................................................................9

        4.    The WT "Aroclor Mass Balance" Meeting Minutes Are Authentic......................................................................................................11

        5.    The "Hoover Report" is Authentic .............................................................11

        6.    Documents Related to the 1965 "Ruabon Meeting" Are Authentic......................................................................................................12

    B.    The Documents To Which Plaintiffs Object Are Not Hearsay, and Also Qualify For Exceptions to Hearsay........................................................13

    C.    WT's Ancient Business Records Are Highly Relevant to the Issue of Plaintiffs' Arranger Liability ................................................................15

    D.    At a Minimum, 50 of the 109 Documents to which API Objects Should Be Admitted Against NCR Because NCR Does Not Object to Them .................17

III.    CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Cox v. City of Indianapolis*,
  2011 U.S. Dist. LEXIS 2890 (S.D. Ind. Jan. 11, 2011)    6, 9

*Fenje v. Feld*,
  301 F. Supp. 2d 781 (N.D. Ill. 2003)    3

*Indianapolis Minority Contractors Ass'n v. Wiley*,
  No. 94-1175, 1998 WL 1988826 (S.D. Ind. May 13, 1998)    3

*Jackson v. Bailey*,
  2011 WL 4375978 (W.D. Mich. June 22, 2011)    6, 9

*Langley by Langley v. Union Elec. Co.*,
  107 F.3d 510 (7th Cir. 1997)    13

*LINC Fin. Corp. v. Onwuteaka*,
  129 F.3d 917 (7th Cir. 1997)    4, 5

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*,
  518 F.3d 459 (7th Cir. 2008)    14

*Redden v. Wal-Mart Stores*,
  832 F. Supp. 1262 (N.D. Ind. 1993)    6

*Thanongsinh v. Bd. of Educ.*,
  462 F.3d 762 (7th Cir. 2006)    3

*United States v. Demopoulos*,
  506 F.2d 1171 (7th Cir. 1974)    14

*United States v. Dumeisi*,
  424 F.3d 566 (7th Cir. 2005)    8

*United States v. Firishchak*,
  468 F.3d 1015 (7th Cir. 2006)    3

*United States v. Harvey*,
  117 F.3d 1044 (7th Cir. 1997)    3

*United States v. Laughlin*,
  772 F.2d 1382 (7th Cir. 1985)    16

ii

*United States v. Martel*,
  792 F.2d 630 (7th Cir. 1986)      16

*United States v. Ochoa*,
  229 F.3d 631 (7th Cir. 2000)      15

Wiley v. United States,
  20 F.3d 222 (6th Cir. 1994)      6

*Yeager v. Bowlin*,
  No. CIV. 2:08-10, 2010 WL 95242 (E.D. Cal. Jan. 6, 2010))      6

## DOCKETED CASES

*Georgia-Pacific Consumer Products LP v. Appleton Coated LLC*,
  No. 1:11-mc-00032-WCG (E.D      12

## STATUTES

Fed. R. Evid. 401      15

Fed. R. Evid. 801(c)(2)      14

Fed. R. Evid. 803(16).      15

Fed. R. Evid. 807      15

SF\960302.1

## I. INTRODUCTION

Over the past several years of this litigation, Defendants discovered, compiled, and offered as evidence hundreds of ancient business records written by NCR, ACPC, and Wiggins Teape ("WT") employees during the Production Period (1954-1971), which conclusively prove that ACPC and NCR are liable as CERCLA arrangers based on their knowledge of, and participation in, NCR Paper broke recycling. Many of these documents came from API's own corporate files, and the others came from publicly accessible record repositories that are by no means suspect. API, and, to some extent, NCR, cherry-pick 109 records to whose admissibility they object based on meritless claims that the records are not authentic, contain hearsay, and are irrelevant. As Defendants explained on the first day of trial, Tr. 7:8-41:4, the Court should deny these objections and admit all of these exhibits as evidence for a multitude of reasons.[2]

All of these exhibits are authentic as ancient business records because they were found in a condition that creates no suspicions as to their authenticity, in locations where they were likely to be, and are more than twenty years old. Moreover, many are authentic for a number of other reasons, including that they are foreign business records, bear distinctive markings and

---

[2] Pursuant to the parties' agreement to make all non-relevance objections during the trial, the parties presented argument on the admissibility of these very same exhibits on the first day of trial. Indeed, both API and NCR made arguments at trial that virtually mirror those in their belated brief. Nevertheless, in addition to Plaintiffs' 75-page post-trial brief, API filed (and NCR joined) a Memorandum in Support of its Objections to Certain of Defendants' Exhibits ("Memorandum" or "Mem."), Dkt. No. 1381. Defendants object to this Memorandum in its entirety because it is outside the agreed-upon 75-page limitation for the first round of post trial briefing, and, given the Court's April 10, 2012 ruling in *United States v. NCR Corp.*, No. 1:10-cv-910-WCG (E.D. Wis.), Dkt. No. 349, that API is not a liable party, API's objections may be moot in the *Whiting* case. Moreover, the parties were required to make relevancy objections when documents were submitted into evidence and failure to do so was agreed to be a waiver of such objection. Tr. 1038:24-1040:11. To the extent that the Court considers the arguments in API's Memorandum, Defendants submit this brief and supporting documents in response, including a chart that details the reasons for the admissibility of all 109 documents. *See* Exhibit 1, attached hereto.

1

characteristics, were produced by API, and because API and NCR waived their rights to challenge authenticity by failing to object at the summary judgment stage.

None of these documents are hearsay because Defendants do not offer them for the truth of the matter asserted, but rather to prove NCR's and ACPC's knowledge and intent. Moreover, many of the documents (including the alleged "double hearsay" they contain) qualify for the ancient records, party admission, and residual hearsay exceptions.

All of these documents are highly relevant to the central arranger issues. The Court can and should draw reasonable factual inferences regarding NCR and ACPC's arranger liability from WT's internal correspondence and meeting minutes even if NCR and ACPC personnel may not have received such documents. In fact, WT's records are highly probative on particular factual issues because NCR, ACPC, and WT had an ongoing and frequent technical information exchange, and NCR and ACPC were undoubtedly aware of WT's efforts to repulp and recycle NCR broke. Particularly because NCR and ACPC's own corresponding records on these issues records have been lost or destroyed, the search for the truth is aided by Defendants' discovery of the contemporaneous WT documents evidencing the technical information exchange among WT, NCR, and ACPC.

For all of these reasons, set forth more fully below, the Court should deny all of Plaintiffs' objections raised in API's Memorandum. In the event that the Court grants any of API's independent objections, these documents should still be admitted against NCR because, as further explained in Section II.D., NCR did not join the majority of API's objections.

## II.  ARGUMENT

### A.  Plaintiffs' Authenticity Objections Should be Denied

API challenges the authenticity of 105 documents, and NCR joins in a few of these objections. Mem. at 5-11. These objections are targeted at most of the key documents that

2

establish Plaintiffs' arranger liability. As Defendants explained on the first day of trial, and as further set forth below, all of these documents are clearly admissible as authentic ancient business records.

Authentication is governed by Rule 901, and "Rule 901 does *not* erect a particularly high hurdle." *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 779 (7th Cir. 2006) (quotation omitted; emphasis added). "To satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FRE 901(a). "Whether the documents [are] correct [in substance] . . . goes to their weight and is a matter for the trier of fact; it is not relevant to the threshold determination of [authentication and] admissibility." *United States v. Firishchak*, 468 F.3d 1015, 1021 (7th Cir. 2006). "Rule 901 requires only a prima facie showing of genuineness…." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997).

API's Memorandum challenges the authenticity of these documents both individually and categorically, and Defendants respond to those particular and categorical objections below.

### 1. The Butler's Court Documents Are Authentic

This Court is familiar with the history of documents with the BCFOX prefix, which were produced in 2009 by API/Appleton Coated LLC ("ACC") from the Butler's Court microfiche files pursuant to this Court's July 31, 2009 Order. Dkt. No. 507. API objects to the authenticity of 69 of these documents, and NCR joins four of these objections. These Butler's Court records are authentic for five reasons.

First, API/ACC produced these documents, and "[t]he act of production is an implicit authentication of documents produced." *Indianapolis Minority Contractors Ass'n v. Wiley*, No. 94-1175, 1998 WL 1988826, at *6 (S.D. Ind. May 13, 1998); *see also Fenje v. Feld*, 301 F. Supp. 2d 781, 809 (N.D. Ill. 2003) (same). In its Memorandum, API attempts to distinguish this

3

issue by re-hashing the same claims it made when API refused to produce these documents in 2009, namely that the documents were in the possession, custody or control of another corporate entity, Arjo Wiggins Fine Papers Limited, and API, therefore, was not the corporate entity that produced them.  *See* Mem. at 6.  Yet, this Court has already ruled that Arjo Wiggins Appleton ("AWA")—the corporate entity that is "calling the shots" for API in this litigation—had control over these documents.  Dkt. No. 507.  Regardless of what AWA entity actually produced the documents, they were undoubtedly sent to API, and API produced them to the Defendants.

Second, the documents are admissible as ancient records pursuant to FRE 901(b)(8) because, as Defendants established at trial, Tr. 15:2-14, the documents were found in a condition that creates no suspicions about their authenticity, in a place where they were likely to be, and are more than twenty years old.  These documents are non-suspicious, commonplace company correspondence from the Production Period, which were found on microfiched records in the Butler's Court research facility.  Defendants offered the declaration of the librarian who maintained the Butler's Court records, Stacey Taylor, who described the circumstances under which the documents were kept and attested to their authenticity.  Exhibit 2, attached hereto.  Contrary to API's assertions, Mem. 6-7, Mrs. Taylor did not need personal knowledge of the substance of the documents to attest to their authenticity.  *See, e.g.*, *Thanongsinh*, 462 F.3d at 777 ("[T]he custodian need not be the individual who 'personally gathered . . . a business record.  The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices.") (citation omitted); *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 923 (7th Cir. 1997) ("knowledge of [plaintiff's] record-keeping procedures was therefore sufficient to authenticate the documents").

Third, the Butler's Court records are authentic as foreign business records under FRE 902(12), which requires a certification from the foreign record's "custodian or other qualified person . . . . signed in a manner that, if falsely made, would subject the maker to a criminal penalty in the country where the certification is signed." FRE 902(11)-(12). In such cases, the person certifying the records "need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices." *Thanongsinh*, 462 F.3d at 777 (quotation omitted). Once again, Mrs. Taylor's declaration establishes how and where these records were kept, that she is a UK resident subject to UK perjury laws, and that she is familiar with these records because she worked as the Butler's Court librarian.

Fourth, the Butler's Court records are authentic under FRE 901(b)(4) because they bear distinctive patterns and characteristics that indicate that they are likely to be authentic. For instance, as Defendants highlighted at trial, Exhibit 2174 bears many distinctive characteristics— it is labeled "file copy;" it says it must be returned to the library; and it is marked confidential. Trial Tr. 16:13-23. These are the same distinctive characteristics that make Exhibit 101 authentic, which is very similar to WT documents on Plaintiffs' own exhibit list to which API voices no objection. *Id.* Likewise, Exhibit 2151 bears distinctive characteristics that attest to its authenticity, such as a Tech L file number, a Wiggins Teape research stamp, and a file copy indication at the top. *Id.* 17:10-15.

Finally, API waived its right to object to some of these documents because they were included in Defendants' 2009 motions for summary judgment, and Plaintiffs did not object to the documents in their oppositions. Contrary to API's assertions, Mem. at 4-5, general waiver principles were in place in 2009, and NCR/API were required to make any available evidentiary

5

objections at that time. *See Cox v. City of Indianapolis*, 2011 U.S. Dist. LEXIS 2890, at *4 n.1 (S.D. Ind. Jan. 11, 2011); *Jackson v. Bailey*, 2011 WL 4375978, at *4 (W.D. Mich. June 22, 2011); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994); *Redden v. Wal-Mart Stores*, 832 F. Supp. 1262, 1270 n.4 (N.D. Ind. 1993), *aff'd* No. 93-2516, 1994 U.S. App. LEXIS 24474, at *4-5 (7th Cir. Sept. 6, 1994). As Defendants explained in their post-trial brief, Dkt. No. 1382, at 14 n.13, the federal rules were changed in 2010 to state that failure to object at the summary judgment stage does not preclude an objection at trial, but this rule was not retroactive and does not apply to API and NCR's waiver in 2009.[3] The only case law cited by API in its Memorandum is not on point because it is a 2010 case from California that was decided *after* the federal rule change. *See* Mem. at 5 (citing *Yeager v. Bowlin*, No. CIV. 2:08-10, 2010 WL 95242, at *2 n.3 (E.D. Cal. Jan. 6, 2010)).[4]

### 2. The "Heinritz Letter" Is Authentic

Both NCR and API join in a challenge to the authenticity of the May 19, 1965 letter from longtime-ACPC employee and then-ACPC purchasing manager, Fred "Bud" Heinritz, to WT's A.E. Burroughs. API and NCR do not like this document because it clearly demonstrates

---

[3]   *See* Fed. R. Civ. P. 86, noting that the federal rules of evidence and amendments thereto take effect at the time specified by the Supreme Court, subject to 28 U.S.C. § 2074—which provides that the final rule shall not take effect sooner than December 1 of the year in which it is transmitted to Congress—and "govern[] proceedings in an action commenced after their effective date; and proceedings after that date in an action then pending unless[] the Supreme Court specifies otherwise[] or [] the court determines that applying them in a particular action would be infeasible or work an injustice."

[4]   Other courts have noted that the amendments to this rule are not retroactive. *See, e.g., Garcia v. Clark Cnty.*, 2011 U.S. App. LEXIS 7908, at *2 n.1 (9th Cir. April 13, 2011) ("The amendments to FRCP 56 effective December 1, 2010 moved the provisions of subdivision (f) to subdivision (d), without substantial change. *Compare* Fed. R. Civ. P. 56(f) (2009), *with* Fed. R. Civ. P. 56(d) (2010); *see* Fed. R. Civ. P. 56(d) (advisory committee notes regarding 2010 Amendments). We refer to FRCP 56(f) because the district court entered summary judgment in November, 2009, before the effective date of the amendments.")

ACPC's knowledge by 1965 at the latest that broke was recycled and that coatings were removed during the recycling process. *See* Exs. 2159 & 2208. The letter is authentic for five reasons.

First, NCR has already stipulated that both copies are authentic. *See* Dkt. No. 503 (API did not sign this authenticity stipulation). On July 29, 2009, the parties filed a Stipulation Regarding Authenticity of Ancient Records with this Court, in which the parties agreed that all ancient records produced during the litigation would be deemed authentic within the meaning of FRE 901(b)(8) unless a party "timely notified all other parties of its objection, identifying the particular document by date and bates number, and by stating the facts that suggest the document is not authentic."[5] API/ACC produced both copies of the Heinritz letter in September of 2009 as part of the production of the Butler's Court material, and NCR did not make a timely objection. NCR has since offered reasons for why it did not timely voice an objection, Dkt. No. 1193, at 7-8, but these excuses do not affect the binding nature of the stipulation that NCR signed. Moreover, NCR already admitted that "there is no dispute that this document is a true and accurate copy of the 'original' that existed within the Butler's Court files; NCR has even offered to so stipulate." *Id.* at 8 (citing Gallagher Decl., ¶ 21).

Second, the Heinritz letter is admissible as an ancient record pursuant to FRE 901(b)(8) because both copies were found in a condition that creates no suspicions about their authenticity (WT's microfiched business records), in a place where they were likely to be (the Butler's Court research facility), and are more than twenty years old. Plaintiffs now suggest that these letters

---

[5]     Dkt. No. 503 ¶ 2. Paragraph 1 of the stipulation states, "Each party agrees that all documents produced in this litigation, including documents obtained by subpoena, that will be at least 20 years old by the time of trial based on the face of the document, testimony or other evidence of its age, are authentic as ancient records pursuant to Rule 901(b)(8) of the Federal Rules of Evidence." Paragraph 2 states in relevant part, "To be timely, the notice, identification and explanation [had to] be served… 30 days after the document is produced to the objecting party." Paragraph 2 also provided separate deadlines for documents produced (i) before July 1, 2009 and (ii) within 30 days of trial – both which are inapplicable here. Dkt. No. 503 ¶ 2.

were somehow fabricated because Mr. Heinritz testified in a different case that he did not write these versions of the document. Mem. at 7-8. Defendants, however, have never claimed that he wrote these versions of the letter. In fact, Defendants offered the sworn declaration of Mr. John Gough—a former WT employee who is familiar with the Butler's Court record-keeping practices—who explained that it was WT's normal procedure to have secretaries re-type correspondence from companies such as ACPC. Ex. 3, attached hereto. When the original letter was received from ACPC's Mr. Heinritz, a WT secretary re-typed one copy for the "library" file and one identical copy for the "technical" file. That this secretary used the British spelling of "favourably" only further confirms the accuracy of Mr. Gough's explanation. It is inconceivable, on the other hand, that this secretary forged the entirety of the letter, in which Mr. Heinritz details his understanding of broke recycling and its consequences.

Third, the Heinritz letter is authentic under FRE 901(b)(4) because both copies bear distinctive patterns and characteristics that indicate that they are likely to be authentic. Mr. Gough's declaration explains that each copy of the letter bears distinctive marginalia that signifies the files in which they were kept. For instance, the "Appleton Coated Paper Company" stamp meant that the letter was filed in the Appleton Coated Paper Company file, the serial number corresponded to the number of communications that WT had with a particular company, and the "WTGRO" stamp was an acronym for Wiggins Teape Group Research Organization. These are exactly the type of characteristics that indicate that a document is likely to be authentic. *See, e.g.*, *United States v. Dumeisi*, 424 F.3d 566, 574-75 (7th Cir. 2005) (accepting as authentic evidence with "distinctive characteristics including the style and form of the documents…, symbols, codes, abbreviations, and signatures"); *Harvey*, 117 F.3d at 1049 (accepting notes and diaries as authentic because of their distinctive characteristics).

8

Fourth, the Heinritz letter is authentic as a foreign business record under FRE 902(12) based on Mrs. Taylor's declaration. Ex. 2.

Finally, neither NCR nor API objected to either version of the Heinritz letter during the Phase I summary judgment proceedings in 2009,[6] and their failure to do so means that their objection now is waived. *See Cox*, 2011 U.S. Dist. LEXIS 2890, at *4 n.1; *Jackson*, 2011 WL 4375978, at *4. Thereafter, API and NCR made no attempt to object to the authenticity of either copy in advance of the Court's December 2009 summary judgment ruling. Dkt. No. 795. The Court cited the Heinritz letter in this ruling in support of its finding that "NCR and Appleton Coated . . . knew . . . that broke was being recycled." *Id.* at 25 n.21. Accordingly, NCR and API have waived their authenticity objections.

### 3. The BAT Documents from the Legacy Tobacco Database Are Authentic

On the first day of trial, Defendants provided the Court with a demonstration of how to search for documents on a publicly accessible repository, the Legacy Tobacco Documents

---

[6] On August 28, 2009, API and NCR moved for summary judgment (Dkt. No. 573) and, in support, filed proposed findings of fact (Dkt. No. 577). On September 30, 2009, GP filed a response to API/NCR's proposed findings, and GP's response expressly and repeatedly relied upon the copy of the Heinritz Letter identified as Trial Exhibit 2159. Dkt. No. 657, at PPFF Resp. 60, 62, 63 & AUMF 50 (citing JEF Decl. Ex. 79). GP also filed Exhibit 2159 as an exhibit in support of that response. Dkt. No. 683-59 (JEF Decl. Ex. 79). Thereafter, while API and NCR filed a reply on October 19, 2009 to that GP response, API and NCR in no way objected to the authenticity of the Heinritz letter. *See* Dkt. No. 733, at PPFF Reply 60, 62, 63 & AUMF Resp. 50, 98 (citing JEF Decl. Ex. 79).

On October 19, 2009, U.S. Paper and certain other defendants filed a reply (Dkt. No. 715) in support of their earlier summary judgment motion (Dkt. No. 551). The reply explicitly discussed the copy of the Heinritz letter identified as Trial Exhibit 2208, and it was submitted as an exhibit in support thereof. Dkt. No. 715. at 7 n.2; Dkt. No. 716 ¶ 2 (noting the Heinritz letter was "covered by the authenticity stipulation"); Dkt No. 716-2 (Bogart Decl. Attach. 2).

Library ("LTDL"), which is maintained by the University of California, San Francisco.[7]  Starting

in 1960, WT was at least partially owned by BAT, and, as a result, BAT had copies of various

WT records, produced them pursuant to the Master Settlement Agreement, and they are now

maintained in the LTDL.  Defendants searched this database, discovered hundreds of relevant

documents, and produced them to API and NCR in 2009 with a GPFOX prefix.  Defendants

submitted many of these documents with their 2009 summary judgment motions, and the Court

relied on several of them in its December 2009 Order.  *See, e.g.*, Dkt. No. 795, at 9 ("Many of

the documents involve a company called Wiggins Teape, which was NCR's exclusive licensee

for CCP production in Europe…. A letter from G. Mawdsley of Wiggins Teape to Dr. C. W.

Ayers of British-American Tobacco (a part-owner of Wiggins Teape) confirms a telephone

conversation between the two….").

API selectively challenges the authenticity of 36 of these documents.  These documents

are clearly authentic for three reasons: (1) they qualify as ancient documents under FRE

901(b)(8); (2) they have distinctive characteristics—marginalia, letterheads, and prior bates

---

[7]     As set forth on the LTDL website: "In 1998, a Master Settlement Agreement (MSA) was signed by the Attorneys General of 46 states and the nation's five major tobacco companies: Philip Morris, R.J. Reynolds, Lorillard, Brown & Williamson, and the American Tobacco Company, and their two industry associations – the Tobacco Institute and the Council for Tobacco Research…. The multi-national tobacco company, British American Tobacco (BAT), was not required to create a document website, but they were instructed to deposit internal documents into a physical depository in Guildford, England, where the public could view the materials.  In 2002, the Flight Attendants Medical Research Institute gave the UCSF Library a grant to obtain copies of all documents in the Guildford Depository and create a publically available digital library.  The documents in the resulting resource, the British American Tobacco Document Archive, were added to LTDL in 2008."    UCSF LTDL, *LTDL History*, http://legacy.library.ucsf.edu/about/about_history.jsp (last visited May 14, 2012).  All of these historic business records are maintained on a fully searchable on-line database.  UCSF LTDL, *About the Data*, http://legacy.library.ucsf.edu/about/about_data.jsp (last visited May 14, 2012) ("In 2004, the Library conducted a large OCR project which rendered approximately 98% of the LTDL documents full-text searchable and led to the revision of the LTDL website into a more robust document research tool.").

stamping—that, taken together, make them authentic under FRE 901(b)(4); and (3) by failing to object in 2009, Plaintiffs have waived their right to object to some of these documents.

### 4. The WT "Aroclor Mass Balance" Meeting Minutes Are Authentic

API challenges the authenticity of Exhibit 3067, which is the report of a February 19, 1970 meeting of NCR, WT, and Monsanto to "exchange views on the PCB problem at a top management level," during which WT presented an Aroclor mass balance chart that highlighted that an estimated seventy tons of Aroclor had been disposed of in UK rivers in 1969 from the recycling of NCR broke. This document was produced by Monsanto in 2009 in response to a third-party subpoena. In 2009, GP sent an affidavit to all parties confirming the authenticity of this and other records from Mrs. Deborah Belleau, the custodian of record at Monsanto, and Defendants provided the Court with a copy of this affidavit on the first day of trial. Ex. 4. Contrary to API's assertions, Mem. at 9, Ms. Belleau does not need to have personal knowledge of the substance of these documents to attest to their authenticity. *Thanongsinh*, 462 F.3d at 777.

This document is authentic because: (1) it qualifies as an ancient record under FRE 901(b)(8); (2) it has distinctive characteristics—marginalia, underlining, and prior bates stamping—that, taken together, make it authentic under FRE 901(b)(4); and (3) API waived its right to object it by failing to object in 2009, when Defendants submitted the document in connection with their summary judgment motion, Dkt. No. 570, at 14-15 (*see also* NCR Opposition, Dkt. No. 658, at 24-25), and the Court relied upon it in its December 2009 Decision. Dkt. No. 795, at 16-17.

### 5. The "Hoover Report" is Authentic

The Hoover Report is an October 13, 1972 report written by NCR's Troy Hoover, entitled, "The Status of Polychlorinated Biphenyl Use at NCR." Exs. 2001 and 2949. This document is authentic as an ancient record under FRE 901(b)(8). In 2009, API stipulated to the

11

fact that it had produced the Hoover Report from its own NCR files that API acquired in 1978 as part of the asset purchase of the Appleton Papers Division from NCR, that API had maintained custody and control over those files from 1978 until the time that the files were produced in this matter, and that the Hoover Report was located in a place where, if authentic, it would have been maintained. *See* Dkt. No. 703 (Defendant Menasha's brief in support of its motion to compel); Dkt. No. 746-1 (stipulation). The Court approved this stipulation by Margin Order on December 3, 2009. It is not fatal that Mr. Hoover stated in a deposition in another case (Mr. Hoover refused to appear for a deposition in this case) that he did not recall writing the document—the deposition took place 36 years after the document was written, memories fade, and it is entirely likely that Mr. Hoover simply could have forgotten writing it. On the other hand, the alternative that API suggests—that someone else wrote the report, put Mr. Hoover's name on it, and snuck it into API's own historical records—is not believable.

### 6. Documents Related to the 1965 "Ruabon Meeting" Are Authentic

API objects to the authenticity of a March 4**,** 1965 letter written by WT's John Gough, which describes NCR's participation in a March 3 meeting with Monsanto and WT at Monsanto's Ruabon, UK facility during which NCR's Martin Kelly was present for a discussion of WT's broke recycling efforts, and offered advice on how to sample and remove PCBs in recycled broke. *See* Tr. Ex. 2218. API also challenges the authenticity of a series of "screen shots" of the Arjo Wiggins indexing database that relate to this letter. *See* Tr. Ex. 2729. These Butler's Court documents come from the microfiche files that were produced by Appleton Coated LLC in July 2011 pursuant to this Court's Order in *Georgia-Pacific Consumer Products LP v. Appleton Coated LLC*, No. 1:11-mc-00032-WCG (E.D. Wis.). GP has presented these documents to the Court numerous times, including in its submission for the August 1, 2011 Status Conference, Dkt. Nos. 1150-1151 (describing the discovery of the Ruabon letter, and the

12

creation of the "screen shots" from the indexing database), and in the briefing related to GP's Motion for Sanctions. Dkt. No. 1169 (describing the discovery of the Ruabon letter, and its importance to the issue of NCR/API's arranger liability). API has never objected to the authenticity of these documents before.

The Ruabon letter is authentic because (1) it qualifies as an ancient record under FRE 901(b)(8); and (2) it has distinctive marginalia, underlining, and prior bates stamping that, taken together, make it authentic under FRE 901(b)(4). Moreover, John Gough reviewed and authenticated this document during his 2011 deposition. *See* Tr. Ex. 3120, J. Gough Dep. (10/20/11) 55:5-57:14, 58:11-59:7, 59:15-66:21.

The screen shots are admissible under FRE 901(a) because they are images of an entry from a database of which both API and NCR have a copy, they are helpful to this Court in reviewing the largely illegible Ruabon meeting minutes (all other copies of this letter were destroyed), and the non-suspicious circumstances regarding the creation of these screen shots were previously described to the Court and all the parties. *See* Dkt. Nos. 1150-1151. Furthermore, the Court can and should find that these documents are authentic and admissible as a discovery sanction against API based on its repeated failure to properly produce them in 2009. *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997); *see also* Dkt. No. 1169.

**B.      The Documents To Which Plaintiffs Object Are Not Hearsay, and Also Qualify For Exceptions to Hearsay**

API and NCR's hearsay objections should be denied for a simple reason that this Court identified on the first day of trial—Defendants do not offer these documents for the truth of the matter asserted, but rather as proof of NCR and ACPC's state of mind or knowledge. Trial Tr. 25:6-14. Statements contained within documents are considered hearsay only when they are

13

offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c)(2); *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 468 (7th Cir. 2008); *United States v. Demopoulos*, 506 F.2d 1171, 1175-76 (7th Cir. 1974). As the Advisory Committee Notes to FRE 803 explain, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."

As detailed in Defendants' post-trial brief, Dkt. No. 1382, API and NCR are liable as CERCLA arrangers based on their *knowledge* and *intent* with respect to the creation and disposal of PCB-containing broke waste. Among other evidence, Defendants submitted the ancient business records of ACPC, NCR and WT in order to demonstrate ACPC's and NCR's knowledge and intent. Defendants did not offer these documents for the truth of the matter asserted because proving the factual accuracy of statements in these documents is not necessary to satisfy this Court's arranger inquiry. For instance:

- Exhibit 2174 is WT's notes of a July 1967 meeting with ACPC in which WT reports that ACPC was having trouble with its base paper and that "this was believed to be due to the use of too much broke in the furnish." Defendants do not offer this exhibit as evidence of the actual percentage of NCR broke in ACPC's furnish, but rather as evidence of ACPC's knowledge and state of mind with respect to broke recycling issues based on the fact that ACPC made such a statement.

- Exhibit 2202 is WT's summary of an April 1965 meeting with NCR, including a section on "Re-use of NCR Emulsion Broke," in which WT reported, "Dayton [NCR] confirmed that Mead have a de-inking process for recovery of NCR broke and suggested that [WT] obtain[] details of this direct from them…. However, [NCR] thought that the best method of approach was to break the capsules chemically and then adsorb oil/dyestuff mixture onto attapulgus clay which could then be removed." *Id.* at BCFOX00047488. Defendants do not submit this document as evidence that Mead had a de-inking plant or that the best method of recycling was, in fact, absorption onto attapulgus clay, but rather as evidence of NCR's knowledge and state of mind with respect to broke recycling issues based on the fact that NCR made such a statement.

- Exhibit 3067 is WT's minutes of a February 19, 1970 meeting of NCR, WT, and Monsanto to "exchange views on the PCB problem at a top management level," during which WT presented an Aroclor mass balance chart that

14

highlighted that an estimated seventy tons of Aroclor had been disposed of in UK rivers in 1969 from the recycling of NCR broke. Defendants do not offer the minutes from this meeting as evidence that seventy tons of PCBs were actually sent to UK rivers in 1969, but rather as evidence of NCR's knowledge and state of mind as to the potential release of PCBs to the river from the recycling of broke based on the fact that NCR was present when WT made such a statement. It is also relevant to ACPC's knowledge because, given the frequent and comprehensive technical exchanges among the three companies, it would be reasonable to infer that ACPC was made aware of this information.

API and NCR's hearsay objections should be denied because none of the 32 documents to which they object is offered for the truth of the matter asserted.

Even assuming that Defendants were offering the documents for the truth of the matter asserted, which they are not, these documents qualify for an exception to the hearsay rule because they are "statement[s] in a document that is at least 20 years old and whose authenticity is established." Fed. R. Evid. 803(16). Others are party admissions under FRE 801(d)(2). To the extent that there are double hearsay statements within the documents themselves, these statements qualify under the residual exception because they pertain to a material fact, have probative value, "circumstantial guarantees of trustworthiness," and admission of the evidence best serves the general purposes of the rules and the interests of justice. Fed. R. Evid. 807; *United States v. Ochoa*, 229 F.3d 631, 638-39 (7th Cir. 2000) (citations omitted).

### C. WT's Ancient Business Records Are Highly Relevant to the Issue of Plaintiffs' Arranger Liability

API and NCR object to 55 of Defendants' exhibits on the basis of relevance, and claim that these documents "in no way relate to ACPC or NCR's knowledge about Phase 2 broke recycling issues." Mem. at 16. The Court should deny these objections.

Relevancy is a low hurdle, which is cleared by evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," where "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also United States v. Laughlin*,

772 F.2d 1382, 1392 (7th Cir. 1985) ("[A] trial court possesses broad discretion in determining the relevance of proffered evidence, and its decision will not be disturbed on appeal absent a clear showing that the court abused its discretion.").  Courts consider evidence relevant where it allows a fact-finder to draw appropriate factual inferences.  *Id.* at 1392 (district court did not abuse its discretion in finding relevant photographs that "tend[ed] to prove" two facts were connected); *United States v. Martel*, 792 F.2d 630, 635 (7th Cir. 1986) ("[T]he trial judge acted with sound discretion when he determined that the letter was relevant because the letter on its face created legitimate inferences which made the defendants' intent to defraud a more or less likely proposition.").  In the context of CERCLA arranger cases, courts around the country have concluded that elements of arranger liability may be inferred from relevant circumstantial evidence.  *See* Defendants' Post-Trial Brief, Dkt. No. 1382, at 8 n.6 (citing numerous cases).

Internal WT correspondence and minutes of meetings that WT had with ACPC, NCR, and others are highly probative of what NCR and ACPC knew about broke recycling.  In many of these documents, WT personnel—who had no reason to lie—recorded their recollections of meetings with NCR and ACPC personnel during which broke recycling was discussed.  Other documents record WT's broke recycling investigations, of which it is reasonable for the Court to infer that NCR and ACPC were aware, particularly given the on-going and detailed technical exchanges between the small handful of companies that were involved in producing and disposing of NCR broke.  *See* Defendants' Post-Trial Brief, Dkt. No. 1382, PFF ¶¶55, 79, 129, 140, 142 (listing some of these many meetings and communications).  Moreover, these documents are often the best source of information on a particular issue because, as the Court has previously explained, the corresponding "records from NCR, Appleton Papers and Appleton Coated Paper Company have evidently not survived."  Dkt. No. 795, at 9 n.14.

For example, Exhibit 2196 contains various reports of WT's personnel visiting ACPC and NCR in 1958, which document NCR's Robert Sandberg, Howard Lauer, and other executives' direct involvement in discussions about NCR Paper technology and the coating techniques used at ACPC and elsewhere. Likewise, Exhibit 2683 details the November 5, 1964 meeting between WT and BAT, in which WT's John Gough stated, "In the production of NCR paper there is a very large amount of waste which is repulped and used to make other types of papers. Arochlor, a chlorinated diphenyl, is toxic and so it is necessary to know how much is removed during the repulping process especially if the paper is to be used for food wrapping." Given the frequency and level of communication between NCR, ACPC, WT, it is reasonable to assume that at least some of this information was shared with NCR and/or ACPC.

The Court should deny Plaintiffs' relevance objections.

### D. At a Minimum, 50 of the 109 Documents to which API Objects Should Be Admitted Against NCR Because NCR Does Not Object to Them

NCR only joins API's objections on the Heinritz letter (Exs. 2159 and 2208), the Hoover Report (Exs. 2001 and 2949), and the relevance of WT's internal records (55 exhibits that are highlighted in red in Dkt. No. 1381-1). There are, therefore, 50 documents to which only API objects, including many of the Butler's Court records, many of the BAT documents, the Ruabon meeting minutes, and the Mass Balance meeting minutes. In the event that this Court finds that any of the documents to which only API objects are inadmissible (which it should not), these documents should still be admitted as to NCR. Defendants maintain separate arranger liability claims against NCR and API, and NCR was required by the parties' agreement to itself voice all of its evidentiary objections; therefore, NCR should not be allowed to ride API's coat tails in the event that this Court finds that any of these documents are inadmissible.

## III. CONCLUSION

Defendants respectfully request that this Court deny all of Plaintiffs' objections to certain of Defendants' trial exhibits, and admit Defendants' exhibits into evidence.

Dated: May 23, 2012                                      Respectfully Submitted,

| | |
|---|---|
| /s/ Mary Rose Alexander<br>Mary Rose Alexander<br>Margrethe K. Kearney<br>LATHAM & WATKINS LLP<br>233 S. Wacker Dr., Ste. 5800<br>Chicago, IL 60606<br>Telephone: (312) 872-7700<br>Facsimile: (312) 993-9767<br>Mary.Rose.Alexander@lw.com<br>Margrethe.Kearney@lw.com<br><br>Karl S. Lytz<br>Patrick J. Ferguson<br>LATHAM & WATKINS LLP<br>505 Montgomery St., Ste. 2000<br>San Francisco, CA 94111-6538<br>Telephone: (415) 391-0600<br>Fax: (415) 395-8095<br>Karl.Lytz@lw.com<br>Patrick.Ferguson@lw.com<br><br>**Attorneys for Defendants Georgia-Pacific Consumer Products LP (f/k/a Fort James Operating Company), Fort James Corporation, and Georgia-Pacific LLC** | /s/ Philip C. Hunsucker<br>Philip C. Hunsucker<br>David A. Rabbino<br>Hunsucker Goodstein & Nelson PC<br>3717 Mt. Diablo Blvd., Suite 200<br>Lafayette, CA 94549<br>Telephone: 925-284-0840<br>Email: phunsucker@hgnlaw.com<br>Email: drabbino@hgnlaw.com<br><br>**Attorneys for Defendant Menasha Corporation** |
| /s/ Nancy Peterson<br>Nancy K. Peterson (Wis. Bar No. 1000197)<br>Peter C. Karegeannes (Wis. Bar No. 1015025)<br>William H. Harbeck (Wis. Bar No. 1007004)<br>QUARLES & BRADY LLP<br>411 E. Wisconsin Avenue<br>Milwaukee, WI 53202<br>Telephone: 414-277-5000<br>nancy.peterson@quarles.com<br><br>**Attorneys for Defendant WTM I Company** | /s/ David G. Mandelbaum<br>David G. Mandelbaum<br>Frank A. Citera<br>Marc E. Davies<br>Caleb J. Holmes<br>Adam B. Silverman<br>GREENBERG TRAURIG, LLP<br>Two Commerce Square, Suite 2700<br>2001 Market Street<br>Philadelphia, PA 19103<br>215.988.7800<br>mandelbaumd@gtlaw.com |

18

| | **Attorneys for Defendant P.H. Glatfelter Company** |
|---|---|
| /s/ Susan E. Lovern<br>Susan E. Lovern (No. 1025632)<br>Michael P. Carlton (No. 1016037)<br>Thomas Armstrong (No. 1016529)<br>Kelly J. Noyes (No. 1064809)<br>von Briesen & Roper, s.c.<br>411 East Wisconsin Avenue, Suite 700<br>Milwaukee, WI 53202<br>Telephone: (414) 276-1122<br>Fax: (414) 276-6281<br>slovern@vonbriesen.com<br>mcarlton@vonbriesen.com<br>tarmstro@vonbriesen.com<br>knoyes@vonbriesen.com<br><br>**Attorneys for Defendant CBC Coating, Inc.** | /s/ Scott W. Hansen<br>Scott W. Hansen<br>Steven P. Bogart<br>Reinhart Boerner Van Deuren s.c.<br>1000 North Water Street, Suite 1700<br>P.O. Box. 2965<br>Milwaukee, WI 53202<br>Telephone: 414-298-1000<br>Facsimile: 414-298-8097<br>sbogart@reinhartlaw.com<br>shansen@reinhartlaw.com<br><br>Thomas R. Gottshall<br>Stephen F. McKinney<br>Haynsworth Sinkler Boyd PA<br>1201 Main Street, Suite 2200<br>P.O. Box 11889<br>Columbia, SC 29211-1889<br>Telephone: 803-779-3080<br>Facsimile: 803-765-1243<br>tgottshall@hsblawfirm.com<br>smckinney@hsblawfirm.com<br><br>**Attorneys for Defendant U.S. Paper Mills Corp.** |
| /s/ William J. Mulligan<br>William J. Mulligan (WI Bar No. 1008465)<br>Kevin J. Lyons (WI Bar No. 1013826)<br>Elizabeth K. Miles (WI Bar No. 1064284)<br>Davis & Kuelthau, s.c.<br>111 E. Kilbourn Avenue, Suite 1400<br>Milwaukee, WI 53202<br>Telephone: (414) 276-0200<br>Facsimile: (414) 276-9369<br>Email: wmulligan@dkattorneys.com<br>klyons@dkattorneys.com<br>emiles@dkattorneys.com<br><br>**Attorneys for Defendant Neenah Menasha Sewerage Commission** | |