IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. and
NCR CORPORATION,

        Plaintiffs,

    v.                                               No. 08-CV-16 WCG

GEORGE A. WHITING PAPER
COMPANY, *et al*.,

        Defendants.

## PLAINTIFF APPLETON PAPERS INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS OBJECTIONS TO CERTAIN OF DEFENDANTS' TRIAL EXHIBITS

Plaintiff Appleton Papers Inc. ("API"), by its undersigned counsel, respectfully submits this Reply Memorandum in Support of its Objections to Certain of Defendants' Trial Exhibits.

## INTRODUCTION

Of the several hundred exhibits Defendants offered into evidence at trial, API raised objections to only 109 exhibits.[1]  Defendants' proposed findings of fact rely on only 25 of the 109 exhibits.[2]  While API maintains its objections to all of the disputed exhibits, this Reply Memorandum focuses on the trial exhibits that Defendants actually cite.

## ARGUMENT

## I.     DEFENDANTS' PRELIMINARY ARGUMENTS SHOULD BE REJECTED.

Defendants raise two preliminary arguments that can be readily dismissed.

---

[1]  NCR joined API's objections to certain exhibits.  Dkt. 1381-1 lists the exhibits to which API has interposed objections and also identifies the exhibits to which NCR has joined the objection.

[2]  Defendants rely upon the following disputed exhibits:  2150, 2151, 2152, 2153, 2154, 2157, 2159, 2164, 2170, 2171, 2175, 2176, 2178, 2185, 2188, 2190, 2195, 2196, 2201, 2202, 2208, 2211, 2215, 2218, and 3067.

*First*, contrary to Defendants' claims (Dkt. 1393 at 5 of 23 n.2), API's opening brief in support of its objections to certain of Defendants' trial exhibits was timely. The record demonstrates that the Court anticipated further briefing on API's objections (Trial Tr. at 1044), and API filed the requested brief on the date set for the filing of initial post-trial briefs. API's brief was strictly limited to its evidentiary objections and did not delve into the merits of the actual claims and defenses at issue. Therefore, API's brief was not an evasion of the page limit set for initial post-trial briefs.

*Second*, API continues to have standing to pursue its objections, despite this Court's April 10, 2012 ruling in the enforcement action that API is not liable under CERCLA. Defendants' assertion that the April 10 decision renders API's objections moot appears to be an acknowledgement that they cannot prove an essential element of the CERCLA counterclaims they have asserted against API. To date, however, Defendants have not asked the Court to dismiss their claims against API. Therefore, API's standing to maintain its objections cannot be seriously questioned.

## II.    THE AUTHENTICITY OF THE EXHIBITS UPON WHICH DEFENDANTS RELY HAS NOT BEEN ESTABLISHED.

API has an authenticity objection to all 25 exhibits upon which Defendants rely. Defendants' brief largely repeats the arguments made at trial as to why they believe the authenticity of these exhibits has been established. API's opening brief addressed these arguments and, with certain exceptions, Defendants' brief raises nothing new that warrants a reply. However, three issues warrant brief comment.

### A.    Defendants' Claim That API Waived Its Authenticity Objections Should Be Rejected.

Defendants continue to assert that API waived its objections to "some" of the disputed exhibits by (according to Defendants) failing to object to the exhibits when

offered in support of their summary judgment motions in 2009. Dkt. 1393 at 9 of 23. This argument should be rejected.

*First*, while Defendants acknowledge that their waiver argument applies only to "some" of the disputed exhibits, with a few exceptions,[3] they have not identified the exhibits subject to this waiver argument. Defendants provided a spreadsheet that exhaustively lists each reason for claiming each disputed exhibit is admissible (Dkt. 1393-1), but the spreadsheet makes no reference to this "waiver" argument. Nor have Defendants identified (aside from the noted exceptions) the specific exhibits subject to the claim of waiver in any of their other post-trial briefs. Therefore, Defendants have failed to provide essential information to support their argument.

*Second,* in any event, there is no substance to Defendants' waiver argument. Defendants concede that at least since December 1, 2010 (the effective date of the most recent changes to Rule 56) the law is clear that "failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial." Dkt. 1382 at 23-24 n.13 of 86, quoting Fed. R. Civ. P. 56 Advisory Committee Notes on Rules – 2010 Amendments; *see also* Dkt. 1393 at 10 of 23. Defendants are thus left to contend that the 2010 Amendments *changed* existing law, and that "general waiver principles were in place in 2009, and NCR/API were required to make any available evidentiary objections at that time." *Id.* at 9-10 of 23. Neither assertion is correct.

The pertinent rule changes in 2010 did not change existing law. Instead, the changes in Rule 56(c) were designed to "establish[] a common procedure for several aspects of summary-judgment motions *synthesized from similar elements developed in the*

---

[3] Defendants identify two exhibits – Exhibits 2159 and 3067 – as allegedly subject to their waiver argument. Dkt. 1393 at 13 n.6, 15 of 23.

*cases* or found in many local rules." Fed. R. Civ. P. 56 Advisory Committee Notes on Rules – 2010 Amendments (emphasis added). This is confirmed by Wright & Miller:

> Rule 56 was substantially revised in 2010 to set out and improve the procedures for making, opposing, and deciding summary-judgment motions. As discussed in later sections, in many instances **the new procedures that are now set out in the rule actually reflect procedures already used by the courts**. Thus the amended rule seeks to make more consistent the procedures used on summary-judgment motions across the districts and to close the gap between the rule text and actual practice.

Wright & Miller, 10A *Federal Practice and Procedure: Civil 3d* § 2711 (Supp. 2012) (emphasis added). In short, the pertinent 2010 Amendments served to codify existing practice. One such practice is reflected in *Yeager v. Bowlin*, No. CIV 2:08-102, 2010 WL 95242, *2 n.3 (E.D. Cal. Jan. 6, 2010), where the court observed that "[t]o this court's knowledge, failure to object evidence presented in connection with a summary judgment motion does not waive any objection to that evidence at trial."[4]

Contrary to their claims, Defendants have not cited any pre-2010 decision holding that a failure to object to the admissibility of an exhibit offered at the summary judgment stage forfeits the right to object to its admissibility at trial. Instead, all of the decisions they cite involve appeals from decisions granting summary judgment (or a motion seeking reconsideration of such a decision) where the non-moving party sought reversal (or reconsideration) because the trial court had relied upon allegedly inadmissible evidence to which the party had not objected. That situation is clearly distinguishable from the situation here, where a party challenges the admissibility of a document *at a subsequent trial*. Defendants have not cited *any* decision addressing this situation that contradicts the holding in *Yeager*.

---

[4] Defendants' assertion that *Yeager* "was decided *after* the federal rule change" (Dkt. 1393 at 10 of 23) (emphasis in original) is simply wrong. *Yeager* was decided January 6, 2010, eleven months *before* the December 1 effective date of the 2010 Amendment.

**B.**     **Defendants Have Not Established The Authenticity Of The So-Called Heinritz Letter.**

Although Defendants rely upon the so-called Heinritz letter (Exhibits 2159 and 2208), they fail to establish its authenticity. Defendants brush aside serious authenticity concerns related to this letter (the author's having sworn that he did not write it chief among them), wrongly rely upon the testimony or sworn statements of individuals lacking personal knowledge of the creation and maintenance of the record in an attempt to prove its authenticity,[5] and argue a flawed understanding of waiver. Dkt. 1393 at 7-9.

*First*, Defendants claim that the letter bears distinctive patterns and characteristics that indicate it is likely authentic under Rule 901(b)(4). *Id.* at 8. Defendants can find no refuge in Rule 901(b)(4), however, because the markings to which Defendants point, when "taken together with all the circumstances," cannot establish authenticity. FRE 901(b)(4). As API noted in its initial Memorandum, Dkt. 1381 at 7, the most significant factor weighing against authenticity is that the alleged author himself has sworn that he did not write the letter. Heinritz 2010 Dep. 76:11-77:1. Among the other reasons to doubt the letter's authenticity (which are sufficient individually to cast doubt on authenticity) are: it (1) is unsigned; (2) is not on ACPC letterhead; (3) is a purported reproduction and not an original; (4) uses the British spelling of the word "favourably;" and (5) contains other language indicating an inaccurate transcription. Thus, considering all circumstances, the letter cannot be admissible as an authentic record.

*Second*, Defendants rely on the testimony of John Gough, a former Butler's Court employee, but who was *not* a custodian of the Butler's Court library (where the letter was

---

[5] Defendants' attempt to establish the authenticity of the so-called "Hoover Report" (Exhibits 2001 and 2949) suffers from the same problem. However, while Defendants discuss the document in their brief opposing API's objections to trial exhibits, they do not cite to or in any way rely upon the document in their post-trial briefs or their proposed findings of fact.

found), Ex. 3120 88:20-89:2, to authenticate the letter under FRE 901(b)(8). Dkt. 1393 at 7-8. Mr. Gough does not have personal knowledge of how the record was created or maintained and thus cannot authenticate the letter. Dkt. 1381 at 6-7 n.11. Defendants also rely on the declaration of Stacey Taylor to authenticate the letter under FRE 902(12). Ms. Taylor has no knowledge of how the record was created as she was not employed by the Butler's Court facility until 1992—nearly 30 years after the record allegedly was created. Thus, Defendants cannot authenticate the letter because neither Mr. Gough nor Ms. Taylor have sufficient personal knowledge. *See* Dkt. 1381 at 6-7 n.11. Additionally, Mr. Gough has been paid approximately $60,000 (£40,000) by Defendant GP for his cooperation with GP and has admitted to overstatements in his sworn affidavit, thereby casting serious doubt on his credibility. Ex. 3120 138:16-139:19.

*Third*, Defendants' arguments on waiver are wrong. First, API was not a party to that stipulation. Second, as shown above, a party does not waive the right to challenge admissibility of evidence at trial by not challenging admissibility during a summary judgment proceeding. *Supra* Part II.A. Third, the 2009 stipulation cited by Defendants does not preclude NCR from challenging authenticity now. NCR lodged its objections after, but not before, the the alleged author, Mr. Heinritz, swore that he did not write the letter. Upon learning subsequently discovered information, NCR challenged the authenticity of the record and thus did not waive its right to object.

### C. Defendants Have Not Established The Authenticity Of Exhibit 3067.

Exhibit 3067 purports to be the minutes, prepared by Monsanto, of a meeting attended by representatives of Monsanto, NCR and Wiggins Teape. In its opening brief, API demonstrated that the affidavit of Deborah Belleau, which Defendants offer to establish the authenticity of the document, was insufficient because the affiant had no basis

for claiming personal knowledge as to how the document was maintained – an essential requirement for establishing the document's authenticity.

In their opposition brief, Defendants do not address this fatal problem. Instead, they attempt to side-step it by mischaracterizing API's argument and asserting that "Ms. Belleau does not need to have personal knowledge of the substance of these documents to attest to their authenticity." Dkt. 1393 at 15 of 23. API is *not* contending that the affiant needs personal knowledge of the substance of the document, but she must have personal knowledge of the facts showing how the document was maintained. Because the affiant lacks this knowledge, the authenticity of the document has not been established.

## III. DEFENDANTS HAVE FAILED TO ESTABLISH THE RELEVANCE OF CERTAIN EXHIBITS.

Underscoring API's argument that many of the 109 contested documents are not relevant, Defendants do not even cite to 84 of them in support of their proposed findings of fact. Defendants do cite to five of the 55 documents to which API has lodged specific relevance objections (in addition to other objections). As shown below, each of those five exhibits is irrelevant and should be excluded from evidence.

Exhibits 2170, 2171, and 2175 are each cited to support Defendants' PFOF 157 ("Outside of the United States, NCR licensed the production of NCR Paper, and entered into written license agreements with WT in Europe and Jujo Paper Company and Mitsubishi in Japan") and PFOF 158 ("NCR's licensees obtained substantial rights from NCR to patents, knowhow and other valuable considerations for the term of the license agreement"). Dkt. 1382 at 72 of 86. The cited exhibits are not relevant to this assertion:

- Exhibit 2170 is a March 30, 1966 internal Wiggins Teape Butler's Court report "Misc Report No. 62/66," written by H.F. Rance, titled "NCR Agreement 1966/76." The report is marked "Confidential." This document contains Mr. Rance's internal and confidential impressions of a recently signed agreement between Wiggins Teape and NCR.

Mr. Rance's impressions of the 1966 Wiggins Teape/NCR agreement are not relevant to any fact in dispute in this litigation.

•  Exhibit 2171 is a May 26, 1966 internal Wiggins Teape Butler's Court report "Misc Report No. 197/66," written by H.F. Rance and K.G.E. Spink, titled "Summary Report of Visit to Japan 12th April – 3rd May, 1966." The report is marked "Strictly Confidential." Similarly, Exhibit 2175 is an internal Wiggins Teape Butler's Court report "Misc R. 248/67" titled "K.G.E. Spink – Visit to Japan 21st October – 3rd November, 1967." These internal trip reports investigating the production of carbonless copy paper in Japan are irrelevant. Whether or not NCR had license agreements for the manufacture of NCR Paper in Japan has no bearing on whether NCR or ACPC arranged for the disposal of a hazardous substance by the sale of its broke.

Exhibits 2178 and 2196 are both cited to support Defendants' PFOF 55 ("ACPC had an ongoing technical exchange with WT throughout the 1960s, which included communications and visits to discuss various topics, including ways to recycle NCR broke"). Dkt. 1382 at 64 of 86. The cited exhibits are not relevant to this assertion:

•  Exhibit 2178 is a series of internal Wiggins Teape Group Research Organization reports from 1957 regarding Wiggins Teape's NCR Development Meetings written by I.F. Hendry and distributed internally to a defined distribution list. These reports constitute the impressions of a Wiggins Teape employee regarding the development and production of NCR paper in Europe. These reports do not mention ways to recycle NCR broke and are not relevant to any fact in dispute in this litigation. Exhibit 2178 does not support a finding that "ACPC had an ongoing technical exchange with WT throughout the 1960s" because the compiled reports are from 1957 and there is no indication that these reports were provided to ACPC. On the contrary, the evidence shows that internal Wiggins Teape technical documents that were marked "Confidential" or that mentioned NCR Paper were tightly controlled. TX 3120 (Deposition of John Gough) at 89:3-91:22.

•  Exhibit 2196 is a July 28, 1958 internal Wiggins Teape Butler's Court report, written by H.F. Rance, and distributed internally. This report is marked "Confidential." This document contains Mr. Rance's technical notes on NCR paper. This document does not mention ways to recycle NCR broke and is not relevant to any fact in dispute in this litigation. Exhibit 2196 does not support a finding that "ACPC had an ongoing technical exchange with WT throughout the 1960s" because the subject report is from 1958 and there is no indication that it was provided to ACPC. As mentioned above, internal Wiggins Teape technical documents that were marked "Confidential," which meant that they were not shared outside the company. TX 3120 89:3-91:22.

## IV.    DEFENDANTS RELY UPON EXHIBITS THAT CONTAIN INADMISSIBLE HEARSAY.

API's opening brief demonstrated that Defendants seek the admission of many documents that contain inadmissible hearsay.  API further demonstrated that, contrary to Defendants' claims at trial, multiple levels of hearsay contained within an otherwise authenticated ancient document are not per se admissible and that, under controlling Seventh Circuit authority, a separate hearsay exception is needed for each level of hearsay within such a document.  *United States v. Hajda*, 135 F.3d 439, 444 (7th Cir. 1998) ("If the document contains more than one level of hearsay, an appropriate exception must be found for each level.").  *See* Dkt. 1381 at 11-12.

Defendants do not challenge API's argument in their opposition brief.  Nor do they attempt to show that a separate hearsay exception exists for each level of hearsay within the exhibits whose admission they seek to admit.  Instead, Defendants attempt to skirt this fatal problem by now contending that the statements upon which they rely are not being offered for the truth of the matter asserted, and that, therefore, the statements do not constitute hearsay.  Dkt. 1393 at 7-19 of 23.[6]

Defendants' assertion is untrue.  In fact, in virtually every case, Defendants are offering disputed exhibits to prove the truth of matters asserted in the documents.  For example, Defendants rely upon Exhibits 2178, 2185, 2188, 2190, 2195 and 2201 — all of which are internal Wiggins Teape documents reporting on meetings with representatives of ACPC — to support an assertion that Wiggins Teape and ACPC discussed "ways to recycle NCR broke."   Dkt. 1382 at 64 of 86, PFOF 55.  To the extent these documents

---

[6] Defendants rely upon 11 exhibits to which API has asserted hearsay objections:  Exhibits 2164, 2176, 2185, 2188, 2190, 2195, 2201, 2215, 2218 and 3067.

indicate that the recycling of NCR broke was discussed, they clearly are being offered for the truth of the matter asserted in the exhibit.

Defendants also use disputed internal Wiggins Teape documents that purport to summarize things allegedly said by a representative of NCR or ACPC for the purpose of attempting to show the knowledge possessed by, or the "state of mind" of, ACPC or NCR. In other cases, Defendants use disputed internal Wiggins Teape documents that purport to summarize something said by a Wiggins Teape employee to try to establish the knowledge possessed by, or the state of mind of, Wiggins Teape. Defendants then ask the Court to impute this knowledge or state of mind to ACPC or NCR.

In each case, it is true that Defendants are not offering the document for the truth of the speaker's underlying statement, but they are offering the document as a truthful rendition of what the speaker said. For example, Exhibit 2202 purports to be a confidential internal Wiggins Teape report summarizing a meeting attended by representatives of Wiggins Teape and NCR. The document reports that "[NCR] confirmed that Mead have a de-inking process for recovery of NCR broke . . ." Ex. 2202 at BCFOX00047488. Defendants may not be offering the document to prove that Mead in fact had a de-inking process for the recovery of NCR broke, but they are offering the document as truthful evidence that NCR *told* Wiggins Teape that Mead had such a de-inking process. Because Defendants offer the out-of-court statement of the report's author as a truthful account of what an NCR representative purportedly *said* to representatives of Wiggins Teape, it clearly constitutes hearsay.

Defendants also use Exhibit 2202 to support their proposed finding of fact that "[i]n 1965, WT urged NCR to switch the solvents used in NCR Paper emulsion from Aroclor to HB-40 to make it easier for WT to effectively repulp and recycle NCR Paper broke." Dkt.

1382 at 70 of 86, PFOF 139. Again, Defendants are relying upon the out-of-court statements of the report's author as providing truthful evidence of what Wiggins Teape told NCR. This is classic hearsay.

Exhibit 2176 is another example. Defendants cite this exhibit to support their proposed finding of fact that "ACPC knew that NCR Paper broke turned blue during recycling because the ink-containing microcapsules ruptured and came into contact with the clay coating." Dkt. 1382 at 63 of 86, PFOF 43. Exhibit 2176 is another internal Wiggins Teape report that summarizes a meeting between representatives of Wiggins Teape and ACPC. The report indicates that "Appleton are considering the use of CB Broke in place of Solka Floc. They believe that the repulping will not give blueing." *Id.* at BCFOX00027914. Defendants are offering the out-of-court statement of the author's report as a truthful account of what representatives of ACPC said at the meeting. That is clearly hearsay.

Another example is Exhibit 2215. Defendants cite this exhibit to support a proposed finding of fact that "NCR's licensees obtained substantial rights from NCR to patents, knowhow and other valuable considerations for the term of the license agreement." Dkt. 1382 at 72 of 86, PFOF 158. Exhibit 2215 purports to be an internal Wiggins Teape document that summarizes what representatives of NCR allegedly said about their licensing practices. Defendants are offering the document as a truthful account of what the NCR representatives allegedly said at the meeting. This, too, is classic hearsay.

These examples demonstrate that, contrary to Defendants' claims, they are attempting to use statements in the disputed exhibits to prove the truth of the matter being asserted. Since Defendants have not shown (and cannot show) that the statements in question fall within an exception to the hearsay rule, the exhibits are inadmissible.

## CONCLUSION

For the foregoing reasons, API respectfully requests that the Court exclude from evidence the exhibits offered by Defendants to which API has objected.

Dated this 11th day of June, 2012.

Respectfully submitted,

APPLETON PAPERS INC.


By: ___/s/ Ronald R. Ragatz_____
One of Its Attorneys

Counsel for Appleton Papers Inc.:

Michael L. Hermes (#1019623)
Heidi D. Melzer (#1076125)
Ericka L. Krumrie (#1066383)
Hermes Law, Ltd.
333 Main Street, Suite 601
Green Bay, WI  54301
(920) 436-9870
Fax:  (920) 436-9871

Ronald R. Ragatz (#1017501)
Dennis P. Birke (#1018345)
Megan A. Senatori (#1037314)
DeWitt Ross & Stevens S.C.
Two East Mifflin Street
Madison, WI 53703
(608) 255-8891
Fax: (608) 252-9243

Gregory A. Krauss
Gregory A. Krauss PLLC
1629 K St. NW
Suite 300
Washington, DC 20006
(202) 355-6430