IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

APPLETON PAPERS INC. and
NCR CORPORATION,

        Plaintiffs,

    v.
                      No. 08-CV-16 WCG

GEORGE A. WHITING PAPER
COMPANY, *et al.*,

        Defendants.

---

## PLAINTIFF APPLETON PAPERS INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' CERCLA COUNTERCLAIMS

Plaintiff Appleton Papers Inc. ("API"), by its undersigned counsel, respectfully submits this Memorandum in support of its Motion for Summary Judgment as to Defendants' CERCLA Counterclaims.

### INTRODUCTION

Defendants have asserted counterclaims for contribution under CERCLA § 113(f), 42 U.S.C. § 9613(f), for response costs they claim to have incurred addressing PCB contamination in the Lower Fox River. To prevail on a § 113(f) contribution claim against API, Defendants must prove, among other things, that API is liable under CERCLA.

Defendants cannot satisfy this most basic element of a § 113(f) contribution claim because this Court conclusively ruled in *United States v. NCR Corp.*, Case No. 10-CV-910 ("Enforcement Action"), that API is not liable under CERCLA. EA Dkt. 349.[1] The Court rendered that decision in response to a summary judgment motion brought by API. The

---

[1] "EA Dkt." refers to docket entries in the Enforcement Action.

same Defendants asserting CERCLA counterclaims in this action joined the United States and the State of Wisconsin (collectively, "Government") in opposing API's motion.

The Defendants had their day in court on the issue of API's CERCLA liability and they lost. Accordingly, API is entitled to summary judgment dismissing Defendants' § 113(f) counterclaims.

## STATEMENT OF UNDISPUTED FACTS

### A.     Defendants' Counterclaims.

In 2008, API and NCR filed this action ("the *Whiting* Action") to recover response costs incurred responding to Government orders compelling remediation of PCB contamination in the Lower Fox River. PFOF ¶ 1.[2] Defendants asserted counterclaims against API and NCR, including claims for contribution under CERCLA § 113(f) for response costs Defendants had incurred and expected to incur in the future in connection with the Lower Fox River. PFOF ¶ 2.

On March 1, 2011, this Court entered a Decision and Order ("March 2011 Decision") that addressed Defendants' motions for summary judgment on their § 113(f) counterclaims. PFOF ¶ 3. The Court denied Defendants' motions as to Operating Unit ("OU") 1 because it concluded that there were disputed material facts regarding whether API and NCR were liable as "arrangers" under CERCLA § 107(a)(3) as a result of the sale of broke. PFOF ¶ 4.

The Court granted summary judgment in favor of Defendants as to costs incurred in OU2-5. PFOF ¶ 5. The Court initially ruled that NCR and API were liable because they

---

[2] API's Proposed Findings of Fact in Support of its Motion for Summary Judgment as to Defendants' CERCLA Counterclaims are being filed with this Memorandum.

had not contested their CERCLA liability: "Plaintiffs' liability under § 107 for the OU2-5 portions of the river is not contested."  PFOF ¶ 6.  API filed a motion seeking reconsideration of this finding on the ground that API's submissions in opposition to Defendants' motion demonstrated that API in fact disputed its liability under CERCLA.  PFOF ¶ 7.  In July 2011, the Court granted API's motion for reconsideration, finding that "Appleton Papers is correct that there was no basis to conclude that it had 'conceded' its liability in this action."  PFOF ¶ 8.

In February 2012, the Court conducted a trial on certain issues concerning Defendants' CERCLA counterclaims, including the issue of "arranger liability", insurance offsets, and certain disputed costs.  PFOF ¶ 9.  The parties' Final Pretrial Report expressly provided that "API's liability under CERCLA will not be addressed at the February 2012 trial."  PFOF ¶ 10.

On July 3, 2012, the Court ruled that Defendants had failed to prove that the sale of broke by Appleton Coated Paper Company ("ACPC") constituted an arrangement for the disposal of a hazardous substance under CERCLA § 107(a)(3).  PFOF ¶ 11.  The Court indicated, however, that at least some Defendants may be entitled to relief under § 113(f) with respect to costs they incurred in OU2-5 under other theories of CERCLA liability.  PFOF ¶ 12.

### B.     The Enforcement Action.

In October 2010, the Government filed the Enforcement Action.  PFOF ¶ 13.  The Government's First Amended Complaint asserts various claims arising under CERCLA, including (in Count V) a request for an injunction pursuant to CERCLA § 106 compelling the Defendants in that action, including API, to perform the Unilateral Administrative

Order (or 106 Order) that the Government issued to API and other parties in November 2007. PFOF ¶ 14.

In March 2011, the Government filed a motion for preliminary injunction seeking to compel API and NCR to perform the Government's remedial action work plan for 2011. PFOF ¶ 15. In July 2011, the Court denied the motion because it concluded that the Government was unlikely to prove that API was liable under CERCLA. PFOF ¶ 16. The Government had asserted that API was liable under CERCLA because it "assumed liability as a successor to ACPC, CPM and NCR" under a certain 1978 Purchase Agreement (pursuant to which API purchased certain assets from NCR) and/or a 1998 Settlement Agreement (in which NCR and API resolved certain disputed claims). PFOF ¶ 17. The Court rejected the Government's theory, finding (1) that the agreements "do not establish successorship because the original liability under CERCLA has remained with the seller," and (2) there was no equitable reason for subjecting API to successor liability because "NCR, the seller of the assets, remains in existence and is undeniably liable to the United States under CERCLA." PFOF ¶ 18.

API then filed a motion seeking summary judgment on the ground that it was not liable under CERCLA. PFOF ¶ 19. The Government and the Defendants in the Enforcement Action who are asserting contribution counterclaims in the *Whiting* Action filed briefs and evidentiary submissions in opposition to API's summary judgment motion. PFOF ¶ 20. In December 2011, the Court denied API's motion after concluding that the 1978 Purchase Agreement and the 1998 Settlement Agreement could be read to render API liable for Fox River liabilities. PFOF ¶ 21.

API filed a motion for reconsideration of the December 2011 decision.  PFOF ¶ 22.

The Government and Defendants filed briefs opposing the motion.  PFOF ¶ 23.  On April

10, 2012, the Court granted API's reconsideration motion.  EA Dkt. 349 ("April 10

Decision").  PFOF ¶ 24.  The Court concluded that "the terms of the 1978 assumption

agreement are not broad enough to encompass the CERCLA liability at issue here."  PFOF

¶ 25.  The Court granted API's summary judgment motion and dismissed all claims against

API in the Enforcement Action.  PFOF ¶ 26.

## ARGUMENT

## I.  API IS ENTITLED TO SUMMARY JUDGMENT AS TO DEFENDANTS' CERCLA § 113(f) COUNTERCLAIMS.

API is entitled to summary judgment on Defendants' CERCLA § 113(f)

contribution counterclaims because (1) common liability under CERCLA is a prerequisite

to Defendants' contribution claims, (2) the common liability prerequisite is not met given

this Court's ruling in the Enforcement Action that API is not liable under CERCLA, and

(3) the Court's ruling is enforceable against Defendant and bars them from re-litigating

API's CERCLA liability in this action.

### A.  Defendants Must Prove That API Is Liable Under CERCLA In Order To Be Entitled To Contribution Under § 113(f).

The Supreme Court has held that "[the] right to contribution under § 113(f)(1) is

contingent upon . . . common liability among *liable* parties."  *United States v. Atlantic

Research Corp.*, 551 U.S. 128, 139 (2007) (emphasis added).  The Court explained:

> Section 113(f) explicitly grants PRPs a right to contribution.  Contribution is
> defined as the "tortfeasor's right to collect from **others responsible for the same
> tort** after the tortfeasor has paid more than his or her proportionate share, the
> shares being determined as a percentage of fault."  Black's Law Dictionary 353
> (8th ed. 2004).  Nothing in § 113(f) suggest that Congress used the term
> "contribution" in anything other than this traditional sense.

*Id*. at 138 (emphasis added).

Because contribution requires common or shared liability, a party seeking contribution bears the burden of proving the CERCLA liability of the party from whom contribution is sought. This Court so held in its March 2011 Decision:

> Thus, **if Plaintiffs are not arrangers and if they lack any other kind of liability for OU1 damages under § 107, there would seem to be no basis upon which the Defendants could obtain contribution.** . . . Defendants. . . have not provided any authority upon which I could base a contribution award when none of the § 107 types of liability apply (assuming they cannot show arranger liability). . . . In sum, **if Plaintiffs are not owners, operators, arrangers, disposers, etc.,** *see* **42 U.S.C. 9607(a), I am satisfied that they cannot be deemed liable for contribution**, and Defendants have not provided any authority to the contrary.

Whiting Dkt. 1080, at 11-12 (emphasis added).

This Court's ruling is consistent with the CERCLA jurisprudence. *See, e.g.,* *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496-97 (11th Cir. 1996) ("To prevail on a claim under CERCLA, a plaintiff must demonstrate . . . the defendant is a 'covered person' under § 107(a) of CERCLA."); *Elementis Chromium L.P. v. Coastal States Petroleum Co.*, 450 F.3d 607, 612 (5th Cir. 2006) ("It is El Paso, as the party bringing an action for contribution, that bore the burden of proving the defendant is a responsible party under § 107(a) of CERCLA . . ." (internal quotation marks omitted)); *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 219-20 (3rd Cir. 2010), *cert. denied*, 131 S. Ct. 646 (U.S. Nov. 29, 2010) ("Contribution claims under § 113(f) require a 'common liability' among PRPs . . . Thus, Carpenter correctly asserts that, in order for it to be liable under § 113(f), it must have had a 'common liability' with the plaintiffs at the time the EPA filed suit to enforce the OU-2 Consent Decree.").

**B.** **The Court Has Conclusively Ruled In the Enforcement Action That API Is Not Liable Under CERCLA.**

Defendants cannot satisfy the common liability prerequisite because API is not liable under CERCLA. That issue was litigated in the Enforcement Action, where API's summary judgment motion was predicated on the claim that it had no liability under CERCLA. Both the Government and the *Whiting* Defendants (all of whom are Defendants in the Enforcement Action) filed briefs opposing API's summary judgment motion (EA Dkts. 205, 206), and API's later motion for reconsideration (EA Dkts. 302, 304).

After consideration of the record and the parties' arguments, the Court, in its April 10 Decision, ruled that "API is entitled to summary judgment that it is not a liable party under CERCLA." EA Dkt. 349 at 9. Based on this ruling, the Court dismissed all of the Government's claims against API in the Enforcement Action.

In view of the Court's unequivocal ruling, there is no longer any basis for claiming that API is liable under CERCLA.

**C.** **The Court's April 10 Decision Is Binding Upon Defendants And Precludes Re-Litigation Of API's CERCLA Liability In This Action.**

While API would be surprised if any of the Defendants were to dispute the issue of API's liability under CERCLA in this action – since the same parties have already litigated the same issue before the same Judge in another action – the doctrine of issue preclusion preempts any such argument. If the ruling is given preclusive effect here, Defendants cannot satisfy an essential prerequisite for relief under CERCLA § 113(f), and summary judgment should be entered for API.

It is settled that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a

different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). The Seventh Circuit has held that:

> Under the doctrine of issue preclusion, an issue may not be litigated if the following conditions are met: (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action.

*Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000).

Issue preclusion applies here. Defendants are entitled to relief under § 113(f) in this action only if they can prove API is liable under CERCLA. Whether API is liable under CERCLA is precisely the same issue addressed in the Court's April 10 Decision. Here, as in the Enforcement Action, the issue turns on whether API falls within one or more of the categories of liable parties enumerated in CERCLA § 107(a). That issue was central to API's summary judgment motion in the Enforcement Action, where it was contested by Defendants (and the Government) and thus actually litigated. There can be no dispute that the Court's determination of the issue of API's CERCLA liability was essential to API's summary judgment granted in the April 10 Decision in the Enforcement Action. Finally, each and every Defendant in this action whose counterclaims are being challenged by this motion was represented by counsel and directly participated in the litigation of the issue in the Enforcement Action by filing a brief opposing both API's summary judgment motion and its subsequent motion for reconsideration. Accordingly, Defendants are bound by the Court's April 10 Decision under issue preclusion principles.

The fact that the ruling in the April 10 Decision has not yet been reduced to a final judgment does not affect the application of issue preclusion here. "A decision need not be 'final' in the strict sense of 28 U.S.C. § 1291 in order to prevent the involved parties from relitigating contested issues." *Coleman v. Comm'r*, 16 F.3d 821, 830 (7th Cir. 1994).

Instead, "for purposes of issue preclusion ... 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Id.*, *quoting* Restatement (Second) of Judgments § 13 (1982). *See Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979).

In *Miller Brewing*, the Seventh Circuit listed factors relevant to determining whether an interlocutory ruling should be considered final for purposes of issue preclusion:

> [T]he court should determine that the decision to be carried over was adequately deliberated and firm if not final in the sense of forming a basis for a judgment already entered. This [sic] preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for purposes of preclusion.

605 F.2d at 996, *quoting* Restatement (Second) of Judgments (Tent. Draft No. 1, 1973) § 41 cmt. g.[3]

Here, there is nothing tentative about the Court's April 10 Decision and there is no doubt that the Court intended that ruling to be its final word on the issue of API's liability under CERCLA. Nor is there any doubt that the issue was adequately deliberated. The record speaks for itself: API's liability under CERCLA was addressed in three rounds of briefing and three decisions rendered by the Court. This process left no legal or factual theory or argument untested. After this exhaustive process, the Court rendered a nine-page opinion that addressed all parties' arguments and explained the Court's grounds for granting API's motion for reconsideration and its motion for summary judgment. This is a case where "the 'practical realities' of this case support the application of collateral estoppel [*i.e.*, issue preclusion] principles." *County of Cook v. MidCon Corp.*, 773 F.2d

---

[3] The quoted language appears in the final version of the Restatement (Second) of Judgments at § 13 cmt. g.

892, 904 (7th Cir. 1985). *See also United States v. Horne*, No. 05-0497, 2006 WL 290591 (W.D. Mo. Feb. 6, 2006) (an interlocutory summary judgment ruling that a defendant was liable under CERCLA in a § 113(f) contribution action among private parties had preclusive effect in the Government's subsequent cost recovery action, even though the ruling had not been reduced to a final judgment as to the party in question).

## CONCLUSION

For the foregoing reasons, API respectfully requests that the Court enter summary judgment in its favor and dismiss Defendants' CERCLA counterclaims with prejudice as to API.

Dated this 17th day of July, 2012.

Respectfully submitted,

APPLETON PAPERS INC.

By:    /s/ Ronald R. Ragatz
         One of Its Attorneys

Counsel for Appleton Papers Inc.:

Michael L. Hermes (#1019623)
Heidi D. Melzer (#1076125)
Hermes Law, Ltd.
333 Main Street, Suite 601
Green Bay, WI 54301
(920) 436-9870
Fax: (920) 436-9871

Ronald R. Ragatz (#1017501)
Dennis P. Birke (#1018345)
Megan A. Senatori (#1037314)
DeWitt Ross & Stevens S.C.
Two East Mifflin Street
Madison, WI 53703
(608) 255-8891

Gregory A. Krauss
Gregory A. Krauss PLLC
1629 K St. NW
Suite 300
Washington, DC 20006
(202) 355-6430

-10-