**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | |
|---|---|
| APPLETON PAPERS INC. and NCR CORPORATION, | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 08-CV-00016-WCG |
| | ) |
| GEORGE A. WHITING PAPER COMPANY, et al., | ) ) |
| | ) |
| Defendants. | ) |
| | ) |
| Defendants. | ) |

**RESPONSE OF DEFENDANTS P.H. GLATFELTER COMPANY AND WTM I
COMPANY TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
CERTAIN DEFENDANTS' STATE COMMON LAW COUNTERCLAIMS**

Plaintiffs NCR Corporation ("NCR") and Appleton Papers Inc. ("API") moved

for summary judgment on certain state law counterclaims of Defendant P.H. Glatfelter

Company ("Glatfelter") and WTM I Company ("WTM") (together the "OU1

Claimants"), as well as other defendants, in 2010. Dkt. 942. The Court initially stayed

briefing on that motion because events might have rendered it moot. Dkt. 953. The

Court has now directed this response. Dkt. 1405 [Findings of Fact and Conclusions of

Law dated July 3, 2012] at 35.

## I.    INTRODUCTION

Plaintiffs assert a single ground for summary judgment:  that the Comprehensive

Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§

9601-75, preempts state law claims. In effect, plaintiffs ask the Court to rule that even if plaintiffs tortiously sold waste paper containing polychlorinated biphenyls ("PCBs") to Glatfelter and WTM for recycling, and even if Wisconsin law would allow Glatfelter and WTM to recover their costs of cleaning up Operable Unit 1 ("OU1"), Glatfelter and WTM nevertheless cannot recover those costs because plaintiffs are not liable under CERCLA for those costs. That just does not follow as a matter of law or logic.

The Supremacy Clause of the United States Constitution invalidates state law that "interferes with or is contrary to federal law." Federal law can preempt state law in three ways: (1) express preemption, (2) field preemption, and (3) conflict preemption. *Hillsborough Cnty v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985). Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law. *Id.* Field preemption applies where "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* Conflict preemption nullifies state law when the state law conflicts with federal law. Preemption can apply to all forms of state law, including civil actions based on state statutory or tort law.

API and NCR argue only that the Defendants' counterclaims are barred by the doctrine of conflict preemption. Dkt. 943 [Plaintiffs' Brief] at 4. Conflict preemption exists where either (1) "it is impossible for a private party to comply with both state and federal requirements," or (2) "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (internal quotation marks omitted). API and NCR do not contend that it would be impossible, without violating

federal law, for them to comply with the state-law duties the OU1 Claimants seek to impose. API and NCR invoke the second species of conflict preemption, which is known as "obstacle" preemption.

As the Supreme Court has made clear, courts should apply a "presumption against preemption." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). The starting point for this Court's analysis must be "the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)

> [B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has "legislated . . . in a field which the States have traditionally occupied," *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 91 L. Ed. 1447, 67 S. Ct. 1146 (1947), we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 580 (7th Cir. 2012).

The presumption against preemption applies with full force in this case because states regularly exercise their police power to allow private parties to divide among themselves the costs of cleaning up contaminated sites, and they have done so last week and more than a century ago. *See, e.g., State of Minnesota ex rel. v. Northern Pacific Center, Inc. v. BNSF Railway Co.*, No. 11-3103 (8th Cir. July 24, 2012)(Minnesota state law claim for private recovery of cleanup costs); *Collins v. Chartiers Valley Gas Co.*, 18 A. 1012 (Pa. 1890), *subseq. appeal*, 21 A. 147 (Pa. 1891)(tort claim to recover for water well contaminated by poor casing on neighboring natural gas well). NCR and API offer no reason to overcome that presumption. CERCLA's contribution provision, 42 U.S.C. §

9613(f), only preempts a claim to allocate CERCLA costs of response among responsible parties if those costs have been or will be allocated under section 113(f) of the statute. Nothing in the statute preempts claims to recover costs from parties against whom CERCLA does ***not*** provide a claim. If CERCLA does not provide an allocation, or even a claim, then CERCLA cannot conflict with any other law.

Here, the Court has allocated CERCLA costs of response and natural resource damages incurred in Operable Units ("OUs") 2-5 between NCR and the OU1 Claimants. Dkt. 795 [Decision and Order on Motions for Summary Judgment dated December 16, 2009], 1080 [Decision and Order on Motions for Summary Judgment dated February 28, 2011], 1191 [Decision and Order on Motion for Clarification dated September 30, 2011], 1405 [Findings and Conclusions dated July 3, 2012]. The Court has ***not*** allocated costs incurred in OU1 between NCR and the OU1 Claimants because the Court found NCR not to be liable for OU1 costs based upon its discharge into OU2, reasoning that OU1 was geographically divisible from the rest of the river:

> In some sense, it is purely happenstance that OU1 was grouped together with the other parts of the river and that all of them were deemed a given "site" by the EPA. Apart from that somewhat arbitrary designation, there seems little to differentiate OU1 from a river in New York or California in which paper recyclers discharged NCR broke waste product. No one would argue that Plaintiffs could be liable for contribution at far-distant sites for which they had no § 107 liability, and thus it is difficult to see how they could be liable merely because OU1 happens to be attached to the rest of the Lower Fox River Site.

Dkt. 1080 at 12. The Court after trial found NCR not to be liable as an "arranger" for disposal in OU1 under section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3). Dkt. 1405. Specifically, the Court held that NCR's predecessor, Appleton Coated Paper Company ("ACPC") did not intend to dispose of the non-fiber components of its "broke,"

including the coatings that ACPC had applied to that broke, and instead intended to sell a useful product.

The state law claims asserted by the OU1 Claimants stand in contrast to their unsuccessful CERCLA claims. Their state law claims are not based on ACPC's release of PCBs to the Lower Fox River, nor are they premised on ACPC's recycling of a waste. Instead, the state law claims asserted by the OU1 Claimants are premised on NCR's liability for the sale of that broke as a ***product***. Accordingly, CERCLA does not preempt state law claims as to those OU1 costs.

Moreover, no court has ever held that CERCLA has any bearing on a contractual allocation of costs. Glatfelter, WTM, and Plaintiffs entered into an agreement to reallocate among the members of the Fox River Group ("FRG") the assessments made to fund the FRG. This contract claim is not preempted and no summary judgment should be granted as to it.[1]

Finally, this motion should not be granted just to simplify case management. The OU1 Claimants have confidence that the parties and the Court could craft an appropriate separate judgment on *other* claims already decided under Federal Rule of Civil Procedure 54(b). As the Court wrote in 2010:

> It was not the intent of this Court's scheduling order to have all potential claims resolved. The purpose was to allow the Defendants to attempt, relatively swiftly, to have their own contribution counterclaims resolved (or not) on the grounds they proposed. And if they could not be resolved, then a partial judgment could be entered and the matters decided earlier could be appealed. Consideration of their state law counterclaims was never considered, and I conclude that briefing on them at this stage would distract

---

[1] The Court has allocated some of those costs under section 113(f), but the Court's ruling is unclear as to whether the FRG Agreement contract claim (a) is in this case, but not yet adjudicated; (b) is not in this case, but leave will be granted to add it; or (c) must be brought in a separate action.

the parties and the Court from the more central issues in the case.

Dkt. 953 [Order of April 14, 2010, staying briefing on this motion] at 2.

## II. FACTUAL BACKGROUND

Appleton Coated Paper Company ("ACPC") sold a production scrap known as "broke" to Glatfelter's predecessor, the Bergstrom Paper Company ("Bergstrom"), and to WTM for recycling. Some of that broke was scrap from the production of NCR-brand carbonless copy paper ("NCR Paper") that contained PCBs. Dkt. 1405 at 2-3. NCR is the corporate successor to ACPC. Dkt. 795 at 2.

NCR knew at the time that the paper contained PCBs and that PCBs posed an environmental and health risk. Dkt. 1405 at 3. ACPC executives engaged in technical exchanges with NCR executives and the executives of other coating contractors of NCR at the time. ACPC executives knew that their broke was recycled. ACPC executives were sufficiently embedded in the paper industry that, if they had thought about it, they would have been able to give a reasonably accurate assessment of what would happen to paper when recycled. Dkt. 1405 at 6-12.

The Court has found that ACPC executives did not know that the coating that they applied to NCR Paper contained PCBs. Dkt. 1405 at 3.[2] If they did not know, they did

---

[2] Specifically, the Court found that Defendants "have not argued that anyone at ACPC knew, during the production period, that NCR's emulsion contained PCBs, or that PCBs were harmful." While the Court's findings are controlling for purposes of this motion, Glatfelter respectfully suggests that Defendants did in fact argue that ACPC executives knew that the NCR emulsion contained PCBs. *See* Dkt. 1382 at 63 [Defendants' Post-Trial Proposed Finding of Fact 45]("45. ACPC knew that NCR Paper microcapsules contained PCBs. Ex. 2285; Ex. 2079."). The two documents cited in that Proposed Finding seem irrefutably to indicate that ACPC executives quite early on knew that the NCR emulsion contained PCBs. Exhibit 2079 is a February 10, 1961, entry in the laboratory notebook of ACPC's Thomas Busch that provides a description of the NCR emulsion including this statement: "The printing fluid is a solution of Benzoyl Methylene Blue and Crystal Violet Lactone in ***chlorinated diphenyl known commonly as arachlor***." Exh. 2079 at APIFOX-00047615 (emphasis added). Exhibit 2285 is a July 25, 1955, internal

not because they were willfully or negligently ignorant. They did not ask; other technical characteristics of the product were freely discussed between NCR and ACPC. They also did not know because NCR willfully or negligently failed to tell them, even though NCR executives knew that the PCBs posed an environmental and health risk. ACPC executives did not know the likely disposition of the coatings on the scrap they sold for recycling because they willfully or negligently chose not to think about it. Had they merely paused to consider the question they would have been able to predict that large volumes of their coatings would be (a) disposed in landfills as part of papermill sludge and (b) discharged to waterways in wastewater. Accordingly, ACPC never considered whether any of the coatings it applied were safe to recycle. Indeed, ACPC never warned any recyclers, like Bergstrom or WTM, that ACPC did not know whether any of the coatings were unsafe, and ACPC never took any steps at all to assure that it did not cause injury or damage when it got rid of its wastepaper by recycling it.

Neither OU1 Claimant knew that NCR Paper contained PCBs until after the PCBs had been removed from the product. Dkt. 795 at 26-29. Indeed, NCR and its contractors guarded that fact as a trade secret. Bergstrom received and recycled NCR Paper broke, and as a consequence, as Richard Wand testified, the Bergstrom Paper Company no longer exists. Tr. 108:17-23. Bergstrom's successor Glatfelter and WTM faced liabilities for cleaning up this site. In order to effectuate a clean up of OU1, Glatfelter and WTM signed a consent decree entered by Judge Adelman. *United States v. P.H.*

---

memorandum of the Institute of Paper Chemistry that describes a visit to the Institute by "Mr. Abe Lewenstein of The Appleton Coated Paper Company and Mr. Jack Whalen of the Combined Locks Paper Co. . . . for the purpose of discussing a possible project related to the production of NCR paper by their companies." Exh. 2285 at GPARG00001266. The memorandum goes on: "The emulsion contains the leuco form of a dye (usually a lactone) which has been ***dissolved in chlorinated diphenyl*** and which in turn is emulsified within a gelatin layer used as a protective colloid." *Id.* (emphasis added).

*Glatfelter Co.*, No. 2:03-cv-949-LA (E.D. Wis.). Immediately afterward, Glatfelter announced the closure of the Bergstrom mill. Glatfelter ultimately incurred approximately $43.7 million to clean up OU1 as well as other costs and damages. *See* Dkt. 1320 [Final Pretrial Report] at ¶¶ 149-54. WTM incurred approximately $44.3 million to clean up OU1 as well as other costs and damages. *Id.* at 157-65.

Neither ACPC nor NCR took much care during the production period to avoid damage and injury as the result of selling their PCB-containing broke to recyclers. For purposes of this motion, one must assume that that Wisconsin law would allow the OU1 Claimants to recover their costs caused by ACPC's and NCR's tortious conduct. Moreover, for purposes of this motion, one must assume that the OU1 Claimants' pleadings adequately state that claim.[3] Neither plaintiff has challenged any feature of the counterclaims other than their purported preemption by CERCLA.

### III.     STANDARD UNDER RULE 56

The Court should not grant summary judgment under Federal Rule of Civil Procedure 56(f) unless there is no genuine dispute as to any material fact and plaintiffs are entitled to judgment as a matter of law. Plaintiffs' motion is purely legal. Unless as a matter of law CERCLA preempts all claims other than claims under section 113(f) of the statute, even when there is no liability under section 113(f), then their motion should be denied.

---

[3] The Court should note that these pleadings were filed before the defendants had coalesced into a joint defense group, and therefore they are not identical. Each defendant has asserted different claims in different ways.

## IV.    ARGUMENT

### A.    The Presumption Against Preemption Applies Because States Have Traditionally Occupied the Field of Contaminated Site Cleanup.

The presumption against preemption applies particularly to this case because state law has occupied the field of hazardous site cleanup.  State laws can, and do, address both how sites can be cleaned up and who has to pay for that cleanup.  *See, e.g., Fireman's Fund Insurance Co. v. City of Lodi, California*, 302 F.3d 928, 941 (9th Cir. 2002); *see also Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138 (2d Cir. 2010)("[w]e have also concluded that CERCLA is not such a comprehensive scheme that it cannot be supplemented by state law").  Otherwise, any site contaminated with materials classified as "hazardous substances" under CERCLA could ***only*** be cleaned up if the site qualified for attention under the federal Superfund program.  States and municipalities could not clean up old industrial sites or other "brownfields" under state law, and private parties could not resolve any disputes among them as to who ought to pay for these non-Superfund sites.  Recall, by the way, that the Fox River is ***not*** included on the National Priorities List as a "Superfund Site."  40 C.F.R. pt. 300, app. B (not including Fox River).

CERCLA includes several provisions accommodating state law claims.  The Court of Appeals for the Seventh Circuit catalogued some of them in the course of holding that CERCLA did not preempt an Illinois municipality's hazardous site cleanup ordinance, although state law did:

> CERCLA's preemptive scope is not total. The statutory text states expressly, in several provisions, that at least some claims under state law are permitted to proceed. Section 114(a) states that "[n]othing in this chapter shall be construed or interpreted as preempting any State from

> imposing any additional liability or requirements with
> respect to the release of hazardous substances within such
> States." 42 U.S.C. § 9614(a). Section 302(d) states that
> "[n]othing in this chapter shall affect or modify in any way
> the obligations or liabilities of any person under other
> Federal or State law, including common law, with respect
> to release of hazardous substances or other pollutants or
> contaminants . . . ." *Id*. § 9652(d). CERCLA contemplates
> "action[s] brought under State law for personal injury, or
> property damages, which are caused or contributed to by
> exposure to any hazardous substance, or pollutant or
> contaminant, released into the environment from a facility."
> *Id*. § 9658(a)(1). Section 310(h) states that "[t]his chapter
> does not affect or otherwise impair the rights of any person
> under Federal, State, or common law, except with respect
> to the timing of review as provided in section 113(h) of this
> title or as otherwise provided in section 9658 of this title
> (relating to actions under State law)." *Id*. § 9659(h).
> Finally, section 113(h) itself applies to bar jurisdiction only
> over federal-law challenges "to removal or remedial action
> selected under section 9604" or "any order issued under
> section 9606(a)." *Id*. § 9613(h).

*Village of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 786 (7th Cir. 2008).

In addition, the Small Business Liability Relief and Brownfields Revitalization Act, Pub. L. No. 107-118, 115 Stat. 2356 (Jan. 11, 2002), added a number of provisions to CERCLA specifically directed to encouraging and accommodating state programs that address contamination at old industrial "brownfield" sites. *See, e.g.,* 42 U.S.C. § 9628.

CERCLA does not preempt state tort claims arising from releases of hazardous substances. For example, in *Redland Soccer Club, Inc. v. Department of the Army,* 55 F.3d 827 (3d Cir. 1995), *cert. denied,* 516 U.S. 1971 (1996), plaintiffs were exposed to hazardous substances disposed by the Army at what had become a park. The site was being cleaned up under CERCLA. Plaintiffs' claims under CERCLA for medical monitoring costs were dismissed, but certain plaintiffs' tort claims under the Federal Tort Claims Act were permitted to go forward. The same plaintiffs were able to pursue even

broader claims under the state Hazardous Sites Cleanup Act, Pa. Stat. Ann. tit. 35, §§ 6020.101 to .1305. "[W]e are not persuaded that the unavailability of a remedy under CERCLA should control whether the same remedy is available under HSCA." *Redland Soccer Club, Inc. v. Department of the Army*, 696 A.2d 137, 147-48 (Pa. 1997).

CERCLA is *one* set of legal authorities for addressing releases of hazardous substances and the costs and damages they cause. CERCLA is not the *only* or exclusive set of legal authorities to do so, as Plaintiffs incorrectly suggest.

**B.      CERCLA Section 113(f) Does Not Preempt Claims to Allocate Costs that Section 113(f) Does not Allocate.**

**1.      A claim against a person who is not liable under CERCLA cannot be preempted by CERCLA.**

Plaintiffs properly point out that a federal statute may preempt state law when the state law conflicts with the federal law. *See Wigod*, 673 F.3d at 577-81 (citing multiple authorities). The conflict Plaintiffs assert here is that recovery of damages (which could be costs of response) under state tort law would stand as an obstacle to allocation of costs of response under section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

An allocation of costs under state law can only stand as an obstacle to the allocation of those costs under CERCLA if CERCLA actually allocates those costs. CERCLA does not allocate OU1 costs between Glatfelter or WTM and Plaintiffs, so section 113(f) cannot conflict with any state law.

This Court has decided that NCR and API are not liable under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for OU1. Section 113(f)(1) calls upon the Court "[i]n resolving contribution claims, . . . [to] allocate response costs among *liable* parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1)

(emphasis added).   If NCR and API are not "liable" under section 107(a) for OU1, then there is no allocation under section 113(f), and CERCLA is, effectively, silent on the question of claims between NCR or API and Glatfelter or WTM as to OU1.

The number of cases in which plaintiffs have sought to recover cleanup costs on a tort theory when CERCLA does not afford relief defies enumeration.  *See, e.g., Cooper Industries, Inc. v. Aviall Services, Inc.,* 543 U.S. 157, 164 (2004)(case involved state law claims); *State of Minnesota ex rel. Northern Pacific Center, Inc. v. BNSF Railway Co.*, No. 11-3103 (8th Cir. July 24, 2012)(tort claims time-barred); *Team Enterprises, LLC v. Western Investment Real Estate Trust*, 647 F.3d 901 (9th Cir. 2011)(CERCLA, nuisance, and trespass).  In several of them, courts have decided that when a plaintiff that would be liable under CERCLA sues a defendant that is ***not*** liable under CERCLA under a state law theory, the state claim may proceed.  *See, e.g., NL Industries, Inc. v. Halliburton Co.*, No. 10-CV-89A, 2010 WL 4340938 (W.D.N.Y. Nov. 2, 2010); *Veolia Es Special Services, Inc. v. Hiltop Investments Inc.*, No. 3:07-0153, 2010 WL 610094 (S.D.W.V. Feb 18, 2010); *see also Fitzgibbons v. City of Oswego*, No. 5:10-CV-1038, 2011 WL 6218208 (N.D.N.Y. Dec 13, 2011)(no preemption as a double-recovery under section 114(b) unless there is a double-recovery); *Blasland, Bouck & Lee, Inc. v. City of North Miami*, 96 F. Supp. 2d 1375 (2000)(jury award on state law claims bars CERCLA award of the same amounts).  A CERCLA plaintiff may "pursue alternative and legally inconsistent theories up until the point where one of the inconsistent theories prevails to the exclusion of the others."  *Board of County Commissioners of the County of La Plata v. Brown Group Retail, Inc..*, 589 F. Supp. 2d 1185, 1193 (D. Colo. 2009)(citing *Vine Street, LLC v. Keeling*, 460 F. Supp. 2d 728, 757 (E.D. Tex. 2006) (CERCLA preempted

plaintiff's right to recover under state law claim only after plaintiff had already prevailed under both theories)).

In *Edward Hines Lumber Co v. Vulcan Materials Co.*, 685 F. Supp. 651 (N.D. Ill.), *aff'd*, 861 F.2d 155 (7th Cir. 1988), an owner and operator of a treated wood manufacturing plant sought a declaratory judgment against defendants for any future liability the plaintiff might incur for removing contaminants from its facility. The plaintiff brought these claims under CERCLA or, in the alternative, state law. 685 F. Supp. at 653. The court, finding defendants not liable under CERCLA, considered whether the plaintiff could seek contribution under state law to recover response costs incurred in cleaning up the site. The court held that "CERCLA does not bar an action available under state law for contribution for costs incurred as a result of the decontamination of a hazardous waste site against parties not liable for contribution under CERCLA." *Id.* at 658; *see also Hillsborough County v. A & E Road Oiling Serv., Inc.*, 853 F. Supp. 1402, 1412 (M.D. Fla. 1994) ("[a]lthough CERCLA does not preclude all state law causes of action where plaintiff seeks contribution for response costs incurred as a result of an EPA ordered waste site clean up, such contribution claims are only available against parties not liable for contribution under CERCLA"); *Central Ill. Pub. Serv. Co. v. Industrial Oil Tank & Line Cleaning Serv.*, 730 F. Supp. 1498, 1505 (W.D. Mo. 1990) ("Congress . . . intended to preclude contribution actions by nonsettling parties against those parties which settled with the government, while leaving the contribution actions under state law available against parties not subject to CERCLA.").

Similarly, in *Del-Ray Battery Co v. Douglas Battery Co.*, 635 F.3d 725 (5th Cir.), *cert. denied,* 132 S. Ct. 559 (2011), the plaintiffs argued that because section 127 of

CERCLA, the Superfund Recycling Equity Act, 42 U.S.C. § 9627, excluded their

recycling transactions from constituting "arranging for disposal" under section 107(a)(3),

42 U.S.C. § 9607(a)(3), that section 127 ought also to insulate them from liability under a

parallel Texas statute. Because the defendant had sued the plaintiff in state court under

the Texas statute, plaintiffs sought to recover their litigation expenses as provided in

section 127. The court of appeals held that CERCLA and the Texas statute "coexist" and

CERCLA does not preempt the state law, it does not provide a defense, and it does not

allow recovery of litigation expenses.

When CERCLA does ***not*** allocate costs between parties, it does not conflict with

state law claims over the same costs or damages. Different considerations apply when

CERCLA ***does*** allocate because two allocations of the same costs might (or might not)

conflict. Each case cited by Plaintiffs in support of their motion involves a claim on

which the defendant is a responsible party under CERCLA and therefore CERCLA does

permit an allocation. *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d

112 (2d Cir. 2010)(CERCLA contribution claim by NiMo against Chevron and King –

who are liable under CERCLA – preempts parallel state law claims); *PMC, Inc. v.

Sherwin-Williams Co.*, 151 F.3d 610 (7th Cir. 1998), *cert. denied*, 525 U.S. 1104

(1999)(dictum in the course of deciding contract claim among two parties liable under

CERCLA); *Bedford Affiliates v. Sills*, 156 F.3d 416, 426 (2d Cir. 1998)(CERCLA section

113(f) preempts parallel state restitution and common law indemnification claims among

parties liable under CERCLA); *In re Reading Co.*, 115 F.3d 1115 (3d Cir.

1997)(bankruptcy discharge of party's CERCLA liability resolves that CERCLA section

113(f) claim and preempts parallel state claims).

In *PMC,* Judge Posner expressed concern in dictum that allowing a responsible party to recover costs incurred inconsistently with the NCP under state law from another responsible party might disrupt CERCLA's settlement scheme. That is not the issue here. There is no dispute that the costs incurred by Glatfelter and WTM in compliance with the OU1 Consent Decree are recoverable as costs of response. *See* 40 C.F.R. § 300.700(c)(3)(ii). So none of the cases about whether responsible parties may allocate under state law costs incurred inconsistently with the NCP has any bearing on the OU1 Claimants' counterclaims. Glatfelter and WTM assert claims against a party that is ***not*** liable under CERCLA, but the costs sought ***are*** consistent with the NCP. That is permissible. *See, e.g., Southeast Texas Envtl., LLC v. BP Amoco Chemical Co.*, 329 F. Supp. 2d 853, 865 and 868 (S.D. Tex. 2004)(discussing and distinguishing *PMC* and concluding "that CERCLA § 113(f)(1) preserves a PRP's right to pursue state-law contribution claims"); *see also Durham Manuf. Co. v. Merriam Manuf. Co.*, 128 F. Supp. 2d 97 (D. Conn. 2001)(state statutory claim with different elements than CERCLA section 113(f) not preempted); *United States v. Hooker Chemicals & Plastics Corp.*, 739 F. Supp. 125, 129 (W.D.N.Y. 1990)(PRP is not limited to CERCLA contribution claims in seeking response costs).

> **2.     CERCLA does not preempt state tort claims where the claims arise from the sale of a "useful product," which CERCLA does not address.**

Glatfelter and WTM have asserted state law tort claims against the plaintiffs based on NCR's or its predecessor's knowledge of the potential environmental toxicity of PCBs and the allegation that they knew or should have known that the paper recycling process would likely result in the discharge of PCBs to the Lower Fox River. Given this knowledge, the OU1 Claimants assert that NCR or it predecessors negligently provided a

faulty product, and had a duty to advise the paper companies to which they provided the material of these facts when the NCR broke was sold. CERCLA does not preempt these state tort claims for several reasons.

This Court concluded that the sale of broke to the OU1 recycling mills constituted the sale of a "useful product" to which CERCLA liability does not attach, a conclusion that the OU1 Claimants argued against at the recent trial. It is the plaintiffs' sale of a ***product***, however, that gives rise to the OU1 Claimants' state law tort claims. The sale of a product is a situation that CERCLA does not cover, but that state tort law clearly does cover. In other words, the Court's conclusion that sale of broke constitutes sale of a "useful product" necessarily implies that no conflict exists between the purview of CERCLA and state tort law with respect to OU1 claims.

Moreover, there is no law for the proposition that CERCLA excuses a person who negligently sells a faulty product, without warning, to another party which fault results in the release of a hazardous substance. Here, unlike the typical CERCLA case, the factual allegations against the plaintiffs fit squarely within a state tort law framework  The contentions are that neither ACPC nor NCR took any care at all to protect those with whom they did business or the public from the risks inherent in their use of PCBs in their product. They blithely sold their production scrap. Given a minute's thought, they would have realized that recycling PCB-containing scrap paper is much riskier to the environment and therefore the recycler than burying the PCBs in a landfill. In order to save a few dollars on disposal costs – dollars that were, as Mr. Heitpas testified, "no biggie" – ACPC sold its broke, NCR did nothing to warn ACPC off of that decision, and neither did anything  to warn those who bought the broke. *See* Tr. 1035:21-1036:3.

Finally, courts have ruled that the CERCLA framework and the state tort framework co-exist. Courts have held that parties may bring state tort claims that have different elements than claims that can be made under CERCLA. *See, e.g. Durham Manuf. Co. v. Merriam Manuf. Co.*, 128 F. Supp. 2d 97, 102-03 (D. Conn. 2001) (Plaintiff may bring a claim under Connecticut state for reimbursement for reasonable costs expended for containment, remove or mitigation or hazardous wastes discharged as a result of the negligence of the defendants because the Connecticut state has different elements). If a party may pursue both state statutory law and CERCLA claims *concurrently*, as the plaintiff was allowed to do in *Durham*, the OU1 Claimants should certainly be allowed to pursue their state law tort claims separately, especially when CERCLA does not apply to the OU1 costs and damages.

**C.     CERCLA Does not Preempt a Claim to Enforce the FRG Agreements.**

Other than its payments to comply with the OU1 Consent Decree, Glatfelter, WTM, and the other Fox River Group Defendants seek to reallocate assessments made to fund the Fox River Group ("FRG"). That is a contract claim. Plaintiffs do not contend, nor could they, that this claim is preempted by CERCLA. *See, e.g., PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 613 (7th Cir. 1998)("Both companies, as respectively the owner of the polluted site and the former owner who polluted it, are liable under CERCLA . . . for the expense of cleaning up the site. Parties are free, however, to allocate such expenses between themselves by contract. *See, e.g.,* 42 U.S.C. § 9607(e)(1); *Truck Components Inc. v. Beatrice Co.*, 143 F.3d 1057, 1059 (7th Cir. 1998); *Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 327 (7th

Cir. 1994)."); *see also* Dkt. 1294 at 3 ("If the parties' private FRG agreement provides

otherwise [that is, that non-CERCLA costs may be allocated], then they may be held

liable in contract for those costs.").

The Court declined to adjudicate the contract claim after the recent trial:

> Defendants argue that this is the time to make a "final
> allocation" of Fox River Group assessments, as provided in
> the parties' 1999 Allocation Agreement. As already
> suggested in this Court's denial of leave to amend (Dkt.
> No. 1294), however, claims under the parties' contract are
> not a part of this CERCLA action. The discovery and trial
> were directed at answering the novel and fact-intensive
> issues that arise under that statute, not at litigating an
> allocation under a private contract. Accordingly, I will not
> make an allocation under that agreement.

Dkt. 1405 at 24.  Glatfelter had contended in its pretrial memorandum that this claim was

subsumed in Glatfelter's counterclaim and that Glatfelter did not require an amendment.

Dkt. 1333-1 at 7-8.[4]  Moreover, the Court's order denying leave to amend concludes:

"[n]othing within this order precludes the bringing of such a claim in the future or in

some other iteration."  Dkt. 1294 at 3.

With respect, Glatfelter and WTM submit that the Court's ruling is not clear, and

they request a clarification:

- The Court may have decided that Defendants had not properly pleaded the

  FRG assessment claim and that a motion for leave to amend had been

  denied without prejudice to amending the counterclaim ***in this case*** on an

  appropriate motion.[5]

---

[4] Glatfelter pleaded:  "Glatfelter is entitled to statutory or common law contribution, cost recovery, or
indemnity from NCR and API for their allocable share of the costs incurred and damages paid by Glatfelter
in connection with the Site, including without limitation pursuant to Section 113(f)(l) of CERCLA, 42
U.S.C. § 9613(f)(1), Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), and the common law."

[5] The Court may also decide now that the claim was adequately pleaded in this case, but that the Court
deferred its adjudication.

- Alternatively, the Court may have decided that the contract claim is not properly pleaded in this case and must be refiled as a separate action.

Glatfelter and WTM respectfully request that the Court clarify its ruling and make explicit that this preemption motion does not have any bearing on the FRG Agreement contract claim of any of the parties.

## V.    THE PORTAGE CLAIM

In the interests of completeness, Glatfelter points out that paragraph 10(a) of Glatfelter's counterclaim reads:

> NCR arranged for the transportation for treatment or disposal of hazardous substances at facilities from which there have been releases of hazardous substances to the Site.
>
> a. NCR discharged to a publicly owned treatment works wastewater from a plant that manufactured a microcapsule emulsion for use in coating NCR® brand carbonless copy paper ("NCR® Paper"). That wastewater contained PCBs. The discharge from the publicly owned treatment works entered the Fox River upstream of the Site in Portage, Wisconsin. That discharge contained PCBs.

Dkt. 242, Counterclaim ¶ 10(a). NCR and API admitted those allegations in part:

> API and NCR admit that NCR operated a plant in Portage, Wisconsin, and that this plant discharged wastewater, which at times contained residues of a PCB-containing emulsion, into a publicly-owned wastewater treatment plant when the Portage plant manufactured a PCB-containing emulsion for the manufacture of NCR Paper. This publicly-owned wastewater treatment plant at times discharged into the Upper Fox River.

Dkt. 337, ¶ 10.

This claim has not yet been adjudicated in this case or in any of the related litigation.  Accordingly, it remains pending and is not the subject of this motion because it is a claim under CERCLA section 113(f), not a claim under state law.

Whether the discharge at Portage makes NCR liable for costs in OU1 turns on the standard applied.  Portage is far upstream of Little Lake Butte des Morts with Lake Winnebago in between.  As the Court will recall, PCBs primarily adsorb (that is, stick) to particles, the same particles that become sediments.  Between Portage and OU1, the PCBs discharged at Portage settled out into the river and were diluted by cleaner material entering the river and the lake from the surrounding farms, lawns, streets, and outfalls.  Nevertheless, PCBs entering OU1 from Lake Winnebago have been detectable in the water column ever since testing began.  Many pounds of PCBs have entered OU1 from Lake Winnebago, but they are in a very low concentration.

If mass alone suffices to make a person responsible for a discharge liable under CERCLA for a downstream portion of the site, NCR is probably liable for OU1.  However, at this site, costs of response are required because the PCB *concentration* exceeds one part per million in sediment.  On that standard, it is likely that the Portage discharge did not make NCR liable for OU1.  The OU1 Claimants will advocate for that *concentration* standard in *United States v. NCR Corp.*, No. 1:10-cv-910, currently scheduled to begin trial on December 3, because on that standard, the discharges in OU1 probably do not give rise to liability of the OU1 dischargers for OU4.  Glatfelter therefore suggests that the Portage claim ought not to be taken up until after the December trial.[6]  If Glatfelter prevails on the standard at that time, then the Portage claim will be obviated.

---

[6] Note that liability for OU1 is not at issue in the December 2012 trial.  The United States' Fifth Claim for Relief in *United States v. NCR Corp.* only addresses OU2-5.

## VI.    CONCLUSION

CERCLA only preempts state law claims when the state claims stand as an obstacle to CERCLA's scheme.  State law claims cannot conflict with a CERCLA claim unless the CERCLA claim exists.  No CERCLA claim exists against either plaintiff with respect to OU1 (unless the Portage discharge gives rise to liability), and therefore OU1 costs may be awarded on a state law theory.  To do otherwise would be to ignore the "presumption against preemption."  This motion should be denied.

Dated:  August 2, 2012                                Respectfully submitted,

                                                                        s/ David G. Mandelbaum
                                                                        David G. Mandelbaum
                                                                        Francis A. Citera
                                                                        Marc E. Davies
                                                                        Caleb J. Holmes
                                                                        Adam B. Silverman
                                                                        GREENBERG TRAURIG, LLP
                                                                        Two Commerce Square, Suite 2700
                                                                        2001 Market Street
                                                                        Philadelphia, PA  19103
                                                                        215.988.7800
                                                                        mandelbaumd@gtlaw.com

                                                                        **Attorneys for Defendant P.H. Glatfelter Company**

                                                                        s/ Nancy K. Peterson
                                                                        Nancy K. Peterson
                                                                        Peter A. Karegeannes
                                                                        Arthur A. Vogel
                                                                        William H. Harbeck
                                                                        QUARLES & BRADY
                                                                        411 East Wisconsin Avenue
                                                                        Milwaukee, WI  53202
                                                                        nkp@quarles.com

                                                                        **Attorneys for Defendant WTM I Company**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 2nd day of August 2012, a true and correct copy of the foregoing was filed electronically via the Electronic Court Filing system and is available for viewing and downloading.

/s/ David G. Mandelbaum
David G. Mandelbaum

Greenberg Traurig LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 988-7800
Facsimile: (215) 988-7801
mandelbaumd@gtlaw.com