IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| APPLETON PAPERS INC. and NCR CORPORATION, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 08-CV-00016-WCG<br>) |
| GEORGE A. WHITING PAPER COMPANY, et al., | )<br>)<br>) |
| Defendants. | ) |

## RESPONSE OF DEFENDANT P.H. GLATFELTER COMPANY TO PLAINTIFF APPLETON PAPERS INC.'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' CERCLA COUNTERCLAIMS

Defendant P.H. Glatfelter Company ("Glatfelter") submits this separate response to Plaintiff Appleton Papers Inc.'s ("API's") motion for summary judgment as to defendants' CERCLA counterclaims. This motion should be denied for two reasons.

*First*, as we have previously argued, API is a plaintiff in this case. API invoked this Court's equitable jurisdiction under section 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f), "to allocate the equitable shares of the cleanup costs and natural resource damages associated with the Lower Fox River Contamination . . . ." Complaint, Dkt. 1, ¶ 3. Filing a complaint in this Court, particularly one "to allocate . . . costs and . . . damages[,]" results in the filing of compulsory counterclaims by defendants like Glatfelter who have, or may come to, incur costs or damages. Fed. R. Civ. P. 13(a); *cf. United States v. Atlantic Research Corp.*, 551

U.S. 128, 140 (2007). API cannot now avoid an allocation judgment in this case, which is what it seeks. The fact that this Court has held API not to be liable to the United States may be a factor that affects API's equitable share of liability as among the parties to this case, but API is not seeking a low or even a zero share; it is seeking to be held not liable, and it waived that argument when it dragged Glatfelter and others into this case. Indeed, when API filed this case, it alleged that it was one of two "leaders *among the responsible parties* in working with [the governments] to address and remediate Lower Fox River Contamination." Complaint ¶ 2 (emphasis added). "Responsible party" is a term of art under CERCLA referring to persons liable under section 107(a). *See, e.g., Burlington Northern & Santa Fe Railway Co. v. United States*, 556 U.S. 599, 605 (2009); *Atlantic Research*, 551 U.S. at 131; *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 160 (2004); *United States v. NCR Corp.*, No. 12-2069 (7th Cir. Aug. 3, 2012), slip op. at 4.

***Second***, API's motion for summary judgment does not address paragraph 10(a) of Glatfelter's counterclaim, that reads:

> NCR arranged for the transportation for treatment or disposal of hazardous substances at facilities from which there have been releases of hazardous substances to the Site.
>
> a. NCR discharged to a publicly owned treatment works wastewater from a plant that manufactured a microcapsule emulsion for use in coating NCR® brand carbonless copy paper ("NCR® Paper"). That wastewater contained PCBs. The discharge from the publicly owned treatment works entered the Fox River upstream of the Site in Portage, Wisconsin. That discharge contained PCBs.

Dkt. 242, Counterclaim ¶ 10(a). Portage is upstream of the Site, and so at least some PCB molecules released at Portage reached the Site. If one molecule released to the Site suffices to make a party responsible under CERCLA section 107(a), then NCR and API would be liable for

2

the Site on account of the discharge at Portage.[1]

NCR and API admitted the allegations of paragraph 10(a) in part:

> API and NCR admit that NCR operated a plant in Portage, Wisconsin, and that this plant discharged wastewater, which at times contained residues of a PCB-containing emulsion, into a publicly-owned wastewater treatment plant when the Portage plant manufactured a PCB-containing emulsion for the manufacture of NCR Paper. This publicly-owned wastewater treatment plant at times discharged into the Upper Fox River.

Dkt. 337, ¶ 10.

The discharge of PCBs to the Portage sewage treatment plant in fact continued long after NCR stopped using PCBs in NCR Paper. A 1973 memorandum of the Department of Natural Resources described the plant as a source of PCBs to the Portage sewage treatment plant, with conditions at the plant including solids in holding tanks in the tens of thousands of parts per million (that is, percents) PCB. Declaration of Adam B. Silverman in Support of P.H. Glatfelter Company's Response to Plaintiff Appleton Papers Inc.'s Motion for Summary Judgment as to Defendants' CERCLA Counterclaims ("Silverman Decl.") Exh. 1 [NCR-FOX-0096628-29]. That memorandum describes a clean out during which the plant manager removed PCB-containing sludge and spread it in a grove of trees near his home. In August 1976, Alan Kresch of NCR's Appleton Papers Division prepared a report entitled "The Problem of Polychlorinated Biphenyls." 2012 Trial Exh. 2930 [NCR-FOX-0537018 ff]. That report describes a continuing discharge of PCBs from the Portage plant to the public sewer from residual materials in waste neutralization tanks and elsewhere. Exh. 2930 at 7 ff. A clean up in 1975 was not effective. A second clean up in 1976 decreased the concentration of PCBs being discharged, but at the time

---

[1] Glatfelter does not wish to be disingenuous. Glatfelter will contend in the related case that one molecule, or even a great deal of molecules, does not give rise to liability under CERCLA unless it causes the incurrence of costs of response. Consequently, the releases of PCBs into Operable Unit 1 did not, Glatfelter will show, make those responsible for those releases liable for the cleanup downstream of Operable Unit 1. However, others – including API – have taken the contrary position. This claim is, therefore, defensive.

of the report, PCBs at concentrations in excess of permissible limits were still being discharged to the sewer.  Exh. 2930 at 9.

This problem persisted after API acquired the assets of the NCR Appleton Papers Division.  By memorandum dated January 30, 1979, ***on API stationery***, Bill Becker described monitoring of PCBs and a discharge of wastewater with concentrations as high as 2980 parts per billion (2.98 ppm) to the sewer in 1978.  Silverman Decl. Exh. 2 [Dep Exh 896q].  Recognize that these are concentrations in the wastewater, not on the solids in the wastewater.  The problem continued at least into the next year as reported in a memorandum dated July 3, 1980, from API's Dennis Hultgren.  Silverman Decl. Exh. 3 [Dep Exh 896s].

API does not by this motion contend that this release at Portage, upstream of the Site, is divisible.  API argues that it is not liable because this issue ought to have been raised by Glatfelter in *United States v. NCR Corp.*, No. 1:10-cv-910.  API is not correct.

API moved for summary judgment on the United States' claims in *US v. NCR*.  The motion was not directed to any claim of Glatfelter.  The United States asserted no claim arising from the release at Portage.  Glatfelter authorized its name to be added to the list of filers on a memorandum opposing API's initial, unsuccessful, motion for summary judgment; that brief was prepared by and signed by counsel for another defendant. Glatfelter did not file any paper opposing API's motion for reconsideration.  The issue of the Portage release was not raised by either motion.  Further, Glatfelter's claims arise from costs incurred in Operable Unit 1, whereas the United States' claims pertain to the downstream parts of the Site.  Nothing that happened in the enforcement case estops Glatfelter on this motion.

4

*PHI 316,940,082v2*

Case 2:08-cv-00016-WCG   Filed 08/20/12   Page 4 of 5   Document 1425

This case should not end in a judgment that API gets no allocation of responsibility. It invoked the jurisdiction of this Court. It is responsible for PCBs discharged upstream of the Site. Its allocation of responsibility might be low, or it might not be. API's motion for summary judgment does not address that allocation. It claims that it is not liable. But it is the plaintiff here. It gets a share, whatever that fair share might be. This motion should be denied.

Dated: August 20, 2012

Respectfully submitted,

*s/David G. Mandelbaum*
David G. Mandelbaum
Francis A. Citera
Marc E. Davies
Caleb Holmes
Adam B. Silverman
GREENBERG TRAURIG, LLP
Two Commerce Square, Suite 2700
2001 Market Street
Philadelphia, PA 19103
215-988-7800
mandelbaumd@gtlaw.com

**Attorneys for Defendant P. H. Glatfelter Company**

5