IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. and
NCR CORPORATION,

       Plaintiffs,

  v.

GEORGE A. WHITING PAPER
COMPANY, *et al*.,

       Defendants.

No. 08-CV-16 WCG

**REPLY MEMORANDUM OF PLAINTIFF APPLETON PAPERS INC.
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO
DEFENDANTS' CERCLA COUNTERCLAIMS**

Plaintiff Appleton Papers Inc. ("API"), by its undersigned counsel, respectfully submits this Reply Memorandum in support of its Motion for Summary Judgment as to Defendants' CERCLA Counterclaims. Dkts. 1408/1409.

**DISCUSSION AND ARGUMENT**

The Defendants asserting CERCLA counterclaims against API in this action filed a brief in opposition to the summary judgment motion API filed in the Enforcement Action that challenged its liability under CERCLA. The Court rejected their arguments, as well as the arguments advanced by the Government, and ruled that API is not liable under CERCLA for PCB contamination in the Lower Fox River. API's opening brief demonstrated that, having already litigated API's CERCLA liability in the Enforcement Action and lost, Defendants are now barred by issue preclusion principles from re-litigating API's liability in this action.

All of the Defendants except P.H. Glatfelter have filed a response to API's motion in which they do not dispute API's issue preclusion argument. Dkt. 1424. Instead, they

state that they "oppose this motion on the same basis they opposed API's summary judgment motion in the Enforcement Action to preserve those arguments for the appeal of this case as well." *Id*. at 1. Thus, these Defendants do not dispute that the Court's CERCLA liability ruling in the Enforcement Action is equally applicable here, subject to their appellate rights. Therefore, API's pending summary judgment motion is unopposed as to these Defendants.

Glatfelter opposes API's motion on two grounds, neither of which have merit. Glatfelter first contends that API "waived" its right to challenge its liability under CERCLA when it undertook performance of the 106 Order and then "dragged Glatfelter and others into this case." Dkt. 1425 at 2. This is a rehash of an argument the Court has already rejected. When API sought reconsideration of the Court's ruling in its March 1, 2011 Decision that API's CERCLA liability was "not contested," Defendants, including Glatfelter, opposed the motion on the ground that API's complaint and other filings in this action conceded its liability under CERCLA. Dkt. 1121 at 1-2. The Court dismissed the argument, stating: "Appleton Papers is correct that there was no basis to conclude that it had 'conceded' its liability in this action." Dkt. 1139 at 1. Glatfelter's re-packaged "waiver" argument raises nothing that undermines the Court's prior ruling.

Glatfelter next contends that API's motion overlooks allegations in Glatfelter's counterclaim claiming that API is liable under CERCLA for PCB contamination in the *Lower* Fox River because PCBs emanating from a facility API owns in Portage, Wisconsin were discharged into the *Upper* Fox River and that these PCBs found their way into OU-1 where they intermingled with the PCBs that Glatfelter and others discharged. Dkt. 1425 at 2. This argument is untimely and not supported by evidence in the record.

-2-
Case 2:08-cv-00016-WCG   Filed 09/04/12   Page 2 of 8   Document 1431

### 1. Glatfelter's Portage Argument is Untimely.

API's summary judgment motion in the Enforcement Action directly threatened the Defendants' CERCLA counterclaims in the *Whiting* action, since proof of liability under CERCLA is an essential prerequisite to their contribution claims. Recognizing this fact, Glatfelter and the other Defendants filed a brief opposing API's motion. No. 10-CV-910, Dkt. 206. However, the brief made no reference whatsoever to Glatfelter's Portage theory.

Glatfelter waived its Portage argument by failing to assert and support the argument in response to API's summary judgment in the Enforcement Action. The law is clear: As the party opposing a summary judgment motion, Glatfelter "was duty bound to wheel out all its artillery to defeat it — it could not hold back and then, if unsuccessful, point to other grounds that it should have advanced but did not." *Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc.*, 846 F. Supp. 677, 685 (N.D. Ill. 1994) (*citing Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 603–04 (7th Cir. 1989)), *aff'd*, 39 F.3d 138 (7th Cir. 1994). *See also Caisse Nationale de Credit Agricole v. CBI Indus. Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996); *Executive Ctr. III, LLC v. Meieran*, 823 F. Supp. 2d 883, 898 (E.D. Wis. 2011). Courts further hold that:

> The party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried.

*Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 666 (N.D. Ill. 1983) (*quoting Donnelly v. Guion*, 467 F.2d 290, 293 (2nd Cir. 1972)), *aff'd,* 736 F.2d 388 (7th Cir. 1984).

Here, Glatfelter is asking the Court to deny API's summary judgment motion and allow it to try to prove that API is liable under CERCLA — notwithstanding this Court's April 10, 2012 ruling to the contrary in the Enforcement Action — on the basis of an

argument that Glatfelter could have included in its opposition brief in the Enforcement Actiont, but chose not to. This is precisely the type of argument a summary judgment is designed to "smoke out." By failing to assert its Portage theory in opposition to API's summary judgment motion in the Enforcement Action, Glatfelter has waived the argument.

Glatfelter attempts to excuse its failure to assert its Portage argument by contending that "[API's] motion was not directed to any claim of Glatfelter." Dkt. 1425 at 4. This argument ignores that:

(1) Glatfelter knew or should have known that API's summary judgment motion in the Enforcement Action threatened its CERCLA counterclaims against API in *Whiting*, since API's liability under CERCLA was an essential prerequisite to that claim;

(2) Glatfelter knew or should have known that, if its Portage theory provided a basis for holding API liable under CERCLA to Glatfelter in the *Whiting* Action, it also provided a basis for establishing API's CERCLA liability to the Government in the Enforcement Action (even if the Government thought so little of the theory that it was unwilling to offer it); and

(3) Glatfelter knew or should have known that establishing API's CERCLA liability to the Government was *essential* to establishing API's liability to Glatfelter, since it is inconceivable that API could somehow *not* be liable under CERCLA to the Government in the Enforcement Action but yet liable to Glatfelter in *Whiting*.

In short, it was obvious to everyone that the disposition of API's summary judgment motion in the Enforcement Action had direct bearing on the viability of the CERCLA counterclaims pending against API in *Whiting*. Therefore, Glatfelter's claim that it had no reason to know that API's summary judgment motion against the Government's CERCLA claim threatened its own CERCLA claim against API in *Whiting* is specious.

Glatfelter's assertion of its Portage theory at this time is untimely for a second reason. Glatfelter recently raised its allegations regarding the alleged Portage releases as

grounds for denying NCR and API's pending summary judgment motion challenging the Defendants' state law counterclaims. *See* Dkt. 1413 at 19-20. In their reply brief (Dkt. 1428), NCR and API demonstrated that Glatfelter had forfeited the Portage argument by not raising it in advance of the February 2012 trial in this action:

> The Court's April 12, 2011 Scheduling Order, which counsel for PHG submitted in proposed form to the Court on behalf of the parties (Dkt. No. 1111), references "the remaining issues in this matter" but makes no mention of PHG's allegations regarding Portage. (Dkt. No. 1115.) Further, if the Portage claim was outstanding, it was PHG's responsibility to raise it at the pretrial conference and in the pretrial report. *See Quad/Graphics, Inc. v. One2One Commc'ns LLC*, No. 09-CV-99-JPS, 2012 WL 280605, at *2 (E.D. Wis. Jan. 31, 2012) (citing *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1443-44 (7th Cir. 1995)). As a result of PHG's failure to include (or even mention) the Portage claim in the final pretrial order, which is meant to "conclusively fix the issues that remain to be litigated", PHG forfeited it. *Id.*; *see also RK Co. v. Harvard Scientific Corp.*, No. 99 C 4261, 2007 WL 4150317, at *1 (N.D. Ill. Nov. 16, 2007) ("[C]laims, issues, defenses, or other theories of damages, not included in the pretrial order are waived even if they appear in the complaint"); *see also Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir. 1991) ("[I]ssues not preserved in the pretrial order [are] eliminated from the action.").

Dkt. 1428 at 18-19 of 20. Those grounds for dismissing Glatfelter's Portage theory are equally applicable here.

### 2. Glatfelter's Portage Argument is Not Supported by Evidence in the Record.

Glatfelter's Portage argument is predicated upon allegations that PCBs attributable to API were allegedly released into the Upper Fox River at Portage and ultimately contributed to the PCB contamination in (at least) OU-1. There is not one whit of evidence in the record supporting the allegation that PCBs allegedly released in Portage ended up in OU-1. The documents submitted with Glatfelter's opposition brief describes NCR's discovery of PCB releases at the Portage facility in 1973 and efforts by API (after its purchase of the property in 1978) to sample for PCBs at the Portage facility in the late

1970s. None of these documents provide any basis for associating alleged PCB discharges at Portage to the PCB contamination *more than 90 miles away* in OU-1.

Glatfelter offers nothing more than an assertion in its brief that "Portage is upstream of the Site, and so at least some PCB molecules released at Portage reached the Site." Dkt. 1425 at 2. As the following illustration demonstrates, describing Portage as "upstream of the Site" stretches the normal definition of "upstream":



Portage is located on the bottom left side of the map. To reach OU-1 (in Neenah-Menasha, on the top right side of the map) and the Lower Fox River, PCBs discharged into the Upper Fox River in Portage would have had to move down river approximately 15 miles to Buffalo Lake; travel through the 8 mile length of that lake and the lock and dam at Montello, then continue down river another five miles (approximately)

before reaching Lake Puckaway, pass through the 9 mile length of that lake and another lock and dam at Princeton, continue another (approximately) 40 miles to Lake Butte des Morts, then travel another (approximately) fifteen miles before reaching Lake Winnebago in Oshkosh, and then travel north for half the 30-mile length of Lake Winnebago before passing over dams at Neenah or Menasha and finally reaching Little Lake Butte des Morts.

Glatfelter has not offered an expert declaration (or any other evidence) indicating that PCBs discharged at Portage have made the incredible journey to OU-1 that Glatfelter postulates. There is *nothing* in the record connecting the alleged release of PCBs at Portage to the contamination in OU-1 aside from Glatfelter's meaningless assertion that Portage is "upstream." The fact that Glatfelter has not come forward with *any* evidence to support its far-fetched theory — more than four years afters filing its counterclaim — speaks volumes.

Contrary to Glatfelter's claim, API does not bear the burden to "address" and disprove the allegations regarding Portage in Glatfelter's counterclaim. Dkt. 1425 at 2. "The non-movant must go beyond the pleadings and 'set forth specific facts showing that there is a genuine issue for trial'." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See* also *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) [now Rule 56(c)] therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'."). Here, Glatfelter has failed to offer any evidence to support its claim that PCBs allegedly discharged at Portage reached OU-1. Accordingly, summary judgment should be entered for API.

## CONCLUSION

For the foregoing reasons, API respectfully requests that the Court enter summary judgment in its favor and dismiss Defendants' CERCLA counterclaims with prejudice as to API.

Dated this 4th day of September, 2012.

            Respectfully submitted,

            APPLETON PAPERS INC.


            By: /s/ Ronald R. Ragatz
               One of Its Attorneys

Counsel for Appleton Papers Inc.:

| | |
|---|---|
| Heidi D. Melzer (#1076125) | Ronald R. Ragatz (#1017501) |
| Hermes Law, Ltd. | Dennis P. Birke (#1018345) |
| 333 Main Street, Suite 601 | Megan A. Senatori (#1037314) |
| Green Bay, WI 54301 | DeWitt Ross & Stevens S.C. |
| (920) 436-9870 | Two East Mifflin Street |
| Fax: (920) 436-9871 | Madison, WI 53703 |
| | (608) 255-8891 |

Gregory A. Krauss
Gregory A. Krauss PLLC
1629 K St. NW, Suite 300
Washington, DC 20006
(202) 355-6430