UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

APPLETON PAPERS INC. and NCR CORP.,

          Plaintiff,

v.                                                   Case No. 08-C-16

GEORGE A. WHITING PAPER CO., et al.,

          Defendants.

**DECISION AND ORDER**

In this CERCLA contribution action, Plaintiffs have moved for summary judgment on the Defendants' state law counterclaims, arguing (primarily) that such claims are preempted by CERCLA. Plaintiff Appleton Papers Inc. ("API") has also moved for summary judgment on the CERCLA counterclaims brought against it. Finally, API has moved for leave to file an eighth amended complaint. For the reasons given below, the motions will be granted.

**I. State Law Counterclaims**

Plaintiffs' motion argues that any state law counterclaims brought against them are preempted by the CERCLA contribution claims that have already been decided. Some of the Defendants' counterclaims have since been dropped, but many remain. Defendant P.H. Glatfelter has counterclaims for contribution, cost recovery and indemnity; CBC Coating Inc. and WTM I Company have counterclaims for negligence and strict liability; and Menasha Corporation brings a counterclaim for creation and maintenance of a public nuisance.

Both sides rely on the Seventh Circuit's decision in *PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610 (7th Cir. 1998). There, the Seventh Circuit reversed a district court's order allowing PMC

to recover, under Illinois contribution law, costs that were barred under CERCLA. PMC had undertaken past cleanup costs, but it had not submitted its proposal for public comment, which is required under the National Contingency Plan. *Id.* at 616. As such, the district judge ruled that the costs could not be recovered under CERCLA. Even so, the judge found that the same costs *could* be recoverable under state contribution law. The Seventh Circuit reversed, finding that allowing recovery of such costs under state law would nullify or circumvent CERCLA's explicit requirements under the National Contingency Plan.

The analogy to this case is straightforward. I have ruled that the Defendants may not receive contribution for OU1 costs because NCR is not liable under CERCLA for discharges to OU1, a waterway upstream of its facilities. A trial confirmed that it was not liable as an arranger for that portion of the Site. Allowing the Defendants to obtain through state law claims what they failed to achieve through CERCLA would undermine CERCLA's complex scheme for apportioning the expenses that arise from a cleanup action. Just as in *PMC,* CERCLA denied relief to the Defendants because the costs simply were not recoverable under CERCLA. Allowing them to recover costs that CERCLA denied—costs that arise *because of* CERCLA—would certainly undermine CERCLA itself, just as in *PMC*.

One important factor that courts may consider is the genesis of the outlays that are sought to be recovered. If the funds were expended pursuant to CERCLA, and if CERCLA itself provides a scheme for reapportioning those funds, then allowing a state law claim to essentially re-reapportion those funds in a way CERCLA did not intend would pose a conflict. Thus, cases involving state law claims for contribution, such as *PMC,* find a conflict rather easily and bar the state law claims. The Defendants protest that their claims here are not "shadow" contribution

2

claims brought under state law but independently viable state law claims such as negligence and nuisance. Because they are not contribution claims, they would not "undermine" CERCLA but would merely supplement its reach. *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.,* 596 F.3d 112, 138 (2nd. Cir. 2010) ("CERCLA is not such a comprehensive scheme that it cannot be supplemented by state law.") But what "supplements" a federal law is sometimes in the eye of the beholder. If a state law gives something that the federal law explicitly takes away, that is not a supplement but a conflict.

> Section 113 is intended to standardize the statutory right of contribution and, in doing so, avoid the possibility of fifty different state statutory schemes that regulate the duties and obligations of non-settling PRPs who might be viewed as tortfeasors under the law of any particular state. Based on the text, § 113 was intended to provide the only contribution avenue for parties with response costs incurred under CERCLA.

*Id.* at 138.

The question is thus whether the state law claims—even if they are not "contribution" claims as such—would effectively reapportion costs incurred under CERCLA in a fashion that CERCLA itself would not countenance. That is, even if the claims are not *called* contribution claims, are they *quasi*-contribution claims that would have the same effect of redistributing the very same costs? Here, I conclude that the state law claims would have just that effect: the costs at issue arose under CERCLA and were subject to reallocation through contribution. This is true whether the claims are described as torts, nuisance or contribution claims. As such, a state law claim purporting to achieve a different allocation of those same funds would pose a conflict.

The Defendants say that because CERCLA did not "allocate" the OU1 costs here (because the Plaintiffs were not found liable for those costs), there should be no conflict. In essence, the

3

Defendants seek to benefit from the fact that they *lost* on the question of OU1 liability, as though that makes their anti-preemption argument stronger. But that is the point of preemption: what CERCLA takes away, state law claims cannot give back. Here, the costs at issue were incurred under CERCLA and were alloc*able*, it was just that a zero percent share was allocated to the Plaintiffs given their lack of liability for OU1. The Defendants' view seems to be that if this Court had found Plaintiffs liable for OU1 and had entered an allocation of liability (regardless of the amount), then there would be an obvious conflict. But because I found no liability at all under CERCLA for OU1, the statute is "inapplicable" and thus there is no conflict. But saying that one party is not "liable" under a statute does not mean the statute was not "applicable"; instead, the Court *applied* CERCLA and found no liability, which for preemption purposes is functionally equivalent to apportioning a zero percent share. If the Defendants' state law claims went forward, it would indeed undermine this Court's conclusion regarding the proper share of such CERCLA costs, regardless of how the Defendants describe their claims. The costs at issue resulted from CERCLA itself, a statute that provides its own mechanism for redistributing such costs. The Second Circuit came to a similar conclusion in *Niagara:* "NiMo makes no claims for cleanup costs outside of those it expended in compliance with the Consent Order and we have already determined that costs incurred pursuant to the Consent Order, as amended, fall within CERCLA. Because NiMo did not incur costs outside of CERCLA, NiMo has no grounds for contribution under New York law." *Id.* at 139.

    Defendant CBC Coating has a somewhat different take, because, as an OU2 company, it has been awarded its response costs and it did not seek any OU1 costs. As such, because it never alleged that Plaintiffs were liable to it for OU1, it cannot argue that Plaintiff's lack of liability under

4

CERCLA somehow benefits its own counterclaims. Instead, it argues that its claims for negligence and strict liability are based on state law duties having little to do with CERCLA. In essence, it asserts that NCR had a duty to warn CBC of the dangers involved in processing NCR broke, and the broke it sold was defective. It asserts that none of the preemption cases NCR cites involved state law claims where the claimant's CERCLA liability was caused by a defendant's breach of a state law duty.

But regardless of how the damages arose, they are still CERCLA damages. CBC paints itself as a "victim of tortious conduct," but it is only a "victim" in the sense that NCR's conduct has made it a PRP under CERCLA. Saying that it is a "tort" for one company to make another company liable under CERCLA is simply a clever way around CERCLA. As noted above, CERCLA itself both creates PRPs and provides the remedy if one PRP has paid more than its fair share; as such, a state law claim, however styled, that disturbs that statutory balance would conflict with the extensive scheme Congress has created.

The cases CBC cites are instructive. For example, in *MSOF Corp. v. Exxon Corp.,* the plaintiffs alleged negligence and strict liability torts under state law. 295 F.3d 485, 490 (5th Cir. 2002). These claims were pled in state court prior to removal. Unlike here, the plaintiffs in *MSOF* were innocent victims of the defendants' pollution, and thus they were not PRPs. Thus, in that case there would be no potential conflict between any remedy provided under CERCLA and any remedy provided under state law. Here, CBC has been deemed a PRP and must resort to the mechanisms that CERCLA itself provides for reallocation of its costs, or else the state law claims could conflict with CERCLA's distribution scheme. Likewise, in *Braswell Shipyards, Inc. v. Beazer East, Inc.,* the plaintiff's state law claim alleged that the defendant negligently failed to disclose a defective

5

condition on a property it sold the plaintiff. 2 F.3d 1331 (4th Cir. 1993). There, the court recognized that damages from such a tort are completely different than cleanup costs incurred under CERCLA: "the recovery in the negligent nondisclosure claim is separate and distinct from the recovery under CERCLA because the negligent nondisclosure claim provides damages measured by the 'benefit of the bargain' whereas the CERCLA claims will involve a determination of responsibility for response costs." *Id.* at 1337. Even though the damages were related (a CERCLA cleanup would increase the value of the property, thus ameliorating the loss due to the failure to disclose), the plaintiffs were not seeking "CERCLA" damages in their state law claims. Here, by contrast, the only costs CBC incurred arose under CERCLA. Ultimately, these cases stand for the simple principle that state law claims are not preempted merely because CERCLA might also provide a claim for relief. They do not, however, support the idea that a PRP in an action in which CERCLA has already apportioned the costs may *also* pursue state law claims seeking to recover those same CERCLA response costs.

For these reasons, I conclude that the state law counterclaims described above are preempted by CERCLA. The motion for summary judgment will therefore be granted.

**II. CERCLA Counterclaims**

API also moves for summary judgment on the CERCLA counterclaims brought against it. It argues that this Court has found it not liable under CERCLA in a related enforcement action, and this finding precludes any CERCLA counterclaims against it.

The Defendants oppose the motion simply in order to preserve their rights should my ruling in the enforcement action be overturned on appeal. Thus, I read their opposition as a concession

6

that the claims against API must be dismissed if my conclusion that it is not liable is correct. In addition, however, Glatfelter argues that the motion should be denied for two specific reasons. First, it argues that API started this whole action and dragged the Defendants into this case on the premise that it *was* liable along with all of the other PRPs. Even if that is true, however, subsequent rulings have changed that landscape. It would make little sense to proceed with CERCLA counterclaims in this action against API after having concluded that API is not liable under CERCLA.

Second, Glatfelter argues that part of its counterclaim is based on discharges in Portage, Wisconsin, which is upstream of the Site. It argues that these discharges could have flowed downstream to the Site, making API liable on that basis as well. Because these discharges have not been the subject of any discovery, Glatfelter believes it would be premature to enter judgment in API's favor. In Glatfelter's own words, however, this is a "defensive" claim, which is legalese for a claim one makes without necessarily believing in its merit. (The Site is only "downstream" of Portage, some ninety miles away by road, in a technical sense, as any discharges must travel through a labyrinth of numerous lakes and lock and dam systems.) Regardless, as API notes, this case is almost five years old and the time for making such arguments has long passed.

Glatfelter protests that the finding of no liability for API was only recently made, and it was made not in this case but in *United States v. NCR,* No. 10-C-910, the enforcement action brought by the government. In that action, Glatfelter states that it never had occasion to raise the argument, and thus it cannot be penalized for its failure to raise it there. But it did oppose API's motion for summary judgment on liability in that case, even though it did not file its own brief. Clearly, if it

7

believed that API was liable for some other reason not being addressed by the parties, the time to raise it was then.

Similarly, if Glatfelter truly believed that API was liable for the Site based on its discharges to a distant waterway, the proper course would be to marshal evidence or file an affidavit under Rule 56(d) explaining why the evidence was not yet available. Here, all we have in opposition to the motion for summary judgment are a couple pages of conjecture about how an unspecified number of PCB-containing molecules could have made the odyssey from Portage all the way to the Lower Fox River Site. In sum, I do not find the argument now made sufficient to create a genuine issue of material fact that would preclude summary judgment in API's favor, particularly given the fact that all parties have long recognized that this case was winding its way toward a final judgment for some time. Accordingly, API's motion for summary judgment on the CERCLA counterclaims will be granted.

### III. Amended Complaint

API has also filed a motion seeking leave to file an eighth amended complaint adding a claim of subrogation. It asserts that this claim is being pled in the alternative, in the event that this Court's determination of contribution responsibility is overturned. That is, if NCR ultimately does have a contribution recovery from the Defendants, API will be subrogated to NCR's rights. API recognizes that this case is almost at the finish line, but argues that amendment is warranted given the unusually complex nature of this action and the fact that its proposed claim is simply an alternative claim, a kind of placeholder to help reserve the right to argue the point should circumstances change following an appeal.

The Defendants oppose the motion on a number of grounds, but most of these go to the merits of the proposed amended claim rather than the advisability of allowing an amendment in the first place. Although the two concerns are not mutually exclusive, I am satisfied that what API proposes is simply a means of preserving its right to make an argument in the future in the event NCR's appeal is successful. Whether such an argument would be successful or not is another question; I cannot say at this stage that it would be utterly futile. And given that the claim is simply an alternative one that API will not be pursuing here (given my previous rulings), it will not prejudice the other parties, nor will it hold up final resolution of this action. Accordingly, the motion to amend will be granted.[1]

**IV. Conclusion**

The Plaintiffs' motion for summary judgment on preemption grounds is **GRANTED**. API's motion for summary judgment is also **GRANTED**. API's motion to amend the complaint is **GRANTED**. The proposed amendment will be filed on the docket as its Eighth Amended Complaint. The parties are directed to confer and file a proposed final judgment, or explain why agreement could not be reached, within ten days of the date of this order.

**SO ORDERED** this   4th   day of October, 2012.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[1] WTM and Glatfelter also request clarification on an issue relating to a previous motion to amend, which was denied. In denying the motion without prejudice, I was not intending to suggest that they could bring the same motion again in this case at some future date. I was simply clarifying that I was not ruling on the merits of the claims so as to prejudice their ability to bring them in some other another action or forum.

9