**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | | |
|---|---|---|
| APPLETON PAPERS INC. and NCR CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08-CV-16-WCG |
| GEORGE A. WHITING PAPER COMPANY, et al., | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NCR CORPORATION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 08-CV-895-WCG |
| KIMBERLY-CLARK CORPORATION, et al., | ) ) | |
| Defendants. | ) | |

**PLAINTIFF NCR CORPORATION'S BRIEF ON THE INSURANCE OFFSET
OF P.H. GLATFELTER COMPANY'S OU2-5 RESPONSE COSTS**

Plaintiff NCR Corporation ("NCR") respectfully submits this brief concerning the amount of the insurance offset that should apply to the OU2-5 response costs incurred by P.H. Glatfelter Company ("PHG"). PHG's recycling facility was located in OU1 of the Lower Fox River Site (the "Site"), and the "lion's share" of the contribution that PHG was seeking from NCR arose out of OU1-related remediation expenses. (Dkt. #1405 at 33.) The Court's July 2012 ruling that NCR is not liable for any OU1 costs at the Site rendered moot the issue of whether those OU1 costs were offset by PHG's massive insurance recoveries. As to PHG's OU2-5 costs, the Court deferred consideration of the insurance offset. That issue is now before the Court.[1]

## PRELIMINARY STATEMENT

The key facts here are undisputed. PHG's Fox River insurance recoveries far exceed its recoverable costs. Specifically, PHG incurred less than $4.3 million in response costs (the "PHG Costs") but recovered more than _____ in insurance by settling its Fox River policy claims. (Dkt. #1470 at 2; #1321 ¶¶ 4-13; #1325 at 12.) Thus, only one issue remains to be resolved in this matter as between NCR and PHG—whether PHG can recover any of the PHG Costs from NCR given that PHG's insurance recoveries covered and greatly exceeded those costs.

Under *Friedland v. TIC-The Industrial Co.*, 566 F.3d 1203 (10th Cir. 2009), which this Court followed in its March 2011 Order (Dkt. #1080 at 24-25), the answer is no. The Tenth Circuit, like other courts that have addressed the issue, held that the collateral source rule—which

---

[1] In the July 2012 Order, the Court noted that "there may be some minimal insurance offset issues with respect to WTM and/or Glatfelter to the extent they had expenses outside of OU1" and encouraged the parties to reach a settlement. (Dkt. #1405 at 35.) NCR and WTM reached such a settlement as reflected in a stipulation entered in October 2012, whereby the parties agreed on an insurance/indemnity offset of about 66% of WTM's OU2-5 costs (subject to certain conditions set forth therein), which the Court approved. (Dkt. #1456; #1473.) NCR and PHG made good faith efforts to reach a settlement as to the amount by which PHG's costs should be offset, but were ultimately unsuccessful. (Dkt. #1470 at 2.) NCR and PHG thus agreed to brief the insurance offset issue. (*Id.* at 2-3.)

allows an injured plaintiff to recover more than the damages it has suffered—does not apply in CERCLA contribution actions. *Friedland*, 566 F.3d at 1209. The policy underlying that decision is consistent with the statute's remedial purpose: a CERCLA plaintiff (here, PHG) is not "entitled" to money as a damaged party; rather, it "can only receive reimbursement for the costs [it] expended beyond [its] share of actual responsibility for the environmental damage", given that "CERCLA contribution actions are not injury actions in which the injured party is seeking compensation for damages to be made whole again". *Id.* at 1207. This Court, in its March 2011 Order, thus denied contribution to PHG (and the other Defendants) to the extent the costs being sought in contribution "have been covered by insurance". (Dkt. #1080 at 25.)

Further, *Friedland* makes clear that, to avoid an offset, the contribution plaintiff has the burden of proving that it specifically allocated its insurance payments in its settlement agreements to costs *other* than those it seeks in contribution. 566 F.3d at 1209-10. PHG cannot meet that burden. Not only did PHG fail to allocate *any* of its insurance recoveries to costs other than those it now seeks from NCR, but it expressly [                                    ]

[                                                                                    ]

includes the PHG Costs. (Dkt. #1380 ¶ 149.2.) The PHG Costs are thus unquestionably "covered by insurance"—[                              ]. This should end the inquiry.

Finally, even if the Court departs from its reliance on *Friedland*, NCR is still entitled to a complete, or at least a substantial, offset of the PHG Costs based on the equitable analysis of NCR's insurance expert, Professor Kenneth Abraham. (Dkt. #1405 at 34.) Under Professor Abraham's approach, PHG's judgment against NCR should be zero to no more than a maximum of $[            ].

2

## ARGUMENT

### I.   ALL OF THE PHG COSTS ARE OFFSET BY PHG'S SUBSTANTIAL INSURANCE RECOVERIES.

#### A.   The *Friedland* Rule Applies Here.

The threshold insurance issue relevant to this matter has already been resolved. In March 2011, the Court ruled—following *Friedland*—that the collateral source rule does not apply in this action and that, accordingly, PHG is not entitled to recover costs in contribution "to the extent any of the funds it seeks have been covered by insurance".[2] (Dkt. #1080 at 25.) The related rule from *Friedland*—that, to avoid an offset, a contribution plaintiff has the burden of allocating its insurance payments in its settlement agreements to costs other than those it seeks in contribution—flows logically from the rejection of the collateral source rule. *See Friedland*, 566 F.3d at 1209-11; *see also Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197, 1208-09 (10th Cir. 1988) (reducing a plaintiff's judgment by the amount of its prior settlements where the settlement documents did not allocate between different damages).

As NCR has previously explained,[3] placing the burden on PHG here is consistent with *Friedland*'s notion that a CERCLA contribution plaintiff is not "entitled" to money as a damaged party. This rule is also efficient, insofar as it requires—in the words of PHG's own insurance expert, Ross Mishkin—that the party in the "best position to allocate particular insurance settlement payments" be the one to do so. (Dkt. #1380 ¶ 146.3.)

---

[2] Other courts have followed this Court's decision. *See N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 808 F. Supp. 2d 417, 526-27 (N.D.N.Y. 2011) (reducing the plaintiff's contribution costs for various remediation sites by the amount of its insurance recovery and relying on the March 2011 Order, which "cit[ed] and follow[ed] *Friedland*").

[3] *See, e.g.*, Dkt. #1330 at 42-45; #1339 at 3-7; #1380 at 5, 58-63; #1396 at 21-24; *Whiting* Trial Tr. 691:21-692:1, 803:22-804:2.

Based on the *Friedland* standard, the PHG Costs are entirely offset. The circumstances supporting an offset here are even more persuasive than those in *Friedland*. There can be no dispute that PHG's insurance recoveries were driven by PHG's Fox River liability, including the OU2-5 response costs it had incurred at the time of its settlements. PHG's negotiations with its insurers leading up to the agreements were dominated by PHG's Fox River liabilities, and [                                        ] from the PHG Costs at issue here. (*Id.* ¶¶ 143, 145.) PHG was in the "best position" to allocate its insurance recoveries to costs other than those it is seeking from NCR, but it decided not to do so. (*Id.* ¶¶ 146, 146.3.) PHG's failure to allocate its insurance recoveries to specific costs was "fatal to its contention that [NCR is] not entitled to a credit in the settlement amount[s]". *Friedland*, 566 F.3d at 1210.

Indeed, when PHG wanted to allocate its insurance proceeds, that intent was [                                        ]. In PHG's [                                        ] [                                        ] PHG expressly agreed to [                                        ] [                                                                          ] (*Id.* ¶¶ 147, 149.2.) Mr. Mishkin testified at trial that a [                                        ] [                                                                          ] [                                        ] which are now limited to the PHG Costs. (*See id.* ¶ 149.3.) Accordingly, under *Friedland*, all of the PHG Costs should be offset by PHG's massive insurance recoveries.

**B.      PHG's Efforts to Avoid the Application of *Friedland* Are Unpersuasive.**

PHG has given a litany of reasons for why the costs it seeks in contribution from NCR should evade the *Friedland* rule. Although PHG has changed its story over time (as NCR

4

has rebutted each position),[4] it has focused on one theme: that PHG has not been "made whole". In PHG's view, its insurance recoveries should be allocated in the first instance to costs it *cannot* recover from NCR through contribution—such as its defense costs and its unclaimed claims (whether known or unknown)—and that no offset of PHG's past costs can be allowed until all other potential liabilities have been covered.

PHG's approach would turn *Friedland* on its head and allow the collateral source rule to govern. Indeed, no party would ever specify an allocation in its insurance agreements if it could resort to a default "made whole" rule. Numerous courts, including this one, have rejected this approach in the CERCLA context, reasoning that CERCLA was not enacted "to make injured parties whole or to be a general vehicle for toxic tort actions". *Raytheon Aircraft Co. v. United States*, No. 05-2328-JWL, 2007 WL 4300221, at *6 (D. Kan. Dec. 8, 2007); *see also Basic Mgmt., Inc. v. United States*, 569 F. Supp. 2d 1106, 1123-24 (D. Nev. 2008).

Contrary to what PHG has argued, its approach is based in self-interest, not policy considerations. The costs at issue here illustrate this point. Prior to the February 2012 trial, PHG asserted that its insurance settlements were primarily for OU2-5 (among other costs), and *not* for its "relatively small liability in OU1". (Dkt. #1382 at 37-38.) But following the Court's July 2012 arranger ruling, PHG cannot recover its OU1 costs from NCR. With the benefit of hindsight, PHG may contend that its insurance recoveries *should* be allocated to its OU1 costs in the first instance. Such *post-hoc* allocation is precisely what the *Friedland* rule helps avoid. *See* Scott M. Seaman & Jason R. Schulze, *Allocation of Losses in Complex Insurance Coverage Claims* § 15:2 at 15-7 (2d ed. 2011).[5]

---

[4] *See, e.g.*, Dkt. #1380 at 49-54, 61-63; #1396 at 25.

[5] As NCR has noted, this leading insurance treatise, which was cited as "authoritative" by Mr. Mishkin, PHG's own expert (TX 6013 at 6), criticizes some of the positions taken by PHG.

5

If PHG departs from its extreme position (that the costs it seeks from NCR should not be offset at all), it may argue that the offset should be no more than the percentage by which the Court offset CBC's costs in the July 2012 Order. That argument would be misplaced, as PHG's and CBC's circumstances are entirely distinguishable. The Court found that the majority of CBC's insurance proceeds could not be considered "for" its cleanup costs because CBC *expressly* allocated most of its insurance to defense costs in its settlement agreements.[6] (Dkt. #1405 at 34-35.) It is in precisely such circumstances that the costs may not offset a plaintiff's claim. In fact, CBC provides a good example of *Friedland* in practice—if a party wants to avoid a complete offset, it need only state its preferred allocation in its settlement agreement.

As explained above, none of PHG's insurance recoveries was allocated in its insurance agreements to defense costs or to any other unrecoverable costs. The only [          ]

[                                                                ]

[                                                                ]

includes the PHG Costs. Accordingly, based on the *Friedland* rule and this Court's application of it, the PHG Costs (less than $4.3 million) are entirely covered by PHG's insurance recoveries (more than $[          ]. PHG is thus not entitled to any judgment for its past OU2-5 costs.

## II.   ALTERNATIVELY, THE PHG COSTS SHOULD AT LEAST BE SUBSTANTIALLY REDUCED BASED ON EQUITABLE PRINCIPLES.

For reasons NCR has addressed, PHG's argument that *Friedland* is an "aberration" and should be limited to its facts—or rejected altogether—is unpersuasive. (*See* Dkt. #1339 at 5; #1380 at 60-63; #1396 at 22.) Moreover, as discussed, the Court has already followed the

---

[6] NCR argued at trial and in post-trial briefing that all of CBC's costs should be fully offset because the only costs at issue—CBC's Fox River Group costs (which it labeled as "defense costs" in the context of its insurance action)—were fully reimbursed by CBC's insurers. (*See* Dkt. #1380 at 54-55, 64-65.) NCR thus reserves its right to appeal the Court's ruling as to CBC.

6

*Friedland* rule, a fact that PHG has ignored. The Court thus need not consider expert testimony (from either party). In the alternative only, if the Court were to depart from its prior reliance on *Friedland*, NCR has shown that it is entitled to a substantial offset of the PHG Costs based on equitable principles.

Professor Abraham's analysis, which the Court found to be "a conservative and reasonable approach to a difficult problem" as to CBC (Dkt. #1405 at 34), can also be applied to the PHG Costs. As explained during trial and post-trial briefing, Professor Abraham developed a methodology—relying on his experience and familiarity with insurance industry customs and practices—that involves the step-by-step application of certain objective principles. (*See* Dkt. #1380 at 46-47; Tr. 1069:4-1070:21; TX 681 at 4-11.) Applying his principles to PHG's settlement agreements, Professor Abraham calculated the approximate amount of each insurance recovery that equitably could be considered to offset the costs that PHG was seeking in contribution from NCR. Specifically, Professor Abraham determined that the amount of the offset for PHG's costs should be between $[                    ], which is approximately [                    ]% of PHG's initial contribution claim. (*See* Dkt. #1380 at 53; TX 681 at 16.) Professor Abraham's conservative offset ($[                    ] far exceeds the costs that PHG can recover from NCR ($4.3 million). Thus, even if *Friedland* does not apply, PHG is still not entitled to any judgment for its past OU2-5 costs.

PHG may urge the Court not to adopt Professor Abraham's analysis for several reasons. *First*, PHG may contend that, if the Court does not follow *Friedland*, then PHG's "made whole" position has merit. But the Court has already rejected this argument. CBC took the position that no offset should apply to its contribution costs "because it has not yet been made whole on a 'net' basis". (Dkt. #1405 at 35.) In the July 2012 Order, the Court nevertheless found

7

that some of CBC's costs should be offset (by the amount Professor Abraham proposed), because "the fact remains that [CBC] received large settlement payments with its insurers, and at least part of those settlements can be chalked up to funds that it seeks to recover from [NCR]". (*Id.*)

   *Second*, PHG may argue that Professor Abraham's conclusion as to PHG is no longer applicable because it included PHG's OU1 costs as "past contribution", which PHG can no longer recover. Professor Abraham's approach applies regardless of the arranger ruling, as his offset is based on the amount of PHG's insurance recoveries, not PHG's contribution claim. But even if Professor Abraham's analysis is applied pro rata, the PHG Costs are substantially offset. This pro rata approach yields the following results:

| | Amount of PHG Claim | Abraham Offset | Amount of Judgment |
|---|---|---|---|
| Prior Analysis (including OU1 costs) | ~$59.4M | | |
| **Pro Rata Analysis (for PHG Costs)** | **~$4.3M** | | |

This analysis provides a conservative upper-bound range for PHG's judgment. Therefore, if the Court departs from its prior reliance on *Friedland*, then PHG should be awarded no more than $[          ], the midpoint of Professor Abraham's range ($[          ]), which equates to an offset of approximately $[          ].

## CONCLUSION

   For the foregoing reasons, NCR respectfully requests that the Court rule that PHG is not entitled to recover any of its OU2-5 costs, which total $4,283,114.13, because those costs are offset by PHG's substantial insurance recoveries. If the Court departs from its reliance on *Friedland*, then NCR respectfully submits that PHG's judgment against NCR should be, consistent with Professor Abraham's analysis, zero to no more than to $[          ].

---

[7] The specific offset range is: $[          ]
[8] The specific judgment range is: $[          ]

8

Dated: January 15, 2013

Respectfully submitted,

/s/ Darin P. McAtee
CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Darin P. McAtee
Yonatan Even
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
dmcatee@cravath.com

SIDLEY AUSTIN LLP
Evan B. Westerfield
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson
Bradley M. Marten
1191 Second Avenue
Suite 2200
Seattle, Washington 98101
Phone: (206) 292-2600
Fax: (206) 292-2601

**Attorneys for Plaintiff NCR Corporation**

9