IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| APPLETON PAPERS INC. and NCR CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08-CV-00016-WCG |
| GEORGE A. WHITING PAPER COMPANY, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OF DEFENDANT P.H. GLATFELTER COMPANY ON THE "UNRESOLVED ISSUE" OF INSURANCE OFFSET

In July 2012, the Court held that Defendant P.H. Glatfelter Company ("Glatfelter") may recover from NCR Corporation ("NCR") $4,283,114.13 that Glatfelter expended through the Fox River Group to conduct natural resource damage assessment and restoration activities. Dkt. No. 1405 [Findings and Conclusions] at 22-23; Dkt. No. 1470 [Stipulation] at 2. However, in March 2011 the Court had held that any amounts that a defendant might recover in contribution would be off set to the extent that any expenses sought by that defendant from NCR had been already borne by one of that defendants' insurers. Dkt. No. 1080 [Decision and Order on Summary Judgment] at 24-25. The amount of that set off was fully tried in February 2012 and briefed before and after trial. The result of the trial was to deny Glatfelter most of the recovery it sought, and so the Court decided "not to address setoff issues with respect to" Glatfelter and

WTM I Company, Dkt. No. 1405 at 33, in the expectation that they might be settled, *id.* at 35.

Notwithstanding NCR's and Glatfelter's agreement both on this background, Dkt. No. 1470, and on the fact that half of $4,283,114 is $2,141,557, the parties have not reached agreement regarding the amount of a judgment that should be entered on Glatfelter's counterclaim.

Glatfelter offered expert testimony of Ross Mishkin at trial and has previously briefed in full the reasons why Glatfelter's recovery should not be reduced by its insurance coverage settlement proceeds. Dkt. 1321 [Sealed Stipulated Facts re Glatfelter's Insurance]; Dkt. 1328 [Certain Defendants' Pretrial Brief on Application of the Court's Ruling on Setoff for Insurance Proceeds]; Dkt. 1333-1 [Glatfelter's Pretrial Brief]; Dkt. 1367 [Sealed Trial Transcript of Ross Mishkin]; Dkt. 1382 [Defendants' Findings of Fact and Conclusions of Law]; Dkt. 1394 [Defendants' Responsive Post Trial Brief]; Exh. 6013 [Mishkin Glatfelter-Specific Written Direct Testimony]. Mr. Mishkin's opinions and Glatfelter's earlier briefs focused on the reasons why insurance coverage settlement amounts should not be set off from Glatfelter's recovery of $44,512,554 in costs incurred by Glatfelter to clean up Operable Unit 1 under the consent decree and amended consent decree in *United States v. P.H. Glatfelter Co.*, No. 2:03-cv-949-LA. For example, Glatfelter's insurance settlements covered risks of large losses at the Fox River Site, many of which would occur in the future, and not the proportionally smaller OU1 clean up and other past costs that Glatfelter sought from Plaintiffs. Exh. 6013 [Mishkin Glatfelter-Specific Written Direct Testimony] at 2. Indeed, the United

States continues to seek additional relief from Glatfelter for cleanup of OU4, a claim that was the subject of the December 2012 trial in *United States v. NCR Corp.*, No. 1:10-cv-910-WCG. Those reasons still apply.

In addition, the Court has held that Glatfelter may *not* recover its $44.5 million in OU1 costs nor may it recover over $4.3 million in FRG "non-agreement" costs and more than $6 million in agreed interest. Dkt. 1405 [Findings of Fact and Conclusions of Law]. On these new facts, there should be no insurance offset against Glatfelter's recovery for at least two additional reasons.

First, there is no dispute that Glatfelter expended more in compliance with the OU1 consent decree than Glatfelter received from its insurers on account of their indemnification obligations. Second, the FRG costs that Glatfelter has recovered are amounts that NCR agreed to reimburse, and so there can be no fairness reason for Glatfelter not to recover them in full.

### 1. Glatfelter received less from its insurers for cleanup than Glatfelter spent in OU1.

Glatfelter received no more than ▓▓▓ million from its insurers on account of their indemnification obligation, and spent $44.5 million in compliance with the OU1 consent decree. There is nothing left to set off here.

Glatfelter's insurance coverage settlement payments totaled ▓▓▓▓▓▓, all of which was in exchange for policy buy-backs or site releases. Exh. 6013 [Mishkin Glatfelter Specific Written Direct Testimony] at 3. Some of those settlement payments were from primary insurers that had a duty to defend outside of policy limits. *Id*. at 5-6.

3

Case 2:08-cv-00016-WCG   Filed 01/15/13   Page 3 of 10   Document 1476
PHI 317,020,524v6 1-15-13

Most importantly, Carrier X paid ▆▆▆▆▆ to buy back policies with limits of ▆▆▆▆▆. *Id*. There is therefore no possible question that **at least** ▆▆▆▆▆ of Glatfelter's insurance coverage settlement proceeds was **not** on account of any liabilities Glatfelter had to clean up or otherwise to address the Fox River. *Id*. at 6. NCR's expert, Prof. Kenneth Abraham, agreed. Exh. 681B [Kenneth Abraham Glatfelter-Specific Written Direct Testimony] at 4 ("▆▆▆▆▆ of the settlement amount from Carrier X should be considered payment for Glatfelter's Fox River indemnity costs, with the remainder allocated to Glatfelter's defense costs, on account of the primary policies' defense obligations."). The maximum that *could* have been paid by Carrier X on account of its indemnification obligation was ▆▆▆▆▆, the limits of the Carrier X policies. Exh. 6013 [Mishkin Glatfelter Specific Written Direct Testimony] at 6; Exh. 681 [Kenneth Abraham General Written Direct Testimony] at 8 ("any offset to which a party liable for contribution is entitled must be on account of that portion of a settlement paid as indemnity rather than for defense costs.").

Ignoring all other issues, the *maximum* amount that Glatfelter received from its insurers on account of their duty to indemnify Glatfelter for cleanup or natural resource damages liabilities was ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Both Glatfelter's expert, Mr. Mishkin, and NCR's expert, Prof. Abraham, agreed that this ▆▆ million is the sum of amounts (a) actually paid on account of indemnification obligations or (b) unallocated but potentially paid on account of indemnification obligations. Exh. 6013 [Mishkin Glatfelter Specific Written Direct Testimony] at 6; Exh. 681B [Kenneth Abraham Glatfelter-Specific Written Direct Testimony] at 5 (arguing only "▆▆▆▆

4

Case 2:08-cv-00016-WCG   Filed 01/15/13   Page 4 of 10   Document 1476
PHI 317,020,524v6 1-15-13

█████ of the Carrier X settlement amount should be considered to offset the costs that Glatfelter is seeking in contribution from NCR."), and at 15 ("an offset for the costs that Glatfelter is seeking in contribution from NCR should be between ████████ ████████.").

████ █████ is less than the $44.5 million Glatfelter spent in compliance with the OU1 consent decree. All of Glatfelter's insurance and more has been spent on OU1. There is nothing left to set off.

NCR will argue that the Carrier X settlement agreement did not allocate the settlement payment between defense and indemnity. NCR will claim that the Court should follow *Friedland v. TIC-The Industrial Co.*, 566 F.3d 1203 (10th Cir. 2009), and that *Friedland* calls for all unallocated payments to be treated as if they were on account of indemnity. For the reasons Glatfelter has already stated, *Friedland* does not govern this case; the insurance settlements here were policy buy-backs and policy releases, not payments by an insurer that accepted coverage. Exh. 6013 [Mishkin Glatfelter Specific Written Direct Testimony] at 3-4; Dkt. 1321 [Sealed Stipulated Facts re Glatfelter's Insurance] at ¶ 2 (all insurers denied Glatfelter's claims for defense and/or indemnity coverage); Dkt. 1382 [Defendants' Findings of Fact and Conclusions of Law] at 42-51; Dkt. 1394 [Defendants' Responsive Post Trial Brief] at 18-28. However, even if *Friedland* did inform the Court's decision here, *Friedland* is not a "magic words" opinion. Mr. Friedland failed to recover because he was promoting a clever reading of his insurance settlement agreements that would have allowed him to recover a windfall. Thus, even though CBC Coating's ("CBC's") insurance settlement agreements do not use
5

the magic word "allocate," the Court attributed some of CBC's insurance coverage settlement payments to defense, and some to the costs CBC was seeking from NCR. Dkt. No. 1405 at 33-35. There is no reasonable reading of Glatfelter's Carrier X settlement agreement that would allow one to conclude that more than ███████ of the settlement amount was on account of Carrier X's indemnification obligation. The agreement states that amount to be a payment that exhausted the policies (and therefore extinguished the defense obligation). Exh. 696 [SEALED - Glatfelter settlement agreement with Carrier X] at ¶¶ 6-7 ("█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"). The ███████ additional that Carrier X paid was on account of defense. Exh. 681B [Kenneth Abraham Glatfelter-Specific Written Direct Testimony] at 4. NCR's expert agrees. *Id*.

Nor can NCR credibly argue that Glatfelter has not incurred ███████ of defense costs. Glatfelter's Director of Accounting Services, Jay O'Keefe testified that Exhibit 6001 properly summarized Glatfelter's legal and consulting defense costs actually paid through October 2011, Tr. 723-25, and Exhibit 6001 reflected payments totaling more than $30 million. Dkt. 1382 [Defendants' Post-Trial Proposed Findings of Fact and Conclusions of Law] at ¶ 245. Since October 2011, the Court may take notice

6

of the fact that a trial occurred in this case and that discovery and trial, start-to-finish, occurred on the United States' Fifth Claim for Relief in *United States v. NCR Corp.*, No. 1:10-cv-910-WCG. Thus, there can be no reasonable question that Glatfelter has expended for its defense all of the amounts allocated to defense in the Carrier X settlement.

Even if *Friedland* were to guide the decision in this case, which *Friedland* should not, *Friedland* would not suggest any set off from Glatfelter's recovery. *Friedland* cannot be read to grant NCR a right to Glatfelter's insurance coverage settlement proceeds ahead of the underlying plaintiffs, that is, the United States and the State of Wisconsin. Glatfelter spent more than its insurance coverage settlement proceeds just on OU1. The United States is vigorously -- although, Glatfelter contends, ineffectively -- pursuing even more. That is where the insurance went. NCR gets none.

### 2. NCR agreed to reimburse the $4.3 million that Glatfelter seeks.

Moreover, with particular respect to the specific recovery that Glatfelter has obtained, NCR's demand for an insurance off set is troubling. Other than a payment of $31,880.13 on account of OU2-5 oversight costs, essentially all of the $4.3 million that the Court held Glatfelter may recover are payments made on an interim basis to the FRG. *See* Dkt. 1382 [Defendants' Post-Trial Proposed Findings of Fact and Conclusions of Law] at ¶¶ 226-28; Dkt. 1320 [Final Pretrial Report] at Stipulated Facts ¶¶ 48-57. NCR agreed to reallocate those amounts. Exh. 483 [1999 Agreement on Interim Allocation] at FRGCOSTS000077. The Court has declined to consider the merits of claims under the FRG agreements, but that does not preclude the Court from considering the FRG

7

agreements on an equitable basis here. *See, e.g., Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321 (7th Cir. 1994); *see also Berrey v. Asarco, Inc.*, 439 F.3d 636 (10th Cir. 2006); *Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 299 F.3d 1019 (9th Cir. 2002). NCR cannot avoid doing what it promised to do just because Glatfelter settled its insurance coverage cases. That would be unfair in the extreme, and fairness is the touchstone of an allocation under section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

### 3. Conclusion.

This Court does not have to decide whether it should use *Friedland* as a guide when considering insurance coverage settlements involving policy buy-backs and site releases. The Court does not have to decide exactly what portions of Glatfelter's insurance coverage settlement proceeds were "for" the $4.3 million it is seeking here. The Court need only find that Glatfelter spent more in OU1 than it recovered from its insurers on account of indemnity. That being true, no off set is appropriate.

Glatfelter respectfully submits that the Court should enter judgment in its favor, and against NCR, in the amount of $4,283,114.13, together with the other relief as agreed among the parties.

8

PHI 317,020,524v6 1-15-13

Dated: January 15, 2013	Respectfully submitted,

*s/ David G. Mandelbaum*
David G. Mandelbaum
Frank A. Citera, Jr.
Marc E. Davies
Caleb J. Holmes
Adam B. Silverman
GREENBERG TRAURIG, LLP
Two Commerce Square, Suite 2700
2001 Market Street
Philadelphia, PA 19103
215.988.7800
mandelbaumd@gtlaw.com

**Attorneys for Defendant P.H. Glatfelter Company**

PHI 317,020,524v6 1-15-13

# CERTIFICATE OF SERVICE

I, David G. Mandelbaum, do hereby certify that on this 15th day of January, 2013, I caused a redacted copy of the foregoing Memorandum of Defendant P.H. Glatfelter Company on the "Unresolved Issue" of Insurance Offset to be served on all counsel of record by filing via the CM/ECF system. I also hereby certify that I caused a non-redacted copy of the foregoing Memorandum to be served on the Court by overnight delivery and on Plaintiff NCR Corporation by email.

Dated: January 15, 2013

Respectfully submitted,

*s/ David G. Mandelbaum*
David G. Mandelbaum
GREENBERG TRAURIG, LLP
Two Commerce Square, Suite 2700
2001 Market Street
Philadelphia, PA 19103
215.988.7800
mandelbaumd@gtlaw.com

**Attorney for Defendant P.H. Glatfelter Company**

10

Case 2:08-cv-00016-WCG   Filed 01/15/13   Page 10 of 10   Document 1476

PHI 317,020,524v6 1-15-13