IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. and
NCR CORPORATION,

        Plaintiffs,

    v.

GEORGE A. WHITING PAPER
COMPANY, et al.,

        Defendants.

Case No. 08-CV-16

## MEMORANDUM OF PLAINTIFF APPLETON PAPERS INC.
## IN SUPPORT OF ITS MOTION TO RECONSIDER THE COURT'S DISMISSAL
## OF ITS CLAIMS FOR RELIEF UNDER CERCLA § 107

Plaintiff Appleton Papers Inc. ("API"), by its undersigned counsel, respectfully submits this Memorandum in support of its motion to reconsider the court's dismissal of its claims for relief under CERCLA § 107.

## INTRODUCTION

This motion is prompted by the Court's March 29, 2013 decision in the Enforcement Action (Case No. 10-C-910) which dismissed API's CERCLA § 107 cross-claims in that action. EA Dkt. 787.[1]  In its decision, the Court acknowledged the unique circumstances presented here, where API was named as a liable party in the 106 Order, compelled to incur more than $100 million in remediation costs pursuant to that Order, and then was found to have no liability under CERCLA.  The Court correctly observed that "these are unique procedural circumstances that other courts have not addressed." *Id*. at 2.

---

[1]  "EA Dkt." refers to docket entries in the Enforcement Action.

To date, this Court has not squarely addressed the proper remedy for a party in API's position. The Court dismissed API's original § 107 claims in *Whiting* in August 2008 — long before the Court ruled on April 10, 2012, that API has no CERCLA liability. EA Dkt. 349 ("No Liability Decision"). The motions to dismiss API's § 107 cross-claims in the Enforcement Action, filed just a few weeks after the No Liability Decision was rendered, seemed to present an opportunity to consider the question, and the parties' briefs addressed the merits of the issue. In its March 29 decision, however, the Court declined to address the issue because it concluded the matter should be addressed in *Whiting*: "Simply put, the fact that there happens to be another, later-filed civil action involving the same parties does not give a party license to restate claims that have been addressed in the earlier-filed action." Dkt. 787 at 2. The Court continued that: "If circumstances warrant revisiting any decisions in *Whiting*, API may move for reconsideration on that basis in the other case," *i.e.*, in *Whiting*. *Id.* API believes that the No Liability Decision and CERCLA case law developments, including a recent Seventh Circuit decision, have created just such circumstances. Therefore, following the guidance of the Court and to ensure the issue is preserved for appeal (since it has not been squarely addressed in either pending action), API now brings this motion.

CERCLA §§ 107 and 113 provide remedies to parties in different procedural postures. *United States v. Atlantic Research Corp.,* 551 U.S. 128, 138 (2007). If a party has incurred response costs pursuant to one of the triggering events under § 113(f), then the party can pursue contribution for such costs. *Id.* If not, then the party is entitled to pursue a § 107 cost recovery claim. *Id.* at 139. This Court has embraced those principles in its earlier decisions addressing API's § 107 claims, stating that the "operative

principle" is that "§ 107(a) is available to recover payments only in cases where § 113(f) is not." Dkt. 227 at 11.

Here, the Government issued a 106 Order to API and subsequently sued API to enforce that Order (and for other relief). Based on recent CERCLA case law interpreting § 113(f), it is now clear that it was only the filing of the Government's lawsuit in 2010 that triggered a right to pursue contribution for costs related to the 106 Order. The Government alleged facts in the Enforcement Action which, if proven, meant that API had a common liability to clean up the Lower Fox River under the 106 Order.

The Government, however, failed to prove such allegations and the Court ruled that API has no CERCLA liability. EA Dkt. 349. The statutory trigger for a § 113(f) claim was thus dismissed against API. Since API was determined to have no CERCLA liability, its 106 Order costs could not be the subject of a contribution claim since they did not result from payment of a disproportionate share of a common liability. As a result, API's remedy for the costs it has incurred in complying with the 106 Order lies under § 107. As this Court has stated:

> [P]arties who do not have access to § 113(a) [sic] . . . because they are completely innocent and do not share common liability with any PRPs . . . must be allowed to recover under § 107(a) if injustice is to be avoided.

Dkt. 227 at 12.

## STATEMENT OF FACTS

In February 1996, the United States Fish & Wildlife Service designated API as a potentially responsible party ("PRP") for PCB contamination in the Lower Fox River. In July 1997, API received a special notice letter from the United States Environmental Protection Agency ("EPA") which invited API, along with other PRPs, to make a good faith offer to undertake the remedial investigation of the Lower Fox River.

In August 2001, the United States and the State of Wisconsin filed a civil action under CERCLA §§ 106 and 107 in the Eastern District of Wisconsin seeking entry of a consent decree ("2001 Consent Decree") they had negotiated with API and NCR. *United States of America and State of Wisconsin v. Appleton Papers Inc. and NCR Corporation*, Case No. 01-C-0816 ("2001 Civil Action"). 2001 Dkt. 1.[2] In the 2001 Consent Decree, NCR and API agreed, among other things, to pay a prescribed amount to fund certain discrete response actions and natural resource damages restoration projects in order that "knowledge gained can be utilized in selecting and implementing future response action projects and restoration projects":

> This Consent Decree is intended to advance the following purposes: providing interim funding for response action projects and natural resource damage restoration projects at the Site; **acquiring knowledge from projects performed under this Consent Decree, so that knowledge gained can be utilized in selecting and implementing future response action projects and restoration projects**; providing partial reimbursement of past natural resource damage assessment cost for the Site paid by DOI; and providing an opportunity for the parties to focus on negotiations concerning potential resolution of the Defendants' alleged liability for the Site, as well as their potential counterclaims.

2001 Dkt. 13, ¶ 4 (emphasis added).[3]

The 2001 Consent Decree was entered in December 2001 and, after an extension (*id*., Dkt. 17, ¶ 4), terminated by its terms on December 9, 2006. *Id*., ¶ 40.

In November 2007, the United States issued a Unilateral Administrative Order pursuant to CERCLA § 106 ("UAO" or "106 Order") which ordered eight parties, including API, to implement the Government's remediation plan for OUs 2-5 of the Lower Fox River. Dkt. 149, ¶ 54. The Government asserted that the parties named in the

---

[2] "2001 Dkt." refers to docket entries in the 2001 Civil Action.

[3] API did not admit any CERCLA liability in the 2001 Consent Decree. 2001 Dkt. 13, ¶ J (". . . the Defendants do not admit any liability arising out of the transactions or occurrences alleged in the complaint."). API also reserved the right "to bring contribution and other actions against persons who are not Parties to this Consent Decree to recover those amounts paid hereunder." *Id*., ¶ 36.

106 Order were liable under CERCLA for PCB contamination in the Lower Fox River. The Government alleged that API was liable as a successor to Appleton Coated Paper Company and Combined Paper Mills.

API and NCR filed this action in January 2008. API asserted claims under CERCLA §§ 107 and 113 against defendants that included parties named in the 106 Order. Dkt. 149. At the time the action was filed, CERCLA § 113(h) barred judicial review in the *Whiting* action of "any order issued under section 9606(a) of this title," which included allegations in the UAO that API was liable under CERCLA.[4]

In August 2008, this Court granted a motion to dismiss API's § 107 claim, ruling that the sole CERCLA remedy available to API was a claim for contribution under § 113. Dkt. 227. In 2009, following the Supreme Court's decision in *Burlington Northern & Santa Fe Ry. Co. v. United States,* 556 U.S. 599 (2009), API and NCR sought leave to file an amended § 107 claim. The Court in November 2009 denied the motion, reiterating that a claim for contribution under § 113 was the sole CERCLA remedy available to API and NCR. Dkt. 751.

In December 2009, the Court ruled that API and NCR were not entitled to contribution and entered summary judgment against them. Dkt. 795.

In October 2010, the Government commenced an action in which it sought, among other things, an injunction compelling API and the other parties named in the 106 Order to comply with its requirements ("Enforcement Action"). EA Dkt. 30, ¶¶ 129-132. The filing of the Enforcement Action lifted the statutory bar on judicial review of

---

[4] While CERCLA § 113(h) barred direct judicial review in *Whiting* of the allegation in the 106 Order that API was liable under CERCLA, API never conceded its liability under CERCLA in the *Whiting* Action, as this Court has expressly ruled. Dkt. 1139 at 1 ("Appleton Papers is correct that there was no basis to conclude that it had 'conceded' its liability in this action").

the 106 Order and allowed API to challenge the Government's assertion that API was liable under CERCLA. *See* 42 U.S.C. § 9613(h)(2). In its Answer, API denied any liability under CERCLA. EA Dkt. 65, ¶ 54. API also asserted counterclaims against the Government and a cross-claim against Georgia Pacific seeking relief under CERCLA § 107. *Id*. at 40-58.[5] The claims were premised, in part, on API's defense that it was not liable under CERCLA. *Id*. at 46, ¶ 45.

In January and February 2011, Georgia Pacific and the Government filed motions to dismiss API's cross-claims and counterclaims. EA Dkt. 83, 106. API opposed the motions, in part, on the ground that API would be entitled to sue under § 107 if the Court determined that it has no CERCLA liability. EA Dkt. 96, 119. In May 2011, while the motions were pending, API filed § 107 cross-claims against remaining Defendants in the Enforcement Action. EA Dkt. 163. By a subsequent stipulation, the deadline for responding to the cross-claims was extended until May 2012. EA Dkt. 166.

In July 2011, the Court granted the motions to dismiss API's counterclaims against the Government and cross-claims against Georgia Pacific in the Enforcement Action. EA Dkt. 171.

On April 10, 2012, the Court granted API's motion for summary judgment in the Enforcement Action, holding that API is not liable under CERCLA for Fox River costs. EA Dkt. 349. Based on that decision, the Court subsequently dismissed all CERCLA counterclaims asserted against API in *Whiting*. Dkt. 1437 at 7 ("It would make little sense to proceed with CERCLA counterclaims in this action against API after having concluded that API is not liable under CERCLA.").

---

[5] API and the other defendants in the Enforcement Action had stipulated to defer the deadline for the filing of cross-claims. EA Dkt. 72.

In May 2012, the Defendants in the Enforcement Action against whom API had asserted cross-claims in May 2011 filed motions to dismiss such claims. EA Dkt. 412, 418. API opposed the motions on the ground that it was entitled to relief under § 107 because it did not share common liability with other parties as a result of the No Liability Decision and that it should be allowed to pursue § 107 claims in the Enforcement Action because its § 107 claim in *Whiting* had been dismissed. EA. Dkt. 432.

On March 29, 2013, the Court granted the motion to dismiss API's cross-claims in the Enforcement Action, stating in part:

> API is right that these are unique procedural circumstances that other courts have not addressed. But the question is why these duplicate contribution-style claims should be allowed in a subsequent enforcement action when they have already been addressed in an earlier contribution action that remains open. . . . Simply put, the fact that there happens to be another, later-filed civil action involving the same parties does not give a party license to restate claims that have been addressed in the earlier-filed action. If circumstances warrant revisiting any decisions in *Whiting*, API may move for reconsideration on that basis in the other case.

Dkt. 787 at 2.

## ARGUMENT

## I.      SUMMARY OF ARGUMENT.

The Court should reconsider its dismissal of API's CERCLA § 107 claims in *Whiting* with respect to costs incurred in connection with the 106 Order. The law is settled that a party who incurs response costs must be permitted to sue under § 107 if it cannot sue under § 113(f). An essential element of a § 113(f) contribution claim is common liability under CERCLA. An allegation of common liability in an action under CERCLA §§ 106 or 107 suffices to trigger the right to sue under § 113 at the pleading stage because if the allegations are proven there would be common liability. However, the right to pursue contribution is extinguished if a party is later adjudicated to have no

liability under CERCLA. This follows from the fact that shared liability for the same injury is the *sine qua non* of a common law claim for contribution, and Congress, by basing CERCLA's contribution rights upon common law principles, could not have intended that § 113(f) would encompass claims where the essential element of common liability is lacking.

Accordingly, the Court should reconsider and vacate its prior dismissal of API's § 107 claims and permit API to pursue recovery of costs incurred in complying with the 106 Order.

## II. A PARTY WHO INCURS RESPONSE COSTS MUST BE PERMITTED TO SUE UNDER § 107 WHEN IT CANNOT SUE UNDER § 113(f).

A party that incurs response costs but cannot sue under § 113(f) is permitted to sue under § 107. *Solutia, Inc. v. McWane, Inc.,* 726 F. Supp. 2d 1316, 1341 (N.D. Ala. 2010) ("[C]osts may be recovered under § 107(a) notwithstanding that they may have been 'compelled' under an administrative order or settlement with the government where that order or settlement does not give rise to contribution rights under § 113(f)(3)(B)"), *aff'd,* 672 F.3d 1230 (11th Cir. 2012); *Morrison Enterprises, LLC v. Dravo Corp.,* No. 08-CV-3142, 2009 WL 4330224 *8 (D. Neb. Nov. 24, 2009) ("[A] PRP can bring a claim under § 107(a) if it is foreclosed from bringing a claim under § 113(f)."), *aff'd,* 638 F.3d 594 (8th Cir. 2011), *cert. denied,* 132 S. Ct. 244 (U.S. Oct. 3, 2011); *W.R. Grace & Co. – Conn. v. Zotos Int'l, Inc.,* 559 F.3d 85, 92-93 (2nd Cir. 2009); *Ford Motor Co. v. Mich. Consol. Gas Co.,* No. 08-CV-13503, 2009 WL 3190418, *6-9 (E.D. Mich. Sept. 29, 2009).[6]

---

[6] In *Solutia, Inc.* and *Morrison Enterprises, LLC*, the courts ultimately concluded that the claimants had a remedy under § 113(f) under the particular facts presented. In *W.R. Grace & Co.* and *Ford Motor Co.*, the parties asserting CERCLA § 107(a) claims had incurred costs in response to state

(footnote continued on next page)

This black letter rule, the Seventh Circuit has held, is grounded in "the plain terms of the statute":

> Where a person has been subjected to a civil action under 42 U.S.C. §§ 9606 or 9607(a), he may attempt to recover his expenditures through a contribution suit under 42 U.S.C. § 9613(f)(1). Where a person has resolved his liability to the United States, or to a state, for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement, he may attempt to recover his expenditures in a contribution suit pursuant to 42 U.S.C. § 9613(f)(3)(B). **If neither of those triggers has occurred, a plaintiff does not have a claim for contribution under CERCLA. That does not mean he has no remedy, however. Any time a person has incurred "necessary costs of response . . . consistent with the national contingency plan[,]" CERCLA provides for a § 9607(a)(4)(B) cost recovery action. These are the plain terms of the statute.**

*Bernstein v. Bankert*, 702 F.3d 964, 976 (7th Cir. 2012) (emphasis added) (petition for rehearing pending). In *Bankert*, the Seventh Circuit held that a party who incurred costs pursuant to an administrative consent order which, by its terms, had not yet triggered a right to contribution under § 113(f)(3)(B), could assert a § 107 claim to recover such costs. *Id*. at 983.[7]

This Court has reached similar conclusions. In its August 2008 decision dismissing API's § 107 claims, the Court ruled that the "operative principle" is that:

> . . . § 107 is available to recover payments only in cases where § 113(f) is not. In cases where a claim for contribution can be asserted under § 113(f), § 107(a) cannot be used.

Dkt. 227 at 11 (footnote omitted).[8] The Court further stated:

---

(footnote continued from prior page)

administrative cleanup orders, but the courts found that the orders did not give rise to contribution claims under § 113(f). In both cases, the courts held that the response costs were recoverable under § 107(a).

[7] The petition for rehearing in *Bankert* addresses when a party to an administrative settlement has resolved its liability for purposes of § 113(f)(3)(B). It does not challenge the principle that a party who has incurred response costs but cannot sue under § 113(f) has a right to pursue cost recovery under § 107.

[8] Courts bar use of § 107 when a remedy under § 113(f) is available in order to maintain the "procedural distinctiveness of the remedies":

(footnote continued on next page)

It thus follows that the question whether Plaintiffs have a claim under § 107(a) depends on whether any of the payments they seek to recover are recoverable under § 113(f). If all of the payments they now seek to recover are recoverable under § 113(f), their § 107(a) claims should be dismissed. **If, on the other hand, some of the payments cannot be recovered under § 113(f), then their § 107(a) claim survives.**

*Id*. at 13 (emphasis added). The Court explained that a party who has incurred response costs but cannot satisfy the statutory triggers necessary for maintaining a contribution action must be allowed to sue under § 107 to prevent injustice:

[P]arties who do not have access to § 113(a) [sic] . . . because they are completely innocent and do not share common liability with any PRPs . . . must be allowed to recover under § 107(a) if injustice is to be avoided.

*Id*. at 12.

Therefore, if API cannot maintain a § 113(f) contribution claim in light of the No Liability Decision, it is entitled to pursue recovery of its response costs under § 107.

## III. API CANNOT MAINTAIN AN ACTION UNDER § 113(f) FOR ITS 106 ORDER COSTS BECAUSE IT HAS NO COMMON LIABILITY.

### A. Common Liability Is An Essential Element Of A Contribution Claim Under § 113(f).

In *Atlantic Research*, the Supreme Court held that a party must share common liability under CERCLA with other parties in order to sue under § 113(f):

---

(footnote continued from prior page)

The other justification usually offered for limiting a plaintiff to one form of CERCLA action—the procedural distinctness of the remedies—is more compelling. As the Second Circuit has observed, "[t]o allow [a qualifying contribution plaintiff] to proceed under § 9607(a) would in effect nullify the SARA amendment and abrogate the requirements Congress placed on contribution claims under § 9613." *Niagara Mohawk*, 596 F.3d at 128. . . . We agree with the sentiments expressed by the Second Circuit. Through SARA, Congress intentionally amended CERCLA to include express rights to contribution, subject to certain prerequisites. If § 9607(a) already provided the rights of action contemplated by the SARA amendments, then the amendments were just so many superfluous words. The canons of statutory construction counsel against any interpretation that leads to that result.

*Bankert*, 702 F.3d at 979. The "procedural distinctiveness" of CERCLA's remedies is maintained where a party without a remedy under § 113(f) is permitted to sue under § 107.

Section 113(f) explicitly grants PRPs a right to contribution. Contribution is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." Black's Law Dictionary 353 (8th ed. 2004). Nothing in § 113(f) suggests that Congress used the term "contribution" in anything other than this traditional sense. The statute authorizes a PRP to seek contribution "during or following" a suit under § 106 or § 107(a). 42 U.S.C. § 9613(f)(1). **Thus, § 113(f)(1) permits suit before or after the establishment of common liability. In either case, a PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties**.

551 U.S. at 138-39 (emphasis added). When common liability under CERCLA cannot be shown, a claim for contribution under § 113(f) fails as a matter of law:

[W]hen there is no question that joint liability is lacking, a necessary element to establish contribution cannot be proven. The claim for contribution must then, as a matter of law, fail.

*In re Reading Co.*, 115 F.3d 1111, 1124 (3rd Cir. 1997), *abrogation on other grounds recognized in Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 220 (3rd Cir. 2010.[9]

In *Reading Co.*, the Third Circuit affirmed the dismissal of a § 113(f) claim where the parties did not share common liability under CERCLA:

. . . § 113(f) uses the term contribution in its traditional, common law sense. **This means that CERCLA contribution, like common law contribution, requires some form of joint liability**. *See . . . Restatement (Second) of Torts* § 886A(1) (1977) ("when two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them").

CERCLA § 113(f) captures the requirements of joint liability in its statutory language: "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this

---

[9] *See also Morrison Enterprises, LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011):

The term "contribution" has its traditional meaning of a "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." *Atl. Research*, 551 U.S. at 138 (quoting *Black's Law Dictionary* 353 (8th ed. 2004)). The "right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties." *Id.* at 139.

title." 42 U.S.C. § 9613(f). . . . **Contribution, by its own definition, requires a common liability for the same injury.** For example, the Uniform Contribution Among Tortfeasors Act provides "where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them." Uniform Contribution Among Tortfeasors Act (1955 Revised Act) § 1, 12 U.L.A. 194. We read the language of § 113(f) as adopting the same traditional sense of contribution. . . .

**Because § 113(f)(1) reflects the traditional concept of contribution, its language does not permit contribution among liable parties who do not have a common derivation of liability**.

*Id*. at 1124 (emphasis added).

A CERCLA contribution claim was also dismissed for lack of common liability in *United States v. Washington State Department of Transportation*, 665 F. Supp. 2d 1233 (W.D. Wash. 2009). After the United States sued a state transportation agency ("WSDOT") under CERCLA to recover response costs, WSDOT asserted a CERCLA contribution counterclaim seeking to recover, among other things, amounts WSDOT paid to satisfy a state court judgment on a nuisance claim brought by property owners whose land was damaged by contamination. *Id*. at 1236. The court dismissed the contribution claim with respect to amounts paid under the state court judgment, ruling that "CERCLA limits claims for contribution by restricting recovery to the portion of 'common liability' that stems from the same § 9606 or § 9607(a) action." *Id*. at 1241. *See also Trinity Indus. v. Chicago Bridge & Iron Co.*, 867 F. Supp. 2d 754, 761 (W.D. Pa. 2012) (dismissing § 113(f) claim because "Trinity and CBI do not share common liability arising from a CERCLA action.").

## B.   API Does Not Share Common Liability With Other Parties For The Fox River Contamination.

The Court's determination in the No Liability Decision that API is not liable under CERCLA forecloses any claim that API shares CERCLA liability with other

parties with respect to the Lower Fox River. Without common liability for the same harm, a claim for contribution fails as a matter of law. *See Reading Co.*, 115 F.3d at 1124 ("[W]hen there is no question that joint liability is lacking, a necessary element to establish contribution cannot be proven. The claim for contribution must then, as a matter of law, fail.").

The filing of the Enforcement Action satisfied, at least for a time, the statutory trigger under § 113(f)(1) for asserting a CERCLA contribution claim since "§ 113(f)(1) permits suit before or after the establishment of common liability." *Atlantic Research*, 551 U.S. at 138-39. As this Court has recognized, unproven allegations of liability may be sufficient to trigger the right to plead a contribution claim. Dkt. 751 at 6. However, once the allegations have been dismissed on their merits, they can no longer support a claim for contribution. As *Atlantic Research* makes clear, "a PRP's right to contribution under § 113(f)(1) is contingent upon . . . common liability." 551 U.S. at 138-39.

Here, the adjudication that API is not liable under CERCLA eliminated the essential element for contribution — common liability. The ruling transformed API's status from that of a PRP with a right to recover only amounts in excess of its fair share of the common harm to that of an innocent party with a right to recover all response costs it had incurred complying with the 106 Order. Contribution is simply inapplicable because the essence of contribution is fairly allocating shared liability:

> Contribution under § 9613(f)(1) is "contingent upon an inequitable distribution of common liability among liable parties." *Atlantic Research*, 551 U.S. at 138. Therefore, contribution awards are based on a balancing of equities and an understanding that parties should be held responsible only for their fair share.

*WSDOT*, 665 F. Supp. 2d at 1240. After the No Liability Decision, API's claim does not fit such a contribution structure. There are no equities to balance and no fair share to be

determined   Since API does not have access to § 113(f) because it does not share common liability with any PRPs, as this Court has already established in the Enforcement Action, API must be allowed to recover under § 107.   Accordingly, the Court's prior ruling to the contrary should be reconsidered and vacated.

## IV.   THIS COURT'S PRIOR RULINGS DO NOT SUPPORT A CONCLUSION THAT API'S SOLE REMEDY IS UNDER § 113(f).

The Court has addressed API's right to assert § 107 claims twice previously in this case, in August 2008 (Dkt. 227) and November 2009 (Dkt. 751).  API is respectful of the time and effort the Court has devoted to this challenging issue.  *See, e.g., Agere Sys.*, 602 F.3d at 218 ("[N]avigating the interplay between § 107(a) and § 113(f) remains a deeply difficult task."); *United States v. NCR Corp.,* 688 F.3d 833, 844 (7th Cir. 2012) ("The Supreme Court has . . . left some aspects of this issue up in the air.").  However, the Court's prior rulings were made years before the No Liability Decision and the Seventh Circuit's recent decision in *Bernstein v. Bankert*.  In light of those developments, the prior rulings do not provide a sound basis to deny API the right to pursue a claim under § 107.  It is appropriate to reconsider the issue now, before the entry of a final judgment, so the Seventh Circuit will have the benefit of this Court's analysis based upon the current situation.

### A.   The 2001 Civil Action Did Not Trigger A Right To Contribution With Respect To Costs Incurred Pursuant To The 106 Order.

In its August 2008 Decision, the Court held that the filing of the 2001 Civil Action triggered API's right to seek contribution under § 113(f) with respect to any and all Fox River-related response costs subsequently incurred:

> By its plain terms, § 113(f)(1) authorizes a contribution claim "during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(2) [sic].  **Plaintiffs were first sued by**

the EPA in August of 2001, and so they have been free to assert such a claim since at least that time.

* * *

This would include not only payments made pursuant to the consent decree filed in the civil action instituted against them on August 21, 2001, but also any other payments they made to discharge their common liability under § 107(a) before or after that time. Thus, they have no need to resort to § 107(a). Whatever amounts they are entitled to recover must be recovered under § 113(f).

Dkt. 227 at 13-14 (emphasis added).

Pursuant to the 2001 Civil Action, a consent decree was entered that required API and NCR to pay prescribed amounts for specific projects. None of these payments were used to fund activities mandated by the 106 Order that the Government issued six years later in 2007. Therefore, the 2001 Civil Action action did not trigger any right to contribution with respect to costs that were outside the matters addressed in the 2001 Consent Decree, including costs incurred to satisfy the 106 Order. *See WSDOT*, 665 F. Supp. 2d at 1241 ("CERCLA limits claims for contribution by restricting recovery to the portion of 'common liability' that stems from the same § 9606 or § 9607(a) action.").

The CERCLA statutory scheme contemplates contribution under § 113(f)(1) only for the cost of work or funding that is the subject of the litigation. Under § 113(g)(3), any contribution claims related to the costs paid pursuant to the 2001 Civil Action had to be asserted within three years "after . . . entry of a judicially approved settlement with respect to such costs or damages." 42 U.S.C. § 9613(g)(3)(B). If the 2001 Civil Action triggered API's right to contribution with respect to costs incurred pursuant to the 106 Order, then the statute of limitation on the claim would have expired years before the 106 Order was issued. Statutes may not be interpreted to produce such nonsensical results. That is why § 113(f)(1) can only trigger a right to contribution with respect to

costs associated with the matters addressed in the predicate civil action for which those costs are in issue.

This interpretation is confirmed by the Seventh Circuit's recent decision in *Bernstein v. Bankert*, where the Court of Appeals ruled that there must be a separate event triggering contribution rights for *each source* of response costs. In *Bankert*, the plaintiffs ("Trustees") asserted a § 107 claim to recover costs incurred under a 1999 Administrative Order by Consent ("AOC") and a separate 2002 AOC. The defendants moved for summary judgment, arguing that plaintiffs' only remedy for costs incurred under either AOC was a § 113 contribution action and that the statute of limitations for such an action had expired. The district court agreed and dismissed the claims. 702 F.3d at 971-72.

The Seventh Circuit reversed the district court's decision and held in pertinent part that plaintiffs could pursue a § 107 cost recovery claim for costs incurred under the 2002 AOC, but not for costs incurred under the 1999 AOC. *Id*. at 984. The Seventh Circuit analyzed the proper CERCLA remedy (§ 107 or § 113(f)) for the 1999 and 2002 AOCs separately, even though the parties themselves had not done so:

> We recognize that neither party appears to have considered splitting the Trustees' claim in the way that we do now. But the removal actions called for by the AOCs were **temporally discrete projects**. If that were not the case, the EPA would not have been able to certify the first action's completion before the second action had even been selected. **They need not be treated as an indivisible whole.** The removal action contemplated by the 1999 AOC was completed years ago, and supports a contribution action.

*Id*. (emphasis added). Thus, because the costs arose from "temporally discrete projects" involving separate orders, the parties' rights had to be determined on an order-by-order basis, even though both orders involved work at the same site. Consequently, the fact that contribution was available for the 1999 AOC costs did not compel the conclusion

that the same was true of the 2002 AOC. Rather, the court held that the right to contribution must be analyzed separately with respect to each order giving rise to costs.

Like the 1999 and 2002 AOCs in *Bankert*, the 2001 Consent Decree and the 106 Order were temporally discrete. The 2001 Consent Decree was entered six years before the 106 Order was issued. Moreover, obligations under the 2001 Consent Decree were separate and distinct from the obligations under the 106 Order. Indeed, the Record of Decision that specified the remedy that the 106 Order sought to implement had not even been issued at the time the 2001 Consent Decree was entered. Money paid under the 2001 Consent Decree was used to fund certain limited "test" remediation projects, remedial design, and natural resource restoration projects while the 106 Order dealt exclusively with remediation of OUs 2-5. The 2001 Civil Action thus did not address costs API would incur under the 106 Order since no remedy for OUs 2-5 had even been selected in 2001. Dkt. 265, ¶ 58.

Therefore, the Court should reconsider its conclusion that the 2001 Civil Action permits API to recover costs related to the 106 Order under § 113(f).

## B. The Fact That API Incurred Costs Under Compulsion Pursuant To The 106 Order Did Not Trigger A Right To Contribution Under § 113(f).

In its November 2009 decision, the Court did not rely upon the 2001 Civil Action as the basis for its conclusion that API's remedy was under § 113(f). Instead, the Court held that contribution is available when a party "has been 'compelled' or 'coerced' to discharge the liability to the injured party." Dkt. 751 at 5 (*quoting* Michael Hernandez, *Cost Recovery or Contribution?: Resolving the Controversy Over CERCLA Claims Brought By Potentially Responsible Parties*, 21 Harv. Envtl. L. Rev. 83, 103-04 (1997)).

The Court explained that "[i]t is enough that the party be subject to some compulsion to pay — here, the government's § 106 Order." *Id*. at 5. The Court further stated:

> As noted in previous rulings, **Plaintiffs were subject to a § 106 administrative order. That order triggered their right under § 113 to bring a contribution action** and seek payment from other PRPs for any costs they incurred that they allege were more than their fair share.

*Id*. at 6 (emphasis added). The Court concluded that "contribution . . . is open to any person who has undertaken remedial action in response to a governmental order, which is exactly the scenario we have here." *Id*.

The Court's ruling that the availability of contribution turned on whether the costs in question were compelled by a government order should be reconsidered in light of the Seventh Circuit's recent decision in *Bankert*. In *Bankert*, the defendants (the Bankerts) argued that the plaintiffs could have sued under § 113(f) to recover costs incurred under the 2002 AOC, even though the statutory trigger for contribution under § 113(f)(3)(B) had not been satisfied, because the costs at issue had been compelled by the AOC. 702 F.3d at 981-82. The Seventh Circuit rejected the argument:

> What the Trustees *have* done, with respect to the work called for by the 2002 AOC, is incur costs of response consistent with the national contingency plan, as is required to file a cost recovery action under § 9607(a). The Bankerts offer no persuasive reason why such an action cannot be maintained. **Their argument focuses primarily on a distinction between voluntary and compelled costs: they claim that the Supreme Court drew a new line in the sand in *Atlantic Research* and that, going forward, a cost recovery action is available only to plaintiffs who incurred costs voluntarily.** Compelled costs, on the other hand, may only be recovered through a contribution action. Since the Trustees were "compelled" to clean up the site by the administrative settlement process, the Bankerts argue that they were limited to a contribution action. **There are three significant problems with this argument**.

*Id*. at 981 (italics in original; bold emphasis added). The Court of Appeals then addressed each of the three problems. The court first found that "the Bankerts' argument . . . has no basis in the text of the source case," *i.e.*, *Atlantic Research*. *Id*. Rather, the Seventh Circuit noted that the Supreme Court in *Atlantic Research* "explicitly left open

the possibility that parties who were 'compelled' to incur costs — including parties who incurred costs subsequent to government settlements — might proceed under § 9607(a) nonetheless." *Id*. at 982.

The Seventh Circuit's second problem with the Bankerts' argument was that there was no legal authority to support it. *Id*. at 982. The court explained:

> The cases they cite which did hold that PRPs who incurred cleanup costs under government settlements were bound to pursue a contribution claim did so because the statutory triggers for contribution claims were met, not because the costs were compelled as opposed to voluntary. . . . In short, **not a single one of these cases treated the voluntary/compelled costs dichotomy as dispositive**.

*Id*. at 982-83 (emphasis added).

Finally, the court found that the Bankerts were "asking us to impose a requirement that appears nowhere in the statutory text" and that "arguably violates fundamental rules of statutory construction." *Id*. at 983.

The *Bankert* analysis undermines the basis for the November 2009 decision. The Seventh Circuit rejected the notion that the availability of contribution turned on whether the costs in question were compelled by a government order. Instead, the Court of Appeals held that the right to contribution is determined strictly by whether a trigger specified in the text of § 113(f) has been satisfied.

Here, as of November 2009, no statutory trigger in § 113(f) had been satisfied. The fact that the Fox River 106 Order purported to compel API to incur costs did not trigger a right to contribution. In *Bankert*, the EPA had issued a § 106 Order in 1996 (702 F.3d at 970), but that did not trigger a contribution claim under § 113(f)(1) for costs incurred under either the 1999 or 2002 AOCs. Rather, the Seventh Circuit held that there was no right to contribution for the 2002 AOC and that a contribution claim arose under

§ 113(f)(3)(B) with respect to the 1999 AOC only because EPA had certified that all work required under that order had been completed. 702 F.3d at 979-80.

Further, the text of § 113(f) undermines any claim that the Fox River 106 Order triggered a right to contribution. The 106 Order was not a "settlement" that might trigger contribution rights under § 113(f)(3)(B). Nor was it a "civil action" under CERCLA §§ 106 or 107 that satisfied the requirements of § 113(f)(1). Numerous courts have held that a 106 Order is not a civil action under CERCLA §§ 106 or 107, and thus does not trigger a right to contribution under § 113(f)(1). *See, e.g., Pharmacia Corp. v. Clayton Chem. Acquisition LLC*, 382 F. Supp. 2d 1079, 1091 (S.D. Ill. 2005) (rejecting an argument that a 106 Order was a civil action, stating: "[T]his Court finds based on the Supreme Court's discussion of CERCLA in *Cooper* and CERCLA itself, an administrative order does not qualify as a civil action. Therefore, the Court finds that Plaintiffs do not have a cause of action under Section 113(f)(1) . . ."); *Raytheon Aircraft Co. v. United States*, 435 F. Supp. 2d 1136, 1142-43 (D. Kan. 2006); *Blue Tee Corp. v. ASARCO, Inc.*, No. 03-5011, 2005 WL 1532955, *3-4 (W.D. Mo. June 27, 2005); *Ermhart Indus. v. New England Container Co.*, 478 F. Supp. 2d 199, 203 (D.R.I. 2007).

In light of *Bankert*, it is now clear that, as of November 2009, no event had occurred which triggered the right to contribution for 106 Order costs. Consequently, the Court should reconsider its ruling in that decision that the Fox River 106 Order triggered a right to pursue contribution under § 113(f).

## V.    THE CIRCUMSTANCE WARRANT RECONSIDERATION OF THE COURT'S PRIOR RULINGS.

In its March 29 Decision, the Court observed:

. . . [A]s Glatfelter notes, any awkwardness resulting from [the timing of the No Liability Decision] was a function of API joining or instituting a contribution

> lawsuit long before its liability was ever on the table. That is, the entire premise of API's contribution action was some sort of common liability, yet now it wants to avoid CERCLA liability (which it has successfully done) *and* maintain an action under CERCLA.

EA Dkt. 787 at 2 (italics in original). Respectfully, Glatfelter's arguments prompting these observations warrant a brief response.

*First*, API's original complaint asserted claims under both § 107 and § 113(f). This lawsuit became solely an action for contribution only after the Court dismissed API's § 107 claims in 2008 and denied API's request to re-plead a § 107 claim in 2009.

*Second*, the fact that this action was commenced "long before [API's] liability was ever on the table" is not the result of inaction or omission on the part of API. Instead, any delay in putting API's liability "on the table" was the result of CERCLA § 113(h), which prevents a party in API's position from obtaining immediate judicial review of unfounded allegations in a 106 Order. API challenged its liability under CERCLA at the first opportunity.

*Third*, API can hardly be faulted for bringing this action when it did in 2008. As a result of the Government's issuance of the 106 Order in November 2007, API was being compelled to spend enormous sums of money to comply with a government order which, at that time, was unchallengeable, even though API maintained it had no liability under CERCLA, as this Court later determined. The filing of this lawsuit was the only legal avenue then available to API to obtain some recompense from the liable parties.

*Finally*, the suggestion that API is attempting to have its cake and eat it too ("yet now [API] wants to avoid CERCLA liability . . . *and* maintain an action under CERCLA") is unwarranted. As this Court has recognized, a party without liability under CERCLA (*i.e.*, an innocent party) who has been compelled to incur response costs "must

be allowed to recover under § 107(a) if injustice is to be avoided." Dkt. 227 at 12. In short, CERCLA permits a party to maintain (and establish) its non-liability under CERCLA, as API has done, and still exercise the relief CERCLA affords to innocent parties through § 107.

## CONCLUSION

For the foregoing reasons, Plaintiff Appleton Papers Inc. respectfully requests that the Court reconsider and vacate its prior rulings that dismissed API's § 107 claims. API further requests that the Court grant it leave to file an amended complaint that amends its § 107 claim to reflect present circumstances.

Dated this 19th day of April, 2013.

Respectfully submitted,

APPLETON PAPERS INC.

By:    /s/ Ronald R. Ragatz
          One of Its Attorneys

Counsel for Appleton Papers Inc.:

Heidi D. Melzer (#1076125)
Melzer Law, LLC
4469 Wyandot Trail
Green Bay, WI 54313
(920) 544-9139

Gregory A. Krauss
Davidson Berquist Jackson &
      Gowdey, LLP
4300 Wilson Blvd., Suite 700
Arlington, VA 22203
 (703) 894-6408

Ronald R. Ragatz (#1017501)
Dennis P. Birke (#1018345)
Megan A. Senatori (#1037314)
DeWitt Ross & Stevens S.C.
Two East Mifflin Street
Madison, WI 53703
(608) 255-8891