UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPLETON PAPERS INC. and
NCR CORPORATION,

    Plaintiffs,

        v.

GEORGE A. WHITING PAPER
COMPANY, *et al.*,

    Defendants.

Civil Action No. 08-cv-16

The Honorable William C. Griesbach

# UNITED STATES' RESPONSE TO APPLETON PAPERS INC.'S MOTION TO RECONSIDER THE COURT'S DISMISSAL OF ITS CLAIMS FOR RELIEF UNDER CERCLA SECTION 107

**UNITED STATES' RESPONSE TO APPLETON PAPERS INC.'S
MOTION TO RECONSIDER THE COURT'S DISMISSAL OF ITS CLAIMS FOR
RELIEF UNDER CERCLA SECTION 107** [1]

API convinced this Court that its sole obligation regarding the Lower Fox River and Green Bay Superfund Site is an indemnity obligation owed to NCR. To support its argument, API represented to the Court that it had been "funding 60% of the cleanup costs on the basis of its indemnity arrangement with NCR" and that it had no intention of "shirking its 60% indemnity." E.D. Wis. No. 10-cv-910, Dkt. 287 at 2, 15. With all of that established for present purposes, API has no independent right to seek response costs from other potentially responsible parties ("PRPs") under CERCLA Section 107. As a party that has made payments on an indemnity obligation owed to NCR, it is black letter law that API's exclusive remedy against third parties is a potential subrogation right to join NCR in pursuing whatever claims NCR may have against those third parties. In late 2012, the Court granted API leave to assert a new claim to preserve its possible subrogation rights against the *Whiting* case defendants. E.D. Wis. Case No. 08-cv-16, Dkt. 1437 at 8-9. There is no basis for allowing API to press claims of its own under CERCLA Section 107, however, as sought by API's reconsideration motion.

---

[1] Appleton Papers Inc. ("API") has never asserted any claims against the United States in this case. NCR Corporation ("NCR") asserted claims against the United States in a complaint in a related action, consolidated with this case, captioned *NCR Corp. v. Kimberly-Clark Corp., et al.*, No. 08-cv-895 (E.D. Wis.). *See* E.D. Wis. No. 08-cv-895, Dkt. 31. Menasha Corp. also pursued third-party claims against the United States in this case for some time, but Menasha sought and was granted leave to dismiss those claims voluntarily in April 2011. *See* E.D. Wis. No. 08-cv-16, Dkt. 1114.

The United States nonetheless has an interest in the proper resolution of the issues raised by API's motion. Among other things, the outcome could affect counterclaims that API asserted against the government in *United States and the State of Wisconsin v. NCR Corp., et al.*, No. 10-cv-910 (E.D. Wis.). In that case, the Court dismissed API's CERCLA Section 107 counterclaims against the government Plaintiffs based on the Court's rulings in this case and other decisions such as *Solutia, Inc. v. McWane, Inc.*, 726 F. Supp. 2d 1316 (N.D. Ala. 2010). *See* E.D. Wis. No. 10-cv-910, Dkt. 171.

## BACKGROUND AND SUMMARY OF ARGUMENT

The Court is quite familiar with the complicated history of this case and the government's related enforcement case, so we will not dwell on most of the details. Some of the facts concerning API's relationship to NCR deserve renewed emphasis, however, because of their bearing on API's latest motion.

Through a set of agreements and an arbitration award that was entered as a judgment in the Southern District of New York, API must fund 60% of all costs that API and NCR are required to bear for this Site. In 2011 and 2012, API and the government litigated over whether the agreements and arrangements between API and NCR established: (1) an assumption of direct CERCLA liability by API (as argued by the government); or (2) only a partial indemnity obligation that API owed to NCR (as argued by API). API made three key points in advancing its argument.

<u>First</u>, API insisted that its sole obligation concerning this Site was as NCR's indemnitor. API said:

> "Any private financial arrangement between API and NCR is in the nature of an indemnity, which does not impose successor liability on API or make API liable under CERCLA." E.D. Wis. No. 10-cv-910, Dkt. 197 at 1.

> "The sole obligation of API regarding the Fox River contamination is as a partial indemnitor . . . to NCR." E.D. Wis. No. 10-cv-910, Dkt. 197 at 16.

> "The Court confirmed this in its July 28, 2011 Order Denying Renewed Motion For Preliminary Injunction, Dkt. 193, where the Court stated: 'Appleton Papers did not pollute itself, but signed an agreement stating it would indemnify NCR for certain environmental liability,' thus recognizing that API's obligation is in the nature of an indemnity arising from the 1998 Settlement Agreement." E.D. Wis. No. 10-cv-910, Dkt. 197 at 17 n.7.

<u>Second</u>, API made clear that its cost-share payments for the ongoing remediation work at the Site were being made as indemnity payments. API said:

> "API is funding 60% of the cleanup costs on the basis of its indemnity arrangement with NCR." E.D. Wis. No. 10-cv-910, Dkt. 287 at 2.

2

Until at least early 2012, API was providing that funding through payments into the limited liability company that held the actual agreements with the remediation contractors. *See* E.D. Wis. No. 10-cv-910, Dkt. 92-12, Dkt. 141, Dkt. 152, Dkt. 287 at 2.

Third, API emphasized that a ruling in its favor on the CERCLA liability question would have no impact on API's status or responsibilities as NCR's partial indemnitor. API said:

> "A ruling by this Court that API did not assume NCR's Fox River liabilities will not affect API's indemnification obligations to NCR." E.D. Wis. No. 10-cv-910, Dkt. 197 at 16 n.6.

> "API is not shirking its 60% indemnity." E.D. Wis. No. 10-cv-910, Dkt. 287 at 15.

This Court ultimately accepted API's arguments and held that "it is not a liable party under CERCLA," reasoning that, "[a]t most, as the arbitrators found, API agreed to indemnify NCR for a *portion* of such liability." E.D. Wis. No. 10-cv-910, Dkt. 349 at 6, 9. That is now the law of the case in the enforcement action and in this action. And API cannot deny or avoid the necessary implications of the indemnity finding that it sought and obtained.[2]

As shown below, an indemnitor has no rights against third parties regarding its indemnity payments aside from subrogated rights, and subrogated rights are derivative and cannot be expanded beyond the rights and remedies that the indemnified party is entitled to pursue. The case law confirms that those general subrogation principles apply to parties that have provided indemnity for environmental cleanup costs; they cannot pursue independent, non-subrogation claims under CERCLA. Because this Court correctly held that NCR could only maintain contribution claims under CERCLA Section 113(f), and cannot assert claims under Section

---

[2] *See David v. Wakelee*, 156 U.S. 680, 689 (1895) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position."). *See also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting and applying the judicial estoppel rule announced in *Wakelee*); *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) (same).

107(a)(4)(B), the most that API can do is join NCR in pursuing subrogated claims for contribution *if* the Court's prior finding that NCR deserves no contribution recovery is altered or reversed on appeal.

## ARGUMENT

1. **Under Subrogation Principles, API has no Independent Claims Under CERCLA Against Third Parties for Recovery of Monies Paid as NCR's Indemnitor.**

As the Supreme Court noted long ago, "[s]ubrogation is a normal incident of indemnity insurance." *Aetna Life Ins. Co. v. Moses*, 287 U.S. 530, 542 (1933). "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against a third party." *US Airways, Inc. v. McCutcheon*, 133 S. Ct. 1537, 1546 n.5 (2013) (internal quotation omitted). In a typical indemnity situation, "[s]ubrogation involves the substitution of the insurer . . . to the rights of the insured.'" *Id.* (internal quotation omitted). It "is an exclusively derivative remedy which depends upon the claim of the insured and is subject to whatever defenses the tortfeasor has against the insured." *Great Am. Ins. Co. v. United States*, 575 F.2d 1031, 1034 (2d Cir. 1978).

The subrogation doctrine incorporates a critical limitation on the types of claims that an indemnitor can bring against third parties for recovery of its indemnity payments. Because the indemnitor, as subrogee, merely "steps into the shoes of the one whose claim or debt it has covered," the indemnitor "can only enforce rights the latter could enforce." *Aetna Cas. & Surety Co. v. Chi. Ins. Co.*, 994 F.2d 1254, 1257 (7th Cir. 1993).[3] For example, the *Great American*

---

[3] *Accord Westchester Fire Ins. Co. v. Gen'l Star Indemnity Co.*, 183 F.3d 578, 583 (7th Cir. 1999) (the "insurer (the subrogee) acquires no greater or lesser rights than those of the insured (the subrogor)."); *Certain Underwriters of Lloyd's v. Gen. Accident Ins. Co. of Am.*, 909 F.2d 228, 232 (7th Cir. 1990) ("A subrogee, however, acquires no greater or lesser rights than those possessed by the subrogor."); Lee R. Russ, Couch on Insurance § 224:180 (3d ed. 2012) ("Since a subrogee stands in the shoes of its subrogor, a subrogated insurer has no greater rights against a third party than those of the insured, and its claims are subject to all defenses the third party could have asserted against the insured.").

4

*Insurance* case cited above involved an insurer's suit against the United States for recoupment of insurance payments for damage to its insureds' property allegedly allowed by government employees. *Great Am. Ins.*, 575 F.2d at 1032-33. The district court and the Second Circuit both held that the insurer's exclusive remedy was a derivative right of subrogation to pursue the insured's potential claims under the Federal Tort Claims Act. *Id.* at 1034-35 ("the authorities and the cases unanimously hold that the insurer's recovery is premised exclusively upon subrogation"); *accord Rock Island Bank v. Aetna Cas. & Surety Co.*, 692 F.2d 1100, 1106 (7th Cir. 1982) (citing and quoting *Great Am. Ins*). Applying well-established subrogation principles, the Second Circuit found that it was "not difficult" to conclude that the indemnitor could have no broader, independent rights or remedies against the United States for recoupment of the indemnity payments. *Great Am. Ins.*, 575 F.2d at 1032, 1034-35.

The same basic rules of subrogation apply when the indemnitor has only provided *partial* indemnity, such as by paying the full amount due except for a deductible borne by the insured. As the Seventh Circuit has explained:

> [A]n insurer who pays a part of the loss of its insured is only partially subrogated to the insured's rights. 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1546 (2d ed. 1990). In such a case, "both insured and the insurer 'own' portions of the substantive right and should appear in the litigation in their own names." [*United States v. Aetna Cas. & Surety Co.*, 338 U.S. 366, 381 (1949)] . . . . Thus, if an insured brings suit against a tortfeasor, the insurer who is partially subrogated may intervene in the action to protect its pro rata share of the potential recovery. 6A Wright, Miller & Kane § 1546.

*Krueger v. Cartwright*, 996 F.2d 928, 932 (7th Cir. 1993). As a partial indemnitor that is obliged to reimburse 60% of NCR's costs for this Site, API may deserve to remain involved in this case – including any appeal – to protect its interest in a share of any potential recovery on NCR's contribution claims under CERCLA Section 113. But API has no separate and independent claims against other PRPs that it can pursue on its own under CERCLA Section 107.

5

## 2. CERCLA Does Not Broaden the Claims that API Can Assert.

Several cases have made clear that CERCLA does not expand the universe of available claims for recovery of indemnity payments beyond those that the indemnitor is entitled to assert as a subrogee.

In *California Department of Toxic Substances Control v. City of Chico*, the court considered whether an insurer for a set of affiliated PRPs could assert its own non-derivative claims to recover response costs under Section 107(a)(4)(B) "as an innocent party under CERCLA." 297 F. Supp. 2d 1227, 1231 (E.D. Cal. 2004). Much like API is attempting to do here, the indemnitor in *City of Chico* alleged that it had made significant outlays for "response costs for which it bears no responsibility," glossing over the fact that its payments were owed under an indemnity relationship with certain PRPs. *Id.* at 1232. But the court saw through that façade and limited the indemnitor to claims that it could bring as a subrogee of its insureds. *Id.* at 1233-36. In reaching that outcome, the court emphasized that "in a subrogation action, [the indemnitor] cannot divorce itself from its insured's status as a PRP." *Id.* at 1234. Just like the insurer in *City of Chico*, API may have subrogation rights that derive from contribution rights that NCR may possess, but API cannot assert non-derivative claims of its own, including claims to recover response costs under Section 107(a)(4)(B).

Another district court endorsed and applied the *City of Chico* court's reasoning in *American International Specialty Lines Insurance Co. v. United States*, No. C 04-01591 CRB, 2005 WL 680159 (N.D. Cal. Mar. 24, 2005) ("*AISLIC*"). In that case, an insurer for the current owner of land sued the United States directly under CERCLA, alleging that the property had been contaminated when it was previously owned by the Navy. *Id.* at *1. The insurer in *AISLIC* seemed to concede that that it could only assert claims as a subrogee of its insured, but the court

6

still underscored the rule that an insurer seeking to recover sums it paid on behalf of its insured "may recover under CERCLA only through a subrogation action." *Id.* at *3-4.[4]

In another recent case, the Ninth Circuit took a step beyond *City of Chico* and *AISLIC* in considering the interplay between two separate CERCLA provisions that reference subrogation rights. *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 952-72 (9th Cir. 2013). First, CERCLA Section 112(c)(2) provides that:

> Any person, including the [EPA Hazardous Substance Superfund], who pays compensation pursuant to this chapter to any claimant for damages or costs resulting from a release of a hazardous substance shall be subrogated to all rights, claims, and causes of action for such damages and costs of removal that the claimant has under this chapter or any other law.

42 U.S.C. § 9612(c)(2). Second, CERCLA Section 107(e)(2) includes a "savings clause" that preserves potential subrogation claims:

> Nothing in this subchapter . . . shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.

*Id.* at § 9607(e)(2).

The *Chubb* court held that the requirements of CERCLA Section 112 narrow indemnitors' subrogation rights under CERCLA – and effectively preclude potentially broader common law-based equitable subrogation claims – notwithstanding the savings clause in Section 107(e)(2). 710 F.3d at 960-72. But this Court does not need to reach that question to resolve

---

[4] In both *City of Chico* and *AISLIC* the courts actually dismissed the indemnitors' subrogation claims because they were unripe under the common law "made-whole" doctrine. *Id.* at *4; *City of Chico*, 297 F. Supp. 2d at 1236-37. Under that timing rule, an insurer "may not enforce a right to subrogation until the insured has been fully compensated, that is, has been made whole." *City of Chico*, 297 F. Supp. 2d at 1236; *cf. Drinkwater v. Am. Family Mut. Ins. Co.*, 714 N.W. 2d 568, 571 (Wis. 2006) ("The made-whole doctrine in Wisconsin has deep and firm roots."). If applied here, the made-whole doctrine might preclude API's pursuit of subrogation claims, because API apparently has not even reimbursed NCR for its share of the cleanup costs that NCR incurred last year. *See* E.D. Wis. No. 10-cv-910, Dkt. 790 at 4 n.2 ("At present, API's unpaid obligation to NCR for 2012 remediation is approximately $40 million.").

7

API's reconsideration motion.[5] As the *Chubb* court recognized, even under the common law equitable subrogation doctrine, "[a]n important limit to the right of subrogation is that it is a purely derivative right – meaning that the subrogee succeeds to rights no greater than those of the subrogor." *Id.* at 957. Here, API could not bring Section 107 claims even under equitable subrogation principles, because this Court has correctly ruled that NCR cannot bring Section 107 claims and because API can have no greater rights than its subrogor. The Court should deny API's reconsideration motion for that reason and for the related reasons detailed herein.

                                                   Respectfully submitted,

                                                   FOR THE UNITED STATES OF AMERICA

                                                   IGNACIA S. MORENO
                                                 Assistant Attorney General
                                                 Environment and Natural Resources Division

Dated: May 13, 2013                    s/ *Randall M. Stone*
                                                 RANDALL M. STONE
                                                 Environmental Enforcement Section
                                                 Environment and Natural Resources Division
                                                 U.S. Department of Justice
                                                 P.O. Box 7611
                                                 Washington, DC 20044-7611
                                                 Telephone:    202-514-1308
                                                 Facsimile:     202-616-6584
                                                 E-Mail:        randall.stone@usdoj.gov

                                                 JOSHUA M. LEVIN
                                                 MATTHEW R. OAKES
                                                 Environmental Defense Section
                                                 Environment and Natural Resources Division
                                                 U.S. Department of Justice
                                                 P.O. Box 7611
                                                 Washington, DC 20044-7611

---

[5] One Ninth Circuit Judge dissented from the *Chubb* panel's decision precluding equitable subrogation. *Id.* at 976 (Gould, J., dissenting). A petition for panel rehearing and rehearing *en banc* also has been filed on that issue. *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, *Petition for Panel Rehearing and Rehearing En Banc by Plaintiff/Appellant Chubb Custom Ins. Co.*, No. 11-16272 (9th Cir. Apr. 26, 2013).

GREGORY J. HAANSTAD
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. § 515

SUSAN M. KNEPEL
Assistant United States Attorney
Office of the United States Attorney
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI  53202

# CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing Brief to be served on the following counsel of record by the Court's Electronic Case Filing system:

**Mary Rose Alexander**
Latham & Watkins LLP
mary.rose.alexander@lw.com

**Thomas Armstrong**
von Briesen & Roper SC
tarmstro@vonbriesen.com

**Paul Bargren**
Foley & Lardner LLP
pbargren@foley.com

**Linda E. Benfield**
Foley & Lardner LLP
lbenfield@foley.com

**Dennis P. Birke**
DeWitt Ross & Stevens SC
db@dewittross.com

**Garrett L. Boehm, Jr.**
Johnson & Bell, Ltd.
boehmg@jbltd.com

**Steven P. Bogart**
Reinhart Boerner Van Deuren SC
sbogart@reinhartlaw.com

**Michael P. Carlton**
von Briesen & Roper SC
mcarlton@vonbriesen.com

**Evan R. Chesler**
Cravath Swaine & Moore LLP
echesler@cravath.com

**Francis A. Citera**
Greenberg Traurig LLP
citeraf@gtlaw.com

**Marc E. Davies**
Greenberg Traurig LLP
daviesm@gtlaw.com

**David R. Erickson**
Shook Hardy & Bacon LLP
derickson@shb.com

**S. Todd Farris**
Friebert Finerty & St. John SC
stf@ffsj.com

**Patrick J. Ferguson**
Latham & Watkins LLP
patrick.ferguson@lw.com

**Charles Fried**
fried@law.harvard.edu

**Sandra C. Goldstein**
Cravath Swaine & Moore LLP
sgoldstein@cravath.com

**Thomas R. Gottshall**
Haynsworth Sinkler Boyd PA
lgantt@hsblawfirm.com

**Eric W. Ha**
Sidley Austin LLP
eha@sidley.com

**Scott W. Hansen**
Reinhart Boerner Van Deuren SC
shansen@reinhartlaw.com

**William H. Harbeck**
Quarles & Brady LLP
william.harbeck@quarles.com

**Cynthia R. Hirsch**
Wisconsin Department of Justice
hirschcr@doj.state.wi.us

**Margaret I. Hoefer**
Stafford Rosenbaum LLP
mhoefer@staffordlaw.com

**Caleb J. Holmes**
Greenberg Traurig LLP
holmesc@gtlaw.com

**Philip C. Hunsucker**
Hunsucker Goodstein PC
phunsucker@hgnlaw.com

**Peter C. Karegeannes**
Quarles & Brady LLP
peter.karegeannes@quarles.com

**Paul G. Kent**
Stafford Rosenbaum LLP
pkent@staffordlaw.com

**Gregory A. Krauss**
Gregory Krauss pllc
gkrauss@krausspllc.com

**Linda R. Larson**
Marten Law PLLC
llarson@martenlaw.com

**Vanessa A. Lavely**
Cravath Swaine & Moore LLP
vlavely@cravath.com

**Susan E. Lovern**
von Briesen & Roper SC
slovern@vonbriesen.com

**Anne E. Lynch**
Hunsucker Goodstein PC
alynch@hgnlaw.com

**Kevin J. Lyons**
Davis & Kuelthau SC
klyons@dkattorneys.com

**Karl S. Lytz**
Latham & Watkins LLP
karl.lytz@lw.com

**Meline G. MacCurdy**
Marten Law
mmaccurdy@martenlaw.com

**David G. Mandelbaum**
Greenberg Traurig LLP
mandelbaumd@gtlaw.com

**Bradley M. Marten**
Marten Law
bmarten@martenlaw.com

| | | |
|---|---|---|
| **Tara M. Mathison**<br>Davis & Kuelthau SC<br>tmathison@dkattorneys.com | **Nancy K. Peterson**<br>Quarles & Brady LLP<br>nancy.peterson@quarles.com | **Margaret R. Sobota**<br>Sidley Austin LLP<br>msobota@sidley.com |
| **Allison E. McAdam**<br>Hunsucker Goodstein PC<br>amcadam@hgnlaw.com | **Thomas M. Phillips**<br>Reinhart Boerner Van Deuren SC<br>tphillip@reinhartlaw.com | **Arthur A. Vogel, Jr.**<br>Quarles & Brady LLP<br>arthur.vogel@quarles.com |
| **Darin P. McAtee**<br>Cravath Swaine & Moore LLP<br>dmcatee@cravath.com | **Ian A.J. Pitz**<br>Michael Best & Friedrich LLP<br>iapitz@michaelbest.com | **Anthony S. Wachewicz, III**<br>City of Green Bay<br>tonywa@ci.green-bay.wi.us |
| **Stephen F. McKinney**<br>Haynsworth Sinkler Boyd PA<br>smckinney@hsblawfirm.com | **Ronald R. Ragatz**<br>DeWitt Ross & Stevens SC<br>rrr@dewittross.com | **James P. Walsh**<br>Appleton City Attorney<br>jim.walsh@appleton.org |
| **Heidi D. Melzer**<br>Melzer Law, LLC<br>hmelzer@melzerlaw.com | **Kathleen L. Roach**<br>Sidley Austin LLP<br>kroach@sidley.com | **Ted A. Warpinski**<br>Friebert Finerty & St John SC<br>taw@ffsj.com |
| **Elizabeth K. Miles**<br>Davis & Kuelthau SC<br>emiles@dkattorneys.com | **Megan A. Senatori**<br>DeWitt Ross & Stevens SC<br>ms@dewittross.com | **Ted Waskowski**<br>Stafford Rosenbaum LLP<br>twaskowski@staffordlaw.com |
| **William J. Mulligan**<br>Davis & Kuelthau SC<br>wmulligan@dkattorneys.com | **Adam B. Silverman**<br>Greenberg Traurig LLP<br>silvermana@gtlaw.com | **Evan B. Westerfield**<br>Sidley Austin LLP<br>evanwesterfield@sidley.com |
| **Omid H. Nasab**<br>Cravath Swaine & Moore LLP<br>onasab@cravath.com | **M. Andrew Skierawski**<br>Friebert Finerty & St. John SC<br>mas@ffsj.com | **Richard C. Yde**<br>Stafford Rosenbaum LLP<br>ryde@staffordlaw.com |
| **Kelly J. Noyes**<br>von Briesen & Roper SC<br>knoyes@vonbriesen.com | **Sarah A. Slack**<br>Foley & Lardner LLP<br>sslack@foley.com | |

Dated: May 13, 2013                                     s/ *Randall M. Stone*