| | |
|---|---|
| APPLETON PAPERS INC. and NCR CORPORATION,<br><br>        Plaintiffs,<br><br>  v.<br><br>GEORGE A. WHITING PAPER COMPANY, et al.,<br><br>        Defendants. | Case No. 08-CV-16 |

**CERTAIN DEFENDANTS'[1] OPPOSITION TO PLAINTIFF APPLETON PAPERS INC.'S MOTION TO RECONSIDER THE COURT'S DISMISSAL OF ITS CLAIMS FOR RELIEF UNDER CERCLA § 107**

## INTRODUCTION

The Court already dismissed API's CERCLA section 107 cost recovery claim because it had a section 113 contribution claim available to it. API and NCR, as co-plaintiffs asserting a unitary joint share, initiated and litigated their contribution claim to conclusion and lost. NCR's production of CCP "is the *sine qua non* not just of the environmental damage, but of the entire cleanup effort and its attendant costs." Dkt.[2] 795 at 46. After several years of costly litigation, the Court decided that "API/NCR's allocable share" is 100%, with some possible insurance adjustments, for costs and damages incurred in OU2-5 by any party. Now, API requests a new allocation based upon distinctions that API wants the Court to make between a claim under sections 113(f) and 107(a) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f). The Court should not

---

[1] "Certain Defendants" are P.H. Glatfelter Company, WTM I Company, Menasha Corporation, Neenah-Menasha Sewerage Commission, and CBC Coating, Inc.

[2] "Dkt." refers to the ECF system number for documents filed in this civil action.

permit API to undo the allocation that it originally asked the Court to make. Nothing API has argued demands another allocation; ultimately, NCR will end up with a 100 percent allocation and API will pay NCR what it is due of that 100 percent allocation under API's settlement with NCR. API/NCR's share remains with respect to Certain Defendants. API remains NCR's indemnitor.

To the extent API ever had a CERCLA section 107 claim available to it, the Court was correct to dismiss it. API accrued its contribution claim after it was sued by the United States under sections 106 and 107 of CERCLA. API again accrued a contribution claim when it settled with the United States via a consent decree that resolved a portion of API's CERCLA liability to the United States. API may have accrued a contribution claim a third time when named on the 2007 Unilateral Administrative Order, issued by the United States. API accrued a contribution claim when the United States sued to enforce that Order. As this Court has held, a CERCLA cost recovery action is not available where a contribution claim exists. API not only had a contribution claim, it litigated that claim to conclusion in this case.

API's CERCLA section 107 claim also must be dismissed because API has not itself incurred response costs. The source of API's obligation to pay is not CERCLA. Instead, as discussed in more detail below, API has described itself as NCR's "indemnitor."[3] API is contractually obligated to indemnify NCR for 60% of the response costs NCR incurs at the Fox River Site. API does not allege that its payments in connection with the Site have exceeded the 60% it is contractually obligated to pay as NCR's indemnitor. To the contrary, API's only payments for Fox River costs have been pursuant to its private contractual obligation, not

---

[3] Enforcement Action ("EA") Dkt. 197 at pp. 16-17; *see also* EA Dkt. 138-1 at p. 9

2

pursuant to a CERCLA obligation. Such payments by an indemnitor are not response costs under CERCLA section 107.

It would be unjust if API could use CERCLA to shift its own private contractual obligations to innocent parties who were among the casualties of NCR's culpable behavior. Although API apparently now regrets the indemnity arrangement it struck with NCR, API's recourse for disputes arising from that arrangement should involve only NCR, not Certain Defendants.

## ARGUMENT

### I. API IS NOT ENTITLED TO A NEW ALLOCATION

Paragraph 3 of the Complaint and each of the Amended Complaints filed by Appleton Papers Inc. ("API") in this case states:

> The purpose of this lawsuit is to allocate the equitable shares of the cleanup costs and natural resource damages associated with the Lower Fox River Contamination, and to require Defendants and the other responsible parties to pay for the upcoming remedial work and natural resource damages activities in accordance with their allocated shares.

Seventh Amended Complaint, Dkt. 265, ¶ 3.[4] The Court has made that equitable allocation. Now, API wants a *different* allocation – one that is not the same as the fair allocation the Court has reached – based upon distinctions that API wants the Court to make between a claim under sections 113(f) and 107(a) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f). The Court should not grant API that do-over.

There can only be one equitable allocation. At great cost of the Court's and the parties' time and at huge expense, we have that allocation. Dkt. 795. We have it because API itself

---
[4] API filed an Eighth Amended Complaint on October 5, 2012 (Dkt. 1438), which included a claim for subrogation under CERCLA section 112(c), 42 U.S.C. § 9612(c).

3

brought this case for the very purpose of obtaining that allocation. Dkt. 265. Allowing API to ignore all that work and expense it imposed on the Court and the Defendants would be unfair. Nothing about the structure of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-75, allows, let alone requires, that unfairness.

API reasons that it is not liable for the Lower Fox River and Green Bay Site ("Site"), and therefore cannot have a "common liability" with any of the other parties for the Site. Accordingly, API contends that it never had a claim for contribution under section 113(f) of CERCLA and must have the ability: (a) to ignore any judgment under section 113(f); and (b) to bring a separate claim for cost recovery under section 107(a)(1-4)(B) of CERCLA to recover amounts that the equitable allocation arrived at under section 113(f) would not award to API. This reasoning contains a number of false premises and logical errors. It also directly contradicts the claims asserted by API in its Seventh Amended Complaint (and all prior complaints) that the Court decided.

API pleaded its ***contribution*** claim under section 113(f) of CERCLA:

- to recover amounts that API and NCR had spent in excess of a unitary "API/NCR's allocable share[,]" not separate shares for API and for NCR, Dkt. 265, ¶¶ 179, 180; no one contends that NCR does not have a common liability with the defendants;

- to allocate all past and future costs of all past and future response actions and natural resource damages payments, not separately allocated amounts for each of a number of response actions or items of NRD, Dkt. 265, ¶¶ 3-4, 176-85;

4

- to allocate specifically costs to be incurred under the 2007 Unilateral Administrative Order, even though it had not been the subject of any judicial enforcement action by the United States, Dkt. 265, ¶¶ 3-4, 52-64, 184-85;
- to allocate specifically natural resource damages liability, even though no NRD claim had been brought by the natural resource trustees, Dkt. 265, ¶¶ 3-4, 52-64, 176-85; and,
- to proceed based upon underlying enforcement actions as required by *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 US 157, 166-68 (2004) that were limited in scope, Dkt. 265, ¶¶ 56, 176-85.

Having brought its section 113(f) claims on those bases, API now seeks to have the Court ignore the disposition of those claims as if they had never happened and to allow API to proceed anew under section 107(a)(1-4)(B) of CERCLA. That is precisely the sort of hindsight gamesmanship that the courts of appeals have held cannot be permitted under CERCLA. *See Bernstein v. Bankert*, 702 F.3d 964, 979 (7th Cir. 2012); *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 228-29 (3d Cir. 2010); *see also ITT Indus., Inc. v. BorgWarner, Inc.*, 615 F.Supp. 2d 640, 646 (W.D. Mich. 2009) (holding that plaintiff cannot assert 107 claim in order to avoid statute of limitations). **Both** section 107(a) and section 113(f) authorize equitable claims. *See* 42 U.S.C. § 9613(f)(1) ("[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate"); *Neumann v. Carlson Envtl., Inc.*, 429 F. Supp. 2d 946, 959 (N.D. Ill. 2006) (cost recovery actions are equitable in nature; collecting cases); *Consolidated City of Indianapolis v. Union Carbide Corp.*, No. 02-CV-1340, 2003 WL 22327833, at *2 (S.D. Ind. 2003) ("Although the Seventh Circuit has not addressed the instant issue, both district courts within this circuit that

5

have considered the issue concluded that plaintiffs asserting CERCLA recovery of response claims are not entitled to jury trials because their claims are equitable in nature."); *Metal Processing Co., Inc. v. Amoco Oil Co.*, 173 F.R.D. 244, 247 (E.D. Wis. 1997); *see also Neumann*, 429 F. Supp. 2d at 959 (*quoting U.S.A. v. Ekberg*, No. 01 C 50457, 2004 WL 793313, at *1 (N.D.Ill. April 12, 2004); *and United States v. Northeastern Pharmaceutical & Chemical Co. Inc.*, 810 F.2d 726, 749 (8th Cir.1986)) (cost recovery actions are like common law restitution claims).

The final allocation, after adjudication of all claims, defenses, and counterclaims, should be the same under section 107 or section 113, unless a party loses its claim through expiration of the sometimes shorter and sometimes earlier limitations period under section 113. *See Agere*, 602 F.3d at 229 (holding that a plaintiff should not be able to recover 100% of costs under a cost recovery action if it is a cause of some percentage of those costs). Indeed, the Court of Appeals has specifically derided the notion that allowing section 107(a) claims would promote "cause shopping" by parties enjoying contribution protection because a district court may apportion liability fairly under section 107 even if it is not allocating liability under section 113(f)(2). *Bernstein*, 702 F.3d at 981-83.

Sorting through the procedural distinctions between section 107(a) claims and section 113(f) claims may allow the parties and courts at the inception of a lawsuit to dismiss allocation claims about future costs, actions, or damages that are too remote and speculative to allow for productive litigation. *See, e.g., Reichhold Chems., Inc. v. Textron, Inc.*, 888 F. Supp. 1116, 1123-24 (N.D. Fla. 1995); *Sun Co. v. Browning-Ferris, Inc.*, 919 F. Supp. 1523, 1532, *overruled in part by* 124 F.3d 1187 (10th Cir. 1997), *cert. denied*, 522 U.S. 1113 (1998). Similarly, at the inception of a lawsuit, those procedural distinctions may allow dismissal of claims about past

6

costs, actions, or damages that are too stale to be heard. *See, e.g., Bernstein*, 702 F.3d at 979-81 (dismissing claims for failure to file within time set by statute of limitation).

But sometimes allocation of the whole will allow the parties to order their conduct to allow work to proceed or damages to be paid. That is what API pleaded that it was trying to do in this case. Dkt. 265, ¶ 3. While different response actions are not ***necessarily*** part of a unitary whole, they can be. *Bernstein*, 702 F.3d at 984. While different contribution plaintiffs' shares are not ***necessarily*** part of a unitary single share, they can be. *Agere*, 602 F.3d at 227-29. Here, API pleaded that they were. This matter was adjudicated as if they were. As the *Agere Systems* court held, having come to the end, the case should not be relitigated because the heading on the claim should have been different. *Id*. All equitable roads should lead to the same allocation.

API argues that it would be unfair for API to have to absorb any costs here. It is not a liable party, and it has (so it claims) paid a lot toward this cleanup.[5] API brought this claim to recover jointly with NCR amounts they had jointly paid in excess of "API/NCR's allocable share." The Court has decided that "API/NCR's allocable share" is 100%, with some possible insurance adjustments, for costs and damages incurred in OU2-5 by any party. Dkt. 795. API's only possible remaining claim would be to deconstruct "API/NCR's allocable share" to determine which part of that share should be allocated to API and which part to NCR. That is not a claim that has been brought in this action, and it does not concern Certain Defendants. API's section 107(a) claim was properly dismissed and that dismissal should not be reconsidered.

---

[5] API's claim should be taken with a grain of salt. API has paid toward the cleanup only to the extent its indemnitors and insurers have not. The indemnifications of API are significant. As of December 29, 2012, API's indemnitor Arjo Wiggins Appleton p.l.c., now known as Windward Prospects Ltd., had paid $273.5 million in connection with Fox River liabilities. API, 2012 Annual Report (Form 10-K) (Mar. 14, 2013), p. 11. In addition, API has received an undisclosed amount in insurance settlements. *Id*.

7

## II. THE ONLY CLAIM AVAILABLE TO API WAS FOR CONTRIBUTION

API claims that it should be able to maintain a cost recovery action. However, precedent suggests otherwise. This court has already decided that a cost recovery claim was unavailable where a contribution claim was available to plaintiffs. *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 572 F.Supp.2d 1034, 1043 (E.D. Wis. 2008). In the case that API heavily relies upon, *Bernstein v. Bankert*, the Court of Appeals agreed with its sister courts that a cost recovery action is unavailable where a contribution action exists. 702 F.3d at 978-80 (*citing Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1236–37 (11th Cir. 2012); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011); *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 291 n. 19 (5th Cir. 2010); *Agere*, 602 F.3d at 229; *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 128 (2d Cir. 2010); *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 458 (6th Cir. 2007)). "The only construction that does justice to the statutory structure and legislative history…and that is also consistent with [*United States v. Atlantic Research Corp.*, 551 U.S. 128, 139 (2007)], is one that provides that where a party…can assert a claim under § 113(f), that party cannot also assert a claim under § 107(a)." *ITT Indus.*, 615 F. Supp.2d at 648 (second ellipsis supplied) (*citing, inter alia, Whiting*, 572 F. Supp.2d at 1043); *Tennessee v. Roane Holdings Ltd.*, 835 F. Supp.2d 527, 542 (E.D. Tenn. 2011) (*citing Stimson Lumber Co. v. Int'l Paper Co.*, No. CV 10–79–M–DWM–JCL, 2011 WL 1532411, at *19 (D.Mont. Feb. 28, 2011)). Nothing API has argued changes that.

API had a contribution action available to it when it sued Certain Defendants in 2008. The United States sued API under sections 106 and 107 of CERCLA, which resulted in the 2001 consent decree. Enforcement Action ("EA") Dkt. 276-10. This satisfied both statutory triggers for contribution actions: API was sued in a civil action under sections 106 and 107, 42 U.S.C. § 9613(f)(1), and the consent decree partially resolved API's liability to the US, 42 U.S.C. §

8

9613(f)(2). The United States issued a Unilateral Administrative Order to API, NCR and Certain Defendants in 2007. The United States sued to enforce the UAO in 2010, which also satisfied the statutory trigger for a contribution action. *Atl. Research*, 551 U.S. at 139.[6]

The statute itself suggests that API's eventual lack of liability under CERCLA section 107 does not deprive it of a contribution action. Section 113 provides that "Any person may seek contribution from any other person who is liable or *potentially* liable…." 42 U.S.C. § 9613(f)(1). "[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Cooper Indus.*, 543 U.S. at 167 (internal quotation omitted). API's argument would essentially read "potentially" out of the statute. It cannot be that liable parties can sue potentially liable parties, but potentially-but-eventually-not liable parties could never have maintained a contribution action. That is a nonsensical reading of section 113.

CERCLA lawsuits are often long and complicated. They would be even longer if a single party could bring sequential claims under section 113(f) and 107(a) for the very same costs. They would be more even more complicated if a court could not dismiss either the section 113(f) claim or the section 107(a) claim at the outset based upon an early motion. A case like this one would have had to carry every combination of section 113 and section 107 claims and counterclaims along through judgment, if API were correct. CERCLA actions have to come to an end at some point. They will not on API's theory. *See Hobart Corp. v. Waste Mgmt. of Ohio,*

---

[6] *See also Carrier Corp. v. Piper*, 460 F.Supp.2d 827, 841 (W.D.Tenn. 2006) (concluding that a unilateral administrative order "is similar to a judgment issued pursuant to a court proceeding" and that therefore it should qualify as a civil action for purposes of § 113(f)(1)); *but see Emhart Indus., Inc. v. New England Container Co., Inc.*, 478 F. Supp. 2d 199, 203 (D.R.I. 2007); *Raytheon Aircraft Co. v. United States*, 435 F.Supp.2d 1136, 1142 (D.Kan. 2006); and *Pharmacia Corp. v. Clayton Chem. Acquisition LLC*, 382 F.Supp.2d 1079, 1086-87 (S.D.Ill. 2005); *Blue Tee Corp. v. ASARCO, Inc.*, 2005 WL 1532955 at *3-4 (W.D.Mo. June 27, 2005). In its decision prior to *Atlantic Research*, the Supreme Court has expressly reserved judgment on this issue. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 168 n. 5 (2004).

*Inc.*, 3:10-CV-195, 2013 WL 503141 (S.D. Ohio Feb. 8, 2013) ("[i]f a party subject to a consent decree could simply repackage its § 113(f) claim for contribution as one for recovery under § 107(a), then the structure of CERCLA remedies would be completely undermined.") (*quoting Solutia*, 672 F.3d at 1236); *cf. Olin Corp. v. Fisons PLC*, CIV. A. 93-11166-MLW, 1995 WL 811961 (D. Mass. Apr. 24, 1995) (explaining that endless litigation would follow if contribution plaintiffs could hold parties jointly and severally liable). The court should avoid such a result.

Finally, the Court of Appeals' opinion in *Bernstein*, on which API relies heavily, is distinguishable. Significantly, in *Bernstein*, there was no prior allocation of liability, nor was the prior allocation initiated and litigated to conclusion by the very party seeking a redo. The *Bernstein* court split the plaintiff's costs into two conceptually distinct groups because the costs flowed from two "temporally discrete projects" in order to allow the plaintiff at least a portion of its day in court. 702 F.3d at 984. API already had its day in court. It lost. *Bernstein* was about doing equity, not formalistically splitting costs. A court must avoid an application of CERCLA that will result in inequity. *See Bernstein*, 702 F.3d at 979; *Agere*, 602 F.3d at 229; *ITT Industries*, 615 F.Supp. 2d at 648. Allowing API to revive its section 107 claim would be inequitable. It would force Certain Defendants to relitigate their liability to API after API already sued and lost. Such a result would be especially inequitable considering nothing API has argued demands a different result. API does not suggest that NCR's liability allocation of 100%, or NCR's underlying fault in relation to Certain Defendants, has changed.

### III. EVEN *ASSUMING* API SOMEHOW HAD A CERCLA SECTION 107 CLAIM, SUCH A CLAIM WOULD WALK THE PARTIES AND THE COURT IN A BIG CIRCLE BACK TO THE SAME STARTING POINT – THE COURT'S 100 PERCENT ALLOCATION TO NCR

Even if one were to assume that API somehow has a Section 107 claim, which it does not, Certain Defendants would be able to bring a counterclaim against API and a third party

10

claim against NCR under Section 113(f). *Atl. Research Corp.*, 551 at 140. The Supreme Court has made clear that API cannot avoid the Court's equitable allocation of 100 percent of the response costs, natural resource damage assessment costs and natural resource damages to NCR (Dkt. 795):

> For similar reasons, a PRP could not avoid § 113(f)'s equitable distribution of reimbursement costs among PRPs by instead choosing to impose joint and several liability on another PRP in an action under § 107(a). The choice of remedies simply does not exist. In any event, a defendant PRP in such a § 107(a) suit could blunt any inequitable distribution of costs by filing a § 113(f) counterclaim. 459 F.3d, at 835; *see also Consolidated Edison*, *supra*, at 100, n. 9 (collecting cases). **Resolution of a § 113(f) counterclaim would necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the § 107(a) action.** 42 U.S.C. § 9613(f)(1) ("In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate").

*Id.* (Emphasis added.) API is bound to the Court's allocation two ways – it is both a party to this action and is in privity with NCR as its indemnitor. Even if allowed, a section 107 claim in the hands of API will merely lead all the parties in a big circle and to the same ultimate result.

## IV.  API HAS NOT INCURRED RESPONSE COSTS UNDER CERCLA § 107

API has no claim under CERCLA section 107 because it has incurred no response costs. Throughout its brief, API ignores this basic pre-requisite to recovery. Instead, API jumps ahead to the argument that, because it does not have a claim under CERCLA section 113, it must have a claim under CERCLA section 107. In fact, API has neither. The source of API's payment obligations is not CERCLA. API is out of pocket nothing beyond what it contractually obligated itself to pay. API characterizes its 1998 Settlement Agreement with NCR as a "private financial arrangement between API and NCR" that is "in the nature of indemnity." API agreed only to a contractual allocation of costs related to the cleanup of the Fox River – an allocation that would be applied irrespective of API's actual liability at the Site. EA Dkt. 197 at p. 1. That obligation was reduced to a final, binding judgment in February 2007 – nine months before the government

11

even issued its UAO – when a federal court confirmed an arbitration panel's 2005 decision that API is obligated to reimburse NCR for 60% of its cleanup costs at the Fox River. EA Dkt. 197 at p. 7; EA Dkt. 144-3.

API's status as NCR's indemnitor has already been established by this Court. EA Dkt. 349. API took great pains to describe itself as NCR's indemnitor when it sought to avoid CERCLA Section 107 liability in the parallel enforcement case. API asserted in its brief in support of its motion for summary judgment that the "**sole obligation** of API regarding the Fox River contamination is as a **partial indemnitor** (jointly and severally with BAT) to NCR pursuant to the 1998 Settlement Agreement." EA Dkt. 197 at pp. 16-17 (*emphasis added*). *See also* EA Dkt. 138-1 at p. 9 ("API's obligations to NCR under the 1998 Settlement Agreement are, therefore, analogous to those of an indemnitor. As a matter of law, an agreement to indemnify does not render the indemnitor a liable party under CERCLA in its own right.") API also pointed to Judge Zuidmulder's decision in *Columbia Casualty v. Appleton Papers, Inc.*, Brown County Case No. 05-CV-36, to say that it had already been judicially determined that the 1998 Settlement Agreement and 2005 arbitration decision were not an assumption of liability, but rather a cost-sharing arrangement between NCR and API, in the event that ***either of them*** was, eventually, determined to be liable parties under CERCLA." EA Dkt. 143 at p. 21 (*emphasis added*). API repeatedly assured this Court that any ruling by the Court that API did not assume NCR's liability would not affect its ***indemnification obligations*** to NCR because those obligations arose under the 1998 Settlement Agreement. EA Dkt. 124-1 at pp. 16-18; EA Dkt. 197, p. 16 n.6.

Having represented itself to this Court as NCR's indemnitor to avoid Section 107 liability, API cannot now say otherwise. *See New Hampshire v. Maine*, 532 U.S. 742, 749

(2001) (A party that succeeds in maintaining a certain position in a legal proceeding may not, simply because its interests have changed, assume a contrary position in the same case or in a separate lawsuit, particularly where it would prejudice the other party involved. This rule of judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") So, API must be held to its prior position – its "sole obligation" regarding the Fox River contamination is and always has been as NCR's indemnitor.

As an indemnitor, API has not itself incurred response costs and cannot bring a CERCLA section 107 claim. As the Supreme Court has said:

> § 107(a) permits recovery of cleanup costs but does not create a right to contribution. A private party may recover under § 107(a) without any establishment of liability to a third party. Moreover, § 107(a) permits a PRP to recover only the costs it has "incurred" in cleaning up a site. 42 U.S.C. § 9607(a)(4)(B). When a party pays to satisfy a **settlement agreement** or a court judgment, it does not incur its own costs of response. Rather, it reimburses other parties for costs that those parties incurred.

*Atl. Research*, 551 U.S. at 139 (emphasis added). Here, it is clear that API is paying pursuant to its **settlement with NCR**. EA Dkt. 197 at pp. 16-17 and EA Dkt. 138-1 at p. 9. API's payments did nothing more than satisfy that settlement and the federal court judgment enforcing it, and API has never claimed otherwise.

The Ninth Circuit recently upheld the dismissal of a CERCLA section 107 claim brought by an insurer who, like API, had paid for environmental cleanup costs pursuant to a private agreement. *Chubb Custom Ins. v. Space Systems/Loral, Inc.*, 710 F.3d 946 (9th Cir. 2013). In *Chubb*, the insurer had reimbursed its insured for $2.4 million dollars in environmental response costs incurred by its insured in cleaning up a contaminated site. The Ninth Circuit concluded that the insurer had no standing to bring suit under CERCLA section 107(a) because it did not itself incur any costs of response related to the removal or remediation of a polluted Site. *Id*. at

13

952-53, 962. Because the insurer was only obligated pursuant to the agreement to reimburse the insured for cleanup costs (not to conduct the cleanup), the insurer had not itself incurred response costs within the meaning of CERCLA section 107. *Id*. at 962.[7] The court concluded that, just as a PRP does not incur its own costs of response by reimbursing other parties' response costs, the insurer had not incurred response costs "solely by virtue of reimbursing [the insured's] response costs." *Id*. at 964. Likewise, in *Calif. Dept. of Toxic Substances Control v. City of Chico*, 297 F. Supp. 2d 1227, 1233 (E.D. Cal. 2004), the court dismissed an insurer's CERCLA sections 107 and 113 claims because it was not a PRP and "[the insurer] ***did not incur any response costs***; rather it has indemnified [a PRP] for [its] response costs. Its involvement with the . . . Site is exclusively in its capacity as [the PRP's] insurer." *Id*. at 1232 (emphasis added). API acknowledges that, as an indemnitor, it is not liable for response costs under CERCLA, but only contractually responsible for those costs pursuant to an independent agreement. EA Dkt. 197. API has not incurred response costs under CERCLA section 107 because the source of its liability is not CERCLA. So, like any other insurer or indemnitor who has not incurred response costs but instead had paid a contractual obligation, API has no claim under section 107.

Indeed, the sole basis for API's argument that it has a CERCLA section 107 claim is that it does not now have a CERCLA section 113 claim. But API *did* have a CERCLA section 113 claim. It litigated and lost that claim along with NCR. It does not logically follow, however, that API then has a CERCLA section 107 claim. In each of the cases cited by API in support of its argument, there was no dispute that the party permitted to bring a CERCLA section 107 claim

---

[7] Although in *Chubb*, the insurer reimbursed the insured for cleanup costs after the cleanup was completed, the timing of the payments is irrelevant. Neither the agreement nor the arbitration award to which API is bound specify the manner in which payment is to be made, and neither obligate API to pay vendors directly. The manner in which API opted to structure its payment is irrelevant to the ultimate fact that – as API has repeatedly argued – API's only obligation was to indemnify NCR for response costs incurred by NCR.

14

(due to the absence of a section 113 claim) had itself incurred costs of response. *See* Dkt. 1490, at 8-9; *Bernstein*, 702 F.3d 964 (response costs were incurred for work undertaken pursuant to Administrative Orders on Consent); *Solutia, Inc. v. McWane, Inc.*, 726 F.Supp.2d 1316 (N.D. Ala. 2010) (plaintiff incurred response costs by conducting cleanup work itself); *Morrison Enterprises, LLC v. Dravo Corp.*, No, 08-CV-3142, 2009 WL 4330224 (D. Neb. Nov. 24, 2009) (same); *W.R. Grace & Co. – Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85 (2d Cir. 2009) (plaintiff PRP itself incurred costs by investigating and remediating the site); *Ford Motor Co. v. Mich. Consol. Gas Co.*, No. 08-CV-13503, 2009 WL 3190418 (E.D. Mich. Sept. 29, 2009) (plaintiffs incurred costs by conducting response activities). That is not the case here, where API as indemnitor has not itself incurred response costs.

API's citations to this Court's prior opinions are similarly irrelevant. When this Court first dismissed API's CERCLA section 107 claim in August 2008, it did so because CERCLA section 113 was available to API. Dkt. 227 at 11. At that time, API alleged that API and NCR had a joint "allocable share" that was jointly and severally liable with the other PRPs and the effect of API's status as NCR's indemnitor was not before the Court. API eventually asserted its indemnitor status. In April 2012, this Court concluded in the enforcement action that API is not actually liable under CERCLA for Fox River costs. Dkt. 1490 at 6; EA Dkt. 349. API's briefing of its motion for non-liability under CERCLA clearly asserted that its only obligation for Fox River costs was in its capacity as NCR's indemnitor pursuant to a private agreement. *See supra* at 12-13. In light of API's position as an indemnitor, this Court must now conclude that API cannot have a CERCLA section 107 claim because it has not itself incurred response costs. API cannot recover under section 113, not because it never had a claim under section 113, but because it pursued that claim and did not prevail.

15

## V. API DOES NOT HAVE A CERCLA SECTION 112 CLAIM AGAINST CERTAIN DEFENDANTS

Because API has not incurred response costs and acts only as NCR's indemnitor, the only potential recourse available to API under CERCLA is CERCLA section 112(c).[8] CERCLA section 112(c) provides that:

> Any person, including the Fund, who pays compensation pursuant to this chapter to any claimant for damages or costs resulting from a release of a hazardous substance shall be subrogated to all rights, claims, and causes of action for such damages and costs of removal that the claimant has under this chapter or any other law.

42 U.S.C. § 9612(c).

With respect to Certain Defendants, a section 112 action by API is foreclosed. On October 5, 2012, API filed its Eighth Amended Complaint, asserting a section 112 claim. Dkt. 1438. Each of the Certain Defendants answered, denying liability.[9] API then executed a Stipulation for Final Entry of Judgment and a proposed Final Judgment, stating that judgment would be entered in favor of each Defendant on API's section 112 claim. Dkt. 1481. Paragraph 2 of the proposed Final Judgment states:

> Judgment is entered in favor of each Defendant and against API on the claim of subrogation asserted in the alternative in API's Eighth Amended Complaint (Dkt. #1438) on the ground that such subrogation claim is derivative of the rights and claims of NCR and is predicated upon NCR's right to a recovery in this action, which right the Court has denied through this Judgment and underlying rulings.

---

[8] API in its Eighth Amended Complaint acknowledges that its CERCLA section 112 claim and alternative equitable subrogation claim are derivative and available only if NCR is determined to be entitled to contribution after appeal. Dkt. 1438, ¶¶ 14-16.

[9] *See* Dkt. 1440 (Neenah-Menasha Sewerage Commission), 1441 (U.S. Paper Mills Corp.), 1443 (Menasha Corp.), 1444 (City of Appleton), 1446 (WTM I Co.), 1447 (Georgia Pacific Consumer Products LP), 1448 (P.H. Glatfelter Co.), 1449 (CBC Coating, Inc.).

16

Pursuant to the Stipulation, API has no CERCLA section 112 claim against the Certain Defendants.

## CONCLUSION

API has fully prosecuted the CERCLA section 113 claim that this Court held in 2008 was available to it. The court found that API and NCR, plaintiffs with a unitary joint share, are 100% liable in contribution. Granting API a do-over of the claim it brought and lost is unfair to Certain Defendants. It would also lead to the same result – all the parties except NCR will have zero percent liability and NCR will have 100 percent liability.

API vigorously has maintained that its only involvement in this case is as NCR's indemnitor. As an indemnitor, API's financial obligations for the Site are a result of contractual arrangements with NCR, not CERCLA. API cannot now claim that it incurred response costs under CERCLA and is entitled to a claim under CERCLA section 107. Granting the motion would be prejudicial and futile. It should be denied.

Dated this 13th day of May, 2013.

| | |
|---|---|
| */s/ David G. Mandelbaum* | */s/ Nancy K. Peterson* |
| David G. Mandelbaum | Nancy K. Peterson (Wis. Bar No. 1000197) |
| Francis A. Citera | Peter C. Karegeannes (Wis. Bar No. 1015025) |
| Marc E. Davies | William H. Harbeck (Wis. Bar No. 1007004) |
| Caleb J. Holmes | Quarles & Brady LLP |
| Adam B. Silverman | 411 E. Wisconsin Avenue |
| GREENBERG TRAURIG, LLP | Milwaukee, WI 53202 |
| Two Commerce Square, Suite 2700 | Telephone: 414-277-5000 |
| 2001 Market Street | nancy.peterson@quarles.com |
| Philadelphia, PA 19103 | |
| 215.988.7800 | **Attorneys for Defendant WTM I Company** |
| mandelbaumd@gtlaw.com | |
| | |
| **Attorneys for Defendant P.H. Glatfelter Company** | |

*/s/ William J. Mulligan*
William J. Mulligan
Kevin J. Lyons
Elizabeth K. Miles
Davis & Kuelthau, s.c.
111 E. Kilbourn Avenue, Suite 1400
Milwaukee, WI 53202
Telephone: (414) 276-0200
Facsimile: (414) 276-9369
Email: wmulligan@dkattorneys.com
klyons@dkattorneys.com
emiles@dkattorneys.com

**Attorneys for Defendant Neenah Menasha Sewerage Commission**

*/s/ Susan E. Lovern*
Susan E. Lovern (#1025632)
Michael P. Carlton (#1016037)
Thomas Armstrong (#1016529)
Kelly J. Noyes (#1064809)
von Briesen & Roper, s.c.
411 East Wisconsin Avenue, Suite 700
Milwaukee, WI 53202
Telephone: (414) 276-1122
Fax: (414) 276-6281
slovern@vonbriesen.com
mcarlton@vonbriesen.com
tarmstro@vonbriesen.com
knoyes@vonbriesen.com

**Attorneys for Defendant CBC Coating, Inc.**

*/s/ Philip C. Hunsucker*
Philip C. Hunsucker
Allison E. McAdam
Marc A. Shapp
Hunsucker Goodstein PC
3717 Mt. Diablo Blvd., Suite 200
Lafayette, CA 94549
Telephone: (925) 284-0840
Fax: (925) 284-0870
phunsucker@hgnlaw.com
amcadam@hgnlaw.com
mshapp@hgnlaw.com

**Attorneys for Defendant Menasha Corporation**