UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

APPVION, INC. and NCR CORP.,

    Plaintiffs,

v.                                                                                             Case No. 08-C-16

P.H. GLATFELTER COMPANY, et al.,

    Defendants.

## ORDER GRANTING RECONSIDERATION

Defendant P.H. Glatfelter filed a motion seeking reconsideration of this court's 2011 ruling rejecting the argument that NCR could be held liable for cleanup costs in OU1, an area of the Lower Fox River Site upstream from any facilities from which NCR discharged. For the reasons given below, the motion will be denied.

In ruling that NCR could not be liable for contribution for OU1 costs, I reasoned that it was merely bureaucratic happenstance that OU1 was considered part of the same "site." It was an administrative fact, but not a physical fact, because no one plausibly argued that discharges from OU2 sites, downstream from OU1, would have flowed back into OU1 to cause contamination there. Accordingly, I concluded that NCR could not be liable, as a discharger, in contribution for OU1 costs.

Glatfelter's motion for reconsideration is premised on the Seventh Circuit's more recent ruling regarding Glatfelter's argument in that court. Glatfelter argued there, as it did here, that its contamination (from OU1) did not make it downstream in sufficient quantities to justify liability

in OU4. The Seventh Circuit rejected that argument, in part by using what Glatfelter calls the "one site" theory:

> Where Glatfelter's argument goes astray is in its assumption that the government must prove all of the elements of liability in relation to each operable unit of the Site. Such a requirement is nowhere to be found in the statute. Instead, once it is established that a party is responsible for a facility "from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance," that party "shall be liable for ... all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a).

*United States v. P.H. Glatfelter Co.,* 768 F.3d 662, 674 (7th Cir. 2014).

In other words, the Seventh Circuit held that if a party is responsible for "a release . . . of a hazardous substance," that party shall be liable for all costs of removal at the Site, without the need for the government to prove "all of the elements of liability in relation to each operable unit." *Id.* Thus, it rejected Glatfelter's argument that the government needed to prove the connection between its releases in OU1 and response costs in OU4. It was enough that Glatfelter released the PCBs at the Site and that there were response costs incurred at that Site:

> nothing in the statute limits the defendant's liability to the response costs its release caused. Instead, the defendant is liable for all response costs "not inconsistent with the national contingency plan." *Id.* The national contingency plan authorizes removal or remedial action at the "site," 40 C.F.R. §§ 300.415, 300.435, and it defines "on-site" to mean "the areal extent of contamination and all suitable areas in very close proximity to the contamination necessary for implementation of the response action," id. § 300.5. Where, as here, releases from multiple facilities contaminate an interconnected environmental system like a river, the entire system falls within this definition. Thus, in this case, the Site was properly defined to include the entire Lower Fox River and Green Bay, and so long as PCBs released from the Bergstrom Mill caused the incurrence of some response costs within the Site, Glatfelter may be held liable for all response costs within the Site.

*Id.* at 675.

In contrast to this Court's earlier view that the designation of various operable units was

2

merely administrative happenstance, the Seventh Circuit placed great weight on such administrative designations, the upshot of which was that costs incurred at a Site are the responsibility of any party who discharged at the Site, regardless of causation:

> Glatfelter does not dispute that PCB discharges from the Bergstrom Mill caused the incurrence of response costs in Little Lake Butte des Morts, which is within the Site. Yet it insists that its liability should not extend to OU4, where discharges from the Bergstrom Mill may not have caused the incurrence of response costs. In essence, Glatfelter wants us to treat OU4 as a separate site for which the government must establish liability. But this is inconsistent with the national contingency plan, which defines an operable unit as "a discrete action that comprises an incremental step toward comprehensively addressing site problems." To put it simply, operable units are not separate sites; thus, they do not determine the extent of a party's liability.

*Id.*

Based on the Seventh Circuit's ruling, Glatfelter now argues that what's good for the goose is good for the gander: if Glatfelter must be held liable for the entire Site—regardless of causation—then so must NCR. NCR had argued that it could not be liable for OU1 because it did not cause response costs in OU1. But since we now know that causation is not properly part of the analysis, Glatfelter contends, that doesn't matter. It is enough that NCR released PCBs at the Site, which clearly it did. The Seventh Circuit held that "the Site was properly defined to include the entire Lower Fox River and Green Bay, and so long as PCBs released from the Bergstrom Mill caused the incurrence of some response costs within the Site, Glatfelter may be held liable for all response costs within the Site." *Id.*

A key problem with this argument, which NCR identifies, is timing. Glatfelter had the opportunity to seek review of this Court's rejection of its earlier argument, but it did not do so, likely because such an argument would have been inconsistent with the argument Glatfelter itself was making to the Seventh Circuit. Thus, NCR argues the argument is waived.

A related problem is the fact that this Court entered a final judgment in June 2013. Glatfelter asserts that my ruling rejecting its argument was some sort of interlocutory order that may be revisited for any reason at all, Fed. R. Civ. P. 54(b), but that is not true. A final judgment was entered, and appealed. The relief Glatfelter seeks could have been granted *on appeal*—after all, it is the appellate court's very ruling that underlies its present argument. But evidently Glatfelter did not make it, no doubt because it was trying to win its own argument echoing the argument NCR had already won.

I conclude that these procedural issues do not preclude reconsideration of Glatfelter's argument. As a general rule, of course, an issue that could have been raised on appeal, but was not, is waived and thus outside the scope of the court of appeals' mandate. *United States v. Bell,* 5 F.3d 64, 66 (4th Cir.1993) (stating that the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court[,]" as well as "issues decided by the district court but foregone on appeal"). The law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances." *United States v. Polland,* 56 F.3d 776, 779 (7th Cir. 1995). Thus, the law of the case doctrine precludes a defendant from raising an argument not raised during his first appeal. See *United States v. Whitlow,* 740 F.3d 433, 438 (7th Cir. 2014) ("In assessing the scope of our initial remand, an issue that could have been raised on appeal but was not is waived and, therefore, not remanded.").

Although these rules are applied in typical cases, this is not a typical case. Given the complexity of the issues raised, as well as the underlying uncertainty of CERCLA law, a court should not be over-eager to strictly apply procedural rules that bar arguments, particularly arguments

4

that now seem viable. Courts recognize some flexibility when there is a change in legal authority or when other factors would excuse a waiver. "We have repeatedly stated that changes in litigation position on successive appeals are barred except where justified by intervening authority, new and previously undiscoverable evidence, or other changed circumstances." *United States v. Sumner,* 325 F.3d 884 (7th Cir. 2003). Among these "changed circumstances" are situations in which a previous ruling was clearly erroneous and would result in injustice. See, e.g., *Demahy v. Schwarz Pharma, Inc.,* 702 F.3d 177, 185 (5th Cir. 2012); *United States v. Amedeo,* 487 F.3d 823, 829 (11th Cir. 2007); *United States v. Campbell,* 168 F.3d 263, 269 (6th Cir. 1999); *United States v. Aramony,* 166 F.3d 655, 661 (4th Cir. 1999).

Here, as discussed above, the Seventh Circuit very clearly de-linked the need for parties to prove causation with respect to each operable unit of a Site, and preventing Glatfelter from making that argument now could work a manifest injustice because it would mean the parties are not playing on a level playing field. The law should not be one thing for one party and another for a second party, especially within the confines of a single action. This is perhaps particularly true given that this case arises under the court's equitable authority, where the intent is to achieve something akin to overall fairness.

For these reasons, the motion for reconsideration is **GRANTED**. In light of the Court of Appeals' recent decision in *United States v. P. H. Glatfelter Co. & NCR Corporation,* 768 F.3d 662, 674-75 (7th Cir. 2014), I conclude that NCR is liable for OU1 because it released PCBs at the Lower Fox River Site. **SO ORDERED** this 3rd day of March, 2015.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court