UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

APPVION, INC. and NCR CORP.,

   Plaintiff,

v.                Case No. 08-C-16

P.H. GLATFELTER CO., et al.,

   Defendants.

**DECISION AND ORDER**

   Before me presently are Appvion's motion for a protective order and two responsive motions to compel information. In addition, Kimberly-Clark has filed a motion for summary judgment, and Appvion has filed two motions for judgment on the pleadings. I address these motions herein.

**I. Protective Order and Motions to Compel**

**A. Collateral Source Rule**

   Several of the Defendants have sought information from Appvion detailing the payments and settlements it has received from various of its insurers or indemnitors. According to some of the Defendants, Appvion has received some $350 million in insurance recoveries, when in fact it is only out-of-pocket about $16 million, or less. Appvion has rejected the requests for information on the grounds that the collateral source rule applies, meaning that any monies it has received are irrelevant to its cost recovery action.

   In short, the collateral source rule holds that a culpable tortfeasor should not receive the benefit of the injured party's insurance, or other sources of recovery. In applying the rule, courts

routinely note that it is better to have the injured party receive a double recovery than to credit the tortfeasor.

> Permitting the plaintiff to recover twice for the same injury pursuant to the collateral source rule is generally justified on the ground that the tortfeasor should not be permitted to reap the benefits of the plaintiff's foresight in obtaining coverage for future harm or his good fortune in obtaining compensation gratuitously. In choosing who should receive the windfall from the "surplus" award, i.e., compensation over and above that necessary to compensate the plaintiff for the injuries sustained by the tortious conduct, the plaintiff is thought to be far more deserving than the defendant.

*Molzof v. United States,* 6 F.3d 461, 465 (7th Cir. 1993) (citation omitted).

Appvion recognizes that the collateral source rule is typically applied in tort cases, not in CERCLA cases. In fact, courts addressing the rule's applicability under CERCLA § 113 have uniformly found that it does *not* apply. But this case is different, Appvion argues, because Appvion has been deemed a non-liable, or innocent, party, whereas the other Defendants are all jointly liable as potentially responsible parties, or PRPs. In the other CERCLA cases declining to apply the rule, the courts have noted that the normal rationale behind the collateral source rule does not apply. For example, the Seventh Circuit found the rule inapplicable to § 113 contribution claims because the parties in a § 113 claim are joint tortfeasors: "Contribution actions under CERCLA § 107 [sic] are a mechanism for allocating costs among joint tortfeasors and are governed wholly by equity. Equity would not be served by requiring a district court to remain blind to alternate sources of recovery for one tortfeasor and the possibility of its recouping more than 100% of its share." *NCR Corp. v. George A. Whiting Paper Co.,* 768 F.3d 682, 707 (7th Cir. 2014). The Tenth Circuit, on which the Seventh Circuit partly relied, explained more fully: "a CERCLA contribution action is not a personal injury action by an innocent plaintiff. Instead, it is a claim between two or more culpable tortfeasors, and the policy underlying the collateral source rule-to provide the innocent party with

2

the benefit of any windfall-is simply not advanced in such cases." *Friedland v. TIC-The Indus. Co.*, 566 F.3d 1203, 1206-07 (10th Cir. 2009).

Here, by contrast, Appvion is not a "tortfeasor." Appvion is not a PRP and is not jointly liable with the other parties. Accordingly, it believes the rationale underlying the CERCLA cases cited above does not apply. In its view, there is no harm, and no offense to principles of equity, in allowing it to enjoy a double recovery. In fact, "[e]quity plays no role in a section 107(a) action, in contrast to a section 113(f) action." NCR, 768 F.3d at 690 (7th Cir. 2014).

Appvion is correct that courts declining to apply the collateral source rule have relied partly on the fact that the parties in those contribution actions are joint tortfeasors, whereas here the party seeking to apply the rule is not jointly liable. But it is also true that although the parties in a § 113 action are jointly liable PRPs, CERCLA is a strict liability statute, and thus traditional notions of fault or blame do not always come into play. *Farmland Indus., Inc. v. Morrison-Quirk Grain Corp.*, 987 F.2d 1335, 1339 (8th Cir. 1993) ("[l]iability under CERCLA is strict, without regard to the liable party's fault or state of mind.")(citation omitted). Thus, even if parties are jointly liable, that does not necessarily make them akin to culpable tortfeasors. In fact, this Court has already attributed the fault for the PCB damage at issue here largely to NCR, one of the plaintiffs. Given that many or most of the Defendants are largely blameless (in a culpability sense, if not in the sense of the statute), it would make little sense to apply the collateral source rule in order to reward an "innocent" party at the expense of the culpable tortfeasors.[1] In short, in terms of the considerations that gave rise to the collateral source rule, a party's status as a litigant under § 107 versus § 113 does

---

[1] This is not to say that all consideration of the parties' relative fault is foreclosed from further inquiry.

3

not necessarily carry much significance.

Instead, the overall purpose of CERCLA is better served if the collateral source rule does not apply. First, declining to apply the rule would create clarity and provide uniformity to the law, underscoring that the CERCLA model, regardless of which section of the statute applies, does not compare to the more familiar tort paradigm. More importantly, CERCLA's primary purpose is to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites," and thus it would follow that the parties who actually might have to fund the cleanup should not be barred from funds that will aid their ability to do so. *Carson Harbor Vill., Ltd. v. Unocal Corp.,* 270 F.3d 863, 880 (9th Cir. 2001) (citations omitted). Many PRPs have difficulty paying their fair share, and if another party has already been made whole it would make little sense to favor that party's double recovery over the funding of the cleanup itself. Appvion is right that the "polluter must pay" is among CERCLA's general directives, but surely that consideration is subservient to the actual cleanup and its funding. Accordingly, I conclude that the collateral source rule should not shield Appvion from making the disclosures sought by the Defendants.

**B. Other Objections to Disclosure**

In addition to the collateral source rule, Appvion also raises specific objections to certain other lines of inquiry the Defendants have made.

**1. OU4B Costs**

First, Appvion objects to Georgia-Pacific's discovery requests seeking information about costs incurred in OU4B. Appvion argues that these costs are not readily ascertainable because many invoices are not divided up based on the location in which the work was performed. Thus, Appvion

4

will eventually be producing expert opinions detailing its OU4B costs.

The Defendants respond that they are seeking facts, not expert opinions, and that if Appvion is seeking cost reimbursement for OU4B, then Appvion needs to explain what those costs are by answering the interrogatory. The problem, however, appears to be the fact that Appvion is simply not in possession of additional information responsive to the interrogatory. If invoices and the like are not broken down by operable unit, as Appvion claims, it will be impossible to answer the interrogatory in any meaningful fashion. Obviously, at some point Appvion must come forward with a justification for costs it seeks, but it appears unable to do so now, through little or no fault of its own. Accordingly, the motion to compel will be denied with respect to OU4B costs.

**2. Arbitration Materials**

Some Defendants have sought documents relating to arbitration proceedings between Appvion and NCR, which occurred pursuant to a 1998 settlement agreement. Appvion notes that the scope of the discovery requests is broad, extending not just to opinions and transcripts but to briefs and to documents that merely "refer to" the arbitration proceedings. Appvion cites this court's ruling in *Roper v. Old Republic Ins. Co.,* No. 09-C-154, 2010 WL 424598 (E. D. Wis., Feb. 1, 2010), in which I denied a motion to compel production of transcripts, recordings and the arbitration decision itself. In doing so, I cited the existence of a common defense privilege, as well as the fact that the agreement to arbitrate was essentially a private undertaking between the parties.

I agree with the Defendants, however, who respond that Appvion's concerns speak more to confidentiality, which can be addressed through a protective order, than to discoverability. Unlike *Roper*, here the arbitration proceedings could be expected to shed light on the nature of Appvion's costs and the reason it incurred them. Since Appvion is suing under § 107, it must show that it

5

incurred costs as a PRP rather than as an indemnitor, and information arising in the context of the arbitration with NCR could speak to that question. In essence, by bringing such a claim, Appvion opened the door to discovery and put its relationship with NCR at issue. It is true that some aspects of the arbitration could very well be irrelevant to the issues remaining in this case. But that does not mean Appvion can sustain a blanket objection to turning over all responsive documents. Accordingly, the motion to compel will be granted as to arbitration materials.

### 3. United Kingdom Litigation

The Defendants have also requested information regarding litigation among Appvion, B.A.T. Industries, and Windward Prospects Ltd., which occurred in the U.K. Appvion argues that this request is even farther afield than the request for information about its arbitration with NCR because any relationship it has with B.A.T. is not at issue in this case. Although the Defendants suggest that the discovery could show how and why Appvion was a PRP, it does not explain in anything but a cursory fashion how the foreign litigation would actually be relevant to the issues in this action. If Appvion has any information regarding potential collateral source payments made by B.A.T., that would be relevant. But otherwise, it is difficult to discern why it should turn over all documents relating to that litigation.

### 4. Other Requests

Georgia-Pacific and U.S. Paper also sought discovery of other matters, as set forth in their brief. These include adversarial communications between NCR and Appvion, as well as Appvion and B.A.T. Appvion has not responded to these arguments, except as set forth above. Accordingly, the motion to compel will be granted as to that discovery. The motion to compel will be denied as to the discovery requests not addressed in the Georgia-Pacific/U.S. Paper brief.

6

## II. Kimberly-Clark's Motion for Summary Judgment

Defendant Kimberly-Clark has filed a motion seeking dismissal, citing the fact that it has entered into a settlement with the government. The settlement contains a contribution bar, meaning that no party may pursue a § 113 contribution claim against it. NCR has filed a brief opposing the motion. NCR concedes that the § 113 claim must be dismissed, and that the § 113 claim is the only claim brought against Kimberly-Clark at the moment. But it asks that the court defer ruling on the motion so as to keep Kimberly-Clark in the case until such time as Appvion, or some other party, brings a § 107 claim against it.

The motion will be granted. The motion addresses the only claim brought against Kimberly-Clark, which all parties concede must be dismissed. NCR has not provided good reason to defer putting effect to the consent decree, and in fact no other party, including Appvion itself, has filed any objection. Kimberly-Clark is entitled to judgment.

## III. Dismissal of Counterclaims

Finally, Appvion moves for judgment on the pleadings of the § 113 counterclaims brought against it by Georgia-Pacific and Glatfelter. Appvion notes that this court has already concluded that Appvion is not a PRP, and § 113 is only available for parties sharing joint liability.

Georgia-Pacific protests that its counterclaim is not premised on Appvion being liable under CERCLA. Instead, it relies on the fact that Appvion has a subrogation interest with NCR. In Appvion's ninth amended complaint, Appvion alleges claims under CERCLA § 112(c) as well as equitable subrogation theories, seeking any right "that NCR may ultimately be determined to have against GP and / or Glatfelter for recovery of any portion" of response costs. (ECF No. 1617, ¶ 82.) Appvion's subrogation right, which arises from agreements Appvion has reached with NCR, means

7

that it stands in the shoes of NCR. According to Georgia-Pacific, because Appvion stands in NCR's shoes, Georgia-Pacific may bring the same counterclaims against Appvion that it brings against NCR.

It does not work both ways, however. The fact that Appvion might be a subrogee of NCR is a relationship exclusive to NCR and Appvion. It means that Appvion may stand in NCR's shoes to recover against other parties, but it does not mean that other parties can turn that around and state a claim against Appvion. As Appvion notes, that would be like finding that an insurance company assumed its subrogor's tort liability. The insurer has a subrogation right to pursue claims, but that right does not mean that it may somehow become pursued itself.

Glatfelter has a slightly different take. It argues that its § 113 counterclaim is not premised on Appvion being liable under CERCLA, but on the fact that Appvion and NCR (which *is* liable) have created a "single, unitary share" of liability for which both are jointly liable. This unitary share is purported to be the product of agreements reached long ago. According to Glatfelter, NCR and Appvion made an underpayment, and that was a *joint* underpayment. As such, Glatfelter should be able to state a contribution claim against Appvion just as it has done against NCR.

As Appvion notes, however, this would simply be an end-around this court's conclusion that Appvion is not a liable party under CERCLA. Contribution under § 113 is limited to joint tortfeasors. As the Seventh Circuit already noted, "section 113(f) . . . is a poor fit for this situation, because contribution exists only among joint tortfeasors." *NCR,* 768 F.3d at 694. If Glatfelter has some sort of contractual right arising from earlier agreements, it may bring a contract claim to that effect. But private agreements to pay are not the same as agreements to accept direct liability, and that is what Glatfelter appears to be attempting to accomplish with its counterclaim. In sum, the

8

Case 2:08-cv-00016-WCG    Filed 11/10/15    Page 8 of 9    Document 1744

motions to dismiss will be granted.

**III. Conclusion**

The motions for judgment on the pleadings are **GRANTED**. Georgia-Pacific's counterclaims against Appvion are **DISMISSED**. Glatfelter's second counterclaim against Appvion is also **DISMISSED**. Kimberly-Clark's motion for summary judgment is **GRANTED**. All claims against Kimberly-Clark are **DISMISSED**. The motions to compel are **GRANTED** in part and **DENIED** in part, as set forth herein. The motion for a protective order is **DENIED**.

**SO ORDERED** this 10th day of November, 2015.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court