UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

APPVION, INC. and NCR CORP.,

        Plaintiff,

v.                                                                            Case No. 08-C-16

P.H. GLATFELTER CO., et al.,

        Defendants.

## DECISION AND ORDER

Before me presently is Georgia-Pacific's motion for a protective order and its Rule 7(h) motion to compel information. For the reasons given below, the motion for a protective order will be denied and the motion to compel will be granted.

**I. Protective Order**

Georgia-Pacific seeks a protective order to prevent NCR from conducting depositions of its general counsel and its lead in-house counsel for litigation. Georgia-Pacific argues that depositions of opposing counsel are disfavored, and NCR has not shown that there were no other means of obtaining the information NCR now seeks. Moreover, even if other (non-attorney) witnesses could have testified, the time for doing so has passed. NCR responds that it noticed the depositions in question last August, well before the September 15 discovery cutoff, and has been engaged in negotiations with Georgia-Pacific to try to obtain the same information from other witnesses. It also argues that attorney depositions are not uncommon in CERCLA cases, where one of the relevant issues involves a party's cooperation with the government and its participation in cleanup efforts.

In such cases, an attorney—particularly an in-house attorney—can be expected to have non-privileged information about its company's history of cooperation in such efforts.

I am satisfied that the motion seeking a protective order should be denied. I begin by noting that one of the reasons depositions of opposing counsel is sometimes disfavored is that such proceedings could be vexatious and give rise to harassment and waste. There is no real suggestion of that here. This lengthy and complex litigation, now in its ninth year, is characterized by a very high degree of professionalism among the attorneys on all sides. NCR's counsel has no history of using discovery devices as harassing techniques, nor is it expected that counsel has the time or energy to waste on such undertakings. In short, any concern about improper motives falls out.

It is also true that discovery is intended to be broad, and NCR has cited reasonable grounds to believe that the two putative attorney-witnesses would have discoverable information pertaining to the equitable factors at issue here. NCR argues that its own leadership in the cleanup effort stands in stark contrast to Georgia-Pacific's efforts, and presumably it wants to probe the extent of those efforts and Georgia-Pacific's decision-making process. NCR's own general counsel is expected to be a witness, and therefore it is impossible to say that in-house attorneys do not possess relevant information in a CERCLA case like this. That NCR itself is calling its counsel as a witness does not change the fact that in-house attorneys *in general* can be expected to possess relevant information under these circumstances.

To the extent some of the information sought would be privileged, the attorney being deposed (themselves also represented by counsel) will be equipped to navigate those waters. In *Hunt Int'l Resources Corp. v. Binstein,* the court explained that "completely preventing the taking of a deposition . . . would tend to limit or fix the scope of the examination before it began and

2

would usurp the court's role in deciding whether certain questions seek privileged information. The more appropriate method is to allow the deposition to be taken and permit the attorney to claim privilege in the face of certain questions, if necessary." 98 F.R.D. 689, 691 (N.D. Ill.1983).

Contrary to Georgia-Pacific's view, a party seeking to depose an attorney is under no obligation to demonstrate that there is *no* other source for the information being sought. That supposed obligation, which derives from *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1986), an Eighth Circuit case, is intended to operate "as a barrier to protect *trial attorneys* from these depositions." *Pamida, Inc. v. E.S. Originals, Inc.,* 281 F.3d 726, 730 (8th Cir. 2002). The limitation of *Shelton* to trial attorneys is reflected in cases Georgia-Pacific cites, such as *Newell v. Wisconsin Teamsters Joint Council No. 39,* No. 05-C-552, 2007 WL 2874938, at *7 (E.D. Wis. Sept. 28, 2007). There, Judge Goodstein expressed significant concern that a deposition of opposing counsel—i.e., counsel who had actually appeared in the litigation—could turn the lawyer into a witness and create a conflict of interest, giving rise to delay and chaos. "If Attorney Soldon and his law firm were required to withdraw because Soldon becomes a witness, given the complexity of this case, requiring the defendants to bring in new counsel after more than two years would necessarily result in an incredible expense to the defendants and would surely delay the resolution of a case that has already lingered on this court's docket long enough." *Id.* Here, by contrast, there is no danger of delay due to conflict because Georgia-Pacific is represented in this action by a law firm (actually, more than one), not by the company attorneys subject to being deposed.

Similarly, in *Advance Sys., Inc. of Green Bay v. APV Baker PMC, Inc.*, on which Georgia-Pacific also relies, the party served a deposition notice on opposing trial counsel seeking

3

"information regarding the nature and extent of the factual investigation, if any, conducted by [counsel] prior to filing a counterclaim in an otherwise ordinary commercial dispute charging them with creating a sham corporation and with racketeering." 124 F.R.D. 200, 201 (E.D. Wis. 1989). Such a deposition would touch on the legal theories underlying the very case before the court, and so (not surprisingly) a protective order was granted to prevent that deposition. Here, by sharp contrast, NCR seeks information from non-appearing, in-house attorneys about Georgia-Pacific's *past* conduct outside of this litigation.

Perhaps it is understandable that courts are naturally wary of efforts to depose other attorneys, but the mere fact that an individual, employed by a party, has a license to practice law does not insulate him from discovery or create a massive hurdle that must be overcome. Under the circumstances of this unique case, it is inconceivable to the court that NCR's counsel would undertake discovery if it did not have a good faith belief that the discovery could produce relevant results. Counsel can be expected to manage issues relating to privilege in an appropriate fashion.

**II. Motion to Compel Insurance Information**

Georgia-Pacific has also filed a Rule 7(h) expedited motion seeking to compel information regarding NCR's settlements with some of its insurers. GP seeks production of settlement information resulting from 1989 litigation. It also seeks information that would allow it to match certain settlement agreements NCR produced with the insurance policies NCR also produced. Finally, GP seeks production of documents regarding allocation of insurance payments and costs incurred at the Fox River site (as opposed to other sites).

NCR responds that it would produce the information but for the fact that its settlement

4

agreements forbid production absent a court order. Its carriers have objected to production on the grounds of confidentiality, the theory being that identification of specific carriers and the amounts for which they have settled could jeopardize their business. Georgia-Pacific proposes that NCR would produce redacted policies with pseudonyms (e.g., "Insurer A"), which would allow Georgia-Pacific to match the policies with the settlements, which have already been produced using pseudonyms. GP also notes that other information it seeks, such as deposition transcripts from the Brown County insurance litigation, do not contain identifying information that would compromise the insurers' identities.

I am satisfied that the information sought is relevant, at least for purposes of discovery, and the limited interest third-party insurers have in confidentiality cannot trump the right to discover such information, particularly given the large role that insurance setoffs could play in this case. There is a protective order in this case, and Georgia-Pacific has expressed no small degree of sensitivity to the insurers' interest in maintaining confidentiality. It is certainly conceivable that a diligent and motivated lawyer-sleuth could put all the pieces of the various settlements and policies together and discover the identity of "Insurer X," or "Carrier Y," but it is expected that such efforts will not occur, and in any event Georgia-Pacific is entitled to the information with reasonable safeguards.

The motion for a protective order is **DENIED**. The motion to compel insurance information is **GRANTED**. NCR will produce the information described in the motion with insurer identities redacted. The motions to file a sur-reply brief and a sur-sur-reply brief are **DENIED**.

**SO ORDERED** this 30th day of March, 2016.   /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court