UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

APPVION, INC. and NCR CORP.,

              Plaintiffs,

v.                                                               Case No. 08-C-16

PH GLATFELTER COMPANY, et al.,

              Defendants.

---

## DECISION AND ORDER

---

On April 10, 2012, in companion case No. 10-C-910, this court determined that the terms of a 1978 assumption agreement were not broad enough to make Appvion liable as a successor in interest to NCR's CERCLA. Defendant Georgia-Pacific has now filed a motion for summary judgment [1794] on the question of Appvion's liability under CERCLA. They argue that, even though this court already determined that Appvion lacked *successor* liability, evidence now shows that Appvion has *direct* liability by virtue of its own PCB discharges, however minuscule those discharges might have been. For the reasons given below, the motion will be denied.

**I. Procedural History**[1]

In 2011 the government filed a motion seeking a preliminary injunction against NCR and Appleton Papers Inc. (which I will call Appvion, its current name). On July 5, 2011, this court denied the motion with respect to Appvion because I concluded its assumption agreement meant

---

[1] Additional background information is available in Case No. 10-C-910, ECF No. 172 at 16.

only that it was agreeing to indemnify NCR for any environmental liability, not that it was agreeing to become liable itself. (Case No. 10-C-910, ECF No. 172 at 18-20.) I also rejected, in a footnote, the government's cursory reply-brief argument suggesting that Appvion had direct CERCLA liability as a result of its own pollution to the Lower Fox River. (*Id.* at 21 n.2.) Thus, I concluded that the government had shown little likelihood of success on the merits and denied the motion for a preliminary injunction.

Seizing on that ruling, on July 28, 2011 Appvion quickly moved for summary judgment, seeking a definitive determination that it had no liability under CERCLA. (Case No. 10-C-910, ECF No. 194.) In its brief, Appvion once again primarily argued it had no successor liability, but it also anticipated, and countered, the government's argument that it was *directly* liability under CERCLA due to its own discharges. In short, it argued that despite fifteen years of investigation the government had "no credible evidence in support of a last-minute allegation of direct discharges thrown in after 15 years of silence on such a theory." (Case No. 10-C-910, ECF No. 197 at 18.)

The government and the other Defendants responded. In a brief filed by Georgia-Pacific, P.H. Glatfelter, *et al.,* the Defendants argued that summary judgment would be premature because factual issues remained outstanding. (Case No. 10-C-910, ECF No. 206 at 23.) They also filed a declaration under Fed. R. Civ. P. 56(d) to the same effect. (Case No. 10-C-910, ECF No. 208.) In their Rule 56(d) declaration, the parties indicated that "No discovery about API's factual assertions concerning its assumption of liabilities has been had in this case, or the related case of Appleton Papers, et al. v. George W. Whiting." (*Id.*, ¶ 3.) It also noted that "numerous documents which have not been produced in this action or the Whiting case that would be relevant to the issue of API's assumption of CERCLA liability." (*Id.*, ¶ 4.) These documents pertain solely to Appvion's

2

assumption of liability, rather than its direct liability. Similarly, the government's response was limited to arguments about Appvion's potential successor liability. In fact, in its response to Appvion's proposed findings, the government made clear that it was *not* arguing that Appvion was directly liable under CERCLA:

> Plaintiffs do not contend that API has liability for the Site under CERCLA §§ 106 or 107 based on releases or threatened releases of PCBs from the Appleton Coating Facility or the Combined Locks Mill after API acquired those facilities in July 1978. *Plaintiffs contend that API is liable solely by virtue of the disposal and release of PCBs by alleged corporate predecessors of API before July 1978.*

(ECF No. 204 at ¶ 53) (italics added).

In sum, when faced with Appvion's argument that it lacked direct liability under CERCLA, no party raised any argument in opposition, and neither did they protest that additional discovery would be required.

Given this history, Appvion now argues that if the Defendants wanted to contest the direct liability question, they were obligated to do so 2011, when Appvion moved for summary judgment on that issue. The government's and Defendants' briefs in opposition to summary judgment were silent on Appvion's direct liability, and no party filed a Rule 56(d) declaration indicating that the court should delay ruling on the motion until more discovery on that point was obtained. Appvion properly raised the issue in its own brief, and the Defendants appeared content to concede the point. In fact, the only reason the Defendants are even able to bring the present motion is through the happenstance of a remand of the case for *other* reasons. For all intents and purposes, the issue of Appvion's liability has been fully litigated at this level. In this court's decision granting Appvion's motion for reconsideration, the court concluded that Appleton Papers Inc. "is entitled to summary judgment that it is not a liable party under CERCLA. All claims against API are DISMISSED."

3

(ECF No. 349 at 9.)

The Defendants now argue that they did not concede the absence of evidence of Appvion's direct liability. The best evidence on that point is found in their response to Appvion's summary judgment argument that there was no evidence it was directly liable. In that response, the Defendants stated that "Certain Defendants do not believe this proposed fact is material. To the extent it is, they are without sufficient knowledge and information, and would need discovery, to respond to this proposed fact." (Case No. 10-C-910, ECF No. 207 at 24.) The Defendants now argue that their responses at the time sufficed to alert the court that factual issues remained as to Appvion's direct liability. As such, they suggest they were not conceding the absence of direct liability but merely preserving the right to argue the point at some later date.

But that is not how summary judgment works. The Defendants' briefs were wholly silent on Appvion's direct liability, and so was their Rule 56(d) declaration, which limited itself to assertions that additional discovery could shed light on Appvion's *successor* liability. And, by stating that Appvion's assertions regarding its lack of direct liability were not "material," it was clear that the Defendants were putting all of their eggs into the successor liability basket. Simply stating that the Defendants "would need discovery" on a fact they view as immaterial would not suffice to hold up summary judgment proceedings. Why would a court delay ruling on summary judgment and open up discovery on a fact the non-moving party claims is not material? This is particularly unusual when the party files a Rule 56(d) declaration seeking discovery on *other* matters but fails to mention the issue of direct liability at all.

It is no doubt true, as the movants argue, that district courts maintain some degree of flexibility in allowing for successive motions for summary judgment, or for overlooking a waiver

4

if the waiver would result in a miscarriage of justice. For example, in *Yorger v. Pittsburgh Corning Corp.,* the court excused a plaintiff's failure to file an affidavit in response to a summary judgment motion, concluding that the plaintiff had at least contested the key point in its response. 733 F.2d 1215, 1222 (7th Cir. 1984). Key to the court's ruling, however, was the fact that the defendant (the moving party) had the burden of establishing the absence of a genuine issue of material fact and yet failed to do so. Thus, "[i]n this case defendant did not discharge its burden of showing that no genuine issue of material fact exists in regard to plaintiff's alleged exposure in 1979 at the Paradise plant; therefore plaintiff should not be penalized for failure to attach an affidavit to his response." *Id.* The point is that because the moving party shoulders the burden of establishing a right to judgment as a matter of law, its opponent sometimes does not need to marshal every bit of contrary evidence or argument.

Here, however, Appvion offered eleven numbered paragraphs in its proposed findings under the heading, "There Is No Evidence That API's Own Operations Beginning June 30, 1978 Resulted in Any Discharges Of PCBs Into The Lower Fox River Or Green Bay." (ECF No. 196 at p. 10.) In these paragraphs Appvion took issue with the various exhibits the government had previously cited, explaining why each one of them failed to suggest a discharge of PCBs. (*Id.* at ¶¶ 53-63.) Its direct liability was thus a "live" issue, squarely presented. Appvion cited the evidence against it, argued that the evidence failed to establish liability, and in response no defendant challenged that conclusion. In fact, the government explicitly conceded the point, while the other Defendants suggested Appvion's argument on direct liability was "irrelevant." The fact that these Defendants

5

have had a change of heart several years later is not enough to reopen the issue.[2]

Accordingly, the motion for summary judgment [1794] is **DENIED**.

**SO ORDERED** this 22nd day of December, 2016.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

---

[2]The Defendants protest that such an outcome would elevate technicalities and form over substance. But the relief they seek would appear to do just the same. Since CERCLA is a strict liability statute, the Defendants want to make Appvion a directly liable party based on what appear to be extremely minimal (alleged) discharges to the Lower Fox River. One could argue that changing the entire framework of this action based on such minimal discharges would also be a highly formalistic result, resting on the happenstance of a *de minimis* discharge.

6